BENJAMIN C. MIZER
 Principal Deputy Assistant Attorney General
CARLOTTA P. WELLS
 Assistant Branch Director
ARJUN GARG (DC Bar No. 975335)
 Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Tel: (202) 305-8613
Fax: (202) 616-8470
Email: arjun.garg@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ANDREW J. BRIGIDA, on behalf of himself and the Class he seeks to represent,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,<br><br>Defendants. | No. 15-CV-02654-PHX-DLR<br><br>**MOTION TO DISMISS PLAINTIFF'S SECOND CLAIM; TO DISMISS IMPROPER DEFENDANTS; TO DISMISS REQUEST FOR IMPROPER RELIEF; AND TO TRANSFER VENUE** |

**INTRODUCTION**

Plaintiff brings two claims, against five defendants, requesting multiple items of relief. Defendants U.S. Department of Transportation ("DOT"); DOT Secretary Anthony R. Foxx; Federal Aviation Administration ("FAA"); FAA Administrator Michael Huerta; and Stephanie Jones, Acting Director of DOT's Departmental Office of Civil Rights, respectfully move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's second claim under constitutional equal protection, to dismiss all but Secretary Foxx from the case as improper defendants, and to dismiss a request for relief that conflicts with a federal statute. Defendants further seek transfer of this action to the U.S. District Court for the District of Columbia. This motion is supported by the accompanying memorandum of points and authorities and the Declaration of Rickie P. Cannon.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**BACKGROUND**

Plaintiff's lawsuit concerns changes the FAA made to its process for hiring air traffic control specialists that, according to Plaintiff, unlawfully discriminated against him and a putative class he seeks to represent. Historically, the FAA has hired candidates to become air traffic controllers from various categories of applicants, including among others: (1) veterans with air traffic control experience attained during military service, (2) graduates of programs accredited under the FAA's Collegiate Training Initiative ("CTI") program, and (3) members of the general public who may have no prior training or experience in air traffic control. *See* Second Am. Compl. [Dkt. No. 26] ¶¶ 32-33, 35.[1]

In advance of an air traffic controller hiring round in 2014, the FAA advised that, rather than using separate hiring processes predicated on distinguishing among categories of applicants, "a single vacancy announcement will be used for all applicant sources" and "[a]ll applicants will be evaluated against the same set of qualification standards." Second Am. Compl., Exh. 2 at 3 [Dkt. No. 26-2]. In addition to instituting uniform qualification standards, the FAA advised it was implementing a "revised testing process" that applicants must pass in order to be further considered for selection. *Id.* Previously, certain applicants were required to pass the FAA's "AT-SAT" test in order to be eligible for hiring as a trainee controller. *See* Second Am. Compl. ¶¶ 26, 29. Under the 2014 vacancy announcement, all applicants would be required first to pass a new "biographical questionnaire" in order to be eligible then to take the "cognitive portion of the AT-SAT" exam. Second Am. Compl., Exh. 2 at 3. The FAA advised that, based on the uniform qualification standards and uniform testing process, "a single nationwide referral list will be generated containing all candidates who meet the qualification standards and pass the assessments," from which selections would be made according to "grouping candidates by assessment scores and veteran's preference." *Id.*

---

[1] For purposes of this motion to dismiss, Defendants accept as true all of Plaintiff's well-pled factual allegations.

