Jeffrey Wilson McCoy (CO No. 43562), *pro hac vice*
Steven J. Lechner (CO No. 19853), *pro hac vice*
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmccoy@mountainstateslegal.com
lechner@mountainstateslegal.com

Michael W. Pearson (AZ No. 016281)
Curry, Pearson, & Wooten, PLC
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000
(602) 523-9000 (facsimile)
mpearson@azlaw.com

Attorneys for Plaintiff Andrew Brigida and Putative Class Counsel

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew J. Brigida, on behalf of himself and the Class he seeks to represent,<br><br>   Plaintiff,<br><br>  v.<br><br>United States Department of Transportation; Anthony R. Foxx, Secretary, U.S. Department of Transportation; Federal Aviation Administration; Michael Huerta, Administrator, Federal Aviation Administration; Stephanie Jones, Acting Director, Departmental Office of Civil Rights, U.S. Department of Transportation,<br><br>   Defendants. | Case No. 2:15-cv-02654-DLR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND CLAIM; TO DISMISS IMPROPER DEFENDANTS; TO DISMISS REQUEST FOR IMPROPER RELIEF; AND TO TRANSFER VENUE**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................ iv

INTRODUCTION ...................................................................... 1

LEGAL BACKGROUND .............................................................. 2

I.    TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ........................... 2

II.   EQUAL PROTECTION COMPONENT OF THE DUE
      PROCESS CLAUSE OF THE FIFTH AMENDMENT ...................... 3

ARGUMENT ........................................................................... 4

I.    STANDARD OF REVIEW .................................................... 4

II.   THIS COURT CAN AND SHOULD CONSIDER
      PLAINTIFF'S EQUAL PROTECTION CLAIM ............................. 5

III.  UNDER TITLE VII, THIS COURT HAS THE AUTHORITY
      TO GRANT ANY RELIEF THAT RESTORES PLAINTIFF
      BRIGIDA AND THE PUTATIVE CLASS MEMBERS TO THE
      POSITION THEY WERE IN PRIOR TO THE FAA'S
      DISCRIMINATORY ACTIONS ............................................. 9

IV.  THIS COURT IS THE PROPER AND CONVENIENT VENUE
      FOR THIS LITIGATION .................................................... 12

      A.   Under Title VII, Venue Is Proper In The District Where
          The Effects Of The Discriminatory Action Is Felt By The
          Plaintiff .............................................................. 12

      B.   This Court Should Not Transfer This Case Under
          28 U.S.C. § 1404(a) ................................................. 14

      C.   Even If This Court Were Not The Proper Venue, The
          District Of Columbia Is Not The Proper Or Convenient
          Venue For This Litigation .......................................... 16

CONCLUSION .......................................................................... 17

1

CERTIFICATE OF SERVICE..........................................................................    19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

*Albemarle Paper Co. v. Moody,*
    422 U.S. 405 (1975)................................................................ 9, 12

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,*
    94 F.3d 586 (9th Cir. 1996) ..................................................... 4

*Bivens v. Six Unknown Named Agents,*
    403 U.S. 388 (1971)................................................................ 8

*Branch v. Smith,*
    538 U.S. 254 (2003) ............................................................... 11

*Brazil v. U.S. Dep't of Navy,*
    66 F.3d 193 (9th Cir. 1995) ..................................................... 8

*Brown v. Gen. Servs. Admin.,*
    425 U.S. 820 (1976)................................................................ 5, 8

*Buckley v. Valeo,*
    424 U.S. 1 (1976).................................................................... 3

*Davis v. Passman,*
    442 U.S. 228 (1979) ............................................................... 7

*Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986) ................................................... 15

*E.E.O.C. v. Peabody W. Coal Co.,*
    610 F.3d 1070 (9th Cir. 2010) ................................................. 6, 7, 8

*Ex parte Young,*
    209 U.S. 123 (1908)................................................................ 8

*Haisten v. Grass Valley Medical Reimbursement Fund,*
    784 F.2d 1392 (9th Cir.1986) ................................................. 13, 14

*Kewlmetal Inc. v. Bike Builders Bible, Inc.,*
    No. 2:15-CV-01008 JWS, 2015 WL 8758065 (D. Ariz. Dec. 15,
    2015) ...................................................................................... 5, 15, 16

*Kotarski v. Cooper,*
    866 F.2d 311 (9th Cir.1989) ....................................................... 8–9

