BENJAMIN C. MIZER
 Principal Deputy Assistant Attorney General
CARLOTTA P. WELLS
 Assistant Branch Director
ARJUN GARG (DC Bar No. 975335)
 Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Tel: (202) 305-8613
Fax: (202) 616-8470
Email: arjun.garg@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ANDREW J. BRIGIDA, on behalf of himself and the Class he seeks to represent,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,<br><br>Defendants. | No. 15-CV-02654-PHX-DLR<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND CLAIM; TO DISMISS IMPROPER DEFENDANTS; TO DISMISS REQUEST FOR IMPROPER RELIEF; AND TO TRANSFER VENUE** |

## INTRODUCTION

Plaintiff's opposition fails to rebut Defendants' arguments that this suit should be streamlined by dismissing (1) the equal protection claim, (2) all defendants other than Secretary Foxx, and (3) a request for equitable relief that conflicts with an unchallenged federal statute.  Nor does Plaintiff show why the U.S. District Court for the District of Columbia is not the proper venue for the remaining Title VII claim.

## ARGUMENT

**I.   Plaintiff Cannot Maintain an Equal Protection Claim for the Same Alleged Discrimination in Federal Employment That Underpins His Title VII Claim.**

As the Supreme Court, the Ninth Circuit, this district court, and numerous other courts recognize, the Title VII claim Plaintiff has made is his exclusive legal recourse for

1

1   alleged discrimination in federal employment.  *See* Defs.' Mot. [ECF No. 27] at 5-6.
2   Plaintiff nevertheless contends he can maintain his Fifth Amendment equal protection
3   claim because of "limits to when Congress can foreclose constitutional claims."  Pl.'s
4   Opp'n [ECF No. 29] at 9.  Plaintiff does not, however, cite a single case permitting an
5   equal protection claim to proceed where a Title VII claim was available to challenge the
6   same alleged discrimination in federal employment—which is unsurprising in light of the
7   well-settled principle that "42 U.S.C. § 2000e–16, § 717 of the 1964 Civil Rights Act,
8   which extends Title VII protection to federal employees, is 'the exclusive judicial remedy
9   for claims of discrimination in federal employment.'"  *Smith v. Lujan*, 780 F. Supp. 1275,
10  1279 (D. Ariz. 1991) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)).

11  Ninth Circuit precedent, following the Supreme Court's instruction in *Brown*,
12  forecloses Plaintiff's attempt to sustain an equal protection claim as a tag-along to his Title
13  VII claim.  "[S]ection 717 of Title VII, 42 U.S.C. § 2000e–16, provides the exclusive, pre-
14  emptive remedy for federal employees seeking to redress employment discrimination."
15  *Sommatino v. United States*, 255 F.3d 704, 711 (9th Cir. 2001); *see also Boyd v. U.S. Postal*
16  *Serv.*, 752 F.2d 410, 413-14 (9th Cir. 1985) ("Title VII is the exclusive remedy for
17  discrimination by the federal government on the basis of race, religion, sex or national
18  origin.").  "Due to its comprehensive scope, Title VII preempts other causes of action
19  seeking to redress the same wrong, including constitutional claims based upon the same
20  discriminatory employment actions."  *Dung v. Runyon*, 142 F.3d 443 (9th Cir. 1998)
21  (table).  Plaintiff here "has stated a discrimination claim under Title VII which precludes
22  him from asserting claims under other federal statutes or the Constitution."  *Lockhart v.*
23  *Reed*, 56 F.3d 72 (9th Cir. 1995) (table).

24  The Ninth Circuit has affirmed that Title VII preemption with respect to federal
25  employment discrimination applies to bar equal protection claims in particular.  *See Dung*,
26  142 F.3d at 443 (rejecting argument "that the district court erred in ruling that" claim under
27  "the Equal Protection Clause" was "preempted by Title VII," and confirming that "Title
28  VII provides the exclusive basis for federal jurisdiction for claims of discrimination and

2

retaliation in federal employment"); *Mascarenas v. O'Connor*, 875 F.2d 318 (9th Cir. 1989) (table) (affirming dismissal of claims under "the due process and equal protection clauses of the fifth amendment," "to the extent they are based on allegations of race discrimination," "[b]ecause Title VII is the exclusive remedy for discrimination in federal employment based on race"). Plaintiff does not reconcile his argument with decisions such as these, or explain how a federal district court may deviate from the Supreme Court's and Ninth Circuit's line of controlling authority.

