## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANDREW J. BRIGIDA, on behalf of himself and the Class he seeks to represent, | ) ) ) | Civil Case No. 16-cv-2227 (TSC) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ANTHONY R. FOXX, Secretary, U.S. Department of Transportation, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE NOVEMBER 7, 2016 ORDER

Steven J. Lechner, D.D.C. Bar No. AZ 0001
Jeffrey W. McCoy (*pro hac vice*)
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
lechner@mountainstateslegal.com
jmccoy@mountainstateslegal.com

Michael W. Pearson (AZ No. 016281)
Curry, Pearson, & Wooten, PLC
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000
(602) 523-9000 (facsimile)
mpearson@azlaw.com

Attorneys for Plaintiff

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................... iii

GLOSSARY ................................................................................................ vi

INTRODUCTION ....................................................................................... 1

FACTUAL BACKGROUND ....................................................................... 3

I.      THE FAA'S HIRING PROCESS FOR AIR TRAFFIC CONTROL
        SPECIALISTS ................................................................................. 3

II.     THE FAA EXTENSION, SAFETY, AND SECURITY ACT OF 2016 ....... 7

ARGUMENT ............................................................................................... 8

I.      STANDARD OF REVIEW ............................................................... 8

II.     THIS COURT SHOULD RESTORE MR. BRIGIDA'S REQUEST
        FOR EQUITABLE RELIEF ............................................................ 10

        A.      The Arizona District Court Committed A Clear Error Of Law In
                Its Interpretation Of Title VII And The 2016 Act ............................ 10

        B.      The Arizona District Court Misinterpreted The Nature Of This
                Case And This Court Should Restore Mr. Brigida's Request For
                Equitable Relief In Order To Prevent Manifest Injustice ................... 13

        C.      The Arizona District Court Committed A Clear Error Of Fact In
                Striking Mr. Brigida's Request For Equitable Relief......................... 15

III.    IN THE ALTERNATIVE, THIS COURT SHOULD RESTORE MR.
        BRIGIDA'S EQUAL PROTECTION CLAIM FOR RELIEF....................... 16

CONCLUSION.............................................................................................. 17

CERTIFICATE OF SERVICE ....................................................................... 19

## **TABLE OF AUTHORITIES**
(* denotes cases primarily relied upon)

**Page**

### **Cases**

*Albemarle Paper Co. v. Moody*,
    422 U.S. 405 (1975).................................................................... 11, 13

*Branch v. Smith,*
    538 U.S. 254 (2003)........................................................................ 12

*Cobell v. Norton,*
    240 F.3d 1081 (D.C. Cir. 2001)........................................................ 12

*EEOC v. Lockheed Martin Corp.,*
    116 F.3d 110 (4th Cir. 1997) ........................................................... 9

*Erickson v. Pardus,*
    551 U.S. 89 (2007)........................................................................... 9

*Fay v. Perles,*
    59 F. Supp. 3d 128 (D.D.C. 2014)................................................... 10

*Fay v. Perles,*
    No. 14-7114, 2015 WL 4072078 (D.C. Cir. June 26, 2015) .............. 10

*Firestone v. Firestone*,
    76 F.3d 1205 (D.C. Cir. 1996)......................................................... 9

*Franks v. Bowman Transp. Co.,*
    424 U.S. 747 (1976)......................................................................... 11

*Fresh Kist Produce, LLC v. Choi Corp.*
    251 F. Supp. 2d 138 (D.D.C. 2003).................................................. 9

*Harrison v. Lappin,*
    510 F. Supp. 2d 153 (D.D.C. 2007).................................................. 9

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984)........................................................................... 16

*Int'l Ctr. For Tech. Assessment v. Thompson,*
    421 F. Supp. 2d 1 (D.D.C. 2006)...................................................... 9

*Kowal v. MCI Communications Corp.,*
    16 F.3d 1271 (D.C.Cir.1994)............................................................ 9

iii

*M.K. v. Tenet*,
  196 F. Supp. 2d 8 (D.D.C. 2001) ............................................................... 9

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ................................................................................ 12

*Ricci v. DeStefano*,
  557 U.S. 557 (2009) ................................................................................ 15

*\*Traynor v. Turnage*,
  485 U.S. 535 (1988) ................................................................................ 12

*Watt v. Alaska*,
  451 U.S. 259 (1981) ................................................................................ 12

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ................................................................... 10

**Statutes**

28 U.S.C. § 4214 ............................................................................................ 7

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e .................. 2, 10, 11, 12, 13, 15, 16, 17

42 U.S.C. § 2000e-5(g)(1) ............................................................................ 11

FAA Extension, Safety, and Security Act of 2016, Pub. L. 114-190, Section
2106, 130 Stat. 615 (July 15, 2016), *codified at* 49 U.S.C. § 44506 .......... 2, 7, 12, 13, 14, 15, 16

