## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )

ANDREW J. BRIGIDA, on behalf of      )
himself and the Class he seeks to represent,  )
                                          )

             Plaintiff,           )

                                          )

             v.                 )     Civil Case No. 16-cv-2227 (TSC)

                                          )

ANTHONY R. FOXX, Secretary, U.S.    )
Department of Transportation,          )
                                          )

             Defendant.        )
_____)

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR
## <u>RECONSIDERATION OF THE NOVEMBER 7, 2016 ORDER</u>

DATED: January 6, 2017               BENJAMIN C. MIZER
                                      Principal Deputy Assistant Attorney General

                                      CARLOTTA P. WELLS
                                      Assistant Branch Director
                                      Civil Division, Federal Programs Branch

                                      ARJUN GARG (D.C. Bar No. 975335)
                                      Trial Attorney
                                      U.S. Department of Justice
                                      Civil Division, Federal Programs Branch
                                      20 Massachusetts Ave, NW
                                      Washington, DC 20530
                                      Telephone: (202) 305-8613
                                      Facsimile: (202) 616-8470
                                      Email: arjun.garg@usdoj.gov

                                      *Counsel for Defendant*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 2

STANDARD OF REVIEW ..................................................................................... 4

ARGUMENT ........................................................................................................... 6

    I.    Plaintiff Improperly Reprises Rejected Arguments. ......................................... 6

    II.    Plaintiff's Requested Equitable Relief Was Properly Stricken ........................ 8

        A.  Judge Rayes Committed No Clear Error of Law ...................................... 11

        B.  Striking the Requested Equitable Relief Resulted in No Manifest Injustice ............ 13

        C.  Judge Rayes Committed No Clear Error of Fact. ..................................... 14

    III.  Plaintiff's Equal Protection Claim Was Properly Dismissed. ........................ 15

CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Albemarle Paper Co. v. Moody*,
    422 U.S. 405 (1975) ....................................................................................................... 11, 12

*Ali v. Carnegie Inst. of Wash.*,
    309 F.R.D. 77 (D.D.C. 2015) ................................................................................................. 6, 8

*Armstrong v. Exceptional Child Ctr., Inc.*,
    135 S. Ct. 1378 (2015) .......................................................................................................... 10

*Badaracco v. Commissioner*,
    464 U.S. 386 (1984) .............................................................................................................. 13

*Brown v. GSA*,
    425 U.S. 820 (1976) .............................................................................................................. 16

*Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*,
    630 F.3d 217 (D.C. Cir. 2011) ............................................................................................... 4

*Cronin v. Adam A. Weschler & Son, Inc.*,
    904 F. Supp. 2d 37 (D.D.C. 2012) ...................................................................................... 10

*Estate of Gaither ex rel. Gaither v. Dist. of Columbia*,
    771 F. Supp. 2d 5 (D.D.C. 2011) ........................................................................................ 5, 6

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999) .............................................................................................................. 12

*Hall & Assocs. v. EPA*,
    2016 WL 5396653 (D.D.C. Sep. 27, 2016) ....................................................................... 1, 5

*Hedges v. Dixon Cty.*,
    150 U.S. 182 (1893) .......................................................................................................... 10, 12

*Howard v. Gutierrez*,
    571 F. Supp. 2d 145 (D.D.C. 2008) ...................................................................................... 5

*Imagecube LLC v. Boeing Co.*,
    2009 WL 703171 (N.D. Ill. Mar. 17, 2009) ......................................................................... 5

*In re Herrera*,
    380 B.R. 446 (Bankr. W.D. Tex. 2007) .............................................................................. 12

*In re Shoreline Concrete Co.*,
    831 F.2d 903 (9th Cir. 1987) ................................................................. 10, 12

*Kizas v. Webster*,
    707 F.2d 524 (D.C. Cir. 1983) ................................................................. 16

*LaShawn A. by Moore v. Barry*,
    144 F.3d 847 (D.C. Cir. 1998) ................................................................. 10

*Miller v. I-Flow Corp.*,
    2011 WL 13092973 (D. Ariz. July 6, 2011) ........................................... 10

*Mylan Pharms., Inc. v. Sebelius*,
    856 F. Supp. 2d 196 (D.D.C. 2012) ......................................................... 14

*Parker v. John Moriarty & Assocs.*,
    2016 WL 7438435 (D.D.C. Dec. 21, 2016) ............................................... 5

*Phillips v. Comm'r of Internal Revenue*,
    851 F.2d 1492 (D.C. Cir. 1988) ............................................................... 13

*Singh v. George Wash. Univ.*,
    383 F. Supp. 2d 99 (D.D.C. 2005) ..................................................... 1, 4, 5

*Smith v. Lujan*,
    780 F. Supp. 1275 (D. Ariz. 1991) ......................................................... 16

*Stand Up for California! v. U.S. Dep't of the Interior*,
    919 F. Supp. 2d 51 (D.D.C. 2013) ........................................................... 14

