# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW J. BRIGIDA, on behalf of himself and the Class he seeks to represent, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| ANTHONY R. FOXX, Secretary, U.S. Department of Transportation, | ) ) ) |
| Defendant. | ) ) ) |

Civil Case No. 16-cv-2227 (TSC)

---

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE  NOVEMBER 7, 2016
ORDER**

---

Steven J. Lechner, D.D.C. Bar No. AZ 0001
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
lechner@mountainstateslegal.com

Michael W. Pearson (AZ No. 016281)
Curry, Pearson, & Wooten, PLC
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000
(602) 523-9000 (facsimile)
mpearson@azlaw.com

Attorneys for Plaintiff

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

GLOSSARY ............................................................................................. vi

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 1

I.    THE STANDARD FOR RULE 54(b) MOTIONS IS MORE LENIENT
      THAN THE STANDARD FOR RULE 59(e) MOTIONS ............................. 1

II.   THE ARIZONA DISTRICT COURT COMMITTED CLEAR
      ERRORS OF LAW AND FACT BY DRASTICALLY
      MISCONSTRUING THE NATURE OF THIS CASE ................................... 3

III.  THIS COURT SHOULD GIVE MR. BRIGIDA AND THE
      PUTATIVE CLASS MEMBERS THE OPPORTUNITY TO
      VINDICATE THEIR RIGHTS ......................................................... 10

CONCLUSION ........................................................................................ 12

CERTIFICATE OF SERVICE ................................................................... 14

## TABLE OF AUTHORITIES
(* denotes cases primarily relied upon)

**Page**

**Cases**

*Adler v. John Carroll Univ.*,
    549 F. Supp. 652 (N.D. Ohio 1982)..................................................................... 4

*\*Albemarle Paper Company v. Moody*,
    422 U.S. 405 (1975)......................................................................... 4, 5, 6, 9

*Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*,
    647 F.2d 256 (2d Cir. 1981).................................................................. 5

*Branch v. Smith,*
    538 U.S. 254 (2003)........................................................................... 6

*Brown v. Gen. Servs. Admin.*,
    425 U.S. 820 (1976)......................................................................... 10

*Cobell v. Norton,*
    355 F. Supp. 2d 531 (D.D.C. 2005) ....................................................... 2

*Davis v. Burke*,
    179 U.S. 399 (1900).......................................................................... 10

*Davis v. Passman*,
    442 U.S. 228 (1979)....................................................................... 10, 11

*Dougherty v. Barry,*
    869 F.2d 605 (D.C. Cir.1989)................................................................ 4

*Franks v. Bowman Transportation Co.*,
    424 U.S. 747 (1976)........................................................................... 4

*Harrison v. Lappin*,
    510 F. Supp. 2d 153 (D.D.C. 2007) ....................................................... 1

*Harvey v. D.C.*,
    949 F. Supp. 878 (D.D.C. 1996).......................................................... 2

*Keller v. Prince George's Cty.*,
    827 F.2d 952 (4th Cir. 1987) .............................................................. 4

*Kizas v. Webster*,
    707 F.2d 524 (D.C. Cir. 1983).............................................................. 11

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC,*
    478 U.S. 421 (1986).................................................................................... 4, 6

*M.K. v. Tenet,*
    196 F. Supp. 2d 8 (D.D.C. 2001).................................................................. 1, 2

*Olegario v. United States,*
    629 F.2d 204 (2d Cir. 1980).......................................................................... 7, 11

*Porter v. Warner Co.,*
    328 U.S. 395 (1946)...................................................................................... 8

*Ricci v. DeStefano,*
    557 U.S. 557 (2009)...................................................................................... 12

*\*Sharp v. City of Lansing,*
    629 N.W. 2d 873 (Mich. 2001) ................................................................... 10, 11

*Simba v. Fenty,*
    754 F. Supp. 2d 19 (D.D.C. 2010)................................................................ 6

