UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW J. BRIGIDA,

       *Plaintiff*,

   v.

ELAINE L. CHAO, Secretary,
 U.S. Department of Transportation,

       *Defendant*.

Civil Action No. 16-2227 (DLF)

## MEMORANDUM OPINION & ORDER

Before the Court is Andrew Brigida's Motion for Reconsideration. Dkt. 39. For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND

This suit arises from Brigida's failed application for employment as an air traffic controller with the Federal Aviation Administration (FAA). Historically, the FAA has hired air traffic controllers from various categories of applicants, including applicants who graduated from programs accredited by the FAA's Collegiate Training Initiative (CTI) and passed an aptitude test, the Air Traffic Control Selection and Training examination. Second Am. Compl. ¶¶ 21–30, 35, Dkt. 26. CTI graduates who passed the aptitude test entered a direct hire pool of applicants, were placed on a "qualified applicant register" list, and were given hiring preference for air traffic controller positions. *Id.* ¶ 31. In 2013, Brigida graduated from a CTI institution, Arizona State University, which recommended him to the FAA, and he passed the aptitude test with the top possible score of 100%. *Id.* ¶¶ 76–77. As a result, the FAA placed Brigida on the qualified applicant register. *Id.* ¶ 78.

In late 2013, however, the FAA changed its process for hiring air traffic controllers. *Id.* ¶¶ 47–50. Instead of hiring from the qualified applicant register, the FAA required all applicants—including CTI graduates—to apply through a nationwide vacancy announcement open to all U.S. citizens and issued in February 2014. *Id.* ¶ 49. Under the new process, applicants first completed a "biographical questionnaire." *Id.* ¶ 50. If an applicant "passed" the biographical questionnaire and otherwise qualified, the applicant then took the cognitive portion of the aptitude test. *Id.* According to Brigida, in late January 2014, the FAA informed him that the qualified applicant register was being eliminated and that he would need to reapply under the new hiring process if he still wished to be considered. *Id.* ¶ 79. In February 2014, Brigida reapplied and took the biographical questionnaire. *Id.* ¶ 80. Brigida alleges that, on February 27, 2014, the FAA notified him that "he had failed the biographical questionnaire and was ineligible to be hired" as an air traffic controller. *Id.* ¶ 82. In December 2015, Brigida filed suit in the District of Arizona on behalf of himself and a putative class, asserting that the new hiring process discriminated based on race in violation of Title VII and the Fifth Amendment (under what is referred to as "the equal protection component" of the Fifth Amendment's due process clause). *See* Compl. ¶¶ 79–96, Dkt. 1; *accord* Second Am. Compl. ¶¶ 97–114.

Several months later, Congress established a new air-traffic-controller hiring regime via the FAA Extension, Safety, and Security Act of 2016. *See* Pub. L. No. 114-190, § 2106, 130 Stat. 615, 620 (July 15, 2016) (codified at 49 U.S.C. § 44506(f)). Under the 2016 Act, the FAA "shall give preferential consideration" to experienced air traffic controllers, *i.e.*, "qualified individuals maintaining 52 consecutive weeks of air traffic control experience" while serving at an FAA air traffic control facility (in a prior employment stint), a Department of Defense air traffic control facility, or a tower under contract with the FAA. 49 U.S.C. § 44506(f)(1)(A).

2

"After giving preferential consideration to [that group of] applicants," the FAA "shall consider additional applicants . . . by referring an approximately equal number of individuals for appointment among" two "applicant pools," and the number of applicants referred from each pool "shall not differ by more than 10 percent." *Id.* § 44506(f)(1)(B)(i). "Pool 1 applicants" are eligible veterans and CTI graduates recommended by their institutions. *Id.* § 44506(f)(1)(B)(ii). "Pool 2 applicants" are members of the general public "who apply under a vacancy announcement recruiting from all United States citizens." *Id.* § 44506(f)(1)(B)(iii).

