# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ANDREW J. BRIGIDA; POLLYANNA L.   )
WANG; SUZANNE M. REBICH;        )
MATTHEW L. DOUGLAS-COOK      )
                               )
                               )
        Plaintiffs,          )
                               )
        vs.               )         Case No. 16-cv-2227 (DLF)
                               )
ELAINE L. CHAO, Secretary, U.S.     )
Department of Transportation,        )
                               )
        Defendant.         )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiffs individually, and on behalf of all others similarly situated, by undersigned counsel, and pursuant to Federal Rule of Civil Procedure 23 and Local Rule 23.1, respectfully submit this Memorandum of Points and Authorities in support of Motion for Class Certification.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... i

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iv

EXHIBIT LIST ............................................................................................................... vi

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

ARGUMENT ................................................................................................................. 10

I.   Class Definition ....................................................................................................... 10

II.  Plaintiffs Present a Class Pursuant to Rule 23 ........................................................ 11

   A.  The Requirements of Rule 23(a) are Satisfied ................................................... 12

     1.  The Class is Sufficiently Numerous ........................................................... 12

     2.  The Legal and Factual Issues are Common to the Class ............................. 13

     3.  Plaintiffs' Claims are Typical of the Class ................................................ 15

     4.  Plaintiffs and Counsel Will Fairly and Adequately Protect the Interests  of the Class 16

       a.  Plaintiffs will be Adequate Class Representatives ................................ 17

       b.  Proposed Class Counsel is Well-Qualified and Will Vigorously  Prosecute the Interests of the Class ...................................................................................... 19

   B.  The Requirements of Rule 23(b) are Satisfied ................................................... 21

     1.  The Requirements of Rule 23(b)(2) are Satisfied Because Defendant Has Acted on Grounds that Apply Generally to the Class, so that Declaratory Relief is Appropriate Respecting the Class as a Whole .............................................. 21

     2.  The Requirements of Rule 23(b)(3) are Satisfied ...................................... 22

       a.  Common Issues Predominate Over Issues that Only Affect Individual Class Members ............................................................................................. 23

b.  Resolution Via a Class Action is a Superior Method of Adjudicating the Claims at Issue ................................................................................................................ 24

III. Other Litigation ................................................................................................ 25

IV. Class Counsel's Notice Proposal .................................................................... 26

CONCLUSION .......................................................................................................... 27

CERTIFICATE OF SERVICE………………………………………………………………29

# **TABLE OF AUTHORITIES**

**Cases**

*Adair v. England*, 209 F.R.D. 5 (D.D.C. 2002) ............................................................ 14

*Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995)* ......................................... 2, 20

*Amchem Prod., Inc. v. Windsor,* 521 U.S. 591 (1997) ........................................ 23, 25

*\*Bynum v. District of Columbia,* 214 F.R.D. 27 (D.D.C. 2003) ..................................... passim

*Cohen v. Chilcott,* 522 F.Supp.2d 105 (D.D.C. 2007) ............................................... 12

*Comcast Corp. v. Behrend,* 569 U.S. 27 (2013) ........................................................... 24

*DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013) ..........................................15

*Eubanks v. Billington,* 110 F.3d 87 (D.C. Cir. 1997) ................................................ 21

*Garcia v. Johanns,* 444 F.3d 625 (D.C. Cir. 2006) ..................................................... 13

*\*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ................................. 11, 15

*In re Lorazepam & Clorazepate Antitrust* Litig., 202 F.R.D. 12 (D.D.C. 2001) ................ 13, 15

*In re Vitamins Antitrust Litig.,* 209 F.R.D. 251 (D.D.C. 2002) ................................... 23

*Lightbourn v. County of El Paso,* 118 F.3d 421 (5th Cir. 1997) ................................ 13

*\*Little v. Washington Metro. Area Transit Auth.*, 249 F. Supp. 3d 394 (D.D.C. 2017) ... passim

*Moore v. Napolitano*, 926 F. Supp. 2d 8, 33 (D.D.C. 2013) .........................................23

*Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32 (D.D.C. 2017)....... 15

*\*Ricci v. DeStefano*, 557 U.S. 557 (2009) ................................................................. 2

*Thorpe v. District of Columbia*, 303 F.R.D. 120 (D.D.C. 2014) ................................ 13, 15

*Twelve John Does v. District of Columbia,* 117 F.3d 571 (D.C. Cir. 1997) .................... 17

*\*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................. 13, 21

**Statutes**

42 U.S.C. § 2000e-2(h) .................................................................................................. 2

49 U.S.C. § 44506(c)(2)(A) ........................................................................................... 3

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended ......... 2, 10, 15

**Other Authorities**

FAA Order 3120.26 ........................................................................................................ 3

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... passim

Fed. R. Civ. P. 23(a) ............................................................................................. passim

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 12, 13

Fed. R. Civ. P. 23(a)(2) ................................................................................... 13, 14, 15

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 15, 16

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 11, 16

Fed. R. Civ. P. 23(b) ............................................................................................. 11, 21

Fed. R. Civ. P. 23(b)(2) ......................................................................................... 11, 21

Fed. R. Civ. P. 23(b)(3) ........................................................................................... passim

Fed. R. Civ. P. 23(c)(1)(A) ........................................................................................... 11

LCvR. 23.1(c) ............................................................................................................... 26

## EXHIBIT LIST

1.      Air Traffic Collegiate Training Initiative (AT-CTI) Partnership Agreement & Documents. PLA0034-PLA0066.

2.      FAA Air Traffic Collegiate Training Initiative (AT-CTI) Information from FAA's Website. PLA0067-PLA0070.

3.      The Validity of the Air Traffic Selection and Training (AT-SAT) Test Battery in Operational Use Report. PLA0071-PLA0085.

4.      FAA Air Traffic Collegiate Training Initiative Diversity Data 2011-12. PLA0086-PLA0095.

5.      FAA Statement on the Barrier Analysis of the Air Traffic Control Specialist Centralized Hiring Process. PLA0096-PLA0097.

