# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANDREW J. BRIGIDA, et al., | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) Civil Action No. 16-cv-2227 (DLF) |
|  | ) |
| ELAINE L. CHAO, Secretary, U.S. Department of Transportation, | ) |
|  | ) |
| Defendant. | ) |

## DEFENDANT'S SUR-REPLY IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendant's opposition brief showed both that Plaintiffs' motion for class certification is predicated on a fundamental misunderstanding of the Federal Aviation Administration (FAA) legacy hiring procedures and that their motion is fatally flawed in several other ways. On reply, Plaintiffs attempt to address several of these flaws through newly crafted arguments, but their efforts ultimately amount to nothing more than window-dressing. Indeed they only sow more confusion about the nature of their claims and the specific scope of the putative class.

## I. Plaintiffs' Efforts to Define the Term "Qualified Applicant Register" Demonstrate That Plaintiffs' Claims Are Illogical

Plaintiffs had consistently claimed that the putative class members were or should have been listed on a "Qualified Applicant Register," which entitled them to noncompetitive hiring into controller positions, and that this benefit was lost when the FAA altered its hiring practices in 2014. Implicitly conceding that this claimed benefit, in fact, never existed, Plaintiffs now attempt to salvage their suit by seeking to represent not a class of *de facto hirees* but instead a class of Collegiate Training Initiative ("CTI") graduates *eligible to apply* for competitive vacancy announcements under the FAA's legacy hiring process. Certification of this new class should be denied both because it is incompatible with the claims made in the operative pleading and because it still fails to meet Rule 23 class certification requirements.

### A. Plaintiffs' New Class is Incompatible With That Alleged in the Third Amended Complaint

In their latest pleading, Plaintiffs claimed that certain CTI graduates "entered a direct hire pool of applicants, were placed on a 'Qualified Applicant Register' List, and were given hiring preference for ATCS positions." 3d Am. Compl. ¶ 31, ECF No. 68; *see also* Pls.' Mem. at 1, ECF No. 73-1 (alleging that putative class members had been "placed on a Qualified Applicant Register that led to preferential, noncompetitive hiring as an ATCS candidate by the FAA"). Plaintiffs purportedly lost this alleged preference when the FAA changed its hiring process, and

1

this harm was the basis of Plaintiffs' claim of injury.  *See* Pls.' Mem. at 2.

But as Defendant explained, new controllers, including CTI graduates, were all hired competitively on the basis of applications submitted in response to specific vacancy announcements.  Accordingly, there was never any register of individuals who would have been placed in a "direct hire pool" or received some other noncompetitive "hiring preference."  Def.'s Opp'n at 16-19, ECF No. 75.  On reply, Plaintiffs tellingly do not dispute that a "Qualified Applicant Register" never existed and, indeed, omit any mention of a direct hire pool, non-competitive employment, or any type of hiring preference.[1]  Instead, Plaintiffs now claim that by "Qualified Applicant Register" they mean a subset of the AT-CTI Inventory—those individuals who were or may have become eligible to *apply* for *competitive* controller vacancies.  *See* Pls.' Reply at 4 ("'eligible individuals' . . . from the AT-CTI Inventory who . . . would have been eligible as of December 31, 2013, to receive a job code to apply for a CTI-specific vacancy announcement").

Accordingly, Plaintiffs' new class is inconsistent with the definition and claims set forth in their pleading and as described in their motion, and thus their motion to certify a class must be denied.  *See Arias v. Marriott Int'l, Inc.*, 324 F.R.D. 307, 315 (D.D.C. 2018) (refusing to consider argument in motion for class certification that was "wholly inconsistent with Plaintiff's pleading" because "[o]nly Plaintiff's characterization of her claims as presented in her . . . Complaint is available in her efforts to prove commonality").  Without their claim that putative

---

[1] Plaintiffs' lengthy footnote about the "Excepted Service," Pls.' Reply at 4 n.4, does not undermine FAA's unambiguous explanation that controller hiring was done exclusively through competitive vacancy announcements.  *See* Mitchell Decl. ¶¶ 20-23, ECF No. 75-3.  While excepted service positions do not need to meet all of the competitive service standards, many types of excepted service positions throughout the government are filled using competitive applications.  *See, e.g.*, *Dean v. Dep't of the Air Force*, 592 F. App'x 923, 924-25 (Fed. Cir. 2014); *Patterson v. Dep't of Interior*, 424 F.3d 1151, 1153-54 (Fed. Cir. 2005); *Pope v. U.S. Dep't of Transp.*, No. 02-2507, 2004 WL 2966951, at *1-2 (N.D. Ill. Nov. 30, 2004).

