# Exhibit 7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW J. BRIGIDA. et. al., on behalf of himself and all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>ELAINE L. CHAO, Secretary, U.S. Department of Transportation, et al.<br><br>Defendant(s). | Case Number: Case No. 16-cv-2227 (DLF)<br><br>**DECLARATION OF ANTHONY GAGLIARDO**<br><br>**IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

I, Anthony Gagliardo, declare as follows:

1. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

2. I served in the United States Air Force for 18 years.

3. After leaving the Air Force, and prior to my employment with the Federal Aviation Administration ("FAA"), I worked for Northwest and Delta Airlines as the Manager of Flight Operations and Inflight Training.

4. I was employed by the Federal Aviation Administration from June 2009 to October 2013.

DECLARATION OF ANTHONY GAGLIARDO IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.
CASE NO. Case No. 16-cv-2227 (DLF); PAGE 1 OF 4.      [*JDC TEMPLATE Rev.2015*]

5. After leaving the FAA I was appointed to the position of Director Technical Learning and Development at the National Aeronautics and Space Administration Jet Propulsion Laboratory (NASA/JPL).

6. My current position is Leader of Training, Global Operations for Polaris, Inc.

7. My last position with the FAA according to the FAA's performance and management system, was "Director, Technical Training Support."

8. In my last position with the FAA I had direct oversight and knowledge of the Air Traffic - Collegiate Training Initiative ("AT-CTI") program.

9. AT-CTI schools provided a large portion of air traffic controller applicants. Our office had data that clearly showed the AT-CTI graduates and military controllers were more successful than general public or off-the-street air traffic controller applicants.

10. Two of the thirty-six AT-CTI schools, Hampton University and the Inter American University of Puerto Rico, were historically African-American and Hispanic institutions respectively.

11. My office was responsible for the creation of report produced by the FAA titled "Air Traffic-Collegiate Training Initiative Diversity Data 2011-12" report dated June 12, 2012, the "Air Traffic-Collegiate Training Initiative Diversity Data 2012-13 " report dated February 25, 2013, as well as the "Air Traffic Collegiate Training Initiative (AT-CTI) Partner School Diversity and Outreach 2013" report dated February 25, 2013 (collectively "Reports").

12. These various Reports sought to determine the diversity of the potential applicant pool from the FAA's partner AT-CTI colleges and universities.

13. In order to prepare the Report we asked each AT-CTI institution to provide voluntary diversity data.

14. Data gathered for the Reports clearly illustrated that the AT-CTI institutions, as a whole, were very diverse.

15. My immediate supervisor, Joseph Teixeira, asked me on several occasions to modify the Reports to make AT-CTI diversity look worse. Specifically to make it look like AT-

DECLARATION OF ANTHONY GAGLIARDO IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.
CASE NO. Case No. 16-cv-2227 (DLF); PAGE 2 OF 4.        [JDC TEMPLATE Rev.2015]

CTI school populations had less African-American, Hispanic, and female participation and students.

16. Mr. Teixeira also instructed me to not include survey data in the Reports from certain Associate Degree based 2-year CTI schools and other schools in in ethnically diverse areas in order to make the AT-CTI program look much less diverse than the student populations actually were.

17. I told Mr. Teixeria that I wouldn't falsify minority participation in the AT-CTI programs and that the AT-CTI organizations had demonstrated strong diversity in both ethnographic and gender categories.

18. When I refused to comply with Mr. Teixeira's instruction to change or falsify data for the Reports, I experienced organizational isolation and retribution.

19. Mr. Teixeira subsequently modified the information in the Reports to create the false impression that the CTI schools were not diverse by manipulating the Reports' findings and over aggregating and generalizing category and class information. Mr. Teixeira intentionally reduced CTI minority figures to make the CTI programs look less diverse that they actually were.

20. On February 8, 2013, an employee I supervised named Terry Craft, who at the time was the FAA's AT-CTI program manager, sent an e-mail to AT-CTI schools in which he stated he believed that the AT-CTI applicant pool was diverse.

21. Mr. Craft was aware of the AT-CTI schools' diversity and Mr. Teixeria's attempt at changing the data to reflect otherwise.

22. Mr. Teixera became very angry when he learned that Mr. Craft had sent the email regarding AT-CTI diversity and told me to discipline Mr. Craft.

23. When I argued against disciplining Mr. Craft, I experienced further organizational isolation and retribution by Mr. Teixeira.

24. It was generally known in the FAA that the National Black Coalition of Federal Aviation Employees ("NBCFAE") wanted to eliminate preferential hiring from the AT-CTI

program so that more general public African American air traffic controller candidates could be hired without the requirement that they attend a AT-CTI institution or have prior military experience.

25. The Reports were used in a Barrier Analysis and Barrier Analysis Extension conducted in 2012-2013. It is my belief that information on AT-CTI student diversity in Barrier Analysis and Barrier Analysis Extension was incorrect due to intentional underreporting of minority participation by Mr. Teixeira.

26. It is my belief that the Reports data was intentionally manipulated to assist the FAA in eliminating the AT-CTI preference and inventory of qualified applicants that had passed the ATSAT examination. This was done due to pressure from the NBCFAE as well as certain individuals in the FAA Air Traffic, Human Resources and Civil Rights offices.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on November 6, 2018.

Signature: _____
Printed name: Anthony Gagliardo___
Address: 5643 226th Ave NE Bethel MN 55005
Phone Number: 952-217-3505

DECLARATION OF ANTHONY GAGLIARDO IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.
CASE NO. Case No. 16-cv-2227 (DLF); PAGE 4 OF 4.          [*JDC TEMPLATE Rev.2015*]