Zhonette M. Brown, D.C. Bar No. 463407
Brian Gregg Sheldon, CO Bar No. 51063, *pro hac vice*
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
zhonette@mslegal.org
brian@mslegal.org

Michael W. Pearson, AZ Bar No. 016281, *pro hac vice*
Curry, Pearson, & Wooten, PLC
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000
(602) 523-9000 (facsimile)
mpearson@azlaw.com

Attorneys for Plaintiffs and Putative Class Counsel

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW J. BRIGIDA, <br><br> *Plaintiff*, <br><br> v. <br><br> ELAINE L. CHAO, Secretary, <br> U.S. Department of Transportation, <br><br> *Defendant.* | Civil Action No. 16-2227 (DLF) |

**MOTION FOR PRE-CERTIFICATION CLASS DISCOVERY**
**AND TO BEGIN DISCOVERY**

The Federal Aviation Administration ("FAA") engaged in illegal race-based decision-making when it changed its hiring process and in early 2014 discarded consideration of validated job qualifications to improve the relative scores of African American candidates. Plaintiff Andrew J. Brigida, and additional putative Class Representatives Suzanne M. Rebich and Matthew L. Douglas-

1

Cook (collectively "Plaintiffs"), seek to represent a class of approximately 2,600 students who invested time and financial resources to become pre-qualified applicants for air traffic control specialist positions and who were harmed when the FAA, as part of its discriminatory changes, invalidated the scores of their FAA-administered tests and disregarded the degrees they had obtained from FAA-partnered schools. Defendant in this case has objected to class certification, denying that any Rule 23 requirement, other than numerosity, can be satisfied.[1] Plaintiffs therefore seek limited pre-certification discovery, occurring simultaneously with merits discovery, prior to filing a second motion for class certification. This pre-certification discovery will allow Plaintiffs to obtain and provide evidence in favor of the putative class they seek to represent and to overcome Defendant's arguments against the class.

As set forth below and in Plaintiffs' recently filed Motion to Amend their Complaint, Plaintiffs have identified a viable Title VII class of non-African American students who, prior to January 27, 2014, had passed the FAA's AT-SAT test, had graduated from an FAA-partnered school, and who were not hired by the FAA prior to March 23, 2015. In light of the prima facie indication of a viable class and Defendant's prior objections to class certification, pre-certification discovery is appropriate. It is a long-established rule that "[t]o pronounce finally, prior to allowing any discovery, the nonexistence of a class or set of subclasses, when their existence may depend on information wholly within defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23." *Kamm v. California City Dev. Corp.*, 509 F.2d 205, n.11 (9th Cir. 1975) (citing *Yaffee v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972)). Consequently, this Court has previously held that would-be class action plaintiffs "must have an opportunity to set forth the facts that they have gleaned from class discovery in an appropriate motion for class certification." *Grogan v. Holder*, No. CV 08-1747 (BJR), 2012 WL

---

[1] Plaintiffs' counsel conferred with counsel for Defendant on October 30, 2019 to discuss the issue of discovery. Defendant elected to take no position on the issue of discovery (whether pre-class certification or merits) prior to having reviewing Plaintiffs' briefing on the subject.

13156807, at *4 (D.D.C. Sept. 27, 2012) (citing *Burton v. D.C.,* 277 F.R.D. 224 (D.D.C. 2011)). In light of Supreme Court precedent, "pre-certification discovery should ordinarily be available where a plaintiff has alleged a potentially viable class claim because . . . the district court's class certification determination must rest on a 'rigorous analysis' to ensure actual, not presumed, conformance with Rule 23." *Burton*, 277 F.R.D. at 230 (citing *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011)) (quotations omitted). "'[O]ften the pleadings alone will not resolve the question of class certification and . . . some discovery will be warranted.'" *Id.* (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir.2009)). In fact, "in most cases a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action." *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) (quotations omitted). This is necessary because class certification, like motions to dismiss, requires a court to determine if a plaintiff has sufficiently supported his allegations such that the claims should be tried using the class action mechanism. "Whether discovery will be permitted in connection with a motion for a class certification determination 'lies within the sound discretion of the trial court.'" *Id.* (*quoting Kamm*, 509 F.2d at 209) (quotations omitted).

