# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ANDREW J. BRIGIDA, et al.,              )
                                        )
                        Plaintiffs,     )
                                        )
            v.                          )            Civil Action No. 16-cv-2227 (DLF)
                                        )
ELAINE L. CHAO, Secretary, U.S.         )
Department of Transportation,           )
                                        )
                        Defendant.      )
_____)


## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS CLAIM

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.      Plaintiffs' Class Claims Should Be Stricken. ................................................................. 2

        A.      Plaintiffs Cannot Make Out a Claim of Class-wide Discrimination
                Because They Have Not Alleged a Personnel Action Affected the Putative
                Class as a Whole. ................................................................................................. 3

                1.      Withdrawing an alleged hiring preference between rounds of hiring
                        does not constitute a "personnel action" under Title VII. ......................... 3

                2.      Plaintiffs cannot justify their proposed complaint by recasting it as
                        a challenge to the 2014 Biographical Assessment. ................................ 11

        B.      The Proposed Class Cannot Meet Rule 23's Requirements. ............................... 14

II.     Defendants' Motion Meets the Rule 12(b)(6) Standard ................................................. 17

CONCLUSION ........................................................................................................................... 21

## INTRODUCTION

The Court should strike Plaintiffs' class claims because their putative class cannot survive a motion to dismiss.[1]  It is clear, on the face of the complaint, that the putative class cannot meet elements required by the text of Title VII:  (1) a discriminatory "personnel action[]" which (2) affects a class of "applicants."  *See* 42 U.S.C. § 2000e-16(a).  Admitting that many of their putative class members are nonapplicants, Plaintiffs do not claim that these nonapplicants can state a Title VII claim under the narrow criteria previous courts have adopted for such circumstances—futility of application or failure to publically announce the job opening.  Instead, Plaintiffs appeal to the "spirit of Title VII" to claim that where an employer allegedly changes a hiring process, Title VII gives a claim to all potential applicants who had an advantage under the old process.  But neither the text of Title VII nor any of the caselaw cited by Plaintiffs actually supports this dramatic expansion of Title VII's reach.  The statute simply does not provide a cause of action based on changes to a hiring process that do not become a "personnel action" affecting individual "applicants."  For this reason, Plaintiffs have failed to state a Title VII claim on behalf of the putative class, and the inclusion of uninjured class members gives rise to numerous Rule 23 defects.  No amount of discovery could change this straightforward failure to plead a plausible class claim.

In addition to weakly defending their unprecedented vision of the reach of Title VII, Plaintiffs also attempt to recast their claims to invite the Court to create a "subclass" of those who

---

[1] Defendants address their Cross-Motion to Strike Class Claims in this brief because the Local Rules grant them a reply on that cross-motion.  *See* LCvR 7(d); *see also* Minute Order, Dec. 3, 2019.  However, Defendants note that the substantive standard for their Motion to Strike and the standard for denying leave to amend are essentially the same—both are appropriate where Plaintiffs have failed to state a claim upon which relief can be granted under Fed. R. Civ. Proc. 12(b)(6).  *See Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72, 80 (D.D.C. 2018); *In re McCormick & Co.*, 217 F. Supp. 3d 124, 140 (D.D.C. 2016). Accordingly, this reply is relevant to the pending Motion for Leave to Amend as well.

actually applied in 2014.  This effort fails for several reasons.  The proposed complaint does not actually state the claim that Plaintiffs now propose—a challenge on behalf of those who did not pass the 2014 biographical assessment ("BA").  Nor is the putative class defined in any way around those who applied in 2014, let alone those who did not pass the BA.  And most importantly, where Plaintiffs' proposed class complaint fails to state a claim on its face, the possibility that some fragment of that putative class could possess a claim does not justify proceeding on behalf of the entire class.  Moreover, it is not the Court's obligation to determine the potential viability of different putative classes or subclasses, and here the vagueness and indeterminacy of Plaintiffs' hypothetical alternative class counsels strongly against a judicial effort to craft a viable class action.

Accordingly, the Court should either deny the motion to amend as futile, or permit amendment of the individual claims but strike the class claims.

## ARGUMENT

## I.    Plaintiffs' Class Claims Should Be Stricken.

Plaintiffs acknowledge that class claims are subject to pre-discovery dismissal if they fail to "state[] a plausible claim for class-wide relief."  *In re McCormick & Co.*, 217 F. Supp. 3d 124, 140 (D.D.C. 2016) (granting dismissal of an antitrust class claim for failure to state a claim); *see* Pls.' Reply at 8, 12, 18, 20, 21 (accepting plausibility standard throughout reply brief).[2]  FAA has

---

[2] Judge Huvelle reconsidered her dismissal of the antitrust claim in *In re McCormick* only to convert it to dismissal without prejudice because "dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 218, 223-24 (D.D.C. 2017) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).  In the same 2017 decision, she reaffirmed her reasoning but permitted plaintiffs to file a second amended complaint with a new legal theory for their antitrust claim while "permit[ting] defendants to renew their motions to dismiss."  *Id.* at 227.  Upon further briefing, she again dismissed the antitrust claim.  *See In re McCormick & Co., Inc. Pepper Prod. Mktg. & Sales Practices Litig.*, MDL Doc. No. 2665, 2019 WL 3021245, at *9 (D.D.C. July 10, 2019).  Thus Plaintiffs' characterization of that case as one where "alternative formulations of classes" led to class certification for some claims, *see* Pls.' Reply

shown that Plaintiffs fail to meet this standard because Plaintiffs have not alleged personnel actions affecting the entire class, and thus cannot satisfy an essential element of Title VII or meet Rule 23's requirements for the putative class.

