**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ANDREW J. BRIGIDA,

       *Plaintiff*,

   v.

ELAINE L. CHAO, Secretary,
U.S. Department of Transportation,

     *Defendant.*

Civil Action No. 16-2227 (DLF)

---

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE
TO FILE FOURTH AMENDED CLASS ACTION COMPLAINT
AND OPPOSITION TO MOTION TO STRIKE CLASS CLAIM**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.   THE PROPOSED AMENDMENT MAKES IMPORTANT
     BUT NOT RADICAL CHANGES TO PLAINTIFFS' CLAIMS................................... 5

     A.   Plaintiffs' Criticism of the Biographical Assessment is Not New........................ 6
     B.   The Disparate Impact Claim Arises from Plaintiffs' Original Allegations .......... 7

II.  NO PREJUDICE, UNDUE DELAY, OR OTHER CONSIDERATION WARRANTS
     DENYING THE AMENDMENT................................................................................... 8

     A.   The FAA Has Not Asserted Prejudice Due to the Proposed Amendment........... 8
     B.   Any Implied Argument of Undue Delay Is Unwarranted.................................. 10
     C.   Plaintiffs Have Not Repeatedly Failed to Correct Pleading Deficiencies ......... 11

III. PLAINTIFFS' DISQUALIFICATION CLAIMS IS NOT FUTILE............................ 13

     A.   Plaintiffs Have Alleged an Adverse Employment Action ................................. 14
     B.   Plaintiffs Have Alleged They Were Harmed Because of Their Race................ 18
     C.   The Proposed Class is Not Overbroad and Satisfies Rule 23 ........................... 19

IV.  THE BIOGRAPHICAL ASSESSMENT CLAIM IS NOT FUTILE ........................... 21

     A.   The Biographical Assessment Claims Were Exhausted .................................... 21
     B.   Plaintiffs Have Adequately Pleaded Biographical Assessment Claims ............. 23

CONCLUSION.................................................................................................................. 25

## INTRODUCTION

Since 2014, Plaintiff Brigida has challenged the Federal Aviation Administration's ("FAA") decision to strip the Class of validated pre-hiring test results and refuse to hire qualified Class members because they did not "pass" a Biographical Assessment ("BA"). The core of Plaintiff Brigida's allegations have remained constant—under political pressure to increase the number of African Americans hired, the FAA abandoned existing test results because of the alleged racial imbalance of those who had passed and revised the testing process using a highly suspect BA to thin the ranks of qualified non-African Americans considered for hiring.

Plaintiffs request leave to amend their complaint; opposing this motion, the FAA bears—but cannot carry—the burden to show why an amendment should be denied. The FAA neither claims it will suffer prejudice nor identifies any cognizable prejudice that warrants avoiding the judicially preferred outcome of considering this case on its merits. The FAA's repeated statements about the length of this case, implying undue delay, cannot serve as a basis for denying Plaintiffs' amendment. Further, contrary to the FAA's characterizations, Plaintiffs' recent proposed amendments have addressed, or attempt in good faith to address, class definition requirements and have not obdurately refused to correct alleged pleading deficiencies.

Finally, Plaintiffs' proposed amended complaint states valid claims. The core facts underlying Plaintiffs' claims were alleged in Plaintiffs' Second Amended Complaint, which already withstood a motion to dismiss. Despite the FAA's current attempts to isolate and justify individual steps in its 2014 hiring process, Plaintiffs have more than adequately alleged that they suffered an adverse employment action, the action was race-motivated and at least partially carried out through a standardized discriminatory pre-hiring test, and the background circumstances of the FAA's reverse discrimination. Plaintiffs' amendment cannot be defeated by the FAA's non-

deferential plausibility analysis or an alleged affirmative defense. Finally, Plaintiffs' proposed class cannot be defeated by the FAA's effort to artificially limit the scope of the Collegiate Training Initiative ("CTI") graduates harmed by its actions. Plaintiffs' proposed amendment is timely and proper, and it is in the interest of justice that the FAA's actions be tried on the merits.

## BACKGROUND

In February 2014, Plaintiff Brigida applied for and was denied an Air Traffic Controller ("ATC") position with the FAA. *See* Proposed Fourth Am. Compl. ("PAC 4"), ECF No. 99-1, ¶¶ 159, 161. On April 12, 2014, after pursuing required informal Equal Employment Opportunity ("EEO") counseling, Plaintiff Brigida filed a formal employment discrimination complaint with the Department of Transportation. PAC 4, ECF No. 99 ¶¶ 160, 162; EEO Compl., ECF No. 68-1 at 93. The complaint alleged, *inter alia*: Brigida and the Class he represented suffered race-based discrimination resulting in the loss of employment opportunities, EEO Compl. ¶ 2, the FAA changed the ATC applicant assessment process resulting in disparate treatment on the basis of race, (*id.* ¶ 3), prior to the change, CTI graduates that passed the AT-SAT were on a list of preferred hires, (*id.* ¶ 12), the process was changed as a result of a barrier analysis, (*id.* ¶ 26), the process was revised to include a biographical questionnaire and only those who passed this biographical questionnaire would be considered for hire, (*id.* ¶¶ 27–28), and as a result of the process change, Brigida and the Class lost their employment preference and opportunity, (*id.* ¶ 29).

