# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
ANDREW J. BRIGIDA, et al.,                )
                                          )
                    Plaintiffs,           )
                                          )
            v.                            )        Civil Action No. 16-cv-2227 (DLF)
                                          )
ELAINE L. CHAO, Secretary, U.S.           )
Department of Transportation,             )
                                          )
                    Defendant.            )
_____)


## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS CLAIM

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.    Plaintiffs' "Disqualification" Class Claim Should Be Stricken. ......................................... 3

     A.    Plaintiffs' Disqualification Claim Again Fails to Allege a Plausible
           Adverse Employment Action. .................................................................................. 4

     B.    Plaintiffs Have Not Plausibly Alleged That Their Alleged
           "Disqualification" Constituted Intentional Discrimination Against Non-
           African Americans. ................................................................................................... 9

     C.    Despite Repeated Opportunities to Allege a Class Claim That Can Satisfy
           the Mandatory Prerequisites for Class Certification, Plaintiffs Still Do Not. ........ 12

II.   Plaintiffs' Biographical Assessment Class Claim Should Be Stricken. ........................... 16

     A.    Mr. Brigida Did Not Administratively Exhaust a Challenge to the
           Biographical Assessment. ....................................................................................... 17

     B.    Plaintiffs Have Not Plausibly Alleged a Disparate Impact or Disparate
           Treatment Claim With Respect to the Biographical Assessment. ......................... 20

III.  Defendant's Exhibits Are Appropriate at This Stage of the Case. .................................. 22

CONCLUSION ........................................................................................................................ 25

**INTRODUCTION**

The Federal Aviation Administration (FAA) has demonstrated that Plaintiffs' motion for leave to amend the complaint should be denied on numerous grounds. In the alternative, the FAA has moved to strike Plaintiffs' class claims.[1] Plaintiffs' newest proposed complaint generally alleges two discriminatory actions: (1) the loss of CTI-only vacancy announcements (challenged as disparate treatment), and (2) the use of the 2014 Biographical Assessment (BA) (challenged as disparate treatment and disparate impact). The first claim fails because it does not challenge an adverse "personnel action" against applicants or employees. That is, potential applicants are not entitled to the indefinite continuation of a certain hiring process, and thus cannot bring a Title VII claim merely because the process changes. In addition, Plaintiffs have also failed to plausibly allege that the FAA's seeking to assess and lower barriers to equal opportunity constituted intentional discrimination against non-African Americans. Finally, Plaintiffs' putative class again includes those who could not be injured by this change in the hiring process, as the class includes members whose eligibility for such CTI-only vacancy announcements had long expired or who were ineligible because they were not recommended by their CTI school—precluding certification of this claim under Rule 23.

Plaintiffs' second claim, concerning the use of the 2014 BA, also fails because they did not exhaust administrative remedies by challenging to the BA in the administrative process. Mr. Brigida and his counsel expressly chose not to raise such a claim and have repeatedly asserted that

---

[1] This brief addresses Defendant's Cross-Motion to Strike Class Claims because the Local Rules grant a reply on that cross-motion. *See* LCvR 7(d); *see also* Minute Order, May 22, 2020. While this cross-motion is brought under Fed. R. Civ. Proc. 23 and Local Rule 23.1, the relevant substantive standard is essentially the same as the standard for denying leave to amend—both are appropriate where Plaintiffs have failed to state a claim upon which relief can be granted under Fed. R. Civ. Proc. 12(b)(6). *See Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72, 80 (D.D.C. 2018); *In re McCormick & Co.*, 217 F. Supp. 3d 124, 140 (D.D.C. 2016). Accordingly, this reply is relevant to the pending Motion for Leave to Amend as well.

no such claim is brought in this case. The disparate impact challenge to the BA is not only unexhausted but also fails to allege the basic claim that the assessment actually had a disparate impact on non-African Americans, *i.e.*, that it excluded a higher proportion of non-African Americans than it did of African Americans. And the disparate treatment claim fails because it likewise cannot assert a *prima facie* case by distorting the FAA's efforts to comply with Title VII and Equal Employment Opportunity Commission (EEOC) regulations into evidence that the FAA is the unusual employer that discriminates against the majority.

In sum, both of Plaintiffs' putative class claims should be stricken under Federal Rule of Civil Procedure 23(d)(1)(D) and LCvR 23.1.

## ARGUMENT

For reasons set forth in Defendant's opposition to Plaintiffs' Motion for Leave to Amend, Plaintiffs are not entitled to this belated opportunity to cure pleading defects the Court highlighted in September 2019, *see* Def.'s Br. at 14-19,[2] especially because they do not identify relevant facts and legal theories which they could not have set forth in the last round of briefing on amendment, or indeed years earlier.[3] However, if the Court decides to permit amendment, both of Plaintiffs'

---

[2] Plaintiffs fail to confront the FAA's argument and citation of more than twenty cases supporting denial of amendment where prior opportunities to amend did not cure deficiencies, especially those specifically identified by the court. *See* Def.'s Br. at 14-19. Ignoring all of that caselaw and reasoning, Plaintiffs exclusively cite cases addressing the circumstances under which prejudice and/or delay provide freestanding bases to deny amendment—which are not the grounds upon which the FAA relies. *See* Pls.' Reply at 8-12. While the FAA highlighted the years-long delay caused by Plaintiffs' tactical choices here, and the prejudice to Defendant and the Court in terms of the use of resources, courts act well within their discretion to deny amendment where prior opportunities did not cure known defects—in part due to the burden that such gamesmanship imposes on courts and other litigants. *See* Def.'s Br. at 14-19.

[3] Indeed, Plaintiffs' current justification for their tactical choices did not appear in the last round of brief. *See* Pls.' Reply at 12 (asserting their "invocation of the proxy [theory] was based on caselaw holding that non-applicants may state claims if they can demonstrate their intent to apply and that they were deterred"). Plaintiffs prior proposed complaint never alleged that AT-SAT takers were deterred from applying, *see* ECF No. 87-1, nor did Plaintiffs mention deterrence in

class claims should be stricken pursuant to Federal Rule of Civil Procedure 23(d)(1)(D) and Local

Rule 23.1(b).  Where it is clear from the face of a class complaint that Plaintiffs have failed to

allege elements of a claim, *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997),[4] failed to exhaust

administrative remedies, *In re James*, 444 F.3d 643, 647 (D.C. Cir. 2006); *Davito v. AmTrust Bank*,

743 F. Supp. 2d 114, 115-16 (E.D.N.Y. 2010); or otherwise have failed to "state[] a plausible claim

for class-wide relief," *In re McCormick & Co.*, 217 F. Supp. 3d 124, 140 (D.D.C. 2016),[5] it is

appropriate to strike the class claims without discovery.[6]  Here, aspects of Plaintiffs' two putative

class claims fail for each of these reasons and should be stricken.

## I.    Plaintiffs' "Disqualification" Class Claim Should Be Stricken.

In their opposition, Plaintiffs have clarified that they are not asserting any claim relating to

the factual allegations that predate 2014.  *See* Pls.' Reply at 19 n.9.  They have also clarified that

they are not alleging any disparate impact theory under their hiring preference claim, which they

---

their briefing or cite either of the cases they now claim justified their position.  *See* Pls.' Mot.,
ECF No. 87 (never citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) or *Milton
v. Weinberger*, 645 F.2d 1070 (D.C. Cir. 1981)); Pls.' Reply, ECF No. 93 (same).

