UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW J. BRIGIDA,

       *Plaintiff*,

    v.

ELAINE L. CHAO, Secretary of Transportation,

       *Defendant*.

No. 16-cv-2227 (DLF)

**MEMORANDUM OPINION AND ORDER**

    In his latest proposed complaint, plaintiff Andrew Brigida asserts two employment discrimination claims against the Federal Aviation Administration (FAA) under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* (Title VII). Brigida alleges that the FAA "purged" its "merit-based hiring preference for Qualified Applicants for Air Traffic Controllers," Proposed Fourth Am. Compl. ("Compl.") ¶¶ 204, Dkt. 99-1, and (2) "implemented" a "Biographical Questionnaire into the 2014 [Air Traffic Controller] hiring process," *id.* ¶ 207, both "with the intent and purpose of benefitting African American Air Traffic Controller applicants and hindering the Class members," *id.* ¶¶ 204, 207. Brigida also seeks to certify a class, pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. *Id.* ¶ 182. Before the Court is Brigida's Motion to Amend the Complaint, Dkt. 99, and the FAA's motion to strike the class claims in the amended complaint, Dkt. 106. For the reasons that follow, the Court will grant Brigida's motion to amend in part and deny it in part, and it will deny the FAA's motion to strike the class claims.

    Rule 15 provides that "a party may amend its pleading only with . . . the court's leave,"

but that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The FAA opposes Brigida's motion to amend and moves to strike his proposed class claims on the grounds that the claims would be futile. Dkt. 105. The Court will address each in turn.

I.   ANALYSIS

   A. Hiring Preference Claim

The FAA argues that Brigida's hiring preference claim is futile because it does not plausibly allege (1) an adverse employment action or (2) intentional discrimination against non-African-Americans.

At least at this stage, Brigida has alleged sufficient facts to satisfy the intentional discrimination element of his hiring preference claim. The complaint alleges that the CTI program did not present barriers to minority participation in the workforce and that the "percentage of African American enrollees [in the CTI program in 2012 and 2013] exceeded the percentage of African Americans in the relevant civilian labor workforce pool in the same years." Compl. ¶ 134. Nonetheless, the FAA manipulated data in various ways, *see id.* ¶¶ 136, 79, 82, "abruptly abandoned its well validated merit-based employment screening system," and "arbitrarily purged its inventory of prequalified [Air Traffic Controller] applicants," caving to "activists" and "non-agency consultants" who favored a "race-motivated hiring scheme," without a remedial justification for doing so, *id.* at 2. Together, these concrete, plausible allegations suggest that there is "something 'fishy' about the facts of the case at hand that raises an inference of discrimination." *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993).

It is less clear, however, whether the FAA's alleged changes to its hiring process constituted an "adverse employment action" under Title VII. In the abstract, the FAA's actions could give rise to a failure-to-hire claim of the sort blessed by the Supreme Court in *Ricci v.*

2

*DeStefano*, which held that an employer violates Title VII when it refuses to accept the outcome of a race-neutral hiring process solely because of the racial makeup of the successful applicants. 557 U.S. 557, 579–80 (2009). But the FAA is correct that Brigida's "adverse employment action" theory extends beyond the failure-to-hire claim previously recognized in *Ricci*, *see* Def.'s Opp'n at 22. Brigida's Title VII claim is premised on his status as an "applicant" to the FAA, *see* 42 U.S.C. § 2000e-16(a), but in contrast to the *Ricci* plaintiffs, Brigida was not yet an "applicant" at the time the FAA allegedly changed its process. The *Ricci* plaintiffs had already applied to the positions in question, and absent the employer's alleged discrimination, they would have indisputably been hired given their high test scores. *See Ricci*, 557 U.S. at 585. Because this issue would benefit from further briefing, the Court will grant Brigida leave to amend, and the Court will revisit this issue should the FAA move to dismiss the complaint on this ground.

### B. Biographical Assessment Claim

With respect to the biographical assessment, Brigida alleges both disparate treatment and disparate impact claims, and the FAA contests both on futility grounds.

