# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
ANDREW J. BRIGIDA, et al.,                )
                                          )
                    Plaintiffs,           )
                                          )
          v.                              )        Civil Action No. 16-cv-2227 (DLF)
                                          )
ELAINE L. CHAO, Secretary, U.S.           )
Department of Transportation,             )
                                          )
                    Defendant.            )
_____)


# DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT IN PART

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

I.      Plaintiffs Cannot Evade the D.C. Circuit's Clear Holdings that Title VII Claims
        Should Be Dismissed if They Fail to Allege an Essential Element of the Claim—
        Here, An Adverse Employment Action. ............................................................................. 3

II.     Plaintiffs Were Not Applicants at the Time of the Alleged Elimination of a Hiring
        Preference. ........................................................................................................................ 5

III.    A Title VII Claim Requires a Discrete Personnel Action Causing a Change in
        Employment Status for an Applicant or Employee. ........................................................... 9

IV.     None of Plaintiffs' Proposed Adverse Employment Actions Are Cognizable
        Under Title VII or Existing Caselaw. ............................................................................... 12

V.      There is No Issue of Fact Preventing This Court From Dismissing Plaintiffs'
        Hiring Preference Claim as a Matter of Law. .................................................................... 18

CONCLUSION ........................................................................................................................ 19

**INTRODUCTION**

The Court found in its October 12, 2020 Order that Plaintiffs allege two claims: (1) that they lost an alleged hiring preference when the Federal Aviation Administration (FAA) did not continue its pre-2014 hiring process for new air traffic controllers (the "Hiring Preference Claim") and (2) that they were not selected in the 2014 hiring process because the FAA implemented a Biographical Assessment (the "Biographical Assessment Claim").  Mem. Opinion & Order at 1, Oct. 12, 2020, ECF No. 112.  As this Court held earlier this year, Title VII protects "applicants" and "employees," with two limited exceptions courts have carved out for people who did not apply—where "applying would have been futile because members of her protected class were subject to gross and pervasive discrimination or [] the employer filled the position without soliciting applications."  Order at 3, Apr. 5, 2020, ECF No. 98.

In accord with this Court's observation that "[Plaintiff] Brigida was not yet an 'applicant'" at the time the FAA allegedly eliminated the hiring preference, Mem. Opinion & Order at 3, the Fourth Amended Complaint merely states Plaintiffs "were eligible to apply for CTI-only job postings" and that they did not actually apply until after the alleged hiring preference was eliminated.  *See* 4th Amended Compl. ¶¶ 10, 35, 157, 158, 170, Oct. 27, 2020, ECF No. 114.  Moreover, Plaintiffs have not pled facts supporting either of the two limited exceptions.  Apr. 5, 2020 Order at 3.

Because there is no factual issue whether or not Plaintiffs were applicants, Defendant moved to dismiss their Hiring Preference Claim as a matter of law on the ground that non-applicants cannot allege an adverse employment action relating to changes in a hiring process—a reality Plaintiffs freely concede by noting that "absent harm to *existing applicants*, employers are free to change their hiring processes."  Pls.' Opp'n to Def.'s Mot. to Dismiss at 22, Dec. 3, 2020, ECF No. 120 (emphasis added).

Without any explanation for their about face from their Fourth Amended Complaint's acknowledgement that they were merely "eligible to apply," Plaintiffs oppose dismissal of their Hiring Preference Claim on the ground that they were *already applicants* before they submitted an application to any FAA vacancy announcement.  *See* Pls.' Opp'n at 13, 17.  This comes full circle to factual allegations in prior versions of their complaint and positions already repeatedly rejected by this Court.  *See, e.g.*, 3d Am. Compl. ¶¶ 82, 105, October 23, 2018, ECF No. 68 (alleging that Plaintiffs Brigida and Douglas-Cook *reapplied* in February 2014); Apr. 4, 2020 Order at 2-3 (rejecting Plaintiffs' November 2019 effort to amend their complaint while still including "CTI graduates who never applied to the roles in question").  Plaintiffs' satisfaction of certain pre-qualification requirements such as graduating from a CTI school and passing the AT-SAT does not make them applicants.

Plaintiffs also insist that the elimination of the alleged hiring preference for CTI graduates had adverse consequences and therefore was an adverse employment action.  But it is not enough to claim "materially adverse consequences," *Czekalski v. LaHood*, 589 F.3d 449, 454 (D.C. Cir. 2009), without alleging an employment action that caused those consequences.  *See* 42 U.S.C. § 2000e-16(a) (addressing "personnel actions affecting . . . applicants for employment").  Plaintiffs cannot show that they suffered an employment action before they applied in February 2014.  They identify no case supporting the notion that general changes to a hiring process are a "personnel action" or "employment action" for potential applicants. And they fail to meaningfully distinguish *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87 (2d Cir. 2013) and *Bourdais v. New Orleans City*, 485 F.3d 294 (5th Cir. 2007), which expressly found no "adverse employment action" in similar circumstances.

