```
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF COLUMBIA
 2

 3    ANDREW J. BRIGIDA, et al.,        .
                                        .   Case Number 16-cv-2227
 4              Plaintiffs,             .
                                        .
 5         vs.                          .
                                        .
 6    UNITED STATES DEPARTMENT OF       .   Washington, D.C.
      TRANSPORTATION, et al.,           .   May 23, 2018
 7                                      .   8:26 a.m.
                Defendants.             .
 8    - - - - - - - - - - - - - - - -

 9

10                     TRANSCRIPT OF MOTION HEARING
               BEFORE THE HONORABLE DABNEY L. FRIEDRICH
11                  UNITED STATES DISTRICT JUDGE

12    APPEARANCES:

13    For the Plaintiffs:         CHRISTIAN CORRIGAN, ESQ.
                                  Mountain States Legal Foundation
14                                2596 South Lewis Way
                                  Lakewood, Colorado 80227
15
                                  WILLIAM PERRY PENDLEY, ESQ.
16                                P.O. Box 1983
                                  Evergreen, Colorado 80437
17

18    For the Defendants:         MICHAEL DREZNER, ESQ.
                                  U.S. Department of Justice
19                                Civil Division
                                  Federal Programs Branch
20                                1100 L Street Northwest
                                  Room 12210
21                                Washington, D.C. 20005

22    Official Court Reporter:    SARA A. WICK, RPR, CRR
                                  333 Constitution Avenue Northwest
23                                U.S. Courthouse, Room 4704-B
                                  Washington, D.C. 20001
24                                202-354-3284

25    Proceedings recorded by stenotype shorthand.
      Transcript produced by computer-aided transcription.
```

1                     P R O C E E D I N G S

2           (Call to order of the court.)

3           THE COURTROOM DEPUTY:  Your Honor, this is Civil

4    Action 16-2227, Andrew J. Brigida versus the United States

5    Department of Transportation, et al.

6           Will counsel please approach the podium and identify

7    yourselves for the record, as well as any additional parties at

8    your table.

9           MR. PENDLEY:  May it please the Court.  I'm William

10   Perry Pendley.  With me is Christian Corrigan.  Mr. Corrigan

11   will be arguing on behalf of Andrew Brigida.

12          THE COURT:  Good morning.

13          MR. DREZNER:  Good morning, your Honor.  Michael

14   Drezner on behalf of the Department of Justice and defendant.

15   With me at counsel table is Russell Christensen from the FAA.

16          THE COURT:  Good morning.

17        All right.  We are here on plaintiff's motion for

18   reconsideration of Judge Reyes's November 7, 2016, order.

19        Mr. Corrigan, let me start with you.  As you know, this

20   case was transferred to me in December of last year.  Yet, the

21   motion was fully briefed January of, what, 2017?

22          MR. CORRIGAN:  Correct.

23          THE COURT:  Has anything changed since that briefing

24   that I should be aware of that would influence this case?

25          MR. CORRIGAN:  I don't believe so, your Honor.

1          THE COURT:  All right.  Well, tell me, in terms of the

2     equitable relief you are seeking, do you agree that I -- if I

3     were to reinstate that, do you agree that I certainly don't have

4     the authority to reinstate the original 2014 hiring plan?

5     Correct?

6        Given the 2016 FAA Act, I can't go back and give him

7     preference to the degree in terms of creating a qualified

8     applicant list and all that?  I can't do that?

9          MR. CORRIGAN:  Your Honor, I would respectfully submit

10    that under Title VII you could in theory do it if the two acts

11    are compatible, if the equitable relief requested under Title

12    VII, the reinstatement of the qualified applicant register, is

13    compatible with the 2016 hiring -- FAA Act with the new hiring

14    practices.

15          THE COURT:  Okay.  So the 2016 act requires that those

16    with experience are given priority?

17          MR. CORRIGAN:  Correct, your Honor.

18          THE COURT:  And you are saying I could also say, in

19    addition to them, those who go to the CTIs also are entitled to

20    priority?

