# Extension to Barrier Analysis of Air Traffic Control Specialist Centralized Hiring Process

---

## FINAL REPORT

## *April 16, 2013*



*© 2013 APTMetrics, Inc.*

## EXHIBIT 7

*Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process*

# TABLE OF CONTENTS

| Section | Page |
|---|---|
| Chapter 1: Executive Summary | 3 |
| Chapter 2: Overview, Barrier Analysis and Stakeholder Insights regarding the FAA ATCS Selection Process | 10 |
| Chapter 3: Root Cause Analysis of ATCS Decision Point Barriers | 18 |
| Chapter 4: Summary and Recommendations | 51 |
| Chapter 5: References/Appendices | 57 |
| References | 57 |
| Appendix A: IRP Review | 59 |
| Appendix B: Documents Received and Reviewed | 77 |
| Appendix C: FAA ATCS Stakeholder Interview Protocol | 83 |
| Appendix D: Analysis Decisions | 90 |
| Appendix E: Full Data Analysis Results | 97 |

**List of Figures**

| | | |
|---|---|---|
| Figure 1 | Total Applicants by Source (2008 – 2011) | 22 |
| Figure 2 | Applicant Demographics by Source (At Point of Application) | 22 |
| Figure 3 | Total Applicant Flow – Applicant Survival (2008 – 2011) | 23 |
| Figure 4 | Candidate Pool Representation Through to CSP by Ethnicity | 24 |
| Figure 5 | Total Applicant Flow by Ethnicity – Applicant Survival (2008 – 2011) | 25 |
| Figure 6 | Total Applicant Flow by Gender – Applicant Survival (2008 – 2011) | 26 |
| Figure 7 | Total Applicant Flow by Source – Applicant Survival (2008 – 2011) | 27 |
| Figure 8 | Percentage Qualified Applicants Who Are Referred (Announcements Throughout Nation/US Only) | 38 |
| Figure 9 | Process Used to Create CSP Location-Specific Referral Pools | 40 |
| Figure 10 | Distribution of Race & Gender Groups in AT-SAT Bands | 43 |

**List of Tables**

| | | |
|---|---|---|
| Table 1 | ATCS Minimum Qualifications by Applicant Source | 11 |
| Table 2 | Merit System Principles | 14 |
| Table 3 | Outtz and Associates Barrier Analysis Summary | 16 |
| Table 4 | Stakeholder Insights Regarding Barrier Analysis | 17 |
| Table 5 | SME Interviews | 19 |
| Table 6a | MQ: System Qualifications (from Applied) - Overall and By Applicant Source - Cumulative Applications Analysis - WHITE VS. AFRICAN AMERICAN | 30 |
| Table 6b | MQ: System Qualifications (from Applied) - Overall and By Applicant Source - Cumulative Applications Analysis - WHITE VS. HISPANIC | 31 |
| Table 6c | MQ: System Qualifications (from Applied) - Overall and By Applicant Source - Cumulative Applications Analysis - MALE VS. FEMALE | 31 |
| Table 6d | System Qualifications (from Applied) - Unique Analysis | 97 |
| Table 6e | System Qualifications (from Applied) - Cumulative Analysis | 99 |
| Table 7a | MQ: HR Qualifications (from System Qualifications) - Overall and By Applicant Source - Cumulative Applications Analysis - WHITE VS. AFRICAN AMERICAN | 32 |
| Table 7b | MQ: HR Qualifications (from System Qualifications) - Overall and By Applicant Source - Cumulative Applications Analysis - WHITE VS. HISPANIC | 32 |
| Table 7c | MQ: HR Qualifications (from System Qualifications) - Overall and By Applicant Source - Cumulative Applications Analysis - MALE VS. FEMALE | 33 |
| Table 7d | HR Qualifications Review (from System Qual) - Unique Analysis | 101 |
| Table 7e | HR Qualifications Review (from System Qual) - Cumulative Analysis | 103 |



