## Page 1

```
         UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF COLUMBIA

ANDREW J. BRIGIDA;            :
MATTHEW L. DOUGLAS-COOK,      :
                              :
    Plaintiffs,               :
                              :CIVIL ACTION FILE
        vs.                   :NO.: 16-2227 (DLF)
                              :
PETE BUTTIGIEG,               :
Secretary, U.S. Department    :
of Transportation,            :
                              :
    Defendant.                :
------------------------------:


              Deposition of Expert
                   PAUL WHITE
                via videoconference
                 August 27, 2021
                 10:00 a.m. EST




Job No.: 394488
Pages: 1 - 193
Reported by: Marianne Vargas, CCR, CVR-M
```

## Page 2

```
APPEARANCES OF COUNSEL:


ON BEHALF OF THE PLAINTIFFS:

ZHONETTE BROWN, ESQ.
WILL TRACHMAN, ESQ.
COREY BARTKUS, ESQ.
MOUNTAIN STATE LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, CO 80277
303.292.2021


MICHAEL W. PEARSON, ESQ.
CURRY, PEARSON & WOOTEN, PLC
14 West Roosevelt
Phoenix, AZ 85007
602.258.1000


ON BEHALF OF THE DEFENDANT:

GALEN N. THORP, ESQ.
REBECCA CUTRI-KOHORT, ESQ.
ELIZABETH FRY, ESQ.
U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION,
Federal Programs Branch
1100 L. Street, N.W.
Room 12024
Washington, D.C. 20530
202.305.8693


ALSO PRESENT:

Meri Pincock, Paralegal, Mountain States legal
Foundation

Sue Pyas, PD technician
```

## Page 3

```
            INDEX OF EXAMINATIONS

                                          PAGE
PAUL F. WHITE

Examination by MS. BROWN                    5

              INDEX OF EXHIBITS

PARTY
NO.           DESCRIPTION                 PAGE

Exhibit 1     7/28/2021 Expert report of   15
              Paul F. White

Exhibit 2     White article: The Use of    71
              Attrition

Exhibit 3     FAA Excel spreadsheet,      108
              Locality and No Locality

Exhibit Purdue 3  Directive 310 (Perdue)  133

Exhibit 4     2013 CAMI Report, Utility of 158
              Air Traffic Selection and
              Training

Exhibit 5     2012 to 2021 10-year Hiring 165
              Plan

Exhibit 6     2012 FAA New-Hire Training  176
              Performance Semi-Annual Report
```

## Page 4

```
1            P R O C E E D I N G S
2       9:58 a.m.
3            THE COURT REPORTER: Will counsel
4  please stipulate that in lieu of formally swearing
5  in the witness, the reporter will instead ask the
6  witness to acknowledge at their testimony will be
7  true under the penalties of perjury, and that
8  counsel will not object to the admissibility of
9  the transcript based on proceeding in this way?
10           So Ms. Brown, are you in agreement
11 with that?
12           MS. BROWN: Yes, I am.
13           THE COURT REPORTER: And Mr. Thorp,
14 are you in agreement?
15           MR. THORP: Yes.
16           THE COURT REPORTER: All right. And
17 then for the witness, do you hereby acknowledge
18 that your testimony will be true and under the
19 penalties of perjury?
20           THE WITNESS: I do, yes.
21           THE COURT REPORTER: All right. Thank
22 you. Please proceed.
```

### Page 5

1  ----------------------------
2         PAUL F. WHITE,
3  having first been duly sworn or having affirmed
4   to give truthful testimony, was examined and
5           testified as follows:
6             EXAMINATION
7  BY MS. BROWN:
8    Q   Dr. White, again, my name is Zhonette
9  Brown. I represent the Plaintiffs in this matter.
10 I take it from your resume that you've been
11 deposed several times before, correct?
12   A   That's correct, yes.
13   Q   Okay. So just -- obviously over the
14 ground rules. As they said, we can't talk over
15 one another. You have to give verbal answers. I
16 assume you understand you can clarify any answer
17 or correct any answer you need to during the
18 course of the deposition. You can ask me to
19 clarify a question, and you can ask to take a
20 break so long as a question is not pending. Do
21 you understand all that?
22   A   I do, yes.

