**EXHIBIT 30**



FILE COPY



## U.S. Department of Transportation

**INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION WITH THE DEPARTMENT OF TRANSPORTATION**

| FOR OFFICE USE ONLY |
| --- |
| **DEPARTMENT CASE NUMBER** 2014 - 25526 - FAA |
| **FILING DATE** 4 - 12 - 2014 |

## PART I   COMPLAINANT IDENTIFICATION INFORMATION

**1.   Name (Last, First, Middle Initial)**
**Brigida, Andrew J.**

**2.   Telephone/Fax (Include Area Code)**

Home: 480-250-2110

Work:                          Fax

E-Mail:  mpearson@azlaw.com

**3. Present Home Address** (You must notify the Departmental Office of Civil Rights of any changes of address while complaint is pending, or your complaint may be dismissed)

4507 East Sleepy Ranch Road

Street Address

| Cave Creek | Arizona | 85331 |
| --- | --- | --- |
| City | State | Zip Code |

**4.   If you are a *current* or *former* employee of the federal government, list your most recent title, series, and grade.**

| Title | Series | Grade |
| --- | --- | --- |

**5a. Name and Address of Organization Where You Work** (If a Department of Transportation Employee)

Office and Staff Symbol

Street Address

| City | State | Zip Code |
| --- | --- | --- |

**5b. Last four digits of your Social Security Number: 3610**

**6. Employment Status in Relation to this Complaint:**

X Applicant      □ Probationary      □ Career/Career Conditional

□ Former Employee_____

□ Retired          Date Last Employed at Department _____

□ Other           Date of Retirement _____

                    Specify _____

**7. I certify that all of the statements made in this complaint are true, complete, and correct to the best of my knowledge and belief.**

_____                                    4 - 12 - 2014

Signature of Complainant or ATTORNEY Representative                    Date

## PART II   DESIGNATION OF REPRESENTATIVE

**8.   You may represent yourself in this complaint or you may choose someone to represent you.  Your representative does not have to be an attorney.  You may change your designation of a representative at a later date, but you must notify the Departmental Office of Civil Rights immediately in writing of any change, and you must include the same information requested in this Part.**

"I hereby designate Michael Pearson to serve as my representative during the course of this complaint.  I understand that my representative is authorized to act on my behalf.

**9. Representative's Mailing Address**
Curry, Pearson & Wooten, PLC

Firm/Organization
814 West Roosevelt Street

Street Address

| Phoenix | Az. | 85007 |
| --- | --- | --- |
| City | State | Zip Code |

**10. Representative's Employer** (If Federal Agency)

**11. Representative's Telephone/Fax**
(Include Area Code)

602-258-1000                          602-523-9000
Telephone:                          Fax:

_____                          4-11-14

**12. COMPLAINANT'S SIGNATURE                          DATE**

| PART III   ALLEGED DISCRIMINATORY ACTIONS | |
|---|---|
| **13.** Name and Address of Agency/office that took the action at issue (if different than item 5.)<br>**DOT/FAA- AHR/ACR/ATO** | **14.** If your complaint involves nonselection for a position, please complete the following: |

**Office and Organizational Component**

Air Traffic Control Specialist (developmental) GS-2152

| | |
|---|---|
| **800 Independence Avenue, SW**<br>Street Address | **Position Title**             Series             Grade |
| | CTI Preferred applicant list termination |
| **Washington          DC** | Vacancy Announcement No.       Date Learned of<br>Nonselection: February 9, 2014 |
| City               State          Zip Code | |

**15.** (A) Describe the action taken against you that you believe was discriminatory; (B) Give the date the action occurred, and the name of each person responsible for the action; (C) Describe how you were treated differently than other employees or applicants because of your race, color, religion, sex, national origin, age, disability, genetic information, or in retaliation for your participation in the EEO process or opposition to alleged discriminatory practices; (D) indicate what harm, if any, came to you in your work situation as a result of this action. (You may attach extra sheets.)

See Exhibit A attached hereto and incorporated herein.

**16.** Mark below ONLY the bases you believe were relied on to take the actions described in #15.

X Race (State Race) _____      □ Mental Disability (Specify) _____

X Color (State Complexion) _____      □ Physical Disability (Specify) _____

□ Religion (State Religion) _____      □ Retaliation/Reprisal (Dates of prior EEO Activity)

X Sex (State Sex) _____

□ National Origin (Specify) _____      □ Sexual Orientation (Specify) _____

□ Age (Date of Birth) _____      □ Genetic Information _____

□ Pregnancy Discrimination Act of 1978 _____ **X See additional basis on Exhibit A**

**17.** What remedial or corrective action are you seeking?

See Exhibit A attached hereto and incorporated herein.