1 Plaintiff, who concedes that the "FAA's actions" were "perhaps laudable," Second
2 Am. Compl. ¶ 106, nevertheless claims he suffered unlawful discrimination due to the
3 FAA's standardization of its process for hiring air traffic control specialists. Plaintiff
4 asserts that, prior to the FAA's 2014 vacancy announcement, he had graduated from a CTI
5 program and had passed the AT-SAT test. *See id*. ¶¶ 76-77. He further contends that, prior
6 to the 2014 vacancy announcement, the FAA had accorded a "hiring preference" to CTI
7 graduates who had passed the AT-SAT test. *See id*. ¶ 31. Plaintiff's application under the
8 2014 vacancy announcement, however, was unsuccessful. *See id*. ¶¶ 80, 82. Plaintiff now
9 alleges that, via the 2014 vacancy announcement, the FAA impermissibly "adopted a new
10 hiring practice for Air Traffic Controllers with the intent and purpose of increasing the
11 racial diversity of Air Traffic Controller applicants." *See id*. ¶¶ 98, 105. On a theory of
12 reverse discrimination, Plaintiff brings claims for relief under Title VII of the Civil Rights
13 Act of 1964, *see id*. ¶¶ 9-13, 97-103, and under the Equal Protection Component of the
14 Due Process Clause of the Fifth Amendment, *see id*. ¶¶ 14-20, 104-114. On behalf of a
15 putative class, Plaintiff seeks a declaration that the FAA acted unlawfully, an injunction
16 directing the FAA to give hiring preference to him and the putative class, and damages.
17 *See id.* ¶¶ 88-96, prayer for relief.
18 As Plaintiff recognizes, a statute enacted in July 2016 binds the FAA to various
19 requirements in structuring the process for future hiring of air traffic control specialists.
20 *See id*. ¶¶ 67-73. In section 2106 of the FAA Extension, Safety, and Security Act of 2016
21 (Pub. L. No. 114-190), codified at 49 U.S.C. § 44506(f), Congress specified that the FAA
22 "shall give preferential consideration" to experienced controllers; that is, "qualified
23 individuals maintaining 52 consecutive weeks of air traffic control experience" while
24 serving at an FAA air traffic control facility (as in a prior employment stint), a Department
25 of Defense air traffic control facility, or a contract tower. 49 U.S.C. § 44506(f)(1)(A).
26 "After giving preferential consideration to [that group of] applicants," the FAA "shall
27 consider additional applicants . . . by referring an approximately equal number of
28 individuals for appointment among" two "applicant pools" consisting of (i) eligible CTI

graduates and military veterans, and (ii) members of the general public "who apply under a vacancy announcement recruiting from all United States citizens." 49 U.S.C. § 44506(f)(1)(B). In addition to imposing this scheme of hiring preferences, Congress barred the FAA from using a biographical assessment when hiring experienced controllers, CTI graduates, and military veterans. *See* 49 U.S.C. § 44506(f)(2)(A). Also, to the extent an experienced controller, CTI graduate, or military veteran was "disqualified" under the FAA's 2014 hiring round "as the result of a biographical assessment," the FAA is directed to "provide the applicant an opportunity to reapply for the position as soon as practicable under the revised hiring practices" and, subject to conditions, "shall waive any maximum age restriction" that ordinarily would apply. 49 U.S.C. § 44506(f)(2)(B).

## ARGUMENT

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quotation omitted). "When analyzing a complaint for failure to state a claim" under Rule 12(b)(6), "the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party." *JDA Software Inc. v. Berumen*, 2015 WL 8003210, at *1 (D. Ariz. Dec. 7, 2015). "Legal conclusions couched as factual allegations are not entitled to the assumption of truth, and therefore are insufficient to defeat a motion to dismiss for failure to state a claim." *See id.* (citation omitted). Plaintiff fails to state an equal protection claim because Title VII is an exclusive remedy that preempts this alternative theory of relief. *See infra* Part I. Because all that remains is Plaintiff's Title VII claim, all defendants other than Secretary Foxx are improper and should be dismissed from the case. *See infra* Part II. The Court also should dismiss, or in the alternative strike pursuant to Federal Rule of Civil Procedure 12(f), Plaintiff's improper request for an order requiring the FAA to give Plaintiff and the putative class hiring preference—relief that would contravene the statute that now governs hiring preference for air traffic controllers. *See infra* Part III. Finally, the remainder of this action should be transferred to the U.S. District Court for the District of Columbia. *See infra* Part IV.