*Murphy v. Schneider Nat'l, Inc.,*
    362 F.3d 1133, 1138 (9th Cir. 2004) ........................................ 5

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
    551 U.S. 644 (2007)................................................................... 11

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981)................................................................... 5

*Passantino v. Johnson & Johnson Consumer Prod., Inc.,*
    212 F.3d 493 (9th Cir. 2000) .................................................... 12, 13, 14

*Pullman Const. Indus., Inc. v. United States,*
    23 F.3d 1166 (7th Cir. 1994), *as amended on denial of reh'g*
    (May 19, 1994)............................................................................ 6

*Ricci v. DeStefano,*
    557 U.S. 557 (2009)................................................................... 2, 3, 7

*Richmond v. J.A. Croson Co.*
    488 U.S. 469 (1989)................................................................... 3, 4

*Rio Props., Inc. v. Rio Int'l Interlink,*
    284 F.3d 1007 (9th Cir. 2002) .................................................. 4

*Robinson v. Centene Corp./Nursewise,*
    No. CV06 1946 PHX MH, 2007 WL 2023480 (D. Ariz. July 12,
    2007) ............................................................................................ 6

*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44 (1996)..................................................................... 6

*Torre v. Barry,*
    661 F.2d 1371 (D.C. Cir. 1981)................................................ 5

*Traynor v. Turnage,*
    485 U.S. 535 (1988).................................................................. 11

*Trout Unlimited v. U.S. Dep't of Agric.*,
    944 F.Supp. 13 (D.D.C. 1996)................................................................. 5

*United States v. Nordic Village, Inc.*,
    503 U.S. 30 (1992)................................................................................. 6

*Warren v. RJM Acquisitions, LLC*,
    No. CIV 11-376 TUC FRZ (GEE), 2012 WL 12830193
    (D. Ariz. Mar. 20, 2012) ...................................................................... 4

*Washington v. Davis*,
    426 U.S. 229 (1976)............................................................................. 7

*Watt v. Alaska*,
    451 U.S. 259 (1981)............................................................................. 11

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ................................................................

**Constitutional Provisions**

U.S. Const. amend. V .......................................................................... 2, 3, 7, 9

**Statutes**

28 U.S.C. § 1404(a).............................................................................. 5, 15

38 U.S.C. § 4214 ................................................................................. 10

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e .................... *passim*

    42 U.S.C. § 2000e-2(a)(1) ................................................................. 3

    42 U.S.C. § 2000e-5(f)(3)................................................................. 17

    42 U.S.C. § 2000e-5(g)(1) ................................................................ 9, 12

    42 U.S.C. § 2000e-16......................................................................... 3

49 U.S.C. § 44506(f)(1)(A) ..................................................................... 10

49 U.S.C. § 44506(f)(1)(B)(i) ................................................................. 10

1

49 U.S.C. § 44506(f)(1)(B)(ii) .......................................................................... 10

2

**Rules**

3

Fed. R. Civ. P. 12(b)(6) .................................................................... 2, 4

4

5

Fed. R. Civ. P. 12(f) ............................................................................ 2

6

**Other Authorities**

7

Erwin Chemerinsky, *Against Sovereign Immunity*, 53 Stan. L. Rev.
1201 (2001) ................................................................................ 6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

This case arises out of Defendants' intentional race-based discrimination against Andrew Brigida and a putative Class of applicants for air traffic control specialist ("ATCS") positions.  Second Amended and Supplemental Class Action Complaint For Declaratory and Injunctive Relief and Damages [Dkt. No. 26] ("Second Amended Complaint") ¶¶ 21–87.  As a result of Defendants' discrimination, Mr. Brigida and the putative Class members lost employment opportunities with the Federal Aviation Administration ("FAA").  *Id.* ¶ 66.  Prior to 2014, the FAA established the Air Traffic-Collegiate Training Initiative ("CTI") program, and partnered with colleges and universities to "develop, deliver, and implement air traffic control recruiting, selection, and training."  *Id.* ¶¶ 22–23   Graduates from CTI institutions who passed an aptitude test called the Air Traffic Control Selection and Training examination ("AT-SAT"), entered a direct hire pool of applicants, were placed on a "Qualified Applicant Register", and were given hiring preference for ATCS positions.  *Id.* ¶ 31.  Prior to 2014, Mr. Brigida and the putative Class members had graduated from CTI programs, had passed the AT-SAT, and were placed on the Qualified Applicant Register.  *Id.* ¶ 66. 77–78.