Plaintiff's defense of his equal protection claim rests on a non sequitur. In trying to distinguish *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 197 (9th Cir. 1995) (finding Fifth Amendment *Bivens* claim unavailable to challenge federal employment discrimination), Plaintiff disclaims that his equal protection claim arises under *Bivens* and argues that it arises, "rather, from the principle established in *Ex parte Young*, 209 U.S. 123 (1908)." Pl.'s Opp'n at 8. But *Ex parte Young* is inapposite to claims against *federal* government defendants alleging employment discrimination. "The doctrine of *Ex parte Young* is premised on the notion that a *state* can not authorize a *state* officer to violate the Constitution and laws of the United States." *Natural Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 422 (9th Cir. 1996) (emphases added). With respect to the federal government, by contrast, "[i]t is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) (affirming dismissal where "complaint alleged civil and constitutional law violations").

Plaintiff's invocation of *Ex parte Young* in fact underscores why his equal protection claim fails, even if the Court were only to "consider Mr. Brigida's constitutional claim to grant his requested declaratory relief," which "is prospective, non-monetary relief." Pl.'s Opp'n at 7. Plaintiff cites authority recognizing that, for claims against federal officials, judicial reliance on *Ex parte Young* was superseded decades ago by the waiver of federal sovereign immunity at 5 U.S.C. § 702 as to claims for non-monetary relief. *See EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1085-86 (9th Cir. 2010). That waiver of immunity

3

does *not* apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.  Courts recognize that Section 717 of Title VII is a statute that comes within this carve-out from the waiver of sovereign immunity in 5 U.S.C. § 702 as to claims for non-monetary relief.  *See Nishibayashi v. England*, 360 F. Supp. 2d 1095, 1103 (D. Haw. 2005); *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 3 (D.D.C. 1998).  That is because, per the Supreme Court, "[t]he balance, completeness, and structural integrity of [Section 717 of Title VII] are inconsistent with the . . . contention that the judicial remedy afforded by [Section 717] was designed merely to supplement other putative judicial relief." *Brown*, 425 U.S. at 832.  Rather, this "precisely drawn, detailed statute pre-empts more general remedies" and, "with its rigorous administrative exhaustion requirements and time limitations, [it] would be driven out of currency were immediate access to the courts" available via an equal protection claim. *Id*. at 833-34.

        Plaintiff also recycles a rejected argument that his equal protection claim should be entertained "if there are no other effective means to vindicate a constitutional right" as a result of "different standards for violations of Title VII and the Fifth Amendment."  Pl.'s Opp'n at 7, 9.  The D.C. Circuit long ago confronted this "less than lucid argument" and determined "[w]e need not linger over" it. *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983).  The court concluded that "complainants are comprehensively protected by Title VII against federal employment discrimination" and that "[i]t suffices to point out that if the statute permitted discrimination *in government employment* that the Constitution prohibits, courts would be obliged to hold the statute invalid to the extent it conflicted with the superior norm." *Id*. at 542-43 (emphasis in original).  Here, as in that case, Plaintiff's speculation that Title VII somehow affords less relief gives no basis to "circumvent the 'careful and thorough remedial scheme' Congress ordered" in Section 717 of Title VII. *Id*. at 543.  Contrary to Plaintiff's suggestion that despite Title VII he has "no other effective means to vindicate a constitutional right," Pl.'s Opp'n at 7, his equal protection claim fails precisely because he "has not asserted a separate constitutional claim for which there is no statutory remedy." *White v. Gen. Servs. Admin.*, 652 F.2d 913, 917 (9th Cir. 1981).

**II.     All Defendants Other Than Secretary Foxx Should Be Dismissed.**

If the Court dismisses Plaintiff's equal protection claim, leaving only his Title VII claim, then the U.S. Department of Transportation, Federal Aviation Administration, Michael Huerta, and Stephanie Jones must be dismissed as improper Title VII defendants. *See* Defs.' Mot. at 6. Plaintiff concedes this point. *See* Pl.'s Opp'n at 5 n.1.

**III.    Title VII Does Not Authorize Overwriting an Unchallenged Federal Statute.**

Because of the maxim that "equity follows the law," Plaintiff cannot secure equitable relief restoring an alleged hiring preference that previously existed, where that alleged preference has been superseded by a statute that Plaintiff does not challenge. *See* Defs.' Mot. at 7-9. Plaintiff concedes that the recently-enacted FAA Extension, Safety, and Security Act of 2016—the validity of which Plaintiff does not question—creates a structure of hiring preference for air traffic controllers that "is different from the pre-2014 hiring process" that he asks this Court to resurrect as equitable relief. Pl.'s Opp'n at 10-11. Plaintiff nevertheless argues that the Court may overwrite that unchallenged statute because the Court has "authority under Title VII to make Mr. Brigida and the putative Class members whole in this case." *Id*. at 11.