49 U.S.C. § 44506(f)(1)(A) ............................................................................ 7

49 U.S.C. § 44506(f)(1)(B)(i) ........................................................................ 7

49 U.S.C. § 44506(f)(1)(B)(ii) ....................................................................... 7

49 U.S.C. § 44506(f)(2)(A) ............................................................................ 8

49 U.S.C. § 44506(f)(2)(B)(i) ...................................................................... 8, 15

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 2, 9

Fed. R. Civ. P.  12(f) ............................................................................... 2, 9, 10

Fed. R. Civ. P. 54(b) ................................................................................. 8, 9

Fed. R. Civ. P. 59(e) ................................................................................. 9

## **GLOSSARY**

2016 FAA Act - FAA Extension, Safety, and Security Act of 2016, Pub. L. 114-190

ATCS - Air Traffic Controller Specialist

AT-SAT - Air Traffic Control Selection and Training Examination

BQ - Biographical Questionnaire

CTI Program - Air Traffic-Collegiate Training Initiative Program

DOT - U.S. Department of Transportation

EEO - Equal Employment Opportunity

FAA- Federal Aviation Administration

GPA - General Public Announcement Hiring

OTS - Off-the-Street Hiring

Second Amended Complaint - Second Amended and Supplemental Class Action Complaint For Declaratory and Injunctive Relief and Damages [Dkt. No. 26]

Secretary - Secretary, U.S. Department of Transportation

Title VII - Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

VRA – Veteran's Recruitment Appointment

# INTRODUCTION

This case arises out of Defendant's race-based discrimination against Plaintiff Andrew J. Brigida and a putative Class of applicants for air traffic control specialist ("ATCS") positions. Second Amended and Supplemental Class Action Complaint For Declaratory and Injunctive Relief and Damages [Dkt. No. 26] ("Second Amended Complaint") ¶¶ 21–87.  As a result of Defendant's discrimination, Mr. Brigida and the putative Class members lost employment opportunities with the Federal Aviation Administration ("FAA").  *Id.* ¶ 66.  Prior to 2014, the FAA established the Air Traffic-Collegiate Training Initiative ("CTI") program, and partnered with colleges and universities to "develop, deliver, and implement air traffic control recruiting, selection, and training."  *Id.* ¶¶ 22–23.  Graduates from CTI institutions who passed an aptitude test called the Air Traffic Control Selection and Training examination ("AT-SAT"), entered a direct hire pool of applicants, were placed on a "Qualified Applicant Register," and were given hiring preference for ATCS positions.  *Id.* ¶ 31.  Prior to 2014, Mr. Brigida and the putative Class members had graduated from CTI programs, had passed the AT-SAT, and were placed on the Qualified Applicant Register.  *Id.* ¶ 66. 77–78.

In 2013, the FAA made a racially-motivated decision to change its hiring policies, and the new hiring process was implemented in February of 2014.  Second Amended Complaint ¶¶ 47–65.  The new hiring process required all hiring for ATCS positions to be made through General Public Announcement ("GPA") hiring, commonly referred to as Off-the-Street ("OTS") hiring.  *Id.* ¶ 50.  To be eligible to be hired, an applicant must first take and pass a biographical questionnaire ("BQ").  *Id.*  If the applicant passed the BQ, then he or she would be administered the AT-SAT.  *Id.*  Additionally, in February 2014, the FAA purged the Qualified Applicant Register and informed the applicants on the register that they would need to reapply under the

new hiring process. *Id.* ¶¶ 50, 66. Mr. Brigida and the putative Class members reapplied, but failed the BQ and, as a result, were determined to be ineligible for an ATCS position. *Id.* at ¶ 82.

On December 30, 2015, Mr. Brigida, on behalf of himself and the Class he seeks to represent, filed this action and alleged that the FAA's racially-motivated actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and the Equal Protection Component of the Due Process Clause of the Fifth Amendment. [Dkt. No. 1]. On July 15, 2016, Congress passed the FAA Extension, Safety, and Security Act of 2016 ("2016 FAA Act") which, *inter alia*, addressed the hiring of ATCS positions by the FAA. FAA Extension, Safety, and Security Act of 2016, Pub. L. 114-190, Section 2106, 130 Stat. 615, 620 (July 15, 2016), *codified at* 49 U.S.C. § 44506. As a result of the legislation, Mr. Brigida filed a Second Amended and Supplemental Complaint on August 19, 2016. In the Second Amended and Supplemental Complaint, Mr. Brigida asserted two claims for relief. In his First Claim for Relief, Mr. Brigida alleged that the FAA's actions in purging the Qualified Applicant Register constituted employment discrimination in violation of Title VII. Second Amended Complaint at ¶¶ 97–103. In addition to damages, Mr. Brigida requested, pursuant to Section 706(g) of Title VII, that this Court return Mr. Brigida and the putative Class members to the position they were in prior to the FAA's discrimination. Second Amended Complaint at ¶ 102, prayer for relief ¶ 3. In his Second Claim for Relief, Mr. Brigida alleged that the FAA's actions violated the Equal Protection Component of the Due Process Clause of the Fifth Amendment. Second Amended Complaint at ¶¶ 104–14.