*Torre v. Barry*,
    661 F.2d 1371 (D.C. Cir. 1981) ............................................................... 16

*United States v. Microsoft Corp*,
    147 F.3d 935 (D.C. Cir. 1998) ................................................................. 12

*United States v. Weaver*,
    2013 WL 12061612 (D.D.C. Aug. 7, 2013) ............................................... 1

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.*,
    893 F. Supp. 2d 258 (D.D.C. 2012) ........................................................... 5

**STATUTES & RULES**

11 U.S.C. § 105 ............................................................................................... 12

42 U.S.C. § 2000e-5 .............................................................................. 7, 11, 12

42 U.S.C. § 2000e-16............................................................................................... 1, 16

49 U.S.C. § 44506.............................................................................................. 3, 4, 9, 13

Fed. R. Civ. P. 54.................................................................................................... 4, 6

## INTRODUCTION

Plaintiff initiated this suit in federal district court in Arizona. His Second Amended Complaint [ECF. No. 26] named five defendants, brought claims under Title VII and equal protection, and requested multiple items of relief. The five defendants moved to dismiss the equal protection claim, to dismiss all defendants but Secretary Foxx, to dismiss or strike a request for equitable relief that conflicts with an unchallenged federal statute, and to transfer the case to the U.S. District Court for the District of Columbia. *See* Defs.' Mot. to Dismiss [ECF No. 27]. U.S. District Judge Rayes in Arizona granted that motion in full. *See* Order [ECF No. 33].

Plaintiff now moves this Court to reconsider Judge Rayes' Order, asking that the Court restore Plaintiff's stricken request for equitable relief or, alternatively, restore Plaintiff's dismissed equal protection claim. *See* Pl.'s Mot. for Reconsideration [ECF No. 39]. Plaintiff does not meet his burden to disturb Judge Rayes' ruling.

As a threshold defect, Plaintiff's motion reprises rejected arguments in the hope of finding favor with a newly-assigned judge. But there is no "good reason" why, "hav[ing] once battled for the court's decision," Plaintiff should be "permitted[] to battle for it again." *Hall & Assocs. v. EPA*, 2016 WL 5396653, at *3 (D.D.C. Sep. 27, 2016) (quoting *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). Plaintiff "asks for a second bite at the apple, which is precisely what reconsideration of an order is *not* designed to provide." *United States v. Weaver*, 2013 WL 12061612, at *1 (D.D.C. Aug. 7, 2013).

Plaintiff moreover does not demonstrate any infirmity in the prior ruling. As Judge Rayes correctly found, the requested equitable relief is improper because "the Court cannot prescribe relief in contravention of an unchallenged statute," and Plaintiff's "equal protection claim is precluded by § 717" of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, which extends Title VII protection to federal employees. Order at 5, 7. Reconsideration is unwarranted.

## BACKGROUND

This lawsuit concerns changes the Federal Aviation Administration ("FAA") made to its process for hiring air traffic control specialists—changes that, according to Plaintiff, unlawfully discriminated against him and a putative class he seeks to represent. Historically, the FAA has hired candidates to become air traffic controllers from various categories of applicants, including among others: (1) veterans with air traffic control experience attained during military service, (2) graduates of programs accredited under the FAA's Collegiate Training Initiative ("CTI") program, and (3) members of the general public who may have no prior training or experience in air traffic control. *See* Second Am. Compl. ¶¶ 32-33, 35.[1]

In advance of an air traffic controller hiring round in 2014, the FAA advised that, rather than using separate hiring processes predicated on distinguishing among categories of applicants, "a single vacancy announcement will be used for all applicant sources" and "[a]ll applicants will be evaluated against the same set of qualification standards." Second Am. Compl., Exh. 2 at 3 [Dkt. No. 26-2]. In addition to instituting uniform qualification standards, the FAA advised it was implementing a "revised testing process" that applicants must pass in order to be further considered for selection. *Id*. Previously, certain applicants were required to pass the FAA's "AT-SAT" test in order to be eligible for hiring as a trainee controller. *See* Second Am. Compl. ¶¶ 26, 29. Under the 2014 vacancy announcement, all applicants would be required first to pass a new "biographical questionnaire" in order to be eligible then to take the "cognitive portion of the AT-SAT" exam. Second Am. Compl., Exh. 2 at 3. The FAA advised that, based on the uniform qualification standards and uniform testing process, "a single nationwide referral list will be generated containing all candidates who meet the qualification standards and pass the assessments," from

---

[1]    As Plaintiff's motion for reconsideration arises out of the grant of a motion to dismiss, for purposes of this brief Defendant accepts as true all of Plaintiff's well-pled factual allegations.

which selections would be made according to "grouping candidates by assessment scores and veteran's preference." *Id.*