*Singh v. George Washington University,*
    383 F. Supp. 2d 99 (D.D.C. 2005)................................................................ 2, 3

*Smith v. PNC Bank,*
    No. 10-1680, 2011 WL 2672013 (W.D. Pa. June 2, 2011*), report and*
    *recommendation adopted,* 2011 WL 2681245 (W.D. Pa. July 8, 2011)............. 6

*Stewart v. Federal Communications Comm'n,*
    189 F. Supp. 3d 170 (D.D.C. 2016)............................................................. 2

*Thompson v. Sawyer,*
    678 F.2d 257 (D.C. Cir.1982)...................................................................... 4

*Wicker v. Hoppock,*
    73 U.S. (6 Wall.) 94 (1867) ......................................................................... 5

## <u>Statutes</u>

42 U.S.C. § 1981 ............................................................................................. 10

*\*Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e* .......................... *passim*

    42 U.S.C. § 2000e-5(g)................................................................................. 4, 5

42 U.S.C. § 2000e-16 ........................................................................................ 10

FAA Extension, Safety, and Security Act of 2016, Pub. L. 114-190, *codified
at* 49 U.S.C. § 44506 ........................................................................................ 3

    49 U.S.C. § 44506(f)(1)(A) ........................................................................ 8

    49 U.S.C. § 44506(f)(2)(A) ........................................................................ 7

## **Rules**

Fed. R. Civ. P. 54(b) ........................................................................................ 1, 2

Fed. R. Civ. P. 54(c) ........................................................................................ 9

Fed. R. Civ. P. 59(e) ........................................................................................ 1, 2

## **Other Authorities**

1 Annals of Cong. 439 (1789) ......................................................................... 11

*A Review of the Federal Aviation Administration's Air Traffic Controller
Hiring, Staffing and Training Plans Before the H. Comm. on Transportation
and Infrastructure, Subcomm. on Aviation* (2016) ....................................... 9

    Written testimony of Matthew E. Hampton, Assistant Inspector General
    for Aviation Audits, *available at*
    http://transportation.house.gov/uploadedfiles/2016-06-15-hampton.pdf ........... 9

    Written testimony of Paul M. Rinaldi, President, National Air Traffic
    Controllers Association, AFL-CIO, *available at*
    http://transportation.house.gov/uploadedfiles/2016-06-15-rinaldi.pdf ............... 9

Department of Transportation Office of Inspector General Audit Report, No.
AV-2016-014, FAA CONTINUES TO FACE CHALLENGES IN ENSURING ENOUGH
FULLY TRAINED CONTROLLERS AT CRITICAL FACILITIES (2016) ............................. 9

## **GLOSSARY**

2016 FAA Act - FAA Extension, Safety, and Security Act of 2016, Pub. L. 114-190, *codified at* 49 U.S.C. § 44506

ATCS - Air Traffic Controller Specialist

Defendant's Response – Defendant's Opposition to Plaintiff's Motion for Reconsideration of the November 7, 2016 Order [Dkt. No. 40]

DOT - U.S. Department of Transportation

FAA - Federal Aviation Administration

November 7, 2016 Order – Order Granting Defendants' Partial Motion to Dismiss [Dkt. No. 33]

Second Amended Complaint - Second Amended and Supplemental Class Action Complaint For Declaratory and Injunctive Relief and Damages [Dkt. No. 26]

Title VII - Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

## INTRODUCTION

In considering Mr. Brigida's Motion for Reconsideration [Dkt. No. 39], this Court should apply the standard for reconsideration of interlocutory orders set forth in Federal Rule of Civil Procedure 54(b).  This Court should exercise its discretion and reconsider, alter, or amend the Arizona district court's November 7, 2016 Order because the court failed to consider the actual discriminatory action alleged by Mr. Brigida—*i.e.*, the Federal Aviation Administration's ("FAA") purging of the qualified applicant register—in striking his claim for equitable relief.  At the motion to dismiss stage, such action was premature, not based on demonstrated facts, and a clear error of law.  Additionally, the court erred by dismissing Mr. Brigida's claim under the Equal Protection component of the Fifth Amendment's Due Process Clause, which is not based on or foreclosed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").  Accordingly, this Court should grant Mr. Brigida's Motion for Reconsideration.