In addition, the 2016 Act prohibits the FAA from using "any biographical assessment" when hiring experienced applicants and Pool 1 applicants. *Id.* § 44506(f)(1)(C)(ii), § 44506(f)(2)(A). Also, for experienced controllers, CTI graduates, and military veterans who were "disqualified" from the FAA's 2014 hiring round "as the result of a biographical assessment," the FAA "shall provide the applicant an opportunity to reapply for the position as soon as practicable under the revised hiring practices" and, subject to a few conditions, "shall waive any maximum age restriction" that would ordinarily apply. *Id.* § 44506(f)(2)(B).

In this action following the 2016 Act, the government filed a partial motion to dismiss under Rule 12(b)(6) or strike under Rule 12(f), as well as a motion to transfer based on improper venue. Dkt. 27. The Arizona federal district court (1) dismissed Brigida's equal protection claim; (2) dismissed all of the defendants except the Transportation Secretary;[1] (3) struck Brigida's request for equitable relief; and (4) transferred the action to this Court. Order at 4–11 (Nov. 7, 2016), Dkt. 33. Brigida now asks the Court to reconsider discrete aspects of the prior order. Pl.'s Mot. at 1, Dkt. 39. Specifically, Brigida asks the Court to restore the request for

---

[1] When this suit began, Anthony R. Foxx was the Secretary of the U.S. Department of Transportation. When Elaine L. Chao became the Secretary, she was automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

3

equitable relief stricken by the prior order.  *Id.*  In the alternative, he requests that the Court restore his equal protection claim.  *Id.*

## II.  LEGAL STANDARDS

"[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  Under Rule 54(b), a district court may reconsider an interlocutory order "as justice requires."  *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (citation omitted); *see also Cobell v. Jewell*, 820 F.3d 12, 25 (D.C. Cir. 2015).  "In general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates:  (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order."  *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 164 F. Supp. 3d 56, 62 (D.D.C. 2016) (internal quotation marks omitted).  For example, "[j]ustice may require revision when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court."  *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citation and alteration omitted); *see also Hall & Assocs. v. EPA*, 2016 WL 5396653, at *3 (D.D.C. Sep. 27, 2016) ("[I]n order to promote finality and protect the court's judicial resources, the court is loath to revisit its prior decision absent extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." (citation omitted)).  "The burden is on the moving party to show that

4

reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012).

Because the order at issue was based on Rule 12(b)(6) and Rule 12(f), those standards also inform the analysis. Rule 12(b)(6) allows a defendant to move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Well-pleaded factual allegations are "entitled to [an] assumption of truth," but the assumption of truth does not apply to a "legal conclusion couched as a factual allegation." *Id.* 678–79 (quotation marks omitted). When evaluating a Rule 12(b)(6) motion, a court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted), and the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Under Rule 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[M]otions to strike, as a general rule, are disfavored." *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (citing 5 Wright & Miller, Federal Practice & Procedure § 1380 (1969)); *accord Burnett v. WMATA*, 139 F. Supp. 3d 231, 236 (D.D.C. 2015). Striking a portion

of a pleading is an "extreme remedy" usually reserved for "accusations [that] are indefensible, harassing, or detract from the dignity of the Court." *Fay v. Perles*, 59 F. Supp. 3d 128, 134 (D.D.C. 2014).  When considering a motion to strike, a court "will draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denying the motion to strike." *Bond v. DOJ*, 828 F. Supp. 2d 60, 72 (D.D.C. 2011).

## III.  ANALYSIS

As filed in the District of Arizona, Brigida's prayer for relief stated:

> Plaintiff Brigida, on behalf of himself and the Class he seeks to represent, respectfully requests that this Court: . . . Enter an order directing the FAA to reinstate the purged Qualified Applicant Register and give hiring preference to Plaintiff Brigida and other putative Class Members.

Second Am. Compl. at 25; *see also id.* ¶¶ 102, 113 (same).  In the prior order at issue, the Arizona federal district court struck Brigida's request for equitable relief.  *See* Order at 7–8.  The Arizona court stated that this request is improper because, although Title VII empowers courts to order equitable relief, Brigida does not challenge the 2016 Act and the court "cannot prescribe relief in contravention of an unchallenged statute." *Id.* at 7.  In other words, because the 2016 Act eliminates the biographical questionnaire for CTI graduates, but does not restore the qualified applicant register or give hiring preferences to CTI graduates who passed the aptitude test, the requested relief exceeds the court's equitable powers under Title VII.  *Id.*  The prior order further reasoned that granting the relief would bind the FAA "by two inconsistent directives":  (1) a court directive to reinstate the qualified applicant register and give preference to CTI graduates who passed the aptitude test; and (2) the 2016 Act, "which directs that hiring preference be given to experienced Air Traffic Controllers." *Id.* at 8.  According to the prior order, "Brigida does not argue that both of these directives can reasonably be accomplished," so