6.      Declaration of Anthony Gagliardo. PLA0098-PLA0102.

7.      FAA Briefing by Dana Broach, dated April 9, 2013. PLA0103-PLA0105.

8.      Email From Cathy Grossman re Register, December 5, 2013, PLA0106-PLA0107.

9.      Declaration of Andrew Brigida. PLA0108-PLA0111.

10.      Declaration of Matthew Douglas-Cook. PLA0112-PLA0115.

11.      Declaration of Pollyanna Wang. PLA0116-PLA0118.

12.      Declaration of Suzanne Rebich. PLA0119-PLA0121.

**INTRODUCTION**

This Motion for Class Certification is about as straight-forward as they come. The underlying case arises out of the Federal Aviation Administration's ("FAA") intentional race-based discrimination against Plaintiffs Andrew J. Brigida, Pollyanna L. Wang, Suzanne M. Rebich, and Matthew L. Douglas-Cook, as well as a putative class of approximately 2,600 similarly situated air traffic control specialist ("ATCS") applicants (the "Class").

During the relevant time period, 36 institutions of higher learning were certified by the FAA as Air Traffic-Collegiate Training Initiative schools ("AT-CTI"). The AT-CTI graduate hiring, testing, and selection criteria were bright-line and enumerated in various FAA orders. Those applicants who met the FAA's AT-CTI program criteria, which included passing a validated aptitude test called the Air Traffic Training and Selection Examination ("AT-SAT"), were placed on a Qualified Applicant Register ("Register") that led to preferential, noncompetitive hiring as an ATCS candidate by the FAA. In early January of 2014, CTI graduates, who met AT-CTI program criteria and had passed the AT-SAT were "purged" from the Register by the FAA without notice or forewarning. Those who were purged were told that the AT-SAT was being replaced with a new testing instrument, that their prior AT-SAT scores were no longer valid, and that they would have to reapply for ATCS positions along with the general public if they wished to be considered for employment. According to the FAA, the purging of the Register and implementation of the new "off-the-street" hiring process was done to "add diversity to the workforce." 3rd Am. Compl. ¶ 65.

The FAA eliminated the Register and AT-SAT scores of ATCS applicants without a strong basis in evidence that there was an impermissible disparate impact on a protected class. As a result of Defendant's discrimination, Plaintiffs, as well as approximately 2,600 others, were denied their

legitimate expectation not to be judged on the basis of race and, therefore, lost preferential employment opportunities with the FAA.

The FAA engaged in intentional disparate race-conscious conduct to remedy a non-existent disparate impact. Purging the Register and eliminating the valid AT-SAT results simply because the FAA did not like the racial makeup of the majority of the register or those who scored high on the AT-SAT is a clear violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended. *Ricci v. DeStefano*, 557 U.S. 557, 585 (2009); *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995). Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. *Ricci*, 557 U.S. at 577. Absent a valid defense, Title VII prevents a government agency, such as the FAA, from refusing to accept the outcome of a race-neutral hiring process solely because of the racial makeup of the successful applicants. *Id*. at 579. Title VII also expressly protects the results of bona fide examinations, such as the AT-SAT. *See* 42 U.S.C. § 2000e-2(h). The FAA committed an unlawful employment practice by eliminating the AT-SAT examination results because of a belief that too many Caucasians passed the examination. *Ricci*, 557 U.S. at 579.

Due to the FAA's intentional race-conscious discrimination, Plaintiffs requests certification of a nationwide class of similarly situated individuals (the "Class"), defined as follows:

> All persons who met the requirements for graduation from a Federal Aviation Administration ("FAA") approved Air Traffic Collegiate Training Initiative ("AT-CTI") program and U.S. Office of Personnel Management qualification standards for employment as an air traffic control specialist on, or prior to, December 31, 2013 and who:
>
> > (1) were on, or eligible to be on, the FAA's AT-CTI Qualified Applicant Register;
> > (2) received, or was eligible to receive, a recommendation from an AT-CTI institution; and
> > (3) have not been employed by the FAA as an air traffic control series, GS-

2152, air traffic control specialist.

As described in further detail below, Plaintiffs have demonstrated that the proposed Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and that class treatment is appropriate and necessary to resolve the claims common to Plaintiffs and the Class members. Plaintiffs further request that they be designated as Class Representatives and designate Curry, Pearson & Wooten, PLC and Mountain States Legal Foundation as joint Class Counsel.

## BACKGROUND

### The FAA's Air Traffic Collegiate Training Initiative

In January 1991, the FAA promulgated FAA Order 3120.26, which established the AT-CTI program to develop, deliver, and implement air traffic control recruiting, selection, and training. 3rd Am. Compl. ¶ 21. During the relevant time period, 36 institutions of higher learning were certified by the FAA as AT-CTI schools. 3rd Am. Compl. ¶ 24. Each AT-CTI institution entered a formal partnership agreement with the FAA ("Agreement"). 3rd Am. Compl. ¶ 23; Ex. 1; Ex. 2. As part of this Agreement, the schools and the FAA agreed to "accept the criteria and policy established for the AT-CTI program." Ex. 1. at PLA0035. The FAA agreed to place AT-CTI graduates who met the AT-CTI program criteria and the U.S. Office of Personnel Management ("OPM") qualification standards, and passed the oft-validated AT-SAT on the Register that led to noncompetitive hiring as an air traffic control specialist by the FAA. *See* 49 U.S.C.A. § 44506(c)(2)(A); 3rd Am. Compl. ¶ 31; Ex. 1 at PLA0045-PLA0047; Ex. 2. The pre-2014 AT-CTI graduate hiring, testing, and selection criteria and policies are documented, well-know, and bright-line. Ex. 1; Ex. 2.

The FAA's Civil Aeronautical Medical Institute ("CAMI") researched, developed, and

validated the AT-SAT. Ex. 3 at PLA0077.[1] The AT-SAT has been in operational use since 2002. *Id.* The validity of the AT-SAT as a predictor of ATCS job performance was demonstrated in two concurrent, criterion-related validation studies. *Id.* at PLA0074-PLA0077. These two studies independently demonstrated that the AT-SAT is a valid predictor of ATCS job performance. *Id.* Furthermore, when differences in score distributions by race and sex were observed in the course of initial AT-SAT validation, with African-Americans and Hispanic-Latinos scoring lower than Caucasians, the FAA re-weighted the AT-SAT subtests (in 2001) to mitigate these group differences without substantially reducing validity. *Id.* at PLA0077. An additional 2006 FAA study verified that the FAA's 2001 efforts to mitigate the AT-SAT race and gender differences were successful.[2] Since the FAA first instituted the AT-SAT, it has been validated multiple times to ensure it was in accord with the law and professional guidelines. The AT-SAT was validated most recently in March of 2013. 3rd Am. Compl. ¶ 30; *see also* note 1, *supra.* ATCS Applicants who scored 85 and above on the AT-SAT were classified as "well-qualified" by the FAA. 3rd Am. Compl. ¶ 29. Applicants who scored between 70 and 84.9 were classified as "qualified" by the FAA. *Id.* Applicants who scored below 70 were classified as "not qualified" by the FAA and were not eligible for ATCS positions. *Id.*

The AT-CTI program has been one of three sources utilized by the FAA for over two decades to meet their ATCS hiring needs. The second hiring source previously used by the FAA was from a pool of military trained controllers—Veteran's Recruitment Appointment ("VRA"). 3rd

---

[1] Dana Broach et al., The Validity of the Air Traffic Selection and Training (AT-SAT) Test Battery in Operational Use. (Report No. DOT/FAA/AM-13/3) (2013). Ex. 3.