class members lost some type of hiring preference, Plaintiffs have pled no valid basis for asserting either that they suffered an injury or that they were discriminated against under Title VII.  *See* 3d Am. Compl. ¶ 53 (claiming that class "lo[st] their employment preference and opportunity"); *id.* ¶ 119 (claiming that FAA "refused to accept the outcome of a race-neutral hiring process" for "successful applicants"); *cf.* Pls.' Mot. for Reconsideration at 1, 4, 6, ECF No. 39-1 (relying on alleged hiring preference for CTI graduates in seeking to regain possible hiring preference remedy).  Thus, if Plaintiffs seek to represent a "subset of the AT-CTI inventory" and to modify their underlying legal theory, they must move to amend their complaint for the fourth time.  *See 3D Glob. Sols., Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 8 (D.D.C. 2008) ("It is axiomatic . . . that a plaintiff may not amend his complaint through his opposition papers."); *see also Abraha v. Colonial Parking, Inc.*, 311 F. Supp. 3d 37, 42 (D.D.C. 2018) (requiring plaintiff to seek leave to amend complaint to "set forth a class definition that will be consistent with any . . . motion for class certification").  To hold otherwise would deny Defendant its right to evaluate Plaintiffs' allegations and determine if any motion for dismissal may be warranted.  *See Singh v. Dist. of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014).  Plaintiffs' Motion for Certification should be accordingly denied.

> **B.    Even if Plaintiffs had Properly Alleged Their New Class, Certification Should be Denied**

Even if Plaintiffs' new class definition did not represent an about-face from their pleading, certification should still be denied.  Plaintiffs must "affirmatively demonstrate," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), that the class identified for the first time in their reply meets the threshold requirements of ascertainability, predominance, commonality and typicality.  Plaintiffs fail to carry their burden as to all of these requirements.

As an initial matter, Plaintiffs' new class is not clearly ascertainable.  Instead of setting

forth a clear new class definition, Plaintiffs attempt to re-define terms in the original version in a way that creates substantial confusion.  They spend pages attempting to weave specific meaning for the terms "Register," and "Qualified Applicant," somehow reaching a result that involves not applicants but potential applicants, and not a register of candidates but an inventory of students and graduates.  *See* Pls.' Reply at 3-5.  Moreover, Plaintiffs now say that the class includes only those "meeting . . . five qualifications," Pls.' Reply at 4, including having "(1) graduated from an AT-CTI school in a FAA-approved program, and (2) received a recommendation from that AT-CTI school," *id.* at 3 (quoting Mitchell Decl. ¶ 19), but nevertheless they leave in place contradictory language encompassing those who had not graduated but "met the requirements for graduation" and did not receive a recommendation but were only "eligible to receive a recommendation" from an AT-CTI school.  *See* Pls.' Mem. at 2.  Given these contradictions, it is hard to imagine that an "individual would be able to determine, simply by reading the class definition, whether he or she [is] a member of the proposed class." *Artis v. Yellen*, 307 F.R.D. 13, 23 (D.D.C. 2014) (alterations and quotation marks omitted).[2]

    Further, Plaintiffs cannot meet the exacting standard to show commonality under Rule 23(a)(2) or predominance under Rule 23(b)(3).  As the D.C. Circuit has admonished, Rule 23(b)(3) demands that Plaintiffs "must . . . show that they can prove, through common evidence, that all class members were in fact injured," by a purported legal violation.  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013); *see also Wal-Mart*, 564 U.S. at 349-50 ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.").  Yet, in seeking to represent a list of individuals who merely *could have applied* under a competitive process, Plaintiffs fail to explain how all of these individuals

---

[2] Hereinafter, internal alterations, quotation marks, and citations omitted unless otherwise specified.