## BACKGROUND

The FAA's race-based decision to terminate the Qualified Applicant hiring preference given to eligible Collegiate Training Initiative ("CTI") graduates violates Title VII's prohibition on employment discrimination on the basis of race. Fourth Am. Compl. ¶¶ 8–11, 110–118, ECF No. 87 at 4-5, 26-27. Specifically, in late 2013 or early 2014, the FAA chose to eliminate its previous merit-based hiring system, which resulted in Plaintiffs and other putative Class Members losing their preference to be hired for Air Traffic Control Specialist (ATCS) positions. Fourth Am. Compl. ¶ 42, ECF No. 87 at 10.

In January 1991, the FAA established the CTI program to develop, deliver, and implement air traffic control recruiting, selection, and training. Fourth Am. Compl. ¶ 15, ECF No. 87 at 5. Eventually graduates from these CTI programs were required to pass a validated air traffic aptitude test, known as

the Air Traffic Control Selection and Training examination ("AT-SAT") in order to be eligible for employment as a trainee controller. Fourth Am. Compl. ¶ 20, ECF No. 87 at 6. These CTI graduates were eligible for a Qualified Applicant hiring preference for ATCS positions. Fourth Am. Compl. ¶ 25, ECF No. 87 at 7.

By no later than 2010, the FAA was being lobbied by certain special interest groups and unions to change its hiring process and provide preferences to African-American candidates. Fourth Am. Compl. ¶ 42, ECF No. 87 at 10. In October 2012, while in the process of considering these requests, the FAA stopped routinely updating information regarding CTI graduates who had passed the AT-SAT, beginning a deliberate process of terminating the Qualified Applicant hiring preference. Fourth Am. Compl. ¶ 31, ECF No. 87 at 8. The FAA then prepared a "barrier analysis" and other reports in an effort to superficially justify the hiring changes sought by the special interests and a minority union. Ultimately, in late 2013 and early 2014, the FAA "purged" all the Qualified Applicants from hiring preference classification in order to implement a new system that would increase the relative scores of African-American candidates. Fourth Am. Compl. ¶ 53, ECF No. 87 at 13. The FAA's invalidation of test scores due to the racial profile associated with the scores violated Title VII's prohibition on discrimination.

Plaintiffs' initial motion for class certification was opposed by the Defendant and eventually denied without prejudice in part due the concerns regarding including African-Americans in the Title VII class and issues related to the ascertainability and commonality/typicality of the class. Plaintiffs seek to amend their complaint and now request discovery to address the Defendant's objections to class certification and to support the eventual certification of a class of the approximately 2,500 to 3,000 non-African American CTI students who by January 27, 2014: (1) graduated from a CTI program that was approved by the FAA and (2) had passed the AT-SAT and who did not receive a tentative offer letter from the FAA prior to March 23, 2015. Fourth Am. Compl. ¶ 100, ECF No. 87 at 20.

## ARGUMENT

Plaintiffs have identified a viable class and pre-certification discovery is necessary and appropriate in order to allow Plaintiffs access to the evidence in Defendant's possession that will allow them to address Defendant's arguments regarding ascertainability of the class, common and predominant issues of law and fact, typicality, and the alleged existence of intraclass conflicts. Plaintiffs anticipate that class discovery would include information concerning a student's graduation date, AT-SAT score, age, citizenship, race or national origin, and job application, offer, or employment history with the FAA during 2014-2015. By obtaining and analyzing this data, Plaintiffs expect to be able to prove the ascertainability of the putative class as well as support their arguments concerning the commonality and typicality of the class claims. For the same reasons, the Plaintiffs will seek information concerning any students who, prior to January 27, 2014, may have been disqualified from being hired by the FAA for any documented academic or biographical reasons and students who were offered employment by the FAA prior to March 2015. Discovery into these topics will allow Plaintiffs to address and overcome the Defendant's arguments that the proposed class is overbroad because it includes those who never applied for FAA positions, those who declined FAA employment, and/or those who were never eligible to be hired by the FAA and therefore suffered no harm. The Plaintiffs' motion should therefore be granted because Plaintiffs have established a prima facie case of employment discrimination and their discovery request is proportional to the needs of this case.

**A. Plaintiffs have established a prima facie case of employment discrimination.**

Case law interpreting Title VII sets a low bar for establishing a prima facie case of employment discrimination. "Disparate-treatment cases present 'the most easily understood type of discrimination' and occur where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (citations omitted); *see also* 42 U.S.C. § 2000e–2(a)(1). To establish a prima facie case for Title VII liability, "[a] disparate-treatment plaintiff

must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action." *Id.* (citations omitted). Here, Plaintiffs have established a prima facie employment discrimination case and a prima facie class because they can demonstrate the intent of the FAA's race-based employment decision and that it was of such a scale that it satisfies the requirements Rule 23's class action[2] standard as described below.