> **A.     Plaintiffs Cannot Make Out a Claim of Class-wide Discrimination Because They Have Not Alleged a Personnel Action Affected the Putative Class as a Whole.**

It is beyond dispute that a "personnel action," 42 U.S.C. § 2000e-16(a) (also referred to as an "adverse employment action") is an "essential element" of a Title VII discrimination claim. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Here, the "adverse employment action" alleged in the proposed complaint fails as a matter of law and fact, and the alternative proposed for the first time in Plaintiffs' reply brief fails to rehabilitate the claims of the putative class as a whole. Accordingly, Plaintiffs have failed to allege an essential element of the claim on behalf of the class and the class claims should be struck. *See Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997); *see also Aliotta v. Bair*, 614 F.3d 556, 569 (D.C. Cir. 2010); *Perry v. Donovan*, 733 F. Supp. 2d 114, 119 (D.D.C. 2010).

> **1.     Withdrawing an alleged hiring preference between rounds of hiring does not constitute a "personnel action" under Title VII.**

Defendants have shown that the sole action Plaintiffs identify in the proposed complaint as an "adverse employment action" fails both as a matter of law and fact. What Plaintiffs call a "uniform course of action to purge the merit-based hiring preference for Qualified Applicants with the expectation of implementing a new race-biased hiring practice," Proposed 4th Am. Compl. ¶ 101, ECF No. 87-1 (hereinafter "4th Am. Compl."), primarily refers to the set of decisions involved in revising the controller hiring process between rounds of hiring, which was implemented

---

at 8, does not undermine its holding that dismissal is appropriate for class claims that cannot meet the plausibility standard.

between December 2013 and February 2014. *See id.* ¶¶ 35-38, 79-80. Nor have they exhausted

any challenge to pre-2014 employment actions.[3] Plaintiffs' focus on the loss of an alleged hiring

preference is problematic both because seeking continued preferential treatment is not a Title VII

claim, *see* Defs.' Mot. at 19-20;[4] and because the "hiring preference" asserted here is not a well-

pleaded fact. *See* Defs.' Mot. at 21-22.[5] But even if those issues could be overlooked, Plaintiffs

have failed to show that revising a hiring process constitutes a "personnel action" affecting all

potential applicants.

---

[3] While Plaintiffs claim to challenge actions from 2012-2014 that culminated in the revised hiring process, *see* Pls.' Reply at 11, 16, this does not change the fact that the FAA implemented its revisions between rounds of hiring. *See, e.g.*, Pls.' Reply at 14 (noting that FAA announced its revised hiring process "just as [putative class members] were anticipating the first job opening in over a year"). To the extent Plaintiffs seek to press claims for any alleged employment actions occurring before 2014, *see, e.g.*, Pls.' Reply at 16 ("FAA intentionally avoided issuing a vacancy announcement in 2013"), they cannot do so. Title VII claims accrue when the allegedly discriminatory employment action occurs, *see* 29 C.F.R. § 1614.105(a); *Broderick v. Donaldson*, 437 F.3d 1226, 1232-33 (D.C. Cir. 2006); *Fortune v. Holder*, 767 F. Supp. 2d 116, 122 (D.D.C. 2011); *Adesalu v. Copps*, 606 F. Supp. 2d 97, 100-01 (D.D.C. 2009); and discrete acts must be separately exhausted. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2006); *Moore v. U.S. Dep't of State*, 351 F. Supp. 3d 76, 94-96 (D.D.C. 2019); *Stephens v. Mnuchin*, 317 F. Supp. 3d 413, 418 (D.D.C. 2018). Because Plaintiffs exclusively rely on Andrew Brigida's administrative exhaustion, *see* 4th Am. Compl. ¶¶ 81-86, which began on February 25, 2014, *see id.* ¶ 81, they cannot challenge discrete actions that occurred more than 45 days earlier.

[4] Plaintiffs attempt to justify their demand for continued preferential treatment on the ground that it was an objective "preference for validated evidence of skill, training, and aptitude." Pls.' Reply at 11. But they have not, in fact, alleged that CTI graduates were more qualified or more likely to succeed as controllers than general public applicants who scored similarly on the AT-SAT. *See, e.g.*, 4th Am. Compl. ¶ 13 (characterizing alleged limitations of off-the-street hiring "prior to the 1990s," long before the AT-SAT was implemented). Moreover, the fact that the AT-SAT was validated, *see* 4th Am. Compl. ¶¶ 20, 24, does not mean that CTI graduates were entitled to unique treatment—indeed the AT-SAT was still used under the 2014 announcement. *See* Exhibit 6, Policy Bulletin No. 84 § 2(g)-(h) (Feb. 7, 2014); Exhibit 29, FAA-AMC-14-ALLSRCE-33537 at 2-3 (Feb. 10, 2014). Thus, Plaintiffs cannot make a Title VII claim out of the FAA's alleged decision to alter any balance between CTI and general public hiring. By continuing to focus on education status, which is not by itself cognizable under Title VII, Plaintiffs continue to hamstring their efforts to make out a viable claim.

[5] Plaintiffs' complaint does not plausibly allege that the CTI hiring track—including CTI-only announcements and the opportunity to skip five weeks of training at the FAA Academy—could be characterized as a "hiring preference" like a veterans preference. *See* Defs.' Mot. at 21-22 & n.8. Indeed, their reply brief seems to reduce the meaning of "hiring preference" to the assertion that CTI graduates were "disproportionately successful" in the pre-2014 hiring process. *See* Pls.' Reply at 19. But CTI graduates' degree of success in the hiring process cannot be a sufficient basis for a claim.