The EEO Complaint also explained that the process was revised by the FAA Human Resources ("HR") and Civil Rights ("CR") offices, (*id.* ¶ 31); these offices provided the National Black Coalition of Federal Aviation Employees ("NBCFAE"), detailed information on the new two phase (biographical then cognitive) assessment, (*id.* ¶ 34); the departments preferred outcomes benefitting African Americans even to the detriment of other minorities, (*id.* ¶ 49); an FAA HR

2

member provided NBCFAE with confidential information regarding the new hiring process to skew results so more black applicants would pass the new assessment, (*id.* ¶ 50); the goal of purging the list of already tested preferred hires was to eliminate competition for the ATC positions by making those on the list "'pass' a highly suspect Biographical Analysis ('BA') questionnaire," (*id.* ¶ 73); and the motive was to discriminate against the Class to benefit African American ATC applicants, (*id.* ¶ 75). The EEO Complaint included 12 attachments that provided evidence of the pressure on the FAA to change the hiring process to hire more African Americans, how the hiring process was changed, and how information FAA employees provided to the NBCFAE was shared with NBCFAE members.[1]

After the EEOC failed to act on his complaint, on December 30, 2015, Brigida filed a class action complaint in federal district court largely mirroring his EEO complaint and attaching 9 of the 12 EEOC complaint exhibits. Compl., ECF No. 1. The FAA did not respond to that complaint because it was amended; nor did the FAA respond to the amended complaint as further amendment followed congressional action on the FAA hiring process.  In September 2016, the FAA filed its first response to a pleading, filing a Rule 12(b)(6) motion to dismiss addressed to the Second Amended Complaint. ECF No. 27. In November 2016, the ruling on the FAA's motion narrowed the claims and defendants at issue and transferred the case to this Court. ECF No. 33. After partial reconsideration of the Rule 12(b)(6) motion, preliminary settlement discussions, and an

---

[1] The FAA attached 39 exhibits to its opposition and cross motion, asserting that the exhibits were all incorporated into PAC 4 or subject to judicial notice. The FAA errs in its assertion that referenced documents are wholly incorporated into a complaint; Plaintiffs specifically do not wholesale adopt documents authored by or for the FAA. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1132–34 (D.C. Cir. 2015) ("The incorporation by reference doctrine has limits, however. If a document itself comes before the court only as an attachment to the defendant's motion to dismiss, it may not be appropriate for the court to treat the entire document as incorporated into the complaint."  Referencing a document does not mean that the plaintiff has to "adopt every word within the exhibits as true").

amendment filed in error, Plaintiffs' Third Amended Complaint was filed on October 23, 2018. ECF No. 68. Plaintiffs then filed their first and so far only motion for class certification, which was denied on September 13, 2019. ECF No. 73; Minute Order (Sept. 13, 2019). Within the time allotted by the Court, Plaintiffs moved to amend their complaint to revise the class definition. ECF No. 87. Pursuant to Court order, the parties filed a report in March 2020 addressing the consolidation of this case with the *Johnson* case. ECF No. 96. In April 2020 the Court denied the motion to amend and Plaintiffs promptly filed the current motion. ECF Nos. 98, 99.

**LEGAL STANDARD**

The FAA bears the burden to show why Plaintiffs' amendment should be denied. *Flaherty v. Pritzker*, 322 F.R.D. 44, 46 (D.D.C. 2017) ("The party opposing the amendment bears the burden to show why leave should not be granted.") (citing *Dove v. Washington Metro. Area Trans. Auth.*, 221 F.R.D. 246, 247 (D.D.C. 2004)).

Nor is the FAA's burden light. This Court and Circuit heed the Rule 15 "mandate that leave is to be freely given when justice so requires" and therefore use "a generous standard" to "determine the propriety of amendment." *Baker v. D.C. Pub. Sch.*, 720 F. Supp. 2d 77, 81 (D.D.C. 2010) (quoting *Firestone v. Firestone*, 76 F. 3d 1205, 1208 (D.C. Cir. 1996)); *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 8 (D.D.C. 2013) (quoting *Commodore-Mensah v. Delta Air Lines, Inc.,* 842 F. Supp. 2d 50, 52 (D.D.C. 2012)). Leave to amend "should be freely given unless there is a good reason . . . to the contrary." *Council on Am.-Islamic Rel. Action Network,* 793 F. Supp. 2d 311, 321 (D.D.C. 2011) (quoting *Willoughby v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C. Cir. 1996)).

Granting leave to amend is particularly appropriate where the proposed amendment does "no more than state an alternative theory of recovery." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Indeed, "[a]mendments that do not radically alter the scope and nature of the action . . . are especially favored." *Connecticut v. U.S. Dept. of the Int*., 363 F. Supp. 3d 45, 54 (D.D.C. 2019) (quoting *Westrick*, 301 F.R.D. at 8).

Ultimately, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Baker*, 720 F. Supp. 2d at 81 (quoting *Foman*, 371 U.S. at 182).

## ARGUMENT

## I. THE PROPOSED AMENDMENT MAKES IMPORTANT BUT NOT RADICAL CHANGES TO PLAINTIFFS' CLAIMS

PAC 4 is based on the same facts and circumstances as the prior complaints. Plaintiff Brigida has consistently alleged that the entire ATC hiring process, the political pressure to increase African American hiring, the purging of CTI graduates' qualifications, and the use of the BA, leading to refusal to consider the Class for hiring, was racially motivated. EEO Compl. ¶¶ 2–3, 12, 26–29, 31, 34, 49–50, 73, 75; 2d Am. Compl. ¶¶ 51–52, 56–65, 90–91, 98–99, 105–07.

The major thrust of PAC 4 is to refine the class definition. Because the law sometimes permits deterred putative applicants to assert a claim, Plaintiffs' prior proposed class definition used Class members' taking of the AT-SAT test (combined with their accompanying affirmation of citizenship and investment in a CTI education) as a proxy for their intent to apply for ATC positions. ECF No. 87-1 ¶ 105. Plaintiffs believed discovery would prove that absent extraordinary circumstances, every CTI graduate who passed the AT-SAT eventually applied to be an ATC. Plaintiffs further expected discovery to show that the few possible class members who did not apply in 2014 were deterred by the FAA's conduct and statements, because it was clear the FAA meant to disadvantage non-African American CTI graduates. PAC 4, in contrast, specifically limits

class membership to those who applied to the 2014 vacancy announcement. ECF No. 99-1 ¶ 182. PAC 4 also adds facts concerning the background circumstances showing reverse discrimination.