[4] Hereinafter, internal citations, alterations, and quotation marks are omitted unless otherwise
noted.

[5] Plaintiffs mistakenly cite outdated D.C. Circuit quotations of *Conley v. Gibson*, 355 U.S. 41, 47
(1957), requiring that a complaint simply "give the defendant fair notice," *see* Pls.' Reply at 14,
which is no longer good law.  *See Jones v. Horne*, 634 F.3d 588, 596 n.4 (D.C. Cir. 2011)
(holding that the "Supreme Court abrogated the *Conley* formulation in *Bell Atlantic v. Twombly*,
550 U.S. 544, 562-63, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)").

[6] While Plaintiffs repeatedly allege that they need discovery, *see, e.g.*, Pls.' Br. at 14 n.5, 17 n.7,
19 n.10, 20 n.11, 23 n.14, 24, they do not show that discovery is actually required to respond to
the FAA's threshold arguments raised in this motion.  *See, e.g.*, *Patzy v. Hochberg*, 266 F. Supp.
3d 221, 225 (D.D.C. 2017) (declining to reconsider dismissal of Title VII claim based on
"evidence [plaintiff] may obtain during discovery" where "allegations in the complaint [did not]
establish at least an inference of [the relevant] connection"); *Patrick v. Dist. of Columbia*, 179 F.
Supp. 3d 82, 89 (D.D.C. 2016) ("[B]y arguing that he requires discovery at the motion-to-
dismiss stage, Mr. Patrick essentially concedes that his allegations against the District are based
on speculation.").

now call their "disqualification" claim.  *See id.*[8]   Rather, those factual averments are just

"background evidence."  *Cf. Drewrey v. Clinton*, 763 F. Supp. 2d 54, 62 (D.D.C. 2011).  Even

with these concessions, Plaintiffs' class claims are futile and should be stricken under Rule 23.

The FAA has shown that Plaintiffs' "disqualification claim," Pls.' Reply at 13, fails to state

either element of a Title VII claim and creates insuperable problems for certification of a class

under Rule 23.  *See* Def.'s Br. at 19-29, 33-38.[9]

**A.    Plaintiffs' Disqualification Claim Again Fails to Allege a Plausible Adverse Employment Action.**

Though Plaintiffs seek to lump all of their allegations together, Title VII requires that

Plaintiffs clearly identify the federal agency's "personnel action[s]" which are allegedly

discriminatory.  *See* 42 U.S.C. § 2000e-16(a); *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C.

---

[8] Plaintiffs' clarification, in fact, abandons the plain text of their newly proposed complaint. *Compare* Pls.' Reply at 7 n.3 ("Plaintiffs assert disparate impact only with respect to the BA[.]"); *id.* at 19 n.9 ("Plaintiffs' disparate impact claim is limited to the facially neutral BA."); *with* Proposed Compl. ¶ 187.b, ECF No. 99-1 (alleging common question of "[w]hether the FAA's decision to eliminate or purge Class members' pre-qualified hiring status, including their prior AT-SAT score, . . . had a disparate impact"); *and id.* ¶ 211 ("Defendant intentionally and/or *effectively discriminated* against Plaintiff Brigida and all members of the Class and violated Title VII of the Civil Rights Act by refusing to fully and fairly consider for hiring and/or refusing to hire Class members because of those applicants' race.") (emphasis added).  That Plaintiffs seek to alter their proposed complaint, yet again, in the midst of moving to amend, is further reason to reject the motion.

[9] Plaintiffs mistakenly suggest that the FAA is pressing dismissal arguments that were available when the FAA first moved to dismiss in 2016.  *See* Pls.' Reply at 13 n.4.  The FAA's cross-motion to strike is made under Rule 23.  *See* LCvR 23.1.  And regardless, Plaintiffs' current hiring preference claim rests on a different foundation than it did in their Second Amended Complaint.  *See* 2d Am. Compl. ¶ 31, ECF No. 26 (alleging that "graduates from CTI programs that passed the validated AT-SAT assessment entered a direct hire pool of applicants [and] were placed on a 'Qualified Applicant Register' List"); *id.* ¶ 52 (claiming that "eliminate[ing] the CTI Applicant Register" caused the putative class to "los[e] their employment preference and opportunity").  Thus, the FAA's current arguments were not "then available."  Fed. R. Civ. P. 12(g); *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 964 (D.C. Cir. 2016); *see also Sierra v. Hayden*, No. 16-1804, 2019 WL 3802937, at *6-7 (D.D.C. Aug. 13, 2019) (addressing judicial discretion to consider additional dismissal arguments where "the problem Rule 12(g) was designed to prevent—unnecessary delay—is not a concern").

Cir. 2008) (using D.C. Circuit's preferred terminology, "adverse employment action"). In support

of their "disqualification" claim, Plaintiffs now advance two candidates: (1) "striking" all pre-2014

AT-SAT scores, and (2) "elimination of Class members' . . . qualified status" by altering the hiring

process to use general hiring announcements and not CTI-only vacancy announcements. Pls.'

Reply at 17. Neither of these is a personnel action.

      First, it is undisputed that CTI graduates were required to apply for controller positions in

order to be considered and that merely taking the AT-SAT test was—at most—"a proxy for their

*intent* to apply for ATC positions." Pls.' Reply at 5 (speculating that "discovery would prove that

. . . every CTI graduate who passed the AT-SAT *eventually applied* to be an ATC") (emphasis

added to both quotes). Plaintiffs insist that "striking" their AT-SAT scores was an adverse

employment action that somehow "disqualified" them from employment, but in fact they all

remained eligible to apply under the 2014 hiring process. *See* Pls.' Reply at 13, 17. Moreover,

because taking the AT-SAT was only one step in the pre-2014 legacy hiring process and actually

applying for a position is what triggers a potential adverse employment action, Plaintiffs did not

suffer any adverse employment action when the FAA revised the hiring process to no longer use

pre-2014 AT-SAT scores.[10] *See Bourdais v. New Orleans City*, 485 F.3d 294, 300 (5th Cir. 2007)

(holding that district court properly dismissed certain plaintiffs who had not completed application

---

[10] Indeed, Plaintiffs' focus on the AT-SAT is a red herring. Under the FAA's pre-2014 legacy
process, putative class members were not "likely to be hired," Pls.' Reply at 17, merely because
they passed the AT-SAT—more than 90% of applicants passed it, whether general public
applicants or CTI students. *See* Proposed Compl. ¶ 53; Def.'s Br. at 8. And the FAA continued
to use "the cognitive portion of the AT-SAT" for all who passed the BA. *See* Proposed Compl. ¶
107. Moreover, no putative class member was affected by the 2014 requirement for those who
passed the BA to retake "the cognitive portion of the AT-SAT," *id.*, because the putative class is
defined to include only those who did *not* pass the BA. Thus, any way one looks at it, the
"striking of Class members' [prior] test results" before they were applicants in order to make
way for the new process is simply not "an adverse employment action." Pls.' Reply at 17.

process and thus "failed to show that they suffered any adverse employment action whatsoever"); *see also Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (holding that an adverse employment action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits").