Like his hiring preference claim, Brigida's biographical assessment claim includes plausible allegations that raise an inference of discrimination. *Harding*, 9 F.3d at 153. In addition to the allegations stated above, the complaint alleges that the biographical assessment was carefully designed to advantage African American applicants over non-African Americans. *See* Compl. ¶¶ 120–21. These allegations satisfy the intentional discrimination element.

Brigida also administratively exhausted his disparate treatment claim. Brigida's EEO complaint, which is twenty-four pages long and contains over 100 paragraphs of allegations, asserts generally that "the FAA changed the assessment and post assessment processes resulting

3

in disparate treatment on the basis of race." EEO Compl. ¶ 3, Dkt. 105-37.  And it refers specifically to the FAA's act of "making students who had already passed the prior validated assessment process 'pass' a highly suspect Biographical Analysis . . . questionnaire." *Id.* ¶ 73. The EEO complaint purports to "bring claims of discrimination regarding appointment, hire, evaluation/appraisal, *examination/test/assessment*, non-selection and terms/conditions of employment based upon race." *Id.* ¶ 93 (emphasis added).  Brigida's claim that the biographical assessment was devised and implemented for unlawful discriminatory purposes appears "reasonably related to the allegations of" the EEO charge or, at a minimum, "ar[ose] from the administrative investigation that [could] reasonably be expected to follow the charge." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).

       Brigida failed, however, to administratively exhaust his disparate impact claim. Disparate treatment allegations contained in an administrative complaint do not exhaust the separate "cause[] of action" of a disparate impact claim.  *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015); *see also Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 324 (D.D.C. 2016); *Hopkins v. Whipple*, 630 F. Supp. 2d 33, 40–41 (D.D.C. 2009).  Brigida's EEO complaint repeatedly and exclusively references "disparate treatment" or "intentional discrimination," rather than "disparate impact." *See, e.g.*, EEO Compl. ¶¶ 2, 3, 60, 76, 92.  And Brigida's statement that he became aware of the discrimination "on or about February 9, 2014," *id.* at 2, weighs against his exhaustion argument given that the biographical assessment had not yet been administered.  Because Brigida did not exhaust his disparate impact claim, he may not include it in his amended complaint.

## C. Rule 23 Requirements

Finally, the FAA argues that Brigida's proposed class[1] claims are "futile because a subsequent motion to certify the proposed class[] would be denied." Def.'s Opp'n at 33.

The Court will hold Brigida to his representation that the putative class will only include "recent graduates," Pl's Reply at 19 n.10, and it agrees with the FAA that certain individuals—those with test scores that expired prior to December 2013 and those who lacked CTI recommendations and graduated well before December 2013—likely would not fall within the class of individuals harmed by the allegedly discriminatory policy change. But the Court leaves open the possibility that Brigida may be able to identify, though limited pre-certification discovery, recent graduates who lacked CTI recommendations because of the FAA's change in hiring announcement or individuals who were scheduled to take the AT-SAT examination in December 2013 (or later) but failed to do so because of the FAA's announcement. Accordingly, the Court will not deny Brigida leave to amend the putative class definition on this ground.[2]

The Court disagrees with the FAA that the putative class fails to meet Federal Rule of

---

[1] Consistent with Title VII's text, the Court rejected the plaintiffs' previous attempts to include non-applicants in the putative class. *See* Tr. of Mot. Hearing, Sept. 13, 2019, Dkt. 86; Order of Apr. 5, 2020, Dkt. 98. The proposed class now consists of "approximately 2,500 to 3,000 non-African American CTI students who: (1) by February 10, 2014: (a) graduated from a CTI program at one of the 36 FAA-partnered CTI Institutions and (b) passed the AT-SAT, (2) applied to be an [Air Traffic Controller] trainee through the 2014 all sources vacancy announcement but failed the Biographical Questionnaire that was incorporated into the 2014 [Air Traffic Controller] hiring process and [were] therefore not hired; and (3) have never been offered employment as an FAA [Air Traffic Controller]." Compl. ¶ 182. The putative class also excludes "any CTI graduates who were not U.S. citizens as of February 10, 2014, or by February 21, 2014 had reached 31 years of age (or 35 years of age if they had had 52 consecutive weeks of prior air traffic control experience)." *Id.*