In sum, the Court should dismiss Plaintiffs' Hiring Preference Claim once and for all

because Plaintiffs have failed to plausibly allege an adverse employment action, an essential element of a Title VII claim. Their complaint must be limited to the only claim for which they allege an adverse employment action—the Biographical Assessment Claim.

## ARGUMENT

I.    **Plaintiffs Cannot Evade the D.C. Circuit's Clear Holdings that Title VII Claims Should Be Dismissed if They Fail to Allege an Essential Element of the Claim— Here, An Adverse Employment Action.**

A complaint is properly dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "when . . . the court finds that the plaintiffs have failed to allege all the material elements of their cause of action." *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997). In this Circuit, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *see also* Mem. Opinion & Order at 2-3, ECF No. 112 (applying these "elements").

Plaintiffs ask the Court to disregard this straightforward provision for dismissal of discrimination claims on the ground that *Taylor* "predat[es] *Swierkiewicz*, *Iqbal*, and *Twombly*" and "ignores developments and nuances of Title VII law." Pls.' Opp'n at 6 n.3. Plaintiffs are mistaken. The Supreme Court's observation in *Swierkiewicz v. Sorema, N.A.*, that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," 534 U.S. 506, 515 (2002), because the "prima facie case . . . is an evidentiary standard, not a pleading requirement," *id.* at 510, does not eliminate a plaintiff's obligation to adequately plead the elements of their claim. *Cf. Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 221 (D.D.C. 2012) ("As with any cause of action, if the necessary elements of a Title IX claim are not adequately pled, the claim is subject to dismissal without prejudice under Rule 12(b)(6).").

Courts in this judicial district have consistently held that *Sierkiewicz* does not preclude

dismissal where a plaintiff failed to plead the elements of a Title VII claim. *See, e.g.*, *Achoe v. Clinton*, No. 17-2231, 2018 WL 4374926, at *5 & n.5 (D.D.C. Sept. 13, 2018) (holding that "at the pleading stage a plaintiff must allege an adverse employment action to make out a discrimination claim under Title VII" and noting that reliance on *Swierkiewicz* is "misplaced following the Supreme Court's decisions in *Twombly* and *Iqbal*"); *Laughlin v. Holder*, 923 F. Supp. 3d 204, 221 (D.D.C. 2013) (same); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 71-72 (D.D.C. 2007) (reaching same conclusion before *Twombly* and *Iqbal*). *See also Woods v. City of Greensboro*, 855 F.3d 639, 646-48 (4th Cir. 2017) ("*Swierkiewicz* remained binding precedent [in that] the plaintiff was not required to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss," but "a plaintiff is nonetheless required to allege facts to satisfy the elements of a cause of action created by the relevant statute in compliance with *Iqbal*.").

Moreover, Plaintiffs also err in relying on *Swierkiewicz* for the very pleading standard that *Twombly* and *Iqbal* displaced. *See* Pls.' Opp'n at 6 (quoting *Swierkiewicz*'s statement that "[a] court may dismiss a complaint only if it is clear no relief could be granted under any set of facts that could be proved consistent with the allegations [in the complaint]," 534 U.S. at 514). This "any set of facts" standard comes from *Conley v. Gibson*, 355 U.S. 41, 46 (1957), which was abrogated by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Jones v. Horne*, 634 F.3d 588, 596 n.4 (D.C. Cir. 2011); *Thomas v. Washington Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 85 (D.D.C. 2018).

Accordingly, Plaintiffs may not hide behind any ambiguities about their prima facie case to avoid dismissal of their Hiring Preference Claim which fails to plausibly allege an adverse employment action.

II.    **Plaintiffs Were Not Applicants at the Time of the Alleged Elimination of a Hiring Preference.**

As the FAA has shown, Title VII's prescription that a federal employer make "personnel actions affecting *employees or applicants* for employment . . . free from any discrimination based on race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-16(a), requires plaintiffs to identify a discrete personnel decision affecting an applicant.  *See* Def.'s Mot. to Dismiss Pls.' 4th Am. Compl. in Part (Def.'s Br.) at 13-15, ECF No. 119.  Plaintiffs now argue that they were not just "eligible to apply," 4th Am. Compl. ¶¶ 10, 35, but were actually "applicants" before 2014. *See* Pls.' Opp'n at 16-21.  For numerous reasons, Plaintiffs were not applicants until February 2014 and have therefore failed to state a Title VII claim.

First, this Court, after reviewing Title VII's language, has already concluded that "Brigida was not yet an 'applicant' at the time the FAA allegedly changed its process."  Mem. Opinion & Order at 3, Oct. 12, 2020, ECF No. 112.  Plaintiffs do not acknowledge the Court's conclusion or provide any persuasive reason for the Court to reconsider.  Instead, they simply disregard it, arguing that the FAA's "application process . . . started much earlier than the posting of a vacancy announcement" because CTI graduates had to meet certain "pre-qualification requirements" before they would be invited to apply for CTI-only vacancy announcements.  Pls.' Opp'n at 13, 17.