21          MR. CORRIGAN:  In theory, you could, your Honor, based

22    on the number of putative class members, the number of open air

23    traffic controller positions, and the number of putative class

24    members who are actually interested in being reinstated on that

25    qualified applicant register, once this Court decides the claim

1    on the merits and weighs the facts as it sees fit.

2              THE COURT:  Okay.  You think I could actually recreate

3    the qualified applicant list for CTI applicants?

4              MR. CORRIGAN:  I believe so, your Honor.  That is part

5    of Title VII's broad remedies that allows this Court to make the

6    plaintiff whole for his injuries.

7              THE COURT:  But only if there are enough open slots to

8    cover all of the preferred applicants who have experience;

9    correct?

10             MR. CORRIGAN:  Correct, your Honor.  And again, I

11   would submit that at this stage, at the motion to dismiss stage

12   where the plaintiff is to receive the benefit of all factual

13   inferences that can be made in his favor, that that is still a

14   possibility under Title VII.

15             THE COURT:  Okay.  Tell me, what position exactly was

16   Brigida in at the time of the alleged discrimination?  He was on

17   the preferred list?

18             MR. CORRIGAN:  Correct.  Yes.

19             THE COURT:  And he had 100 percent on his test?

20             MR. CORRIGAN:  Correct.

21             THE COURT:  And what did that mean?  Did that mean

22   eventually in time he would be hired?  Was that an automatic

23   preference?

24             MR. CORRIGAN:  Yes, it was.  He was placed on the

25   qualified applicant register, which put him -- gave him priority

1    consideration for air traffic controller hiring.  And there were

2    approximately 2,000 to 3,500 people on this list.  The FAA

3    hiring plan for 2012, 2013, and 2014 called for hiring about a

4    thousand air traffic controllers per year.

5        So your Honor, it's certainly possible that the plaintiff,

6    as well as the putative class members, would have received

7    hiring were it not for the purge of the qualified applicant

8    register.

9        THE COURT:  So back in 2014, 2013, if you are on this

10    list, you will get hired eventually?

11        MR. CORRIGAN:  Eventually, your Honor.  There were --

12    of course, there was an FAA plan for how many -- there could

13    have been intervening events where less controllers were needed.

14    As we allege in the complaint, there were times where the CTI

15    program was absolutely meeting demand, and then there were times

16    when the FAA had to supplement hiring from the FAA -- hiring for

17    air traffic controllers with off-the-street hiring as well.

18        THE COURT:  Okay.  And do you know how the current

19    system works?  If you're on that preferred list, is that

20    automatic as well?

21        MR. CORRIGAN:  Your Honor, the current system now

22    gives priority first to experienced air traffic controllers.

23        THE COURT:  Right.  But are those folks on the same

24    preferred list in the sense that, if you're on that list, you

25    will be hired eventually if there's space?

1          MR. CORRIGAN:  I don't believe it's a list, your

2    Honor.  It's simply that the first -- that those -- priority for

3    any open position is to be given to those.  So it is similar to

4    a qualified applicant register.

5          THE COURT:  Okay.

6          MR. CORRIGAN:  And those are all -- but those are only

7    air traffic controllers that have 52 weeks or more of

8    experience.  Those are people who have already become a part of

9    the profession.

10          THE COURT:  Can you help me understand, what was this

11    biographical questionnaire, and how does one fail it?

12          MR. CORRIGAN:  Your Honor, the biographical

13    questionnaire was a series of questions that were intended to

14    identify the race of a potential applicant.  It was essentially

15    a questionnaire that all new air traffic controllers, once the

16    purge occurred, were required to take.  And our client and

17    others in the class took the exam and were told that they failed

18    it and would not be able to apply for open air traffic

19    controller positions.

20          THE COURT:  Wait.  It's a questionnaire, just a

21    questionnaire.  You said an exam.

22          MR. CORRIGAN:  Well, it was a questionnaire, but it

23    functioned as an exam, because anyone who failed it was not able

24    to receive a job as an air traffic controller, including our

25    client.

1          THE COURT:  How many questions are on it?

2          MR. CORRIGAN:  I'm not entirely sure, your Honor.

3          THE COURT:  They're all race-related questions?

4          MR. CORRIGAN:  They were not necessarily all race-

5     related questions, but they were designed to identify the

6     applicant's race for diversity purposes.