# TABLE OF CONTENTS

| | | |
|---|---|---|
| Table 8a | MQ: HR Qualifications (from Applied) - Overall and By Applicant Source Cumulative Applications Analysis - WHITE VS. AFRICAN AMERICAN | 34 |
| Table 8b | MQ: HR Qualifications (from Applied) - Overall and By Applicant Source Cumulative Applications Analysis - WHITE VS. HISPANIC | 34 |
| Table 8c | MQ: HR Qualifications (from Applied) - Overall and By Applicant Source Cumulative Applications Analysis - MALE VS. FEMALE | 35 |
| Table 8d | HR Qualifications Review (from Applied) - Unique Analysis | 105 |
| Table 8e | HR Qualifications Review (from Applied) - Cumulative Analysis | 107 |
| Table 9a | AT-SAT Pass for Public Source - Unique Applicant Analysis - AFRICAN AMERICAN, HISPANIC, & FEMALE GROUPS | 35 |
| Table 9b | AT-SAT Pass (Public Source Only) - Unique Analysis | 109 |
| Table 10a | Geographic Location Preferences: Overall and By Applicant Source - Cumulative Applications Analysis – WHITE vs. AFRICAN AMERICAN | 37 |
| Table 10b | Geographic Location Preferences: Overall and By Applicant Source - Cumulative Applications Analysis – WHITE vs. Hispanic | 37 |
| Table 10c | Geographic Location Preferences: Overall and By Applicant Source - Cumulative Applications Analysis – Male vs. Female | 37 |
| Table 10d | Geographic Location Preferences - Cumulative Analysis | 110 |
| Table 11 | Impact of Location Preferences on African Americans | 39 |
| Table 12a | Overview of Adverse Impact by Individual CSP | 41 |
| Table 12b | CSP - Selected (from Referred) - Unique Analysis | 112 |
| Table 12c | CSP - Selected (from Referred) - Cumulative Analysis | 114 |
| Table 12d | CSP Overall - Selected (from Referred) - Unique Analysis | 116 |
| Table 12e | CSP Eastern Service Area - Selected (from Referred) - Unique Analysis | 120 |
| Table 12f | CSP Central Service Area - Selected (from Referred) - Unique Analysis | 124 |
| Table 12g | CSP Western Service Area - Selected (from Referred) - Unique Analysis | 128 |
| Table 13 | Examination of Impact of Lowering AT-SAT Cutoff Score | 44 |
| Table 14a | Interview, Medical, Suitability/Security, & Hire Decision - Unique Applicant Analysis - WHITE VS. AFRICAN AMERICAN | 47 |
| Table 14b | Interview, Medical, Suitability/Security, & Hire Decision - Unique Applicant Analysis - WHITE VS. HISPANIC | 47 |
| Table 14c | Interview, Medical, Suitability/Security, & Hire Decision - Unique Applicant Analysis - MALE VS. FEMALE | 48 |
| Table 14d | Interview Pass - Unique Analysis | 132 |
| Table 14e | Medical Pass - Unique Analysis | 133 |
| Table 14f | Conditional Suitability Pass - Unique Analysis | 134 |
| Table 14g | Final Suitability Pass - Unique Analysis | 135 |
| Table 14h | Both Conditional & Final Suitability Pass - Unique Analysis | 136 |
| Table 14i | Hire Decision Pass - Unique Analysis | 137 |
| Table 15a | Overall Hiring Process Decisions - Unique Applicant Analysis - WHITE VS. AFRICAN AMERICAN | 49 |
| Table 15b | Overall Hiring Process Decisions - Unique Applicant Analysis - WHITE VS. HISPANIC | 49 |
| Table 15c | Overall Hiring Process Decisions - Unique Applicant Analysis - MALE VS. FEMALE | 49 |
| Table 15d | Overall Process: Applied to Hired - Unique Analysis | 138 |
| Table 15e | Overall Process: Fully Qualified to Hired - Unique Analysis | 139 |
| Table 16 | HR Screen Comments | 90 |
| Table 17 | Referral Action Comment Recode | 93 |
| Table 18 | Overall Security Score | 94 |
| Table 19 | CSP Dates | 96 |



# Chapter 1

## EXECUTIVE SUMMARY

A Barrier Analysis of the FAA's Air Traffic Control Specialist (ATCS) centralized hiring process was recently completed by Outtz and Associates (October, 2012). This analysis was guided by EEOC's Management Directive 715 & the Uniform Guidelines on Employee Selection Procedures (1978). The results of that analysis indicated that barriers exist for certain protected groups on four of the seven critical decision points that comprise the ATCS centralized hiring process.  APT*Metrics* was contracted by the FAA's Office of Human Resources (OHR) in December, 2012 to conduct a detailed root cause analysis of the identified barriers and establish the foundation for corrective interventions. A summary of our approach, findings and recommendations are discussed below.

While there are 10 steps in the overall hiring process, from Vacancy Announcement (Step 1) through to Firm offer Letter (Step 10), seven of these steps require personnel actions that impact applicant flow and were therefore targeted for review by the barrier analysis (**See Chapter 2**). These seven decision points are:

- **Minimum Qualifications (MQs**).  The ATCS minimum qualifications are customized to each applicant source. The minimum qualification review is carried out in two stages: automated system screening and manual HR review.

- **Air Traffic Selection and Training (AT-SAT).** The AT-SAT is a computer-based selection test battery designed to assess key ATCS worker requirements, aptitude, and personal characteristics associated with success as an ATCS.  The AT-SAT is only relevant for individuals applying from CTI, General Public, and VTP applicant sources.

- **Generation of Referral Lists.**  For all applicant sources except General Public, referral lists are generated separately for each applicant source and geographic location that has vacancies.  Non-referral would occur if an applicant failed to specify a location preference or if the location preferences did not align with state/facility hiring needs.

- **Centralized Selection Panel (CSP).** Once referral lists have been generated, a CSP is convened to review these lists and select individuals to fill specific facility vacancies. The CSP is comprised of management representatives who have expertise in the ATCS occupation and knowledge of the facilities within their respective regions.

- **Interview.**  Applicants who are selected during the CSP are invited to participate in an interview with a facility manager, typically at the facility that is closest to the address on record for the applicant.

- **Medical Screen.** The medical screen consists of both physical and psychological components.



- **Security Clearance.**  The security screen consists mainly of a primary screen (termed Conditional Suitability).  If the primary screen is insufficient to make a determination, a subsequent secondary screen (termed Final Suitability) is then conducted.

The decision points described above combine to form a fairly complex hiring process.  This complexity is due to a number of factors including the use of multiple applicant sources with different minimum qualifications, mixed uses of the AT-SAT, application knock-out factors unrelated to qualifications (e.g., location preference), a potentially multi-year hiring process from the point of application to hire, and referral lists organized by applicant source.  Each of these factors is addressed in this report in terms of its impact on protected groups as well as how it can be changed or improved.

Based upon the Barrier Analysis and FAA stakeholder responses to this analysis (including ATO, CAMI, and AHR), a root-cause analysis was blueprinted to thoroughly investigate each of the barriers identified and determine whether any additional hurdles existed to the fair and accurate selection of candidates for the ATCS position (**See Chapter 3**).

The process for conducting this root cause analysis required a thorough understanding of how the various decision points of the hiring process impact candidates' "survival" from application through to the hire decision.  Both qualitative and quantitative analyses were employed to interpret the impact of each decision point and tease out the underlying causes of differential pass rates for protected group members.