### Page 6

1    Q   Okay. And is there any reason today
2  why you can't give full and accurate testimony or
3  that your memory would be impaired?
4    A   No.
5    Q   Okay. So let's start with the big
6  question, and then we can get into the sort of
7  whys and wherefores. Do you believe that it is
8  ever appropriate to calculate back pay on a class
9  basis?
10   A   Do I believe it's ever appropriate to
11 calculate back pay on a class basis? Yes, you can
12 calculate back pay on a class basis. Of course
13 there are a lot of details in how you can go about
14 doing that.
15   Q   And what circumstances make it
16 appropriate or not appropriate? What
17 circumstances would prevent someone from
18 calculating back pay on a class basis?
19   A   The idea is to try to calculate back
20 pay in a way that's representative of the damages
21 representative of the class. And if there is not
22 enough information in order to determine which

### Page 7

1  class members might be included and which ones
2  might not be included. Some of them may have
3  received a windfall. Some of them may not. Some
4  of them, in the context of a hiring case, may
5  never have been hired for objective reasons.
6         Those are the kinds of things that
7  would prevent us from calculating a representative
8  calculation of damages for a class. And -- sorry.
9  And if there's variation within the class that has
10 not been accounted for, then you end up making
11 comparisons among people who are not similarly
12 situated, in which case, again, you're not
13 calculating damages that are representative of a
14 class.
15   Q   Okay. So what do you mean when you
16 say similarly situated?
17   A   When you're calculating damages,
18 you're trying to calculate, as you know, the
19 projected earnings of the class members. And in
20 the projected earnings of the class members,
21 you're trying to use -- in a context of a hiring
22 case, you're trying to use the comparators who are

### Page 8

1  similarly situated to the class members.
2    Q   Right. But my question is what do you
3  mean by similarly situated?
4    A   Similar characteristics of the class
5  members. So, for example, if you had a class
6  member who was young, a comparator to them may not
7  be somebody who was actually hired who was older,
8  as an example. So you're trying to match the
9  class members as closely as possible to the
10 comparators so that you can get a reasonable
11 estimate of their economic loss.
12   Q   Okay. You've given age as one
13 potential criteria for determining whether someone
14 is similarly situated. What other criteria do you
15 use?
16   A   It varies from case to case. Are you
17 asking in the context of this case or in general?
18   Q   Well, let's start with in general, and
19 then let's talk about this case.
20   A   Okay. In general, the type of work
21 they are doing, the location, the timing, whether
22 they have similar qualifications, similar skills.

Page 37

1  you believe it's possible to calculate aggregate
2  back pay on a representative basis?
3     A   Again, there may be other factors that
4  would still continue to compound the ability to
5  calculate back pay in this case. I don't know
6  yet. I haven't done that research.
7     Q   Okay. But my question is those four
8  factors, and limiting the calculation to back pay,
9  do you believe that it's possible to calculate
10 back pay on a representative basis in this case?
11        MR. THORP: Objection. Asked and
12 answered.
13        THE WITNESS: Again, I don't know. I
14 don't -- I've not formed an opinion on that yet.
15 BY MS. BROWN:
16    Q   If you were hired as a magistrate --
17 or sorry, a special master in this case and tasked
18 by the Court to do it, do you believe that you
19 would be able to come up with a way to calculate
20 representative back pay?
21    A   With potential additional information
22 and with, you know, more analysis of the data that

Page 38

1  we do have, certainly, yes. I mean, there could
2  be a way to calculate it, but I've not done that
3  research. I don't know.
4     Q   If you were asked to calculate back
5  pay just for the named plaintiff, or one of the
6  named plaintiffs, say, Mr. Brigida, what data
7  would you use to determine lost or but-for back
8  pay?
9     A   I'm sorry, lost or what for back pay?
10    Q   But-for. Are you familiar with the --
11 I think you use the phrase in your report,
12 but-for, right?
13    A   Yes. I'm sorry. I didn't hear that
14 part of your sentence. Just to make sure, your
15 question is what information would I use?
16    Q   Yes.
17    A   If we're calculating just for him, of
18 course I'd want to know his work history, his full
19 background. I would want to know what he's done
20 in terms of employment, job search efforts,
21 earnings, benefits, given that he was not hired as
22 an air traffic controller. And then, of course,

Page 39

1  we'd see if there's enough -- if there's a good
2  match for him, a good comparator for him among
3  somebody who was actually hired.
4     Q   Okay. But that's my question, and
5  let's just stick -- let's rule mitigation and the
6  offsets out of the question.
7         My question is if you were just going
8  to say, "Had Andrew Brigida been hired by the FAA
9  in 2014, this is how much he would have made up
10 until today," what data would you need to make
11 that calculation?
12    A   You would still need to see if there
13 is somebody who would be a good match as a
14 comparator for him, somebody who is similarly
15 situated to him. And that might involve data that
16 we currently have at our disposal, and it might
17 involve data that we don't yet have.
18    Q   And is it your contention that a
19 single comparator that you could identify would be
20 able to provide that information in terms of what
21 Mr. Brigida's but-for back pay would have been?
22    A   Again, I haven't formed that opinion.