## PART IV COUNSELOR CONTACT

| | |
|---|---|
| **18.** When did the most recent discriminatory event occur?<br>On or about January 8, 2014 and ongoing | **23.** When did you receive your Notice of Right to File?<br>March                31                2014 |
| Month          Day               Year | Month          Day               Year |
| **19.** When did you first become aware of the alleged discrimination?     On or about February 9, 2014 | **24.** On this same matter, have you filed a grievance or appeal under: |
| Month          Day          Year | |
| **20.** When did you contact an EEO counselor?<br>E-file electronic complaint- February 25, 2014 | Negotiated Grievance procedures      □ YES      X NO |
| Month          Day          Year | Agency grievance procedure      □ YES      X NO |
| | MSPB appeal procedure      □ YES      X NO |
| **21.** Did you discuss ALL actions raised in item 15 with an EEO Counselor?     X YES      □ NO<br>(If no, explain on attached sheet) through legal counsel | If you filed a grievance or appeal, provide date filed, case number, and present status. |
| **22.** Name and Telephone number of EEO Counselor<br>Lee Whilden          609-485-6729<br>Name               Telephone No. | |

DOT F 1050-8

EXHIBIT A

## FORMAL COMPLAINT

Complainant Andrew Brigida ("Complainant" or "Brigida"), individually and on behalf and those similarly situated as a putative Class Agent, brings the following complaint against the Department of Transportation ("DOT") and Federal Aviation Administration ("FAA") (collectively herein "Respondents").

## GENERAL BACKGROUND

1. This Formal Complaint incorporates all allegations and information in the Complainant's Individual Complaint of Employment Discrimination DOT Form 1050-8, regarding case number 2014-25526-FAA.

2. This case arises out of Respondents' intentional race-based discrimination against Brigida as well as identifiable putative air traffic control applicant Class members, resulting in the loss of employment opportunities with the FAA.

3. In short, the Respondents had no basis in evidence, let alone a strong basis in evidence, that the air traffic controller application assessment process, in place prior to January 2014, resulted in disparate impact treatment to any potential class of air traffic controller job applicants. Despite this lack of evidence, the FAA changed the assessment and post assessment processes resulting in disparate treatment on the basis of race, color and/or national origin.

4. In 1989, the FAA established the Air Traffic-Collegiate Training Initiative ("CTI") program to "develop, deliver, and implement air traffic control recruiting, selection, and training.

5. The FAA entered into Partnership Agreements with the CTI institutions.

## EXHIBIT A

2 0 1 4 - 2 5 5 2 6 - F A A
Page | 2

6. The objective of the CTI program was to develop a professional air traffic controller workforce possessing the skills necessary to succeed in training at a lower cost to the government.

7. Graduates from these CTI programs, were required to pass a validated air traffic aptitude test, known as the Air Traffic Control Selection and Training examination ("AT-SAT") in order to be eligible for employment as a trainee controller.

8. The AT-SAT was developed in approximately 2000-2001 in order to provide a selection tool for applicants for Air Traffic Control Specialist (ATCS) positions within the Federal Aviation Administration (FAA) who had not previously been employed as an air traffic controller.[1]

9. The AT-SAT is an aptitude assessment test developed to assess the likelihood of an applicant successfully learning ATCS skills as well as a valid predictor of achievement of Certified Professional Controller ("CPC") status, which is the successful completion of air traffic training at the applicant's first assigned field facility.[2]

10. The AT-SAT has been validated multiple times since the test was instituted to ensure the AT-SAT test was in accord with the law and professional guidelines.[3] Most recently in March of 2013.[4]

---

[1] *Reweighting AT-SAT to Mitigate Group Score Differences*, Andrew R. Dattel and Raymond E. King, FAA Civil Aerospace Medical Institute July 2006.

[2] *Id.* ; *The Validity of the Air Traffic Selection and Training (AT-SAT) Test Battery in Operational Use*, Dana Broach, Cristina L. Byrne, Carol A. Manning, Linda Pierce, Darendia McCauley and M. Kathryn Bleckley, FAA Civil Aerospace Medical Institute, March 2013.

[3] *Documentation of Validity for the AT-SAT Computerized Test Battery Volume I*, Michael C. Heil, and Carol A. Manning, FAA Civil Aeromedical Institute March 2001; *See* Fn. 2 supra.

[4] *See* Fn. 2 supra.