**I.      Plaintiff's Equal Protection Claim Must Be Dismissed Because Title VII Provides the Exclusive Remedy for the Alleged Discrimination Here.**

It is black-letter law that "42 U.S.C. § 2000e–16, § 717 of the 1964 Civil Rights Act, which extends Title VII protection to federal employees, is 'the exclusive judicial remedy for claims of discrimination in federal employment.'" *Smith v. Lujan*, 780 F. Supp. 1275, 1279 (D. Ariz. 1991) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)). Following the Supreme Court's guidance in *Brown*, "[t]he Ninth Circuit has found that Title VII (or § 717) is the exclusive judicial remedy for claims, whether based upon a statute or the Constitution, whose factual predicate is the discrimination involved in the § 717 claim." *Smith*, 780 F. Supp. at 1279.

Directly pertinent here, courts in the Ninth Circuit and elsewhere do not permit Title VII plaintiffs suing a federal employer to maintain tag-along claims asserted on the basis of equal protection under the Fifth Amendment. *See, e.g.*, *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 197 (9th Cir. 1995) ("In the alternative to his Title VII claim, Brazil asserts a direct constitutional challenge—a *Bivens* claim—to the Navy's action; he claims that the Navy's decision to revoke his clearance denied him equal protection as guaranteed by the Fifth Amendment. *Bivens*-type actions, however, are unavailable where the claim involves employment discrimination and the plaintiff is a civilian employee of the military."); *Mlynczak v. Bodman*, 442 F.3d 1050, 1056-57 (7th Cir. 2006) (holding, where federal employee sued under Title VII, that "district court was correct" to reject plaintiff's assertion "that he is also entitled to assert a claim directly under constitutional equal protection principles based on the due process clause of the Fifth Amendment"); *Carter v. O'Neill*, 78 F. App'x 978, 979 (5th Cir. 2003) ("The court properly dismissed Carter's Fifth Amendment claim because Title VII is the exclusive vehicle available to federal employees claiming employment discrimination."); *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) ("Title VII preempts any constitutional cause of action that a court might find under the First or Fifth Amendments for discrimination in federal employment."); *Owens v. United States*, 822 F.2d 408, 410 (3d Cir. 1987) ("Interpretation of Title VII has shown

that Title VII provides federal employees a remedy that precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation.") (quotation omitted); *Torre v. Barry*, 661 F.2d 1371, 1374 (D.C. Cir. 1981) ("[A] federal employee who is covered by section 717 may not sue under . . . the Fifth Amendment.").

These authorities dictate that Plaintiff's second claim, based on equal protection under the Fifth Amendment, must be dismissed as a matter of law. Plaintiff alleges discrimination in connection with his opportunity to apply for federal employment as an air traffic controller. *See* Second Am. Compl. ¶¶ 98-101. For such an alleged harm, Plaintiff may only seek relief under his first claim invoking Title VII, which "provides the exclusive, pre-emptive remedy for federal employees seeking to redress employment discrimination." *Sommatino v. United States*, 255 F.3d 704, 711 (9th Cir. 2001).

## II.     Defendants Other Than Secretary Foxx Are Not Proper Defendants.

If the Court dismisses Plaintiff's second claim, Plaintiff's only remaining claim will be for an alleged violation of Title VII. Under that statute, "in a civil action alleging employment discrimination by the government, 'the head of the department, agency, or unit, as appropriate, shall be the defendant.'" *Vinieratos v. U.S. Dep't of Air Force*, 939 F.2d 762, 772 (9th Cir. 1991) (quoting 42 U.S.C. § 2000e-16(c)). Courts thus hold that "when a federal employee alleges employment discrimination, the only proper defendant is the head of the agency which employs them." *Ardalan v. McHugh*, 2013 WL 6212710, at *20 (N.D. Cal. Nov. 27, 2013) (quotation and alteration omitted).

Accordingly, with only a Title VII claim remaining, the Court should dismiss from this action the U.S. Department of Transportation, Federal Aviation Administration, Michael Huerta, and Stephanie Jones as improper defendants. *See, e.g.*, *Graves v. Clinton*, 2011 WL 5024500, at *11 (E.D. Cal. Oct. 20, 2011) (ruling that Title VII claim "should be dismissed with prejudice as to Deputy Secretary Steinberg" because "Deputy Secretary Steinberg is not the head of the Department of State and is thus not a proper defendant in this action.").