In 2013, the FAA made a racially-motivated decision to change its hiring policies, and the new hiring process was implemented in February of 2014.  Second Amended Complaint ¶¶ 47–65.  The new hiring process required all hiring for ATCS positions to be made through General Public Announcement ("GPA"), commonly referred to as Off-the-Street ("OTS") hiring.  *Id.* ¶ 50.  To be eligible to be hired, an applicant must first take and pass a biographical questionnaire ("BQ").  *Id.*  If the applicant passed the BQ,

then he or she would be administered the AT-SAT.  *Id.*  Additionally, in February 2014, the FAA purged the Qualified Applicant Register and informed the applicants on the register that they would need to reapply under the new hiring process.  *Id.* ¶¶ 50, 66.  Mr. Brigida and the putative Class members reapplied, but failed the BQ and, as a result, were determined to be ineligible for an ATCS position.  *Id.* ¶ 82.

On December 30, 2015, Mr. Brigida, on behalf of himself and the Class he seeks to represent, filed this action and alleged that the FAA's racially-motivated actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Equal Protection Component of the Due Process Clause of the Fifth Amendment.  Mr. Brigida amended his Complaint twice, filing the Second Amended and Supplemental Complaint on August 19, 2016.  On September 16, 2016, Defendants moved, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), to dismiss Mr. Brigida's second claim for relief, to dismiss all defendants other than Secretary Foxx, to dismiss some of Mr. Brigida's requested relief. Defendants' Motion to Dismiss Plaintiff's Second Claim for relief; To Dismiss Improper Defendants; To Dismiss Request for Improper Relief; and to Transfer Venue [Dkt. No. 27] ("Defendants' Motion") at 1–9.  Defendants also moved to transfer this case to the United States District Court for the District of Columbia.  *Id.* at 9–16.

## **LEGAL BACKGROUND**

### I.    **TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.**

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e; *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Specifically, Title VII provides that it is unlawful employment discrimination "to fail or

refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII prohibits discrimination against employees of, and applicants for employment in, the federal government, 42 U.S.C. § 2000e-16, and absent a valid defense, Title VII prevents a government agency from refusing to accept the outcome of a race-neutral hiring process solely because of the racial makeup of the successful applicants.  *See Ricci*, 557 U.S. at 579.

## II.  EQUAL PROTECTION COMPONENT OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law ...."  U.S. Const. amend. V.  Like the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment protects persons from race-based discrimination by the federal government.  *Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment ....").  Despite Defendants' argument to the contrary, the Equal Protection Clause guarantees of the Constitution do not distinguish between races and apply equally to individuals of all races.  *Compare* Defendants' Motion at 3 (characterizing Mr. Brigida's claims as based on "a theory of reverse discrimination"); *with Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493–94 (1989) ("the standard of review under the Equal Protection Clause is not dependent on the race of those burdened or benefited by a

particular classification") (opinion of O'Connor, J., joined by Rehnquist, C.J, and White and Kennedy, JJ.); *id.,* at 520 (Scalia, J., concurring in judgment) ("I agree ... with Justice O'Connor's conclusion that strict scrutiny must be applied to all governmental classification by race").

## ARGUMENT

### I.   STANDARD OF REVIEW.

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the plaintiff's non-conclusory, material allegations in the complaint and construes them in the light most favorable to the plaintiff.  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Motions to strike under Federal Rule of Civil Procedure 12(f) "are generally regarded with disfavor and should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Warren v. RJM Acquisitions*, *LLC*, No. CIV 11-376 TUC FRZ (GEE), 2012 WL 12830193, at *1 (D. Ariz. Mar. 20, 2012) (internal quotations omitted).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

When considering a motion to transfer for improper venue, this Court may consider facts outside the pleadings, but it "'must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving

party.'" *Kewlmetal Inc. v. Bike Builders Bible, Inc.*, No. 2:15-CV-01008 JWS, 2015 WL 8758065, at *1 (D. Ariz. Dec. 15, 2015) (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).

Finally, the decision to transfer pursuant to 28 U.S.C. § 1404(a), is committed to the discretion of the court and "plaintiff's choice of forum should rarely be disturbed." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).  When considering a motion pursuant to § 1404(a) the moving party bears the burden of establishing that transfer is proper.  *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F.Supp. 13, 16 (D.D.C. 1996).