Title VII provides that upon finding intentional engagement in "an unlawful employment practice," a court "may . . . order such affirmative action as may be appropriate" including "equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). Construing this provision, Plaintiff reads too much into the statement that "the purpose of Title VII [is] to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). Notwithstanding the remedial purpose of Title VII, the *Albemarle* decision does not stand for the proposition that Title VII authorizes a district court to, in contravention of equitable doctrine, impose prospective injunctive relief that subverts an unchallenged federal statute. Instead, *Albemarle*—a decision that in any event concerned backpay rather than prospective injunctive relief—instructs that Title VII creates no "automatic or mandatory remedy," that district courts are to "locate 'a just result' in light of the

circumstances peculiar to the case," "that there may be cases calling for one remedy but not another," and that "discretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Id.* at 415-16, 424.

*Albemarle* thus does not suggest that the authorization in Title VII to order such "equitable relief as the court deems appropriate," 42 U.S.C. § 2000e-5(g)(1), is a license for courts to disregard the "fundamental principle of equity jurisprudence . . . that 'equity follows the law.'" *In re Shoreline Concrete Co.*, 831 F.2d 903, 905 (9th Cir. 1987) (quoting *Hedges v. Dixon County*, 150 U.S. 182, 192 (1893)). Rather, that principle is an example of the "sound legal principles" that constrain the Court's exercise of equitable discretion under Title VII in "the circumstances peculiar to the case" at bar, where a superseding federal statute forecloses returning to the alleged *ex ante* system of hiring preference. *Albemarle*, 422 U.S. at 416, 424.

Plaintiff is thus wrong to conclude that his claim for relief is foreclosed only if the FAA Extension, Safety, and Security Act "expressly repeals or amends the enforcement provisions of Title VII." Pl.'s Opp'n at 11. No such repeal or amendment is necessary to trigger the principle that equity follows the law. And there is no inconsistency between Title VII's authorization of such "equitable relief as the court deems appropriate," 42 U.S.C. § 2000e-5(g)(1), and applying an equitable maxim to constrain a court's exercise of its discretion to fashion appropriate equitable relief under Title VII according to the circumstances of a particular case. *Cf. In re Herrera*, 380 B.R. 446, 453 n.9 (Bankr. W.D. Tex. 2007) (finding that 11 U.S.C. § 105(a)—which states that courts "may issue any order, process, or judgment that is necessary or appropriate" under the Bankruptcy Code—"does not authorize a court to create remedies previously unknown to equity jurisprudence" (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332 (1999)). It is thus immaterial that "the language of the [FAA Extension, Safety, and Security Act] does not irreconcilably conflict with Title VII." Pl.'s Opp'n at 11. Plaintiff's requested relief is improper as matter of law not because of any conflict between that Act and Title VII, but rather because—as Plaintiff does not dispute—the Act supersedes the

6

alleged hiring preference Plaintiff asks this Court to restore as equitable relief.  This claim for improper relief should thus be dismissed pursuant to Rule 12(b)(6) or, in the alternative, stricken pursuant to Rule 12(f).  *See Miller v. I-Flow Corp.*, 2011 WL 13092973, at *2 (D. Ariz. July 6, 2011) (because "a Rule 12(b)(6) motion is the means for dismissing some or all of a pleading," "a party may therefore move to dismiss a prayer for punitive damages pursuant to Rule 12(b)(6)"); *id*. at *3 ("Rule 12(f) permits courts to strike a prayer for relief that is not recoverable as a matter of law.").

**IV.     The Court Should Transfer This Case to the District of Columbia.**

      **A.     Venue in This Court Is Improper Under Title VII.**

Plaintiff does not meet his burden to establish venue is proper in this district for his Title VII claim, because under 42 U.S.C. § 2000e-5(f)(3) Arizona is neither (i) where he "would have worked but for the alleged unlawful employment practice," (ii) where "the employment records relevant to such practice are maintained and administered," nor (iii) where "the unlawful employment practice is alleged to have been committed."  *See* Defs.' Mot. at 10-12.  Plaintiff does not dispute that the first two of these prongs provide no basis for venue in Arizona.  Instead, Plaintiff argues the third prong is satisfied based on judicial gloss, *see Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000), construing that prong to authorize venue where the effects of an employment decision are felt.  *See* Pl.'s Opp'n at 12-14.