On September 16, 2016, Defendants moved, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), to dismiss Mr. Brigida's second claim for relief, to dismiss all defendants other than Secretary Foxx, to dismiss Mr. Brigida's requested equitable relief, and to transfer this case to

the United States District Court for the District of Columbia.  [Dkt. No. 27] ("Defendants'

Motion").  On November 7, 2016, the United States District Court for the District of Arizona

fully granted Defendants' Motion, and transferred the litigation to this Court.  November 8, 2016

Order [Dkt. No. 33] ("Nov. 7, 2016 Order") at 11.  As demonstrated below, this Court should

restore Mr. Brigida's prayer for equitable relief because, in dismissing those requests for

equitable relief, the district court committed clear errors of law and fact, and set a precedent that

will cause manifest injustice to Mr. Brigida, the Class members, and other federal employees.

## **FACTUAL BACKGROUND**

**I.     THE FAA'S HIRING PROCESS FOR AIR TRAFFIC CONTROL SPECIALISTS.**

In January 1991, the FAA promulgated FAA Order 3120.26, which established the Air

Traffic-Collegiate Training Initiative ("CTI") program to develop, deliver, and implement air

traffic control recruiting, selection, and training.  Second Amended Complaint at ¶ 22.  The

objective of the CTI program was to develop a professional air traffic controller workforce that

possessed the skills necessary to succeed in training at a lower cost to the government.  *Id.* at ¶

23.  In order to achieve the objectives of the CTI program, the FAA entered into partnership

agreements with colleges, universities and other schools ("CTI Institutions") in order to

administer CTI programs throughout the country.  *Id.* at ¶ 24.

After completing a CTI program, CTI Graduates were required to pass a validated air

traffic aptitude test, the AT-SAT, in order to be eligible for employment as a trainee controller.

Second Amended Complaint at ¶ 26.  The AT-SAT is an aptitude assessment test developed to

assess the likelihood of an applicant successfully learning ATCS skills as well as a valid

predictor of achievement of Certified Professional Controller status and air traffic controller job

performance.  *Id.* at ¶¶ 27, 29.  Certified Professional Controller status is achieved after the

successful completion of air traffic training.  *Id.* at ¶ 27.  The AT-SAT tests for characteristics needed to effectively perform as an air traffic controller such as numeric ability, prioritization, planning, tolerance for high intensity, decisiveness, visualization, problem-solving, and movement detection.  *Id.* at ¶ 28.  Since the FAA first instituted the AT-SAT, it has been validated multiple times to ensure the test was in accord with the law and professional guidelines, and most recently validated in March of 2013.  *Id.* at ¶ 30.

Prior to the introduction of the CTI program, the FAA hired ATCS from two main sources.  Second Amended Complaint at ¶ 32.  First, the FAA hired from military trained controllers ("Veteran's Recruitment Appointment" or "VRAs"), who had separated or retired from military service.  *Id.*  Second, the FAA hired through OTS hiring.  *Id.*  OTS hiring most often resulted in candidates lacking air traffic control or college experience.  *Id.* at ¶ 33.  Furthermore, the FAA determined that OTS hiring resulted in unsatisfactory candidates and noted high training failure rates from OTS candidates.  *Id.* at ¶ 34.

Since the CTI program was instituted, most air traffic controller hiring has been from the pool of CTI graduates and VRAs.  Second Amended Complaint ¶ 35.  This was a result of the FAA's policy that gave graduates from CTI programs, who passed the AT-SAT, hiring preference by placing them on a "Qualified Applicant Register."  *Id.* at ¶ 31.  This policy was so successful that, at the end of 2012, the FAA announced that it would not be conducting any further OTS hiring because the CTI schools, along with the VRA applicant pool, were producing sufficient quantities of qualified applicants to fulfill demand.  *Id.* at ¶ 38.