Plaintiff, who concedes that the "FAA's actions" were "perhaps laudable," Second Am. Compl. ¶ 106, nevertheless claims he suffered unlawful discrimination due to the FAA's standardization of its process for hiring air traffic control specialists. Plaintiff asserts that, prior to the FAA's 2014 vacancy announcement, he had graduated from a CTI program and had passed the AT-SAT test. *See id.* ¶¶ 76-77. He further contends that, prior to the 2014 vacancy announcement, the FAA had accorded a "hiring preference" to CTI graduates who had passed the AT-SAT test. *See id.* ¶ 31. Plaintiff's application under the 2014 vacancy announcement, however, was unsuccessful. *See id.* ¶¶ 80, 82. Plaintiff now alleges that, via the 2014 vacancy announcement, the FAA impermissibly "adopted a new hiring practice for Air Traffic Controllers with the intent and purpose of increasing the racial diversity of Air Traffic Controller applicants." *See id.* ¶¶ 98, 105. On a theory of race discrimination, Plaintiff brings claims for relief under Title VII of the Civil Rights Act of 1964, *see id.* ¶¶ 9-13, 97-103, and under the Equal Protection Component of the Due Process Clause of the Fifth Amendment, *see id.* ¶¶ 14-20, 104-114. On behalf of a putative class, Plaintiff seeks a declaration that the FAA acted unlawfully, an injunction directing the FAA to give hiring preference to him and the putative class, and damages. *See id.* ¶¶ 88-96, prayer for relief.

As Plaintiff recognizes, a statute enacted in July 2016 binds the FAA to various requirements in structuring the process for future hiring of air traffic control specialists. *See id.* ¶¶ 67-73. In section 2106 of the FAA Extension, Safety, and Security Act of 2016 (Pub. L. No. 114-190), codified at 49 U.S.C. § 44506(f), Congress specified that the FAA "shall give preferential consideration" to experienced controllers; that is, "qualified individuals maintaining 52 consecutive weeks of air traffic control experience" while serving at an FAA air traffic control

3

facility (as in a prior employment stint), a Department of Defense air traffic control facility, or a contract tower. 49 U.S.C. § 44506(f)(1)(A). "After giving preferential consideration to [that group of] applicants," the FAA "shall consider additional applicants . . . by referring an approximately equal number of individuals for appointment among" two "applicant pools" consisting of (i) eligible CTI graduates and military veterans, and (ii) members of the general public "who apply under a vacancy announcement recruiting from all United States citizens."  49 U.S.C. § 44506(f)(1)(B).  In addition to imposing this scheme of hiring preferences, Congress barred the FAA from using a biographical assessment when hiring candidates applying as experienced controllers, CTI graduates, and military veterans.  *See* 49 U.S.C. § 44506(f)(2)(A).  Also, to the extent an experienced controller, CTI graduate, or military veteran was "disqualified" under the FAA's 2014 hiring round "as the result of a biographical assessment," the FAA is directed to "provide the applicant an opportunity to reapply for the position as soon as practicable under the revised hiring practices" and, subject to conditions, "shall waive any maximum age restriction" that ordinarily would apply.  49 U.S.C. § 44506(f)(2)(B).

## STANDARD OF REVIEW

"Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case." *Singh*, 383 F. Supp. 2d at 101.  Rule 54(b) "recognizes" the district court's "inherent power to reconsider an interlocutory order 'as justice requires.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (citation omitted).  "Justice may require revision when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." *Singh*, 383 F. Supp. 2d at 101 (citation and alteration omitted).  "In general, a court will grant a motion for reconsideration

4

of an interlocutory order only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Parker v. John Moriarty & Assocs.*, 2016 WL 7438435, at *1 (D.D.C. Dec. 21, 2016) (citation omitted). "[I]n order to promote finality and protect the court's judicial resources, the court is loath to revisit its prior decision absent extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Hall*, 2016 WL5396653, at *3 (citation omitted).

"The burden is on the moving party to show that reconsideration is appropriate *and* that harm or injustice would result if reconsideration were denied." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (emphasis added). Plaintiff is thus incorrect that—apart from his contention that reconsideration is needed to prevent manifest injustice—his contentions that the challenged ruling reflects a clear error of law and a clear error of fact are each an independently sufficient basis for granting reconsideration. *See* Pl.'s Mem. of P. & A. in Supp. of Mot. for Reconsideration ("Pl.'s Mem.") at 13 n.2, 15 n.3 [ECF No. 39-1].

Courts disfavor a motion for reconsideration that "merely recycles the same arguments already pressed and rejected." *Estate of Gaither ex rel. Gaither v. Dist. of Columbia*, 771 F. Supp. 2d 5, 9 (D.D.C. 2011); *see also Howard v. Gutierrez*, 571 F. Supp. 2d 145, 150 n.1 (D.D.C. 2008) (denying reconsideration where "plaintiffs fail to cite any new authorities or evidence and instead attempt to reargue theories that were already rejected by the Court"). This principle does not change when the motion for reconsideration is addressed to a different district court than the one that issued the challenged ruling; to the contrary, "[a] disagreement between coequal courts in separate districts is no grounds for reconsideration." *Singh*, 383 F. Supp. 2d at 103; *see also Imagecube LLC v. Boeing Co.*, 2009 WL 703171, at *1 n.2 (N.D. Ill. Mar. 17, 2009) ("[A]

successor judge generally should not reconsider the rulings of a transferor judge at the same level of the judicial hierarchy when a case is transferred.").