## ARGUMENT

**I.    THE STANDARD FOR RULE 54(b) MOTIONS IS MORE LENIENT THAN THE STANDARD FOR RULE 59(e) MOTIONS.**

Mr. Brigida requests reconsideration of the November 7, 2016, Order under both Federal Rules of Civil Procedure 54(b) and 59(e).  Dkt. No. 39; Dkt. No. 39-1 at 14–16.  Reconsideration under Rule 54(b) is more appropriate because the challenged order granted only a partial motion to dismiss and, thus, was not a final judgment.  *M.K. v. Tenet*, 196 F. Supp. 2d 8, 12 (D.D.C. 2001) ("A ruling which denies a motion to dismiss, in part, is an interlocutory judgment.").  "[T]he standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rule[] of Civil Procedure 59(e) …."  *Compare id. with Harrison v. Lappin*, 510 F. Supp. 2d 153, 155 (D.D.C. 2007) (setting forth the standard for granting Rule 59(e) motions, which are "disfavored")*.  Although "[a] motion pursuant to Rule 59(e) to alter or amend a judgment

after its entry is rarely granted … '[r]econsideration of an interlocutory decision, however, is available under the standard, 'as justice requires.'" *M.K.*, 196 F. Supp. 2d at 12.  The phrase "as justice requires" is shorthand for a variety of "concrete considerations," such as "when the Court has patently misunderstood a party" or "has made an error not of reasoning but of apprehension[.]" *Singh v. George Washington University*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotations omitted); *see also Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005) ("[T]he decision whether to reconsider its interlocutory rulings is within the Court's discretion.  So, even if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so.").  In order for justice to require reconsideration, logically, "some harm, legal or at least tangible," would flow from a denial of reconsideration.  *Stewart v. Federal Communications Comm'n*, 189 F. Supp. 3d 170, 173 (D.D.C. 2016) (granting plaintiff's motion for reconsideration of dismissal of her Title VII claim because "justice require[d]" that plaintiff be given an opportunity to pursue discovery on her claim that she had been retaliated against for filing an Equal Employment Opportunity complaint).

Even under 59(e), however, a court can reconsider an order when there is a need to correct a clear error or prevent manifest injustice.  *Harvey v. D.C.*, 949 F. Supp. 878, 879 (D.D.C. 1996).  Under either standard, reconsideration is appropriate here.[1]

---

[1] Although Mr. Brigida originally intended to file a motion only under Rule 59(e), after further consideration, Mr. Brigida notified Defendant of his intention to also file a motion under Rule 54(b).  Rule 54(b) motions can be filed "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."  *See* Fed. R. Civ. P. 54(b).

II.    **THE ARIZONA DISTRICT COURT COMMITTED CLEAR ERRORS OF LAW AND FACT BY DRASTICALLY MISCONSTRUING THE NATURE OF THIS CASE.**

This Court should grant the motion for reconsideration because the Arizona district court committed clear errors of both law and fact in granting Defendant's partial motion to dismiss, and justice requires that this Court restore Mr. Brigida's claims for equitable relief. *See Singh*, 383 F. Supp. 2d at 101 (reconsideration is appropriate where the district court "patently misunderstood a party"). In granting Defendant's motion for partial dismissal, the Arizona district court misconstrued the nature of this case and the nature of Mr. Brigida's Second Amended Complaint. Specifically, the court focused much of its attention on the FAA's old and new hiring policies, which are not the discriminatory action challenged in Mr. Brigida's Second Amended Complaint. November 7, 2016 Order at 7.