6

the requested relief fails. *Id.* Brigida now asks that the Court reconsider the prior order and restore his request for equitable relief.[2]

If an employer intentionally engages in a practice prohibited by Title VII, "the court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees . . . or any other equitable relief as the court deem appropriate." 42 U.S.C. § 2000e-5(g)(1). "A district court has wide discretion to award equitable relief, and it should fashion this relief so as to provide a victim of employment discrimination the most complete make-whole relief possible." *Kapche v. Holder*, 677 F.3d 454, 460 n.3, 464 (D.C. Cir. 2012) (internal quotation marks and alteration omitted); *see also Peyton v. DiMario*, 287 F.3d 1121, 1126 (D.C. Cir. 2002); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) ("Where racial discrimination is concerned, the district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." (internal quotation marks and alteration omitted)).

Equity, of course, follows the law, and the Court cannot prescribe equitable relief that conflicts with the 2016 Act. *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015). Thus, the prior order was absolutely correct that, if Brigida were to prevail on the merits of his Title VII claim, the Court could not re-impose the entire FAA hiring regime that

---

[2] It is not entirely clear which Rule the Arizona federal district court relied on when striking Brigida's request for equitable relief, and thus it is not entirely clear whether Rule 12(b)(6) or Rule 12(f) governs this Court's reconsideration. The government moved to dismiss Brigida's request under Rule 12(b)(6) or, in the alternative, to strike the request under Rule 12(f). *See* Defs.' Mot. at 4, 9, Dkt. 27. The prior order stated the Rule 12(b)(6) standard and did not mention Rule 12(f), but repeatedly used the term "strike." *See* Order at 4, 8, 11. Regardless, the key question under both standards is the same in this case: whether the requested relief is available as a matter of law. *See Cronin v. Adam A. Weschler & Son, Inc.*, 904 F. Supp. 2d 37, 44 (D.D.C. 2012); Def.'s Opp'n at 15 n.2, Dkt. 40.

existed before the 2016 Act and before the allegedly discriminatory 2014 policy. In other words, the Court could not "reinstate the Qualified Applicant Register" precisely as it existed within the FAA hiring regime in late 2013, when Brigida stood a strong chance of being hired. *See* Second Am. Compl. at 25; *see also id.* ¶ 39; Unedited Hr'g Tr. at 3–4.[3]

But the prior order went too far in characterizing Brigida's request for equitable relief as *exclusively* a request to reinstate the late-2013 regime. Brigida *also* asks the Court to order the FAA to give him "hiring preference." Second Am. Compl. at 25. The 2016 Act does not establish such a comprehensive and precise hiring regime as to bar such equitable relief as a matter of law. Although the 2016 Act might prevent Brigida from receiving a hiring preference that is identical to the preference he received in the late-2013 regime, the Act does not totally foreclose the possibility that Brigida could still receive some type of hiring preference. After all, the 2016 Act does not make Brigida ineligible for hiring as an air traffic controller; rather, he remains eligible as a Pool 1 applicant. *See* 49 U.S.C. § 44506(f)(1)(B)(ii); Unedited Hr'g Tr. at 10. And although the Act mandates that experienced applicants receive a hiring preference before Pool 1 applicants, *see* 49 U.S.C. § 44506(f)(1)(A), the Act does not bar Brigida from receiving *some type* of hiring preference *within his pool*. As a result, equitable relief under Title VII remains possible at this stage. *See Peyton*, 287 F.3d at 1126 (directing district courts to fashion Title VII relief "so as to provide a victim of employment discrimination the most complete makewhole relief possible").[4]

---

[3] Once the final transcript is published, the Court will update transcript citations in accordance with the final transcript instead of the unedited transcript.