[2] Andrew R. Dattel & Raymond E. King, Reweighting AT-SAT to Mitigate Group Score Differences (Report No. DOT/FAA/AM-06/16) (2006), at 9, available at https://www.faa.gov/data_research/research/med_humanfacs/oamtechreports/2000s/media/200616.pdf.

Am. Compl. ¶ 32. The third hiring source was from the general public or "off-the-street" ("OTS") applicants. *Id.* No previous air traffic control experience or training is required for those on the general public path. *See* 3rd Am. Compl. ¶¶ 33-34. Since the inception of the AT-CTI program, the FAA has been able to hire ATCS candidates, and has hired ATCS candidates, from all three applicant sources, including from the general public. At the end of 2012, the FAA announced that it would not be conducting any further OTS hiring because the CTI schools, along with the military VRA applicant pool, were producing sufficient quantities of qualified applicants to fulfill demand. 3rd Am. Compl. ¶ 38.

The FAA estimated that it needed to hire over 1,000 ATCS per year in 2012, 2013, and 2014 in order to keep up with attrition and demand for new air traffic controllers. 3rd Am. Compl. ¶ 39. In 2013, there were approximately 2,600 AT-CTI graduates on the Register.[3] Despite this stated demand for air traffic controllers and several thousand qualified candidates on the Register waiting to be hired, the FAA slowed and eventually froze the processing and hiring of ATCS applicants. 3rd Am. Compl. ¶ 39. Although the Agreement required the FAA to add qualified AT-CTI graduates to the Register, the FAA ceased doing so in October of 2012. 3rd Am. Compl. ¶ 41; Ex. 1.

### The FAA's Diversity Data

In January of 2012, the FAA solicited voluntary diversity information from the AT-CTI schools. Ex. 4. Afterwards, a report titled "Air Traffic Collegiate Training Initiative Diversity Data 2011-2012 ("2011-2012 Diversity Report") was created. Ex. 4. Discussing the purpose of the data solicitation, the FAA stated, in relevant part:

> The AT-CTI program office wanted to determine if there were significant differences
> in the diversity as students moved [through] their college program. There are very
> few conclusions that can be drawn until data is collected during the ensuing school

---

[3] U.S. Department of Transportation, Federal Aviation Administration, A Plan for the Future; 10-Year Strategy for the Air Traffic Control Workforce 2014 – 2023 (2014), at 41.

years.

*Id.* at PLA0089.

The data collection was informal and relied on the subjects to self-identify and provide gender, race, and national origin data to the FAA. The 2011-2012 Diversity Report concluded that "no trending conclusions can be drawn from this one-year data" *Id*. at PLA0091. On February 8, 2013, Terry Craft, the FAA's AT-CTI program manager, sent an e-mail to AT-CTI schools in which he stated that he believed that the AT-CTI applicant pool was diverse. 3rd Am. Compl. ¶ 43. On February 25, 2013, the FAA published a subsequent diversity report ("2013 Diversity Report"). The 2013 Diversity Report provided that "it is clear that the FAA AT-CTI schools are making great strides to incorporate minority students and faculty into their programs . . . ." 3rd Am. Compl. ¶ 44. According to the 2013 Diversity Report, in 2012-2013, 11.5 percent of AT-CTI school enrollees were African-American. 3rd Am. Compl. ¶ 45. This percentage of African-American enrollees exceeded the relevant percentage of African Americans in the civilian labor workforce pool in the same years. *Id.*

In April of 2012, Outtz and Associates was commissioned by the FAA to conduct a Barrier Analysis Report ("Barrier Report"). Ex. 5. The Barrier Report was finished in May of 2013. *Id.* According to the Barrier Report, the actual date of completion was May 8, 2013.[4] The Barrier Report utilized and relied on data from the 2011-2012 Diversity Report despite the admonishment that "no trending conclusions can be drawn from this one-year data" The FAA determined that the Barrier Report was unacceptable as "[i]t did not meet the needs of Federal Aviation Administration

---

[4]James L. Outtz & Paul J. Hanges, Barrier Analysis of the Air Traffic Control Specialists (ATCS) Centralized Hiring Process (2013) (showing completion date of May 8, 2013), available at
https://www.faa.gov/about/office_org/headquarters_offices/acr/eeo_affirm_program/media/Barrier_Analysis_Report.pdf

and/or the other stakeholders." *Id.* at 155.

Subsequently, APT Metrics, was hired to "analyze differential [application process] pass rates for protected group members." Ex. 5. APT Metrics' report, titled Extension to Barrier Analysis of Air Traffic Control Specialist Centralized Hiring Process ("Extension Report"), was finalized and issued on April 16, 2013.[5] Although the Extension Report allegedly built upon and used data from the Barrier Report, the Barrier Report was not finished until approximately 22 days *after* the Extension Report was completed. Neither the Barrier Report nor the Extension Report researched the validity of the AT-SAT. The Extension Report admittedly relied on AT-SAT data provided by CAMI. *See* note 5, *supra*, at 4. The Extension Report itself concluded that "[w]hen used as a minimum qualification with a 70% pass score, approximately 95% of applicants pass the exam [AT-SAT] with no resulting adverse impact for African Americans, Hispanics, and Females." *Id.* at 6. The Extension Report concluded "[i]n terms of the AT-SAT itself, it is recommended that supplemental validation research be conducted to confirm its relevance to the job. Specifically, the AT-SAT should be reviewed against an updated job analysis to ensure that it is still measuring the most important requirements for success in the ATCS position." *Id.* at 8. The FAA did, in fact, revalidate the AT-SAT to confirm job relevance in March of 2013—just one month *after* the completion of the Extension Report and *before* the Barrier Report was even finished. Ex. 3 at PLA0078. The Barrier Report and Extension Report both allegedly relied on AT-CTI diversity data provided to them by the FAA; however, the data and analysis was seriously flawed. The 2011-2012 Diversity Report and 2013 Diversity Report data was manipulated and intentionally changed by the

---

[5]APTMetrics, Inc. Extension to Barrier Analysis of Air Traffic Control Specialist Centralized Hiring Process (2013) (showing completion date of April 6, 2013), available at https://www.faa.gov/about/office_org/headquarters_offices/acr/eeo_affirm_program/media/Extension_to_Barrier_Analysis_Report.pdf.