necessarily suffered the same injury when the FAA changed its hiring procedures, nor have they identified the precise nature of such an injury.  Plaintiffs have thereby failed to carry their burden.  *See Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 311 (D.D.C. 2018) ("[T]he district court's determination must rest on a rigorous analysis to ensure that all the [Rule 23] requirements are satisfied, and actual, not presumed, conformance with Rule 23 is indispensable.").  It is mistaken to assume, as Plaintiffs appear to do, that all class members would have been hired as controllers absent the change in FAA hiring practices, and thus "suffered a violation of Title VII" by not being hired.  *See* Pls.' Reply at 18.  That cannot be correct for class members who never applied for employment either before or after the changeover in the hiring process, for those who would have been disqualified after tentative acceptance by the medical screen or security investigation, let alone those who applied and were accepted but withdrew before their employment began.  *See* Def. Opp'n at 30-31.  Plaintiffs fail to explain how such class members were injured at all by the change in hiring process.[3]  At bottom, Plaintiffs do not set forth an injury suffered by all putative class members, or the "common evidence" necessary to establish this classwide injury.[4]  "Common questions of fact cannot predominate where there exists no reliable means of proving classwide injury in fact."  *In*

---

[3] Moreover, under Title VII, non-applicants bear the "not always easy burden of proving that [they] would have applied for the job had it not been for those [discriminatory] practices." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367-68 (1977).  In a class action, this requirement for nonapplicants presents difficulties for predominance, *see Rodriguez v. U.S. Dep't of Transp.*, 131 F.R.D. 1, 7 (D.D.C. 1990) (holding "that the inclusion of deterred individuals would cause a shift in the litigation to predominately individual questions and render the case unmanageable") and typicality, *see Moore v. Napolitano*, 269 F.R.D. 21, 33 (D.D.C. 2010) ("With no class representative who was deterred from ever bidding, there is every risk that the interests of the absent, wholly deterred bidders would not at all stages of this litigation be equally advanced and protected by the merely deferred bidders.").  With a putative class that inherently includes non-applicants, Plaintiffs have entirely failed to address these matters.

[4] Moreover, Plaintiffs, as unsuccessful applicants, have not rebutted Defendant's showing that they lack the "same interest and . . . same injury," *Council of & for the Blind of Delaware Cty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1544-45 (D.C. Cir. 1983), as absent class members who never applied or applied and were accepted—as required for typicality under Rule 23(a)(3).  *See* Def.'s Opp'n at 29-31.

5

*re Rail Freight*, 725 F.3d at 252-53.

## II. Adding the Word "Objective" to the OPM Qualification Standards Does Not Create a Presently Ascertainable Class

Defendant demonstrated that requiring satisfaction of the "U.S. Office of Personnel Management qualification standards for employment as air traffic control specialists" in the class definition does not give rise to an ascertainable class because several of these criteria are determined in the application process itself. *See* Def.'s Opp'n at 19-21. In response, Plaintiffs suggest that their intent is "only to exclude from the class those persons whose medical, psychiatric, or other conditions objectively disqualified them from being hired as a ATCS." Pls.' Reply at 6. But neither this explanation nor the offer to add the word "objective" is enough to remedy the ascertainability problem.

First, the term "objective" does not definitively distinguish among the standards' criteria. For example, it is not clear whether Plaintiffs are incorporating the standards' overarching criteria that are reasonably objective, but depend on a variety of expertise.[5] Second, potential class members who did not receive medical and psychological examinations from the FAA are unlikely to know whether they satisfy all of these criteria. For example, many class members are unlikely to have previously conducted such highly detailed testing of their eyes. *See* OPM, General Schedule Qualification Standards, Air Traffic Control Series, 2152, Medical

---

[5] *See, e.g.*, OPM, General Schedule Qualification Standards, Air Traffic Control Series, 2152 (link), Medical Requirements, Initial Employment, Eye #6 (excluding "any other acute or chronic pathological condition [of the eye] that would be likely to interfere with proper function or likely to progress to that degree"); *id.* Eye #9 (excluding history of eye surgery that "could interfere with the visual function necessary for performance as an air traffic control specialist"); *id.* Neurological #2 ("No medical history or clinical diagnosis of a disturbance of consciousness without satisfactory medical explanation of the cause."); *id.* Neurological #3 ("other disease of the nervous system that would constitute a hazard to safety in the air traffic control system"); *id.* General Medical #3 ("no other organic, functional, or structural disease, defect, or limitation found to indicate clinically a potential hazard to safety in the air traffic control system"); *id.* Psychiatric #3 ("any personality or mental disorder that clearly demonstrates a potential hazard to safety in the air traffic control system").