1. *Numerosity.*

The FAA's race-based decision to change its hiring practice affected between 2,500 and 3,000 individuals, with the specific number likely being close to 2,600.[3] Joinder of these thousands of people would be unfeasible and impractical and the disposition of their claims via a class action suit will be mutually beneficial to the parties and the Court. *See* Fourth Am. Compl. ¶¶ 103, 106, ECF No. 87 at 21-23. Defendant has not contested numerosity and has conceded that this case involves thousands of potential class members. *See* ECF No. 64 at 5.

2. *Commonality and Typicality.*

There are common questions of law, practices, and fact as to the members of the class which predominate over questions affecting only individual members of the class. Specifically, this case challenges the FAA's unified, race-based decision to eliminate or purge the Qualified Applicant hiring preference, which resulted in all members of the class simultaneously losing a hiring preference, even though they had graduated from a CTI school and passed the AT-SAT assessment. The FAA embarked on this path sometime between 2010 and 2012 and its intent to benefit African-Americans at the

---

[2] Moreover, the question of class certification is distinct from whether pre-certification discovery should be authorized. This District has previously denied class certification for the time being while simultaneously granting pre-certification discovery. *See Smith v. Ergo Sols., LLC*, 306 F.R.D. 57, 68 (D.D.C. 2015) ("Often the pleadings alone will not resolve the question of class certification and some discovery will be warranted.") (internal quotation marks, citation, and alterations omitted). *See also Burton v. Dist. of Columbia,* 277 F.R.D. 224, 230 (D.D.C.2011).

[3] *See* ECF No. 73-9 (December 5, 2013 e-mail from Rickie Cannon stating that "there are approximately 2,668 candidates in the [AT-CTI] Inventory but AT-SATs are expiring and candidates are aging out daily.")

6

expense of all others, its illegal motivation, is common to the entire class.[4] The FAA's uniform course of action constituted an adverse employment action which affected all class members in the same way and at the same time. Defendant's race-based motivation, alleged justification for the decision, and actions taken between 2010 and 2014 to further race-based hiring are common to all class members. *See Moore v. Napolitano*, 926 F. Supp. 2d 8, 29 (D.D.C. 2013) ("factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members [and] class members have suffered the same injury.") (internal quotations omitted).

Defendant's prior objections and arguments regarding commonality are no longer applicable. First, Defendant objected to a class definition that did not include and exclude putative members on the basis of a protected characteristic. (ECF No. 75 at 27-29). Plaintiffs' proposed class now excludes African-Americans, the group meant to be benefited by the FAA's actions. *See* Fourth Am. Compl. ¶¶ 100, 105, ECF No. 87 at 20-22. Additionally, the Fourth Amended Complaint and revised proposed class definition address Defendant's prior arguments that the class would include persons who were never harmed, such as those who did not seek or declined employment as an ATC. (ECF No. 75 at 31). As currently formulated the class excludes those who had aged out of ATC eligibility, were documented as being unable to obtain a recommendation from their school, or were offered ATC employment as a result of the February 2014 vacancy announcement. *See* Fourth Am. Compl. ¶¶ 100, 105, ECF No. 87 at 20-22. Further, the class uses the passing of the AT-SAT as a proxy for a student's intent to apply for an ATC position. *Id.* Finally, contrary to one Defendant's prior objections (ECF No. 75 at 29), there is at least one common question "of such a nature that it is capable of classwide resolution." At the end of this lawsuit, there will be a single answer to the dispositive question: did the FAA eliminate

---

[4] *See* ECF No. 78-2 (EEO Complaint filed on April 12, 2014 by Andrew Brigida).

the Qualified Applicant preference and associated AT-SAT scores as part of a scheme to illegally benefit African-Americans to the detriment non-African Americans in the ATC hiring process?

Plaintiffs' claims in this case are typical of the claims of all members of the putative class because all members of the putative class were simultaneously harmed by the FAA's illegal race-based actions. All class members will benefit from: (a) a judicial declaration that the FAA race-based decisions associated with purging the Qualified Applicant preference violated Title VII; and (b) injunctive relief restraining further race-based decision making by the FAA and mandating remedial measures. Any potential factual variations amongst the class members do not alter the universal impact of the FAA's race-based employment decision to purge the Qualified Applicant hiring preference. *See Cohen v. Chilcott*, 522 F. Supp. 2d 105, 115 (D.D.C. 2007) ("The typicality requirement is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.") (quotations omitted). *See* Fourth Am. Compl. ¶ 102, ECF No. 87 at 21.