To the contrary, D.C. Circuit precedent holds that for an employment action to form the basis of a Title VII claim, it must effect "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003); *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009). Changes to a hiring process are thus not, by themselves, employment actions for any employee or individual who might apply in the future under the new process. This is even clearer for a failure-to-hire claim because Title VII claims against federal agencies are limited to "employees or applicants for employment." 42 U.S.C. § 2000e-16(a). Potential applicants are neither, until they actually apply. Even for employees seeking promotions, courts generally dismiss claims if the plaintiff did not apply for the position. *See, e.g.*, *Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003); *Ali v. McCarthy*, 179 F. Supp. 3d 54, 66 (D.D.C. 2016); *Kline v. Archuleta*, 99 F. Supp. 3d 1, 4 (D.D.C. 2015); *Moore v. Hagel*, No. 10-00632, 2013 WL 2289940, at *2 (D.D.C. May 24, 2013); *Stoyanov v. Winter*, 643 F. Supp. 2d 4, 13 (D.D.C. 2009). Courts allow non-applicants to challenge selection decisions only if the employer prevented them from applying or if application would have been futile. *See* Defs.' Mot. at 24-25; *Pederson v. Mills*, No. 06-1418, 2009 WL 10697333, at *2 & n.2 (D.D.C. Oct. 23, 2009); *Harris v. Eli Lilly & Co.*, No. 03-2208, 2006 WL 1663394, at *5 & n.12 (D.D.C. June 13, 2006); *Davis v. Ashcroft*, 355 F. Supp. 2d 330, 357 (D.D.C. 2005); *Carroll v. England*, 321 F. Supp. 2d 58, 67-68 (D.D.C. 2004).[6]

---

[6] These cases depend on the plaintiff alleging and "proving that he would have applied for the job had it not been for those [discriminatory] practices." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 368 (1977). Thus, the cases still depend on the agency taking employment actions—e.g., opening and filling positions—for the plaintiffs to state a claim; the cases do not turn on mere changes to a process. *See, e.g.*, *Pederson*, 2009 WL 10697333, at *2 (addressing promotion given to another employee); *Davis*, 355 F. Supp. 2d at 357 (same); *Carroll*, 321 F. Supp. 2d at 68 (same).

Plaintiffs have not pled or argued that the non-applicants here fit either of these exceptions to the application requirement. They assert in passing that whether the "hiring preference was suddenly terminated for race-based reasons" may have "dissuaded some class members from applying for ATCS positions does not change the harm such an individual suffered." Pls.' Reply at 23. But they do not actually defend their non-applicant class on this ground, nor could they because they have pled no facts supporting this theory, and the undisputed facts refute it. *See* Defs.' Mot. at 25; *Carroll*, 321 F. Supp. 2d at 68 (rejecting argument that application was futile where a similarly situated person applied and was hired).

Plaintiffs seek to evade the statutory text and this logical simplicity by attempting to create a wholly new way for employers to become liable to *potential* applicants. They appeal to the "spirit of Title VII," Pls.' Reply at 11, and ask the Court to read the D.C. Circuit's definition of "materially adverse consequences" to expand the scope of agency decisions that are considered "personnel actions." *See id.* at 13-14 (quoting *Douglas*, 559 F.3d at 552). However, that is precisely backwards. The D.C. Circuit adopted the term "materially adverse consequences" to define what makes an action "adverse" and to clarify that only "personnel actions" that are "adverse" are cognizable under Title VII. *See Brown v. Brody*, 199 F.3d 446, 453-57 (D.C. Cir. 1999) (adopting definition of "materially adverse consequences" in response to a plaintiff's argument that Title VII permitted her to challenge a lateral transfer—plainly a personnel action—regardless of whether it was adverse). Accordingly, Plaintiffs cannot rely on "materially adverse consequences" to craft an "employment action" in the first place.[7]

---

[7] Indeed, each of the cases Plaintiffs cite involved a clear "personnel action" that was being weighed for whether it had "materially adverse consequences." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("reassignment [to different] job duties"); *Douglas*, 559 F.3d at 554-55 ("refusal to advertise the position competitively" before filing it; not recommending employee for presidential award); *Weber v. Battista*, 494 F.3d 179, 185-86 (D.C. Cir. 2007) ("performance evaluations . . . [that] resulted in losing a financial award or an award of leave"); *Casey v. Mabus*, 878 F. Supp. 2d 175, 184

To expand the scope of the statute in this way would have absurd consequences. While cases conclude that an employment action can be *adverse* (and thus cognizable under the D.C. Circuit's reading of Title VII) where it affects "future employment opportunities," *Douglas*, 559 F.3d at 552, it would be far different to conclude that an employer's policy or process change *becomes an employment action* whenever it affects "future employment opportunities." This would create a host of new employment actions and potential litigants. Any change to the selection criteria or the weight given to various factors in a selection process could affect the likelihood that some group of potential applicants will be selected. Indeed, a decision to entirely forego hiring or promotions in a given year could give a claim to all those who would be eligible to apply. But this result cannot be squared with either the language or intent of Title VII. The mere fact that an employer's policy or practice changes could affect the job prospects of some potential applicants does not render those changes discriminatory "personnel actions" or "employment actions" affecting those individuals. Instead, Title VII claims are available only to those "applicants" who are actually denied employment. 42 U.S.C. § 2000e-16(a).

Plaintiffs also argue that CTI graduates who passed the AT-SAT are "more than just prospective candidates," Pls.' Reply at 11, because they "invested time, effort, and money into their ATCS training and passing the AT-SAT" at the "encouragement of the FAA." *Id.* at 14.[8]

_____

(D.D.C. 2012) ("denied instructor certification training"); *Hutchinson v. Holder*, 668 F. Supp. 2d 201, 216–17 (D.D.C. 2009) ("poor or critical performance appraisals").

[8] To whatever extent FAA "encourag[ed]" participation in the CTI program, it also consistently explained that it did not guarantee employment opportunities to anyone. *See* Defs.' Mot. at 7; Ex. 5 at 1, 12; Ex. 8; 4th Am. Compl. Ex. 13, ECF No. 87-13. Nor can the putative class claim reliance on an alleged "mass e-mail" issued by FAA at the "end of 2012"—at most a year before they graduated—for their decision to enter the CTI program. *See* Pls.' Reply at 19; 4th Am. Compl. ¶ 28 (not attaching or quoting alleged document). The email at most demonstrates that FAA continuously adjusted the balance among hiring sources, not that all CTI graduates had a settled and reasonable expectation that they would be preferred over other applicants. For example, the alleged intention "not [to] conduct[] any further [general public] hiring," 4th Am. Compl. ¶ 28, was very short-lived. A few months later, in March 2013, FAA publically