## A.    Plaintiffs' Criticism of the Biographical Assessment is Not New

Relying on PAC 4's elucidation of problems with the BA, the FAA asserts that Plaintiffs are suddenly and radically asserting new claims challenging the BA. Opp'n, ECF No. 105, at 1–2, 14, 38. Contrary to the FAA's newfound interpretation of prior complaints, the BA has always been within the scope of Plaintiffs' factual allegations.[2]  Read fairly and in the light most favorable to Plaintiffs, Plaintiff Brigida's EEO Complaint alleges that the FAA was under pressure to increase African American hiring and bowed to that pressure leading up to and during the 2014 hiring process by striking Class members' validated AT-SAT results, changing the hiring process to insert a BA, and taking other actions to increase the proportion of African Americans hired and eliminate the Class as competition.   *See generally*, EEO Compl. Plaintiffs' administrative complaint ubiquitously referred to the 2014 changed hiring process, which included the BA. EEO Compl. ¶¶ 3, 34, 43–47, 50, 73.  Moreover, the EEO Complaint specifically addressed the "highly suspect" nature of the BA. EEO Compl. ¶ 73.

The FAA's prior filings in this case demonstrate the FAA's understanding that Plaintiff Brigida was challenging the entire 2014 hiring process, including the BA. Most telling is the FAA's summary of the Second Amended Complaint:

---

[2] Plaintiffs acknowledge that a direct formal challenge to the BA, isolated from purging Class members' AT-SAT scores, was previously the focus of the *Johnson* case. Plaintiffs further acknowledge that in seeking to explain the differences in cases, counsel emphasized the *Johnson* case's focus on the BA, as applied to all people who took that unvalidated test, in contrast to this case's focus on CTI graduates and the harm that they uniquely suffered as a result of having their AT-SAT scores purged. After the consolidation with, then dismissal of, the *Johnson* case Plaintiffs here ask the Court specifically to declare that the FAA's use of the BA, standing alone, violates Title VII. Nonetheless, Plaintiffs have always included the BA in their description of the FAA's illegal conduct and as evidence of the FAA's discrimination.

> Plaintiff's lawsuit concerns changes the FAA made to its process for hiring air traffic control specialists . . . . In advance of an air traffic controller hiring round in 2014, the FAA advised that . . . it was implementing a "revised testing process" that applicants must pass in order to be further considered for selection . . . . Under the 2014 vacancy announcement, all applicants would be required first to pass a new "biographical questionnaire" in order to be eligible then to take the "cognitive portion of the AT-SAT" exam . . . . Plaintiff now alleges that, via the 2014 vacancy announcement, the FAA impermissibly "adopted a new hiring practice . . . with the intent and purpose of increasing the racial diversity . . . ."

FAA's Mot. to Dismiss, ECF No. 27, at 2; *see* FAA's Opp'n Class Cert., ECF No. 75, at 13 ("Plaintiff Brigida initially filed a putative class action complaint . . . claiming that the FAA violated Title VII . . . in promulgating the 2014 revised controller hiring policy."). Thus, Plaintiffs' greater illumination of the faults with the BA do not radically change the scope of this case.

## B.    The Disparate Impact Claim Arises from Plaintiffs' Original Allegations

Likewise, there is nothing surprising or radical about Plaintiffs' disparate impact claim.[3] Rather, disparate impact logically follows from the FAA's systemic discriminatory conduct. *See McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 1, 28 (D.D.C. 2004) ("Indeed, a disparate treatment claim may morph into a disparate impact claim, depending on the employment practices involved and the defendant's arguments."). Earlier this year, this District stated that "although disparate treatment and disparate impact claims are analytically distinct, nothing prohibits plaintiffs from bringing both types of claims together to challenge the same or related conduct." *Tolton v. Day*, No. 19-945, 2020 WL 2542129, at *22 (D.D.C. May 19, 2020).

Here, Plaintiff Brigida has always alleged that the FAA engaged in a class-wide practice of discrimination with the intent of benefiting less qualified African American applicants at the expense of more qualified non-African American Class members. One element of the FAA's

---

[3] Plaintiffs assert disparate impact only with respect to the BA, not with respect to the FAA's across the board striking of all of the Class members' prior AT-SAT scores

conduct was the use of the facially neutral BA, which operated to exclude qualified Class members from full hiring consideration. The D.C. Circuit has held that "plaintiffs' pattern or practice disparate treatment challenge to the employment system as a whole may also implicate disparate impact analysis. A pattern or practice disparate treatment case shares with a typical disparate impact suit the allegation that an employer's practices have had a systemic adverse effect on members of the plaintiff class." *Segar v. Smith*, 738 F.2d 1249, 1266 (D.C. Cir. 1984)). Plaintiffs' disparate impact claim merely alleges that the BA accomplished what it intended—filtering out Class members so less qualified African Americans would be considered in their place.

In short, Plaintiffs' amendment challenges the same core factual allegations at issue in their earlier complaints, but adds new theories for recovery; a practice approved by the Supreme Court and this District. *See Foman*, 371 U.S. at 182; *Connecticut*, 363 F. Supp. 3d at 54; *Council on Am.-Islamic Rel. Action Network,* 793 F. Supp. 2d at 322; *Westrick*, 301 F.R.D. at 8 (quoting *Estate of Gaither ex rel. Gaither v. District of Columbia*, 272 F.R.D. 248, 252 (D.D.C. 2011)).

## II.    NO PREJUDICE, UNDUE DELAY, OR OTHER CONSIDERATION WARRANTS DENYING THE AMENDMENT

In keeping with the preference for allowing amendments in the interest of justice, this Circuit views denying leave to amend a complaint as a result that should be limited to extraordinary circumstances, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Connecticut*, 363 F. Supp. 3d at 54; *accord Bode & Grenier*, 808 F.3d 852, 860 (D.C. Cir. 2015) (citing *Firestone,* 76 F.3d at 1208). No such reason is present here.

### A.    The FAA Has Not Asserted Prejudice Due to the Proposed Amendment

"The most important factor the Court must consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party." *Djourabchi v.*

*Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (citing 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.)). Nonetheless, the FAA does not attempt to show that it would be prejudiced by the proposed amendment. Indeed, the word "prejudice" appears only three times in its brief: once stating class certification was denied without prejudice, Opp'n at 11, once reciting the factors to consider in determining whether amendment would be proper, Opp'n at 12, and once in a parenthetical case explanation. Opp'n at 18.