Similarly, Plaintiffs' "qualified status" for "CTI-only ATCS vacancy announcements," Pls.' Reply at 17; Proposed Compl. ¶ 11, does not give rise to a cognizable personnel action. This is simply another version of Plaintiffs' claim that all potential applicants have a claim when an employer changes a hiring process. Plaintiffs and the putative class suffered no "significant change in employment status," *Taylor*, 350 F.3d at 1293, when the FAA replaced one opportunity to apply with a revised process under which the entire putative class remained eligible to apply. Indeed, Plaintiffs point to no case where a plaintiff stated a Title VII claim based on allegations that an allegedly superior hiring process had been replaced between rounds of hiring.[12]

Instead, Plaintiffs claim that the D.C. Circuit's discussion of "materially adverse consequences" expands the scope of agency decisions that are considered "personnel actions." *See* Pls.' Reply at 17. However, as the FAA previously explained, *see* Def.'s Reply at 6-7, ECF No. 94, that is precisely backwards. The D.C. Circuit adopted the term "materially adverse

---

[12] Plaintiffs also appear to claim that they were "more likely to be hired" under CTI-only announcements and thus the FAA "prevent[ed] Class members from being hired" by not "le[aving] the CTI hiring . . . in place while simultaneously expanding hiring sources." Pls.' Reply at 17. Relative likelihood of selection is not "disqualification." And Plaintiffs' assertions are not supported by their proposed complaint, which acknowledges that there was no guarantee that CTI graduates would be hired under the legacy process, *see* Proposed Compl. ¶ 23; and that many of them (those merely ranked "qualified" by scoring between 70-85 on the AT-SAT, *id.* ¶ 33) were *unlikely* to be hired under the legacy process, *id.* ¶ 53 (citing report finding that "most CTI and general public applicants selected for training scored as well qualified" and less than 25% of CTI applicants ranked "qualified" were hired under pre-2014 process). Moreover, many CTI graduates were selected under the revised process. *See* Def.'s Br. at 29 & Exhibit 11 at 3.

6

consequences" to define what makes an action "adverse" and to clarify that only "personnel actions" that are "adverse" are cognizable under Title VII. *See Brown v. Brody*, 199 F.3d 446, 453-57 (D.C. Cir. 1999) (adopting definition of "materially adverse consequences" in response to a plaintiff's argument that Title VII permitted her to challenge a lateral transfer—plainly a personnel action—regardless of whether it was adverse).[13] To be sure, *Brown* and its progeny conclude that a distinct employment action can be *adverse* (and thus cognizable under the D.C. Circuit's reading of Title VII) where it affects "future employment opportunities," *Czekalski v. LaHood*, 589 F.3d 449, 454 (D.C. Cir. 2009). But Plaintiffs must argue the inverse here, that any action by an employer which affects "future employment opportunities" *becomes a distinct employment action.* As the FAA has previously shown, under this argument, Title VII's requirement to show an employment action would be rendered a virtual nullity. *See* Def.'s Reply at 7, ECF No. 94.[14] But this result cannot be squared with either the language or intent of Title VII. *See* 42 U.S.C. § 2000e-16(a) (limiting Title VII claims to "applicants" and "employees" who suffer a discriminatory "personnel action").

Finally, Plaintiffs insist that they allege a cognizable class claim because the facts in this case are somehow indistinguishable from *Ricci v. DeStefano*, 557 U.S. 557 (2009). *See* Pls.' Reply

---

[13] Although *Brown*'s requirement of an "adverse" employment action is binding precedent, judges have questioned that conclusion, *see, e.g., Ortiz-Diaz v. United States Dep't of Hous. & Urban Dev.*, 867 F.3d 70, 81 (D.C. Cir. 2017) (Kavanaugh, J., concurring), and the position of the United States is that "[u]nder the plain meaning of the statutory text, the discriminatory denial of a job transfer is a 'personnel action[]' cognizable under Title VII's federal-sector provision, 42 U.S.C. 2000e-16(a), even if no change in pay or working conditions results." Cert. Opp'n at 8, *Forgus v. Esper*, No. 18-942 (May 22, 2019) (link). This position has no effect on the FAA's arguments here, because it remains undisputed that a Title VII claim requires an "employment action," or for a federal agency, a "personnel action." *See id.* at 2-3, 8, 10-11, 17.

[14] Indeed, both of the cases Plaintiffs cite involved a clear "personnel action" that was being weighed for whether it had "materially adverse consequences." *See Czekalski*, 589 F.3d at 452 (reassignment of a senior manager); *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (reorganization caused "change from section chief to unit chief").

at 16-17.  They are mistaken.  *Ricci* involved a handful of applicants who were eligible for immediate promotion once the test results were certified.  *See* Def.'s Br. at 24-25.  Here, because (1) taking the AT-SAT was at most a "proxy for an intent to apply" rather than an application, Pls.' Reply at 5, and (2) even applying to a CTI-only vacancy announcement with a passing AT-SAT score—which Plaintiffs acknowledge the putative class had not done—would not have entitled the applicants to selection,[15] this case is entirely distinct from *Ricci*.  Most critically, the FAA did not "refus[e] to accept the outcome" of a hiring process, Proposed Compl. ¶ 11, as the employer did in *Ricci*.  Rather, the FAA decided to overhaul the entire process between two rounds of hiring.  The Second Circuit has in fact made clear, citing *Ricci*, that a generalized overhaul of a selection process by itself, even if intended to improve an employer's compliance with Title VII, is not actionable reverse discrimination in violation of Title VII.  *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 95-96 (2d Cir. 2013).  The Second Circuit noted, that "*Ricci* specifically permits an employer to 'consider[ ], before administering a test or practice, how to design that test or practice in order to provide a fair opportunity for all individuals, regardless of race.'"  *Id.* (quoting *Ricci*, 557 U.S. at 585).  Plaintiffs' brief does not challenge the holding of *Maraschiello* or its application to this case.  *See* Pls.' Reply at 14-18. Thus, Plaintiff cannot state a class claim that the decision to overhaul the selection process—by itself—discriminated against CTI graduates.[16]  Plaintiffs' "disqualification" claim fails at the threshold requirement of a "personnel

---

[15] As discussed above, almost all applicants passed the AT-SAT, *see supra.* n. 9, and the putative class includes those whose scores made them unlikely to be hired under the pre-2014 process, *see supra* n. 10.

[16] It is not clear what Plaintiffs mean by saying their disqualification claim alleges "[f]ailure to hire [a]s a classic adverse employment action" based on the FAA's alleged "refus[al] to even fully consider Class members' validated qualifications."  Pls.' Reply at 14-15.  To the extent that Plaintiffs' appeal for the Court to "consider the 2014 hiring process as a whole," Pls.' Reply at 15, means that Plaintiffs are pointing to the "disqualification" of the putative class by their failure to pass the BA in 2014, *see* Proposed Compl. ¶ 182, then this claim appears to collapse

action." *See Perry v. Donovan*, 733 F. Supp. 2d 114, 119 (D.D.C. 2010) ("Alleged acts of discrimination that do not constitute adverse employment actions fail as a matter of law.").

### B.      Plaintiffs Have Not Plausibly Alleged That Their Alleged "Disqualification" Constituted Intentional Discrimination Against Non-African Americans.

Plaintiffs agree that "in the context of a reverse discrimination suit, they must plead 'additional background circumstances' supporting an inference that the employer took the unusual step of discriminating against a majority." Pls.' Reply at 18. This can be accomplished one of two ways, through showing either that (1) the employer "has some reason or inclination to discriminate invidiously against [the majority]," or (2) there was "something fishy about the facts of the case at hand." *Mastro v. Potomac Electric Power Co.*, 447 F.3d 843, 851 (D.C. Cir. 2006). Plaintiffs cling to the courts' characterization of this requirement as "minimal" in light of the expectation that the "burden of establishing a prima facie case of discrimination under the *McDonnell Douglas* framework is not onerous." *Id.* at 851. But just as many Title VII claims fail for failure to establish a *prima facie* case, Plaintiffs cannot carry their burden here.