[2] The Court will, however, instruct Brigida to incorporate an element of his previous putative class definition which excluded "CTI graduates whose academic records as of January 27, 2014 explicitly stated that they were ineligible to receive a letter of recommendation from their CTI school." *See* Dkt. 87-1 ¶ 100.

Civil Procedure 23's commonality and typicality requirements because it "includes both CTI graduates whose AT-SAT scores ranked them well-qualified and those who passed the AT-SAT with a lower score and were far less likely to be selected under the prior hiring process." Def.'s Opp'n at 35.  Accepting Brigida's allegations as true, *all* members of the putative class—from the most to the least well-qualified CTI graduates—suffered the legal injury of being discriminated against on the basis of their race when the FAA abolished a preferential program in which the graduates had invested time and resources and on which they reasonably relied.  While some potential remedies—for instance, back pay and front pay—might only apply to certain class members, other potential remedies could apply to every member of the class.  As the Court previously recognized, Congress's 2016 legislation "does not bar Brigida from receiving *some type* of hiring preference *within his pool*," Mem. Op. and Order at 8, Dkt. 50, and that preferential consideration could be afforded to all members of the putative class (even though not all would be hired as a result).  *See* Compl. at 43 (seeking an injunction eradicating the effects of the FAA's allegedly unlawful hiring practice, including instatement preferences and eligibility extensions).  Because the difference in class members' qualifications does not necessarily destroy commonality and typicality, the Court will not strike the proposed class claims.

Finally, Brigida must choose between retaining Suzanne Rebich and Matthew Douglas-Cook as named plaintiffs or discarding them as class representatives.[3]  Rule 23 requires that putative class representatives be parties to the litigation in which they seek to represent a class. *See* Fed. R. Civ. P. 23(a)(4) (requiring that "the representative *parties* will fairly and adequately

---

[3] Brigida properly seeks to remove former named plaintiff Pollyanna Wang, who accepted an Air Traffic Controller position with the FAA and therefore falls outside the putative class definition. *See* Compl. ¶ 182 (limiting the putative class to individuals who "have never been offered employment as an FAA [Air Traffic Controller]").

protect the interests of the class" (emphasis added)); *accord Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349 (2011) ("Rule 23(a) ensures that the *named plaintiffs* are appropriate representatives of the class whose claims they wish to litigate." (emphasis added)).  Individuals are either *both* named plaintiffs *and* class representatives, or they are neither.

For the foregoing reasons, it is

**ORDERED** that the plaintiff's Motion to Amend the Complaint, Dkt. 99, is **GRANTED IN PART** and **DENIED IN PART**.  The plaintiff is directed to file, on or before October 27, 2020, a modified Fourth Amended and Supplemental Class Action Complaint that is consistent with this Order.[4]  It is further

**ORDERED** that the defendant's Motion to Strike Class Claims, Dkt. 106, is **DENIED**.  And it is further

**ORDERED** that the parties shall submit a joint status report, on or before October 23, 2020, proposing a schedule for further proceedings in this case.

October 12, 2020

DABNEY L. FRIEDRICH
United States District Judge

---

[4] The Court notes that Brigida suggests that he intends to propose several more amendments to the complaint—for instance, to establish a separate class of African Americans, Compl. ¶ 182 n.8, as well as a class including former plaintiffs like Lucas Johnson and Pollyanna Wang "who were later offered an [Air Traffic Controller] position and therefore suffered the lesser harm of a delay in hiring," *id.* ¶ 182 n.9.  This is already Brigida's second attempt to amend since the Court laid out its expectations in the September 13, 2019 hearing on the motion for class certification.  Given the history of this litigation, further attempts to amend the complaint will be disfavored.