Second, Plaintiffs are going against their own allegations.  While their Third Amended Complaint had erroneously claimed that CTI graduates who completed pre-qualification requirements were applicants who entered a "direct hire pool," and were forced to "reapply" in 2014, *see* 3d Am. Compl. ¶¶ 31, 81-82, 105, ECF No. 68, they began backing away from that position in September 2019,[1] and their Fourth Amended Complaint jettisoned that language and

---

[1] *See* Sept. 13, 2019 Hr'g Tr. at 7:7-9 (Plaintiffs' counsel: "We're using the term 'qualified applicant register' to refer to that subset of people on the inventory who are qualified to apply for a CTI-only application."); *id.* at 24:18-25-10 (relying on "intent to apply"); *id.* at 29:21-30:7

5

acknowledged that such graduates were merely "eligible to apply for CTI-only job postings," 4th Am. Compl. ¶ 35, and that the Plaintiffs first "applied" in February 2014, *id.* ¶¶ 158, 170.  Now, Plaintiffs have come full circle even though their position lacks any support in their operative complaint.[2]

Third, Plaintiffs' argument is premised on misusing the word "applicant."  While what one must do to become an applicant depends on the specific employment process, dictionary definitions of this term generalize by focusing on the individual's request.  *See, e.g.*, *Random House Dictionary of the English Language*, 2d ed. 1987 (applicant: "a person who applies for or requests something, a candidate"); *id.* (apply: "to make an application or request; ask").[3]  Plaintiffs' allegations include no action of requesting employment consideration.  Plaintiffs did not respond to any pre-2014 vacancy announcement.  They do not even allege that they contacted the FAA to request a job.  Instead, they suggest that information provided by CTI schools to the FAA about all CTI students and graduates, *see* Pls.' Opp'n at 20, or taking an aptitude test that would be relevant if they applied, *see id.*; is enough to make them applicants.  But information sharing and test taking do not request employment, especially where the employer has a highly structured process that only considers those who respond to specific public vacancy announcements.

---

("[T]here's roughly 500 . . . students who graduated in December of 2013. They never had the chance to apply. Right? They may have applied for the 2014, *but they hadn't applied before*. So I want to be cautious when we are using the term 'applicant.'" (emphasis added)).

[2] Plaintiffs' assertion that CTI graduates "were labelled as applicants by the FAA itself," *see* Pls.' Opp'n at 2-4, 15, 17, is not actually found in their Fourth Amended Complaint, and regardless does not change the fact that CTI graduates were only eligible to apply, *see* 4th Am. Compl. ¶¶ 10, 35, and that their AT-SAT scores would place them in "qualified" or "well-qualified" bands if they did apply, *see* 4th Am. Compl. ¶ 32.

[3] *See also Oxford English Dictionary*, 3d ed. 2008 (applicant: "2. A person who makes a request; a person who applies for some assistance or benefit; (Law) a person who applies to a court for a specific order. 3. A person who submits a formal application to do something or for a position, esp. as part of a recruitment or selection process; a candidate.").

Fourth, as this Court held earlier this year, Plaintiffs have not pled facts supporting either of the "two limited exceptions" courts have carved out for a "non-applicant plaintiff [who] can show either that 'applying would have been futile because members of her protected class were subject to gross and pervasive discrimination' or that 'the employer filled the position without soliciting applications.'"  Order at 3, ECF No. 98 (quoting *Carroll v. England*, 321 F. Supp. 2d 58, 67, 68 (D.D.C. 2004)).  Plaintiffs offer no argument that applying would have been futile, but they do dispute the FAA's observation with regard to the failure-to-advertise exception that this is not a case where "the employer preempted the hiring process by selecting someone without competition."  Def.'s Br. at 16.  Plaintiffs argue that the FAA "select[ed] candidates without legitimate competition based on qualifications," Pls.' Opp'n at 20, appearing to refer to their Biographical Assessment Claim.  Whatever the merits of their challenge to the Biographical Assessment, that cannot make them an applicant before 2014.  And, as noted in *Carroll*, the second exception "is unavailable if an employer openly advertised job vacancies to all employees," 321 F. Supp. 2d at 68, and FAA's 2014 vacancy announcement was openly advertised nationwide.  See Exhibit 14; 4th Am. Compl. ¶¶ 103-06.