7          THE COURT:  And was Brigida told "you failed the

8     biographical questionnaire"?

9          MR. CORRIGAN:  Yes, he was, your Honor.

10         THE COURT:  And was he given a reason why?

11         MR. CORRIGAN:  No, he was not, just simply that he

12    failed the exam.

13         THE COURT:  Okay.  You use "questionnaire" and "exam"

14    interchangeably.

15         MR. CORRIGAN:  It was labeled the "biographical" -- it

16    was called the "biographical questionnaire."

17         THE COURT:  Did he go to a room to take the

18    questionnaire, or is this just a form he filled out?

19         MR. CORRIGAN:  I believe it was an online computer

20    questionnaire, your Honor.

21         THE COURT:  Okay.  All right.  So if I were to grant

22    your motion and reinstate equitable relief here, tell me how I

23    would fashion -- if ultimately your client were to prevail, how

24    would you fashion that equitable relief in a way that's not

25    going to run afoul of the 2016 act?

1          MR. CORRIGAN:  Your Honor, given -- first, I would

2     have the Court look at the number of open positions and the

3     number of members of the putative class that are interested in

4     reinstatement and have the Court look to see if the numbers and

5     the available open spots are compatible and look at the

6     projections that the FAA expects over the next few years.

7          And if those are compatible with the numbers that are of

8     the putative class that are interested in employment, the

9     numbers that are available through the experienced air traffic

10    controller hiring as well as the two pools, if there's enough

11    spots open, this Court could order that type of relief.

12         Again, I think it's very fact dependent that this Court

13    would look at -- once we've decided the case on the merits and

14    the Court's looking how to make the plaintiff whole, as whole as

15    possible for his injuries consistent with the law.

16         THE COURT:  But you concede that Brigida would need to

17    be second in line to those with experience, so he can't be

18    completely on par?  I mean, ultimately, if there are enough

19    spaces, he could be on par, but under the act, priority has to

20    be given to those with experience; correct?

21         MR. CORRIGAN:  Under the act, it could, your Honor,

22    yes, but in theory, there could be open spots.

23         THE COURT:  If there are open spots.  But if there are

24    not enough open spots, I couldn't put Brigida in over someone

25    with experience; do you agree with that?

1    MR. CORRIGAN:  Well, your Honor, I think that it would

2    go to looking at whether the two statutes are -- or whether the

3    relief under Title VII is compatible with the 2016 FAA Act and

4    whether this Court's equitable authority under either Title VII

5    or the equal protection component of the due process clause

6    supersedes any type of statute that may limit the remedies this

7    Court could order.

8        And that's a part of the plaintiff's equal protection

9    claim, is that this Court could -- if the equitable relief

10   sought is reinstatement, this Court could order the 2016 -- this

11   Court could order preference for him over the 2016 statute.

12   THE COURT:  And you are seeking reinstatement?

13   MR. CORRIGAN:  Correct, your Honor, but

14   reinstatement --

15   THE COURT:  But he wasn't in that position when the

16   discrimination occurred.  He didn't have the job.  You're

17   looking -- you're seeking preference; right?

18   MR. CORRIGAN:  We're seeking -- yes, we're seeking

19   reinstatement of the qualified applicant register, of the hiring

20   preference.

21   THE COURT:  But not me ordering the FAA to hire him?

22   MR. CORRIGAN:  Correct.  We would simply ask for him

23   to be given priority rather than the FAA ordering hiring.  And

24   this court and courts under Title VII routinely order hiring

25   preference, seniority status, and other such measures to put

1    plaintiffs back in the position they were in had the

2    discriminatory action not occurred.

3              THE COURT:  I understand.  But he wasn't in the

4    position of having been offered the job.  He was just on a

5    preferred list.

6              MR. CORRIGAN:  Correct.  And we are not seeking for

7    the FAA to offer him a position.  We are seeking the

8    reinstatement of his priority status.

9              THE COURT:  Post-2016 act, I know he applied to a

10   number of different positions.  Was one of those the air traffic

11   controller position under the 2016 scheme?  Did he try for that?