*Qualitative Review*

The qualitative review incorporated stakeholder interviews, site visits, a review of existing FAA documentation, and an evaluation of recommendations generated through the *FAA Independent Review Panel on the Selection, Assignment and Training of Air Traffic Control Specialists (IRP)*. Among the insights gleaned during this review was the need to: 1) increase standardization, consistency and documentation across all decision points in the hiring process, 2) establish the job-relatedness of all decision points in the hiring process, 3) minimize subjectivity, particularly in the MQ and CSP steps, 4) improve data capturing and tracking capabilities, and 5) establish a central group to oversee and improve the ATCS hiring process.  This phase of the study provided additional context to the barrier analysis and allowed for a thorough understanding of how the hiring system works, the unique challenges involved in balancing applicant flow with adverse impact, and provided direction for the types of analyses that would lead to sustainable interventions.

*Quantitative Review*

The quantitative review relied on data housed in the AVIATOR system between 2006 and 2011, as well as AT-SAT testing data provided by CAMI. This phase of the study began with a high-level evaluation of where important subgroup differences are occurring in the hiring process.

<u>Survival Analysis</u>. When examining the underlying diversity of the various applicant sources, the most dramatic difference was found between the Collegiate Training Initiative (CTI) source and



all other applicant sources with respect to African American representation.  African American applicants comprise only 5% of the CTI pool compared to an average of 34% African American representation across the non-CTI applicant sources. While the CTI applicant source is relatively small compared to the other sources, the CTI subgroup differences are magnified when considering the relatively high "survival" rate of CTI candidates through the hiring process.

An analysis of survival rates by race, gender, and applicant source was conducted for each step in the hiring process. This applicant flow information provided insights into which of the decision points in the hiring process serve to disproportionately screen out minority candidates and certain applicant sources. These analyses illustrated a number of important findings:

- Nearly all applicant screening occurs prior to the interview stage, primarily during the MQ and CSP stages of the hiring process;

- Advancement in the hiring process is clearly correlated with race. White applicants pass the MQ screening and CSP stages at a significantly higher rate than African American applicants;

- Advancement in the hiring process is clearly correlated with applicant source. CTI applicants pass the MQ qualification and CSP hurdles at a significantly higher rate than all other applicant sources, and

- MQ screening dramatically alters the overall diversity of the applicant pool that moves forward in the hiring process. For example, prior to any screening, 32% of all applicants are African Americans and 48% are White. However, following the MQ screening, 16% of all applicants moving forward are African American while 65% are White.  Moreover, this is the stage at which at least 80% of applicants from the most diverse sources are eliminated.

The applicant flow information above highlights several important points which were used to drive our subsequent analyses.  First, the steps from application to CSP selection are the most likely places for systematic adverse impact simply because these steps are responsible for the vast majority of applicant fails.  Second, African Americans stand out as having a very different survival rate for these earlier hurdles.  Third, applicant sources show very different demographics.  Because the CTI source is much less diverse, the CTI source itself can confound analyses by ethnicity.

<u>Root Cause Analyses by Decision Point.</u>  Using the applicant survival analysis, the results of the Barrier Analysis, and our in depth interviews with SMEs, analyses were conducted to evaluate the underpinnings of this differential impact across the hiring decision points.

*MQ Stage*. The MQs were developed to be tailored to each applicant source and therefore differ significantly across sources. This approach impacts pass rates, which happen to vary considerably by applicant source. Results of our adverse impact analyses indicate that the overall MQ stage produces adverse impact for African Americans and Hispanics for all applicant sources except CTI (98% of CTI candidates pass through the MQ stage).  Adverse impact was also found for Females for all applicant sources except CTI and General Public.



*Air Traffic Selection and Training (AT-SAT)*. The AT-SAT serves as a hurdle after qualification for the General Public and VTP applicants and as a minimum qualification for CTI applicants. All three of these sources must score at least a 70 to pass their respective AT-SAT hurdle. However, the AT-SAT is used again during the CSP process to differentiate applicants into "qualified" and "well qualified" bands (see below). When used as a minimum qualification with a 70% pass score, approximately 95% of applicants pass the exam with no resulting adverse impact for African Americans, Hispanics, and Females

*Referral Stage*. The referral decision point is an automated decision based solely on the location preference provided by applicants. If the applicant chooses a location for which an ATCS candidate need exists, then the applicant is referred for that location.[4] However, the use of location preferences as a basis for the referral is problematic. Our analyses revealed that referral rates vary considerably by applicant source. Applicants from the CTI, CTO, and Reinstatement sources were referred at twice the rate of applicants from the RMC and VRA sources, and these also happen to be the sources with the largest percentage of African Americans. Ultimately, African American diversity is reduced disproportionality in the overall process because African American membership is highest for those sources that are referred at much lower rates. Given that the referral rates are so different (i.e., 97% vs. 47%) suggests that perhaps the CTI, CTO, and Reinstatement sources are better informed as to the location of open positions.

*CSP Stage.* For the CSP process, adverse impact was observed for African Americans and Females, for specific panel sessions, though no consistent pattern of adverse impact was observed over the 2008-2011 time period. One significant finding was that adverse impact only occurs for African Americans within the CSP when national Public announcements are used. This is due largely to how the AT-SAT is used to prioritize the selection of General Public applicants.

Currently, applicants are split into two bands based on predetermined score ranges. Scores less than 85 and greater than or equal to 70 are considered to be "qualified." Scores at or above 85 are considered to be "well qualified." Applicants who score in the "well qualified" band are given substantial preference in CSP selection decisions.