Page 40

1  I've not done that research. I would need to see
2  all the information available. I just haven't
3  done that. I haven't been asked to do that yet.
4     Q   Have you ever calculated back pay for
5  an employee who was not hired, right? So have you
6  ever calculated -- first of all, let me just ask
7  that. Have you ever calculated back pay for
8  someone who is not hired?
9     A   Yes.
10    Q   Okay. If you calculate back pay for
11 someone who's not hired, you have to make
12 assumptions about that person's placement and
13 career projection, right?
14    A   Correct.
15    Q   Okay. In this context for the FAA and
16 air traffic controller, what data would you use to
17 make an assumption about, for instance,
18 Mr. Brigida's initial assignment?
19    A   We would want to know about the timing
20 of when he would have been hired, if it was in
21 2014. And then as I said earlier, we would want
22 to see if there is a comparator who is an

41

1 appropriate comparator to the Plaintiff. And we
2 would need to look at all the factors that we
3 determined who is a good comparator, and hopefully
4 we would find a good comparator to the Plaintiff,
5 and that would make for a reasonable estimate of
6 but-for earnings in the back pay period.
7     Q    For someone who was never hired, for
8 Mr. Brigida, how would you identify an appropriate
9 comparator of someone who was hired?
10    A    We would first gain an understanding
11 of all the factors that would influence somebody's
12 initial placement, whatever that list of factors
13 is. And with that list of factors we could then
14 hopefully find somebody who has characteristics
15 similar to the Plaintiff.
16    Q    Okay. And what characteristics would
17 you expect those to be other than experience and
18 education?
19    A    I don't know. I've not done that
20 research.
21    Q    Generally speaking, when you're
22 calculating back pay and you're looking for a

42

1 comparator, what do you consider other than age --
2 sorry, other than education and experience?
3     A    It could be something related to
4 geographic preferences. It could be something
5 related to specifics of the job that I'm not aware
6 of right now. It could be a list of factors that,
7 once somebody were to do that research, they come
8 up with a list of the factors that influence
9 somebody's initial placement and try to apply
10 those to the individual in question.
11    Q    Do you think that you have the ability
12 to predict somebody's career path?
13    A    I'm not sure if I agree with the word
14 "predict" somebody's career path. I think what we
15 try to do in these situations is find somebody who
16 is as similarly situated as possible to the person
17 or persons at issue, and say, okay, now that we
18 have identified somebody who is similarly situated
19 with some appropriate comparators of people who
20 are actually hired, we then make the assumption
21 that that person would have proceeded along the
22 same lines as the appropriate similarly-situated

43

1 comparator.
2     Q    Okay. You keep referring to
3 comparator in the singular. Do you use a single
4 comparator to calculate back pay? Has that method
5 been accepted by courts, finding a one-for-one
6 replacement?
7     A    Certainly I've done that in cases that
8 we're looking at a single person, yes, a single
9 plaintiff, yes.
10    Q    So --
11    A    Sometimes the list of comparators --
12 I'm sorry, I didn't mean to speak over you, but
13 sometimes the list of comparators is only one
14 person. But, yes, sometimes it's more than one
15 person.
16    Q    In this case you estimated
17 conservatively, in your view, that the class has
18 1021 members, correct?
19    A    Yes.
20    Q    So is it your position that the court
21 would need to look at each one of those 1021 class
22 members individually to determine their back pay?

44

1     A    Again, I don't have a position on that
2 question yet. I've not done that analysis.
3     Q    If you were hired to represent a
4 plaintiff in one of these cases on an individual
5 basis, how would you predict what their initial
6 placement would have been?
7     A    Again, I would try to learn about the
8 decision-making process of where people get
9 placed. I would read depositions if there are
10 some deposition transcripts about that. I would
11 try to talk to a subject matter expert about the
12 decision on when people get placed, how they get
13 placed, where they get placed. And based upon
14 that, I would try to collect information that
15 would allow me to, as I said earlier, apply those
16 factors that affects where somebody gets placed to
17 the individual or individuals in question.
18        So it really does involve gaining an
19 understanding of the decision-making process and
20 try to model that process.
21    Q    Just as a general theoretical or
22 perhaps methodological matter, do you think it