## EXHIBIT A

2014-25526-FAA
Page | 3

11. The AT-SAT tests for characteristics needed to perform effectively as an air traffic controller. The characteristics include numeric ability, prioritization, planning, tolerance for high intensity, decisiveness, visualization, problem-solving, and movement detection.[5]

12. Graduates from CTI programs, that passed the validated AT-SAT assessment entered a direct hire pool of applicants, were placed on a "Qualified Applicant Register" or "List", and were given hiring preference.

13. Prior to the introduction of the CTI program, the FAA hired from two main sources. The first source of controller applicants was from military trained controllers ("VRA") who had separated or retired from military service. The second source was through General Public Announcement("GPA") also known as Off-the-Street ("OTS") hiring.

14. OTS hiring brought in candidates without any required air traffic or college experience under a general public hiring announcement.

15. All air traffic controller applicants, regardless of source, were required to take the AT-SAT assessment before the applicant would be deemed a qualified applicant.

16. Problems were identified with the OTS hiring program; besides being very expensive to administer, the quality of candidates was not deemed satisfactory. High "washout" (training failure) rates and excessively long training times were among the OTS problems cited.

17. Since the CTI program was instituted in 1989, most air traffic controller hiring has been from the pool of CTI graduates and prior-military controllers.

18. In 2005, the FAA forecast a controller shortage due to a large number of controllers who were becoming retirement eligible.

---

[5] *A Plan for the Future 10-Year Strategy for the Air Traffic Control Workforce 2013 – 2022,* Department of Transportation, Federal Aviation Administration, page 45.

## EXHIBIT A

2014-25526-FAA
Page | 4

19. This retirement eligible group of controllers had been hired after the PATCO strike in 1981.

20. The established CTI colleges were not able to keep up with the demand for replacement controllers and a OTS hiring announcement was conducted to supplement the VRA and CTI applicant pools.

21. At the end of 2012, the FAA announced that it would not be conducting any further General Public hiring since the CTI Colleges and Universities, along with the VRA military pipeline, were producing sufficient quantities of qualified applicants to fulfill demand.

22. By 2012, the FAA had entered into Partnership Agreements with the 36 certified CTI institutions.

23. The CTI program has been very successful in preparing air traffic control applicants. Many minority candidates and applicants have successfully graduated from CTI institutions.

24. The FAA controller hiring plan required the FAA to hire over one thousand controllers, per year, in years 2012, 2013, and 2014.

25. On or about December 31, 2013 the CTI institutions received an e-mail communication ("Teixeira email") from Joseph Teixeira, the FAA's Vice President for Safety and Technical Training.[6]

26. The Teixeira email stated, among other things, that "...[r]ecently, the FAA completed a barrier analysis of the ATC occupation pursuant to the Equal Employment Opportunity Commission's (EEOC) Management Directive 715. **As a result of the analysis, recommendations were identified that we are implementing to improve and streamline the selection of ATC candidates."[7]** [emphasis added].

---

[6] Exhibit A-1 is a copy of the Teixeira email.

[7] *Id.*

**EXHIBIT A**

27. The Teixeira email also stated "[a] nationwide competitive FG-01 vacancy announcement open to all U.S. Citizens will be issued in February 2014. **Any individual desiring consideration for employment (including CTI graduates) MUST apply. Existing inventories of past applicants will not be used.**"[8] [emphasis added].

28. The Teixeira email also stated "[t]he existing testing process has been updated. The revised testing process is comprised of a biographical questionnaire (completed as part of the application process) and the cognitive portion of the AT-SAT. The cognitive portion of the AT-SAT will be administered only to those who meet the qualification standards and pass the biographical questionnaire. **Applicants for the February 2014 announcement will be required to take and pass the new assessments in order to be referred on for a selection decision.**" [emphasis added].[9]

29. In short, on or about December 20, 2013, the FAA eliminated the CTI Applicant Register or List resulting in Complainant and putative Class Members losing their employment preference and opportunity.

30. The FAA subsequently scheduled a teleconference ("Teleconference") with the CTI institutions on January 8, 2014.

31. During the Teleconference, Teixeira stated that "[T]here were no special interest groups involved in the design of the [new] FAA policy at all. This was done by experts in the human resources department and civil rights...."

32. On information and belief the statement in line 31 supra, by FAA representative employee Joseph Teixeira, is false in that several members of the FAA Human Resources ("AHR") and

---

[8] *Id.*
[9] *Id.*

**EXHIBIT A**

Civil Rights ("ACR") Offices had been working with the National Black Coalition of Federal Aviation Employees ("NBCFAE") to illegally eliminate the CTI Qualified Applicant Register or List since 2010.[10]

33. During the Teleconference Teixeira also stated that "...[w]e really have not announced these changes to anyone other than to CTI schools, and you received that for the first time on the 30th of December. There's been no announcement...."