6

### III. Plaintiff's Demand for Hiring Preference Improperly Attempts to Subvert the Statutory Command of Congress.

"[A] fundamental principle of equity jurisprudence is that 'equity follows the law.'" *In re Shoreline Concrete Co.*, 831 F.2d 903, 905 (9th Cir. 1987) (quoting *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893)). That maxim means that "a court in equity may not do that which the law forbids." *Estate of Strickland v. Strickland*, 2013 WL 673513, at *4 (D. Ariz. Feb. 25, 2013) (quoting *Petersen v. E.F. Johnson Co.*, 366 F.3d 676, 680 (8th Cir. 2004)). The upshot is that, in formulating equitable relief, "judicially-created equitable considerations must yield to explicit, controlling statutory provisions." *Paul Revere Life Ins. Co. v. Brock*, 28 F.3d 551, 554 (6th Cir. 1994). Plaintiff nevertheless asks this Court to impose equitable relief that would unwind a statute that Plaintiff does not challenge. This claimed relief is improper as a matter of law.

A goal of Plaintiff's suit is to restore a hiring preference that he alleges used to exist for CTI graduates. According to Plaintiff, "[p]rior to 2014 . . . graduates from CTI programs that passed the validated AT-SAT assessment entered a direct hire pool of applicants, were placed on a 'Qualified Applicant Register' List, and were given hiring preference for [air traffic control specialist] positions." Second Am. Compl. ¶ 31. Plaintiff alleges that "on or around December 30, 2013, the FAA eliminated the CTI Applicant Register, which resulted in Plaintiff Brigida, and other putative Class Members, losing their employment preference and opportunity." *Id*. ¶ 52. As an element of requested equitable relief in this lawsuit, Plaintiff seeks "an order directing the FAA to reinstate the purged Qualified Applicant Register and give hiring preference to Plaintiff Brigida and other putative Class Members." *Id*., prayer for relief.

Plaintiff's request to restore the alleged hiring preference that previously existed cannot be squared with Congress's recently-enacted law that sets out the hiring preferences that the FAA must apply in hiring air traffic controllers. *See* FAA Extension, Safety, and Security Act of 2016, Pub. L. No. 114-190, § 2106, 130 Stat. 615, 620 (July 15, 2016) (codified at 44 U.S.C. § 44506(f)). As Plaintiff acknowledges, *see* Second Am. Compl. ¶

7

68, that statute requires the FAA to give hiring preference first and foremost to experienced controllers. *See* 49 U.S.C. § 44506(f)(1)(A). Only "[a]fter giving preferential consideration to [that group of] applicants" is the FAA permitted to "consider additional applicants for the position of air traffic controller." 49 U.S.C. § 44506(f)(1)(B)(i). Even at that point, the FAA is restricted from giving hiring preference solely to CTI graduates, because the statute requires the FAA to hire approximately equally from two pools consisting respectively of (i) eligible CTI graduates and military veterans, and (ii) the general public. *See* 49 U.S.C. § 44506(f)(1)(B). As Plaintiff recognizes, because "the FAA is . . . required to hire equally from" these "two applicant pools," the statute's "revised hiring practices restricts [sic] the number of CTI graduates that can be appointed to [air traffic controller] positions." *See* Second Am. Compl. ¶¶ 69, 73. In sum, the hiring preference that Plaintiff contends the FAA should have applied is now superseded by statute.

Plaintiff's Second Amended Complaint does not challenge Congress's recently-enacted law prescribing how the FAA is to accord hiring preference among various classes of applicants. Nevertheless, Plaintiff asks the Court to grant equitable relief ordering the FAA to give hiring preference to him and the putative class that differs from what the statute provides. As the Supreme Court recently reiterated, however, "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1385 (2015) (quotation omitted); *see also In re Shoreline*, 831 F.2d at 905 ("Courts of equity are bound to follow express statutory commands to the same extent as are courts of law."). In framing equitable relief, "[c]ourts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." *Id*. (quoting *Badaracco v. Comm'r*, 464 U.S. 386, 398 (1984)). Rather, "[a]n equitable doctrine must of necessity 'comport to and remain compatible with the prevailing legislative intent.'" *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 863 (2d Cir. 1985) (quoting *In re Fulghum Constr. Corp.*, 706 F.2d 171, 173 (6th Cir. 1983)).