## II.   THIS COURT CAN AND SHOULD CONSIDER PLAINTIFF'S EQUAL PROTECTION CLAIM.

Defendants argue that Congress intended Title VII to be the exclusive remedy for federal employment discrimination claims and, as a result, this Court must dismiss Mr. Brigida's Equal Protection claim.[1]  Defendants' Motion at 5–6.  In support of their argument, Defendants cite cases that base their holdings on the doctrine of sovereign immunity.  *See, e.g.*, *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 826–27, (1976); *Torre v. Barry,* 661 F.2d 1371, 1374 (D.C. Cir. 1981)*.*  The doctrine of sovereign immunity, however, is not a universal doctrine that allows Congress to pick and choose when a Plaintiff can seek relief to vindicate his constitutional rights.

---

[1] In conjunction, Defendants also argue that this Court must dismiss all parties except Secretary Foxx because Title VII provides that the only proper defendant is the head of the Department which employs them.  Defendants' Motion at 6.  Assuming, *arguendo*, that this Court were to dismiss Brigida's Equal Protection Claim, then Mr. Brigida submits that this Court would have to dismiss all other parties besides Secretary Foxx.

Despite the flaws with the doctrine of sovereign immunity,[2] the doctrine still has limits and does not apply to certain claims for relief.  For example, courts have been reluctant to apply the doctrine of sovereign immunity to bar claims seeking prospective relief against federal officers.  *See E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010) ("Prospective relief requiring, or having the effect of requiring, governmental officials to obey the law has long been available.  Sovereign immunity does not bar such relief."); *Pullman Const. Indus., Inc. v. United States*, 23 F.3d 1166, 1168 (7th Cir. 1994), *as amended on denial of reh'g* (May 19, 1994) ("Federal sovereign immunity today is nothing but a condensed way to refer to the fact that monetary relief is permissible only to the extent Congress has authorized it …."); *cf. Robinson v. Centene Corp./Nursewise,* No. CV06 1946 PHX MH, 2007 WL 2023480, at *3 (D. Ariz. July 12, 2007) (Concluding that, in an employment discrimination suit against the Arizona Board of Behavioral Health Examiners, "to the extent Plaintiff seeks only prospective declaratory and injunctive relief against the Individual Defendants, as members of the

---

[2] The doctrine of sovereign immunity is a judge-made doctrine that has been recently criticized by scholars and judges as inconsistent with the Constitution.  *See* Erwin Chemerinsky, *Against Sovereign Immunity*, 53 Stan. L. Rev. 1201 (2001) (hereinafter, "Chemerinsky"); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 98 (1996) (Stevens, J., dissenting) (stating that the doctrine of sovereign immunity is judge-made). The concept of sovereign immunity originally relied on the notion "that a divinely ordained monarch 'can do no wrong,'" a concept which "is, or course, thoroughly discredited."  *United States v. Nordic Village, Inc.*, 503 U.S. 30, 42–43 (1992) (Stevens, J., dissenting).  Furthermore, there is no explicit or implicit reference to the doctrine of federal sovereign immunity in the Constitution.  Chemerinsky, 53 Stan. L. Rev. at 1205 ("Sovereign immunity ... is a right that cannot be found in the text or the framers' intent."); Because the doctrine of sovereign immunity is discredited, this Court should consider whether it is appropriate to ever apply the doctrine to bar a plaintiff from bringing a claim to vindicate his Constitutional rights.

State Board, in their official capacities, such claims are not barred by sovereign immunity.").  As a part of his Equal Protection Claim, Mr. Brigida requests that this Court "[d]eclare that the FAA's racially motivated purging of the Qualified Applicant Register and adoption of a new hiring practice for Air Traffic Controllers violated the Equal Protection Component of the Due Process Clause of the Fifth Amendment …." Second Amended Complaint, Prayer for Relief ¶ 2.  As declaratory relief is prospective, non-monetary relief, no express waiver of sovereign immunity is required in order for this Court to consider and grant relief under the Fifth Amendment.  *Peabody W. Coal Co.*, 610 F.3d at 1085.  Accordingly, this Court can, at a minimum, consider Mr. Brigida's constitutional claim to grant his requested declaratory relief.