Plaintiff fails, however, to rebut that *Passantino* does not apply under the circumstances of this case.  Whereas the defendant in *Passantino* was a private employer, the defendants here are federal government entities.  That distinction makes it inappropriate here to adopt the "liberal interpretation of Title VII's venue provision" in *Passantino* that allowed venue anywhere the effects of the challenged employment decision are felt.  Pl.'s Opp'n at 13.  Instead, the involvement of federal government defendants triggers the principle that "[a]s part of the waiver of sovereign immunity," Title VII's venue "requirements must be given strict interpretation."  *Phillips v. Rubin*, 76 F. Supp. 2d 1079, 1082 (D. Nev. 1999) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990)).

7

This case, unlike *Passantino*, thus calls for strictly construing the federal government's consent to be sued in a venue where "the unlawful employment practice is alleged to have been committed," 42 U.S.C. § 2000e-5(f)(3), without adding gloss extending that statutory language to cover any place where the effects of the employment decision are felt based on drawing "analogies to . . . cases involving personal jurisdiction." Pl.'s Opp'n at 13; *Cf. Mach 1 Air Servs. Inc. v. Bustillos*, 2013 WL 1222567, at *10 (D. Ariz. Mar. 25, 2013) ("Merely being the situs of plaintiff's injury is insufficient" to establish venue under 28 U.S.C. § 1391(b)(2)). Strictly construed, this Title VII venue prong in this case reaches only Washington, D.C., not Arizona. *See* Cannon Decl. [ECF No. 27-1] ¶¶ 12-13, 15.

Plaintiff gains no support from espousing a policy concern not "'to force plaintiffs to litigate far away from their homes.'" Pl.'s Opp'n at 14 (quoting *Passantino*, 212 F.3d at 505).[1] Defendants are trying to have Plaintiff litigate *closer* to his home just outside of Washington, D.C.; it is Plaintiff who has attempted to litigate far away from his home. This policy concern thus has no bearing here. Instead, because venue under Title VII is not proper in Arizona but would be proper in the District of Columbia, the Court may transfer this case to the federal district court there pursuant to 28 U.S.C. § 1406(a).

**B.   Even If Venue in This Court Were Available, The Case Should Be Transferred Under 28 U.S.C. § 1404(a).**

Even if venue were proper in Arizona under Title VII, in the interest of justice the remainder of this action should be transferred to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a) for the convenience of parties and witnesses. *See* Defs.' Mot. at 12-16. Factors weighing in favor of that transfer include: the convenience of the parties, all of which are in or immediately outside of Washington, D.C.; the convenience of the witnesses, insofar as current and former FAA officials expressly

---

[1]   In advancing this argument, Plaintiff relies on a declaration that is defective evidence inasmuch as it appears to bear the Plaintiff's electronic signature rather than his holographic signature. *See* LRCiv 5.5(b); Electronic Case Filing Administrative Policies and Procedures Manual at II.C.2.

8

identified in the complaint work in or around Washington, D.C.; the location where relevant agreements were negotiated and executed, because the challenged decision was made in Washington, D.C.; the differences in cost of litigation, because both Plaintiff and Defendants reside in or around the District of Columbia, as do many likely witnesses; the ease of access to sources of proof, as Defendants' relevant records would primarily be located and collected in Washington, D.C.; and the availability of compulsory process to compel attendance, as at least two former FAA officials identified in the complaint continue to be found in the Washington, D.C. area. *See id*.

Plaintiff attempts to stave off transfer with a series of canards. To start, Plaintiff suggests Defendants bear a "heavy burden to demonstrate that transfer is proper." Pl.'s Opp'n at 15. This assertion ignores that the ordinary deference to a plaintiff's choice of forum does not apply here because Plaintiff brings suit far away from his home forum and on behalf of a putative nationwide class. *See* Defs.' Mot. at 14. Under such circumstances, "the deference given to Plaintiff's choice of forum is slight, if any." *Leyvas v. Bezy*, 2008 WL 2026276, at *5 (D. Ariz. May 9, 2008). Plaintiff has no response to this district court's recognition that "[a]s deference accorded to a plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases." *Koval v. United States*, 2013 WL 6385595, at *4 (D. Ariz. Dec. 6, 2013) (quotation and alteration omitted).

Attempting to contest some of the factors that weigh in favor of transfer, Plaintiff offers speculative, unsupported assertions and an implausible legal standard. For example, Plaintiff cannot escape transfer on the basis of "potential witnesses" in Arizona (none of whom Plaintiff identifies), or based on a "plan to look for experts . . . in Arizona and Colorado." Pl.'s Opp'n at 15. Such speculation about witnesses is doubly ineffective because Plaintiff does not support these and other assertions with competent evidence, relying instead on only the argument of counsel in a brief. Regarding compulsory process to compel non-party witnesses to attend, Plaintiff argues the factor does not support transfer because "there is no guarantee that nonparty witnesses will remain within 100 miles of either Arizona or D.C." Pl.'s Opp'n at 16. This "guarantee" standard, which Plaintiff

9

proclaims without any supporting citation, would render this factor a nullity in all but the rarest case, as there is virtually never a guarantee of where nonparty witnesses will remain.