Not only did the CTI program, and VRA applicant pool, meet the stated demand for successfully preparing ATCS, it provided a diverse applicant pool for those positions.  Second Amended Complaint at ¶ 40.  In 2012-2013, 11.5 percent of CTI school enrollees were African-

American.  *Id.* at ¶ 44.  This percentage of African-American enrollees exceeded the percentage

of African Americans in the civilian labor workforce pool in the same years.  *Id.*  In fact, in

February 2013, the FAA published a report on the CTI program that provided that "it is clear that

the FAA AT-CTI schools are making great strides to incorporate minority students and faculty

into their programs ...."  *Id.* at ¶ 43.  On February 8, 2013, Terry Craft, the FAA's CTI program

manager confirmed this conclusion by sending an e-mail to CTI schools in which he stated he

believed that the CTI applicant pool was diverse.  *Id.* at ¶ 42.

Despite this diversity, later in 2013, the FAA published an employment plan that

provided that the FAA was "planning to open a general public announcement in FY 2014 to add

more depth and diversity to our controller hiring sources."  Second Amended Complaint at ¶ 41.

This plan was confirmed on December 30, 2013, when Joseph Teixeira, the FAA's Vice

President for Safety and Technical Training, sent an e-mail to the CTI schools informing them

that the FAA was going to make changes to the ATCS hiring process as a result of an Equal

Employment Opportunity Commission ("EEOC") directive.  *Id.* at ¶¶ 47, 48.  Specifically, Mr.

Teixeira informed the CTI schools that they were going to eliminate existing inventories of past

applicants, including the Qualified Applicant Register of qualified CTI graduates, and open up a

nationwide hiring announcement for open ATCS positions.  *Id.* at ¶ 49.  Under the new hiring

process, applicants for ATCS positions would be administered the BQ and, only if they passed

the BQ, would they be administered the AT-SAT.  *Id.* at ¶ 50.

On January 8, 2014, the FAA held a teleconference with the CTI schools about the new

hiring process.  Second Amended Complaint at ¶ 53.  During the teleconference, Mr. Teixeira

stated that "there were no special interest groups involved in the design of the [new] FAA policy

at all" and that the FAA had not informed anyone of the changes prior to December 30, 2013.  *Id*

at ¶ 54.  However, evidence suggests that the FAA worked with several organizations, including

the National Black Coalition of Federal Aviation Employees ("NBCFAE"), to eliminate the CTI

Qualified Applicant Register since 2010, and that the NBCFAE was informed of the 2014

changes prior to December 30, 2013.  *Id.* at ¶¶ 55, 56–63.

Later in January 2014, the FAA eliminated the Qualified Applicant Register and

informed the CTI graduates that were previously on the Register that they would need to reapply.

Second Amended Complaint at ¶ 79.  Plaintiff and putative Class Representative Andrew

Brigida was one of those CTI graduates.  *Id.*  Specifically, Mr. Brigida had graduated from

Arizona State University, a CTI Institution, in 2013 and had passed the AT-SAT assessment with

the top numerical score possible of 100 percent.  *Id.* at ¶¶ 76, 77.  As a result, Mr. Brigida was

initially placed on the Qualified Applicant Register, giving him hiring preference for any open

ATCS position.  *Id.* at ¶ 78.  However, after the FAA eliminated the Qualified Applicant

Register, Mr. Brigida was forced to reapply under the new hiring process.  *Id.* at 80.

On February 25, 2014, Mr. Brigida filed an informal electronic complaint with an Equal

Employment Opportunity Counselor at the Department of Transportation ("DOT"), alleging that

the FAA discriminated against him on the basis of race and gender by removing him from the

Qualified Applicant Register and changing its Air Traffic Controller hiring practice in order to

achieve more diversity.  Second Amended Complaint at ¶ 81.  On February 27, 2014, the FAA

informed Mr. Brigida that he had failed the BQ and was ineligible for an ATCS position.  *Id.* at ¶

82.  On March 31, 2014, Plaintiff Brigida, received his notice of right to file a formal Equal

Employment Opportunity ("EEO") Complaint with the DOT and, as a result, filed a Formal

Complaint, individually and as putative Class Representative, on April 12, 2014.  *Id.* at ¶¶ 83–84.

The EEO Complaint was never resolved and, on December 30, 2015, Mr. Brigida filed this

action.[1]  [Dkt. No. 1].  Approximately 2,000 to 3,500 applicants are similarly situated to Mr.

Brigida, having graduated from a CTI Institution and placed on the Qualified Applicant Register

that was eliminated in 2014.  *Id.* at ¶ 66.

## II.    THE FAA EXTENSION, SAFETY, AND SECURITY ACT OF 2016.

On July 15, 2016, Congress passed the 2016 FAA Act which, *inter alia*, addressed the

hiring of ATCS positions by the FAA.  FAA Extension, Safety, and Security Act of 2016, Pub.