## ARGUMENT

### I.   Plaintiff Improperly Reprises Rejected Arguments.

In advance of Plaintiff's motion for reconsideration, this Court cautioned Plaintiff not to treat the motion as "a second opportunity to present arguments upon which the Court already has ruled."  12/1/16 Minute Order (citation omitted).  "Regardless of the Rule pursuant to which reconsideration is sought, 'it is well-established that motions for reconsideration, whatever their procedural basis, cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'"  *Ali v. Carnegie Inst. of Wash.*, 309 F.R.D. 77, 81 (D.D.C. 2015) (quoting *Gaither*, 771 F. Supp. 2d at 10) (citation omitted)).  As under other Rules, "district courts act within the scope of their discretion in denying 'reconsideration' under Rule 54(b) where the motion raises no arguments not already rejected on the merits."  *Ali*, 309 F.R.D. at 86.

Plaintiff's motion for reconsideration nevertheless re-hashes arguments that Plaintiff raised in opposing dismissal, and that Judge Rayes expressly considered and rejected.  Even before this Court wades into the details of these arguments, Plaintiff's improper reprisal of rejected theories is evident simply by comparing quotations from Plaintiff's brief opposing dismissal, Judge Rayes' Order, and Plaintiff's brief in support of reconsideration.  Five illustrative examples follow:

First, in opposing the striking of his request for equitable relief, Plaintiff argued that "[t]his Court can grant all of Mr. Brigida's requested relief because Title VII gives this Court broad equitable powers to cure the effects of the FAA's discriminatory actions" and "make persons whole."  Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 9 [ECF No. 29].  In striking the request, Judge Rayes acknowledged that "Title VII permits the Court to 'order such affirmative action as

may be appropriate' to make Brigida whole."  Order at 7 (quoting 42 U.S.C. § 2000e-5(g)(1)).

Now, in moving for reconsideration, Plaintiff again argues that "Title VII's enforcement

provisions grant district courts broad equitable powers to cure the effects of discriminatory actions

perpetrated by federal agencies, such as the FAA," with the purpose "to make persons whole."

Pl.'s Mem. at 10-11 (citation omitted).

Second, Plaintiff also argued, in opposing the striking of his request for equitable relief,

that a later statute "can only limit the relief in this case if this Court decides that the [later statute]

expressly repeals or amends the enforcement provisions of Title VII."  Pl.'s Opp'n at 9.  Judge

Rayes quoted this very language from Plaintiff's brief in addressing Plaintiff's argument.  *See*

Order at 7.  Now, in moving for reconsideration, Plaintiff again argues that "[b]ecause this case is

brought under Title VII, this Court can grant any and all relief authorized by Title VII, unless a

later act clearly and manifestly limits that relief."  Pl.'s Mem. at 11-12.

Third, in originally defending his request for equitable relief, Plaintiff argued that "[t]he

FAA Extension, Safety, and Security Act of 2016 . . . does not grant full relief to Mr. Brigida and

the putative Class members" because that Act "merely allows Mr. Brigida and the Class members

to reapply for an [air traffic control specialist] position under a new hiring process, and makes no

guarantee that anyone will be hired."  Pl.'s Opp'n at 10.  In his decision, Judge Rayes noted that

"Brigida argues that the Act does not grant full relief to him and the putative class members."

Order at 7.  Now, in moving for reconsideration, Plaintiff again argues that "the 2016 FAA Act

makes no guarantee that Mr. Brigida and the putative Class members will be restored to the

position they were in prior to the FAA's discrimination."  Pl.'s Mem. at 15.

Fourth, Plaintiff argued initially that "[t]he language of the [FAA Extension, Safety, and

Security Act of 2016] does not irreconcilably conflict with Title VII and the 2016 Act offers no

indication that Congress intended to rid this Court of its authority under Title VII to make Mr.

Brigida and the putative Class members whole in this case." Pl.'s Opp'n at 11. Judge Rayes determined, however, that "the effect of the Act on Title VII is irrelevant" and the salient point, instead, is that "[t]he Act supersedes the FAA hiring practices challenged by Brigida in this suit." Order at 7. Now, in moving for reconsideration, Plaintiff repeats that "[t]he language of the 2016 FAA Act does not irreconcilably conflict with Title VII and the 2016 FAA Act offers no indication that Congress intended to rid this Court of its authority under Title VII to make Mr. Brigida and the putative Class members whole." Pl.'s Mem. at 12-13.

Fifth, in opposing dismissal of his equal protection claim, Plaintiff argued "this Court can and should consider Mr. Brigida's Equal Protection Claim because Title VII does not provide full and fair relief for the FAA's constitutional violations." Pl.'s Opp'n at 8. In dismissing the equal protection claim, Judge Rayes observed that "Brigida argues that his equal protection claim is necessary because Title VII does not vindicate all of his constitutional rights." Order at 5. Now, in moving for reconsideration, Plaintiff again argues "the court erred in dismissing Mr. Brigida's equal protection claim because there is no other manner in which Mr. Brigida can fully vindicate the violation of his constitutional rights." Pl.'s Mem. at 17.