In his Second Amended Complaint, Mr. Brigida seeks to challenge the FAA's discriminatory action of purging the qualified applicant register. *See* Second Amended Complaint ¶¶ 97–103. Although Mr. Brigida originally challenged both the FAA's action in purging the register *and* the FAA's adoption of a new hiring practice, Mr. Brigida's Second Amended Complaint no longer challenges the FAA's future hiring practices. *See* Second Amended Complaint ¶¶ 97–114. Instead, what remains is the challenge to the FAA's removal of Mr. Brigida and the putative class members from the qualified applicant register, an action that is unrelated to, and was not remedied by, the FAA Extension, Safety, and Security Act of 2016, Pub. L. 114-190, *codified at* 49 U.S.C. § 44506 ("2016 FAA Act"). Second Amended Complaint ¶¶ 97–103. Under Title VII, Mr. Brigida has alleged that the decision to purge the register was racially motivated and requested to be returned to the position he and the putative Class members were in prior to the challenged discriminatory action. *Id.*

Under Title VII, Mr. Brigida can request, and this Court can grant, relief which would restore Mr. Brigida to the position he was in before the FAA's discriminatory action. Title VII "vest[s] broad equitable discretion in the federal courts to 'order such affirmative action as may be appropriate, which may include, but is not limited to, *reinstatement or hiring of employees*, with or without back pay ..., or any other equitable relief as the court deems appropriate.'" *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 763 (1976) (quoting 42 U.S.C. § 2000e-5(g)) (emphasis added). The reason Title VII vests courts with the power to grant broad equitable relief, including the power to order hiring or reinstatement of employees, is because Title VII was designed to "restore a victim of unlawful employment practices to the position the employee would have been in, were it not for the unlawful discrimination." *Adler v. John Carroll Univ.*, 549 F. Supp. 652, 655 (N.D. Ohio 1982) (citing *Albemarle Paper Company v. Moody*, 422 U.S. 405, 421 (1975)). Specifically, Title VII seeks to compensate "discrimination's victims as fully as possible," *Thompson v. Sawyer,* 678 F.2d 257, 286 (D.C. Cir.1982), and to restore the plaintiffs "to the position they would have occupied absent discrimination." *Dougherty v. Barry,* 869 F.2d 605, 615 (D.C. Cir.1989).

In construing Title VII, the U.S. Supreme Court has consistently looked to the statute's remedial purposes. *See Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 448 (1986) (Recognizing that the availability of "affirmative relief" under Title VII "furthers the broad purposes underlying the statute."); *Albemarle Paper Co.*, 422 U.S. at 417 ("The District Court's decision must therefore be measured against the purposes which inform Title VII."); *see also Keller v. Prince George's Cty.*, 827 F.2d 952, 957 (4th Cir. 1987) ("Congress recognized in adopting Title VII that no single approach to the problem of employment discrimination could be a panacea."). Because "it is … the purpose of Title VII to make persons *whole* for injuries

suffered on account of unlawful employment discrimination" and "Congress took care to arm the courts with full equitable powers[,]" a district court "has not merely the power but the *duty* to render a decree which will so far as possible eliminate the discriminatory effects of the past ...." *Albemarle Paper Co.*, 422 U.S. at 418 (all emphasis added).

In this case, absent the alleged discrimination, Mr. Brigida and the putative class members would have been given a hiring preference for open air traffic controller specialist ("ATCS") positions. Second Amended Complaint ¶ 31. Instead, the FAA made a racially motivated decision to purge the qualified applicant register. Second Amended Complaint ¶¶ 47–66. If this Court finds that the purging of the qualified applicant register violated Title VII, then this Court can restore the Class members to the position they would have been in prior to the purge, *i.e.*, in a position to receive hiring preference for open ATCS positions. *See Albemarle Paper Co.*, 422 U.S. at 418–19 ("'[T]he general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury .... The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.'" (quoting *Wicker v. Hoppock*, 73 U.S. (6 Wall.) 94, 99 (1867)) (alteration added)).