[4] The defendant further argues that the 2016 Act bars equitable relief because the Act "reflects Congress's awareness" of the cohort of CTI graduates rejected in the 2014 hiring round on the basis of the biographical questionnaire, as well as Congress's "policy decision" to attempt to redress that cohort's grievances. Def.'s Opp'n at 18–19. But just because the 2016 Act takes certain steps to remedy a problem does not mean that the 2016 Act prohibits all other remedies.

Furthermore, Brigida suggests that the FAA is at a "27-year low" of employed air traffic controllers; thus, there may be enough open jobs that the FAA could give hiring preference to *both* experienced applicants *and* Brigida. *See* Pl.'s Reply at 8 n.4, Dkt. 43. The FAA does not offer any reason to think the contrary. *See* Unedited Hr'g Tr. at 16 ("I'm not aware of the precise numbers."). Without more factual development, the Court cannot conclude that it would be impossible to fashion—within the framework of the 2016 Act—a remedy involving some type of hiring preference for Brigida and possibly the putative class members as well. That is especially true because class certification remains speculative at this stage.

As a result, the Court concludes that the prior order misapprehended the nature of Brigida's request for equitable relief and clearly erred by concluding that any equitable relief would be "inconsistent" with the 2016 Act simply because the Act "directs that hiring preference be given to experienced Air Traffic Controllers." Order at 8; *see Univ. of Colo. Health*, 164 F. Supp. 3d at 62; *Singh*, 383 F. Supp. 2d at 101. The Court does not reconsider prior orders lightly. *See Hall & Assocs.*, 2016 WL 5396653, at *3. But these errors, if left undisturbed, would work injustice by preventing Brigida from pursuing relief to which he may be entitled under Title VII. *See id.* Thus, the Court will grant Brigida's motion for reconsideration and restore Brigida's request for equitable relief to the extent that it requests an order directing the

---

After all, Title VII is also a congressional decision. "[A]bsent a clearly expressed congressional intention, an implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) (internal quotation marks and alterations omitted). As discussed above, there is no indication that the 2016 Act forecloses all equitable remedies under Title VII, nor that the 2016 Act is clearly irreconcilable with Title VII or a substitute for Title VII.

9

defendant to "give hiring preference" to Brigida and other putative class members. Second Am. Compl. at 25.[5]

Finally, the Court notes that this opinion addresses only the narrow issue at hand: whether Brigida can pursue equitable relief at this stage in his case. The Court takes no position whatsoever on the merits of Brigida's Title VII claim or the appropriate relief in the event that he prevails.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Brigida's Motion for Reconsideration, Dkt. 39, is **GRANTED**. Accordingly, it is

**ORDERED** that, pursuant to Rule 54(b), the prior order of November 7, 2016, Dkt. 33, is **REVISED** as follows:

1. On page 11 of the prior order, the sentence "Defendants' motion to dismiss, (Doc. 27), is GRANTED is revised to read: "Defendants' motion to dismiss, (Doc. 27), is GRANTED IN PART and DENIED IN PART."

2. On page 11 of the prior order, the sentence striking Brigida's request for equitable relief ("Plaintiff's request that the Qualified Applicant Register be reinstated and that hiring preference be given to CTI graduates who passed the AT-SAT is STRICKEN from the Second Amended and Supplemental Complaint") is removed from the order. It is further

**ORDERED** that, consistent with this opinion, Brigida's request for equitable relief in his Second Amended and Supplemental Complaint, Dkt. 26, is **RESTORED**. It is further

---

[5] Brigida's motion also requests, "in the alternative," that the Court restore his equal protection claim if the Court does not restore his request for equitable relief under Title VII. Pl.'s Mot. at 1; *see also* Pl.'s Mem. at 22–23. Because the Court restores Brigida's request for equitable relief, the Court does not address the alternative argument.

**ORDERED** that the defendant shall answer the Second Amended and Supplemental Complaint, Dkt. 26, on or before June 21, 2018. *See* Dkt. 38 (plaintiff's unopposed motion proposing that the answer deadline be changed to 21 days after the Court resolves the motion for reconsideration); *cf.* Fed. R. Civ. P. 12(a)(4).

**SO ORDERED**.

Date: May 31, 2018

_____
DABNEY L. FRIEDRICH
United States District Judge