FAA to make AT-CTI schools appear less racially diverse. Ex. 6. ¶¶ 15-19.

### The FAA's Purge of the Qualified Applicant Register

In 2013, the FAA published an employment plan providing that the FAA was "planning to open a general public announcement in FY 2014 to add more depth and diversity to our controller hiring sources." 3rd Am. Compl. ¶ 42. The FAA Administrator made a "historic commitment to transform the FAA into a more diverse and inclusive workplace." Ex. 5. Although the FAA had thousands of diverse AT-CTI applicants on the Register who had passed the AT-SAT and could immediately be hired, secret meetings were held to discuss the trade-off between increasing diversity and reduction in job performance. Ex. 7. Unbeknownst to the AT-CTI programs or students, since 2010, members of the FAA Human Resources ("HR") and Civil Rights ("CR") Offices had been working with an FAA employee special interest group, the National Black Coalition of Federal Aviation Employees ("NBCFAE"), to eliminate the Register. 3rd Am. Compl. ¶ 58. Several members of the FAA HR and CR Offices had notified, *inter alia*, the NBCFAE, and other select special interest groups, that the FAA was going to eliminate or "purge" the AT-CTI Register well prior to notifying the AT-CTI institutions. 3rd Am. Compl. ¶ 57. NBCFAE National President Roosevelt Lenard, Jr. was in contact with senior FAA officials, including Carrolyn Bostick, the FAA management official in charge of human resources, about Mr. Lenard's desire to eliminate the entire Register. 3rd Am. Compl. ¶ 62.

On December 30, 2013, Joseph Teixeira, the FAA's Vice President for Safety and Technical Training, sent an e-mail ("Teixeira E-mail") to the AT-CTI schools regarding the future of hiring for ATCS positions. 3rd Am. Compl. ¶ 48. The Teixeira E-mail stated that "[a] nationwide competitive FG-01 vacancy announcement open to all U.S. Citizens will be issued in February 2014. Any individual desiring consideration for employment (including CTI graduates) MUST apply. Existing

inventories of past applicants will not be used." 3rd Am. Compl. ¶ 50. The Teixeira E-mail also provided that "[t]he existing testing process has been updated. The revised testing process is comprised of a biographical questionnaire (completed as part of the application process) and the cognitive portion of the AT-SAT. The cognitive portion of the AT-SAT will be administered only to those who meet the qualification standards and pass the biographical questionnaire. Applicants for the February 2014 announcement will be required to take and pass the new assessments in order to be referred on for a selection decision." 3rd Am. Compl. ¶ 51. Abruptly, and without prior notice to AT-CTI institutions or graduates, the FAA purged the Register and eliminated the scores of thousands of AT-CTI graduates with significant air traffic control training who had passed the validated AT-SAT. The FAA eliminated the AT-CTI hiring preference and told AT-CTI students and graduates that they would have to apply as a general public applicant.

In January of 2014, FAA HR Official Carolynn Bostick assured NBCFAE National President, Mr. Lenard, that the Register would be "purged" and none of the AT-CTI Register applicants would be offered a letter of employment. 3rd Am. Compl. ¶ 63.

In February of 2014, Tony Molinaro, FAA spokesman and Public Affairs Officer for the FAA in the Great Lakes and Central Regions, stated that the decision to change the FAA's hiring process for Air Traffic Controllers was made to "add diversity to the workforce."[6]

Plaintiffs, and several thousand similarly situated putative Class members, had graduated from AT-CTI programs, received recommendations from their AT-CTI schools, passed the AT-SAT, and were either placed, or would have been placed, on the Register but for the FAA's abrupt and discriminatory change in hiring practices. The purging of the Register and concomitant

---

[6]Anna Burleson, W*ant to be an air traffic controller? UND says FAA has 'dumbed down the process'*, Grand Forks Herald, March 5, 2014, http://www.grandforksherald.com/content/want-be-air-traffic-controller-und-says-faa-has-dumbed-down-process.

termination of the long-established AT-CTI hiring criteria, selection criteria, and AT-SAT results were due to intentional racial bias. The FAA illegally eliminated the Register and AT-CTI preference without a strong basis in evidence for doing so. Furthermore, the FAA disregarded a bona fide promotional examination that was shown to have minimal adverse impact on members of protected classes.

On October 23, 2018, Plaintiffs, on behalf of themselves and all others similarly situated, filed a Third Amended Class Action Complaint against Defendant, alleging, *inter alia*, a violation of the Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352), as amended. 42 U.S.C. § 2000e. Based upon the common and unlawful conduct described above, Plaintiffs seek to certify a class as further enumerated herein. As set forth below, the proposed Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, and class treatment is appropriate and necessary to resolve the claims common to Plaintiffs and the Class members.

## ARGUMENT

### I.    Class Definition

Plaintiffs bring this action individually and on behalf of all other similarly situated individuals pursuant to Rule 23(a), and 23(b)(2) and (3) of the Federal Rules of Civil Procedure. The proposed Class is as follows:

> All persons who met the requirements for graduation from a Federal Aviation Administration ("FAA") approved Air Traffic Collegiate Training Initiative ("AT-CTI") program and U.S. Office of Personnel Management qualification standards for employment as an air traffic control specialist on, or prior to, December 31, 2013 and who:
>
> > (1) were on, or eligible to be on, the FAA's AT-CTI Qualified Applicant Register;
> > (2) received, or was eligible to receive, a recommendation from an AT-CTI institution; and
> > (3) have not been employed by the FAA as an air traffic control series, GS-2152, air traffic control specialist.