Requirements (setting standards for visual acuity, color, visual fields, phorias, and more). And some of these tests are conducted exclusively by the FAA and are not duplicated by private testing. *See, e.g.*, Mitchell Decl. Ex. 2, AT-CTI Program Overview and FAQs, Collegiate Version (July 10, 2013) at 69 ("The FAA color [vision] test is specific to controllers and is a prerequisite for employment. Passing any other color test does not ensure that the applicant will pass the FAA test."). Thus, potential class members would not "be able to determine, simply by reading the class definition, whether he or she [is] a member of the proposed class," *Artis*, 307 F.R.D. at 23. Third, the parties here do not have access to the "medical or other records [that] would demonstrate that [the potential class members] were objectively unfit for an ATCS position," Pls.' Reply at 5, for thousands of potential class members, especially individuals who did not progress all the way through the application process. Plaintiffs have still failed to identify an ascertainable class.

### III.   A Class of All CTI Graduates, or Even All Non-African American CTI Graduates, Is Untenable Here

Plaintiffs cannot resolve the defect at the heart of their complaint merely by conditionally offering to exclude African Americans from their putative class. *See* Pls.' Reply at 7-9. Caselaw in this Circuit requires class action plaintiffs to establish that the class shares a protected characteristic or characteristics. *See* Def.'s Opp'n at 21-22; *Love v. Johanns*, 439 F.3d 723, 728 (D.C. Cir. 2006) (requiring plaintiff in discrimination class action "to show (i) discrimination (ii) against a particular group (iii) of which the plaintiff is a member, *plus* (iv) some additional factor that permits the court to infer that members of the class suffered from a common policy of discrimination"); *Hartman v. Duffey*, 19 F.3d 1459, 1472 (D.C. Cir. 1994) (noting that a Title VII class action requires more than "a demonstration that class plaintiffs suffered discrimination on the basis of membership in a particular group"); *see also Moore v. Napolitano*, 269 F.R.D. 21,

7

29 (D.D.C. 2010); *Taylor v. Dist. of Columbia Water & Sewer Auth.*, 241 F.R.D. 33, 38 (D.D.C. 2007); *McManus v. Dist. of Columbia*, 530 F. Supp. 2d 46, 76 (D.D.C. 2007).  Plaintiffs' attempt to disregard protected characteristics and treat all CTI graduates, regardless of race, as though they were the subject of "uniform disparate treatment," Pls.' Reply at 9, cannot be reconciled with this requirement.  *See also id.* at 11 (arguing that CTI graduates eligible to apply for controller positions constitute the "particular group" that is being discriminated against). Because Title VII does not protect anyone on the basis of their status as a CTI graduate, that cannot be the core basis of class identity for purposes of a Title VII class action.

      The Supreme Court's decision in *Ricci v. DeStefano*, 557 U.S. 557 (2009) does not undermine this fundamental principle.  Instead, it reaffirms that a disparate treatment claim must show that "an employer has 'treated [a] particular person less favorably than others because of' a protected trait."  557 U.S. at 579 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-986 (1988)).  Moreover, *Ricci* was not a class action and did not address Rule 23's requirements for class cohesion at all.  Thus, Plaintiffs cannot show that *Ricci sub silentio* abrogated D.C. Circuit caselaw like *Love* and *Hartman*.  Indeed, the D.C. Circuit rejected such efforts to misapply *Ricci*, explaining that *Ricci* did not modify the standard for "assessing whether there is a violation of Title VII's disparate-treatment prohibition in the first place" but instead assumed that a violation had occurred under the facts presented.  *Shea v. Kerry*, 796 F.3d 42, 55 (D.C. Cir. 2015) (rejecting argument that *Ricci* abrogated affirmative action caselaw).  At any rate, one cannot discern from *Ricci*—which was brought by those individuals whose test scores made them the only ones "eligible for immediate promotion to" one of the available lieutenant or captain positions, 557 U.S. at 566—a general principle that all test takers or all applicants are subjected to intentional discrimination when an employment process is changed.