To overcome any remaining objections to the commonality and typicality of the class, *See* ECF No. 75 at 22-31, Plaintiffs seek information concerning the considerations that went into purging the list of CTI Qualified Applicants and to re-engineering the hiring process. Plaintiffs expect that such information will support their allegations that the FAA's actions were undertaken specifically with the intent to benefit one racial group to the detriment other racial groups. Such evidence will buttress Plaintiffs' allegations that even if their damages were nominal, each putative class member was harmed and was intended to be harmed because the FAA intentionally pursued a race-based course of action. *See* Fourth Am. Compl. ¶ 118, ECF No. 87 at 27. Finally, to the extent that Defendant objects to the certification of the damages portion of this case, Plaintiffs expect that historical/statistical data in the Defendant's possession will be useful in allowing Plaintiffs' expert to explain the possibilities and options for data-driven class damages resolutions.

3. *Adequacy.*

The putative class will be adequately represented by the Plaintiffs and the Class Representatives because their interests are identical and there is no antagonism between the former and the latter.[5] Further, Plaintiffs' proposed amended class definition resolves Defendant's prior allegations of intra-class conflicts. (ECF No. 75 at 37). Putative class counsel are competent and experienced in litigating large, complex cases, including matters concerning employment and constitutional law.[6] Approximately 350 potential class members have contacted Plaintiffs' legal counsel and approximately 151 have filed informal EEO Complaints with the FAA listing Plaintiffs' legal counsel as potential legal counsel. *See* Fourth Am. Compl. ¶ 104, ECF No. 87 at 22. To the extent that Defendant continues to assert that some minority members of the class may not be interested in the relief sought in this case, (ECF No. 75 at 39), Plaintiffs refer to the prior declaration of Mr. Douglas-Cook. *See* ECF No. 73-11; *see also* Fourth Am. Compl. ¶ 94, ECF No. 87 at 19. Finally, Plaintiffs will seek discovery to determine what remedies class members have sought from the FAA or other communications class members had with the FAA regarding the FAA's changed process.

4. *Ascertainability.*

The proposed Class is ascertainable in that its members can be readily identified using objective information that already exists. Specifically, Defendant has records indicating CTI students' graduation dates, AT-SAT scores, age or date of birth, and race and national origin. Further, the existence of an AT-SAT score may serve as a proxy for the CTI student's citizenship since the student had to certify citizenship to take the test, and for the student's intent to apply to the FAA to be accepted for ATC training since, upon information and belief, the AT-SAT score is not considered as part of the hiring

---

[5] *See* ECF No. 73-10 (Declaration of Andrew Brigida), ECF No. 73-11 (Declaration of Matthew Douglas-Cook), *and* ECF No. 73-13 (Declaration of Suzanne Rebich).

[6] *See* ECF No. 73 at 19-21 (describing the professional expertise of Plaintiff's counsel and their respective law firms in handling class action litigation, particularly as related to suits against the FAA); *see also* ECF No. 78-3 (curriculum vitae of Zhonette M. Brown describing, *inter alia*, class action litigation experience).

for any other FAA position. The class that Plaintiff and putative Class Representatives seek to represent is the approximately 2,500 to 3,000 non-African American CTI students who by January 27, 2014: (1) graduated from a CTI program that was approved by the FAA and (2) had passed the AT-SAT (thereby indicating their intent to apply for FAA ATC employment), and who did not receive a tentative offer of employment letter from the FAA prior to March 23, 2015.  Excluded from the class are the very few CTI graduates whose academic records as of January 27, 2014 explicitly stated that they were ineligible to receive a letter of recommendation from their CTI school or who by January 27, 2014 had aged out of eligibility for FAA ATCS training, thereby excluding them from possibly meeting the definition of Qualified Applicants per Section 6 of the Standard Operating Procedures of the FAA's Aviation Careers Division.

The revisions to the class definition address Defendant's prior objections to the use of a "register" to define the class, to any unknowns associated with any disqualification that may have occurred after a candidate received a tentative offer of employment, and to the lack of a protected characteristic as part of the class definition. (ECF No. 75 at 20-26).

      5. *Predominance and Superiority*.