But investing in a college degree and completing an aptitude test do not turn a student into an applicant. Plaintiffs do not dispute the wide variety of degrees that met the CTI Program criteria, or the fact that these degrees can be the basis for many careers other than an FAA air traffic controller. *See* Defs.' Mot. at 7, 27; Exhibit 5, AT-CTI Program Overview and FAQs at 5, 62-63 (July 10, 2013). Nor do Plaintiffs cite any case in which an individual's alleged reliance interests gave rise to a Title VII claim. Like college students or graduates who take the LSAT or MCAT because they are considering participating in a subsequent application process for which those tests are a prerequisite, putative class members here completed a degree and took a threshold "aptitude test," *see* 4th Am. Compl. ¶¶ 20-22, while considering whether to apply in the future for an FAA controller vacancy announcement. Discovery is not required to confirm that passing a test is not the same as completing an application.[9]

Perhaps most importantly here, CTI graduates had an immediate opportunity to apply in February 2014. *See* 4th Am. Compl. ¶¶ 80, 91, 96. Plaintiffs have neither pled nor offered the Court any reason to think that putative class members who did not apply at that point were actively seeking employment by the FAA as controllers. Thus, even if CTI graduates could be characterized as "prequalified" under the pre-2014 hiring process, *see* Pls.' Reply at 15, that does not alter Title VII's requirement that they actually follow through and complete the application

---

stated that it intended to issue a general public vacancy announcement in 2014. *See* 4th Am. Compl. ¶ 34; Ex. 2, 2013 Workforce Plan at 44.

[9] Even if passing the AT-SAT could be a "proxy . . . for the student's intent to apply to the FAA," 4th Am. Compl. ¶ 105, and even if Plaintiffs were able to show a "tight correlation between those who took the AT-SAT and those who *eventually* applied for an ATCS position," Pls.' Reply at 20 (emphasis added), that interest and intent does not make someone an applicant. Indeed, Plaintiffs do not dispute that they have defined their putative class so broadly that it includes people who graduated as early as 2004 and have never applied for a controller position. *See* Defs.' Mot. at 27 & n.17. Similarly, while the AT-SAT cannot reasonably be compared to a "bar exam or medical boards," Pls.' Reply at 20, because years of specialized education and training is required before a new hire becomes a certified controller, *see* Defs.' Mot. at 4-5, that inapt comparison is beside the point because a bar exam is not an application either.

process in order to have a claim.  *See, e.g.*,  *Burt v. Nat'l Republican Club of Capitol Hill*, 828 F. Supp. 2d 115, 125 (D.D.C. 2011) ("There can be no adverse employment action where a plaintiff, of his own volition and despite being individually encouraged to do so, failed to complete the application process."); *Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 19-20 (D.D.C. 2008) (holding that even an allegation that the employer "had committed through promise to promoting all qualified employees" does not preserve a Title VII claim where the plaintiff "did nothing to apply for the . . . positions").

Indeed, as Defendants have shown, the situation here is similar to *Bourdais v. New Orleans City*, 485 F.3d 294 (5th Cir. 2007), which held that plaintiffs who had not completed the application process "failed to show that they suffered any adverse employment action whatsoever." *Id.* at 300; *see* Defs.' Mot. at 21.  The *Bourdais* plaintiffs where "Caucasians who . . . applied to be fire recruits," and who had "receive[d] a passing score on [an aptitude] test" but had to then "pass further screening (agility test, drug screening, medical background check, etc.) before being placed on a list of recruits eligible for hire."  485 F.3d at 297, 300.  That court held that it was not enough to have passed the test; to have an actionable "employment action," the applicants must have "passed the additional screening in time to be eligible for hire." *Id.* at 300.  The putative class here is even farther removed from those "eligible for hire" because it includes those who never applied in the first place.  No one could be hired under any of FAA's vacancy announcements unless they actually applied, and completed the required steps.  *See* Defs.' Mot. at 7-9.  It is thus nonsensical for Plaintiffs to suggest that merely meeting "pre-application . . . requirements" makes their putative class analogous to finalists who could be immediately hired.  *See* Pls.' Reply at 17.[10]

---

[10] Moreover, as Defendants previously explained, Plaintiffs have not proposed a class of those who "had already satisfied all pre-application qualification requirements."  Pls.' Reply at 17.  While the putative class definition meets some of those requirements, including being a CTI Program graduate and passing the AT-SAT, it does not meet other prerequisites—e.g., U.S. citizenship, recommendation from CTI

Finally, it is plain that the parties have differing views regarding the "applicability" of *Ricci v. DeStefano*, 557 U.S. 567 (2009), to the merits of the revisions FAA implemented for its hiring process in 2014. *Compare* Defs.' Mot. at 28-31; *with* Pls.' Reply at 2, 18. But what matters for purposes of this motion is that *Ricci* does not stand for the proposition that a process change, standing alone, constitutes an employment action giving rise to a Title VII claim. The *Ricci* plaintiffs plainly challenged an employment action—they were applicants "eligible for immediate promotion" but were not promoted because the "City chose not to certify the examination results." 557 U.S. at 566, 579. Thus, while *Ricci* "articulates the contours of a specific affirmative defense" available in Title VII cases, Pls.' Reply at 18 (quoting *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 95 (2d Cir. 2013)), it does not alter the elements of a Title VII claim. Plaintiffs here clearly assert that their alleged hiring preference was eliminated around December 30, 2013, *see* 4th Am. Compl. ¶¶ 35-37, and no later than January 27, 2014, *see id.* ¶¶ 41, 53, 79, yet do not rely on applications submitted before the 2014 Vacancy Announcement opened on February 10, 2014, *see id.* ¶ 80; Pls.' Reply at 2 (addressing potential subclass for those "who applied to the 2014 ATCS job announcement").[11] Thus, they cannot support the argument that the revision to the hiring process was a "refus[al] to accept the outcome of a race neutral hiring process," 4th Am. Compl. ¶ 112, or show that *Ricci* gives a claim to those who did not apply in 2014.