That the FAA would prefer not to answer another complaint or to otherwise address the merits of Plaintiffs' case is not a legitimate claim of prejudice. *See G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, No. 14-418, 2018 WL 4680199, at *5 (D.D.C. Sept. 28, 2018) ("[A]n amendment is not automatically deemed prejudicial if it causes the non-movant to expend additional resources"); *see also Westrick*, 301 F.R.D. at 9 ("Inconvenience or additional cost to a defendant is not necessarily undue prejudice.").

Cognizable prejudice may arise when amendment is sought late in the proceeding or raises issues distant from the prior allegations and a party will be deprived of the opportunity to develop their case, forced to repeat or expand discovery, or otherwise forced to engage in significant new preparation. *Djourabchi*, 240 F.R.D. at 13 (citing WRIGHT, MILLER & KANE, *supra,* § 1487); *City of Moundridge v. Exxon Mobil Corp.,* 250 F.R.D. 1, 6 (D.D.C. 2008) ("Undue prejudice is not mere harm to the non-movant but a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely.") (internal quotations omitted). PAC 4 imposes no such burden on the FAA. The proposed amendment does not significantly alter the scope of the case. Revising the class definition to limit membership to CTI graduates who applied to the 2014 ATC vacancy and providing more factual details will not deprive the FAA of any defense or preparation nor cause the FAA or the Court to re-tread ground already harrowed. No

disclosures or other discovery has taken place, no deadlines have been set for dispositive motions or expert reports, and the prospect of trial is still some ways off. The risk of burdening this Court or the FAA or with significant unnecessary work and expense is therefore exceedingly low, as granting amendment would not require reopening or lengthening discovery, which the FAA has already estimated will take two years. *See* Joint Meet and Confer Statement, ECF No. 96, at 13.

**B.    Any Implied Argument of Undue Delay Is Unwarranted**

While the FAA repeatedly bemoans the duration of this case, Opp'n at 1, it barely attempts to argue there has been *undue* delay. Rightfully so because the "prolonged nature of a case" does not, itself, "affect whether a plaintiff may amend a complaint." *Baker*, 720 F. Supp. 2d at 82 (citing *Caribbean Broad. System, Ltd. v. Cable & Wireless P.L.C*, 148 F.3d 1080, 1084 (D.C. Cir. 1998)); s*ee Appalachian Voices v. Chu*, 262 F.R.D. 24, 27 (D.D.C. 2009) ("[A] court should not deny leave to amend based solely on time elapsed between the filing of the complaint and the request for leave to amend.") (citing *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996)).

Delay generally only becomes undue when there is an accompanying "showing of bad faith or prejudice." *Council on Am.-Islamic Rel. Action Network*, 793 F. Supp. 2d at 325. The FAA has not argued that amendment would be prejudicial; nor does the FAA allege bad faith.

The FAA's only other implied argument of undue delay is its assertion that Plaintiffs were aware of the facts underlying their amendment from the outset. Opp'n at 17. But there is no undue delay because the proposed amendments largely add some details or alternative theories of recovery to facts already within the scope of Plaintiffs' complaint. Finally, PAC 4, coming less than a month after the denial of Plaintiffs' prior motion, is expeditious and not unduly delayed.

### C.    Plaintiffs Have Not Repeatedly Failed to Correct Pleading Deficiencies

The FAA vigorously argues that Plaintiffs have been constantly and haphazardly altering their complaint, unfairly using FAA objections and related rulings for issue spotting; even a cursory examination of the circumstances underlying previous amendments shows otherwise.

The FAA did not respond to Plaintiffs' original or First Amended Complaint.  The parties agreed to stay the case in June 2016 while Congress considered the FAA's ill-conceived hiring process. *See* ECF Nos. 14, 21.  Plaintiffs then filed their Second Amended Complaint.  ECF No. 26. On September 16, 2016, the FAA filed a Motion to Dismiss, its first substantive response of any kind. ECF No. 27.  The FAA's Motion sought to remove certain defendants and remedies from the case but did not challenge Plaintiffs' core allegations or proposed class definition.  *Id.*  The Arizona court dismissed claims against certain defendants, struck Plaintiffs' claim for the equitable relief, and transferred venue to this Court. ECF No. 33.

After obtaining partial reconsideration of the dismissal and after failed exploratory settlement discussions, Plaintiffs filed a Motion for Class Certification, ECF No. 73.  This Court denied class certification without prejudice at a September 13, 2019 hearing.  Hr'g Tr. at 49–50. The Court denied certification because the proposed class definition had changed from the operative complaint, failed to exclude African Americans, and created questions about members' entitlement to recommendations from CTI schools; and, while the Court questioned whether there may be circumstances under which it could certify a lost opportunity class that included non-applicants, Hr'g Tr. at 33–34, the Court ultimately found it "difficult to certify a class that includes individuals who voluntarily chose not to apply for a controller position or withdrew their application after successfully obtaining an offer."  *Id.* at 49.

Plaintiffs timely filed a Motion to Amend their Complaint.  ECF No. 87.  Plaintiffs' revised class definition excluded African Americans and class members whose academic records stated they were ineligible for a recommendation from their school.  Plaintiffs addressed the Court's concern about non-applicants or withdrawn applications in two ways.  First, persons who had received an offer and thus may have withdrawn their application were excluded from the class. Second, Plaintiffs further elaborated the burden and hurdles associated with the AT-SAT test and proposed to use CTI graduates' taking and passing of the AT-SAT as a proxy for their intent to apply to an ATC position.  Rejected Compl., ECF 87, ¶ 100.  Plaintiffs' invocation of the proxy was based upon case law holding that non-applicants may state claims if they can demonstrate their intent to apply and that they were deterred as a result of the employer's conduct.  *Intern'l Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 363 (1977); *Milton v. Weinberger*, 645 F.2d 1070, 1078 (D.C. Cir. 1981).  Plaintiffs expected discovery to show that the FAA's conduct figured prominently in any decision not to apply.