First, Plaintiffs have not alleged "evidence indicating that the particular employer at issue has some reason or inclination to discriminate invidiously against whites." *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993). Plaintiffs assert that they have alleged a "long history of the FAA HR and CR offices working closely with . . . interest groups [putting pressure on the FAA . . . to hire more African Americans] to mold policy," which provides the relevant background circumstances. *See* Pls.' Reply at 18. In fact, Plaintiffs have not alleged anything out of the ordinary. The FAA's National Employee Forum included leaders from the National Black

---

into their challenge to the BA. But because Plaintiffs have consistently argued that their hiring preference claim is distinct from their challenge to the BA, the FAA has endeavored to deal with this claim on its own terms. To the extent that the claims are now intertwined, as Plaintiffs suggest, then a deficiency in any of the asserted claims is fatal to the entire proposed complaint. *Cf.* Arg. § II (identifying fatal defects to Plaintiffs' challenge to the BA).

Coalition of Federal Aviation Employees (NBCFAE) and all other FAA employee associations. *See* Proposed Compl. ¶ 101.  There is nothing unusual about keeping an agency's employee associations informed about the process of developing a new hiring process.  *See, e.g.*, 29 C.F.R. § 1614.102(a)(12) (EEOC regulation requiring agencies to "enlist [agency employees'] cooperation" in the agency's "affirmative equal employment opportunity policy and program"); EEOC Mgmt. Directive 715 (MD-715) § II.B (link) (requiring agencies to "[i]nvolve managers and employees in the implementation of the agency's Title VII . . . programs").[17]  Nor is there anything unusual about the FAA answering an employee association's questions about the new process in the days immediately before the new vacancy announcement was issued.  *See* Proposed Compl. ¶¶ 112-113 & ECF No. 72-8.  Moreover, far from suggesting a "long history of the FAA . . . working closely with . . . interest groups to mold policy" to favor African Americans, Pls.' Reply at 18, Plaintiffs' allegations suggest that, despite the NBCFAE's efforts dating back to 2000, African Americans were under-represented in the air traffic control workforce and the FAA did not hire an expert to conduct a barrier analysis until 2012.  *See* Proposed Compl. ¶¶ 55-66.  Most importantly, the FAA's decision to conduct those barrier analyses pursuant to MD-715 and to address identified barriers prospectively, as EEOC regulations call for, *see* 29 C.F.R. § 1614.102(a); MD-715, Part A § IV, by developing a revised hiring process, does not amount to evidence of invidious discrimination.  *Cf. Parker*, 652 F.2d at 1018 n.9 (noting that even where an employer has "a lawful affirmative action program," instead of just a federal sector employer's affirmative employment program mandated by Title VII, "a lawful affirmative action program" would not necessarily "in itself constitute suspicious circumstances" justifying an inference of

---

[17] Title VII requires that federal employers "maintain an affirmative program of equal employment opportunity for all . . . employees and applicants for employment," submit annual reports to the EEOC, and "comply with" EEOC regulations.  *See* 42 U.S.C. § 2000e-16(b).

discrimination).[18]

Nor have Plaintiffs pointed to "evidence indicating that there is something 'fishy' about the facts of the case at hand that raises an inference of discrimination." *Harding*, 9 F.3d at 153. Plaintiffs offer no response and therefore implicitly concede the FAA's showing that the decision to issue general public announcements rather than CTI-only announcements was not problematic, *see* Def.'s Br. at 28, in light of the evidence before the FAA that these announcements might have been barriers to equal opportunity. *See* Proposed Compl. ¶¶ 80-81; Extension to Barrier Analysis at 4-5, 22, 51-52. Nor do Plaintiffs allege that the results of the new hiring process were fishy. *See* Def.'s Br. at 28-29 & Ex. 11 at 5 (showing from a table Plaintiffs themselves rely on that, among the applicants who self-identified their race, non-African Americans received 89.8% of the tentative offers in 2014, while African Americans only received 10.2% of the offers). Instead, Plaintiffs simply allege, without clarification, that the "circumstances under which CTI applicants

---

[18] The employee association's advocacy that Plaintiffs describe from 2008-2014, *see* Proposed Compl. ¶¶ 59-69, has nothing in common with the sort of "political pressure" to promote minorities that courts have recognized can be evidence of an inclination to discriminate against the majority. *See Mastro*, 447 F.3d at 851. In each of those cases, the agency was "in the process of drafting or adopting an affirmative action plan," *id.* at 851 n.4, providing evidence of quota-like selections. For example, in *Lanphear v. Prokop*, 703 F.2d 1311 (D.C. Cir. 1983), the court relied in part on the fact that the head of the agency had recently "issued an affirmative action mandate directing her subordinates to achieve a representative workforce," emphasizing that she was "committed to this result" and would measure managers' performance in this area by "the degree that you successfully achieve the Board's goals in the organizational unit for which you are responsible." 703 F.2d at 1312-13, 1315. Simultaneously, "the MSPB was developing an official affirmative action plan which called for hiring a black male" into the relevant position that quarter." 703 F.2d at 1313, 1315. And in *Bishopp v. Dist. of Columbia*, 788 F.2d 1311 (D.C. Cir. 1986), the D.C. Circuit held that "background circumstances" inferred discrimination against five white males who were not selected as an assistant fire chief in the District of Columbia in 1974 because (1) both the mayor and the fire chief who jointly shared responsibility for the selection were African American, (2) the fire department was in the process of "drafting if not adopting" an affirmative action plan, and (3) one of the plaintiffs testified that the fire chief "had admitted to [the plaintiff] before the selection that [the fire chief] was under pressure from the District's black community to promote" the eventual African American selectee. 788 F.2d at 783, 787.

were informed that their qualified status had been purged" was "fishy." Pls.' Reply at 18. An employer is not required to notify potential applicants before rolling out a new hiring process, and here, where the FAA did in fact do so, there is nothing inherently fishy about the manner in which provided notice—CTI schools were notified of the change in December 2013, two months before the new process was rolled out, *see* Proposed Compl. ¶¶ 104-107; and Plaintiffs allege that individual CTI graduates were also notified in January 2014 of the new hiring process and the need to apply under that process to be considered, *see id.* ¶ 158. *Cf. Fischbach v. Dist. of Columbia Dep't of Corrections*, 86 F.3d 1180, 1184 (D.C. Cir. 1996) (holding that there was "nothing the least bit fishy" about balance of interview questions and that agency made selection "through a reasonable procedure"); *Hairsine v. James*, 517 F. Supp. 2d 301, 307-09 (D.D.C. 2007) (finding "logical and reasonable" selection process did not include anything "fishy" despite plaintiff's claim that managers "should have been more thorough in their review of the applications").

In sum, the facts Plaintiffs allege, even viewed in their most favorable light, do not support the inference that the FAA intentionally discriminated in favor of African Americans by deciding not to issue a CTI-only announcement and adopting the interim hiring process. Accordingly, Plaintiffs have failed to plausibly plead both elements of their "disqualification" claim and cannot certify a class action regarding it.