Even though Plaintiffs plainly do not qualify for the failure-to-advertise exception, they seek to hijack part of that exception's analysis and apply it here.  *See* Pls.' Opp'n at 17, 20-21.  In *Cones v. Shalala*, 199 F.3d 512, 515, 518 (D.C. Cir. 2000), the plaintiff expressed interest in promotion to an open position, but the agency refused to advertise a vacancy and instead filled it with the lateral transfer of another employee who expressed interest.  The court rejected the argument that the plaintiff was not an applicant, concluding that he had "expressed his interest" in "precisely the same way as" the selectee.  *Id.* at 518.  To show that expressing interest was sufficient in this failure-to-advertise context, the court favorably quoted the Third Circuit's

observation that courts "have generally held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie case of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." *Id.* (quoting *EEOC v. Metal Service Co.*, 892 F.2d 341, 348 (3d Cir. 1990)). However, Plaintiffs misapply *Cones* and *Metal Service Co.* because when competitive announcements are used, the only way to make "every reasonable effort to convey [one's] interest" is to submit a formal application. *See, e.g.*, *Daniels v. Chugach Gov't Servs., Inc.*, No. 14-1667, 2019 WL 5295142, at *5 (D.D.C. Oct. 18, 2019) (rejecting analogy to *Cones* where position was "posted on the Job Board for all employees to see"); *Elam v. D.C. Fire & EMS Dep't*, No. 03-1407, 2005 WL 1903557, at *5 (D.D.C. July 19, 2005) (applying *Cones* "when the position was not posted"). Prior expressions of interest are insufficient. *See Daniels*, 2019 WL 5295142, at *5 (holding plaintiff was not an applicant even though he had "applied to the same position two months earlier").

Finally, Plaintiffs identify not one case in which pre-application investments of time and resources by the potential applicant were construed to transform him into an applicant for purposes of Title VII. Plaintiffs emphasize that "[t]hey had earned credentials that would allow them to apply for vacancy announcements directed to only the pre-qualified," Pls.' Opp'n at 20, but that does not mean that they "had already completed significant parts of the application process," *id.* Any number of jobs only accept applicants who have met time-consuming or costly pre-requisites. An employer might limit a position to attorneys who passed a bar exam and have a certain number of years of practice, or to those who received a medical degree and completed a residency. Yet the universe of those who have met the prerequisites are not considered applicants. And a decision to drop such prerequisites for future rounds of hiring does not give a Title VII claim to all who pursued such professional degrees and credentials. Indeed, under Plaintiffs' logic, any individual

8

who attends a job fair or requests a job application from an employer could allege an adverse employment action if the employer changes the hiring process prior to an individual completing and submitting the application.  The FAA's cooperative role with the CTI schools in seeking to improve its pool of potential applicants does not make anyone an applicant.  Instead, to be considered for hiring, one had to actually apply in response to the current vacancy announcements.[4]  Plaintiffs themselves seem to implicitly acknowledge the distinction by asserting that this case is "akin to failure to hire" or "aligns with" such cases, Pls.' Opp'n at 12-13; they recognize that they are asking the Court to go beyond existing caselaw by urging the Court to ignore the application requirement.

For all of these reasons, Plaintiffs have not and cannot establish that they were "applicants" cognizable under Title VII at the time that the FAA modified its controller hiring process and therefore they have no claim based on the loss of any advantage they might have received under the pre-2014 process.

### III.    A Title VII Claim Requires a Discrete Personnel Action Causing a Change in Employment Status for an Applicant or Employee.

Plaintiffs' effort to expand federal employer liability under Title VII beyond "personnel actions affecting employees or applicants for employment," 42 U.S.C. § 2000e-16(a), leads them to also resist the straightforward reading of the statutory term "personnel actions."  As the FAA has shown, Title VII requires plaintiffs to identify a discrete personnel decision affecting the

---

[4] Plaintiffs argue that expanding the definition of "applicant" to include all CTI graduates will not open Title VII's floodgates to all "potential applicants" because this is not a "situation in which there is no relationship between a potential applicant and an employer."  Pls.' Opp'n at 13; *id.* at 20 ("Plaintiffs here were not strangers to the FAA before 2014[.]").  But Plaintiffs do not show that assertion, even if true, is rooted in any aspect of Title VII's text or this Circuit's caselaw.  Without legal significance, the distinction Plaintiffs propose offers no meaningful limiting principle.

applicant.  *See* Def.'s Br. at 13-15.

While Title VII does not define "personnel actions," the D.C. Circuit has assessed the scope of the term in light of definitions of the term in related statutory provisions.  *See Brown v. Brody*, 199 F.3d 446, 455 n.8 (D.C. Cir. 1999).  Plaintiffs appear to suggest that the D.C. Circuit was wrong to consider any statutory definitions of "personnel action," yet they offer no textual analysis of their own.  They claim that related statutory definitions are irrelevant because the definitions refer to "appointments" but not "failure to hire."  *See* Pls.' Opp'n at 14.  But there is no dilemma here.  "[H]iring and firing decisions" are recognized as "personnel action[s]," *see Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 608 (2008), because the decision to appoint one applicant entails the decision not to appoint another applicant—or those who would have applied if the position had been announced and filled competitively.[5]  For the reasons discussed in the FAA's opening brief, it is reasonable to conclude that Title VII requires a federal applicant to identify a discrete employment action causing (or preventing) a change in employment status.  *See* Def.'s Br. at 13-15; *see also Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (holding that an adverse employment action requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