12             MR. CORRIGAN:  I don't believe so, your Honor.

13             THE COURT:  Why not?

14             MR. CORRIGAN:  I don't know.  He had received another

15   position -- he received employment elsewhere with a government

16   agency, not as an air traffic controller.  And I don't know why

17   he did not apply or the other putative class members did not

18   apply under the new program in 2016.

19             THE COURT:  Okay.  Is there anything else you would

20   like for me to know?

21             MR. CORRIGAN:  Your Honor, I would like to point out

22   that the Court took the extraordinary step of striking a prayer

23   for relief under Rule 12(f).  Generally, that's reserved for

24   when a claim is intended to harass or abuse or when it's not

25   available as a matter of law.  And in this case, your Honor,

1    that type of legal conclusion is something that the plaintiff

2    should have a chance at trial and discovery to develop the facts

3    so that the Court can have the best information and be armed

4    with the best tools possible to make the plaintiff whole, should

5    it come to that.

6         And we are simply asking the Court to hold on to the tools

7    available, including the equitable relief under Title VII and

8    the equal protection clause, should it need to use that to make

9    the plaintiff whole for his injury.

10                THE COURT:  Okay.  Thank you.

11        Mr. Drezner?

12                MR. DREZNER:  Good morning.

13                THE COURT:  Good morning.  From your perspective, has

14   anything changed since the briefing in this case that affects

15   the case in any way?

16                MR. DREZNER:  I don't believe so, your Honor.

17                THE COURT:  Okay.  Nothing in the 2016 act makes

18   Brigida ineligible to be hired by the FAA, does it?

19                MR. DREZNER:  No.  In fact, it gives him a preference,

20   your Honor.  I think as you recognize, they have to give

21   preference first to experienced air traffic controllers, and

22   then they have to hire approximately equally from two different

23   pools, one comprised of CTI graduates like Mr. Brigida and

24   military veterans in pool 1 and then applicants from the general

25   public in pool 2.

1          THE COURT:  But he doesn't have a preference in pools

2     1 and 2?  He's just one of many?

3          MR. DREZNER:  He's separated from the general public.

4     So he's provided with a sort of preference.  That is, his

5     application is considered separately from those in the general

6     public.

7          THE COURT:  Right.  But half have to be general

8     public, right, and half have to be the other pool?

9          MR. DREZNER:  That's right.

10          THE COURT:  He doesn't have any preference over the

11     general public?  It's just it has to be half and half; right?

12     He used to have a preference?

13          MR. DREZNER:  Well, your Honor, I think your question

14     is sort of what does the 2016 statute do for him, and it

15     explicitly looks to people in his alleged position.  Those who

16     were, as he claims, disqualified on the basis of a biographical

17     questionnaire in 2014, the statute specifically says the FAA

18     must allow them to reapply but specifically says under the

19     revised hiring practices.

20          THE COURT:  Without the biographical questionnaire?

21          MR. DREZNER:  Correct, your Honor.

22          THE COURT:  But no bump in terms of preference?

23          MR. DREZNER:  That's right.

24     But the question your Honor was asking is sort of how would

25     you craft this equitable remedy.  What they are asking here I

1    think would absolutely be in contravention of the statute.  The

2    statute --

3              THE COURT:  But how?  How?  What if there are so many

4    applicant spaces open that you give all the folks with

5    experience preference and they get hired, and then why not

6    giving him preference among the remaining applicants, as he

7    would have had in 2014?  Why is that not equitable relief that I

8    could impose?

9              MR. DREZNER:  I think because it runs directly against

10   the text of the statute.

11             THE COURT:  How?

12             MR. DREZNER:  The statute says the FAA must allow him

13   to apply under the revised hiring practices.  Plaintiff is

14   saying, let me apply under the pre-2014 hiring practices.  So

15   this question of whether this might be possible is sort of a

16   non sequitur.

17             THE COURT:  But I don't think there's anything in the

18   2016 act that removes remedies for violations of discrimination.

19             MR. DREZNER:  Well, I think first, your Honor, this is

20   basically just a rehash of all the arguments plaintiffs made in

21   Arizona, and I don't think that's a basis for reconsideration.

22             THE COURT:  But the plaintiff is saying there was a

23   clear error by that judge.  So I don't know how else you would

24   make that argument without rehashing the arguments that they

25   think were erroneous.