Applicants who score in the "Well Qualified" band on the AT-SAT receive priority over those scoring in the "Qualified" band. White applicants score in the preferred band at a disproportionately higher rate than racial minorities (e.g., 70% White vs. 36% African American and 47% Hispanic).

---

[4] The referral process for General Public applicants is slightly different in that applicants are placed on national referral lists and are therefore considered for all locations.



*Interview Stage.* Almost 100% of applicants who were interviewed passed the interview. No race or gender adverse impact was found for the interview. The interview questions and answers can be found online.

*Medical Stage.* More than 90% of applicants passed the medical screen.  No race or gender adverse impact was found for the medical screening.

*Security Stage.* Selection rates for all groups remained very high (greater than 95%).  No race or gender adverse impact was found for passing the overall security screening process.

*Overall Hiring Process.* Adverse impact was found at several hurdles in the ATCS selection process, as well as across the overall ATCS selection process. Specifically, two of the three focal groups (African Americans and Females) have disproportionately lower pass rates than White and Male applicants for both minimum qualification hurdles (automated and HR) as well as for the CSP selection process. Regarding the minimum qualification hurdles, adverse impact was found within most of the applicant sources as well. Adverse impact was not observed for CTI at any point in the hiring process, though the qualification rate was very high in general.  Importantly, adverse impact for the CSP process does vary considerably by individual CSP event and appears to be a function of using General Public source national referral lists.  Also, the current method of using location preferences is decreasing applicant diversity due to vastly different referral rates for the applicant sources.

A summary of our findings along with a number of recommendations for each of the decision points that were identified as problematic are presented in **Chapter 4**.  In addition, specific suggestions to improve assessment tool vulnerabilities, process inefficiencies, and overall design challenges that need to be addressed to ensure the sustainability of recommended interventions over time are discussed.

**STEP 1: Vacancy Announcements.**  A structured process, involving a job analysis and formal validation, should be conducted to determine and validate the differentiating criteria for ranking and deciding upon which applicant sources should be drawn upon for each open position.

In addition, it is recommended that the FAA continue community outreach efforts to educate applicants about the ATCS occupational series and more broadly, establish a national recruitment outreach and education program around the ATCS position.

**STEP 2: Minimum Qualifications.**  It is strongly recommended that the MQs be reviewed against the job analysis and revised and validated accordingly.  Additionally, every attempt should be made to build consistent MQs across recruitment sources.

Consideration should also be given to the use of preferred qualifications (PQs) that could be used to differentiate between a large number of candidates meeting the MQs and other



qualification requirements (e.g., passing the AT-SAT).  As with MQs, job relevance and potential for adverse impact must be considered for PQs.

A tracking system should also be established to evaluate MQ screening decisions for accuracy and adverse impact on an ongoing basis.

**STEP 3: AT-SAT**.  Roughly 95% of applicants score at or above the passing score of 70, however, this rate drops precipitously and produces significant adverse impact for the cutoff associated with the well qualified band. Operationally, the cutoff score for selection in the CSP is 85 since applicants in the "qualified" band are rarely selected.

One potential solution to this issue is to replace the use of the AT-SAT within the CSP with a measure that can differentiate candidates without increasing adverse impact.  For example, the use of validated preferred qualifications that are collected during the application process could be used for this purpose.

In terms of the AT-SAT itself, it is recommended that supplemental validation research be conducted to confirm its relevance to the job. Specifically, the AT-SAT should be reviewed against an updated job analysis to ensure that it is still measuring the most important requirements for success in the ATCS position.

**STEP 4: Generation of Referral Lists.**  It is recommended that the air traffic controller application form be changed so that applicants could select the "anywhere in the nation" option. They should also be provided with information as to which facilities have openings.  This is in line with the Independent Review Panel's recommendation (ATO & AHR: Review of Independent Review Panel (IRP) Recommendations & Current Projects, November 6, 2012).

**STEP 5: Centralized Selection Panel (CSP).**  It is recommended that the full CSP process design be evaluated for efficiency, accuracy and fairness.  It is quite likely that alternative approaches to the CSP model would result in more precise, fair outcomes along with tremendous cost savings.  For example, there may be potential to automate much of the current decision making localized in the CSP selection process.  Under this scenario CSP panelists could operate in more of a final review/quality control role.

It will also be critical to implement a rigorous evaluation of the CSP decision making process to ensure that the process is operating as intended.  Initially it will be important to closely monitor and oversee a full cycle of CSPs to ensure real-time decisions are fair and job-related. Decision making in the CSP should continue to be monitored by HR on an on-going basis thereafter.

**STEP 6: Interview**.  The interview has become more of a formality in the ATCS hiring process as almost 100% of the candidates pass.  It is recommended that new interview content be developed and validated, using the job analysis as the driver of which competencies need to be measured.

Additionally, it is recommended that training be provided to all hiring managers involved in conducting the interviews to ensure they understand how to fairly and accurately conduct the



interview process. Training should include "frame of reference" exercises in order to help calibrate judgments and ratings across hiring managers.

**ATCS Overall Design Considerations**

The current ATCS selection process is highly decentralized, with decision making and process tracking occurring across multiple departments and organizations.  The absence of a clear structure and accountability for the full selection process results in significant challenges to the evaluation, ongoing improvement, and long-term success of the program.  It is our recommendation that a single organization take charge of this process so that it can be centrally managed from announcement through to placement into the FAA Academy.  The organization best positioned to "own" and run this process is the Office of Human Resources.

A centralized process, housed in AHR, would enable improved standardization and targeted outreach of the recruitment process, an improved ability to track and evaluate the hiring process, and enhanced coordination of the entire process.