141
1  Q  Okay. And if you scroll down to
2 Mitigation, again, in the middle of the paragraph
3 it says, specifically under the Formula Relief
4 Model, "Mitigation of the amount losses can be
5 estimated by appropriate evidence of actual or
6 assumed interim earnings to reduce the overall
7 back pay awarded to class of victims." Do you see
8 that?
9  A  I do, yes.
10  Q  So if one were assuming a level of
11 mitigation, one could use an average method,
12 correct, an average assumed mitigating income?
13       MR. THORP: Objection. Ambiguous.
14 Compound.
15       THE WITNESS: Your questions asked
16 about averages, and averages are not part of any
17 of these constructions that are here, but they do
18 emphasize an appropriate -- estimated by
19 appropriate evidence. And I would agree with
20 that. It has to be estimated by appropriate
21 evidence.
22 BY MS. BROWN:

142
1  Q  Are you aware of any situation, or
2 have you been involved in any situation in which
3 the OFCCP has calculated back pay using
4 Directive 310?
5  A  I'm sure directly or indirectly they
6 are thinking about this. Like I said, our
7 experience with OFCCP is that their
8 methodologies -- and this is not a criticism, but
9 their methodologies depend upon the data that's
10 available and the claims that they're making in
11 their investigations.
12  Q  Based on --
13  A  And --
14  Q  -- what you -- Go ahead. Sorry.
15  A  I'm sorry. I didn't mean to talk over
16 you. I paused and I opened the door, but I just
17 wanted to say that this is sort of the backdrop
18 behind their methodology, but the actual
19 implementation of what they do could vary from
20 case to case.
21  Q  If one were only calculating back pay,
22 not front pay, is there any reason that you see

143
1 that Directive 310 wouldn't be applicable to the
2 circumstances of the CTI class?
3       MR. THORP: Objection. Ambiguous.
4 Calls for a legal conclusion.
5       THE WITNESS: Yeah. I mean, again,
6 the backdrop is you have to come up with some
7 reasonable measure of projected earnings, and you
8 have to come up with some reasonable measure of
9 mitigation. That's the backdrop of Directive 310.
10       How that's applied to, in this
11 particular case with the FAA, that's where you
12 have to understand the decision-making process and
13 understand the data that's available in order to
14 come up with an opinion on what's the appropriate
15 measure of protected earnings and what's the
16 appropriate measure of mitigated earnings.
17       But this is just kind of a guide. It
18 doesn't provide specifics to a particular case.
19 BY MS. BROWN:
20  Q  Okay. I'm asking you, based on what
21 you know today, is there any reason why this guide
22 would be inapplicable to the proposed class in

144
1 this case?
2  A  And it's been a while since I've read
3 this guide, but if this guide does not put enough
4 emphasis on making comparisons of
5 similarly-situated people, then, yes, I would have
6 a disagreement about applying this guide to the
7 damages in this case.
8  Q  And if it does make that appropriate
9 qualification?
10  A  Then what I've been saying all day
11 would be in agreement with what is in this
12 Directive 310, that it's important to compare
13 people who are similarly situated.
14  Q  Directive 310 speaks to the
15 circumstances in which it's appropriate to use
16 Formula Relief on Page 5, and Directive 310
17 specifically states that circumstances that
18 indicate that formula relief is appropriate
19 include, but are not limited to, for example, when
20 the number of class members exceeds the number of
21 employment opportunities that are available, C.
22 Do you see that?

145

1 A I do, yes.
2 Q Do you agree with that approach or you
3 disagree?
4 A I can see there would be circumstances
5 where the number of class members would exceed the
6 number of employment opportunities. That would
7 put somebody in the position of having to identify
8 which class members would or would not have been
9 selected.
10 Again, there is a way to try to test
11 that to narrow that down, narrow the class members
12 down to the characteristics of the class members
13 who are most likely -- who are most alike to the
14 members of the comparators who were actually hired
15 in this case.
16 MS. BROWN: Could you please read the
17 question back?
18 (The record was read as requested.)
19 THE COURT REPORTER: Question:
20 "Directive 310 speaks to the circumstances in
21 which it's appropriate to use Formula Relief on
22 Page 5, and Directive 310 specifically states that

146

1 circumstances that indicate that formula relief is
2 appropriate include, but are not limited to, for
3 example, when the number of class members exceeds
4 the number of employment opportunities that are
5 available, C. Do you see that?"
6 Answer: "I do, yes."
7 Question: "Do you agree with that
8 approach or you disagree?"
9 BY MS. BROWN:
10 Q So could I have you answer that
11 question, please? Do you agree or disagree that
12 it's appropriate or can be appropriate to use
13 formula relief when you are presented with a class
14 where the number of class members exceeds the
15 number of available job opportunities?
16 MR. THORP: Objection to form.
17 THE WITNESS: There could be some
18 circumstances where you would maybe need to use a
19 formula. Because in a situation like this, let's
20 say you've got 100 class members, and the employer
21 would have only hired 20, unless you're able to
22 narrow those 100 class members down to those who