34. The statement in line 33 supra, by FAA representative employee Joseph Teixeira, is false in that several members of the FAA AHR and ACR Offices had notified, among others, the NBCFAE that the FAA was going to purge the Qualified Applicant Register or preferred hiring List well prior to the announcement to the CTI institutions on January 8, 2014 as well as more specific details including detailed information on the new two phase assessment and the date that the new assessment would be open for applicants.[11]

35. On information and belief, by the end of December 2013 there were approximately 3,000 to 3,500 qualified applicants that possessed a CTI institution degree, had passed the ATSAT assessment and were on the FAA's Qualified Applicant Register or preferred hiring List.

36. Regarding years 2012-13 the FAA stated "...it is clear that the FAA AT-CTI schools are making great strides to incorporate minority students and faculty into their programs...."[12]

---

[10]  Exhibit's A-2 through A-8, are a series of communications illustrating that the NBCFAE "Team 7" was actively working to eliminate the prior validated hiring process as well as the preference given to CTI graduates that had passed the AT-SAT assessment. Several of these communications pre-date the January 8, 2014 in which the CTI institutions were notified of the actual changes; Exhibit A-9 is the first slide of a PowerPoint presentation given by the FAA to the National Employee Association Forum (which includes the NBCFAE) on June 20, 2013.
[11]  *Id.*
[12]  Air Traffic Collegiate Training Initiative (AT-CTI) Partner School Diversity and Outreach 2012-13.

**EXHIBIT A**

37. The FAA's CTI program manger, Terry Craft, stated on February 8, 2013 that he did not see the CTI applicant pool as non-diverse .[13]

38. Black CTI school enrollees exceeded the national black civilian labor workforce. In 2012-2013, 11.5% of CTI school enrollees were Black /African-Americans.[14] As the total black civilian workforce population is 10.1% there was a 1.4% overage.[15] That is, the CTI institutions had 13.86% more black students training to be air traffic controllers than the comparable black civilian labor force in 2012.[16]

39. On information and belief, the FAA's CTI Program Office, managed by Teixeira, has further documents and information that clearly illustrate that the collective CTI institutions provide a diverse applicant pool to the FAA that exceeds the black civilian as well as other minority civilian workforce pools.

40. On June 20, 2013, FAA officials met with members of the FAA National Employee Association Forum. This forum is composed of eight employee associations that represent various minority, women and disadvantaged sub-groups, one of which is the NBCFAE. The stated purpose of this meeting was to brief the various employee associations of recommended changes in the ATC hiring process.[17]

41. Among the persons conducting the June 2013 briefing was an FAA consultant named Dr. James Outtz. Outtz's presentation centered on a recently concluded Barrier Analysis of the FAA Air Traffic Controller hiring process.

---

[13] Exhibit A-10 email from CTI Program Manager Terry Craft.

[14] *Air Traffic Collegiate Training Initiative (AT-CTI) Partner School Diversity and Outreach 2012-13.*

[15] *Federal Equal Opportunity Recruitment Program (FEORP) for Fiscal Year 2012 Report to the Congress*, United States Office Of Personnel Management, January 2014, page 5.

[16] 1.4%/10.1%*100=13.861 or 13.86%.

[17] Exhibit A-9.

# EXHIBIT A

2014-25526-FAA
Page | 8

42. Outtz suggested that the hiring process may have a disparate impact on minority candidates, primarily black males, for ATC positions. Outtz asserted that the present construct of the ATC hiring system resulted in the hiring of too many white applicants and not enough black applicants due to barriers imbedded in the application and selection process.

43. During the years 2010 through 2014 certain FAA employees and NBCFAE members calling themselves "Team 7" were actively working to discriminate against Complainant and those similarly situated.[19]

44. Subsequent to this meeting, the President of the NBCFAE, Roosevelt Lenard, Jr., discussed with senior FAA officials, including Carrolyn Bostick ("AHR-1"), his desire that the FAA purge the entire Qualified Applicant Register.[20]

45. Top FAA AHR Official Bostick assured Lenard that the entire register would be purged and none of these post-assessment applicants would be offered a letter of employment.[21]

46. Lenard then notified his constituents via email that the FAA AHR-1 had assured him the entire applicant pool of CTI graduates would not be offered employment.[22]

47. Due to this interstitial relationship of NBCFAE members, FAA Human Resources, and FAA Office of Civil Rights hiring officials, Roosevelt Lenard, Jr., in his role as President of the NBCFAE exerted, and continues to exert, undue influence on both the Office of Human Resources and Office of Civil Rights.