The recently-enacted statute reflects Congress's awareness of the cohort of CTI graduates whose applications the FAA rejected in the 2014 hiring round on the basis of the biographical assessment. That awareness is self-evident because in the statute Congress acted affirmatively to (1) bar the FAA from using any biographical assessment in future hiring of CTI graduates, *see* 49 U.S.C. § 44506(f)(2)(A), and (2) direct the FAA to provide an opportunity to CTI graduates who were disqualified by that biographical assessment in the 2014 hiring round to reapply, with relaxed age restrictions, *see* 49 U.S.C. § 44506(f)(2)(B). Congress specified that such opportunity to reapply would be "*under the revised hiring practices*" set forth in the statute. 49 U.S.C. § 44506(f)(2)(B)(i) (emphasis added). Those "revised hiring practices" do not encompass the hiring preference that Plaintiff asks this Court to impose as equitable relief. Plaintiff's requested equitable relief is therefore unavailable because "a district court's remedial powers are necessarily limited by a clear and valid legislative command counseling against the contemplated judicial action." *LaShawn A. by Moore v. Barry*, 144 F.3d 847, 853 (D.C. Cir. 1998) (quotation omitted).

"Equity follows the law and when the law determines the rights of the respective parties, a court of equity is without power to decree relief which the law denies." *Charles Schwab & Co. v. Bank of Am.*, 2011 WL 1753805, at *5 (N.D. Cal. May 9, 2011). Accordingly, Congress's prescription of certain hiring preferences requires dismissal of Plaintiff's claim for equitable relief ordering the FAA to give a different hiring preference to Plaintiff and the putative class. Dismissing this request, or in the alternative striking it pursuant to Federal Rule of Civil Procedure 12(f), at the outset of litigation will significantly narrow the dispute by clarifying that it does not implicate any prospective adjustment to how the FAA hires air traffic controllers.

**IV.   Venue Should Be Transferred to the District of Columbia.**

"Plaintiff has the burden of proving that venue is proper in the district in which the suit was initiated." *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1286 (D. Ariz. 2009) (quotation omitted). Here, venue is improper in this district

9

under Title VII (which is the only cause of action that should survive Defendants' motion to dismiss) and would alternatively be proper in the District of Columbia. Even if venue were proper in this district, in the interest of justice the remainder of this action should be transferred to the U.S. District Court for the District of Columbia for the convenience of parties and witnesses.

### A. Venue in this Court Is Improper Under Title VII.

Venue for a Title VII claim is proper "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3).[2] "As part of the waiver of sovereign immunity, these requirements must be given strict interpretation." *Phillips v. Rubin*, 76 F. Supp. 2d 1079, 1082 (D. Nev. 1999). None of these prongs authorizes venue in the District of Arizona over Plaintiff's Title VII claim. Defendants address the three prongs in reverse order:

First, Plaintiff cannot demonstrate that Arizona is where he "would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). Plaintiff does not and cannot allege that, even if he had been hired as a trainee air traffic controller, his place of employment would have been Arizona. To the contrary, the FAA places trainees at air traffic control facilities nationwide, and Mr. Brigida could not have dictated assignment in Arizona. *See* Cannon Decl. ¶ 8. "It is therefore not possible for the Court to conclude that, but for the alleged unlawful employment practices, Plaintiff would work . . . in this district." *Wohltman v. Siemens Generation Servs.*, 2011 WL 3607503, at *3 (S.D. Cal. Aug. 16, 2011). Accordingly, this prong does not support venue in Arizona.

---

[2] The Title VII venue statute further provides that "if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." 42 U.S.C. § 2000e-5(f)(3). This provision is inapplicable here.