Additionally, courts have held that a plaintiff can bring a constitutional cause of actions for damages, absent a waiver of sovereign immunity, if there are no other effective means to vindicate a constitutional right.  *See, e.g., Davis v. Passman*, 442 U.S. 228, 247–48 (1979) (Holding that a former congressional staff member  had a cause of action for employment discrimination under the Fifth Amendment because Title VII did not foreclose alternative remedies available to those expressly unprotected by the statute). The violation of Mr. Brigida's rights under Title VII is not coextensive with the violation of his rights under the Fifth Amendment.  *See Washington v. Davis*, 426 U.S. 229, 239 (1976) ("We have never held that the constitutional standard for adjudicating claims of invidious racial discrimination is identical to the standards applicable under Title VII, and we decline to do so today."); *Ricci*, 557 U.S. at 582 ("This suit does not call on us to consider whether the statutory constraints under Title VII must be parallel in all respects

7

to those under the Constitution."). Accordingly, this Court can and should consider Mr. Brigida's Equal Protection Claim because Title VII does not provide full and fair relief for the FAA's constitutional violations.

This conclusion is supported by the fact that the cases cited by Defendants are distinguishable. In *Brown*., the plaintiff brought only statutory claims, including a Title VII claim. 425 U.S. at 823. In that context, the Court held that the plaintiff's case must be dismissed because he filed outside Title VII's statute of limitations and that his other statutory claims could not be brought because Title VII was the exclusive remedy for his discrimination claim. *Id.* at 824–25. As demonstrated above, however, courts are much more reluctant to bar constitutional claims, especially for prospective relief and when Congress has not provided an adequate remedy for a violation of one's constitutional rights.

The Ninth Circuit's decision in *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 197 (9th Cir. 1995) is also distinguishable. In *Brazil*, the court stated that a plaintiff could not bring a constitutional claim for employment discrimination under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *Brazil*, 66 F.3d at 198. Mr. Brigida's requested prospective relief, however, does not arise from *Bivens* but, rather, from the principle established in *Ex parte Young*, 209 U.S. 123 (1908). *See Peabody W. Coal Co.*, 610 F.3d at 1085. Furthermore, as to the monetary relief requested by Mr. Brigida, the court in *Brazil* recognized that Title VII would only foreclose *Bivens* claims for relief "'where Congress has designed a program that provides what it considers adequate remedial mechanisms for constitutional violations ....'" *Brazil*, 66 F.3d at 198 (quoting *Kotarski*

*v. Cooper,* 866 F.2d 311, 312 (9th Cir.1989)).  Despite recognizing limits to when Congress can foreclose constitutional claims, the court only briefly analyzed the issue and failed to take into account the different standards for violations of Title VII and the Fifth Amendment.   As demonstrated above, however, the different standards for adjudicating Title VII claims and Equal Protection claims raises the possibility that Mr. Brigida and the putative Class members will be prevented from getting relief for the injuries caused by the FAA's discriminatory actions.   Accordingly, this Court should consider Mr. Brigida's constitutional claim for relief.

**III.   UNDER TITLE VII, THIS COURT HAS THE AUTHORITY TO GRANT ANY RELIEF THAT RESTORES PLAINTIFF BRIGIDA AND THE PUTATIVE CLASS MEMBERS TO THE POSITION THEY WERE IN PRIOR TO THE FAA'S DISCRIMINATORY ACTIONS.**

This Court can grant all of Mr. Brigida's requested relief because Title VII gives this Court broad equitable powers to cure the effects of the FAA's discriminatory actions. Title VII provides that:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, *and order such affirmative action as may be appropriate* ….

42 U.S.C. § 2000e-5(g)(1) (emphasis added).  The purpose of this provision, which "arm[s] the courts with full equitable powers," is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975).  Prior to the FAA's purging of the Qualified Applicant Register, Mr. Brigida and the putative Class members would have been given hiring

preference for any open ATC positions. *See* Second Amended Complaint ¶ 31.

Accordingly, Mr. Brigida requests that this Court restore him and the Class members to

that same position, which would make them whole for injuries suffered as a result of the

FAA's discriminatory actions.

Defendants argue that a recently enacted law regarding the hiring of ATCS

positions prevents this Court from granting the relief requested by Mr. Brigida.

Defendants' Motion at 7. The FAA Extension, Safety, and Security Act of 2016 ("2016

Act), however, does not grant full relief to Mr. Brigida and the putative Class members.

The 2016 Act merely allows Mr. Brigida and the Class members to reapply for an ATCS

position under a new hiring process, and makes no guarantee that anyone will be hired.

Furthermore, the new hiring process drastically changes the applicant pools and reduces

the relative number of positions available to CTI graduates.