At bottom, Plaintiff's primary argument for maintaining venue in this district court is the presence of his local counsel in Arizona, which Plaintiff repeatedly references. *See* Pl.'s Opp'n at 15-16; Brigida Decl. [ECF No. 29-1] ¶ 6. This reliance is misplaced. "The fact that Plaintiffs have retained Phoenix counsel is of little consequence to the motion to transfer venue." *Cheval Farm LLC v. Chalon*, 2011 WL 13047301, at *4 (D. Ariz. Jan. 19, 2011). District courts in the Ninth Circuit have repeatedly transferred venue after concluding that "[t]he fact that the plaintiff's counsel is located in the chosen forum is not a significant factor on a motion to transfer venue." *Weyerhaeuser NR Co. v. Robert Bosch Tool Corp.*, 2012 WL 366967, at *3 (D. Nev. Feb. 3, 2012); *see also Pavao v. Unifund CCR Partners*, 934 F. Supp. 2d 1238, 1245 (S.D. Cal. 2013) (same); *Reflex Packaging, Inc. v. Audio Video Color Corp.*, 2013 WL 5568345, at *3 (N.D. Cal. Oct. 9, 2013) ("However, the location of plaintiff's counsel is not an appropriate factor for the Court to consider when deciding a motion to transfer."); *Panetta v. SAP Am., Inc.*, 2005 WL 1774327, at *5 (N.D. Cal. July 26, 2005) (similar); *FieldTurf USA, Inc. v. Blue Sky Int'l, Inc.*, 2012 WL 4510671, at *4 (E.D. Cal. Sept. 30, 2012) (similar).

Revealing that even Plaintiff lacks confidence that venue should remain in Arizona, Plaintiff contends that any transfer should be to the Western District of Oklahoma rather than to the District of Columbia. *See* Pl.'s Opp'n at 16-17. Plaintiff chiefly supports that contention by asserting that venue under Title VII would be proper in the Western District of Oklahoma. *See id.* What matters, however, is whether Oklahoma would be more convenient than the District of Columbia. It would not. Plaintiff lives immediately outside of Washington, D.C., and that is where the individual Defendants are located, where the agency Defendants are headquartered, where the challenged decision was made, where most work leading up to that decision occurred, where Defendants' documents would be primarily located and collected, and where various events discussed in Plaintiff's complaint occurred. *See* Cannon Decl. ¶¶ 2-3, 9-13, 15. No likely witness has been identified in

Oklahoma; rather, Plaintiff's own complaint identifies at least three current or former FAA officials who are found in the District of Columbia. *See* Defs.' Mot. at 13. Plaintiff resorts to claiming "Oklahoma would be more convenient . . . for Plaintiff's . . . counsel," Pl.'s Opp'n at 17, but "convenience of counsel is not a specific factor considered by the Ninth Circuit in making the instant decision regarding transfer of venue." *Leyvas*, 2008 WL 2026276, at *5; *see also SPD Swiss Precision Diagnostics GmbH v. Church & Dwight Co.*, 2009 WL 981233, at *3 (N.D. Cal. Apr. 13, 2009) ("Convenience of [plaintiff's] counsel bears no weight in the analysis of convenience of the witnesses and parties."). In sum, the Court should transfer venue, and transfer should be to the District of Columbia because "[l]itigation should proceed where the case finds its 'center of gravity.'" *Hoefer v. U.S. Dep't of Commerce*, 2000 WL 890862, at *3 (N.D. Cal. June 28, 2000).

## **CONCLUSION**

Defendants respectfully request that the Court (i) dismiss Plaintiff's equal protection claim, (ii) dismiss all defendants other than Secretary Foxx, (iii) dismiss Plaintiff's request for equitable relief giving hiring preference to Plaintiff and the putative class, and (iv) transfer the remainder of this case to the U.S. District Court for the District of Columbia.

DATED: October 11, 2016                    Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

 /s/ *Arjun Garg*
ARJUN GARG (DC Bar No. 975335)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Tel: (202) 305-8613
Fax: (202) 616-8470
Email: arjun.garg@usdoj.gov

*Attorneys for Defendants*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2016, I electronically filed the foregoing document using the Court's CM/ECF System, which will send notice of this filing to all counsel of record.

                                           /s/ *Arjun Garg*
                                           ARJUN GARG