L. 114-190, Section 2106, 130 Stat. 615, 620 (July 15, 2016), codified at 49 U.S.C. § 44506.

Specifically, the Act provides that the FAA should first give preferential treatment for ATCS

positions to qualified individuals maintaining 52 consecutive weeks of civilian or military air

traffic control experience.  49 U.S.C. § 44506(f)(1)(A).  For any remaining open ATCS

positions, the FAA is then required to hire equally from two applicant pools.  49 U.S.C. §

44506(f)(1)(B)(i).  The first pool consists of:  (1) CTI graduates who have received

recommendations from their institution; (2) honorably discharged veterans eligible for a

recruitment appointment pursuant to 38 U.S.C. § 4214; (3) eligible veterans "maintaining

aviation experience obtained in the course of the individual's military experience"; and (4)

preference eligible veterans.  49 U.S.C. § 44506(f)(1)(B)(ii).  The second pool consists of OTS

applicants.  49 U.S.C. § 44506(f)(1)(B)(ii).  Accordingly, the 2016 revised hiring practices

restricts the number of CTI graduates that can be appointed to ATCS positions, and requires

approximately half of appointments to come from OTS applicants.  49 U.S.C. §

44506(f)(1)(B)(i).

---

[1] On April 16, 2014, the DOT sent a letter to Mr. Brigida that acknowledged receipt of the formal EEO Complaint and provided that the EEO Complaint was forwarded to the Equal Employment Opportunity Commission for their recommendation to accept or reject the EEO Complaint.  Second Amended Complaint at ¶ 85.  No action was taken by the Commission until June 30, 2016, when Administrative Judge Cynthia G. McKnight dismissed the EEO Complaint without prejudice as a result of this litigation.  *Id.* at ¶ 86.

Although the Act provides that the FAA shall "provide ... an opportunity to reapply" for an ATCS position under the "revised hiring practices" for any applicant that "was disqualified from the position as the result of a biographical assessment," the Act does not require the FAA to make any specific hiring or appointment decisions with respect to any CTI graduates that were on the FAA's Qualified Applicant Register prior to the FAA's 2014 decision.  49 U.S.C. § 44506(f)(2)(B)(i).  Specifically, under the Act, the FAA is not required to give hiring preference to, or refer for appointment, any CTI graduate who was previously disqualified based on the BQ. *Id.*  Furthermore, although the Act prevents the FAA from using the BQ on applicants from the first pool of applicants (as well as those with previous air traffic control experience), it does not prevent the FAA from using the BQ on OTS hires.  49 U.S.C. § 44506(f)(2)(A).  Therefore, because Mr. Brigida and the putative Class members have failed the BQ, they are ineligible to be hired through the OTS pool, and are only eligible for approximately half of the ATCS openings through the first hiring pool.  Accordingly, because Mr. Brigida and the putative Class members are only eligible for approximately half of any open ATCS positions, and because hiring of those positions is entirely discretionary, it is extremely unlikely that Mr. Brigida and the putative Class members will be restored to the position they were in prior to the 2014 elimination of the Qualified Applicant Register.

## ARGUMENT

### I.    STANDARD OF REVIEW.

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims … does not end the action as to any of the claims or parties and *may be revised at any time before the entry of a judgment adjudicating all the claims ....*"  Fed. R. Civ. P. 54(b) (emphasis added).  An order that dismisses

some portions, but not all, of a complaint is an "interlocutory judgment" because such orders

ensure "that litigation will continue in the district court …."  *M.K. v. Tenet*, 196 F. Supp. 2d 8, 12

(D.D.C. 2001) (internal quotations and citations omitted).  "Reconsideration of an interlocutory

decision … is available under the standard, 'as justice requires.'"  *Id.*

     Under Federal Rule of Civil Procedure 59(e), a court can alter or amend a judgment to

correct a clear error of law or fact and to prevent manifest injustice.  *Firestone v. Firestone*, 76

F.3d 1205, 1208 (D.C. Cir. 1996); *Harrison v. Lappin*, 510 F. Supp. 2d 153, 155 (D.D.C. 2007);

*EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997).  Although the standard for

reconsideration under 59(e) is more stringent than under 54(b), *M.K.*, 196 F. Supp. 2d at 12, a

court still has "considerable discretion" to reconsider and alter a previous order under Rule 59(e).

*Fresh Kist Produce, LLC v. Choi Corp.*, 251 F. Supp. 2d 138, 140 (D.D.C. 2003).

     Because the November 7, 2016 Order was based on Defendant's Motion to Dismiss

under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, this Court should also

consider whether the district court properly applied the standard of review for motions under

those rules.  *See Int'l Ctr. For Tech. Assessment v. Thompson,* 421 F. Supp. 2d 1, 9 (D.D.C.

2006) (reviewing a motion for reconsideration in light of the standard of review for motions to

dismiss).  When analyzing a complaint for failure to state a claim for relief under Federal Rule of

Civil Procedure 12(b)(6), a court "must accept as true all of the factual allegations contained in

the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "grant plaintiffs the benefit of

all inferences that can be derived from the facts alleged[,]" *Kowal v. MCI Communications

Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994).