These examples demonstrate that Plaintiff's "argument for reconsideration does nothing more than repeat those same arguments previously considered by the Court, and as such, it provides no basis for reconsideration." *Ali*, 309 F.R.D. at 86. Indeed, the Court may observe that significant portions of this opposition brief simply reproduce excerpts from earlier briefing in support of the motion to dismiss, precisely because Plaintiff is reprising rejected arguments. The Court should deny Plaintiff's motion for reconsideration on this threshold ground.

## II.    Plaintiff's Requested Equitable Relief Was Properly Stricken.

A goal of Plaintiff's suit is to restore an alleged hiring preference for CTI graduates. According to Plaintiff, "[p]rior to 2014 . . . graduates from CTI programs that passed the validated

AT-SAT assessment entered a direct hire pool of applicants, were placed on a 'Qualified Applicant Register' List, and were given hiring preference for [air traffic control specialist] positions." Second Am. Compl. ¶ 31.  Plaintiff alleges that "on or around December 30, 2013, the FAA eliminated the CTI Applicant Register, which resulted in Plaintiff Brigida, and other putative Class Members, losing their employment preference and opportunity."  *Id*. ¶ 52.  As an element of requested equitable relief in this lawsuit, Plaintiff seeks "an order directing the FAA to reinstate the purged Qualified Applicant Register and give hiring preference to Plaintiff Brigida and other putative Class Members."  *Id*., prayer for relief.  In seeking reconsideration, Plaintiff characterizes this as a request to "return Mr. Brigida and the putative Class members to the position they were in prior to the FAA's" alleged "discrimination."  Pl.'s Mem. at 2.

The problem for Plaintiff is that Congress has in the interim enacted a statute that sets out a different structure of hiring preferences that the FAA must apply in hiring air traffic controllers. *See* FAA Extension, Safety, and Security Act of 2016, Pub. L. No. 114-190, § 2106, 130 Stat. 615, 620 (2016) (codified at 49 U.S.C. § 44506(f)).  As Plaintiff acknowledges, *see* Second Am. Compl. ¶ 68, that statute requires the FAA to give hiring preference first and foremost to experienced controllers.  *See* 49 U.S.C. § 44506(f)(1)(A).  Only "[a]fter giving preferential consideration to [that group of] applicants" is the FAA permitted to "consider additional applicants for the position of air traffic controller."  49 U.S.C. § 44506(f)(1)(B)(i).  Even at that point, the FAA is restricted from providing hiring preference solely to CTI graduates, because the statute requires the FAA to hire approximately equally from two applicant pools, one consisting of eligible CTI graduates and military veterans, and the other consisting of the general public.  *See* 49 U.S.C. § 44506(f)(1)(B). As Plaintiff recognizes, because "the FAA is . . . required to hire equally from" these "two applicant pools," the statute's "revised hiring practices restricts [sic] the number of CTI graduates that can be appointed to [air traffic control specialist] positions."  *See* Second Am. Compl. ¶¶ 69,

9

73.  In sum, the alleged hiring preference that Plaintiff contends the FAA should have applied—and that a court should restore—is now superseded by statute.  Plaintiff has conceded that the new statutory system of hiring preferences "is different from the pre-2014 hiring process" that he seeks to resurrect as equitable relief.  Pl.'s Opp'n at 10-11.

Despite raising no challenge to the recently-enacted statute prescribing how the FAA is to accord hiring preference among various classes of applicants, Plaintiff seeks equitable relief ordering the FAA to give hiring preference to him and the putative class that differs from what the statute authorizes.  As the Supreme Court recently reiterated, however, "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015) (citation omitted). Overwriting an unchallenged statute is not within a court's equitable power, because, as this Circuit recognizes, "a district court's remedial powers are necessarily limited by a clear and valid legislative command counseling against the contemplated judicial action." *LaShawn A. by Moore v. Barry*, 144 F.3d 847, 853 (D.C. Cir. 1998) (citation omitted).  As stated by the Ninth Circuit, "a fundamental principle of equity jurisprudence is that 'equity follows the law.'" *In re Shoreline Concrete Co.*, 831 F.2d 903, 905 (9th Cir. 1987) (quoting *Hedges v. Dixon Cty.*, 150 U.S. 182, 192 (1893)).

Judge Rayes accordingly struck Plaintiff's request for equitable relief,[2] agreeing that "this request is improper because Brigida does not challenge the recently enacted FAA Extension, Safety, and Security Act of 2016, which imposes new hiring practices for Air Traffic Controllers."