Defendant argues that Title VII does not mandate any particular relief and, thus, it was appropriate to strike Mr. Brigida's request for equitable relief. Opposition at 11. While Title VII may not require any specific type of relief, Title VII does provide for a broad range of relief to make a plaintiff whole, including reinstatement. 42 U.S.C. § 2000e-5(g); *see, e.g., Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 281 (2d Cir. 1981) (determining that remedy requiring candidates who were discriminated against to "be offered firefighter positions before anyone else may be hired" "fits comfortably" within the Title VII framework and gave "consideration to actual victims of the City's past discrimination").

Defendant does not suggest how Mr. Brigida, or any member of the putative class, could be made whole absent the requested relief.  Because Title VII explicitly allows for this Court to grant Mr. Brigida's request for equitable relief, it is inappropriate to strike his request for such equitable relief at the motion to dismiss stage.[2]  *Smith v. PNC Bank*, No. 10-1680, 2011 WL 2672013, at *7 (W.D. Pa. June 2, 2011*), report and recommendation adopted*, 2011 WL 2681245 (W.D. Pa. July 8, 2011) (refusing to dismiss "plaintiff's request for declaratory and equitable relief" under Title VII at the motion to dismiss stage).  Put simply, "[A] defendant's motion to strike a prayer for relief is premature if such relief is provided for by law."  *Simba v. Fenty*, 754 F. Supp. 2d 19, 23 (D.D.C. 2010) (internal quotation omitted) (denying defendant's "request to strike the amended complaint's prayer for injunctive relief" because "Title VII specifically provides for injunctive relief").

Furthermore, because it is clear that Title VII allows this Court to grant Mr. Brigida's request for equitable relief, this Court can only prevent Mr. Brigida from seeking that relief if another later statute explicitly and clearly amended Title VII to prevent Mr. Brigida from seeking that relief.  *Branch v. Smith,* 538 U.S. 254, 273 (2003) ( "An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute" (internal quotation omitted)).  In suggesting that the 2016 FAA Act impliedly repealed provisions of Title VII, Defendant ignores Title VII's broad purpose "to make persons whole for injuries suffered on account of unlawful employment discrimination," *Albermarle Paper Co.*, 422 U.S. at 418, as

---

[2] Granted, after discovery and after summary judgment briefing or a trial on the merits, this Court may find that the requested injunctive relief is inappropriate.  However, Mr. Brigida's requested relief should not be stricken at this early stage, given this Court's "broad power" "to fashion the most complete relief possible to remedy past discrimination."  *Local 28 of Sheet Metal Workers' Int'l Ass'n*, 478 U.S. at 448 (internal quotation omitted).

well as the 2016 FAA Act's obvious purpose to prevent the FAA from using discriminatory

hiring practices in hiring ATCSs. *See* 49 U.S.C. § 44506(f)(2)(A) (prohibiting the FAA from

using biographical assessments when hiring individuals who have completed the Collegiate

Training Initiative program). While the 2016 FAA Act may have remedied the FAA's

discriminatory hiring practices going forward, it did not remedy Mr. Brigida and the putative

class's injury. Because that injury went unaddressed, the 2016 FAA Act did not impliedly repeal

the provisions of Title VII that provide injunctive relief for employment discrimination.