## II.    Plaintiffs Present a Class Pursuant to Rule 23

Class actions and class relief are "peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class." *Gen. Tel. Co. of Southwest. v. Falcon*, 457 U.S. 147, 155 (1982) (quotation marks and citation omitted). In cases such as this one, class actions are preferred given that "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Id.* (citation omitted).

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).

A party seeking class certification must demonstrate that the class satisfies the requirements of Rule 23(a), by showing:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to meeting the above requirements, a class must satisfy at least one of the three subsections of Rule 23(b). Rule 23(b)(2) applies to cases where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ.

P. 23(b)(2). Rule 23(b)(3) is satisfied when the proposed class demonstrates that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When evaluating a proposed class under (b)(3) a court must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) ) the likely difficulties in managing a class action.

### A.    The Requirements of Rule 23(a) are Satisfied

#### 1.    The Class is Sufficiently Numerous

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "It is generally accepted by courts in this District that numerosity is satisfied and that joinder is impracticable where a proposed class has at least forty members." *Little v. Washington Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 418 (D.D.C. 2017) (citing *Cohen v. Chilcott,* 522 F.Supp.2d 105, 114 (D.D.C. 2007); *Bynum v. District of Columbia,* 214 F.R.D. 27, 32–33 (D.D.C. 2003)). "Plaintiffs also need not provide the exact number of potential class members to satisfy the requirement, but can provide an estimate supported by a reasonable basis to believe it is accurate." *Little*, 249 F. Supp. 3d at 418 (citations omitted).

Here, the Class consists of approximately 2,600 individuals. This estimate is derived from the FAA's A Plan for the Future; 10-Year Strategy for the Air Traffic Control Workforce 2014 – 2023 document as well as from limited spreadsheet data provided by the FAA on July 3,

2018. In addition, an email from the FAA's Director of Office of Human Resource Management dated December 5, 2013 states that "there are approximately 2668 candidates in the inventory but AT-SATs are expiring and candidates are aging out daily." Ex. 8. The precise number and identity of Class members is knowable by the FAA and can be ascertained easily through its own records and the records of AT-CTI institutions. The FAA's Office of Career Management Services is required by Agency policy and by the Agreement to maintain the AT-CTI students' names, addresses, phone numbers, email addresses, social security numbers, AT-CTI schools, AT-SAT scores, and other relevant data. Ex. 1 at PLA0046. Joinder of approximately 2,600 plaintiffs would be impracticable. Thus, given the significant size of the Class and that joinder would be impracticable, the numerosity requirement of Rule 23(a)(1) is unequivocally satisfied.

### 2.    The Legal and Factual Issues are Common to the Class

Rule 23(a)(2)'s commonality requirement is easily satisfied as well. Rule 23(a)(2) requires that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. 12, 26 (D.D.C. 2001) (quoting *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir. 1997)); *see also Garcia v. Johanns,* 444 F.3d 625, 631 (D.C. Cir. 2006). Thus, the existence of a "single common question" is sufficient, *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014), so long as the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Significantly, factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Cohen*, 522 F. Supp. 2d at

114 (quoting *Bynum*, 214 F.R.D. at 33). All that is required is that plaintiffs "share at least one question of fact or law with the grievances of the prospective class." *Adair v. England*, 209 F.R.D. 5, at *9 (D.D.C. 2002) (citations omitted).

Here, questions of law and fact are common to the Class. All members of the Class have been subject to, and affected by, the precise course of the Defendant's intentional unlawful conduct. All Class members were on the Register, or met the requirements to be on the Register, and had passed the validated AT-SAT. All Class members met the FAA's requirements to be considered for direct non-competitive employment. All Class members were purged from the Register, or should have been on the Register when it was purged. The FAA maintained just one Register, not multiple, further demonstrating that there are common legal and factual issues. All members were told that their AT-SAT grades would not be considered. All members were told that they had to undergo a new hiring process. All Class members suffered because of the same unlawful race-conscious acts by the FAA. The most important questions in this case are common: (1) whether the FAA unlawfully eliminated the Qualified Applicant Register in violation of the rights of the Class members, (2) whether the FAA unlawfully eliminated the Class members' *bona fide* AT-SAT scores due to race-conscious reasons in violation of the rights of the Class members, (3) whether the FAA had a strong basis in evidence to believe it would be subject to disparate impact liability if it failed to take race conscious action, (4) whether the FAA had a strong basis in evidence to believe the AT-SAT taken by those on the AT-CTI Register were not job related and consistent with business necessity, (5) whether the FAA, once establishing the AT-CTI employment process and making the selection criteria clear, was justified in purging the AT-CTI Register and AT-SAT scores of those on the Register due to race conscious reasons, (6) whether the FAA's unlawful conduct caused harm and adverse effects, including pecuniary harm,

to the Class members; and (7) whether each Class member is entitled to statutory damages plus attorneys' fees and costs. These questions, among others, "will generate common answers for the entire class and resolve issues that are central (and potentially dispositive) to the validity of each Plaintiff's claim and the claims of the class as a whole." *Thorpe*, 303 F.R.D. at 146–47; *see also Little*, 249 F. Supp. 3d at 419 (commonality is established in a Title VII case when harm alleged by each class member was the result of the same corporate-wide policies, because a question common to all members will be whether that policy was unlawful) (citing *DL v. District of Columbia*, 713 F.3d 120, 127 (D.C. Cir. 2013)). Therefore, the commonality requirement of Rule 23 is satisfied.

### 3. Plaintiffs' Claims are Typical of the Class

Rule 23(a)'s third requirement is satisfied as well. Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13. The typicality requirement is to be "liberally construed." *Bynum*, 214 F.R.D. at 34. "A class representative's 'claim is typical if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory.'" *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 40 (D.D.C. 2017) (quoting *Bynum*, 214 F.R.D. at 34). "Factual variations between the claims of class representatives and the claims of other class members do not negate typicality." *Little*, 249 F. Supp. 3d at 420. "The typicality requirement is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (quoting *In re Lorazepam & Clorazepate*

*Antitrust Litig.,* 202 F.R.D. at 27).

Plaintiffs' claims are common and the claims and defenses of the parties are typical of the Class. The FAA made the choice to eliminate the Register and AT-SAT examination results of approximately 2,600 individuals who invested years of their lives and financial resources based upon the FAA's promises. Plaintiffs' and the Class members' claims all arise from the same operative facts and Defendant's unlawful course of conduct and are based on the same legal theories. The claims of Plaintiffs and each Class members arise from the exact same events and FAA practice and are based on the same legal theories. Each putative Class member was affected directly in the exact same way by the FAA's race-conscious action of eliminating the Qualified Applicant Register and AT-SAT scores of the Class members without a strong basis in evidence. This case is about actions taken by the FAA against the Class as a whole.