On reply, Plaintiffs suggest that they would be willing to specify a class of "non-African Americans" on the ground that Defendant's policy changes "would generally benefit African American and harm non-African American candidates. Pls.' Reply at 8.[6] While alleging intentional discrimination against "non-African Americans" as a multi-racial group is permissible under Title VII, it is in significant tension with Plaintiffs' other allegations. *See, e.g.*, 3d Am. Compl. ¶ 118 (stating that FAA's "intent and purpose [was] increasing the racial diversity of Air Traffic Controller applicants"); *id.* ¶ 60 (noting that consultant who conducted barrier analysis concluded that the legacy hiring process "had a disparate impact on minority candidates").[7] And Plaintiffs still cannot satisfy Rule 23(a) prerequisites. Plaintiffs have not shown that all "non-African Americans" suffered the same injury, share the same interests, and are adequately represented by the named Plaintiffs. *See* Def.'s Opp'n at 23-24, 28-30, 32-33.

## IV. Plaintiffs' Proposed Damages Model is Fatally Flawed

In addition to the problems noted above, Plaintiffs also fail to set forth a "reasonable theory for computing class-wide damages." *See Little v. Washington Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 413 (D.D.C. 2017). On reply, Plaintiffs for the first time claim that back pay damages can be calculated by examining a "but for" date of hire based on a class member's "year of graduation and the FAA actual hiring rate/practices." Pls.' Reply at 19. This model is

---

[6] Plaintiffs also suggest that narrowing the class in this way is premature because "it is likely that some members of the 'minority' . . . stood to benefit from their placement on the Qualified Applicant Register." *Id.* at 7. But the relevant question here is not one of disparate impact, but of Defendant's intentional actions. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (Title VII requires showing "that (i) the plaintiff suffered an adverse employment action (ii) *because of* the plaintiff's race . . ." (emphasis added)). Because Plaintiffs are not alleging that Defendant intentionally discriminated against African American CTI graduates because of their race, *cf.* Pls.' Reply at 8 ("conten[ding] that non-African Americans were intentionally and specifically harmed"), such individuals cannot be included.

[7] *See also* Pls.' Mem. at 2 (asserting that "the FAA did not like the racial makeup of the *majority* of the register" (emphasis added), and that FAA "belie[ved] that too many Caucasians passed the [AT-SAT]"); *cf.* Coates Decl., Ex. 2, Extension to Barrier Analysis at 22, ECF No. 75-1 (noting that, among CTI applicants, 72% were white).

defective.  For one thing, this methodology "detects injury where none could exist," *In re Rail Freight*, 725 F.3d at 252, as it would apportion damages to any class member who may have met certain eligibility requirements, regardless of whether they ever applied, actually met all of the employment requirements, and/or were actually denied employment because of the change in FAA hiring practices.  This fatal flaw "shred[s] the plaintiffs' case for certification," because "[w]hen a case turns on individualized proof of injury, separate trials are in order."  *Id.*

In addition, even if one could assume that class members would have been hired by the FAA but for the change in hiring practices, Plaintiffs fail to explain how their damages model would work.  Plaintiffs never spell out what "FAA actual hiring rate/practices" means, Pls.' Reply at 19, or how their model would account for the complexities associated with controller hiring—such as the significant portion of selectees who fail to complete the FAA Academy or are unsuccessful in their first permanent position.  *See* Coates Decl., Ex. 1 at 22 (noting more than 20% attrition rate for newly hired controllers); Gage Decl., Ex. 2 at 10, ECF No. 75-2 (more than 14% of CTI graduates from 2007-2009 failed the FAA Academy or were unsuccessful in their first position).  Nor do Plaintiffs explain how the Court might apportion damages such as front pay, compensatory damages, emotional distress damages, or any others.  Plaintiffs' vague assurance that the Court can "adjust accordingly" if "individual issues" arise post-certification, Pls.' Reply at 20, cannot paper over these deficiencies.  It is Plaintiffs' burden now to "establish[] that damages are capable of measurement on a classwide basis," and without a valid model, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Class Certification.

DATED: February 8, 2019                    Respectfully submitted,

                                           JOSEPH H. HUNT
                                           Assistant Attorney General

                                           CARLOTTA P. WELLS
                                           Assistant Director
                                           Civil Division, Federal Programs Branch

                                           */s/ Galen N. Thorp*
                                           GALEN N. THORP (V.A. Bar No. 75517)
                                           Senior Counsel
                                           MICHAEL DREZNER (V.A. Bar No. 83836)
                                           Trial Attorney
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street NW
                                           Washington, DC 20530
                                           Telephone: (202) 514-4781
                                           Facsimile: (202) 616-8470
                                           Email: galen.thorp@usdoj.gov

                                           *Counsel for Defendant*