For the reasons set out above and in the Fourth Amended Complaint, Plaintiffs also satisfy the predominance and superiority requirements of the putative class. The FAA's termination of the Qualified Applicant hiring preference creates common questions of law, practices, and fact which predominate over questions affecting only individual members of the class.  Pre-class discovery will demonstrate that a class action is a far more equitable and expedient use of judicial and party resources than requiring thousands of individual lawsuits based on the same fact pattern underlying the FAA's race-based employment decision.  It will also prevent the proliferation of filings and related briefing under the single-filing doctrine. *See* Fourth Am. Compl. ¶ 106, ECF No. 87 at 23 (citing *Campbell v. Nat'l R.R. Passenger Corp.*, 163 F. Supp. 2d 19, 25 (D.D.C. 2001)).

### B. Pre-Class Certification may be combined with merits discovery.

Plaintiffs propose and request that precertification discovery proceed simultaneously with merits discovery so that precertification discovery will therefore not cause any undue delay, expense or other prejudice. The U.S. Supreme Court recognizes that the "rigorous analysis" of a class certification motion will often "entail some overlap with the merits of the plaintiff's underlying claim." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. at 351. Similarly, this Court in *In re Rail Freight Fuel Surcharge Antitrust Litig.* noted that "[c]ourts must consider the degree to which the certification evidence is 'closely intertwined' with, and indistinguishable from, the merits evidence in determining whether bifurcation is appropriate." 258 F.R.D. 167, 173 (D.D.C. 2009).

The *In re Rail Freight* case concerned a claim brought by 18 freight companies against four of the largest railroads in the country, alleging the railroads entered a price-fixing agreement for freight costs in violation of federal antitrust laws. *Id.* at 168. The defendant railroads argued that certification and merits discovery should be bifurcated because the voluminous amount of information requested by the plaintiffs made it impractical to engage in merits discovery concurrent with the briefing and discovery process for the plaintiffs' certification motion. *Id.* at 170-71. The Court disagreed. To begin with, bifurcating discovery such that defendants could voluntarily disclose what documents they deemed pertinent to the question of class certification would inappropriately force the plaintiffs "to accept [the defendants'] formulation of the certification question and their determination of what pertains to it." *Id.* at 173. Second, the Court concluded that "the evidence plaintiffs need for certification purposes is closely intertwined with the merits evidence," such that imposing an "arbitrary insistence" on phased discovery would thwart the plaintiffs' effort to demonstrate predominance per Rule 23. *Id.* at 173-74. Moreover, the Court also observed that "[b]ifurcated discovery fails to promote judicial economy when it requires 'ongoing supervision of discovery.'" *Id.* at 174 (citation omitted). As such, the Court held that the defendants' discovery disputes were in reality a premature attempt to litigate class certification, concluding that "[d]iscovery relating to class certification is closely

11

enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into the basic issues of the litigation." *Id.* at 175.  However, in concluding that bifurcating discovery was inappropriate, the Court recognized that it would likewise be impractical to postpone briefing on the class certification issue until the completion of discovery given the volume of requested information.  *Id.* at 176.  In reaching this compromise, the Court stated that it "would like to see the issue of certification resolved as quickly as it can be to bring certainty to the litigation and avoid wasting resources on discovery that turns out to be irrelevant."  *Id.*

*In re Rail Freight* is analogous to the Plaintiffs' suit against the FAA.  As with the railroad dispute, discovery relating to class certification in the Plaintiffs Title VII case is "closely enmeshed" with merits discovery, and in fact cannot be meaningfully developed without inquiry into the basic issues of the litigation.  The history of this case has already demonstrated the difficulty in sifting out documents that speak only to the FAA's race-based employment decisions (i.e., merits discovery) and those documents speaking to the thousands of individuals who were impacted by the former (i.e., certification discovery).  *See* ECF Nos. 62, 64, 65, and 66.  Documents which could establish Title VII liability also establish the contours of the putative class.  Consequently, in the interests of both judicial economy and providing a sufficiently "rigorous analysis" of Plaintiffs' proposed class, class certification discovery should be combined with merits discovery, with briefing on certification occurring mid-way through the overall discovery process.