---

institution, being younger than 31 at the time of entry-on-duty at the FAA Academy, having graduated from a CTI program within the last three years (or having applied to extend that eligibility). *See* Defs.' Mot. at 8, 23 & n.10, 27-28 & n.18.

[11] *See also* Pls.' Reply at 11 (addressing those who "applied for ATCS positions in 2014"); *id.* at 12 (addressing "actual applicants" from 2014); *id.* at 14 (stating that change came "just as [class members] were anticipating the first job opening in over a year"); *id.* at 23 (addressing potential subclasses for "those who did and those who did not go on to apply to the 2014 job announcement").

Because Plaintiffs' proposed class claim lacks a "key element" of a Title VII claim, it fails to state a claim on behalf of the proposed class. *See Taylor*, 132 F.3d at 761; *Aliotta*, 614 F.3d at 569. Accordingly, the class claim should be dismissed.

**2.    Plaintiffs cannot justify their proposed complaint by recasting it as a challenge to the 2014 Biographical Assessment.**

Plaintiffs' fallback position is to borrow the personnel action challenged in the parallel class action, *Johnson v. U.S. Dep't of Transportation*, No. 19-1916 (now consolidated on this docket)—now asserting that some of the putative class members "applied for ATCS positions in 2014 and were rejected for 'biographical' reasons." Pls.' Reply at 11. Their acknowledgement that these are "actual applicants," *id.* at 12, highlights the dubiousness of the claims pled in their proposed complaint. They suggest that the Court should let the entire action proceed merely because some fraction of the class may have a claim. *See id.* at 2 (proposing as a "logical way to proceed" certifying the entire class and "creat[ing] a subclass that includes only . . . [those] who applied to the 2014 ATCS job announcement"); *id.* at 23 ("non-applicants can be properly grouped into a subclass"). This argument fails for numerous reasons.

First, the proposed complaint does not actually allege a claim for 2014 applicants who failed the biographical assessment ("BA"). The proposed complaint never asserts that any putative class members failed the BA (other than the named plaintiffs), that putative class members suffered a disparate impact due to the BA, or that the putative class (or a subclass) have any issues in common regarding the BA. Plaintiffs point to a single paragraph regarding the validation of the BA, a paragraph stating that the entire putative class lost "their employment preference and opportunity," and the paragraph summing up their intentional discrimination theory as a hiring claim. *See* Pls.' Reply at 12 (quoting 4th Am. Compl. ¶¶ 40, 41, 115). Yet each of those paragraphs appear in the current complaint, *see* 3d Am. Compl. ¶¶ 52, 53, 121, ECF No. 68, and

Plaintiffs specifically represented to the Court that the claim that "the 2014 BA was validated improperly and used inappropriately to screen applicants due to race" is "not asserted in this matter."  Pls.' Mot. for Class Cert. at 32, ECF No. 73-1; *see also* Hr'g Tr. at 5:4-6, Sept. 13, 2019 (stating that the BA "really didn't pertain to the students who were purged from the list"); *id.* at 3:24-4:5 (stating that this case "has . . . from a discovery standpoint some issues dealing with the [BA]" but is a "wholly different case[]" from *Johnson* and only "deals with the termination of approximately 2,700 [] CTI students").  It is thus clear that the single paragraph about the validation of the BA was included merely as context and support for their theory of intentional discrimination in "purg[ing] the . . . hiring preference," 4th Am. Compl. ¶¶ 101-102, 107, 111-13; *id.* Prayer for Relief ¶ 1; *see id.* at 41, 114 ("decision to strike the CTI qualifications").

Second, Plaintiffs' putative class is not defined in any way around those who unsuccessfully applied in 2014, let alone failing the BA.  The class definition's only possible allusion to the 2014 hiring process is its exclusion of people who "receive[d] a tentative offer of employment letter from the FAA prior to March 23, 2015," 4th Am. Compl. ¶ 100—a term which excludes all people who received offers under any vacancy announcement, not merely the 2014 Announcement.  This vagueness and indeterminacy creates obvious problems.  For example, Plaintiffs now suggest a subclass of those who "applied to the 2014 job announcement," Pls.' Reply at 2, yet their alleged discriminatory personnel action is only for those who "applied and 'failed' the 'biographical' screening."  *Id.* at 1.  Thus, the newly proffered subclass would include some who passed the BA, but did not receive a tentative offer letter for some other reason.  In sum, the mere fact that some of the class members may have some other injury—such as discriminatory personnel actions already alleged on their behalf in another class action—does not mean that injury

is adequately pled in a lawsuit that neither names such a personnel action on behalf of any portion of the class nor defines the class to include such an injury.

Third, even if Plaintiffs' proposed complaint could be construed to somehow include a challenge on behalf of some of those who applied in 2014 and did not pass the BA, that does not mean that amendment should be granted or that the class claims should proceed. This newly-developed claim would only support litigation by some undefined fraction of the putative class. It would not justify permitting this proposed complaint to go forward—which on its face fails to state a Title VII claim on behalf of the proposed class as a whole, *see supra* Arg. § I.A.1, and which cannot plausibly support certification of the proposed class under Rule 23, *see infra* Arg. § I.B. Plaintiffs are wrong to suggest that a potentially viable germ of a claim concealed in a complaint justifies proceeding on a facially invalid class complaint. If Plaintiffs want to proceed on this proposed complaint, the class claims should be struck. *See* Defs.' Mot. at 43-45.[12] Alternatively, if they want to proceed on a different complaint, they must seek leave to file that amended complaint.[13] *Cf. Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-4394, 2017 WL 1331288, at * 9 (S.D.N.Y. Apr. 4, 2017) (declining to "attempt an appropriate carve-out" to solve ascertainability issues where the plaintiffs "largely confined their briefing on

---

[12] While Defendants do not oppose Plaintiffs' clarification of their own individual claims, it does not appear to be efficient to permit this proposed amended complaint to stand even for those claims. For example, Plaintiffs appear to abandon their proposal to withdraw Ms. Rebich and Mr. Douglas-Cook as named plaintiffs, *see* Pls.' Reply at 10 (stating that they "consent to remain in the class as full parties"), yet the text of the proposed amended complaint does not accomplish that. Moreover, these individual claims are currently organized around the same mistaken understanding of what constitutes a cognizable "personnel action" under Title VII. Accordingly, it may be more efficient for the Court to direct the Plaintiffs to propose a different pleading to effect the "substantial revision," Pls.' Reply at 9, they desire.