That Plaintiffs' proposed proxy was later rejected does not, as the FAA argues, imply the definition was created in bad faith or that Plaintiffs willfully disregarded the prior ruling. Moreover, Plaintiffs' effort to provide remedies for deterred applicants does not require overriding the general rule that leave to amend should be freely granted.  *See Caribbean Broad. System*, 148 F.3d at 1083–84 (reversing district court's refusal to allow amendment even though defendant argued that plaintiff "had already failed 'in five attempts encompassing this case and others' to file a proper complaint" and case had been pending more than three years); *see also Connecticut v. U.S. Dept. of the Int.*, 363 F. Supp. 3d 45, 50 (D.D.C. 2019) (remarking that even though "Plaintiffs' motion appears to be the product of tactical timing more than newly discovered

information or legal theories, allowing the case to proceed would not unduly prejudice Defendants.").

Plaintiffs submitted the current PAC 4, squarely addressing each of the concerns in the April 5, 2020 Order. Plaintiffs narrowed the scope of potential class members, limiting the class to a subset of CTI graduates who actually applied for ATCS positions during the 2014 vacancy announcement. PAC 4 ₱ 175. Moreover, PAC 4 more clearly delineates between the relief afforded under different subparts of Rule 23(b) and restructures the pleading to more clearly and fully reflect the background of this case. PAC 4 ¶¶ 11–134, 175. Finally, with the voluntary dismissal of the previously consolidated *Johnson* case, this case may now proceed without the allegation of conflict and with greater procedural efficiency.

## III.    PLAINTIFFS' DISQUALICATION CLAIM IS NOT FUTILE

From their first informal EEO counseling through the present, Plaintiffs have alleged that the FAA violated Title VII when, with discriminatory intent, it struck the qualified status each Class member had earned and prioritized biographical considerations over merits, thereby arbitrarily disqualifying Class members from employment. The FAA, which has already tested Plaintiffs' disqualification claim with a motion to dismiss, now argues that Plaintiffs' claim is futile.[4] When the proper burdens and standards are applied, however, Plaintiffs' claim still stands.

As explained above, the FAA bears the burden of showing that the proposed amendment is improper. The asserted futility of an amendment is evaluated under the 12(b)(6) standard for a

---

[4] Having already tested Plaintiffs' claim through a Rule 12(b)(6) motion to dismiss, the FAA should be precluded by Rule 12(g) from raising 12(b)(6) objections or defenses that were available in 2016. *See* Fed. R. Civ. P. 12(g); WRIGHT, MILLER, & KANE *supra* § 1388 ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment").

motion to dismiss, for which the FAA also bears the burden.[5]  *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 57 (D.D.C. 2012) (quoting *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215–16 (D.C. Cir. 2010)). Under the federal rules notice system, "all that is required is a 'short and plain statement of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.'") *Caribbean Broad. Sys,* 148 F.3d at 1085–86 (quoting *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983)).  Further, "[w]hile an employment discrimination plaintiff must 'plead sufficient facts to show a plausible entitlement to relief,' he is 'not required to plead every fact necessary to establish a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss.'"  *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 322 (D.D.C. 2016) (quoting *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015) (quoting *Jones v. Air Line Pilots Ass'n*, 642 F.3d 1100, 1104 (D.C. Cir. 2011))); *Rodriguez v. Donovan*, 922 F.Supp.2d 11, 17 (D.D.C. 2013); Opp'n at 27 ("plaintiffs are not inherently required to establish a *prima facie* case at the pleading stage").

## A.    Plaintiffs Have Alleged an Adverse Employment Action

The FAA's assertion that Plaintiffs have not alleged an adverse employment action is myopic and erroneous.[6]  Stated most simply, the FAA refused to hire Class members, and refused

---

[5] Despite the applicability of a Rule 12(b)(6) standard, the FAA girds its motion with 39 exhibits, consisting of over a ream of paper. The FAA's effort to convert its opposition to amend a complaint into a motion for summary judgment is improper and should be denied.  Should the Court be inclined to consider any of the exhibits appended to the FAA's motion other than Plaintiff Brigida's *complete* EEO complaint (including attachments), Plaintiffs request that the FAA's motion be denied or deferred and that Plaintiffs be afforded the opportunity to test the FAA's factual assertions and characterizations through discovery.

[6] Further, the "adverse employment action" requirement is designed to weed out assertions of "purely subjective injuries," bruised egos, and common minor irritations suffered by employees that are not fit for judicial resolution from the sorts of claims alleging tangible harm that Title VII is equipped to redress. *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.D.C. 2002); *Burlington*

to even fully consider Class members' validated qualifications. Failure to hire is a classic adverse employment action. *Douglas v. Donovan*, 559 F.3d 549, 552–53 (D.C. Cir. 2009).

The FAA's argument that stripping Class members of hiring "preferences" cannot be an adverse employment action is sophistry. Opp'n at 21. The purpose of Title VII is to enforce the American promise that people will be evaluated on their merit and qualifications, and not for the color of their skin. *See Figueroa v. Pompeo*, 923 F.3d 1078, 1082–83 (D.C. Cir. 2019) ("Title VII . . . reflects the American promise of equal opportunity in the workforce . . . ."); *Harding v. Gray*, 9 F.3d 150, 151 (D.C. Cir. 1993). Plaintiffs' claims center on the fact that they took and passed FAA-validated tests, attended and graduated from FAA-partnered college programs, and had met other requirements that demonstrated they were qualified or well qualified for ATC positions. The "preference" that Class members benefited from was the FAA's preference to hire based on qualifications and experience. That is *exactly* the sort of hiring "preference" Title VII was meant to enforce. *Harding*, 9 F.3d at 153–54 ("A rational employer can be expected to promote the more qualified applicant over the less qualified . . . . And when an employer acts contrary to his apparent best interest in promoting a less-qualified minority applicant, it is more likely than not that the employer acted out of a discriminatory motive.").

The FAA seeks to evade the presumptive conclusion that Plaintiffs suffered an adverse employment action by refusing to consider the 2014 hiring process as a whole, and rather insisting each step in the process be evaluated in isolation. Under the FAA's version of facts, it became aware of deficiencies in the old hiring process. It abandoned the old hiring process. It developed a new hiring process. It then launched a new job opening. Using these separate boxes, the FAA

---

*Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998). The FAA's disqualification of the Class members and refusal to hire them are not the sort of trifles *Forkkio* and *Burlington* were concerned about.

contends Plaintiffs were not harmed when their qualifications were eliminated.  But futility and a motion to dismiss are not evaluated according the defendant's characterization of the facts.