### C. Despite Repeated Opportunities to Allege a Class Claim That Can Satisfy the Mandatory Prerequisites for Class Certification, Plaintiffs Still Do Not.

The FAA has also shown that Plaintiffs' "disqualification" claim cannot be certified as a class because it includes people who could not have been injured by the unavailability of a CTI-only vacancy announcement in early 2014. *See* Def.'s Br. at 33-38. Plaintiffs do not dispute that this would be fatal to the class claim due to an overbroad class definition, *id.* at 33-34, commonality and typicality, *id.* at 35-36, the homogeneity required for injunctive relief under Rule 23(b)(2), *id.*

at 36-37, and predominance under Rule 23(b)(3), *id.* at 38.

Instead, Plaintiffs argue that they have proposed a class of people "who were and *who could have been* CTI-qualified in early 2014 but for the discriminatory actions the FAA had already taken." Pls.' Reply at 20 (emphasis added). Yet again, Plaintiffs failed to follow this Court's clear instructions to limit any class to only those who were actually injured. Indeed, Plaintiffs acknowledge that their putative class includes people whose "AT-SAT scores may have expired by early 2014." *Id.*[19] But they speculate that these people "may have been dissuaded" from "extending their CTI-eligibility into early 2014" by "the FAA's slow-down of hiring in 2012-2013," the FAA's "hostility to the CTI program," or the FAA's announcement that it would not issue a CTI-only vacancy announcement. *Id.*[20] Yet there is no such allegation in Plaintiffs'

---

[19] Plaintiffs appear to acknowledge the "fact" that AT-SAT scores and CTI eligibility expire unless the CTI graduates complete an extension request process. *See* Pls.' Reply at 20. Plaintiffs, however, seek to avoid the implications of those facts by asserting that the FAA's argument "assumes certain facts about the operation of the CTI program and CTI eligibility that Plaintiffs deny," *id.* at 19 n.10, without ever identifying the specific facts Plaintiffs they deny. Moreover, the FAA's April 2007 policies regarding that requirement and process, which Plaintiffs themselves relied on in their motion for class certification, *see* ECF No. 73-2, are subject to judicial notice. *See infra*, Arg. § III n.27. Regardless, because Plaintiffs concede that AT-SAT scores and eligibility do expire, the Court need not rely on the details of the FAA's policies to recognize that Plaintiffs have again proposed a class including those who could not have been injured for purposes of Plaintiffs' "disqualification" claim.

[20] As Plaintiffs note, *see* Pls.' Reply at 20, the FAA had a process for extending CTI graduates' eligibility beyond the initial three year period from their graduation. *See* AT-CTI Management Guide at PLA0040, ECF No. 73-2 (stating that "a candidate will be removed from the AT-CTI Inventory" if "the candidate was not selected within three years of graduation and did not request or receive approval for an extension of eligibility"). This process required annual reapplication and approval. *See id.* at PLA0049 ("Candidates whose three-year eligibility on the inventory has expired or will expire within 60 calendar days may apply to continue to have their names on the inventory. . . . Candidates may continue to reapply and have their names placed on the inventory in one-year increments after each additional year expires, until they reach the maximum entry age."). But if the extension request came more than three years after the graduate's last AT-SAT, the graduate would need to repass the AT-SAT before an extension could be granted. *See id.* at PLA0050 ("Candidates whose [AT-SAT] test score expires prior to their being granted an extension must take and pass the AT-SAT examination in order to be eligible for an extension.").

proposed complaint, and Plaintiffs provide not a single citation in support of these notions. Such mere speculation cannot support a class which Plaintiffs concede includes members who would have been ineligible for employment. Regardless, even if one could blame the FAA for people's choices to let their eligibility and AT-SAT scores expire in 2013, that does not solve Plaintiffs' problems with class injury. As the FAA has emphasized, the way Plaintiffs have defined their class, it includes people who took the AT-SAT and graduated as early as 2005, let their eligibility lapse in 2008 and have never applied to extend it or retake the AT-SAT. *See* Def.'s Br. at 34. Such putative class members who were ineligible to apply for a CTI-only announcement in 2013 or 2014 cannot blame FAA for their ineligibility, and therefore cannot have been injured under Plaintiffs' "disqualification" claim.

Similarly, Plaintiffs acknowledge that their putative class includes people who did not have "a letter of recommendation from a CTI school." Pls.' Reply at 20. They claim that "actual receipt of a letter of recommendation from a CTI school is not an appropriate requirement" because on January 8, 2014, the FAA told the schools that the recommendations would not be needed under the new process. *Id.*; Proposed Compl. ¶ 176. Yet there is no dispute that a letter of recommendation was required to apply under the legacy hiring process, such that the absence of a letter only further complicates whether a given class member could have been injured by the revised hiring process.

But even accepting that notice of the revised hiring process may have led CTI schools not to submit recommendations for some December 2013 or January 2014 graduates, Plaintiffs still have two substantial problems. First, they make no effort to account for people who graduated from a CTI program long before December 2013 but were not recommended by their school. Second, they have not attempted to distinguish those December 2013 or January 2014 graduates

who would have been recommended from those who would not have been.[22]  In this way, Plaintiffs have again flouted the Court's express concern about disregarding the necessary criterion of being eligible to apply for a CTI-only announcement.  *See* Sept. 13, 2019 Hr'g Tr. at 49:22-23, ECF No. 86 (rejecting Plaintiffs' motion for class certification because it "appears to include individuals who did not actually receive a recommendation from an AT-CTI school").

In sum, it is plain on the face of the proposed complaint that the putative class, once again, includes CTI graduates who could not have been eligible to apply for a CTI-only announcement and who thus could not have been harmed by its replacement with a vacancy announcement to which they were plainly eligible to—and did—apply.  This is fatal to Plaintiffs' proposed class certification.   *See D.L. v. Dist. of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017) ("To certify a class under [Rule 23(b)(2)], a single injunction must be able to 'provide relief to each member of the class.'" (quoting *Wal-Mart*, 564 U.S. at 360); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) (plaintiffs seeking certification under Rule 23(b)(3) "must . . . show that they can prove, through common evidence, that all class members were in fact injured," by a purported legal violation.).

In addition, Plaintiffs' proposed complaint highlights a commonality, typicality, and predominance problem—while some of the named plaintiffs received high AT-SAT scores that

---

[22] While Plaintiffs assert that their complaint "excludes those whose academic records reflected their ineligibility for a recommendation," Pls.' Reply at 20, no such limitation appears in their proposed class complaint.  *See* Proposed Compl. ¶ 182.  Such a limitation did appear in their *prior* proposed complaint, *see* ECF No. 87-1 ¶ 100 ("Excluded from the Class are the few CTI graduates whose academic records as of January 27, 2014 explicitly stated that they were ineligible to receive a letter of recommendation from their CTI school[.]"), but Plaintiffs abandoned that in their newest complaint.  Nor is it clear that such a term would actually distinguish those who would not have been recommended.  Plaintiffs provide no reason to expect that students' academic records would include such notations nor do they identify the grounds upon which CTI schools granted or withheld recommendations.