---

[5] In that light, the cases Plaintiffs rely upon provide no basis for departing from this established principle.  In *Figueroa v. Pompeo*, 923 F.3d 1078, 1084 (D.C. Cir. 2019), and *Harding v. Gray*, 9 F.3d 150, 151 (D.C. Cir. 1993), the plaintiff applied for promotion but was not selected.  In *Menoken v. McGettigan*, 273 F. Supp. 3d 188, 192-93 (D.D.C. 2017), the plaintiff applied but was not considered because of how the lists of finalists were constructed.  In *Perry v. Donovan*, 733 F. Supp. 2d 114, 116 (D.D.C. 2010), the court recognized a failure to promote claim where an agency's challenge to a desk audit finding plaintiffs' work merited a higher grade level prevented her from getting the promotion.   And in *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006), the court found an adverse employment action sufficient for a retaliation claim where plaintiff was given only responsibilities far below her grade level for more than two years.

causing significant change in benefits").[6]  Even Plaintiffs acknowledge that employment policies and programmatic decisions do not become actionable until "they have a specific employment impact on a specific candidate."  Pls.' Opp'n at 16.

Moreover, Plaintiffs' alternative approach to identifying a personnel action must be rejected.  As the FAA has repeatedly explained, Plaintiffs err in attempting to convert the D.C. Circuit's discussion of "materially adverse consequences" into an open-ended extension of the term "employment action."  *See, e.g.*, Def.'s Reply on Mot. to Strike Class Claim at 6-7, ECF No. 109.  The D.C. Circuit adopted the term "materially adverse consequences" to define what makes an action "adverse" and to clarify that only "personnel actions" that are "adverse" are cognizable under Title VII.  *See Brown*, 199 F.3d at 453-57 (adopting definition of "materially adverse consequences" in response to a plaintiff's argument that Title VII permitted her to challenge a lateral transfer—plainly a personnel action—regardless of whether it was adverse); *Webster v. Spencer*, No. 17-1472, 2020 WL 2104231, at *8 (D.D.C. May 1, 2020) (addressing whether "employer's action is sufficiently adverse").  To be sure, *Brown* and its progeny conclude that a distinct employment action can be *adverse* (and thus cognizable under the D.C. Circuit's reading of Title VII) where it affects "future employment opportunities."  *Czekalski v. LaHood* (*Czekalski II*), 589 F.3d 449, 454 (D.C. Cir. 2009).  But Plaintiffs argue the inverse here, that any action by an employer which affects "future employment opportunities" *becomes a distinct employment action.  See* Pls.' Opp'n at 9-11.  No authority supports that claim.  Indeed, both of the cases upon which Plaintiffs rely for this supposed standard involved a clear "personnel action" that was being

---

[6] Plaintiffs' observation that some "personnel actions" under the related statutes, such as performance evaluations, have not been held to create cognizable Title VII claims, *see* Pls.' Opp'n at 14, does not undermine this observation.  The definitions need not be coextensive to be informative.  *See Brown*, 199 F.3d at 455 n.8.

weighed for whether it had "materially adverse consequences."  *See Czekalski II*, 589 F.3d at 452 (reassignment of a senior manager); *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (reorganization leading to "change from section chief to unit chief").

Any number of changes to a hiring process could affect "future employment opportunities" for potential applicants.  Plaintiffs are thus proposing a significant expansion of Title VII that would render the "adverse employment action" element virtually meaningless.  If Plaintiffs were correct, potential applicants would be empowered to challenge any change in the selection criteria or the weight given to various factors in a future selection process, if it could affect the likelihood that some group of potential applicants will be selected.  *See, e.g.*, Pls.' Opp'n at 11 (relying on statistics suggesting that under the old hiring process CTI graduates were, on average, "more likely to be hired than a general public applicant with a similar AT-SAT score").  There is no justification for such a reading in Title VII's text or D.C. Circuit caselaw.[7]

## IV.    None of Plaintiffs' Proposed Adverse Employment Actions Are Cognizable Under Title VII or Existing Caselaw.

The FAA has demonstrated that the Hiring Preference Claim in the Fourth Amended Complaint does not allege an adverse employment action.  *See* Def.'s Br. at 15-23.  Plaintiffs do not dispute the FAA's understanding that Plaintiffs' "hiring preference claim does not actually challenge any specific aspect of the 2014 hiring process."  *Id.* at 15.[8]   Instead, Plaintiffs

---

[7] The viability of disparate impact or "pattern and practice" challenges to programmatic changes is beside the point.  *See* Pls.' Opp'n at 16.  In both types of cases, Title VII still requires the plaintiffs to show that they individually suffered an adverse employment action caused by the challenged agency action.  *See, e.g., Alliota v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010).

[8] Plaintiffs had no viable way to cast their hiring preference claim as a defect of the 2014 hiring process because they acknowledge that "absent harm to existing applicants, employers are free to change their hiring processes."  Pls.' Opp'n at 22.  Moreover, Title VII does not mandate preservation of preferential treatment for groups with better average results than the general population.  *See* Def.'s Br. at 17-19.

characterize this claim as "addressing the striking of their qualifications and lost opportunity for employment," Pls.' Opp'n at 8 n.6; *see also id.* at 11 ("Loss of Opportunity"), and losing the "benefit from the ranking and employment opportunity earned by their test results," *id.* at 19. For a host of reasons, the FAA's policy changes at a time when Plaintiffs were not applicants do not constitute employment actions for the Plaintiffs. Title VII does not permit individuals to challenge the loss of a hiring process to which they did not apply.