1          MR. DREZNER:  Well, I mean, I think courts in this

2    district have consistently said that where the parties have

3    battled for the Court's consideration they shouldn't be allowed

4    or even required to do it again unless plaintiffs can point to

5    some new fact, manifest error of law.  And they can't point to

6    any.  The Court's considered all of their arguments and rejected

7    them.  And I think they just rehash them here basically verbatim

8    in an attempt to find favor with a new judge.

9          THE COURT:  But you don't dispute that courts have

10   broad powers under Title VII to grant equitable relief; right?

11         MR. DREZNER:  Certainly, your Honor.  But I think if

12   we look to what the D.C. Circuit said in *LaShawn A.* and *Consarc*,

13   even a well-founded claim inequity can't override the plain

14   effect of the law.  And the plain effect of the law here is that

15   going forward people in plaintiff's position have to be hired

16   according to the new hiring practices.  There's no basis for the

17   FAA to work in contravention of a statute that plaintiff doesn't

18   challenge as unlawful.

19         THE COURT:  But that's the part I'm having trouble

20   grasping.  If priority is given to those with experience

21   consistently with the 2016 act and then there's still openings,

22   why is giving someone like Mr. Brigida -- let's assume that he

23   was discriminated against.  Why is giving him a chance to be put

24   in the position that he would have been before, in that group,

25   the remaining group of general population as well as CTIs and

1    veterans, why not putting him back in the position he would have

2    been in 2014 where he would have had a little bit of a bump, a

3    little bit of a preference, why does that violate the act?  That

4    piece I'm having a hard time grasping.

5            MR. DREZNER:  I think because the act has completely

6    set out a new hiring scheme.  So under the old scheme, you had

7    several different kinds of inventories.  This wasn't an explicit

8    preference.  There were veteran inventories.  There were retired

9    military controller inventories, lists of people who at

10   different points could apply and might be given some sort of

11   preference.  But you had several of those lists.

12       Now under the 2016 statute you have a very precise scheme

13   the FAA has to follow, first to experienced air traffic

14   controllers and then equally to two separate pools.

15       So the question of how you restore plaintiff to his 2014

16   hiring status simply isn't compatible --

17           THE COURT:  I can't get him where he was in 2014

18   because of the act.  But can I do something closer to that?  And

19   wasn't Congress concerned about this biographical questionnaire

20   to some degree?

21           MR. DREZNER:  That's right, and that's exactly why

22   Congress passed the law that it did, which provided that they

23   can in fact waive the maximum age requirement for people in

24   plaintiff's position in certain circumstances and could reapply

25   indeed under the revised hiring practices.

1          But this question of how do we sort of bootstrap on some

2    kind of equitable relief that plaintiff can't actually even

3    describe here I think is fairly indicative and doesn't follow

4    the statute.

5          THE COURT:  All right.  So you think because Congress

6    in the 2016 act didn't address, let's assume for a moment,

7    discrimination, victims of discrimination in 2014, it didn't

8    include that in the act, that I can't as a court consider that

9    and grant equitable relief?  You think the fact that the act is

10   silent on that means I can't go there?

11         MR. DREZNER:  I don't think it's a question of whether

12   the act is silent.  I think the question -- the act is did they

13   consider people in plaintiff's position, and they absolutely

14   did.  They looked and said well --

15         THE COURT:  Well, prospectively, though.

16         MR. DREZNER:  Right.

17         THE COURT:  Were they really looking -- you're saying

18   because they changed the age they were looking backwards?

19         MR. DREZNER:  And they were looking explicitly at

20   people who were disqualified in the 2014 hiring round on the

21   basis of the biographical questionnaire, and that is the precise

22   basis of plaintiff's claim.  And so that is who Congress was

23   looking at, and that is the remedy that they crafted.

24         And plaintiff is asking for a different remedy.  He says

25   Congress should have provided different relief and this Court

should, in fact, rewrite the statute or seriously modify it.
And that is simply a petition to Congress that should be made,
not to this Court.