# Chapter 2

## OVERVIEW, BARRIER ANALYSIS AND STAKEHOLDER INSIGHTS REGARDING THE FAA ATCS SELECTION PROCESS

In order to set the context for these analyses, a brief description of the steps and decision points that comprise the ATCS hiring process is provided below.

**Overview of ATCS Hiring Process**

**STEP 1: Vacancy Announcements.**  Applicants for ATCS positions must apply online to formal vacancy announcements.  The vacancy announcements are specific to an applicant hiring source[5].  Applicant sources used in the ATCS hiring process include the following:

- Reinstatements/Transfers
  - Former FAA controllers
  - PATCO
  - Department of Defense (DOD)
- Former military controllers
  - Veterans' Recruitment Appointment (VRA)
  - Retired Military Controllers (RMC)
- Graduates from FAA accredited collegiate programs
  - Collegiate Training Initiative (CTI)
- General Public
  - Includes Veterans Training Program (VTP) candidates
- Control Tower Operators (CTO)

The mix of applicant sources chosen during any hiring period is based on a combination of the number of positions that need to be filled and preferences of the FAA for particular applicant sources.  Notably, candidates can apply to multiple applicant source announcements at any given time.

Announcements, when made, are also designated to a specific geographic area.  "National" announcements (i.e., Throughout the US/Nation) are typically issued to cover hiring needs across the US and US territories, though announcements have also been issued for specific states and facilities at different points in time.  When applicants apply to an announcement, the applicant must indicate up to two location preferences.  For example, for an announcement designated "Throughout the Nation," an applicant might indicate both "Illinois" and "Indiana." These location preferences can be changed by the applicant until the announcement is closed.

---

[5] There are two exceptions to the announcement and application process. First, in 1993, a list of reinstatement and transfer eligible ATCS who were separated from the FAA as a result of the PATCO job action of 1981 was created (known as the PATCO list). This list represents an additional source of applicants. Vacancy announcements are not issued for PATCOs.  Second, exceptions were accorded to Flight Service Station (FSS) employees whose positions were eliminated when FSS functions were contracted out,



*Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process*

For all applicant sources except General Public, location preferences dictate which location-specific referral list(s) (e.g., RMC-Illinois referral list) an applicant can be placed on once the applicant is deemed fully qualified.  Qualified General Public applicants, however, are placed on a national referral list.

**STEP 2: Minimum Qualifications (MQs).**  All applications, regardless of applicant hiring source, are then screened against the established minimum qualifications. The ATCS minimum qualifications are customized to each applicant source.  Table 1 below outlines the minimum qualifications by applicant source.

### Table 1.  ATCS Minimum Qualifications by Applicant Source

|  | VRA | RMC | CTO | REIN | PUBLIC | CTI |
|---|---|---|---|---|---|---|
| **Citizenship** | U.S. citizen | | | | | |
| **Language** | Must be able to speak English clearly enough to be understood over radios, intercoms, and similar communications equipment | | | | | |
| **Age** | Maximum entry age of 31* | | | | | |
| **Experience or Education** | 52 consecutive weeks of certified ATC experience | | Experience in a military or air traffic tower facility | ATCS in FAA / DoD **-CPC**: Federal Civilian CPC or FPL **-DOD**: 52 wks certified ATC experience | 3 yrs progressive responsible FT work experience OR Bachelor's degree OR Comb. of experience / education equal to 3 yrs OR Alternative requirements | Successful completion of FAA-approved curriculum with university rec |
| **Ratings, Certifications, and/or Assessments** | -- | ATCS certification or facility rating according to FAA standards | Valid CTO certificate with facility rating of Tower/Cab | ATCS certification or facility rating according to FAA standards | -- | AT-SAT score of 70 or higher |
| **Eligibility** | Veterans' Recruitment Appointment eligibility | On terminal leave pending retirement from active duty military svc. or retired from active duty on or after 1999-09-17 | -- | -- | -- | Within eligibility time period from graduation |

*Some applicant sources (i.e., VRA, Reinstatement, CTI) allow for applicants to be over the age of 31 as long as the applicant's initial appointment as an ATCS occurred prior to turning 31.  Additionally, the maximum entry age requirement does not apply to the RMC applicant source.



The minimum qualification review is carried out in two stages: automated system screening and manual HR review. As part of the application process, applicants are required to answer a series of "Yes/No" questions to indicate whether or not they meet specific minimum requirements (e.g., age, experience). The minimum qualifications screening process begins with an automated system review of applicant responses to these online screening questions. Applicants are also required to provide specific documentation to support their responses. Applicants who pass the automated screening are then subject to further review by HR representatives to ensure they in fact meet the source-specific minimum qualifications. This includes a detailed review of the application, including work history (if relevant) and required supporting documentation (e.g., facility ratings, veteran's service forms, certifications). Once an applicant has passed both of the qualification stages (automatic and manual HR review), they are considered to be fully qualified.

Note, there is no policy that prohibits an individual from applying through multiple applicant sources within a given hiring period. If an applicant chooses to apply to multiple applicant source announcements, this can result in cases of the same applicant both meeting and not meeting the minimum qualifications of the ATCS position within the same hiring period.  Also, due to age requirements and military retirement dates, it is possible for a candidate who is minimally qualified at one point in the process to later be disqualified.