147

1 have characteristics very similar to those who
2 actually were hired, then you're put in a
3 position -- if you're not able to do that, you're
4 put in a position of either using a formula or
5 having to decide which of the 100 class members
6 would have been hired.
7 So that's an example of when maybe a
8 formula would need to be employed in this
9 particular aspect of the calculations.
10 Q Okay. And you're aware the courts
11 have actually used this shortfall or aggregate and
12 pro rata method in those circumstances, failure to
13 hire circumstances, where the number of applicants
14 exceeds the number of positions available,
15 correct?
16 A I'm sure they have, yes.
17 Q Is it your position that that's
18 erroneous and the courts should have to do it on
19 an individualized basis?
20 A I'm not going to offer an opinion on
21 what the court should or should not do.
22 Q Another reason the Directive 310

148

1 states that it's appropriate to use the formula
2 relief is "When reconstruction of the employment
3 decision is speculative, e.g., in the instance
4 where there are no lines of progression, which
5 makes it difficult for the CEO to determine at
6 what specific stage in the employment process the
7 adverse action actually occurred, or in any other
8 situation. Especially for jobs with few minimum
9 qualifications, it would be impossible to
10 determine which class members would have been
11 hired absent discrimination." Do you see that?
12 A I do, yes.
13 Q Do you agree that it's appropriate to
14 use the methodology of Directive 310 where it
15 would be impossible to determine which class
16 members would have been hired absent
17 discrimination?
18 MR. THORP: Objection. Incomplete
19 hypothetical.
20 THE WITNESS: Again, this is backdrop.
21 I can see there would be situations where it would
22 be perfectly normal to use the approach as in 310.

**189**

1  --------------
2  (On the record at 3:15 p.m.)
3  MS. BROWN: Back on the record.
4  I have no further questions.
5  MR. THORP: Let me take a moment to
6  confer with my witness and see if there's anything
7  he'd like to clarify, but apart from that, we're
8  not planning on any further questions. So I guess
9  let's take a two-minute sidebar.
10  MS. BROWN: Okay.
11  (Off the record at 3:15 p.m.)
12  --------------
13  (On the record at 3:17 p.m.)
14  MR. THORP: I have no further
15  questions.
16  MS. BROWN: That concludes the
17  deposition.
18  THE WITNESS: I would like to read and
19  review, please.
20  THE COURT REPORTER: May I get both
21  counsel to state your names and your order on the
22  record? And if it's an expedite or you need a

**190**

1  rough, please let me know.
2  MS. BROWN: This is Ms. Brown, and we
3  don't need a rough. And we would like it by next
4  Friday so we have it before the Labor Day weekend,
5  please.
6  MR. THORP: Galen Thorp for the
7  Defendant. We'll take regular timing. No need to
8  expedite.
9  THE COURT REPORTER: Thank you.
10  (Time noted: 3:18 p.m.)

**191**

1  C E R T I F I C A T E
2  STATE OF GEORGIA:
3  COUNTY OF FULTON:
4  I hereby certify that the foregoing
5  proceeding was taken down as stated in the
6  caption, and the colloquies and questions and
7  answers were reduced to typewriting under my
8  direction; that the foregoing transcript is a true
9  and correct record of the evidence given upon said
10  hearing. I further certify that I am not of kin
11  or counsel to the parties in the case, and am not
12  in the regular employ of counsel for any of the
13  said parties, nor am I in any way interested in
14  the outcome of the case.
15  This day, September 1, 2021.
16
17  [signature] [notary seal]
18  _____
19  Marianne Vargas, CCR, CVR-M
   Certified Court Reporter
20  Certificate Number B-1832

**192**

ERRATA SHEET
I, PAUL WHITE, the witness herein, do hereby certify that I have read the transcript of August 27, 2021, of my deposition testimony, and the same is true and correct, to the best of my knowledge, with the exception of the following changes noted below, if any:

Page____ Line____ should read:_____
Reason for change:_____
Page____ Line____ should read:_____
Reason for change:_____
Page____ Line____ should read:_____
Reason for change:_____
Page____ Line____ should read:_____
Reason for change:_____
Page____ Line____ should read:_____
Reason for change:_____
Page____ Line____ should read:_____
Reason for change:_____
Page____ Line____ should read:_____
Reason for change:_____
Page____ Line____ should read:_____