---

[19] Exhibit's A-2 through A-8 are a series of emails illustrating that the NBCFAE "Team 7" was actively working to eliminate the prior validated hiring process as well as the preference given to CTI graduates that had passed the AT-SAT assessment.

[20] Exhibit A-7.

[21] *Id.*

[22] *Id.*

**EXHIBIT A**

2014-25525-FAA
Page | 9

48. Numerous FAA employees and officials of both the Office of Human Resources and Office of Civil Rights are allegedly active members of the NBCFAE.

49. On information and belief, certain members of the FAA Human Rights staff and Civil Rights staff, many of whom are NBCFAE members, preferred policy outcomes that would benefit the NBCFAE to the detriment of all other races including other minority applicants.

50. At least one FAA HR member, also a member of the NBCFAE, was illegally providing NBCFAE officer(s) confidential information regarding the new hiring process with the intention of skewing the results so that more black applicants than any other race would pass the new assessment process. [24]

51. The FAA's Controller Workforce Plan, published in late 2012 or early 2013, states that the FAA is "… planning to open a general public announcement in FY 2014 to **add more depth and diversity** to our controller hiring sources.[25] [emphasis added].

52. At the annual CTI Conference ("CTI Conference") in October 2013, the FAA, through CTI Program Director Terry Craft, told the CTI institutions that a General Public (OTS) announcement would be forthcoming in order to **ensure greater diversity**. [emphasis added].

53. In March 2014 FAA spokesman Tony Molinaro, Public Affairs Officer for the FAA in the Great Lakes and Central Regions, said the decision was made to "**add diversity to the workforce**."[26] [emphasis added].

---

[24] Exhibit A-6.

[25] *A Plan for the Future 10-Year Strategy for the Air Traffic Control Workforce 2013 – 2022*, Department of Transportation, Federal Aviation Administration, Page 44.

[26] Exhibit A-11, relevant portions attached hereto and incorporated herein, *"Want to be an air traffic controller? UND says FAA has 'dumbed down the process."* Anna Burleson, Forum News Service, March 5, 2014.

**EXHIBIT A**

54. Numerous other officials stated the reason for the change was "diversity." Such talk
    ended when Complainant and others similarly situated filed their informal EEO
    complaints.

## ALLEGATIONS

55. This section incorporates the previous paragraphs and references herein.

56. Complainant and putative Class Agent Complainant took, and successfully passed, the AT-
    SAT assessment with the top numerical score possible of 100% on May 13, 2013.

57. Complainant graduated from an FAA approved CTI institution, Arizona State University
    ("ASU"), on August 13, 2013, and was recommended to the FAA by ASU on August 28,
    2013.

58. Complainant met all hiring qualifications, passed the AT-SAT assessment, and was placed on
    the Qualified Applicant Register or List by the FAA along with approximately 3,000-3,500
    other similarly situated air traffic control applicants and putative Class Members.

59. Complainant eventually became aware via written communication from the FAA that
    Qualified Applicant Register or List, which he earned a position on, was eliminated or
    purged by the FAA.

60. In short, the air traffic applicant hiring pool of between 3,000- 3,500 was intentionally
    eliminated after Complainant and putative Class members had qualified under the validated
    air traffic control assessment process used by the FAA until January 2014.

61. Complainant has been informed and believes that the FAA has taken this action on the basis
    of an unsubstantiated concern claimed by NBCFAE and others that the air traffic control

EXHIBIT A

assessment process used by the FAA until January 2014 may have had a disparate impact on black minority candidates for air traffic control positions.

62. There is no valid statistical evidence or basis in evidence that the assessment and test system in place prior to January 2014 created an unlawful disparate impact on minority air traffic control candidates or applicants.

63. No court or other agency has determined that the assessment and test system in place prior to January 2014 actually had an unlawful disparate impact on minority candidates or applicants.

64. Allegations by the NBCFAE that the FAA's air traffic controller workforce was non-diverse are without merit.

65. Black representation in the federal workforce specific to the FAA was 9.96 %.[28] This is a .05% underage when compared to the total black civilian workforce population of 10.1%.[29]

66. That is, the federal FAA workforce had .05% fewer black employees than the comparable black civilian labor force in 2012.[30]

67. A one-half of one percent difference between the FAA federal black workforce population and the comparable black civilian labor force existed in the FAA at the time the statistics were available in 2012.[31] This percentage is statistically insignificant.