Second, Arizona is not where "the employment records relevant to such practice are maintained and administered." 42 U.S.C. § 2000e-5(f)(3). Rather, records relevant to the FAA's alleged "single decision to purge the Qualified Applicant Register and adopt a new hiring practice for Air Traffic Controllers," Second Am. Compl. ¶ 90, are primarily located, and would primarily be collected, in Washington, D.C., where the FAA is headquartered. *See* Cannon Decl. ¶¶ 12-13. Records of the FAA's work in this respect are not maintained and administered in Arizona, and records relating to FAA's decisions regarding hiring policies and procedures generally are not maintained and administered in Arizona. *See id.* ¶¶ 12-13, 15. This prong therefore does not support venue in Arizona.

Third, Arizona is not where "the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3). The decision to "adopt a new hiring practice for Air Traffic Controllers," Second Am. Compl. ¶ 90, was made in Washington, D.C. *See* Cannon Decl. ¶¶ 12-13, 15. Defendants recognize that the Ninth Circuit has, under certain circumstances, construed this prong of Title VII's venue provision to mean that "venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). However, *Passantino* stands in tension with this Court's reasoning that "[m]erely being the situs of plaintiff's injury is insufficient—otherwise venue would always be proper in a plaintiff's district because the impact of the injury will almost always be there." *Mach 1 Air Servs. Inc. v. Bustillos*, 2013 WL 1222567, at *10 (D. Ariz. Mar. 25, 2013) (interpreting venue under 28 U.S.C. § 1391(b)(2)). Moreover, *Passantino*—a case concerning failure to promote an existing employee—emphasizes that "venue should be found . . . where the plaintiff works," 212 F.3d at 505; in the failure-to-hire context of this case, by contrast, Plaintiff was never Defendants' employee and does not allege that Arizona is where he works or would have worked. *Cf. Berry v. Potter*, 2006 WL 335841, at *2 (D. Ariz. Feb. 10, 2006) (observing that Ninth Circuit's *Passantino* holding applies "in failure-to-promote cases under Title VII"). "In view of those distinguishable facts, *Passantino* fails to support [an] argument

11

that venue for [Plaintiff's] claim is proper in this district, where Plaintiff live[d]" at one time. *Davidson v. Korman*, 2010 WL 3515760, at *3 (N.D. Cal. Sept. 8, 2010).

Rather than proceeding in the District of Arizona, venue would be proper under Title VII in the District of Columbia—where "the unlawful employment practice is alleged to have been committed" and where "employment records relevant to such practice are maintained and administered." 42 U.S.C. § 2000e-5(f)(3). The Court may transfer this case to the District of Columbia federal district court pursuant to 28 U.S.C. § 1406(a).[3]

**B.     Even If Venue in this Court Were Available, Transfer Is Warranted.**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This venue transfer "statute has two requirements on its face: (1) that the district to which defendant seeks to have the action transferred is one in which the action 'might have been brought,' and (2) that the transfer be for the convenience of parties and witnesses, and in the interest of justice." *Koval v. United States*, 2013 WL 6385595, at *1 (D. Ariz. Dec. 6, 2013) (alterations omitted). The first requirement is met here, because Defendants seek transfer to the U.S. District Court for the District of Columbia, where this case properly might have been brought under Title VII's venue provision, as explained above. As to the second requirement, the district court has discretion under § 1404(a) "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quotation omitted). "In addition to considering the convenience to the parties and witnesses, the court may consider" the following factors:

(1) the location where the relevant agreements were negotiated and executed;

(2) the state that is most familiar with the governing law;

---

[3]     28 U.S.C. § 1406(a) states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

12

(3) the plaintiff's choice of forum;

(4) the respective parties' contacts with the forum;

(5) the contacts relating to the plaintiff's cause of action in the chosen forum;

(6) the differences in the costs of litigation in the two forums;

(7) the availability of compulsory process to compel attendance of unwilling nonparty witnesses; and

(8) the ease of access to sources of proof.

*Koval*, 2013 WL 6385595, at *2 (citing *Jones*, 211 F.3d at 498–99). Here, these factors counsel decisively in favor of transfer to the District of Columbia.