The 2016 Act provides that the FAA should give preferential treatment for ATCS

positions to qualified individuals maintaining 52 consecutive weeks of civilian or military

air traffic control experience. 49 U.S.C. § 44506(f)(1)(A). For any remaining open

ATCS positions, the FAA is then required to hire equally from two applicant pools. 49

U.S.C. § 44506(f)(1)(B)(i). The first pool consists of: (1) CTI graduates who have

received recommendations from their institution; (2) honorably discharged veterans

eligible for a recruitment appointment pursuant to 38 U.S.C. § 4214; (3) eligible veterans

"maintaining aviation experience obtained in the course of the individual's military

experience"; and (4) preference eligible veterans. 49 U.S.C. § 44506(f)(1)(B)(ii). The

second pool consists of OTS applicants. 49 U.S.C. § 44506(f)(1)(B)(ii). This is different

1    from the pre-2014 hiring process, which filled open ATC positions with CTI graduates

2    before making OTS hires.  Thus, Congress's recent actions do not make Mr. Brigida and

3    the putative Class members "whole" as required by Title VII.

4

5        As a result, the hiring provisions of the 2016 Act can only limit the relief in this

6    case if this Court decides that the 2016 Act expressly repeals or amends the enforcement

7    provisions of Title VII.  This Court should not assume that Congress intended for the

8    2016 Act to supersede Title VII because "'repeals by implication are not favored' and

9    will not be presumed unless the 'intention of the legislature to repeal [is] clear and

10   manifest.'"  *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007)

11   (quoting *Watt v. Alaska,* 451 U.S. 259, 267 (1981)) (alterations in original).  Specifically,

12   courts do not infer a statutory repeal "unless the later statute expressly contradict[s] the

13   original act" or unless such a construction "is absolutely necessary ... in order that [the]

14   words [of the later statute] shall have any meaning at all."  *Traynor v. Turnage,* 485 U.S.

15   535, 548, (1988) (internal quotation omitted); *see also Branch v. Smith,* 538 U.S. 254,

16   273 (2003) ( "An implied repeal will only be found where provisions in two statutes are

17   in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier

18   one and is clearly intended as a substitute") (internal quotation omitted).

19

20       The language of the 2016 Act does not irreconcilably conflict with Title VII and

21   the 2016 Act offers no indication that Congress intended to rid this Court of its authority

22   under Title VII to make Mr. Brigida and the putative Class members whole in this case.

23   The 2016 Act merely offers one option for those who were discriminated against to

24   reapply for an ATCS position.  As demonstrated above, however, this option does not

25

26

27

28

1
2

guarantee that Mr. Brigida and the putative Class members will be made whole for the injuries suffered as a result of the FAA's discrimination.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

Despite Defendants' contention that Congress's intentions in passing the 2016 Act are "self-evident," they offer no evidence that Congress expressed a clear and manifest intention to amend or repeal the enforcement provisions of Title VII. In fact, Defendants do not even address the enforcement provisions of Title VII, and merely discuss this Court's general equitable powers. This Court, however, must recognize and respect Congress's legislative intent in passing Title VII, when it expressly granted this Court power to make "persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co.*, 422 U.S. at 418. Because the 2016 Act does not alter or amend enforcement provisions of Title VII, this Court can "order such affirmative action as may be appropriate" to make Mr. Brigida and the putative Class members whole. 42 U.S.C. § 2000e-5(g)(1). Accordingly, this Court has the authority to grant all of the requested relief in the Second Amended Complaint.

19
20

**IV.   THIS COURT IS THE PROPER AND CONVENIENT VENUE FOR THIS LITIGATION.**

21
22

**A.   Under Title VII, Venue Is Proper In The District Where The Effects Of The Discriminatory Action Are Felt By The Plaintiff.**

23
24
25
26
27
28

Under Title VII, "venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or *its effects are felt.*" *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (emphasis added). Title VII's venue provision is "'broad'" in order "to support the desire of Congress to afford citizens *full and easy redress of civil rights*

*grievances.*"  *Id.* at 504 (emphasis added) (internal quotation omitted).  Mr. Brigida is a graduate of ASU's CTI program and was a resident of Arizona both times he applied for the ATCS position.  He was a resident when the FAA purged him from the Qualified Applicant Register and when he was notified that he had failed the BQ.  Accordingly, the effects of the discrimination were felt by Mr. Brigida while he was residing in Arizona.[3]