     Striking a portion of a pleading pursuant to Federal Rule of Civil Procedure 12(f), is a

"disfavored and extreme remedy" usually reserved "where the accusations are indefensible,

harassing, or detract from the dignity of the Court." *Fay v. Perles*, 59 F. Supp. 3d 128, 134

(D.D.C. 2014), *appeal dismissed*, No. 14-7114, 2015 WL 4072078 (D.C. Cir. June 26, 2015).

Indeed, as noted by the Ninth Circuit, "[t]he function of a 12(f) motion to strike is to avoid the

expenditure of time and money that must arise from *litigating spurious issues by dispensing with*

*those issues prior to trial.*"  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir.

2010) (emphasis added).

## II.     THIS COURT SHOULD RESTORE MR. BRIGIDA'S REQUEST FOR EQUITABLE RELIEF.

This Court should restore Mr. Brigida's prayer for equitable relief because, in striking that

relief, the Arizona district court committed clear errors of law and fact and set a precedent that will

cause manifest injustice.  In holding that this Court could not grant Mr. Brigida's requested relief,

the court misinterpreted the legal effect of Title VII and the 2016 FAA Act, assumed facts not yet

in the record, and set a precedent that will allow government agencies to more easily discriminate

against their employees.

### A.     The Arizona District Court Committed A Clear Error Of Law In Its Interpretation Of Title VII And The 2016 Act.

The Arizona district court's November 7, 2016 order is based on a clear error of law

because it misinterprets the language of Title VII, as well as a court's authority under that statute.

In reaching its conclusion that Mr. Brigida could not request equitable relief, the court erroneously

stated that Mr. Brigida did not cite any authority for granting the equitable relief he seeks.

November 7, 2016 Order at 8.  In fact, Mr. Brigida made clear that his request for equitable relief is

consistent with the language and the purpose of Title VII.  *See* [Dkt. No. 29] ("Plaintiff's

Opposition") at 9–12.  Indeed, Title VII's enforcement provisions grant district courts broad

equitable powers to cure the effects of discriminatory actions perpetrated by federal agencies, such as the FAA:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, *and order such affirmative action as may be appropriate* ….

42 U.S.C. § 2000e-5(g)(1) (emphasis added).  Congress adopted this language in order to  make "persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody* , 422 U.S. 405, 418 (1975).  Part of making persons whole for injuries suffered on account of unlawful employment discrimination is returning them to the position they were in prior to the discrimination.  *Id.* at 421 (Title VII "requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination."  (internal quotations omitted)); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 769 (1976) (stating that Title VII's "affirmative action" language authorizes an award of seniority status).

Instead of focusing on the clear language of Title VII's enforcement provisions, the Arizona district court looked solely at the language in one portion of the 2016 FAA Act. November 7, 2016 Order at 7 ("In enacting the FAA Extension, Safety, and Security Act, Congress sought to give hiring preference to more experienced air traffic controllers.").  Yet, in limiting its focus, the court never determined whether the 2016 FAA Act actually intended to alter or limit Title VII, which is the statutory provision which provides the basis for this Court's jurisdiction and is the foundation for this litigation.  Second Amended Complaint at ¶ 1. Because this case is brought under Title VII, this Court can grant any and all relief authorized by

Title VII, unless a later act clearly and manifestly limits that relief.  *See Cobell v. Norton*, 240

F.3d 1081, 1108 (D.C. Cir. 2001) (explaining that a court has full equitable powers to grant relief

unless Congress specifically restricts that power).

     Instead of making a determination about whether the 2016 FAA Act altered Title VII's

enforcement provisions, the Arizona district court merely stated that it cannot "prescribe relief in

contravention of an unchallenged statute [*i.e.*, the 2016 FAA Act]."  November 7, 2016 Order at

7.  The court's language suggests that the 2016 FAA Act implicitly limits the relief Mr. Brigida

and the putative Class members can seek.  However, the Supreme Court has made clear that

"repeals by implication are not favored' and will not be presumed unless the 'intention of the

legislature to repeal [is] clear and manifest.'"  *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,

551 U.S. 644, 662 (2007) (quoting *Watt v. Alaska,* 451 U.S. 259, 267 (1981)) (alterations in

original).  Therefore, before the Arizona district court could rule that Mr. Brigida's requested

relief was barred by the 2016 FAA Act, it was required to make a determination that, in passing

the 2016 FAA Act, Congress clearly and manifestly intended to limit the relief available by Title

VII.