---

[2]      The defendants asked Judge Rayes to either dismiss or strike the request for equitable relief. *See* Defs.' Mot. to Dismiss at 9.  Authority in the District of Arizona supports either of these resolutions.  *See* Defs.' Reply at 7 [ECF No. 30] (citing *Miller v. I-Flow Corp.*, 2011 WL 13092973, at *2 (D. Ariz. July 6, 2011)).  In this district, as well, there is precedent for striking an item in a prayer for relief where the requested relief is unavailable as a matter of law.  *See Cronin v. Adam A. Weschler & Son, Inc.*, 904 F. Supp. 2d 37, 44 (D.D.C. 2012).

Order at 7. Judge Rayes correctly found the requested relief to be unavailable because "the Court cannot prescribe relief in contravention of an unchallenged statute." *Id*. Plaintiff now seeks this Court's reconsideration of this ruling, but Plaintiff's re-hashed arguments do not warrant reaching a different result.

### A.    Judge Rayes Committed No Clear Error of Law.

Ignoring the principle that equity follows the law, Plaintiff contends it was "a clear error of law" to strike his request for equitable relief because "Title VII's enforcement provisions grant district courts broad equitable powers to cure the effects of discriminatory actions." Pl.'s Mem. at 10-11. But Plaintiff does not show that Title VII authorizes overwriting an unchallenged federal statute, and thus demonstrates no error of law.

Title VII provides that upon finding intentional engagement in "an unlawful employment practice," a court "may . . . order such affirmative action as may be appropriate" including "equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). Construing this provision, Plaintiff reads too much into the statement that "the purpose of Title VII [is] to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). Notwithstanding the remedial purpose of Title VII, the *Albemarle* decision does not stand for the proposition that Title VII authorizes a district court to, in contravention of equitable doctrine, impose prospective injunctive relief that subverts an unchallenged federal statute. Instead, *Albemarle*—a decision that in any event concerned backpay rather than prospective injunctive relief—instructs that Title VII creates no "automatic or mandatory remedy," that district courts are to "locate 'a just result' in light of the circumstances peculiar to the case," "that there may be cases calling for one remedy but not another," and that "discretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Id*. at 415-16, 424.

11

*Albemarle* thus does not suggest that the authorization in Title VII to order such "equitable relief as the court deems appropriate," 42 U.S.C. § 2000e-5(g)(1), is a license for courts to disregard the "fundamental principle of equity jurisprudence . . . that 'equity follows the law.'" *Shoreline Concrete*, 831 F.2d at 905 (quoting *Hedges*, 150 U.S. at 192). Rather, that principle is an example of the "sound legal principles" that constrain the Court's exercise of equitable discretion under Title VII in "the circumstances peculiar to the case" at bar, where a superseding federal statute forecloses returning to the alleged *ex ante* system of hiring preference. *Albemarle*, 422 U.S. at 416, 424.

There is no inconsistency between Title VII's authorization of such "equitable relief as the court deems appropriate," 42 U.S.C. § 2000e-5(g)(1), and applying an equitable maxim to constrain a court's exercise of its discretion to fashion appropriate equitable relief under Title VII according to the circumstances of a particular case. *See United States v. Microsoft Corp.*, 147 F.3d 935, 944 (D.C. Cir. 1998) (criticizing "the view that mere statutory authorization of injunctive relief displaced equitable standards"); *In re Herrera*, 380 B.R. 446, 452 n.9 (Bankr. W.D. Tex. 2007) (finding that 11 U.S.C. § 105(a)—which states that courts "may issue any order, process, or judgment that is necessary or appropriate" under the Bankruptcy Code—"does not authorize a court to create remedies previously unknown to equity jurisprudence" (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332 (1999)). Plaintiff is wrong that application here of the maxim that equity follows the law "directly contradicts Congress's purpose in passing Title VII," Pl.'s Mem. at 13; to the contrary, this result comports with Congress directing that under Title VII a court may order such "equitable relief *as the court deems appropriate*." 42 U.S.C. § 2000e-5(g)(1) (emphasis added).

Plaintiff continues to misfocus on "whether the [FAA Extension, Safety, and Security Act of 2016] actually intended to alter or limit Title VII." Pl.'s Mem. at 11; *cf*. Pl.'s Opp'n at 11

(arguing "the hiring provisions of the 2016 Act can only limit the relief in this case if this Court decides that the 2016 Act expressly repeals or amends the enforcement provisions of Title VII"). No such alteration, limitation, repeal, or amendment of Title VII is needed to trigger the principle that equity follows the law. Plaintiff's requested relief is improper as a matter of law not because of any conflict between the Act and Title VII, but rather because, undisputedly, the Act supersedes the alleged hiring preference that Plaintiff wants a court to restore. As a result, the controlling consideration is that "reviewing courts 'are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.'" *Phillips v. Comm'r of Internal Revenue*, 851 F.2d 1492, 1498 (D.C. Cir. 1988) (quoting *Badaracco v. Commissioner*, 464 U.S. 386, 398 (1984)). As Judge Rayes correctly concluded, "the effect of the Act on Title VII is irrelevant." Order at 7.