        In determining whether the 2016 FAA Act explicitly and clearly amended Title VII, this

Court should effectuate the purpose of both statutes. The 2016 FAA Act does not explicitly

amend Title VII in any way that prevents Mr. Brigida or the putative class members from

seeking full relief from Title VII. Dkt. 39-1 at 12–13. Although the Arizona district court and

Defendant focus on the fact that Mr. Brigida did not challenge the 2016 FAA Act, Mr. Brigida

does not challenge the 2016 FAA Act because it is irrelevant to his claims. *Compare* November

7, 2016 Order at 7 and Defendant's Response Br. at 15 *with* Second Amended Complaint ¶¶ 98–

102. The 2016 FAA Act did not remedy the discriminatory action complained of in Mr.

Brigida's Second Amended Complaint. Nor does the 2016 FAA Act restore Mr. Brigida and the

putative Class members to the position they would have occupied but for the FAA's

discriminatory actions. Defendant's claim that "equity follows the law," Defendant's Response

at 15, begs the question of whether Congress, in passing the 2016 FAA Act, intended to bar Mr.

Brigida from seeking the relief granted by Title VII.[3]  *See, e.g., Olegario v. United States*, 629

F.2d 204, 220 (2d Cir. 1980) ("While Congress may repeal a statute, or amend it in response to

---

[3] There is no evidence that Congress enacted the 2016 FAA Act with either the knowledge that
Mr. Brigida and the putative class members had been discriminated against or the intent to
perpetrate the wrong done to them by depriving them of injunctive relief for the FAA's
discriminatory action.

judicial interpretations, such legislation does not automatically cut off the rights of those persons who were unconstitutionally deprived of statutory benefits to which they were previously entitled."). Unless a statute "in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Porter v. Warner Co.*, 328 U.S. 395, 398 (1946). The 2016 FAA Act was designed to govern FAA hiring practices prospectively; it was not intended to limit this Court's equity jurisdiction in the instant case. Accordingly, this Court may award Mr. Brigida and the putative class equitable relief under Title VII.

In holding that the 2016 FAA Act barred Mr. Brigida's request for equitable relief, the Arizona district court misconstrued Mr. Brigida's Second Amended Complaint by focusing on the fact that the 2016 FAA Act "supersedes the FAA hiring practices challenged by Brigida in this suit." November 7, 2016 Order at 4. But if Mr. Brigida and the putative Class members were to reapply for any open ATCS positions under the system set forth in the 2016 FAA Act, they would likely be unsuccessful. *See* Dkt. No. 39-1 at 8. Title VII, not the 2016 FAA Act, provides the means whereby Mr. Brigida and the putative class members can be restored to their previous position, and that is why the FAA's action in purging the qualified applicant register is the focus of Mr. Brigida's claims for relief. Defendant failed to demonstrate how the requested relief would prevent the FAA from also effectuating the hiring preferences set forth in the 2016 FAA Act. Indeed, Defendant failed to even allege that the number of individuals who receive a hiring preference under the 2016 FAA Act exceeds the number of ATCS positions available.[4]

---

[4] The only aspect of the 2016 FAA Act that might be relevant to this case is the hiring preference for those with previous air traffic controller experience. *See* 49 U.S.C. § 44506(f)(1)(A). The Arizona district court decided, without any evidence, that the FAA could not give hiring preference to both those with previous air traffic controller experience and the putative class members. November 7, 2016 Order at 8. That determination was premature because it is

Eventually, this Court will have to "locate a just result in light of the circumstances peculiar to the case …." *Albemarle Paper Co.*, 422 U.S. at 424 (internal quotations omitted). However, all of the peculiar circumstances of this case are not yet known to this Court. Instead, whether Mr. Brigida and the putative Class members should receive a hiring preference is a question to be resolved on the merits. Further, Defendant's argument—and the Arizona district court's decision—necessarily assume that the putative class will be certified, which is uncertain at this stage in the litigation. If the class is not certified, it certainly would not upset the hiring scheme set forth in the 2016 FAA Act to restore only Mr. Brigida's hiring preference. Thus, striking Mr. Brigida's request for equitable relief at this stage of the litigation is manifestly unjust.[5]