The FAA's unlawful uniform conduct caused harm and adverse effects, including pecuniary harm, to Plaintiffs and the Class members, and Plaintiffs and the Class members are each entitled to statutory damages and compensatory damages of up to $300,000 per Class member plus attorneys' fees and costs. Plaintiffs' theory of liability is applicable to the Class as a whole and, in pursuing these claims, Plaintiffs will be advancing the interests of other Class members. Plaintiffs' claims are indeed typical to that of the Class. Accordingly, the typicality requirement of Rule 23 is satisfied.

### 4. Plaintiffs and Counsel Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Two criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the

representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Little*, 249 F. Supp. 3d at 421 (citing *Twelve John Does v. District of Columbia,* 117 F.3d 571, 575 (D.C. Cir. 1997)).

### a.    Plaintiffs will be Adequate Class Representatives

Plaintiff Brigida prepared himself to become an air traffic controller as a teenager. Ex. 9 ¶ 2. Mr. Brigida enrolled in Arizona State University's AT-CTI program after learning from the FAA that becoming a military controller or attending an FAA approved AT-CTI program was the best opportunity to be hired as an ATCS. *Id.* ¶¶ 3-4. Mr. Brigida graduated from Arizona State University's AT-CTI program in 2013 with a 3.0 grade point average. *Id.* ¶ 6. In addition, Plaintiff passed the AT-SAT examination with a score of 100 percent. *Id.* ¶ 5. Mr. Brigida was one of several thousand who suffered due to the FAA's abrupt action. He has exhausted administrative remedies before the FAA and the DOT Office of Civil Rights, initiated the underlying lawsuit and his claims are the same as thousands of other Class members. Plaintiff Brigida is unaware of another suit alleging and seeking the same relief.

Plaintiff Wang developed an interest in becoming an air traffic controller and decided to participate in the CTI Program. Ex. 11. Ms. Wang was one of several thousand who suffered due to the FAA's abrupt action. Based on the information published by the FAA, including information on the FAA AT-CTI website, she enrolled at Arizona State University ("ASU"), an FAA approved AT-CTI school. *Id.* On April 1, 2012, while attending ASU, she took, and successfully passed, the AT-SAT assessment with a score of 89.2. *Id.* On May 3, 2012, she graduated from ASU, and was recommended to the FAA by ASU on May 15, 2012. Subsequently, the FAA placed her on the Qualified Applicant Register. *Id.*

Plaintiff Rebich developed an interest in becoming an air traffic controller and decided

to participate in the CTI Program.  Ex. 12. Ms. Rebich was one of several thousand who suffered due to the FAA's abrupt action.  *Id.* Based on the information published by the FAA, including information on the FAA AT-CTI website, she enrolled at University of Alaska at Anchorage ("UAA"), an FAA approved CTI Institution.  *Id.* On November 5, 2010, while at UAA, she took, and successfully passed, the AT-SAT assessment with a score of 80.2   *Id.* On December 17, 2010, she graduated from UAA, and was recommended to the FAA by UAA on January 18, 2011.  *Id.* Subsequently, the FAA placed Ms. Rebich on the Qualified Applicant Register.  *Id.*

Plaintiff Douglas-Cook developed an interest in becoming an air traffic controller and decided to participate in the CTI Program.  Ex. 10. Mr. Douglas-Cook was one of several thousand who suffered due to the FAA's abrupt action.  *Id.* Based on the information published by the FAA, including information on the FAA AT-CTI website, he enrolled UAA, an FAA approved AT-CTI school.  *Id.* On April 9, 2013, he took, and successfully passed, the AT-SAT assessment with the top numerical score possible of 100%.  *Id.* In December 2013, he graduated from UAA and satisfied all requirements for being placed on the Qualified Applicant Register. *Id.* Plaintiff Douglas-Cook subsequently learned that the FAA did not request any recommendations from the December 2013 graduating class.  As a result, UAA did not recommend him to the FAA.

As set forth above, Plaintiffs' claims are typical to and common with those of the Class and Plaintiffs share a common interest with Class members of holding Defendant liable for unlawful conduct in purging the Register and AT-SAT scores without the lawful authority to do so. Plaintiffs will fairly and adequately represent and protect the interest of the Class and will vigorously prosecute Plaintiffs' claims individually and on behalf of the Class.  *Id.* ¶¶ 10-13.  Plaintiffs have no antagonistic or conflicting interests to those of other Class members. *Id.* ¶

18

13. Defendant has no defenses that are unique to Plaintiffs.

**b.    Proposed Class Counsel is Well-Qualified and Will Vigorously Prosecute the Interests of the Class**

Additionally, Plaintiffs have retained counsel that is competent and experienced in complex litigation. Plaintiffs and Plaintiffs' counsel will make all efforts to fairly and adequately protect the interest of the Class. Plaintiffs' counsel are experienced attorneys from firms who have extensive experience in handling complex litigation matters as well as class action experience.

Plaintiffs' Counsel Michael Pearson is a Member of Curry, Pearson & Wooten, PLC. Mr. Pearson is a seasoned trial attorney who has tried scores of cases in federal and state courts as well as administrative tribunals throughout the country. Mr. Pearson devotes a substantial portion of his practice to handling complex litigation matters, has been involved in heparin class and multi-district litigation, and is well-respected in the legal community. After graduating cum laude from Arizona State University School of Law in 1994, Mr. Pearson entered private practice while teaching law classes at Arizona State University. Among his various legal awards, Mr. Pearson has been recognized as a multi-million dollar advocate and multi-year "Super Lawyer" as awarded by *Super Lawyers Magazine*. Martindale-Hubbell® has awarded Mr. Pearson its AV Preeminent® rating for 18 straight years. Mr. Pearson co-authored the legal textbook *Foundations of Aviation Law*[7]. This textbook is used in undergraduate and graduate law classes throughout the United States. Mr. Pearson has intimate knowledge of the Department of Transportation as he worked for the FAA for over 26 years. Mr. Pearson has handled high-value and high profile cases for several decades such as representing multiple families of the Arizona "Hotshots" who tragically lost their lives during an out-of-control inferno in a brush-choked canyon in the worst loss of life for U.S.