### C. Proposed Class Discovery Topics.

Topics that Plaintiffs propose for class certification include:

1. Data concerning CTI graduates who graduated after December 31, 2008 and before January 27, 2014; including graduation dates, AT-SAT scores, birth dates or age, race information and subsequent application and hiring information, specifically whether they applied to the 2014 or 2015 job opening or received a tentative offer letter prior to March 23, 2015.
2. Documents reflecting communications between FAA and CTI institutions regarding identification of CTI graduates who were ineligible for employment with the FAA due to age, citizenship, AT-SAT scores, or ineligibility to receive a recommendation for employment from their CTI institution.

3. Documents reflecting communications between FAA and CTI institutions regarding what circumstances would prevent a CTI graduate from receiving a letter of recommendation from their CTI institution.

4. Documents reflecting the FAA's method, after 2008 and prior to January 27, 2014, of notifying CTI graduates when a vacancy announcement was scheduled to be advertised and providing a "job code" giving eligible individuals access to apply to a CTI specific vacancy announcement (as described in the Mitchell Declaration).

5. Documents reflecting the FAA's use or consideration of AT-SAT scores for any purpose other than ATCS candidate hiring from 2008 through 2014.

6. Data concerning CTI graduates who graduated between January 1, 2005 and September 1, 2012, specifically including the graduates' AT-SAT scores, school attended, date of graduation, GPA, receipt of recommendations, status as United States citizens, expressed geographic preference for hiring, receipt of an offer of employment from the FAA, performance at the FAA Academy, and achievement of ATCS status.

7. Documents reflecting the purposes, benefits, drawbacks or costs of eliminating the CTI-only job postings as of 2014 and disregarding CTI status and AT-SAT scores as relevant screening mechanisms for hiring as of 2014.

8. Documents reflecting communication between or among FAA Civil Rights, FAA Human Resources, Civil Aerospace Medical Institute (CAMI), the Executive Steering Committee and the NBCAE or its representatives or officers between January 1, 2010 and December 31, 2014 regarding the FAA hiring process, the Barrier Analysis and its extension, the AT-SAT, and the CTI Program.

As recognized by the Court in *In re Rail Freight*, some of these topics overlap with discovery into the merits of Plaintiffs' claims. *See* 258 F.R.D. at 173 ("Courts must consider the degree to which the certification evidence is 'closely intertwined' with, and indistinguishable from, the merits evidence in determining whether bifurcation is appropriate."); *see also Wal–Mart,* 564 U.S. at 351 (noting that the "rigorous analysis" of a class certification motion will often "entail some overlap with the merits of the plaintiff's underlying claim.").

Here, the Plaintiffs' limited precertification discovery request is "proportional to the needs of the case" at this stage. Fed. R. Civ. P. 26(b)(1). Generally speaking Plaintiffs seek only information that the FAA had indicated to the CTI schools that it was maintaining, data similar to that already informally produced by the FAA, data regarding the purpose for the FAA scrapping a well-documented and repeatedly validated hiring process in favor of an illogical or non-validated process, and data that would support development of class damages models. Moreover, as it relates to class discovery,

Plaintiffs seek only limited document requests and certain 30(b)(6) deposition topics, not a full panoply of discovery methods. Conversely, denying limited pre-certification discovery places the Plaintiffs at a significant disadvantage by allowing the Defendant to frustrate justice by simply denying access to relevant evidence necessary to class determination.

## CONCLUSION

For the reasons given above, Plaintiffs respectfully request the opportunity to conduct limited pre-certification discovery prior to filing their Motion for Class Certification under Rule 23.

DATED this 4th day of November 2019.        Respectfully submitted,

*/s/ Zhonette M. Brown*

Zhonette M. Brown, D.C. Bar No. 463407
Brian Gregg Sheldon, CO Bar No. 51063, *pro hac vice*
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021 | (303) 292-1980 (facsimile)
zhonette@mslegal.org | brian@mslegal.org

Michael W. Pearson, AZ Bar No. 016281, *pro hac vice*
Curry, Pearson, & Wooten, PLC
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000 | (602) 523-9000 (facsimile)
mpearson@azlaw.com

Attorneys for Plaintiffs and Putative Class Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of November 2019, I caused a true and correct copy of the foregoing **MOTION FOR PRE-CERTIFICATION CLASS DISCOVERY** to be electronically filed with the Clerk of the Court using the Court's CM/ECF system which sent notification of such filing to the following counsel of record in this matter:

Michael L. Drezner
Michael.L.Drezner@usdoj.gov

Galen Nicholas Thorp
galen.thorp@usdoj.gov

*/s/ Zhonette M. Brown*
Zhonette M. Brown, D.C. Bar No. 463407
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
zhonette@mslegal.org