[13] Plaintiffs attempt to reverse their burden by arguing that "[i]f Andrew Brigida has a viable Title VII claim against the FAA, then so do thousands of other similarly situated CTI graduates." Pls.' Reply at 21. But Defendants' acknowledgement that the three named Plaintiffs allege an actual "personnel action" does not mean that this proposed complaint states a claim on behalf of others—especially where it never even alleges that other putative class members applied but were not selected in 2014.

potential modified class definitions to passing footnotes addressed to hypotheticals"); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-4000, 2016 WL 2593654, at *6 (N.D. Cal. May 5, 2016) (refusing to "make a ruling on a hypothetical class definition that was never presented to it in Plaintiffs' [class certification] briefing").  And here, where Defendants and the Court strongly highlighted the implausibility of alleging a class that included nonapplicants, *see* Defs.' Mot. at 41-42, the Court need not be endlessly patient with Plaintiffs' inadequate efforts to remediate their defective class claims.  *Cf. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 626 (S.D.N.Y. 2013) (denying leave to file amended complaint to belatedly "seek to plug the holes in their complaints identified by the [court's order]" after plaintiffs did not seek to amend when defects were raised in motion to dismiss, requiring "tremendous effort [to be] expended by defendants and the Court in considering and ruling on the motions to dismiss").

### B.    The Proposed Class Cannot Meet Rule 23's Requirements.

Defendants demonstrated that because much of the putative class lacks a Title VII claim and has not been injured, the proposed class cannot be certified.  *See* Defs.' Mot. at 31-40.  The class definition is fatally overbroad, *id.* at 32, commonality and typicality are defeated, *id.* at 33-35, and the class is not sufficiently homogenous for common issues to predominate, which prevents certification under Rule 23(b)(2) or (b)(3), *id.* at 35-37.  In response, Plaintiffs rely primarily on their argument that the process change creates a class-wide adverse employment action and injury.  *See* Pls.' Reply at 20-23.  Because that argument fails for all the reasons discussed above, Plaintiffs have likewise failed to prop up the certifiability of their claims under Rule 23.  *See, e.g.*, *In re McCormick*, 217 F. Supp. 3d at 144-45 (holding that if "predominance is not plausible, a Rule 12(b)(6) motion can be used to strike class allegations").[14]

---

[14] In addition, Plaintiffs continue to demonstrate that there are serious adequacy of representation problems.  *See* Defs.' Mot. at 37-40.  Plaintiffs themselves describe one of the cases where counsel was

Nor can Plaintiffs resolve these issues through their half-hearted suggestion that any problems can be resolved with subclasses. *See* Pls.' Reply at 13, 23. They cite no cases where a court deferred dismissal of a cause of action that failed to state a claim on behalf of the putative class due to the possibility that a subclass might have a claim. For example, Plaintiffs cite *In re McCormick*, *see* Pls.' Reply at 8, which actually dismissed a class claim that failed to state a claim, *see* 217 F. Supp. 3d at 131-39, while concluding that other claims should proceed because "grouping of [state] consumer protection statutes might be possible," especially in light of the defendants' characterization of the variations among state laws, making it "inappropriate to dismiss plaintiffs' claims without giving them an opportunity to demonstrate that there are workable groupings." *Id.* at 140-42. And in *Borum v. Brentwood Village, LLC*, 324 F.R.D. 1 (D.D.C. 2018), the court had previously concluded that the complaint did state a claim on behalf of the whole class, *id.* at 7, and did not use subclassing to address such a fatal defect. Instead, *Borum* divided a putative class into two subclasses because the class as a whole was "overbroad and ineligible for certification" under the evidence plaintiff had provided, but noted that the plaintiff could "renew her motion for certification of [the apparently ineligible] subclass" if anticipated events occurred or if she was able to identify people who met the criteria she had proposed. *Id.* at 9-10.[15]

---

found inadequate as involving counsel who "sought to represent competing classes that asserted the same legal and factual claims against the same defendant." Pls.' Reply at 25 (citing *Lou v. Ma Labs, Inc.*, No 12-05409, 2014 WL 68605, at *1-2 (N.D. Cal. Jan. 8, 2014). Here, Michael Pearson plays a key role in two "competing" class actions that are overlapping more and more. The effort to keep these actions separate, and the hesitation here to define a putative class of applicants, suggests that the interests of each class are being limited and hemmed in by counsel's efforts to maximize certain aspects of each class. Indeed, if the Court were to take up Plaintiffs' offer to craft an alternative class definition based on allegations regarding the 2014 biographical assessment, it would seem hard to distinguish the new *Brigida* claim as anything more than a subclass of *Johnson*. Neither the putative classes nor the courts are being served by the pleading choices being made for unclear strategic reasons.