Plaintiffs have alleged that there was an ongoing campaign within the FAA to reduce or eliminate the allegedly overly white CTI pipeline so that more African Americans would be hired, PAC 4 ¶¶ 35–102, and this campaign was ultimately successful during the 2014 hiring event, PAC 4 ¶¶ 118, 126, 130.  The FAA's entire objective was to erect hurdles to hiring Class members so African Americans with less relevant training and lower test scores could be hired. Plaintiffs' AT-SAT scores and other qualifications weren't purged in a vacuum; they were purged because the FAA did not like the racial make-up of the qualified CTI graduates, and the FAA did not want Class members' qualifications to prevent lesser qualified African Americans from being hired. Additionally, the FAA had been refusing to fill existing ATC vacancies, allowing demand to build up while the FAA found a way to block the Class from filling the vacancies.  PAC 4 ¶¶ 38–39, 77. Thus, it is not just that the FAA struck Class members' qualifications and test results that must be considered—it is when, why, and how it was done.

The Supreme Court's holdings in *Ricci v. DeStefano*, and that case's parallels to this one, are instructive.  In *Ricci*, a fire department had positions open for promotion, used a valid standardized test to rank applicants, allowed applicants to study and prepare for the test, administered the test, then discarded the results when the results of the test disproportionately favored white applicants.  *Ricci v. DeStefano*, 557 U.S. 557, 563–74 (2009). The Supreme Court held that the fire department's conduct, upsetting the legitimate expectations of those who likely would have been promoted, and its racial motive for doing so, violated Title VII. *Id.* at 592–93.

Here, the FAA had created a backlog of open ATC positions, PAC 4 ¶¶ 38–39, 77, used a valid standardized test for selecting ATC applicants, PAC 4 ¶¶ 29–34, allowed the ATC applicants

to study and prepare for the test, PAC 4 ¶ 26, then discarded the results when the results disproportionately favored white applicants. PAC 4 ¶¶ 55–56, 62, 68, 74, 80–82, 90, 105–07. Just as in *Ricci*, Class members were likely to be hired and had legitimate expectations that the FAA would adhere to its test results, but the FAA abandoned the results for racial motives. PAC 4 ¶¶ 23, 27–28, 35, 38–39, 47–54, 77, 80–82, 92, 98, 100, 113. The FAA's race-based striking of Class members' test results was an adverse employment action. The FAA could easily have left the CTI hiring, the AT-SAT scores, and/or the qualified and well qualified status of the Class in place while simultaneously expanding hiring sources.

In the D.C. Circuit, "an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Czekalski v. LaHood*, 589 F.3d 449, 454 (D.C. Cir. 2009) (quoting *Forkkio*, 306 F.3d at 1131). Plaintiffs allege that Class members were prequalified and more likely to be hired than general public applicants with similar test scores; an allegation that is borne out by the FAA's statistical data and has been acknowledged by CTI schools, the NBCFAE, and the FAA itself. PAC 4 ¶¶ 23, 48–54, 80–81, 110, 113.[7] Plaintiffs have fully alleged that the FAA's elimination of Class members' test scores and qualified status had materially adverse consequences— preventing Class members from being hired.

_____

[7] At a minimum, Plaintiffs adequately allege adverse employment action. To the extent that the FAA asserts, as a factual matter, that striking Plaintiffs' test results and qualifications could not have material adverse consequences, Plaintiffs disagree and request discovery to controvert the FAA's factual conclusion.

**B.    Plaintiffs Have Alleged They Were Harmed Because of Their Race**

PAC 4 also alleges that this adverse employment action was taken because of Class members' race. PAC 4 ¶¶ 12–13, 55–56, 60–62, 67–68, 74, 80–83, 85–86, 89, 92, 98, 100, 111, 113–14, 118–121, 126, 130, 150–51, 189. The FAA correctly states that to satisfy this requirement in the context of a reverse discrimination suit, Plaintiffs must plead "additional background circumstances" supporting an inference that the employer took the unusual step of discriminating against a majority. Opp'n at 27.[8]  The FAA fails to acknowledge, however, that the same case they rely on for this standard also provides that the burden is minimal. *Mastro v. Potomac Elec. Power Co.,* 447 F.3d 843, 852 (D.C. Cir. 2006) ("[T]he burden for demonstrating 'background circumstances' sufficient to sustain a prima facie case of reverse discrimination is minimal, in keeping with our belief that the requirement is not intended to be 'an additional hurdle for white plaintiffs,' and the general understanding that the plaintiff's burden of establishing a prima facie case of discrimination under the *McDonnell Douglas* framework is 'not onerous.'") (quoting *Harding*, 9 F.3d at 154; *Texas Dep't. Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

As previously explained in Section III(B), *supra*, there is a long history of interest groups putting pressure on the FAA to do away with CTI prequalification specifically to hire more African Americans and a long history of the FAA HR and CR offices working closely with those interest groups to mold policy. PAC 4 ¶¶ 55–102, 111–13. This, combined with the "fishy" circumstances under which CTI applicants were informed that their qualified status had been purged, likely for the benefit of less qualified African Americans, PAC 4 ¶¶ 11–13, 55–132, satisfies the "background circumstances" requirement necessary to plead a reverse discrimination claim. *See*

---

[8] Plaintiffs' class, of course, consists of more than white or Caucasian members and the harm and intent for all non-African Americans has been alleged.