would have ranked them "well-qualified" under the prior process, *see* Proposed Compl. ¶¶ 33, 154, 175, the putative class includes those who merely passed the AT-SAT with scores as low as 70 and were placed in the "qualified" band. *See id.* ¶ 182. Plaintiffs' own proposed complaint emphasizes that "selections went primarily to those ranked well-qualified," *id.* ¶ 54, and cites one study showing that less than 25% of CTI graduates who fell into the "qualified" band were hired before 2013. *Id.* ¶ 53. Thus, the class defects are plain from the face of the complaint—many putative class members were unlikely to be hired under the prior process, thus may not have been injured by revision of that process, and at any rate do not have the same interests and remedies as those who had a higher chance of being selected under the legacy process. *See* Def.'s Br. at 35-38. In response, Plaintiffs merely speculate that unspecified discovery may somehow help them overcome this obvious problem, claiming that the FAA's argument "assumes facts that Plaintiffs believe can be refuted." Pls.' Reply at 19 n.10 (also suggesting it could be "addressed in a subclass"). But without identifying a single, specific disputed assumption, Plaintiffs cannot rely on unsupported "beliefs" to circumvent defects readily apparent on the face of their complaint. *See Patzy*, 266 F. Supp. 3d at 225 (declining to reconsider dismissal of Title VII claim based on speculation about "evidence [plaintiff] may obtain during discovery"); *see also Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (courts do not "accept inferences that are unsupported by the facts set out in the complaint"); *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008) (jurisdictional discovery must be based on more than "mere conjecture or speculation").

## II.    Plaintiffs' Biographical Assessment Class Claim Should Be Stricken.

Plaintiffs failed to administratively exhaust their new claim challenging the BA on both disparate treatment and disparate impact grounds, and they have not plausibly alleged key elements of those claims. Accordingly, this putative class claim should also be stricken.

### A.    Mr. Brigida Did Not Administratively Exhaust a Challenge to the Biographical Assessment.

The parties agree that Plaintiffs' administrative exhaustion depends on Mr. Brigida's administrative complaint.  *See* Pls.' Reply at 6, 22.[23]  Accordingly, Plaintiffs argue that "Plaintiff Brigida has consistently claimed that he was harmed by the FAA's institution of the BA." *Id.* at 22.  This is not true.

Mr. Brigida did not state a claim in the administrative process regarding the BA and/or a corresponding failure to be hired under the 2014 Vacancy Announcement.  Even though his formal EEO complaint came two months after his unsuccessful application, it (1) never mentioned applying under the 2014 Vacancy Announcement or not passing the BA; (2) focused exclusively on the allegation that "on or about December 20, 2013, the FAA eliminated the CTI Applicant Register or List" causing the putative class to "los[e] their employment preference and opportunity," Brigida EEO Compl. ¶ 29; and (3) stated that he became aware of the challenged actions on dates *before* he applied or learned he did not pass the BA.  *See* Def.'s Br. at 39-40;

---

[23] Plaintiffs also argue that the FAA is not "entitled to prevail at this stage of the proceeding" because the complaint does not "effectively concede [] a failure to exhaust." Pls.' Reply at 21-22 (quoting *Achagazi v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 174-75 (D.D.C. 2016)). However, courts routinely address failure to exhaust at the dismissal stage where it is plain from the face of the complaint or where both parties rest on the plaintiff's EEO filings.  *See Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 6 (D.D.C. 2019) ("When defendants allege that plaintiffs have failed to administratively exhaust their Title VII claims, courts typically resolve the exhaustion question in the context of a Rule 12(b)(6) motion."); *see also Stephens v. Mnuchin*, 317 F. Supp. 3d 413 (D.D.C. 2018); *Terveer v. Billington*, 34 F. Supp. 3d 100, 111-13 (D.D.C. 2014).  Here, Mr. Brigida's EEO complaint is expressly incorporated into the proposed complaint, *see* Proposed Compl. ¶ 164 n.6, and thus is considered part of the pleading.  *See Stephens*, 317 F. Supp. 3d at 417.  The FAA's argument flows from the text of that administrative complaint along with other documents filed by Mr. Brigida's counsel in administrative and federal courts.  *See* Def.'s Br. at 38-41.  The Court may take judicial notice of these representations.  *See, e.g.*, *Morris v. Fed. Bureau of Prisons*, No. 09–2034, 2010 WL 2574142, at *1 (D.D.C. June 25, 2010) (concluding that "the Court may take judicial notice of matters of public record, such as prior court proceedings").  Accordingly, this is not a case where the exhaustion question must wait until the summary judgment stage.

Proposed Compl. ¶¶ 159, 161.

Plaintiffs do not engage with the caselaw casting doubt on the "like or reasonably related" standard set forth in *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). *See Haynes*, 924 F.3d at 526 & n.1 (declining to decide whether the *Park* "doctrine survives *Morgan*"); *see also Coleman v. Duke*, 867 F.3d 204, 213 n.7 (D.C. Cir. 2017) (same). The FAA has shown that, after *Morgan*, the failure to be hired under the new hiring process is a discrete act that must be separately exhausted from a claim based on the loss of the old process. *See* Def.'s Br. at 40-41 & n.25. But even under the *Park* doctrine, "[a]t a minimum, the Title VII claims must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Park*, 71 F.3d at 907. Plaintiffs' new BA claim fails this standard for two reasons. First, Mr. Brigida's two "fleeting and skeletal reference[s]" to the BA in the formal complaint "could not reasonably be expected to alert the [agency] to investigate" an unstated claim that Mr. Brigida had applied in 2014 and had not been successful, let alone that the BA was the cause. *See Crawford v. Duke*, 867 F.3d 103, 110 (D.C. Cir. 2017); Def.'s Br. at 40 n.23. Second, Mr. Brigida made a clear and undeniable pleading choice not to challenge the BA in the EEO complaint or for over four years in this lawsuit (until now), a choice repeatedly reinforced by his counsel's assertion that the claim that "the 2014 BA was validated improperly and used inappropriately to screen applicants due to race" is "*not asserted in this matter.*" Pls.' Mot. for Class Cert. at 32, ECF No. 73-1 (emphasis added); *see also* Def.'s Br. at 40-41 n.24 (collecting additional instances). Accordingly, the BA claim does not "come within the scope of any investigation that reasonably could be expected to result" from the EEO complaint where "[plaintiff] and his attorney unequivocally cut off that investigation, expressly limiting its scope to" a different claim. *See*

*Mount v. Johnson*, 36 F. Supp. 3d 74, 89 (D.D.C. 2014).[24]

Moreover, the FAA has shown that courts in this district routinely require disparate impact claims to be exhausted separately from disparate treatment claims.  *See, e.g.*, *Hopkins v. Whipple*, 630 F. Supp. 2d 33, 40-41 (D.D.C. 2009); *see also* Def.'s Br. at 30-31 (collecting additional cases). Here, Plaintiffs did not allege or exhaust a disparate impact claim in the administrative process. *See* Def.'s Br. at 30.  Nor did they plead one in this case until now.  While some disparate treatment and disparate impact claims may be sufficiently similar to avoid the need for separate exhaustion, this occurs in a "pattern or practice disparate treatment challenge to the employment system as a whole" that alleges "that an employer's practices have had a systemic adverse effect on members of the plaintiff class."  Pls.' Reply at 8 (quoting *Segar v. Smith*, 738 F.2d 1249, 1266 (D.C. Cir. 1984).[25]  Here, Plaintiffs' allegations of intentional discrimination do not turn on a showing of either systemic practices or statistically disparate results.  Because Plaintiffs do not focus on statistically disparate results, their long-standing intentional discrimination claim does not overlap with or encompass their new disparate impact claim, such that separate exhaustion was required. *Cf. McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 1, 28 (D.D.C. 2004) (observing that, in certain circumstances, "a disparate treatment claim may morph into a disparate impact

---

[24] Plaintiffs' suggestion that they should receive discovery on "the scope of the FAA's response to the administrative complaint," Pls.' Reply at 23 n.14, is unwarranted because *Park* employed an objective standard ("reasonably can be expected to follow") not an analysis of the employer's subjective response.  *Cf. Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("filing must be examined from the standpoint of an objective observer" to determine whether it was EEO charge).