First, there is no "change in employment status" when an agency alters a hiring process to which a plaintiff has not yet applied. *Taylor*, 350 F.3d at 1293. There are no "personnel actions affecting . . . applicants for employment." 42 U.S.C. § 2000e-16(a). Thus, the FAA's decision not to issue new CTI-only vacancy announcements and to invite CTI students and graduates to apply alongside general public applicants, *see* 4th Am. Compl. ¶¶ 105-06, was not a personnel action vis-à-vis Plaintiffs. While Plaintiffs have still identified no case in which a policy change was treated as an adverse employment action for a non-applicant, two court of appeals decisions illustrate the FAA's position. *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87 (2d Cir. 2013), specifically rejected the argument that a "generalized overhaul of departmental promotional requirements amounted to the sort of race-based adverse action" prohibited by Title VII. *Id.* at 96. The Second Circuit held that the plaintiff failed to allege an "adverse employment action" where a city did not make "its promotion decision from the 2006 list that included [plaintiff] but . . . instead chose to delay the appointment decision for a month in order to use the results of the new test." *Id.* at 95-96. Plaintiffs do not dispute *Maraschiello*'s holding but merely attempt to distinguish it on its facts. *See* Pls.' Opp'n at 17-19 (suggesting that it was somehow significant that the plaintiff "chose not to participate in the new promotion process" and that he had received "the benefit of his prior test result" by being eligible for promotion for a year in which no vacancies

occurred).  But if a prior applicant lacked an adverse employment action from the policy change, how can the non-applicant Plaintiffs here have a better claim?

Similarly, *Bourdais v. New Orleans City*, 485 F.3d 294 (5th Cir. 2007), held that the district court properly dismissed certain plaintiffs who had not completed the application process and thus "failed to show that they suffered any adverse employment action whatsoever" when they were not selected.  *Id.* at 300.  Plaintiffs acknowledge that some of the *Bourdais* plaintiffs "were found not to suffer adverse employment actions" because they had "passed an aptitude test but not completed the remaining steps required to be on a list of eligible recruits."  Pls.' Opp'n at 19. Similarly here, Plaintiffs were not "eligible for hire" under the FAA's pre-2014 process because they had not submitted an application pursuant to any vacancy announcement or completed that application process.  *Bourdais* stands for the proposition that it is not enough to have "completed significant parts of the application process," Pls.' Opp'n at 20; unless an applicant has fulfilled all necessary prerequisites (such as submitting an application), the individual cannot have an adverse employment action based on nonselection.  *Cf. Moore v. Hagel*, No. 10-632, 2013 WL 2289940, at *2 (D.D.C. May 24, 2013) ("Not being selected for a position for which [one] did not apply cannot be considered an adverse employment action.").

Second, the FAA has shown that Plaintiffs' claim does not add up to "refusing to accept the outcome of a race-neutral hiring process," 4th Am. Compl. ¶¶ 10, 196, because the steps they had taken merely made them eligible to apply.  *See* Def.'s Br. at 20; *cf.* Pls.' Opp'n at 19 ("They had completed each FAA-required step available to them to establish their pre-qualified status."); *id.* at 20 ("They had earned credentials that would allow them to apply for vacancy announcements directed to only the pre-qualified.").  Certifying their citizenship status, providing their age, receiving a college degree, and passing the AT-SAT, *see* Pls.' Opp'n at 20, did not constitute the

14

"outcome" of the hiring process. Plaintiffs' assertions that the FAA "refused to advance Plaintiffs from Qualified Applicant to trainee status," Pls.' Opp'n at 13, and that "Plaintiffs' final eligibility [was] lost to history because the FAA refused to screen them," *id.* at 20, have no connection to how the FAA's pre-2014 hiring process actually worked. Only people who submitted written applications could be tentatively selected by a centralized selection panel, and then "screen[ed]" before receiving a final offer, which if accepted could result in them receiving "trainee status" when they arrived at the Academy. *See* Def.'s Br. at 2, 5. Thus, read most generously, Plaintiffs are simply dressing up their objection to the FAA's decision not to continue issuing CTI-only vacancy announcements.[9]

Third, the FAA has shown that Plaintiffs also have not suffered an adverse employment action merely because the FAA decided not to use prior AT-SAT scores. *See* Def.'s Br. at 21, 23. Nearly everyone who took the AT-SAT passed, *see* 4th Am. Compl. ¶ 52 (citing study showing that between 93.1% and 97.7% of test-takers passed, depending on applicant source), and by itself passing the exam did not entitle anyone to selection. Plaintiffs now claim that the loss of their AT-SAT scores was an adverse employment action under "facts unique to this case" because passing the AT-SAT and meeting other pre-qualification requirements had "assured them[] . . . of better than average odds" for selection under the FAA's pre-2014 hiring process. Pls.' Opp'n at 24. This again is revealed to be nothing other than a complaint about the loss of CTI-only announcements. As the FAA has shown, the AT-SAT scores are a red herring because having to potentially re-take