     THE COURT:  But he's still got relief for damages;
right?

     MR. DREZNER:  That's correct, your Honor.

     THE COURT:  Right.  Isn't it possible that we can
effectuate the intent of Congress here and still give him some
relief that gets him closer to where he would have been in 2014?

     MR. DREZNER:  I think certainly his damages claim
would remain in the case.  I think the intent of Congress is
spelled out in the text of the statute, and that's precisely
what he is afforded under the law, and that because the statute
superseded the practices that he is challenging, this Court does
not have the ability to rule and provide relief in contravention
of a statute that he does not claim is unlawful.

    It might be a different question if he said the statute was
in fact motivated by discriminatory intent, but he does not.
And so we have a binding, duly enacted statute that I think
seriously limits the Court's equitable relief here.

     THE COURT:  In terms of the numbers, he's suggested
there may be so many that there's space for both.  Can you shed
light on that here?

     MR. DREZNER:  I'm not aware of the precise numbers,
your Honor, but again, I don't think that's quite relevant.  I

1    think the Court in Arizona said these two schemes are

2    inconsistent with each other.  He says that was an error of

3    fact, but I think he actually concedes or argues, in fact, that

4    these are two different schemes, that the 2014 scheme sort of

5    gave him one kind of preference and the 2016 scheme gives him

6    another.  And so the Court made no error in fact there, and

7    indeed, I think the statute and the new scheme are incompatible.

8              THE COURT:  Tell me about the biographical

9    questionnaire.  Has he presented that accurately?

10             MR. DREZNER:  I don't believe so, your Honor.  My

11   understanding is that this is a personality sort of exam that's

12   used by the military to get at things like do you work well

13   under pressure, do you work well in teams.  It's a screening

14   assessment that they use to sort of determine whether people can

15   make it to the next round of hiring.  I don't believe there's a

16   basis to say that it was designed to get at an applicant's race.

17             THE COURT:  And are the applicants told they failed

18   the personality test?

19             MR. DREZNER:  Yeah, plaintiff alleges that he was told

20   that he was -- that he failed this biographical questionnaire,

21   yes.

22             THE COURT:  In terms of the qualified applicant

23   register list that existed in 2014, is the plaintiff correct

24   that once you're on that you're basically going to be hired when

25   there's a space?

1          MR. DREZNER:  I don't believe so, your Honor.  I think

2    it would depend on the number of people on the list, and it

3    would depend on --

4          THE COURT:  Right.  But put that aside.  So if there's

5    space, over time, if you're on that list, at some point, one,

6    two, four years, you're going to be hired?

7          MR. DREZNER:  No.  My understanding is that it is not

8    a guarantee of employment.  You're applying -- you might be

9    subject to some sort of preference over other inventories with

10   the general public, depending on the type of vacancy that was

11   open pre-2014, but it was not a guarantee of employment.  And

12   indeed, that's certainly a problem with plaintiff's general

13   claims here.

14         THE COURT:  And how about the current list, if you

15   have experience?  It's not a list, I understand that.  But the

16   current preference, if you have experience and you're in that

17   category that Congress set aside in 2016 as having priority,

18   will you get hired?  Is it also just a preference?

19         MR. DREZNER:  I think it's similarly a preference and

20   it's similarly speculative to guess as to whether you might be

21   hired in one situation or another.

22         THE COURT:  Okay.  Anything else you would like to

23   add, Mr. Drezner?

24         MR. DREZNER:  No, your Honor.  We would just ask that

25   the motion be denied.

1          THE COURT:  All right.  Anything else, Mr. Corrigan?

2          MR. CORRIGAN:  No, your Honor.  We respectfully

3     request that you grant the motion.

4          THE COURT:  Okay.  All right.  I appreciate your

5     arguments.  I will take this under advisement and, I hope, issue

6     a ruling soon.

7          (Proceedings adjourned at 8:47 a.m.)

```
 1                    CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3            I, Sara A. Wick, certify that the foregoing is a

 4      correct transcript from the record of proceedings in the

 5      above-entitled matter.

 6

 7

 8      /s/ Sara A. Wick                    January 27, 2021

 9      SIGNATURE OF COURT REPORTER         DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```