**STEP 3: Air Traffic Selection and Training (AT-SAT).**  The AT-SAT is a computer-based selection test battery designed to assess key ATCS worker requirements, aptitude, and personal characteristics associated with success as an ATCS (Ramos, Heil, & Manning, 2001). The AT-SAT is only relevant for individuals applying to CTI, General Public, and VTP announcements, though the timing of when the test must be taken and passed differs between these applicant sources.  Individuals applying to a VTP and General Public announcement who have been determined to be fully qualified based on the prior minimum qualification screening must then take and pass the AT-SAT in order to receive further consideration in the ATCS hiring process (i.e., be placed on a referral list). Individuals applying to a CTI vacancy announcement must first pass the AT-SAT before they can apply to a CTI vacancy announcement.

A score of 70 is required to pass the AT-SAT.  Roughly 95% of applicants score at or above this passing score.

If the announcement was for a specific state or facility, these applicants must travel to that state to sit for the exam.

Notably, the AT-SAT scores of CTI, VTP, and General Public applicants are also considered during the Centralized Selection Process (CSP) which occurs later in the ATCS hiring process. Here, applicants are placed into either a Well Qualified band (score of 85 or higher) or a Qualified band (score between 70 and 84.9).  A score of 85 or higher has become the operational cut score during the CSP selection phase.  This is discussed in more detail below.

**STEP 4: Generation of Referral Lists.**  Applicants who pass the previous stages of the ATCS hiring process are then referred on to the CSP for further consideration.  More specifically,



referral lists are automatically generated on the basis of the applicant's previously specified location preferences. The only reasons an applicant who passed all prior stages of the ATCS hiring process would not be referred on to the CSP is if they failed to specify any location preference or if the applicant's location preferences did not align with state/facility hiring needs.

For all applicant sources except General Public, referral lists are generated separately for each applicant source and geographic location that has vacancies (e.g., RMC-Illinois, CTI-Illinois). Applicants on a specific state referral list can be considered by the CSP for selection for any facility vacancies within that state.

For the General Public applicant source, a single "national" referral list is generated containing those General Public applicants who passed all prior stages of the ATCS hiring process. Referred General Public applicants can be considered by the CSP for selection for any facility vacancy within the US or US territories.

The ordering and presentation of candidates on referral lists varies by applicant source. The following summarizes the rules for each applicant source:

> *Reinstatements/Transfers:* Candidates are sorted by alpha order
>
> *Veterans' Recruitment Appointment (VRA):* Candidates are sorted by Priority Veterans Preference
>
> *Retired Military Controllers (RMC):* Candidates are sorted by Priority Veterans Preference
>
> *Veterans Training Program (VTP):* Candidates are first sorted by AT-SAT score category grouping (85 and above, 70 to 84.9); candidates are then presented in random order within these two categories
>
> *Collegiate Training Initiative (CTI):* Candidates are first sorted by AT-SAT score category grouping (85 and above, 70 to 84.9); candidates are then sorted by Priority Veterans Preference and secondarily presented in random order within these two categories
>
> *General Public:* Candidates are first sorted by AT-SAT score category grouping (85 and above, 70 to 84.9); candidates are then sorted by Priority Veterans Preference and secondarily presented in random order within these two categories
>
> *Control Tower Operators (CTO):* Candidates are sorted by Priority Veterans Preference.

**STEP 5: Centralized Selection Panel (CSP).** Once referral lists have been generated, a CSP is convened to review the referral lists and select individuals to fill specific facility vacancies. The CSP is comprised of management representatives who have expertise in the ATCS occupation and knowledge of the facilities within their respective regions. Facility selections must be made from amongst the pool of applicants referred on either the relevant state-specific list or national General Public referral list. Panelists have access to applications and vitas (if provided) to



Individuals who did not fully complete an application or did not submit all required documents were excluded

If an individual was selected from a referral list, they were removed from other referral lists within that same announcement (i.e. they cannot be hired twice)

Gender and ethnicity were filled in for individuals who may have indicated these values on an earlier or later application but did not indicate it on a given application

Individuals who declined somewhere during the process as indicated by referral actions and/or comments were excluded from analyses

Applications for announcements that did not have resulting location-specific referral lists (e.g. General Public) were assigned to all possible state/territory CSP location pools. For those selected from these lists, the location/facility that the applicant was selected for was extracted from the referral comments to withhold that individual from other referral list pools to ensure a selected applicant was not counted as an applicant elsewhere

Comments found in the both the HR MQ screen and the referral notations were categorized and used in data cleaning rules. Comments were coded using a combination of manual review and automated categorization based on key terms.

## Applicant Flow (Survival) Analysis

Once the above data decision rules were put into place, we examined the flow of applicants using a variety of approaches. Importantly, our first goal was to diagnose at a high level where important differences in the hiring process may be occurring. To this end, we first examined the diversity of applicants within the ATCS applicant sources. We then examined applicant survival rates for ATCS decision points by race, gender and applicant source. The survival charts presented below visually illustrate the flow of applicants within each racial and gender subgroup across the hiring process. This approach helps highlight the parts of the hiring process that are resulting in the largest percentage decrease of minority applicants. Additionally, we examined the proportional racial and gender representation among those surviving each phase in the hiring process.

Figure 1 presents the total number of unique applicants by source for the 2008-2011 time period. While the General Public makes up the largest percentage of applicants, it is important to note that this applicant source is not consistently used across announcements.



*Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process*

**Figure 1.  Total Applicants by Source (2008 – 2011)**



As can be seen below in Figure 2, applicant sources vary considerably in their respective demographic makeup.  Importantly, representation of African Americans and Females is significantly lower in the CTI source.

**Figure 2.  Applicant Demographics by Source (At Point of Application)**





*Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process*

We then examined the survival of all applicants through the entire hiring process to understand which ATCS selection hurdles were screening out the most applicants.  Figure 3 displays the percentage of applicants that remained in the ATCS selection process at each hurdle.  This figure reveals three important insights.  First, both the automated and HR minimum qualification screen reduce the applicant pool substantially.  Second, the CSP is also responsible for a significant reduction in applicants.  Lastly, after the point of the CSP, the selection rates for applicants are exceptionally high, suggesting little practical adverse impact is likely to exist in the later stages of the process.