---

[28] *Annual EEO Program Status Report (EPSR) Fiscal Year 2012, Federal Aviation Administration (FAA),* page 7.

[29] *Federal Equal Opportunity Recruitment Program (FEORP) for Fiscal Year 2012 Report to the Congress,* United States Office Of Personnel Management, January 2014, page 8.

[30] .05%/10.1%*100= .495 or .5%.

[31] The 2012 statistics are the most recent available.

## EXHIBIT A

68. Black representation in the federal workforce specific to the Department of Transportation (including the FAA) was 11.6 %.[32] This is a 1.5% overage when compared to the total black civilian workforce population of 10.1%. That is the federal DOT workforce had 14.85% more black employees than the comparable black civilian labor force in 2012.[33]

69. FAA statistics as of June 11, 2013 show that the air traffic controller candidate pool (those applying for air traffic control positions) representation was 32% black.[34] As the black civilian workforce population is 10.1% the black candidate pool, or those applying for air traffic control positions, greatly exceeds the greatly exceeds the black civilian workforce labor pool.

70. The FAA retained the ability to open a ●TS bid while at the same time retaining the Qualified Applicant Register or List.

71. Neither the Barrier Analysis or the Barrier Analysis Extension ("FAA Studies") determined that the CTI institutions were a barrier for minorities.

72. Although the CTI institutions are not a barrier according to the FAA Studies , and the FAA could have ●pened a separate OTS general public hiring announcement without purging the CTI Qualified Applicant Register they chose to purge the Register of highly qualified candidates in a time of high demand for applicants.

73. On information and belief, the true intention and goal of the FAA's illegal action in purging the CTI Qualified Applicant Register  was to remove the inventory of 3,000-3,500 highly qualified CTI candidates and eliminate competition  by making students who had already

---

[32] *FEORP* at 15.

[33] 1.5%/10.1%*100=14.851or 14.85%.

[34] Exhibit A-12 is a PowerPoint presentation given by the FAA to the National Employee Association Forum (which includes the NBCFAE) on June 20, 2013, Slide number 22.

## EXHIBIT A

passed the prior validated assessment process "pass" a highly suspect Biographical Analysis
("BA") questionnaire.

74. Purging the list of highly qualified and assessed controller candidates in a time of high
demand, and no basis in evidence of any form of disparate treatment or impact, is not logical
as the costs to assess and process "new" candidates is very high and greatly extends the time
for air traffic c controller candidates to be placed in the training pipeline.

75. On information and belief, the true motive in eliminating the Qualified Applicant Register or
List was to intentionally discriminate against the Complainant, and putative Class members,
in order to benefit black air traffic controller applicants.

76. In short, alleging non-existent discrimination without a strong basis in evidence in order to
intentionally discriminate. For the reasons set forth below such action is illegal.

## LEGAL BASIS FOR CLAIM

77. This section incorporates the previous paragraphs and references herein.

78. Complainant first became aware of the FAA's action in purging the Qualified Applicant
Register or List in late January when he was notified by letter of the official change.

79. Complainant filed an informal EEO Complaint, via the FAA's online system, on February
25, 2014.

80. Complainant received his Notice of Right to File a Formal Complaint on March 31, 2014.

81. All educational institutions, including institutions of higher learning such as the CTI
institutions are required to abide by, inter alia, Title IV of the Civil Rights Act of 1964, the
Equal Educational Opportunities Act of 1974 (EEOA), Title VI of the Civil Rights Act of
1964, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act,
et. al., to ensure that any form of discrimination does not occur.

**EXHIBIT A**

2014-55372-EAA
Page | 14

82. The CTI institutions have various offices and programs to ensure that all laws regarding discrimination are rigorously followed.

83. Since the inception of the CTI partnership program, no CTI institution has ever been accused or charged with violating any law, statute, or regulation regarding disparate impact or treatment of minority students.

84. One of the criteria the FAA used prior to determining CTI partnership certification was diversity outreach and enrollment.

85. As mentioned herein, the CTI institutions have always had diverse student populations, most exceeding the various minority population civilian workforce labor pool percentages, comprised of both genders and many minority students.

86. A Federal agency, such as the FAA, cannot discriminate against a job applicant with respect to the terms, conditions, or privileges of employment on the basis of inter alia, race, color, national origin, or any other factor that is not related to job performance. Discrimination on these bases is prohibited by, and violates, one or more of the following statutes: 5 U.S.C. §2302(b)(1), (b)(10); 42 U.S.C. §2000e-16; 42 U. S. C. §2000e–2(a)(1).