<u>Convenience of the Parties</u>: This factor weighs heavily in favor of transfer to the District of Columbia. Plaintiff himself resides not in Arizona, but rather in Arlington, Virginia. *See* Second Am. Compl. ¶ 3. The Court may take judicial notice that Arlington, Virginia is situated on the south bank of the Potomac River directly across from and in close proximity to Washington, D.C. *See McCormack v. Hiedeman*, 694 F.3d 1004, 1008 n.1 (9th Cir. 2012). As for Defendants, the principal duty station of Secretary Foxx, Administrator Huerta, and Acting Director Jones is Washington, D.C., which is where the FAA and U.S. Department of Transportation are headquartered. *See* Cannon Decl. ¶¶ 2-3.

<u>Convenience of the Witnesses</u>: At least three current or former FAA officials expressly identified in the complaint work in or around Washington, D.C. *See* Cannon Decl. ¶¶ 4-6; *see also* Second Am. Compl. ¶¶ 42 (naming Terry Craft), 47-50 (naming Joseph Teixeira), 61-62 (naming Carrolyn Bostick). As to other FAA officials who might become witnesses in this suit, there is ample reason to expect that they would be located primarily in Washington, D.C. or perhaps in Oklahoma City, Oklahoma, but not in Arizona. *See* Cannon Decl. ¶¶ 11-13.

<u>Location Where Relevant Agreements Were Negotiated and Executed</u>: This factor weighs in favor of the District of Columbia. The challenged decision to revise the hiring process for air traffic controllers was made in Washington, D.C. *See* Cannon Decl. ¶ 15. The decision to use a single vacancy announcement to fill entry-level air traffic control

specialist positions was made in Washington, D.C. *See id.* The decision to close all air traffic control specialist applicant inventories was made in Washington, D.C. *See id.* No decisions related to the air traffic control specialist hiring process changes were made in Arizona. *See id.* Meetings that preceded those decisions took place in Washington, D.C. or Oklahoma City, but not in Arizona. *See id.* ¶¶ 10, 11-13.

State Most Familiar with Governing Law: This factor does not weigh in either direction, as this case is governed by federal law with which federal courts in both the District of Arizona and the District of Columbia are equally familiar.

Plaintiff's Choice of Forum: This factor does not weigh against transfer, because Plaintiff's suit is on behalf of a putative nationwide class and is not brought in his home forum. *See Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2013). "Plaintiffs are entitled to some deference to their choice of forum, but that deference is relatively minimal in class action suits." *Gomez v. Wells Fargo Bank, N.A.*, 2009 WL 1936790, at *2 (D. Ariz. July 2, 2009) (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)); *see also Mann v. Liberty League Int'l, LLC*, 2010 WL 94114, at *4 (D. Ariz. Jan. 6, 2010) (observing that "although great weight is generally accorded plaintiff's choice of forum, the . . . Plaintiffs' choice of Arizona is given less weight because the named plaintiffs have brought a class action, rather than an individual lawsuit") (quotations and alteration omitted). Moreover, "the degree to which courts defer to the plaintiff's chosen venue is substantially reduced when the plaintiff's choice is not its residence." *Koval*, 2013 WL 6385595, at *3 (quotation omitted); *cf. Texmo Oil Co. Jobbers Inc. v. Y Travel LLC*, 2014 WL 2617248, at *3 (D. Ariz. June 12, 2014) ("A plaintiff's choice of forum is to be given 'substantial deference' *where the plaintiff has chosen his home forum*.") (emphasis added). This factor thus does not weigh against transfer in light of Plaintiff bringing a class action suit in a state where he does not reside, and this conclusion is significant because "[a]s deference accorded to a plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases." *Koval*, 2013 WL 6385595, at *4 (quotation and alteration omitted).

14

Respective Parties' Contacts with the Forum: "This factor does not significantly influence the analysis in class action cases." *Gomez*, 2009 WL 1936790, at *5. To the extent this factor applies here, it does not weigh meaningfully against transfer because Plaintiff no longer resides in Arizona and Defendants are headquartered in Washington, D.C.