Defendants attempt to distinguish *Passantino* because that case involved discrimination in a promotion decision.  Defendants' Motion at 7.  However, the court's reasoning for adopting a liberal interpretation of Title VII's venue provision applies equally in this case.  In reaching its decision that Title VII's venue provision allows a suit to be brought in a judicial district where the effects of the discrimination are felt, the court drew analogies to its cases involving personal jurisdiction.  *Passantino*, 212 F.3d at 505.  Specifically, the court noted that personal jurisdiction over a defendant is proper even in cases where the defendant has "absolutely no physical contact" with the forum state when the defendant's policies have effects in the state and the state has "an interest in providing a forum for the protection of its residents."  *Id.* (citing *Haisten v. Grass Valley Medical Reimbursement Fund*, 784 F.2d 1392, 1397–98 (9th Cir.1986)).

In the instant case, Arizona has an interest in providing a forum to protect its residents.  Not only was Mr. Brigida a resident of the state when he applied for an ATCS position, Arizona has an interest in protecting its public institutions, like ASU, which

---

[3] Additionally, approximately 270 potential class members have contacted Plaintiff's legal counsel, 34 of which graduated from CTI Institutions in Arizona or reside in Arizona.  Second Amended Complaint ¶ 93.  As a result, the effects of the discrimination were felt in Arizona beyond Mr. Brigida.

provided the CTI program, and other residents of Arizona who are putative Class members. Furthermore, the FAA's connection with Arizona is even greater than the defendants' connection with the forum states in *Passantino* and *Haisten*, because the FAA has offices in Arizona. *See* Federal Aviation Administration, *Scottsdale FSDO-Contact the Office*, https://www.faa.gov/about/office_org/field_offices/fsdo/sdl/contact/ (last visited September 30, 2016).

Additionally, the court in *Passantino* noted that interpreting Title VII's venue provisions against plaintiffs might lead to "national companies with distant offices … try[ing] to force plaintiffs to litigate far away from their homes" which would create "a burden inconsistent with the beneficent purposes of Title VII." 212 F.3d at 505. Although Mr. Brigida has since moved, he was a resident of Arizona when he filed the EEO Complaint that started this litigation process. *See* Declaration of Andrew Brigida ¶ 9.[4] As a resident of Arizona, he hired Mr. Pearson, a local attorney, who continues to represent him in this litigation. *Id.* ¶ 6. Mr. Brigida's family is in Arizona and he retains close ties with the state. *Id.* ¶ 11. As a result, Mr. Brigida chose to file this case in Arizona. This decision was proper under Title VII, because the effects of the FAA's discrimination were felt in Arizona and Arizona has an interest in providing a forum to remedy that discrimination. Accordingly, this Court is the proper venue for this litigation, and this Court should deny Defendants' motion to transfer.

**B.      This Court Should Not Transfer This Case Under 28 U.S.C. § 1404(a).**

_____

[4] Mr. Brigida's Declaration is attached hereto as Exhibit A.

1    Additionally, this Court should not transfer this case pursuant to 28 U.S.C. §

2  1404(a) because Defendants are unable to meet their heavy burden to demonstrate that

3  transfer is proper.  When deciding whether to transfer, "a court must balance the

4  preference accorded plaintiff's choice of forum with the burden of litigating in an

5  inconvenient forum.  The defendant must make a strong showing of inconvenience to

6  warrant upsetting the plaintiff's choice of forum …." *Decker Coal Co. v.*

7  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Defendants have failed

8  to make a strong showing that any purported inconvenience warrants transfer.

9    Defendants argue that the convenience of the parties, convenience of the

10  witnesses, the cost of litigation, the ease of access to sources of proof, and the availability

11  of compulsory process to compel attendance of nonparty witnesses weigh in favor of

12  transfer.  Defendants' argument, however, only takes into account the effect of transfer

13  on Defendants, and not the effect on Mr. Brigida.  *See Kewlmetal Inc.,* No. 2:15-CV-

14  01008 JWS, 2015 WL 8758065, at *7 ("Transfer would merely shift rather than eliminate

15  the cost and inconvenience of obtaining witnesses.").  As demonstrated above, dozens of

16  putative Class members, and potential witnesses, reside in Arizona, and have contacted

17  Mr. Brigida's counsel.  Those involved in the CTI program at ASU will likely have

18  relevant information about CTI training and are potential witnesses in this case.  Finally,

19  although counsel has not yet identified expert witnesses at this stage in the litigation, they

20  plan to look for experts near their offices in Arizona and Colorado.  As to the ease of

21  access to sources of proof "the documentary and physical proof in this case will likely be

22  maintained by both parties," including at Mr. Pearson's office in Arizona.  *Kewlmetal*

15

*Inc.,* No. 2:15-CV-01008 JWS, 2015 WL 8758065, at *7.  As to the availability of compulsory process to compel attendance of nonparty witnesses, there is no guarantee that nonparty witnesses will remain within 100 miles of either Arizona or D.C. and, thus, that factor does not weigh in favor of transfer.