     The court did not, and could not, make that determination.  Courts do not infer a statutory

repeal "unless the later statute expressly contradict[s] the original act" or unless such a

construction "is absolutely necessary ... in order that [the] words [of the later statute] shall have

any meaning at all."  *Traynor v. Turnage,* 485 U.S. 535, 548 (1988) (internal quotation omitted);

*see also Branch v. Smith,* 538 U.S. 254, 273 (2003) ( "An implied repeal will only be found

where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the

whole subject of the earlier one and is clearly intended as a substitute") (internal quotation

omitted).  The language of the 2016 FAA Act does not irreconcilably conflict with Title VII and

the 2016 FAA Act offers no indication that Congress intended to rid this Court of its authority under Title VII to make Mr. Brigida and the putative Class members whole.

In fact, the Arizona district court's interpretation of the 2016 FAA Act sets a precedent that directly contradicts Congress's purpose in passing Title VII. Under the court's reasoning, an agency could fire an employee based on race, and not be required to rehire that employee so long as Congress passes an intervening law that provides that the agency must fill that position in some other manner. Title VII, however, places a duty on a court to "so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future," by crafting a relief that restores victims of discrimination to the position they were in prior to the discriminatory actions. *Albemarle Paper Co.*, 422 U.S. at 418 (internal quotations omitted). If Congress truly intended to directly contradict the language and purpose of Title VII when it passed the 2016 FAA Act, it would have stated that intention. Because Congress did not, the court erred in holding that the 2016 FAA Act limited the type of remedy Mr. Brigida could request in this case. Accordingly, this Court should grant the motion to reconsider to correct that error and prevent manifest injustice to Mr. Brigida and the putative Class members.

> **B.    The Arizona District Court Misinterpreted The Nature Of This Case And This Court Should Restore Mr. Brigida's Request For Equitable Relief In Order To Prevent Manifest Injustice.**

Furthermore, in dismissing Mr. Brigida's request for equitable relief, the Arizona district court erred in its interpretation of the nature of this case.[2] The court mistakenly framed Mr. Brigida's challenge as solely challenging the hiring procedures implemented by the FAA in 2014. November 7, 2016 Order at 7 ("The Act supersedes the FAA hiring practices challenged

---

[2] The Court's clear error of law in interpreting Title VII and the FAA Act provides sufficient justification to reconsider the November 7, 2016 Order. That reconsideration is needed to prevent manifest injustice is an additional and independent basis for granting Mr. Brigida's motion.

by Brigida in this suit."). In fact, after the passage of the 2016 FAA Act, Mr. Brigida amended

his complaint to remove the request to enjoin the FAA from implementing the 2014 hiring

practices. *See* [Dkt. No. 25–1]. What remained was Mr. Brigida's challenge to the FAA's

racially motivated decision to remove him and the other putative Class members from the

Qualified Applicant Register. *See* Second Amended Complaint at ¶¶ 97–103. In order to

remedy the damage caused by that decision, Mr. Brigida requested that he and the putative Class

members be returned to the position they were in prior to the FAA's discriminatory actions. *Id.*

at Prayer for Relief, ¶ 3; *see* Plaintiff's Opposition at 10.

The Arizona district court's mistaken interpretation of the nature of the case led it to

focus only on the first aspect of the 2016 FAA Act's new hiring procedure, namely the

requirement that FAA give preferential treatment to those with previous air traffic controller

experience. November 7, 2016 Order at 7. The court erred in solely focusing on this aspect of

the 2016 FAA Act because this portion did not significantly change the FAA's hiring

procedures. *See* Second Amended Complaint at ¶¶ 32, 35, 38. Even after the implementation of

the CTI program, those with military experience were hired alongside CTI graduates for open

ATCS positions. *Id.*

Instead, the reason that the 2016 FAA Act does not make Mr. Brigida and the putative

Class members whole is because of the second part of the 2016 FAA Act's new hiring

procedure. In fact, the 2016 FAA Act makes it nearly impossible for Mr. Brigida and the

putative Class members to be restored to the position they were in prior to the FAA's

discrimination. While the 2016 FAA Act allows Mr. Brigida and the putative Class members to

reapply for an ATCS position, if and when they apply they will be placed in a pool with other

CTI graduates. This pool of CTI graduates will only fill half of the open ATCS positions, with

the other half being filled by OTS hires.  Furthermore, whether Mr. Brigida and the putative

Class members are hired under the 2016 FAA Act is at the discretion of the FAA.  49 U.S.C. §

44506(f)(2)(B)(i).  Accordingly, the 2016 FAA Act makes no guarantee that Mr. Brigida and the

putative Class members will be restored to the position they were in prior to the FAA's

discrimination.

As a result, the Court's focus on the 2016 FAA Act was misguided, as its passage does

nothing to remedy Mr. Brigida's and the putative Class members' injuries.  Mr. Brigida and the

putative Class members spent many years, and considerable resources, studying to be an ATCS.