## B.    Striking the Requested Equitable Relief Resulted in No Manifest Injustice.

The FAA Extension, Safety, and Security Act of 2016 reflects Congress's awareness of the cohort of CTI graduates whose applications the FAA rejected in the 2014 hiring round on the basis of the biographical assessment. That awareness is evident because in the statute Congress acted affirmatively to (1) bar the FAA from using a biographical assessment in future hiring of candidates applying as CTI graduates, *see* 49 U.S.C. § 44506(f)(2)(A), and (2) direct the FAA to provide an opportunity to CTI graduates who were disqualified by the biographical assessment in the 2014 hiring round to reapply, with relaxed age restrictions, *see* 49 U.S.C. § 44506(f)(2)(B). Congress specified that such opportunity to reapply would be "*under the revised hiring practices*" prescribed in the statute. 49 U.S.C. § 44506(f)(2)(B)(i) (emphasis added). Those "revised hiring practices" do not encompass the alleged hiring preference Plaintiff seeks in court as equitable relief.

Plaintiff contends that judicial deference to the judgment of Congress expressed in the FAA Extension, Safety, and Security Act of 2016 results in manifest injustice because, according to Plaintiff, the "Act makes no guarantee that Mr. Brigida and the putative Class members will be

restored to the position they were in prior to the FAA's" alleged "discrimination."  Pl.'s Mem. at

15.  Plaintiff acknowledges, however, that the Act did revise "the hiring procedures implemented

by the FAA in 2014" sufficiently that Plaintiff amended his complaint to drop a "request to enjoin

the FAA from implementing the 2014 hiring practices."  *Id*. at 13-14.[3]  The equitable relief that

Plaintiff still seeks relates to his allegation of "the FAA's racially motivated decision to remove

him and the other putative Class members from the Qualified Applicant Register."  *Id*. at 14.

With respect to hiring preferences for air traffic controllers, Plaintiff at bottom is asking

for a court to substitute its judgment for the policy decision of Congress as encapsulated in a statute

that Plaintiff does not challenge as legally invalid in any way.  What would result in manifest

injustice is if the Court were to accept Plaintiff's invitation.  "This Court has neither the power nor

the competency to rewrite the purposes of duly enacted legislation."  *Stand Up for California! v.*

*U.S. Dep't of the Interior*, 919 F. Supp. 2d 51, 74 (D.D.C. 2013).  Plaintiff's "policy grievances

are best addressed to the political branches that enacted the law."  *Id*.  "As the Supreme Court and

this Circuit have consistently recognized, that sort of policymaking is not part of the judicial role."

*Mylan Pharms., Inc. v. Sebelius*, 856 F. Supp. 2d 196, 211 (D.D.C. 2012).  Accordingly, striking

Plaintiff's requested relief reflected not manifest injustice, but rather appropriate respect for the

express will of Congress.

### C.    Judge Rayes Committed No Clear Error of Fact.

Plaintiff argues it was a "clear mistake of fact" for Judge Rayes to conclude the court "could

not grant Mr. Brigida's equitable relief because granting such relief would cause the FAA to be

bound by inconsistent orders, one from the court and one from Congress."  Pl.'s Mem. at 16.

---

[3]    Plaintiff's admission that enactment of the FAA Extension, Safety, and Security Act of 2016 caused him to drop an item of requested equitable relief from his complaint makes it difficult to understand Plaintiff's assertion that the Act's "passage does nothing to remedy Mr. Brigida's and the putative Class members'" purported "injuries."  Pl.'s Mem. at 15.

Contrary to Plaintiff's suggestion that this "is a question of fact that has yet to be determined," *id.*, Plaintiff has earlier conceded that the new statutory system of hiring preferences "is different from the pre-2014 hiring process" that he seeks to have judicially restored.  Pl.'s Opp'n at 10-11.  That concession supports Judge Rayes' conclusion that striking the requested equitable relief would avoid the FAA being "bound by two inconsistent directives."  Order at 8.

Plaintiff confuses the issue by asserting, in an argument that he in any event could have raised earlier, that "[w]hether the FAA can comply with both the hiring preferences of the 2016 Act, and the requested hiring preferences in a future order by this court, depends on the number of open [air traffic control specialist] positions, the number of applicants with air traffic controller experience, and the number of Class members who wish to be rehired."  Pl.'s Mem. at 16.  Based on such factors, it indeed may or may not be true that, even without restoring the alleged hiring preference that Plaintiff claims once existed, the FAA might hire Plaintiff and all the putative class members who still seek positions under the new hiring system.[4]  But that possibility is irrelevant to Plaintiff's request that a court should compel the FAA to restore an alleged hiring preference that has been superseded by an unchallenged statute.  Plaintiff thus identifies no reason for reconsideration of Judge Rayes' ruling striking this request for equitable relief.