---

possible that there are enough open ATCS positions to give preference to both those with previous experience and the putative class members. Indeed, at a hearing of the Subcommittee on Aviation preceding passage of the 2016 FAA Act, numerous FAA officials testified that the number of ATCSs was at a 27-year low. *See A Review of the Federal Aviation Administration's Air Traffic Controller Hiring, Staffing and Training Plans Before the H. Comm. on Transportation and Infrastructure, Subcomm. on Aviation* 1–3 (2016) (written testimony of Matthew E. Hampton, Assistant Inspector General for Aviation Audits), *available at* http://transportation.house.gov/uploadedfiles/2016-06-15-hampton.pdf; *see also id.* ("Controller staffing has been a concern for many years, but it has now reached a crisis level …. In fact, in fiscal year (FY) 2015, the FAA fell 24 percent short of its hiring goal." (written testimony of Paul M. Rinaldi, President, National Air Traffic Controllers Association, AFL-CIO, *available at* http://transportation.house.gov/uploadedfiles/2016-06-15-rinaldi.pdf)); Department of Transportation Office of Inspector General Audit Report, No. AV-2016-014, FAA CONTINUES TO FACE CHALLENGES IN ENSURING ENOUGH FULLY TRAINED CONTROLLERS AT CRITICAL FACILITIES 11–13 (2016). Regardless, such a factual issue should be reserved for trial.

[5] Further demonstrating the Arizona district court's error is the fact that it dismissed requests for relief from Mr. Brigida's complaint. The wording used in the Second Amended Complaint is irrelevant to what relief this Court can grant because "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c); *see also Albemarle Paper Co.*, 422 U.S. at 424. As Mr. Brigida will demonstrate at the merits stage, his injuries resulting from the FAA's discriminatory actions are not "policy grievances," Defendant's Response at 19, but concrete injuries caused by the loss of his employment preference and opportunity. Second Amended Complaint ¶ 52. The appropriate remedy for those injuries is injunctive relief.

III.    **THIS COURT SHOULD GIVE MR. BRIGIDA AND THE PUTATIVE CLASS MEMBERS THE OPPORTUNITY TO VINDICATE THEIR RIGHTS.**

The Arizona district court dismissed Mr. Brigida's Fifth Amendment Equal Protection claim on the basis that Title VII "is the exclusive remedy for claims of discrimination in employment." November 7, 2016 Order at 2. The court committed a clear error of law in determining that Mr. Brigida's Equal Protection claim was "precluded" by § 717 of Title VII, which lists the remedies for claims of discrimination in federal employment. *Id.* at 3; 42 U.S.C. § 2000e-16. Specifically, the court's reliance on *Brown v. Gen. Servs. Admin.*, 425 U.S. 820 (1976) ignores that *Brown* was predicated on Title VII's preemptive effect on the *statutory* remedies provided by the previous civil rights statutes. *Id.* at 826. Specifically, *Brown* was concerned with how Title VII's remedies fit within the statutory framework established by 42 U.S.C. § 1981. *Id.* at 834–35 ("We have consistently held that a narrowly tailored employee compensation scheme pre-empts the more general tort recovery statutes."). As the Michigan Supreme Court has recognized, "*Brown* did not involve a constitutional issue" and "*Brown* accepted as an established principle that a party could seek injunctive relief against unconstitutional governmental action." *See Sharp v. City of Lansing*, 629 N.W. 2d 873, 879 (Mich. 2001).

This distinction is self-evident, as the right to Equal Protection was not created by Title VII and no waiver of sovereign immunity is necessary to vindicate one's constitutional rights. The Equal Protection component of the Due Process Clause—like other guarantees in the Bill of Right— is self-executing. *Davis v. Burke*, 179 U.S. 399, 403 (1900) ("Where a constitutional provision is complete in itself it needs no further legislation to put it in force."); *see also Davis v. Passman*, 442 U.S. 228, 236 (1979) (a federal district court has original jurisdiction to consider a claim under the Equal Protection component of the Fifth Amendment's Due Process Clause). The legislative branch does not have the power "through a statute to foreclose the ability of the judicial