---

[7] Michael W. Pearson & Daniel S. Riley, *Foundations of Aviation Law* (2015).

wildland firefighters in eight decades. His aviation clients include international flag airlines such as Air France and Zest Airways. He is often lead counsel in high-stakes litigation matters.

Mountain States legal Foundation is a nonprofit, public interest legal foundation that has defended constitutional liberties and the rule of law since 1977. Co-counsel William Perry Pendley has a long history of high-profile civil rights litigation. *See, e.g., Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) (holding that racial classifications imposed by the federal government are subject to strict scrutiny); *Concrete Works of Colorado, Inc. v. City & Cty. of Denver*, 321 F.3d 950, 953 (10th Cir. 2003) (challenging racial preference ordinance). Co-counsel Christian B. Corrigan assisted with class certification issues in *Sourovelis v. City of Philadelphia*, 320 F.R.D. 12 (E.D. Pa. 2017) (public interest civil rights class action brought on behalf of thousands of individuals against Philadelphia for its civil asset forfeiture program) and assisted with other civil rights actions such as *Birchansky v. Clabaugh*, Case No. 4:17-cv-00209 (S.D. Iowa 2017).

Co-Counsel Zhonette M. Brown[8] is General Counsel at Mountain States Legal Foundation and was previously a partner at Bryan Cave, LP and Kirkland & Ellis, LP. Ms. Brown is a seasoned litigation attorney who has tried cases in federal and state courts, administrative tribunals, and international venues. Ms. Brown devotes a substantial portion of her practice to handling complex litigation matters, has been involved in state and federal class action proceedings, including as counsel for a plaintiff class and as defense counsel in a certified multi-district litigation proceeding. After graduating *magna cum laude* from Georgetown University Law Center in 1998, Ms. Brown clerked for a federal judge, Judge Marvin Garbis,

---

[8] Ms. Brown joined Mountain States Legal Foundation on November 5, 2018 and will be submitting an application for admission shortly.

in the District of Maryland.  Ms. Brown then entered private practice and had been a partner at three law firms. Among her various legal awards, Ms. Brown has been recognized as a multi-year "Super Lawyer" as awarded by *Super Lawyers Magazine*. Ms. Brown has handled multiple high-value and high profile cases for decades.

Curry, Pearson & Wooten, PLC and Mountain States Legal Foundation have other attorneys with plaintiff and class action experience, staff, and other resources available to ensure the interests of the Class are adequately protected. In addition to their extensive experience, Plaintiffs' Counsel are committed to protecting the interests of all Class members during the course of this litigation. Plaintiffs and Plaintiffs' counsel will adequately and fairly represent the Class.

**B.     The Requirements of Rule 23(b) are Satisfied**

**1.     The Requirements of Rule 23(b)(2) are Satisfied Because Defendant Has Acted on Grounds that Apply Generally to the Class, so that Declaratory Relief is Appropriate Respecting the Class as a Whole**

A class action under Rule 23(b)(2) may be maintained if "the party opposing the class has  acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or  corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.  23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory  remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful  only as to all of the class members or as to none of them." *Wal–Mart*, 564 U.S. at 360 (quotations omitted). Where a defendant acts on grounds that apply generally to the class, and both declaratory relief and  monetary damages are sought, the Court may certify a hybrid (b)(2) and (b)(3) class to allow for  declaratory relief and monetary damages.  *See Bynum*, 214  F.R.D.  at 38–39 (citing *Eubanks  v. Billington,* 110 F.3d 87, 96 (D.C. Cir. 1997)).

Here, class certification is appropriate under Rule 23(b)(2) given that the FAA acted on

grounds that apply to the entire Class, such that declaratory relief is appropriate with respect to the Class as a whole. The FAA acted willfully and intentionally because it knew, or should have known, that it lacked a strong basis in evidence that the AT-CTI program or AT-SAT examination had a disparate impact upon a protected class, yet purged the AT-CTI Register and AT-SAT scores of thousands of well prepared and diverse candidates in violation of Title VII. Accordingly, declaratory relief is appropriate to adjudicate the rights of the Class as a whole.

### 2.    The Requirements of Rule 23(b)(3) are Satisfied

Because the FAA deprived Plaintiffs and Class members of consideration for potential employment without lawful authority to do so, the most appropriate basis for certification is Rule 23(b)(3) (to the extent that the Court declines to certify a hybrid (b)(2) and (b)(3) class). To certify a class under Rule 23(b)(3) class, the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Among the factors the Court should examine in making its determination are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) ) the likely difficulties in managing a class action.

The requirements of (b)(3) are often divided into two categories, superiority and predominance, both of which are satisfied here. *Little*, 249 F. Supp. 3d at 423–24. Common questions of law or fact predominate over any individual questions.

a.    **Common Issues Predominate Over Issues that Only Affect Individual Class Members**

The first requirement of Rule 23(b)(3) is that common issues predominate over issues that only affect individual Class members.  "Although common issues must predominate, they need not be the dispositive issues of the litigation." *Little*, 249 F. Supp. 3d at 424 (citing *In re Vitamins Antitrust Litig.,* 209 F.R.D. 251, 262 (D.D.C. 2002)). "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Id.* (citing *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)). "There is no definitive test for determining whether common issues predominate, however, in general, predominance is 'met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position.'" *Id.* (quoting *Vitamins,* 209 F.R.D. at 262); *see also Moore v. Napolitano*, 926 F. Supp. 2d 8, 33 (D.D.C. 2013) (predominance satisfied for Title VII class because all members relied on the same statistical evidence to make the same claim that the promotion process was discriminatory).

For the reasons discussed above regarding commonality and typicality, there is no basis to conclude that any individual question will predominate over the common questions in this litigation. Common legal issues predominate because all Class members' claims arise out of the same course of conduct by Defendant. Common fact issues predominate because all Class members' claims are focused on Defendant's conduct.  No individualized inquiries are required.

Indeed, the issues in this class action are subject to generalized proof and are thus applicable to the Class as a whole.  The generalized evidence here will prove the claims for all, and no individualized inquiries are needed to prove Plaintiffs' and the Class members' claims.