[15] Plaintiffs cite two additional cases in which putative classes were refined during litigation. *See* Pls.' Reply at 3. But neither of these cases suggest that it is inappropriate to dismiss a claim where the putative

These cases emphasize that even though courts "may redefine classes or subclasses *sua sponte* prior to certification" it is "left to the court's discretion to choose whether to intervene in this way" because "it is the plaintiff, and not the court, who bears the burden of fashioning appropriate class definitions and demonstrating that the requirements of Rule 23 are met for each." *Borum*, 324 F.R.D. at 8; *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 408 (1980) ("[I]t is not the District Court that is to bear the burden of constructing subclasses. That burden is upon the [class proponent] and it is he who is required to submit proposals to the court. The court has no sua sponte obligation so to act."); *In re McCormick & Co., Inc., Pepper Prods. Marketing & Sales Practices Litig.*, MDL Doc. No. 2665, 2019 WL 3021245, at *15 (D.D.C. July 10, 2019) ("Courts can allow subclassing on motion or sua sponte, but are under no obligation to do so, and the burden remains on the party seeking certification.").[16]  Here, the defects in the putative class are fundamental and cannot be solved by arranging all of the putative class members into viable groups, like the state law claims in *In re McCormick*, or by subsequent factual developments or additional information, like *Borum*.  Plaintiffs have offered no plausible way for the putative class

_____

class fails to state a claim.  *See D.L. v. Dist. of Columbia*, 860 F.3d 713 (D.C. Cir. 2017) (affirming certification of three subclasses after remand in light of *Wal-Mart* [*Stores, Inc., v. Dukes*, 564 U.S. 338 (2011) because "[w]hereas before the parents' claims were united only by a shared allegation of IDEA liability, now the suit has subclasses cast around common harms, susceptible to common proof, and curable by a single injunction"); *Little v. Washington Metro. Area Transit Auth.*, No. 14-1289, 249 F. Supp. 3d 394, 421 (D.D.C. 2017) (reorganizing subclasses before certification due to concerns about Rule 23(a) typicality and permitting plaintiffs to file amended complaint to match the court's action); *Little v. Washington Metro. Area Transit Auth.*, 313 F. Supp. 3d 27 (D.D.C. 2018) (approving settlement of civil damages class based on subclasses certified by court).

[16] *See also Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 607 (10th Cir. 2008) ("Of course, the sorts of problems highlighted by the district court may have been mitigated, or perhaps avoided, by the use of subclasses. . . . While the district court could have sua sponte suggested subclassing as a possible solution to Rule 23(b)(2) problems, the Supreme Court has indicated that courts do not bear any obligation to do so[.]"); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) ("The district court is not "to bear the burden of constructing subclasses" or otherwise correcting Rule 23(a) problems; rather, the burden is on Plaintiffs to submit proposals to the court." (quoting *Geraghty*, 445 U.S. at 408)).

to proceed as defined.  *Cf. Clark v. Bumbo Int'l Trust*, No. 15-2725, 2017 WL 3704825, at *4 (N.D. Ill. Aug. 28, 2017) (rejecting plaintiff's request to amend class definition where overbreadth of class definition was more than a "minor" problem and "call[ed] into question the validity of the class as a whole").  And while they obliquely suggest that the Court could redefine the class so that some sort of applicant class could proceed, they make no effort to actually propose or defend such a definition.  The Court should reject "the perverse effect of turning defense counsel and the Court into plaintiffs' counsel's co-counsel, with plaintiffs waiting to see what objections defendants raise and how the Court rules on those objections and then amending their proposed class definitions as necessary based on what they learned in the process."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 465 (S.D.N.Y. Feb. 28, 2018) (seeking to avoid this effect by considering "modifications of the proposed class definitions . . . only where plaintiffs have set forth such proposals in sufficient detail").  It would not serve judicial economy to attempt to refashion the claims to address the issues Plaintiffs have been unable or unwilling to solve.

## II.    Defendants' Motion Meets the Rule 12(b)(6) Standard

The parties agree that the standard for dismissal under Rule 12(b)(6) is the relevant benchmark both for whether amendment should be denied as futile and for striking the class claims.  *See* Defs.' Mot. at 15-18, 44; Pls.' Reply at 4, 21.[17]  Yet, Plaintiffs challenge the procedural sufficiency of Defendants' brief, arguing that "the FAA effectively pursues summary judgment" because Defendants' brief "cites to 30 exhibits" and thus allegedly "is not a Rule 12(b)(6) analysis."  Pls.' Reply at 7.  This argument fails because it is well established that courts may

---

[17] Plaintiffs cite *Koch v. White*, 134 F. Supp. 3d 158, 164 (D.D.C. 2015), for the proposition that Rule 12(f) is not properly used to seek dismissal "based on the legal insufficiency of a pleading," Pls.' Reply at 7, 21, but that decision goes on to hold that courts "may disregard the title of the pleading and treat it as a Rule 12(b)(6) motion."  134 F. Supp. 3d at 165.  Here, where a motion to "strike the class action allegations" can be filed "at any time," Local Rule 23.1(b), courts in this district refer to Rule 12(f) in doing so in the class action context.  *See, e.g.*, *Artis v. Yellen*, 309 F.R.D. 69, 73 (D.D.C. 2015).

consider documents referred to in the complaint and that are subject to judicial notice, *see Stephens v. Mnuchin*, 317 F. Supp. 3d 413, 417 (D.D.C. 2018) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)), and each of Defendants' exhibits meets one of these criteria. Thus, this is not a situation that would "require[] the court to go well beyond the face of the pleadings." Pls.' Reply at 22 n.11 (quoting 7AA Charles Alan Wright et al, *Federal Practice and Procedure* § 1785.3 n.9 (3d ed. 2005)).[18]

Three of FAA's exhibits provide undisputed facts published on government websites, *see* Exhibits 7-9, and a fourth, Exhibit 5, is an FAA publication that was previously available to CTI institutions and students which sets forth undisputed facts about the CTI Program in 2013. *See* ECF No. 91-1; Defs.' Mot. at 16 n.5 (identifying this basis for Exhibits 5, 7, 8, and 9) . Plaintiffs identify no reason preventing the Court, at the dismissal stage, from relying on these exhibits or the limited facts for which FAA has cited them. *See, e.g.*, Defs.' Mot. at 27 (relying on CTI Program Overview for its list of the 54 degrees available in 2013 under that program); Pls.' Reply at 3 (not disputing "the number of CTI schools, the various options for CTI degrees" but claiming that this information is "largely irrelevant"). These documents meet the evidentiary standard for judicial notice. *See* Fed. R. Evid. 201(b); *John Doe A-1 v. Democratic People's Republic of Korea*, No. 18-cv-0252, 2019 WL 5597740, at *2 (D.D.C. Oct. 30, 2019).