*Mastro,* 447 F.3d at 851–52 (finding "political pressure to promote a particular minority because of his race, pressure to promote minorities in general, and proposed affirmative action plans" or evidence that plaintiff was given "little or no consideration" for a promotion sufficient background circumstances) (citing *Bishopp v. District of Columbia*, 788 F.2d 781, 787 (D.C. Cir. 1986); *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C.Cir.1983)); *Harding v. Gray*, 9 F.3d 153–54 ("[I]f a more qualified white applicant is denied promotion in favor of a minority applicant with lesser qualifications, we think that in itself raises an inference that the defendant is 'that unusual employer who discriminates against the majority.'") (quoting *Parker v. Baltimore & O. R. Co.,* 652 F.2d 1012, 1016 (D.C. Cir. 1981)).[9]

### C.    The Proposed Class is Not Overbroad and Satisfies Rule 23

The FAA's arguments that the proposed class is overbroad misapprehend Plaintiffs' allegations, ignore the scope of harm inflicted by the 2014 hiring process, and demonstrate the need for discovery. Opp'n at 33–34. The FAA contends that only the persons whose records show they were a CTI qualified applicant and would have been eligible for a CTI-only vacancy announcement as of early 2014 were harmed. Not so.[10]  For example, the FAA makes much of the

_____

[9] The FAA also argues Plaintiffs have not stated a claim for the purging of their qualifications because they failed to state a related disparate impact claim and failed to exhaust claims related FAA actions in 2012–2013. Opp'n at 30–33. Plaintiffs' disparate impact claim is limited to the facially neutral BA. Further, events of 2010–2013 are context, "background circumstances," and corroborating evidence of the discrimination-infused 2014 hiring process, not separate claims.

[10] The FAA's assertion that persons whose AT-SAT scores had expired or whose files did not include a recommendation could not have been harmed serves largely as the basis for their motion to strike the class allegations. Opp'n at 34–37, 44. This assertion assumes certain facts about the operation of the CTI program and CTI eligibility that Plaintiffs deny and request to be permitted to test in discovery. The FAA's assertion that qualified and well-qualified Class members may have a conflict also assumes facts that Plaintiffs believe can be refuted in discovery and/or addressed in a subclass. The FAA's opposition to the class is premature and Plaintiffs request discovery to show that the harm inflicted included, for example, those with expired AT-SAT scores

fact that some AT-SAT scores may have expired by early 2014 and claims those individuals could not have applied for a CTI-qualified vacancy.  In reality, the FAA had an established and simple process for extending CTI-qualified eligibility, including allowing CTI graduates to retake the AT-SAT if their score had expired. *See* AT-CTI Management Guide, ECF 73-2, at 9–10.[11] Many potential Class members who would have been able to extend their CTI-eligibility into early 2014 may have been dissuaded from doing so as a result of the FAA's slow-down in hiring in 2012–2013, the FAA's increasing hostility toward the CTI program, or the FAA's announcement that it would not issue a CTI-only vacancy. Such potential class members were harmed because they lost the ability to extend and benefit from their CTI eligibility.

Similarly, as discussed at the class certification hearing, actual receipt of a letter of recommendation from a CTI school is not an appropriate requirement for membership in the class because the FAA informed CTI institutions that they should not bother to submit recommendations and had stopped recording recommendations.  Hr'g Tr. 9–13; PAC 4 ¶ 176. Because the proposed class excludes those whose academic records reflected their ineligibly for a recommendation, but for this directive from the FAA, the members of the proposed class would have received letters of recommendation.  PAC 4 ¶ 176.

Plaintiffs propose a class that includes individuals who were and who could have been CTI-qualified in early 2014 *but for* the discriminatory actions the FAA had already taken. Each of these individuals is similarly situated and was similarly harmed.

---

and the recent graduates whose recommendations had not been recorded and to show the commonality between qualified and well-qualified Class members.

[11] Plaintiffs cite this document only to demonstrate that the FAA's characterization of facts is not complete and to illustrate the need for discovery. Plaintiffs do not consent to the FAA's opposition to a motion to amend being converted to a summary judgment proceeding. Discovery is necessary before the merits of this matter may be determined.

## IV.    THE BIOGRAPHICAL ASSESSMENT CLAIM IS NOT FUTILE

As explained above, the BA issues have been within the scope of this matter from its inception. Largely relying on its argument to the contrary, the FAA argues that the new BA claim was not exhausted[12] and has not been adequately pleaded, making the claim futile. The BA was well within the bounds of Plaintiffs' administrative case, is adequately stated, would withstand a Rule 12(b)(6) motion, and should proceed.[13]

### A.    The Biographical Assessment Claims Were Exhausted

One of the FAA's many errors in arguing that Plaintiffs have not exhausted claims related to the BA is that futility is evaluated under the Rule 12(b) standard for a motion to dismiss, *Driscoll*, 42 F. Supp. at 57 (quoting *Interbank*, 629 F.3d at 215–16), and failure to exhaust administrative remedies is an affirmative defense for which the defendant bears the burden of proof. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 174 (D.D.C. 2016) (since Title VII exhaustion requirements were "properly viewed as affirmative defenses," "the defendant bears the burden of pleading and proving" them) (quoting *Bowden*, 106 F.3d at 437)). The FAA "simply moved to dismiss without identifying allegations in the complaint that effectively conceded a failure to exhaust" and is thus

---

[12] The FAA does not raise exhaustion with regard to Plaintiffs' disparate treatment claim related to the CTI purge and Plaintiffs do not assert disparate impact claim regarding the purge. Plaintiffs therefore respond only to the argument that they failed to exhaust claims related to the BA.

[13] *See Tolton v. Day*, No. 19-945, 2020 WL 2542129, at *25 (D.D.C. May 19, 2020) ("To prevail on a disparate impact claim, a plaintiff must eventually proffer 'statistical evidence that the [allegedly discriminatory] practice or policy has an adverse effect on the protected group.' This does not mean, however, that the complaint must itself include statistical evidence in order to survive a motion to dismiss.") (quoting *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't. Housing & Urban Dev.*, 639 F.3d 1078, 1085–86 (D.C. Cir. 2011); *Menoken v. McGettigan,* 273 F. Supp. 3d 188, 199–200 (D.D.C. 2017) (denying a motion to dismiss a disparate impact claim that included no statistical evidence and noting that "Plaintiff will now have to . . . come forward with the necessary statistical evidence").

not "entitled to prevail at this stage of the proceeding." *Achagzai*, 170 F. Supp. 3d at 174–75; *see Jones v. Mukasey*, 565 F. Supp. 2d 68, 74 (D.D.C. 2008) (exhaustion as an affirmative defense, can be invoked in a Rule 12(b)(6) motion "if the complaint somehow reveals the exhaustion defense on its face," but only if concession is "apparent on the face of the complaint.").