[25] "Pattern or practice" claims infer "illicit motive . . . from a sufficient showing of disparity between members of the plaintiff class and comparably qualified members of the majority group."  *Segar*, 738 F.2d at 1265-66; *see also Aliotta v. Bair*, 614 F.3d 556, 562 (D.C. Cir. 2010) (pattern or practice case "must establish. . . that discrimination was the company's standard operating procedure" in order to "infer[] that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy").

claim, *depending on the employment practices involved* and the defendant's arguments")
(emphasis added) (citing *Segar*, 738 F.2d at 1298 (Edwards, J., concurring)).

Accordingly, Plaintiffs failed to exhaust their challenge to the BA, including especially
their disparate impact claims regarding the BA, and cannot press such claims in court now.

### B.    Plaintiffs Have Not Plausibly Alleged a Disparate Impact or Disparate Treatment Claim With Respect to the Biographical Assessment.

A disparate impact claim must allege and prove that a facially neutral assessment "in fact
fall[s] more harshly on one group than another," *Aliotta*, 614 F.3d at 561, or results in a "significant
statistical disparity." *Ricci*, 557 U.S. at 587.  The FAA has shown that Plaintiffs do not actually
make these allegations about the results of the BA.  *See* Def.'s Br. at 41-43.  It is not enough to
allege that "many qualified and well-qualified non-African American applicants . . . were never
considered for a position because they failed a BA," Pls.' Reply at 24, without also alleging that
the BA failed non-African Americans at a higher rate than African Americans, or otherwise fell
disproportionately on non-African Americans.  *See* Def.'s Br. at 41.  After all, an aggressive
screening tool that excludes most applicants, *see* Proposed Compl. ¶¶ 98, 102 (explaining that BA
was expected to "screen[] out 70% of ATCS applicants), does not give rise to disparate impact
liability unless it actually has a disparate impact on some characteristic protected by Title VII. *See*
*Boykin v. Fenty*, 650 F. App'x 42, 44 (D.C. Cir. 2016).  And alleging that an employer intended to
discriminate—Plaintiffs' primary argument—is not enough to make out a claim that an assessment
actually caused a disparate impact.

Plaintiffs argue that they meet this standard by alleging that "the use of the BA resulted in
lesser qualified African American applicants hired in lieu of—at the expense of—more qualified
Class members."  Pls.' Reply at 23 (string citing 47 paragraphs of the proposed complaint).  But
none of the paragraphs cited from the proposed complaint support such a claim of class-wide

injury—which would require that Plaintiffs' entire putative class was more qualified than the roughly 10% of selectees in 2014 who were African American.  That would be difficult to allege given the known disparities among the qualifications of the putative class.  *See, e.g.*, Pls.' Reply at 19-20 n.10 (acknowledging the putative class included both "well qualified" and merely "qualified" AT-SAT scores); Proposed Compl. ¶ 53 (noting that most pre-2014 selections went to applicants ranked "well qualified").  Indeed, Plaintiffs hint that they may need to creatively slice the data to find a disparate impact.  *See* Pls.' Reply at 24 (speculating that "statistical analysis properly focused on equally qualified cohorts will bear . . . out" their theory).

Moreover, few of the cited paragraphs of the Proposed Complaint are relevant to the question of a disparate impact,[26] and the FAA has already addressed the substantive paragraphs that could arguably be relevant:  (1) with regard to Proposed Compl. ¶¶ 120-22, the FAA has shown that Plaintiffs' critique of three BA questions does not make out a claim that the assessment as a whole had a disparate impact, *see* Def.'s Br. at 42; and (2) with regard to Proposed Compl. ¶¶ 116 & 119, the FAA has shown that CTI graduates and non-African Americans were very successful under the revised process, *see* Def.'s Br. at 29, 43, and that Plaintiffs' comparison of selectees to incumbents does not help them, *see id.* at 29, 42.[27]  That simply leaves Plaintiffs' assertion that the BA was "intended to and likely did have a discriminatory effect on non-African

---

[26] Many of the string cited paragraphs merely describe the development of the 2014 hiring process.  *See id.* ¶¶ 68-69, 80, 83 89, 92, 95, 98, 102, 105-08, 115.  Others cannot allege an actual disparate impact because they refer exclusively to Plaintiffs' disqualification claim, *id.* ¶ 11, address distinct issues such as validity of the BA or whether it is the least restrictive means to serve a legitimate interest, *id.* ¶¶ 123-25, 127-29, 131, or support Plaintiffs' allegations about the FAA's discriminatory intent, *id.* ¶¶ 12, 13, 73, 77, 81-82, 86-87, 109, 111, 117, 118, 126, 132.

[27] The FAA does not press a "bottom line" analysis of the "final completed [hiring] process," Pls.' Reply at 23-24, but instead points out Plaintiffs' lack of caselaw supporting a critique of isolated test questions without an allegation that the test itself had a disparate impact, and also counters Plaintiffs' own erroneous "bottom line" comparisons.  *See* Def.'s Br. at 42.

American CTI graduates," Propose Compl. ¶ 130, which is plainly too speculative and conclusory to state a disparate impact claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (alleged facts must "permit the court to infer more than the *mere possibility* of misconduct" (emphasis added)); *Woodworth v. Bank of America*, No. 09-3058, 2011 WL 1540358, at *19 (D. Or. Mar. 23, 2011) (dismissing complaint under *Iqbal* where it merely alleged that an element of claim was "likely").[28]

The FAA has also shown that Plaintiffs' disparate treatment challenge to the BA follows the same path as the "disqualification" claim in attempting to convert evidence of an agency's efforts to level the playing field into invidious discrimination. *See* Def.'s Br. at 43. Thus, this claim likewise fails on Title VII's second element because it does not plausibly allege that the putative class was not selected "because of" race. *See supra*, Arg. § I.B. Plaintiffs cannot show intentional discrimination from the FAA's completion of barrier analyses and efforts to improve equal opportunity based on the results.

## III. Defendant's Exhibits Are Appropriate at This Stage of the Case.

The parties agree that the standard for dismissal under Rule 12(b)(6) is the relevant benchmark both for whether amendment should be denied as futile and for striking the class claims. *See* Def.'s Mot. at 13, 44; Pls.' Reply at 13-14. Yet, Plaintiffs claim that the FAA seeks to "convert its opposition . . . into a motion for summary judgment" because the FAA attached "39 exhibits, consisting of over a ream of paper." Pls.' Reply at 14 n.5. This argument fails because it is well established that courts may consider documents referred to in the complaint and that are subject to judicial notice, *see Stephens v. Mnuchin*, 317 F. Supp. 3d 413, 417 (D.D.C. 2018) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)), and each of the FAA's

---

[28] For these reasons, Plaintiffs' also fail to support their assertion in the reply brief that they have "allege[d] that the BA disproportionately benefited African Americans at the expense of non-African Americans," Pls.' Reply at 24; as discussed above, that allegation is not to be found in their Proposed Complaint.

exhibits meets one or both of these criteria.