---

[9] Plaintiffs repeated assertion that "over 86%" of CTI graduates who applied were screened out in 2014, *see* Pls.' Opp'n at 5, 11, 22, is a reference to the fact that the Biographical Assessment screened out the vast majority of applicants. *See* 4th Am. Compl. ¶¶ 101, 115. Yet Plaintiffs profess that they suffered an adverse employment action "before the BA/BQ was administered." Pls.' Opp'n at 9. Therefore, their challenge to the Biographical Assessment adds nothing to their effort to identify an employment action for the Hiring Preference Claim.

the AT-SAT did not harm Plaintiffs—it did not dissuade them from applying in 2014 and it played no role in their non-selection. *See* Def.'s Br. at 21. Moreover, treating the decision about AT-SAT scores as a personnel action would give a claim to every CTI student who had passed the test, extending far beyond the putative class of certain CTI graduates.

Fourth, Plaintiffs' efforts to cast about for additional adverse employment actions fail. For example, Plaintiffs belatedly suggest that their allegation that the FAA "slowed and eventually froze" controller hiring in 2012 and 2013, 4th Am. Compl. ¶ 38, is an adverse employment action. *See* Pls.' Opp'n at 8, 13, 21. However, Plaintiffs have already conceded that this allegation is merely "context, 'background circumstances,' and corroborating evidence," Pls.' Reply at 19 n.9, ECF No. 107, and therefore it cannot be the basis for an element of their claim.[10] Nor can Plaintiffs establish an adverse employment action affecting the named Plaintiffs through the FAA's decision not to make further selections from among previous applicants, *see* 4th Am. Compl. ¶¶ 89, 99, 105, because Plaintiffs acknowledge that they had not applied. *See* Pls.' Opp'n at 21 (relying on those paragraphs to allege a "decision to abandon CTI hiring based on the racial make-up of the applicants"). Moreover, some of Plaintiffs' suggestions are plainly not discrete personnel actions at all, *see id.* (asserting an allegedly unfair "insistence on long validation periods and studies to increase CTI hiring . . . , but no such insistence on similar validation periods or studies to implement race-based hiring"), or muddle the alleged discrimination with the supposed employment action, *see id.* (vaguely asserting a "decision to elevate considerations of race over qualifications").

---

[10] Regardless, as the FAA has repeatedly shown, Plaintiffs have not administratively exhausted any pre-2014 claims, and could not have been affected by any decision with regard to CTI-only announcements before their August and December 2013 graduations. *See* Def.'s Opp'n to Mot. to Amend at 32-33 & n. 19, June 5, 2020, ECF No. 105.

Finally, as the Court has recognized, Plaintiffs' claim "extends beyond the failure-to-hire claim previously recognized in *Ricci*" because the *Ricci* plaintiffs "had already applied to the positions in question" and "would have indisputably been hired given their high test scores." Order at 3, Oct. 12, 2020, ECF No. 112. *Ricci* plainly involved the employment action of not selecting an applicant, and its reasoning did not expand or alter that requirement. *See, e.g.*, *Ricci*, 557 U.S. at 579 (characterizing "Title VII's command" to be "that employers cannot take adverse employment actions because of an individual's race"). Here, Plaintiffs had not yet applied for any positions with the FAA and their pre-qualification efforts did not entitle them to be hired because many steps remained under the pre-2014 process. *See* Def.'s Br. at 23. These differences are relevant because *Ricci* affirmed the appropriateness of changing hiring processes between rounds of selections. *See, e.g.*, *Ricci*, 557 U.S. at 585 ("Nor do we question an employer's affirmative efforts to ensure that all groups have a fair opportunity to apply for promotions and to participate in the process by which promotions will be made."). While there may be cases where it is difficult to draw the line, this is not one of them. Unlike cases where the employer's process specified that the results of a test would determine hiring rank for a specific period of time, here, passing the AT-SAT did not guarantee any hiring result. Moreover, Plaintiffs are incorrect that the FAA had a problem "with the specific AT-SAT test results, or the racial pool passing the test." Pls.' Opp'n at 19. They make no such allegation in their complaint; after all, almost everyone passed the test and the FAA's requirement that all 2014 applicants who passed the Biographical Assessment take the "cognitive portion of the AT-SAT," 4th Am. Compl. ¶ 106, applied equally to everyone who had previously passed the AT-SAT, both prior general public applicants and CTI students.

Plaintiffs conclude their brief with *Ricci*'s holding that once "employers have made clear their selection criteria, they may not then invalidate the test results, thus upsetting an employee's

legitimate expectation not to be judged on the basis of race." Pls.' Opp'n at 25 (quoting *Ricci*, 557 U.S. at 585). Given the nature of the FAA's hiring process, it would be unreasonable to require the FAA to delay revising its hiring process until everyone who had passed the AT-SAT had an opportunity to apply under the old process, or until every CTI graduate had an opportunity to apply to a CTI-only announcement. Instead, it was reasonable and appropriate for the FAA to revise its process between rounds of selections at a time when the Plaintiffs had no pending applications.