**Figure 3.  Total Applicant Flow – Applicant Survival (2008 – 2011)**



Figure 3 presents the percentage of the original applicant pool passing the hurdle.  Results are based on unique applicant counts. Due to missing data, post CSP hurdle percentages were calculated using the overall estimated pass rate of each hurdle.

Figure 4 displays the proportional RNO representation of candidates at each stage from initial application through the CSP. The figure presents several key insights. First, MQ screening dramatically alters the overall diversity of the applicant pool that moves forward in the hiring process. For example, prior to any screening, 32% of all applicants are African Americans and 48% are White. However, following the MQ screening, 16% of all applicants moving forward are African American while 65% are White.  Moreover, this is the stage at which at least 80% of applicants from the most diverse sources are eliminated. Second, the proportion of non-White and non-African American applicants relative to all applicants surviving each stage in the process is virtually constant across the process. However, relative to African American representation in the initial applicant pool, African Americans become increasingly underrepresented within the surviving applicant pool as the hiring process progresses.



*Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process*

**Figure 4.  Candidate Pool Representation Through to CSP by Ethnicity**



Figure 5 displays the survival of applicants across the ATCS selection process by ethnicity.  The figure presents several key insights.  First, and similar to Figure 3, the vast majority of applicant screening occurs prior to the interview for all ethnicities.  Second, substantial differences exist between ethnic groups.  Whites are passing the minimum qualification review at a much higher rate than other groups.  A large effect is apparent for African Americans, with African Americans passing the minimum qualification and CSP hurdles at a much lower rate than Whites.



*Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process*

**Figure 5.  Total Applicant Flow by Ethnicity – Applicant Survival (2008 – 2011)**



Figure 5 presents the percentage of the original applicant pool passing the hurdle.  Results are based on unique applicant counts.  Due to missing data, post CSP hurdle percentages were calculated using each group's estimated pass rate.

Figure 6 displays the survival of applicants across the ATCS selection process by gender.  The figure also provides several insights.  First, the vast majority of applicant screening occurs prior to the interview for both genders.  Second, differences exist between men and women, particularly early on in the process during the minimum qualification screening.



*Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process*

**Figure 6. Total Applicant Flow by Gender – Applicant Survival (2008 – 2011)**



Figure 6 presents the percentage of the original applicant pool passing the hurdle. Results are based on unique applicant counts. Due to missing data, post CSP hurdle percentages were calculated using each group's estimated pass rate.

Figure 7 displays the survival of applicants across the ATCS selection process by applicant source. Similar to Figure 3, the vast majority of applicant screening occurs prior to the interview for all groups. More importantly, the figure illustrates that there are substantial differences in survival rates across the applicant sources. CTI applicants are passing the minimum qualification and CSP hurdles at a drastically higher rate than all other applicant sources. It is important to note here that survival rates in the hiring process should not be interpreted as indicative of the caliber of the applicants. Caliber is an empirical question, whereas our survival rates are merely descriptive of how groups of applicants fare in the hiring process. The fact that CTI applicants are hired at a significantly higher rate than any other applicant sources does not mean this is the strongest source of applicants.



*Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process*

**Figure 7.  Total Applicant Flow by Source – Applicant Survival (2008 – 2011)**



Figure 7 presents the percentage of the original applicant pool passing the hurdle.  Results are based on unique applicant counts. Due to missing data, post CSP hurdle percentages were calculated using each group's estimated pass rate.

**Summary of Applicant Flows and Analysis Considerations**

The applicant flow information above highlights several important points which were used to drive our subsequent analyses.  First, nearly all screening (i.e., hurdle failures) of applicants occurs prior to the interview process.  The steps from application to CSP selection are the most likely places for systematic adverse impact simply because these steps are responsible for the vast majority of applicant fails.  Second, African Americans stand out as having a very different survival rate for these earlier hurdles.  Third, applicant sources show very different demographics.  Because the CTI source is much less diverse, the CTI source itself can confound analyses by ethnicity.   We analyze sources distinctly throughout the process to determine if effects are due to applicant source alone.

Using the applicant survival analysis, the results of Outtz and Associates (October, 2012) Barrier Analysis, and our in depth interviews with SMEs, we developed a plan to best model the ATCS selection process so we could further evaluate potential points of adverse impact.  The following section outlines our approach and decision rules used in our quantitative analysis.



**FAA ATCS Selection Hurdle 4: Referral.**  Adverse impact was not analyzed at the Referral decision point in our primary analyses because this screen is purely automated based on the geographic location preferences as discussed above.  Once an applicant is qualified (and if a General Public applicant passes the AT-SAT), that applicant is automatically placed on a referral list if they indicated a location that has an open vacancy.  If the applicant chose a location for which no identified ATCS candidate need exists, the applicant is not referred (the only exception is General Public applicants who are placed on national referral lists and are therefore considered for all locations).

Given the automatic nature of the process and our data cleaning rule that excluded individuals who were qualified but not referred due to location preferences, APT*Metrics* did not analyze the Referral decision point with our final, clean database.  However, because there could be significant group differences in how location preferences impact selection rates, we did create a secondary data set specifically to evaluate the impact of location preferences in a separate analysis.