87. Discrimination on the basis of race or color violates Title VII of the Civil Rights Act of 1964.

88. The U.S. Supreme Court has held that an employer may not make a race-based employment related decision, such as purging a Qualified Applicant Register or List post assessment, for the purpose of avoiding disparate impact liability in the absence of a strong basis in evidence that the system was deficient and that discarding the system was necessary to avoid violating the disparate impact principles of the civil rights acts.[35]

---

[35] *Ricci v. DeStefano*, 557 U.S. 557, 584 (2009).

## EXHIBIT A

89. While employers, such as the FAA, may take affirmative efforts to ensure that all groups have a fair opportunity to apply for employment opportunities the FAA may not invalidate the existing hiring system, thus upsetting an air traffic control applicant's legitimate expectation not to be judged on the basis of race, color, national origin, or any other factor that is not related to job performance without a strong basis in evidence.

90. The FAA had no basis in evidence, let alone a strong basis in evidence, that the CTI air traffic controller application and employment process, in use before January 2014, resulted in disparate impact or disparate treatment to any potential class of air traffic controller job applicants.

91. Despite having no basis in evidence the FAA purged the Qualified Applicant Register or List, thereby improperly denying the Complainant and Class members of employment, due to the race, color, and/or national origin of the great majority of the Class Members. This is per se discrimination.

92. Complainant believes and alleges that by eliminating, or purging the CTI graduate Qualified Applicant Register or List post assessment at the repeated bequest of the NBCFAE, the FAA has engaged in illegal disparate treatment discrimination against himself and a class of similarly situated CTI air traffic control applicants, all of whom had certain ranks or places on the Qualified Applicant Register, or List, and were awaiting employment.

93. In the alternative, or in addition to other claims enumerated herein, Complainant individually and as Class Agent, bring claims of discrimination regarding appointment, hire, evaluation/appraisal, examination/test/assessment, non-selection and terms/conditions of employment based upon race and/or color and/or national origin animus.

## CLASS STATUS

### EXHIBIT A



94. This section incorporates the previous paragraphs and references herein.

95. This Complaint exceeds the four procedural prerequisites for a Class Complaint under 29 C.F.R. §1614.204.

96. **Commonality**. There are common questions of law, practices and fact as to the members of the Class which predominate over questions affecting only individual members of the Class including, without limitation:

    a. The decision by the FAA to eliminate or purge the Qualified Applicant Register or List resulted in all members of the Class being eliminated from consideration after passing the FAA's CTI assessment procedure. There are no unique factual or practice factors that would make Class status disadvantageous to any member of the Class;

    b. The nature of this action and the nature of laws available to putative Class Complainants make use of the Class Agent format a particularly efficient and appropriate procedure to afford relief to Complainants for the wrongs alleged herein. Specifically, the Class turns upon Respondents' uniform intentional action of eliminating highly qualified air traffic control applicants, post assessment, without any determination of whether their action was in compliance with statutory and case law and without a strong basis in evidence. Therefore, the propriety of terminating 3,000- 3,500 air traffic control job applicants post assessment, after the applicants were placed on the Qualified Applicant Register or List is a predominant question of fact that is easily capable of being discovered through manageable devices of common proof such as representative testimony, documentary evidence, discovery and common practices/procedures of the Respondents in treating each of the Class

**EXHIBIT A**

2014-23526-FAA
Page | 17

members as a homogeneous group in the purging of the Qualified Applicant Register
or List;

c.  The determination of whether the FAA's action in purging the Qualified Applicant
Register or List had a strong basis in evidence regarding the alleged disparate impact
upon minorities is easily capable of being discovered through manageable devices of
common proof such as representative testimony, documentary evidence, and
statistical analysis based on scientific principles;

d.  Whether the Class Members on the Qualified Applicant Register or List were
improperly purged by the Respondents without basis in law or fact;

e.  Whether the Class Members on the Qualified Applicant Register or List were
improperly purged by the Respondents without a strong basis in evidence;

f.  Whether the Class Members on the Qualified Applicant Register or List were
intentionally and improperly delayed from being offered temporary offer letters
("TOL") and employed as air traffic control specialists during the period 2012
through 2014 due to intentional racial animus and discrimination;

g.  Whether members of the Class are entitled to compensatory damages, and if so, the
means of measuring such damages;

h.  Whether members of the Class are entitled to any form of injunctive, declaratory, or
other equitable relief including, but not limited to, reinstatement of the Qualified
Applicant Register or List;

i.  Whether Respondents are liable for pre-judgment interest; and

j.  Whether Respondents are liable for attorneys' fees and costs.