Contacts Relating to Plaintiff's Cause of Action in Chosen Forum: This factor does not weigh in either direction because although Plaintiff alleges he resided in Arizona when the FAA revised its hiring process, the pertinent decisions were not made in Arizona; rather, the District of Columbia was the primary locus of the decisions about which Plaintiff complains. *See* Cannon Decl. ¶¶ 11-13, 15. Moreover, the impact of the complained-of decisions is not limited to applicants in Arizona. Indeed, Plaintiff's own allegations suggest that Arizona was impacted relatively minimally in comparison to the rest of the country; Plaintiff alleges that the putative class contains "approximately 2,000 to 3,500" individuals, yet his own assertion is that "[a]pproximately 34 potential class members graduated from CTI Institutions in Arizona and/or reside in Arizona," Second Am. Compl. ¶¶ 89, 93—meaning that, per Plaintiff's accounting, only 1% to 1.7% of the putative class has an Arizona connection.

Differences in Costs of Litigation in the Two Forums / Ease of Access to Sources of Proof: These factors weigh strongly in favor of transfer. "Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions" and "when the action is pursued near the location of documents likely to be at issue in the case." *Gomez*, 2009 WL 1936790, at *3 (quotation omitted). Because both Plaintiff and Defendants reside in or around the District of Columbia, as do many or all of the likely witnesses, holding proceedings in that location can be expected to reduce travel costs during litigation. Counsel for Defendants also works in Washington, D.C., whereas lead counsel for Plaintiffs are in Colorado and would be required to undertake long-distance travel to either of Arizona or the District of Columbia. Moreover, Defendants' relevant records would primarily be located and collected in Washington, D.C., where the

FAA is headquartered. *See* Cannon Decl. ¶¶ 12-13. Such records of the FAA's decision are not maintained and administered in Arizona. *See id.* Plaintiff is "the only Arizona connection to this putative nationwide class action" (and he does not even live there anymore), whereas "[i]t is [the District of Columbia] that appears to be the center of discovery in this case, and thus pursuing this action in [the District of Columbia] will ease access to sources of proof, lessen the relative financial burdens of litigation, and reduce the overall cost of litigation." *Gomez*, 2009 WL 1936790, at *4.

Availability of Compulsory Process to Compel Attendance: Courts "favor a forum where non-party witnesses will fall under the court's subpoena power." *Chodock v. Am. Econ. Ins. Co.*, 2005 WL 2994451, at *4 (D. Ariz. Nov. 7, 2005). At least two of the FAA officials expressly identified in the complaint no longer work for Defendants, but continue to be found in the Washington, D.C. area. *See* Cannon Decl. ¶¶ 4-5. To the extent that these and other potential witnesses are no longer Defendants' employees, venue in the District of Columbia greatly enhances the effectiveness of compulsory process—with a 100-mile radius pursuant to Fed. R. Civ. P. 45(c)—in securing those individuals' testimony. Venue in Arizona, by contrast, would put those individuals beyond the reach of compulsory process. This factor accordingly weighs heavily in favor of transfer.

In sum, with several factors weighing strongly in favor of transfer and none weighing significantly against it, the interest of justice supports transfer to the District of Columbia for the convenience of parties and witnesses.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (i) dismiss Plaintiff's second claim, (ii) dismiss all defendants other than Secretary Foxx, (iii) dismiss Plaintiffs' request for equitable relief giving hiring preference to Plaintiff and the putative class, and (iv) transfer the remainder of this case to the U.S. District Court for the District of Columbia.

//

//

16

DATED: September 16, 2016         Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

 /s/ *Arjun Garg*
ARJUN GARG (DC Bar No. 975335)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Tel: (202) 305-8613
Fax: (202) 616-8470
Email: arjun.garg@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2016, I electronically filed the foregoing document using the Court's CM/ECF System, which will send notice of this filing to all counsel of record.

                                 /s/ *Arjun Garg*
                                 ARJUN GARG