Finally, the costs of litigation are significantly cheaper in Arizona than in D.C.. Plaintiff's counsel are in Arizona and Colorado.  For Mr. Pearson, who resides in Arizona, there is a *de minimis* cost associated with litigating in Arizona.  For Mr. McCoy and Mr. Lechner, travel to Arizona is less expensive and time consuming than travel to D.C..  Although travel might be lengthy for Defendants' counsel, it is Defendants' choice to assign this case to an attorney working out of the U.S. Department of Justice office in D.C..  Defendants can just as easily assign the case to an attorney with the U.S. Attorney's Office for the District of Arizona.  Accordingly, Defendants have failed to make a strong showing of inconvenience to warrant transfer.

C.   **Even If This Court Were Not The Proper Venue, The District Of Columbia Is Not The Proper Or Convenient Venue For This Litigation.**

Assuming, *arguendo*, that this Court decides that transfer of venue is warranted, this Court should transfer this case to the U.S. District Court for the Western District of Oklahoma, rather than the District of Columbia.  Venue would be proper in the Western District of Oklahoma because, as conceded by Defendants' declarant Rickie Cannon, all CTI graduates must complete a training course at the FAA Academy in Oklahoma City upon hiring by the FAA.  Declaration of Rickie Cannon ¶ 8 [Dkt. No. 27-1].  Thus, absent the FAA's discrimination, Mr. Brigida and the putative Class members would

16

have worked in Oklahoma City, at least for the length of their training. *See* 42 U.S.C. § 2000e-5(f)(3) (Venue is "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice."). Furthermore, the Western District of Oklahoma is more convenient for both sets of litigants than the District of Columbia. As admitted by Defendants, it is likely that relevant witnesses will be located in Oklahoma City, and meetings that preceded the challenged actions were held in Oklahoma City. Defendants' Motion at 13–14. The Western District of Oklahoma would be more convenient, and less expensive, for Plaintiff's witnesses and counsel, as it is closer to Mr. Brigida's preferred venue and his counsels' offices than the District of Columbia. Defendants could also minimize litigation expenses by assigning an attorney who works out of the local U.S. Attorney's office. Accordingly, if this Court chooses to transfer this case, it should transfer the case to the Western District of Oklahoma.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion.

DATED this 30th day of September 2016.

Respectfully submitted,

/s/ Jeffrey Wilson McCoy

Jeffrey Wilson McCoy, *pro hac vice*
Steven J. Lechner, *pro hac vice*
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmccoy@mountainstateslegal.com
lechner@mountainstateslegal.com

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael W. Pearson
Curry, Pearson, & Wooten, PLC
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000
(602) 523-9000 (facsimile)
mpearson@azlaw.com

Attorneys for Plaintiff Andrew Brigida and
Putative Class Counsel

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on this 30th day of September 2016, I caused a true and

3

4

correct copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO**

5

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND CLAIM; TO**

6

**DISMISS IMPROPER DEFENDANTS; TO DISMISS REQUEST FOR**

7

**IMPROPER RELIEF; AND TO TRANSFER VENUE** to be electronically filed with

8

9

the Clerk of the Court using the Court's CM/ECF system which sent notification of such

10

filing to the following counsel of record in this matter:

11

Arjun Garg

12

Arjun.garg@usdoj.gov

13

14

/s/ Jeffrey Wilson McCoy

Jeffrey Wilson McCoy, Esq. (CO No. 43562)

15

*pro hac vice*

MOUNTAIN STATES LEGAL FOUNDATION

16

2596 South Lewis Way

17

Lakewood, Colorado 80227

(303) 292-2021

18

(303) 292-1980 (facsimile)

19

jmccoy@mountainstateslegal.com

20

Attorney for Plaintiff Andrew Brigida and Putative

21

Class Counsel

22

23

24

25

26

27

28

19