*See* Second Amended Complaint at ¶ 77.  Now, based on the Arizona district court's order, they

have no guarantee that their time and effort will result in an opportunity to achieve the job they

desire.  *Cf. Ricci v. DeStefano*, 557 U.S. 557, 583–84 (2009) ("[S]ome of the firefighters here

invested substantial time, money, and personal commitment in preparing for the tests.

Employment tests can be an important part of a neutral selection system that safeguards against

the very racial animosities Title VII was intended to prevent.  Here, however, the firefighters saw

their efforts invalidated by the City in sole reliance upon race-based statistics.").  Accordingly, in

the interest of justice, this Court should restore Mr. Brigida's request for equitable relief and

allow him and the putative Class members the opportunity to seek relief that would make them

whole for the injuries suffered as a result of the FAA's discriminatory actions.

### C.    The Arizona District Court Committed A Clear Error Of Fact In Striking Mr. Brigida's Request For Equitable Relief.

Finally, this Court should also reconsider, alter, and/or amend the November 7, 2016

order because the Arizona district court's ruling was based on a clear error of fact.[3]  The court

---

[3] The Court's clear error of fact is also an additional and independent basis for granting Mr. Brigida's motion.

stated that it could not grant Mr. Brigida's equitable relief because granting such relief would cause the FAA to be bound by inconsistent orders, one from the court and one from Congress. November 7, 2016 Order at 8. However, whether granting Mr. Brigida's requested equitable relief would cause contradictory orders is a question of fact that has yet to be determined. Whether the FAA can comply with both the hiring preferences of the 2016 Act, and the requested hiring preferences in a future order by this court, depends on the number of open ATCS positions, the number of applicants with air traffic controller experience, and the number of Class members who wish to be rehired. The Arizona district court cited no evidence in the record that indicates that there are not enough open ATCS positions to hire both applicants with air traffic controller experience and the putative Class members who were unlawfully eliminated from the Qualified Applicant Register. In fact, in the past, the FAA was always able to hire both applicants with military air traffic controller experience and CTI graduates. *See* Second Amended Complaint at ¶ 40. There were even times where the number of CTI graduates was insufficient to meet the demand for ATCS positions. *Id.* at ¶ 37. Accordingly, in striking Mr. Brigida's request for equitable relief, the court made a clear mistake of fact by assuming facts not in the record about the number of open ATCS positions and the applicants for those positions. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.").

## III.    IN THE ALTERNATIVE, THIS COURT SHOULD RESTORE MR. BRIGIDA'S EQUAL PROTECTION CLAIM FOR RELIEF.

Assuming, *arguendo*, that the 2016 FAA Act repeals the enforcement provisions of Title VII, then this Court should restore Mr. Brigida's Second Claim for relief. Second Amended Complaint at ¶¶ 104–14. The court's ruling that Mr. Brigida cannot bring equitable relief under Title VII contradicts its statement, in dismissing Mr. Brigida's equal protection claim, that Mr.

Brigida's constitutional injuries are remedial under Title VII and that Title VII affords no less relief than under an equal protection claim.  November 7, 2016 Order at 5.  If Mr. Brigida is truly statutorily barred from seeking equitable relief that would make him whole, then the court erred in dismissing Mr. Brigida's equal protection claim because there is no other manner in which Mr. Brigida can fully vindicate the violation of his constitutional rights.  *See* Plaintiff's Opposition at 5–9.  Accordingly, if this Court does not restore Mr. Brigida's request for equitable relief under Title VII, this Court should restore Mr. Brigida's Second Claim for Relief.

## **CONCLUSION**

For the foregoing reasons, and in the interest of justice, this Court should reconsider, alter, and/or amend the November 7, 2016 Order and restore Mr. Brigida's request that the Qualified Applicant Register be reinstated and that the FAA give hiring preference Mr. Brigida and the other putative Class Members.

DATED this 2nd day of December 2016.

Respectfully submitted,

MOUNTAINS STATES LEGAL FOUNDATION

s/ Steven J. Lechner
Steven J. Lechner, D.C. Bar No. AZ 0001
Jeffrey W. McCoy (*pro hac vice*)
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, CO 80227
(303) 292-2021
(303) 292-1980 (facsimile)
lechner@mountainstateslegal.com
jmccoy@mountainstateslegal.com

Michael W. Pearson (AZ No. 016281)
Curry, Pearson, & Wooten, PLC
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000

(602) 523-9000 (facsimile)
mpearson@azlaw.com

Attorneys for Plaintiff.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of December 2016, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF system which sent notification of such filing to the following counsel of record in this matter:

Arjun Garg
Arjun.garg@usdoj.gov

s/ Steven J. Lechner
Steven J. Lechner