## III.    Plaintiff's Equal Protection Claim Was Properly Dismissed.

As an alternative to restoring the stricken request for equitable relief, Plaintiff asks the Court to restore his dismissed equal protection claim under the Fifth Amendment.  *See id.* at 16-17.  Plaintiff does not reconcile this invitation, however, with black-letter law that bars a Title VII plaintiff suing a federal employer from maintaining such a tag-along constitutional claim.

---

[4]    Plaintiff's position that it remains possible under the new system of hiring preferences that he and all putative class members who still seek positions could be hired—without having to pass a biographical assessment—is in tension with his assertion that striking his requested equitable relief results in manifest injustice.

Judge Rayes correctly found, in accordance with Supreme Court precedent, that Plaintiff's "equal protection claim is precluded by § 717" of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, which extends Title VII protection to federal employees.  Order at 5.  The D.C. Circuit, for example, holds that "Title VII of the Civil Rights Act of 1964, as amended, 'provides the exclusive judicial remedy for claims of discrimination in [covered] federal employment.'"  *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983) (quoting *Brown v. GSA*, 425 U.S. 820, 835 (1976)) (alteration in original).  "The Title VII remedy declared exclusive for federal employees in *Brown v. GSA* precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation."  *Kizas*, 707 F.2d at 542; *see also Torre v. Barry*, 661 F.2d 1371, 1374 (D.C. Cir. 1981) ("[A] federal employee who is covered by section 717 may not sue under . . . the Fifth Amendment.").  Consistent with the Supreme Court's guidance in *Brown v. GSA*, "[t]he Ninth Circuit," for its part, likewise "has found that Title VII (or § 717) is the exclusive judicial remedy for claims, whether based upon a statute or the Constitution, whose factual predicate is the discrimination involved in the § 717 claim."  *Smith v. Lujan*, 780 F. Supp. 1275, 1279 (D. Ariz. 1991).

As earlier briefing noted, Plaintiff's original opposition to dismissal of the equal protection claim failed to "cite a single case permitting an equal protection claim to proceed where a Title VII claim was available to challenge the same alleged discrimination in federal employment."  Defs.' Reply at 2.  That gap remains unaddressed in Plaintiff's motion for reconsideration.

Plaintiff instead argues that Judge Rayes "erred in dismissing Mr. Brigida's equal protection claim because there is no other manner in which Mr. Brigida can fully vindicate the violation of his constitutional rights."  Pl.'s Mem. at 17.  In dismissing the equal protection claim, Judge Rayes rejected Plaintiff's argument "that his equal protection claim is necessary because Title VII does not vindicate all of his constitutional rights," reasoning that Plaintiff "fails to specify

16

how his Title VII claim affords less relief than his equal protection claim" and that "[i]n fact, he seeks the same remedies under both counts."  Order at 5-6.  According to Plaintiff, the ruling "contradicts" itself by on one hand striking Plaintiff's requested equitable relief, while on the other hand concluding Plaintiff has not shown how Title VII affords less relief than an equal protection claim.  Pl.'s Mem. at 16-17.  The unstated premise of Plaintiff's argument is that his equal protection claim, if sustained, would allow a court to award his requested equitable relief where Title VII does not.  That premise is wrong.

Judge Rayes struck Plaintiff's request for equitable relief based not on the cause of action that allegedly triggers liability, but rather because of limits to a court's authority to impose equitable remedies.  The principle that equity follows the law, which was the basis for striking Plaintiff's request for equitable relief, applies regardless whether Plaintiff proceeds under an equal protection claim or a Title VII claim.  Indeed, Judge Rayes' ruling nowhere suggested that the underlying cause of action was determinative on this issue of remedial authority.  Rather, Judge Rayes focused on the pertinent point that "the Court cannot prescribe relief in contravention of an unchallenged statute."  Order at 7.  That principle holds true for Plaintiff's Title VII claim *and* his equal protection claim; Plaintiff cites no authority to the contrary.  Accordingly, Plaintiff does not show that his equal protection claim allows equitable relief that his Title VII claim does not.  Absent any showing of error—let alone clear error—restoration of the dismissed equal protection claim is not warranted.

## **CONCLUSION**

For the foregoing reasons, as well as the reasons stated in earlier briefing in support of partial dismissal, Defendant respectfully requests that the Court deny Plaintiff's motion for reconsideration.

DATED: January 6, 2017                    Respectfully submitted,

                                          BENJAMIN C. MIZER
                                          Principal Deputy Assistant Attorney General

                                          CARLOTTA P. WELLS
                                          Assistant Branch Director
                                          Civil Division, Federal Programs Branch

                                          _/s/ Arjun Garg_____
                                          ARJUN GARG (D.C. Bar No. 975335)
                                          Trial Attorney
                                          U.S. Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Ave, NW
                                          Washington, DC 20530
                                          Telephone: (202) 305-8613
                                          Facsimile: (202) 616-8470
                                          Email: arjun.garg@usdoj.gov

                                          *Counsel for Defendant*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2017, I electronically filed the foregoing Opposition to Plaintiff's Motion for Reconsideration of the November 7, 2016 Order using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.


*/s/ Arjun Garg*
ARJUN GARG