10

branch to put an end to constitutional violations."[6] *Sharp*, 629 N.W. 2d at 808–09; *Davis*, 442 U.S. at 236 (Rejecting government's argument that the Fifth Amendment did not provide a cause of action for employee's discrimination claim, "for the question of who may enforce a *statutory* right is fundamentally different from the question of who may enforce a right that is protected by the Constitution." (emphasis in original)); *Olegario*, 629 F.2d at 220 (Naturalization statute "cannot negate the due process rights of a petitioner who alleges that he was unconstitutionally denied the opportunity to apply for a benefit decreed by Congress.").

Furthermore, the cases cited by Defendant in support of its position that Title VII preempts Mr. Brigida's Equal Protection claim were concerned with the possibility that litigants might evade Title VII's administrative exhaustion requirements and time limitations. For example, *Kizas v. Webster*, 707 F.2d 524, 543 (D.C. Cir. 1983) stands for the principle that plaintiffs could not circumvent the administrative charge-filing requirement for bringing a federal employment discrimination claim by relying on an Equal Protection claim. But a holding that a plaintiff must follow a statutorily mandated procedure in bringing a *statutory* claim is not a holding that *constitutional* claims are precluded. In any event, Mr. Brigida timely filed a formal complaint with the Equal Employment Opportunity Commission and does not seek to evade Title VII's administrative filing requirements. Second Amended Complaint ¶¶ 84–85. He simply pleads an

---

[6] Indeed, it is clear that the Framers never intended for Congress to legislate away the Bill of Rights:

> As James Madison stated when he presented the Bill of Rights to the Congress: "If [these rights] are incorporated into the Constitution, independent tribunals of justice will consider themselves in a peculiar manner the guardians of those rights; they will be an impenetrable bulwark against every assumption of power in the Legislative or Executive; they will be naturally led to resist every encroachment upon rights expressly stipulated for in the Constitution by the declaration of rights."

*Davis*, 442 U.S. at 241–42 (quoting 1 Annals of Cong. 439 (1789)) (alteration in original)).

independent cause of action under the Equal Protection component of the Due Process Clause in the alternative, while recognizing that there can be only one recovery for an injury.

Dismissing Mr. Brigida's Equal Protection claim at this early stage of litigation was improper.  Instead, the Arizona district court should have followed the lead of the Supreme Court in *Ricci v. DeStefano*, 557 U.S. 557 (2009), where firefighters brought claims of racial discrimination in violation of both Title VII and the Equal Protection Clause of the Fourteenth Amendment.  There, the Court exercised the doctrine of constitutional avoidance in first considering whether the city's actions violated Title VII and, thus, never reached the firefighters' alternative constitutional claim.  *Id.* at 563, 577 ("A decision for petitioners on their statutory claim would provide the relief sought, so we consider it first.").  Similarly, both Mr. Brigida's Title VII and Equal Protection claims should remain in this case until the merits of the claims are adjudicated.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Mr. Brigida's Motion for Reconsideration.

DATED this 27th day of January 2017.

Respectfully submitted,

MOUNTAINS STATES LEGAL FOUNDATION

s/ Steven J. Lechner
Steven J. Lechner, D.C. Bar No. AZ 0001
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, CO 80227
(303) 292-2021
(303) 292-1980 (facsimile)
lechner@mountainstateslegal.com

12

Michael W. Pearson (AZ No. 016281)
Curry, Pearson, & Wooten, PLC
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000
(602) 523-9000 (facsimile)
mpearson@azlaw.com

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of January 2017, I caused a true and correct copy of

the foregoing document to be electronically filed with the Clerk of the Court using the Court's

CM/ECF system which sent notification of such filing to the following counsel of record in this

matter:

Arjun Garg
Arjun.garg@usdoj.gov

<u>s/ Steven J. Lechner</u>
Steven J. Lechner