Unlike many class actions (*see, e.g.*, *Comcast Corp. v. Behrend,* 569 U.S. 27 (2013)), there are no variations among harm suffered by class members. Likewise, there will be little variation in the damages awarded to class members, which are well-established by law. Here, the FAA unlawfully undertook the same actions that harmed the Plaintiffs and Class members. Plaintiffs and Class members all suffered the same loss of employment opportunity. Moreover, Plaintiffs and class members are all entitled to the same legal and equitable relief.

Even if there are variations regarding damages or sums lost, such variance is *de minimus* and ministerial, and cannot defeat predominance. Indeed, the FAA's own records will adequately establish damages owed to Class members. The calculation of damages claims in this case would largely be a mechanical task. Accordingly, no significant individual inquiries are required that might otherwise defeat predominance. The predominance requirement is satisfied, as common questions undeniably predominate over any individual questions.

### b.   Resolution Via a Class Action is a Superior Method of Adjudicating the Claims at Issue

The second requirement of Rule 23(b)(3) is superiority. "Superiority is met when a court determines that a class action is superior to other available means of adjudication." *Little*, 249 F. Supp. 3d at 424 (citing Fed. R. Civ. P. 23(b)(3)). "Rule 23(b)(3) favors class actions where common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit." *Bynum*, 214 F.R.D. at 40 (quotation marks and citations omitted). "The superiority requirement ensures that resolution by class action will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Little*, 249 F. Supp. 3d at 424 (quoting *Amchem*, 521 U.S. at 615).

Class treatment is most appropriate in cases like this one—where groups of individuals

are affected by a single policy. *See Little*, 249 F. Supp. at 424. This is particularly true where individual litigants "do not have the incentive to shoulder the burden of a complex case, but when combined into a class, the risks can be shared." *Id*. A class action in this case is "superior to individual actions due to the cost of litigating a disparate impact case and the relatively low damages available to a single successful litigant." *Id*. The expense and burden of individual litigation would make it impracticable or impossible for individual Class members to bring their claims individually. The interest of Class members individually controlling the prosecution of separate claims against Defendant is relatively small, and such complex individual litigation against the federal government, who has unlimited resources, would be cost prohibitive if the suits were to be prosecuted individually. *See id.*

Nor are there any concerns that "potential difficulties in identifying the Class members and sending them notice will make the class unmanageable." *Bynum*, 214 F.R.D. at 40. The opposite is true. The Class is easily manageable given that Defendant has all the information needed to identify and to notify every single Class member. Furthermore, allowing this case to proceed as a class action will be the most efficient use of judicial resources and will be superior to the alternative of a significantly large number, potentially thousands, of individual lawsuits. Accordingly, class treatment is the superior method of adjudicating the claims in this case.

## III.    Other Litigation

On September 12, 2018, a putative class action suit was filed in the District Court for the Northern District of Texas Court by Curry, Pearson & Wooten, PLC on behalf of Lucas Johnson. The case number is: 3:18-cv-02431-M. Mr. Johnson's claims are separate and distinct from the claims in the underlying suit. Mr. Johnson, along with approximately 28,000 other individuals seeking FAA employment as air traffic controllers, were required to take a bio-data screening

examination, a Biographical Assessment ("BA") in early February 2014. Mr. Johnson, along with approximately 25,000 other applicants failed the BA and were eliminated from further employment consideration. Mr. Johnson's claims are that the 2014 BA was validated improperly and used inappropriately to screen applicants due to their race. The claims asserted in the Texas case are not asserted in this matter. The claims asserted in this case are not asserted in the Texas case. The only similarity between this matter and the Texas matter is due to Mr. Johnson's status as an AT-CTI graduate, and that he was, or should have been, on the purged Register. Both Complaints identify common facts shared between the cases, but the theories behind the claims for relief requested in each are different.  Mr. Johnson may, assuming class certification by the Court, become a Class member in the underlying litigation.

## IV.    Class Counsel's Notice Proposal

Pursuant to Local Rule 23.1(c), Plaintiffs propose the following Class-Notice Plan. Notification of potential Class members should be rather simple as compared to other class actions as the FAA has knowledge and contact information for all potential Class members in their elaborate system of recordkeeping. The FAA's Aviation Careers Division (AMH-300) maintained the Register, has current data, and has the staffing and administrative capabilities to provide the Class notice easily. The FAA admittedly has personal and contact information including: names, addresses, phone numbers, email addresses, social security numbers, dates of birth, etc. for all Class members. Ex. 1 at PLA0046. The FAA should send via email—with class counsel copied—notice to each Class member. If the FAA does not have an email address on file for the Class member, or if the email is returned or remains unopened for more than one month, notice can then be sent via U.S. Postal Service (based on the contact information maintained by the FAA). The FAA should also send notice to all AT-CTI schools

so that they may further notify graduates who are part of the Class. All responses would go to the FAA with copies being provided to Plaintiffs' counsel. In the alternative, Class Counsel will retain a national, reputable class action administration firm to provide class notice—via information provided by the FAA—and all responses would  go directly to Plaintiffs' counsel and Defendant's counsel.

Plaintiffs respectfully request that the Court direct the  parties to file an agreed-upon proposed form of notice within 30 days of the Court's certification  order, and direct that notice be sent to the Class within 90 days of the Court's approval of a  form of notice.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Class Certification should be granted. Further, Plaintiffs Andrew J. Brigida, Pollyanna L. Wang, Suzanne M. Rebich, and Matthew L. Douglas Cook should be appointed as Class Representatives and Curry, Pearson & Wooten, PLC and Mountain States Legal Foundation should be jointly appointed as Class Counsel.

DATED:  November 12, 2018                    Respectfully submitted,

_/s/ William Perry Pendley_____
William Perry Pendley (D.D.C. Bar No. 378906)
Christian B. Corrigan (KS Bar No. 25622), *pro hac vice*
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
wppendley@mountainstateslegal.com
ccorrigan@mountainstateslegal.com

Michael W. Pearson (AZ Bar No. 016281). *pro hac vice*
Curry, Pearson, & Wooten, PLC
814 West Roosevelt

Phoenix, Arizona 85007
(602) 258-1000
(602) 523-9000 (facsimile)
mpearson@azlaw.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of November 2018, I caused a true and correct copy of the

foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**MOTION FOR CLASS CERTIFICATION** to be electronically filed with the Clerk of the

Court using the Court's CM/ECF system which sent notification of such filing to counsel of

record in this matter.

/s/ William Perry Pendley
William Perry Pendley (D.D.C. Bar No. 378906)
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
wppendley@mountainstateslegal.com