---

[18] The cited footnote in *Federal Practice and Procedure* notes a case in which a "motion to strike and dismiss and for summary judgment" was held in abeyance until class certification briefing where it went "well beyond the face of the pleadings and into the merits of plaintiff's claim." 7AA Charles Alan Wright et al, *Federal Practice and Procedure* § 1785.3 n.9 (3d ed. 2005). The case the treatise cited for this proposition stayed the motion because "[a]lthough certain paragraphs of the motion allege failure to state a claim, the overwhelming nature of the motion is one for summary judgment requiring the consideration of depositions and other exhibits." *Otto v. Variable Annuity Life Ins. Co.*, 98 F.R.D. 747, 747 (N.D. Ill. 1983). By contrast here, Defendants do not seek summary judgment or rely on documents that are not cognizable at the Rule 12(b)(6) stage.

Nor do Plaintiffs specifically dispute 23 of the exhibits FAA included on the ground that they were attached to or referred to in the complaint.  *See* Defs.' Mot. at 16 n.5 (identifying this basis for Exhibits 1, 6, 10-30); *see* Pls.' Reply at 4 (not listing these documents or the background facts appearing on pages 6-9, which largely describe the legacy hiring process, in its objection). Even if not incorporated into the complaint, these documents are equally subject to judicial notice as described in the prior paragraph.   Twenty of these exhibits are merely public vacancy announcements which set forth the terms for applications for controller positions, *see* Exs. 10-29, which are incorporated into the pleadings due to Plaintiffs' references to the job openings and announcements.  *See* 4th Am. Compl. ¶¶ 25, 27, 31, 80, 91, 96, 100, ECF No. 87-1.  Exhibits 1 and 6 set forth FAA's controller hiring processes as codified in 2007 and 2014, *see* Exs. 1, 6, which are either attached or referenced in the proposed complaint.  *See* 4th Am. Compl. ¶¶ 25, 100, 105, 111-13 & Pls.' Ex. 11.  And Exhibit 30 is the formal administrative complaint which is "expressly incorporated by reference" in the proposed complaint.  *See* 4th Am. Compl. ¶ 84 n.7.  Accordingly, consideration of these documents is appropriate at this stage of the case.

Plaintiffs specifically object to only three exhibits, claiming that they "purportedly serve as a justification for the changed hiring policy," *see* Pls.' Reply at 4:

- Exhibit 2, the FAA's published 2013 controller workforce plan (which is cited and quoted in 4th Am. Compl. ¶¶ 29, 34);
- Exhibit 3, the Extension to the Barrier Analysis completed in April 2013 by APT Metrics (which is characterized, cited, and quoted in 4th Am. Compl. ¶¶ 47-48); and
- Exhibit 4, the FAA's May 2013 public statement regarding the Barrier Analysis, which accompanies the Extension to the Barrier Analysis on the FAA website.

However, despite Plaintiffs' objections, consideration of these documents is neither inappropriate nor implicates the summary judgment standard.  The facts cited in the challenged pages of Defendants' background are within the scope of Plaintiffs' own use of these documents.  *See*

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133-34 & n. 6 (D.C. Cir. 2015) (considering "why a plaintiff attached the documents" and noting that "a referenced document may always be read for what it incontestably shows"). Here, FAA merely describes the independent analyses upon which FAA relied in making the 2014 changes to the controller hiring process. *See* Defs.' Mot. at 9-11.[19] Plaintiffs themselves report that both a barrier analysis under EEOC Management Directive 715 and an extension to that barrier analysis were completed in 2013 and characterize these reports' conclusions. *See* 4th Am. Compl. ¶¶ 46-47. Thus, FAA is not going beyond Plaintiffs' own use of the documents to describe some of the "key issues" identified in the reports, to point out that the reports reviewed the recommendations made by an independent review panel in 2011, or to note that FAA established an executive steering committee to oversee the changes findings of the barrier analysis. *See* Defs.' Mot. at 9-11. Indeed, Plaintiffs appear to dispute none of these facts, but merely argue that these steps were taken "in part to bolster FAA's plan to . . . [adopt] a race-based or race-biased hiring process." *See* 4th Am. Compl. ¶ 48. Because FAA's arguments in the pending motions do not turn on the justification for FAA's changes to its hiring process, Plaintiffs' concern about "whatever exculpatory language the FAA may have planted in these documents," Pls.' Reply at 4, is irrelevant. The limited objective facts set out in FAA's brief—from documents subject to judicial notice or incorporated into the pleadings—do not undermine the procedural posture of these filings.

In sum, because FAA relies on the inadequacy of Plaintiffs' own allegations as a matter of law, the dismissal standard is readily satisfied.

---

[19] Plaintiffs do not specify what they dispute on page 5 of Defendants' background section, *see* Pls.' Reply at 4, but it appears that they may be objecting to the assertion that "FAA adjusts the mix of hiring from these sources due to their availability and its staffing needs. *See* 4th Am. Compl. ¶ 27; 2013 Workforce Plan at 44." Defs.' Mot. at 5; *cf.* Pls.' Reply at 4 (complaining about "FAA's characterization of its selection and use of hiring methods"). However, this general statement is supported from Plaintiffs' own complaint.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Leave to Amend the Complaint, or, alternatively, strike Plaintiffs' class claims.


DATED: January 17, 2020              JOSEPH H. HUNT
                                     Assistant Attorney General

                                     CARLOTTA P. WELLS
                                     Assistant Director
                                     Civil Division, Federal Programs Branch

                                     */s/ Galen N. Thorp*
                                     GALEN N. THORP (V.A. Bar No. 75517)
                                     Senior Counsel
                                     MICHAEL DREZNER (V.A. Bar No. 83836)
                                     Trial Attorney
                                     U.S. Department of Justice
                                     Civil Division, Federal Programs Branch
                                     1100 L Street NW
                                     Washington, DC 20530
                                     Telephone: (202) 514-4781
                                     Facsimile: (202) 616-8470
                                     Email: galen.thorp@usdoj.gov

                                     *Counsel for Defendant*