In any event, the exhaustion defense fails because Plaintiff Brigida did exhaust all claims asserted in PAC 4. As set forth above, beginning with the filing of his formal EEO Complaint and continuing to the present, Plaintiff Brigida has consistently claimed he was harmed by the FAA's institution of the BA. These facts distinguish this case from the vast majority of exhaustion cases cited by the FAA where either no facially neutral policy was at issue or the plaintiff had merely "checked the box" in their administrative proceeding.

Contrary to the FAA's assertions, "[a] plaintiff need not use any talismanic language in an EEO complaint" in order to satisfy Title VII's exhaustion requirement. *Vick v. Brennan*, 172 F. Supp. 3d 285, 298 (D.D.C. 2016). Instead, what is required for exhaustion is that the claim be "like or reasonably related to the allegations of [an EEO complaint] and growing out of such allegations," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotations omitted), or arise from "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* Regardless of the precise written form Plaintiffs' claims have taken, the allegations have always referenced the FAA's entire course of conduct in soliciting and publishing the Barrier Analysis, eliminating the hiring preference for CTI graduates, and instituting a racially biased screening mechanism, the BA. Even if the Court credits the FAA's argument that Plaintiffs' claim against the BA is new, such a claim is clearly "reasonably related

to the allegations" in the formal EEO Complaint and should have been reasonably expected to arise out of the investigation into those allegations.[14]

The main purposes of Title VII's exhaustion requirement are "'to give federal agencies an opportunity to handle matters internally whenever possible,' and to impose on employing agencies 'the opportunity as well as the responsibility to right any wrong that it might have done.'" *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) (quoting *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985)). Plaintiff Brigida satisfied these objectives both for disparate impact and disparate treatment claims.

### B.    Plaintiffs Have Adequately Pleaded the Biographical Assessment Claims

Finally, the FAA once again disregards the strictures and limitations of Rule 12(b)(6) when it argues that Plaintiffs fail to "plausibly" state a claim regarding the BA. The FAA mistakenly asserts that the proposed amendment does not allege that the BA failed non-African Americans at a higher rate than African Americans, Opp'n at 41, but PAC 4 does allege that use of the BA resulted in lesser qualified African American applicants hired in lieu of—at the expense of—more qualified Class members. PAC 4 ⁋ 11–13, 68–69, 73, 77, 80–83, 86–87, 89, 92, 95, 98, 102, 105–09, 111, 113–32. These allegations meet the requirements for stating a disparate impact claim.

The FAA cites to the Second Circuit case *Teal v. Connecticut* for the proposition that individual steps causing disparate outcomes cannot support a disparate impact claim where statistical data do not show a clear overall disparity in the final completed process.  Opp'n at 42 (citing 645 F.2d 133, 138 (2d Cir. 1981), *aff'd on other grounds*, *Connecticut v. Teal*, 457 U.S. 440 (1982)). But the FAA misreads *Teal*, which actually reversed a lower court decision making almost the same argument the FAA is making now. *See Teal*, 645 F.2d at 136–37 ("Since the

---

[14] Plaintiffs request that they be permitted to have discovery on the scope of the FAA's response to the administrative claim and be permitted to provide other evidence demonstrating the scope of the administrative proceeding before the FAA be allowed to prevail upon this affirmative defense.

results of the entire selection procedure actually were more favorable to the black candidates than to the white applicants, Judge Daly dismissed the plaintiffs' action for failure to prove a prima facie case.").  The plaintiffs in *Teal* sued the State of Connecticut for disparate impact and disparate treatment over the use of a written examination, failure of which rendered each of the plaintiffs ineligible for promotion.  *Id.* at 135–37.  The Second Circuit reversed the lower court's determination that, because the statistical outcome overall was more favorable to black applicants than white applicants, no disparate impact could be shown. *Id.* at 140.  In affirming, the Supreme Court made it a point to state that the "principal focus of [Title VII] is the protection of the individual employee, rather than the protection of the minority group as a whole" and that when a discriminatory examination functions as a barrier to consideration, the fact that subsequent processes may result in overall outcomes where no statistical disparity can be measured does not shield the employer from disparate impact liability for the discriminatory barrier examination. *Connecticut v. Teal*, 457 U.S. at 453–55.

Here, Plaintiffs allege that the BA disproportionately benefited African Americans at the expense of non-African Americans.  That non-African Americans still made up a sizeable majority of overall "bottom line" ATCS hires has no bearing on whether the FAA discriminated against the many qualified and well-qualified non-African American applicants who were never considered for a position because they failed a BA deliberately designed to advance African Americans in their place.  Following the opportunity for discovery, statistical analysis properly focused on equally qualified cohorts will bear this out, and this issue cannot be resolved under the Rule 12(b) standard. No amount of conclusory protestations that the FAA was simply trying to "level the playing field," Opp'n at 43, can change the fact that Plaintiffs were denied the opportunity to compete for jobs as air traffic controllers because they failed a race-biased hiring process.

**CONCLUSION**

Plaintiffs respectfully request that the Court grant this motion for leave to amend and deny the FAA's motion to strike class claims.

DATED this 26th day of June 2020.

Respectfully submitted,

*/s/ Zhonette M. Brown*

Zhonette M. Brown, D.C. Bar No. 463407
David C. McDonald, D.C. Bar No. CO0079
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
zhonette@mslegal.org
dmcdonald@mslegal.org

Michael W. Pearson, D.C. Bar No. 997169
CURRY PEARSON & WOOTEN PLC
814 West Roosevelt St.
Phoenix, Arizona 85007
(602) 258-1000
mpearson@azlaw.com

*Attorneys for Plaintiff and Putative Class Counsel*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 26th day of June 2020, I caused a true and correct copy of the

foregoing to be electronically filed with the Clerk of the Court using the Court's CM/ECF system

which sent notification of such filing to the following counsel of record in this matter:

Michael L. Drezner
*Michael.L.Drezner@usdoj.gov*

Galen Nicholas Thorp
*galen.thorp@usdoj.gov*

/s/ Meri Pincock
Meri Pincock
MOUNTAIN STATES LEGAL FOUNDATION