The FAA identified eight of its exhibits as subject to judicial notice as public records.  *See* Def.'s Br. at 14 n.6.  Four of these—Exhibits 7, 8, 13, 14—merely set out basic information about the effects of budget sequestration in 2013, which provides context for a single footnote.  *See* Def.'s Br. at 33 n.20.  Two more—Exhibits 38, 39—are litigation filings in the *Johnson* case which are cited for Plaintiffs' counsel Michael Pearson's characterization of the scope of this litigation.  *See* Def.'s Br. at 40-41 n.24.  Another is Exhibit 5, the FAA's March 2012 Annual EEO Program Status Report, which is cited for its statements regarding the initiation of a barrier analysis.  *See* Def.'s Br. at 7.  Finally, Exhibit 9 is an FAA publication that was previously available to CTI institutions and students which sets forth undisputed facts about the CTI Program in 2013.  *See* Def.'s Mot. at 5-6.[29]  Plaintiffs identify no reason the Court cannot rely on these exhibits or the limited facts for which FAA has cited them.  These documents meet the evidentiary standard for judicial notice.  *See* Fed. R. Evid. 201(b); *John Doe A-1 v. Democratic People's Republic of Korea*, No. 18-cv-0252, 2019 WL 5597740, at *2 (D.D.C. Oct. 30, 2019).[30]

Moreover, "documents . . . referred to and relied on in the complaint" may be considered

---

[29] Exhibit 9 also contains many of the same FAA policies in effect from 2007-2013 that are set forth in the AT-CTI Management Guide that Plaintiffs attached to their motion for class certification.  *Compare* Pls.' Exhibit 1, AT-CTI Mgmt. Guide at PLA0045-PLA0066, ECF No. 73-2, *with* Exhibit 9, AT-CTI Program Overview and FAQs at 13-23, ECF No. 105-1.  Plaintiffs attempt to disclaim this document that they have already relied upon, *see* Pls.' Reply at 20 n.11, but regardless of which source is used, these published policies are subject to judicial notice.

[30] *See also Citizens for Responsibility and Ethics in Washington v. Trump*, 924 F.3d 602, 607 (D.C. Cir. 2019) (taking judicial notice of document on government agency website); *Harris v. Bowser*, No. 19-00886, 2019 WL 3891041, at *4 n.4 (D.D.C. Aug. 19, 2019) ("Courts in this jurisdiction have frequently taken judicial notice of information on official public websites of government agencies."); *Green v. U.S. Dep't of Justice*, 392 F. Supp. 3d 68, 99 n.8 (D.D.C. 2019) ("Court[s] may take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty."); *Democracy Forward Found. v. White House Office of Am. Innovation*, 356 F. Supp. 3d 61, 62 n.2 (D.D.C. 2019) ("[J]udicial notice may be taken of public records and government documents available from reliable sources.").

on a motion to dismiss. *See Whiting v. AARP*, 637 F.3d 355, 363 (D.C. Cir. 2011); *Slate v. Pub. Defender Serv. for the Dist. of Columbia*, 31 F. Supp. 3d 277, 287-88 (D.D.C. 2014) (collecting cases); *see also Ruiz v. Millennium Square Residential Ass'n*, 2020 WL 3103900, at *2 n.2 (D.D.C. June 11, 2020) ("A document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint."). The FAA's remaining exhibits qualify under this provision. *See* Def.'s Br. at 14 n.6. Indeed, most of their content is not controversial:

- Twenty-two of the exhibits—Exhibits 15-36—are merely vacancy announcements which set forth the terms for applications for controller positions in relevant year, *see* Def.'s Br. at 3-6, 9; *cf.* Proposed Compl. ¶¶ 35-36, 42, 77, 116.

- Four of the exhibits—Exhibits 1-4—are the FAA's annual controller workforce plans that include basic information about the number of selections each fiscal year and information about the selection process, *see* Def.'s Br. at 3-6; *cf.* Proposed Compl. ¶¶ 16, 38.

- Exhibit 10, the FAA's February 2014 hiring policy bulletin sets forth the actual terms of the challenged process changes, *see* Def.'s Br. at 8-9; *cf.* Proposed Compl. ¶¶ 116, 159, 172, 178.

- Exhibit 12 is an annual Office of Personnel Management report regarding demographics of the federal workforce which Plaintiffs rely upon to compare CTI enrollees to the civilian labor workforce pool, *see* Proposed Compl. ¶ 134; the FAA uses the same data point, another item from the same table, and a statistic from one additional page of the report, *see* Def.'s Br. at 28-29, 43.

Even if not incorporated into the complaint, the limited information drawn from these public documents is equally subject to judicial notice as described in the prior paragraph.

While Plaintiffs do not specifically challenge any individual exhibit, they generally object on the ground that "Plaintiffs [did] not wholesale adopt documents authored by or for the FAA." Pls.' Reply at 3 n.1. They note that "[r]eferencing a document does not mean that the plaintiff has to 'adopt every word within the exhibits as true.'" *Id.* (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015)). These objections have little relevance to the

limited use the FAA made of the exhibits discussed above and appear to primarily target two final documents used in the briefing:  Exhibit 6, the Extension to the Barrier Analysis, and Exhibit 11, an FAA interim report on the results of the 2014 hiring process.  *Cf.* Pls.' Reply at 4, ECF No. 93 (objecting to Extension report in last round of briefing).   But Plaintiffs' vague objections fail because the facts for which the FAA has cited both of these documents are within the scope of Plaintiffs' own use of these documents.  *See Banneker Ventures*, 798 F.3d at 1133-34 & n. 6 (considering "why a plaintiff attached the documents" and noting that "a referenced document may always be read for what it incontestably shows").    Plaintiffs expressly quote and characterize the Extension report, *see* Proposed Compl. ¶¶ 80-83, and the FAA simply repeats some of the report's findings.  *See* Def.'s Br. at 8, 28.  And Plaintiffs do not dispute the FAA's explanation that Exhibit 11 is the FAA interim report that Plaintiffs quote from directly in Proposed Compl. ¶ 119.  *See* Def.'s Br. at 28-29.  Plaintiffs cannot object to the FAA's discussion of the very table on which Plaintiffs rely, *see* Def.'s Br. at 28-29, 42-43 (discussing the table on page 5), and the FAA's discussion of related data appearing on another page of the report is likewise within the scope of Plaintiffs' own use.  *See* Proposed Compl. ¶ 116; Def.'s Br. at 29 (discussing table on page 3).  *Cf. Twombly*, 550 U.S. at 568 n.13 (court "was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn.").

In sum, because FAA relies on the inadequacy of Plaintiffs' own allegations as a matter of law, the dismissal standard is readily satisfied.  The limited objective facts set out in FAA's brief—from documents subject to judicial notice or incorporated into the pleadings—do not undermine the procedural posture of these filings.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Leave to Amend the Complaint, or, alternatively, strike Plaintiffs' class claims.

DATED: July 14, 2020

ETHAN P. DAVIS
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Director
Civil Division, Federal Programs Branch

*/s/ Galen N. Thorp*
GALEN N. THORP (V.A. Bar No. 75517)
Senior Counsel
MICHAEL DREZNER (V.A. Bar No. 83836)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Telephone: (202) 514-4781
Facsimile: (202) 616-8470
Email: galen.thorp@usdoj.gov

*Counsel for Defendant*