## V. There is No Issue of Fact Preventing This Court From Dismissing Plaintiffs' Hiring Preference Claim as a Matter of Law.

Plaintiffs' last resort is to argue that determination of whether there is an adverse employment action is a "fact question for the jury or ultimate factfinder." Pls.' Opp'n at 13; *see also id.* at 18 & n.7 (suggesting that the determination should at least wait until summary judgment). There is no disputed issue of fact here.

In support of their argument, Plaintiffs rely upon *Czekalski v. Peters* (*Czekalski I*), 475 F.3d 360 (D.C. Cir. 2007). In *Czekalski I*, the employment action alleged by the plaintiff was a reassignment. *Id.* at 361-62. The court observed that a lateral transfer, without a change in pay or benefits, may not be "adverse" under D.C. Circuit caselaw, depending on factors such as whether the employer "withdraw[s] an employee's supervisory duties" or assigns "significantly different responsibilities.". *Id.* at 364. The court held that "[w]hether a particular reassignment of duties constitutes an adverse action" was a question that could not be taken away from the jury if "a reasonable juror could find that the reassignment left the plaintiff with significantly diminished responsibilities." *Id.* at 365. Summary judgment was improper because the plaintiff had proffered evidence that "raised a genuine issue as to whether the reassignment left her with significantly different—and diminished—supervisory and programmatic responsibilities." *Id.* at 364.

*Czekalski I* has no application here. As discussed above, D.C. Circuit caselaw regarding

the degree of adversity required for a cognizable Title VII claim is irrelevant.  *See supra*, Arg. §
III; *see also* Def.'s Br. at 14 n. 5.  Instead, the only question presented by the FAA's motion to
dismiss is whether Plaintiffs have alleged a "personnel action[] affecting . . . applicants for
employment," 42 U.S.C. § 2000e-16(a).  This is a question of law based on undisputed factual
allegations.  While the Plaintiffs label themselves "Qualified Applicants," *see* 4th Am. Compl. ¶
35, the facts they allege do not add up to the label.  The "pre-qualifications" Plaintiffs had met, *id.*
¶ 149, merely made them "eligible to apply for CTI-only job postings," *id.* ¶¶ 10, 35, and Plaintiffs
did not actually apply to the FAA for a job until February 2014, *id.* ¶¶ 158, 170.  *See supra*, Arg.
§ II.  There is no support in the statutory text or D.C. Circuit caselaw for treating a loss of a
favorable hiring policy change as a "personnel action" or "employment action" for potential
applicants like Plaintiffs.  *See supra*, Arg. §§ III, IV.[11]

Accordingly, neither discovery nor an ultimate factfinder's opportunity to weigh witness
credibility could be expected to add anything to the legal question at issue here.  Plaintiffs' Hiring
Preference Claim fails to state an essential element of a Title VII claim and must be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Hiring Preference Claim.

---

[11] The FAA attached nine vacancy announcements and seven FAA reports and policies to the
motion to dismiss on the ground that they were incorporated into the complaint or subject to
judicial notice, and relied on them for certain specific facts set out in the Background section.
*See* Def.'s Br. at 2-8, 12 n.3.  Plaintiffs dispute whether any of the documents were incorporated
into the complaint and object to judicial notice of Exhibit 6.  *See* Pls.' Opp'n at 6-7 & n.5.
Public documents such as vacancy announcements are plainly subject to judicial notice, and
Defendant's brief relies on no fact from these exhibits that is "not consistent with the allegations
in the Complaint."  Pls.' Opp'n at 7 n.5.  Indeed, Plaintiffs identify no fact set forth in the FAA's
brief with which they disagree, quibbling only with a table on page 33 of Exhibit 6 that the FAA
did not reference or rely on in its brief.  *See id.*  But the Court need not resolve this dispute
because, even without the context provided by these documents, Plaintiffs' Fourth Amended
Complaint fails to state a claim.

DATED: December 14, 2020            JEFFREY BOSSERT CLARK
                                    Acting Assistant Attorney General

                                    CARLOTTA P. WELLS
                                    Assistant Director
                                    Civil Division, Federal Programs Branch

                                    */s/ Galen N. Thorp*            
                                    GALEN N. THORP (V.A. Bar No. 75517)
                                    Senior Trial Counsel
                                    MICHAEL DREZNER (V.A. Bar No. 83836)
                                    Trial Attorney
                                    U.S. Department of Justice
                                    Civil Division, Federal Programs Branch
                                    1100 L Street NW
                                    Washington, DC 20530
                                    Telephone: (202) 514-4781
                                    Facsimile: (202) 616-8470
                                    Email: galen.thorp@usdoj.gov

                                    *Counsel for Defendant*