The data cleaning rules used to produce the data set for this analysis are distinct from those found in Appendix D and are listed below:

1) The analysis does not exclude applicant declines, incomplete applications, and applicants already selected elsewhere, which are exclusion rules used in our primary analysis.
2) The analysis approach uses a cumulative count rather than a unique count.  From a process perspective, applicants can be referred/not referred many times, and it is important to use a cumulative perspective to capture these potential differences.
3) The analysis excludes General Public applicants who failed the AT-SAT.  These applicants would not have been eligible for referral and therefore it is not known if location or the AT-SAT led to the applicants' failure to be referred.

As can be seen in Tables 10a-c, the use of geographic location preferences does not result in adverse impact within or across applicant sources for race or gender (see Table 10d in Appendix E for full results). However, this practice does serve to disproportionately reduce the diversity and the representation of certain applicant sources in the overall hiring process.



*Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process*

**Table 10a.** *Geographic Location Preferences: Overall and By Applicant Source - Cumulative Applications Analysis*
**WHITE VS. AFRICAN AMERICAN**[*]

| | # African Americans Considered | # Whites Considered | # African Americans Selected | # Whites Selected | # Expected African Americans Selected | Shortfall # | AIR | Standard Deviation Difference |
|---|---|---|---|---|---|---|---|---|
| **Overall** | **6,897** | **33,752** | **4,242** | **24,301** | **4,843** | **601** | **0.85** | **17.37** |
| CTI | 605 | 7,651 | 598 | 7,575 | 599 | 1 | 1.00 | 0.39 |
| Other - CTO | 262 | 2,472 | 251 | 2,361 | 250 | -1 | 1.00 | -0.22 |
| Public | 3,702 | 12,051 | 2,357 | 9,016 | 2,673 | 316 | 0.85 | 13.24 |
| Reinstatement/DoD CPC | 61 | 775 | 61 | 744 | 59 | -2 | 1.04 | -1.59 |
| RMC | 486 | 1,344 | 237 | 643 | 234 | -3 | 1.02 | -0.35 |
| VRA | 1,781 | 9,459 | 738 | 3,962 | 745 | 7 | 0.99 | 0.35 |

**Table 10b.** *Geographic Location Preferences: Overall and By Applicant Source - Cumulative Applications Analysis*
**WHITE VS. HISPANIC**[*]

| | # Hispanics Considered | # Whites Considered | # Hispanics Selected | # Whites Selected | # Expected Hispanics Selected | Shortfall # | AIR | Standard Deviation Difference |
|---|---|---|---|---|---|---|---|---|
| **Overall** | **2,672** | **33,752** | **1,874** | **24,301** | **1,920** | **46** | **0.97** | **2.06** |
| CTI | 717 | 7,651 | 714 | 7,575 | 710 | -4 | 1.01 | -1.52 |
| Other - CTO | 136 | 2,472 | 133 | 2,361 | 130 | -3 | 1.02 | -1.27 |
| Public | 948 | 12,051 | 646 | 9,016 | 705 | 59 | 0.91 | 4.53 |
| Reinstatement/DoD CPC | 21 | 775 | 20 | 744 | 20 | 0 | 0.99 | 0.18 |
| RMC | 98 | 1,344 | 47 | 643 | 47 | 0 | 1.00 | -0.02 |
| VRA | 752 | 9,459 | 314 | 3,962 | 315 | 1 | 1.00 | 0.07 |

**Table 10c.** *Geographic Location Preferences: Overall and By Applicant Source - Cumulative Applications Analysis*
**MALE VS. FEMALE**[*]

| | # Females Considered | # Males Considered | # Females Selected | # Males Selected | # Expected Females Selected | Shortfall # | AIR | Standard Deviation Difference |
|---|---|---|---|---|---|---|---|---|
| **Overall** | **9,558** | **39,361** | **6,541** | **27,789** | **6,708** | **167** | **0.97** | **4.15** |
| CTI | 1,887 | 8,349 | 1,862 | 8,266 | 1,867 | 5 | 1.00 | 1.27 |
| Other - CTO | 516 | 2,763 | 497 | 2,634 | 493 | -4 | 1.01 | -0.99 |
| Public | 4,275 | 14,097 | 2,915 | 10,348 | 3,086 | 171 | 0.93 | 6.67 |
| Reinstatement/DoD CPC | 174 | 786 | 166 | 760 | 168 | 2 | 0.99 | 0.83 |
| RMC | 201 | 1,923 | 90 | 920 | 96 | 6 | 0.94 | 0.83 |
| VRA | 2,505 | 11,443 | 1,011 | 4,861 | 1,055 | 44 | 0.95 | 1.95 |

---

[*] *Practical Significance Indices:*
*Shortfall #* = Difference between observed and expected frequencies of minority applicants.
*AIR* = Adverse Impact Ratio: 80% rule was applied.
*Statistical Significance Indices:*
*Standard Deviation Difference* =the proportion difference in standard deviation units: >= |1.96| indicates statistical significance.



*Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process*

As can clearly be seen in Figure 7, referral rates for each applicant source vary considerably. CTI, CTO, and Reinstatement applicants are referred at a much higher rate. It is believed that location preferences are at the root of these differential rates. The use of location preferences also has a differential impact on the referral rate of White and African American applicants, with qualified African Americans being referred at a substantively lower rate than qualified Whites (see Table 11).  As can be seen in Table 11, the sources with the highest African American representation (Public, RMC, and VRA) at the point of referral are also the sources least likely to be referred based on location preferences.  Ultimately, African American diversity is reduced disproportionality in the overall process because African American membership is highest for those sources that are referred at much lower rates.  This effect is also exacerbated by the fact that the Public, RMC, and VRA applications constitute 68% of total applications at the point of referral.

**Figure 8. Percentage Qualified Applicants Who Are Referred (Announcements Throughout Nation/US Only)**