EXHIBIT A

2014-35526-FAA
Page | 16

97. **Typicality.** The claims of Complainant Brigida for the remedies stated herein are typical of the claims of all members of the putative Class mentioned herein because all members of the prospective Class and sustained similar injuries and damages arising out of Respondents' common course of conduct in violation of law and the injuries and damages of all members of the Class were caused by Respondents' wrongful conduct in violation of law, as alleged herein.

98. **Numerosity.** The potential quantity of members of the putative Class as defined is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and the Administrative Court. While the exact quantity of members of the Class is unknown to Complainant at this time, it is estimated that Class number is in excess of 3,000 individuals. The quantity and identity of such membership is readily ascertainable via inspection of Respondents' records.

99. **Adequacy.** Complainant Brigida is an adequate representative of the putative Class and as Class Agent will fairly protect the interests of the members of the Class, has no interests antagonistic to the members of the Class, and will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating complex matters of this type. Putative Class Counsel are competent and experienced in litigating large cases, are preeminent in their fields, and members of the firms have experience in litigating complex matters including employment cases. Approximately 400 potential Complainants have contacted the Complainant's legal counsel and approximately 175 have filed informal EEO Complaints with the FAA listing the same firms as potential legal counsel.

100. **Ascertainable Class.** The proposed class and each subclass are ascertainable in that their members can be identified and located using information contained in Respondents' Records.

# EXHIBIT A

2014-25526-1 AA
Page | 19

Specifically the FAA's Aviation Careers Division maintained an inventory of eligible CTI graduates comprised of the putative class.

101.   **Superiority**. The nature of this action and the nature of laws available to Plaintiffs make use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff for the wrongs alleged herein, as follows:

    a) This case involves large government Agency Respondents and a sufficient numerous group of individual Class Members with many claims and common issues of law and fact;

    b) If each individual member of each of the Class was required to file an individual lawsuit, the large government Agency Respondents would necessarily gain an unconscionable advantage because Respondents would be able to exploit and overwhelm the limited resources of each individual member of the Class with Respondents' vastly superior financial and legal resources;

    c) Requiring each individual member of each of the Class to pursue an individual remedy would also discourage the assertion of lawful claims by the members of the Class who would be disinclined to pursue an action against Respondents because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

    d) Proof of a common practice or factual pattern, of which the members of the Class experienced, is representative of the Class herein and will establish the right of each of the members of the Class to recover on the causes of action alleged herein;

    e) The prosecution of separate actions by the individual members of the Class, even if possible, would create a substantial risk of inconsistent or varying verdicts or

**EXHIBIT A**

2014-25526-FAA
Page | 20

adjudications with respect to the individual members of the Class against Respondents; and which would establish potentially incompatible standards of conduct for Respondents; and/or legal determinations with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of the other members of the Class who are not parties to the adjudications or which would substantially impair or impede the ability of the members of the Class to protect their legal interests;

f)  Many members of the putative class are recent college graduates with large student loan balances and the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a Class Complaint; and

g)  The cost to the administrative court system of adjudication of such individualized litigation would be substantial and a waste of valuable adjudicative and judicial resources..

83. **Manageability of Class and Common Proof.** The nature of this action and the nature of laws available to Complainants' make use of the Class, and Class Agent format a particularly efficient and appropriate procedure to afford relief to Complainants for the wrongs alleged herein.  Specifically, the primary class turns upon Respondents' uniform, systematic decision to purge the Qualified Applicant Register or List of 3,000= 3,500 applicants post assessment.  Therefore, the propriety of the decision to purge the Qualified Applicant Register or List is applicable to all members of the putative class.

## EXHIBIT A

2014-25526-FAA
Page | 21

Individual adjudication would prejudice Respondent parties opposing the class by requiring the United States government to allocate scarce judicial resources to individually adjudicate the claims of approximately 3,000 to 3,500 air traffic controller applicants.

## **REMEDIES REQUESTED**

Due to the Respondent DOT/FAA'S illegal actions the Complainant, on behalf of himself and status as putative Class Agent, requests compensatory damages, including but not limited to, back pay, hiring, reinstatement, front pay, attorneys' fees, expert witness fees, court costs and for such other and further relief as may be deemed just and proper that will make the Complainant/Class Agent and Class whole.

DATED: April 12, 2014

Michael Pearson
**Curry, Pearson & Wooten, PLC**
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000

Patrick McGroder, Donald Peder Johnsen, Shannon Clark
**Gallagher & Kennedy, P.A.**
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8437

Attorneys for the Complainant/ Class