

U.S. DEPARTMENT OF LABOR

**Office of Federal Contract Compliance Programs**

Exhibit #
Perdue 3
07/20/21 - SG

# Directive (DIR) 2013-04

**Renumbered on 9/16/2013 as DIR 2013-04.**



## U.S. DEPARTMENT OF LABOR
## Office of Federal Contract Compliance Programs

Number: 310 Date: July 17, 2013 ADM Notice

1. **SUBJECT:** Calculating Back Pay as a Part of Make-Whole Relief for Victims of Employment Discrimination.

2. **PURPOSE:** To provide guidance on calculating back pay as a part of make whole relief for victims of employment discrimination when using formula or individual relief models.

3. **EFFECTIVE DATE:** This directive is effective immediately.

4. **BACKGROUND:** OFCCP seeks back pay to remedy discrimination violations for aggrieved individuals pursuant to Executive Order 11246 (EO 11246), Section 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 793 (Section 503), and the Vietnam Era Veterans´ Readjustment Assistance Act of 1974, as amended, 38 U.S.C. § 4212 (VEVRAA). Upon a finding of discrimination, OFCCP seeks to obtain back pay, in addition to other appropriate make-whole remedies[1], for the victim(s) of the discrimination. Back pay serves to remedy lost earnings that the victim(s) would have received absent the discrimination. There are two distinct models for calculating back pay relief – formula relief and individual relief. This directive explains when each of these models is appropriate to use and the relevant elements, pursuant to each model, when calculating back pay.

OFCCP follows the principles and case law derived from Title VII of the Civil Rights Act of 1964 (Title VII) in awarding back pay to aggrieved individuals under the laws it enforces. Executive Order 11246´s implementing regulations at 41 CFR 60-1.26(a)(2) state in part, "OFCCP may seek back pay and other make

whole relief for victims of discrimination identified during a complaint investigation or compliance evaluation." Section 503´s implementing regulations at 41 CFR 60-741.65(a)(1), and VEVRAA´s implementing regulations at 41 CFR 60-250.65(a)(1) and 60-300.65(a)(1) also provide that OFCCP may seek back pay as part of make whole relief for victims of discrimination. Each of these OFCCP regulations also provides that interest on back pay is calculated from the date of the loss (*i.e.*, the start date of the discriminatory act) and compounded quarterly at the percentage rate established by the U.S. Internal Revenue Service (IRS) for the underpayment of taxes.

The U.S. Supreme Court, in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975), states that one of the purposes of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." The Court also states that " ... given a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Id*. at 421. In light of this standard, back pay is generally sought as a remedy in all cases, both individual and class, where employment discrimination results in a loss of compensation for victims of discrimination.

OFCCP's reliance on Title VII back pay principles has been upheld by the Administrative Review Board (ARB). Specifically, in the EO 11246 case of OFCCP, *U.S. Department of Labor v. Greenwood Mills, Inc.*, ARB Case Nos. 00-044, 01-089, ALJ Case No. 89-OFC-039 (ARB Final Decision and Order December 20, 2002), the ARB held that the covered government contractor discriminated in hiring on the basis of sex, and found that the formula relief model used in Title VII cases was appropriate for computing relief. Following the legal standard set out in Albemarle, the ARB found that back pay, as one element of make whole relief, was to be awarded to the victims of discrimination. Similarly, the ARB has applied Title VII back pay principles in the individual relief context. In *OFCCP v. The Cleveland Clinic Foundation*, ARB Case No.1991-OFC-20, ALJ Case No. 91-OFC-20 (ARB Final Decision and Order July 17, 1996) , the ARB held that the contractor discriminated on the basis race, and relied on Title VII principles when awarding back pay to the two victims.

5. **DEFINITIONS:**

**Attrition Rate** – The rate at which employees are expected to leave the establishment from one period to the next.

**Back Pay** – Total lost earnings due to a contractor´s discriminatory employment action, practice or procedure. Lost earnings include but are not limited to: compensation or salary, overtime, premium pay and shift differentials, incentive pay, raises, bonuses, lost sales commissions, cost-of-living increases, tips, medical and life insurance, fringe benefits, and pensions, stock awards and options.

**Formula Relief** – As used in this Directive, a method used in systemic discrimination cases for calculating a total amount of the back pay for an affected class of discrimination victims, that is then divided (pro rata or otherwise) among all the members of that class who are eligible, successfully identified, and agree to participate in the settlement. In appropriate circumstances, formula relief may also be used to assess other types of class relief for discrimination victims.

**Individual Relief** – Also referred to as victim-specific relief, individual relief is the assessment of make-whole relief for identified victim(s) of discrimination on an individualized basis. This method is generally used to calculate back pay in those individual or small group discrimination cases where the victims of discrimination, and the damages they incurred, can be determined with specificity.

**Interim Earnings** – The amount a victim earns from substitute employment during the liability period. Generally speaking, victims of discrimination who are not current employees (*i.e.*, victims of hiring or termination discrimination) have a duty to use reasonable diligence to seek substitute employment. Under formula relief, back pay awards can be reduced by an appropriate estimate of the amount that could have been earned by the victims of discrimination with reasonable diligence, less expenses reasonably incurred in looking for alternative employment. Under individual relief, back pay awards are reduced by the amount the victim actually earned during the liability period, or by the amount the individual would have earned with reasonable diligence. Under either approach, the contractor has the burden of proof.

**Make-Whole Relief** – Remedy for discrimination that restores the victim of discrimination to his or her rightful place, *i.e.*, the position, both economically and in terms of employment status, that he/she would have occupied if the discrimination had not taken place. Common elements of make-whole relief include an award of the position the individual was wrongly denied, back pay with interest and retroactive seniority.

**Mitigation** – Used in cases involving discrimination where the victims are not current employees (*i.e.*, discrimination in hiring or terminations), this refers to the duty of victims to lessen their losses during the liability period. Under the individual relief model, for example, the aggrieved individual must use reasonable diligence to seek alternative employment during the liability period. The earnings from such employment will be deducted from the total amount of back pay awarded to the aggrieved individual (*see* "Interim Earnings," above). Under the formula relief model, mitigation of the amount of losses can be estimated by appropriate evidence of actual or assumed interim earnings to reduce the overall back pay awarded to the class of victims. For example, the contractor may seek to apply a minimum wage rate presumed to have been earned during the liability period to reduce the overall back pay that is awarded to the class of victims, after accounting for an estimated period of unemployment. Mitigation, either for individuals or a class, is an affirmative defense that must be raised and proven by the contractor, not OFCCP.

**Pay Additions** – Elements of compensation other than salary and wages (*e.g.* pay from shift differentials, incentive pay, bonuses)

**Shortfall** – The difference between the actual number of persons in the non-favored group that were selected for the employment opportunity at issue (hires, promotions, etc.) and the number expected to have been selected in proportion to their representation in the pool of qualified candidates, absent discrimination. This concept does not generally apply to compensation discrimination cases.

6. **POLICY:** This directive identifies basic principles applicable to the use of the formula and individual relief models for the calculation of back pay as a remedy for discrimination. The directive indicates when it is appropriate to use formula relief or individual relief and the elements that should be considered in making this determination. In each instance, OFCCP makes the decision as to which model is used in determining relief in a specific case, not the contractor. The directive also provides guidance on calculating back pay, including addressing mitigation when raised as a defense by the contractor, depending on the model used.

**Basic Principles:**

- Generally, in keeping with the *Albemarle* standard, an award of back pay will be sought as a part of the make whole relief awarded to victims of employment discrimination whenever the discrimination results in a loss of compensation or benefits for the aggrieved individual(s).

- Provided that the federal contract is in effect when the discrimination occurred, back pay generally can be obtained for a period up to two (2) years prior to the date of receipt of the scheduling letter (or for a complaint, up to two (2) years prior to the date the complaint is filed). Back pay continues from the date of violation forward until the discriminatory action(s) are stopped by the contractor, or stopped by means of a Conciliation Agreement, Consent Decree, or Final Court/Administrative Order. In any event, back pay calculations will follow longstanding OFCCP principles regarding the circumstances under which discrimination is a continuing violation under the Executive Order (*see* FCCM Chapter 7).

- The elements used to calculate back pay in individual relief cases should not be interchanged with the elements used to calculate back pay in cases utilizing formula relief.

- In hiring and termination discrimination cases, interest on back pay is calculated on the adjusted back pay calculation after mitigation.[2] Interest on the overall back pay award is then compounded on a quarterly basis at the percentage rate established by the IRS for the underpayment of taxes. The current rate may be found at http://www.irs.gov/pub/irs-drop/rr-12-16.pdf.

- Benefits that are a part of the back pay award are not assumed to be subject to mitigation, absent specific evidence the victims of discrimination obtained these benefits.

- A contractor will be in violation of Executive Order 11246 any time it pays wages, benefits, or other compensation that is the result in whole or in part from the application of any discriminatory compensation decision or other practice. This means back pay calculations in compensation cases should remedy any discriminatory pay differences existing during the two years prior to the review forward to the present, or otherwise determined consistent with Title VII principles regarding the so-called Paycheck Rule and continuing violation theory.

7. **PROCEDURES:**

    A. **Formula Relief**

    1. <u>When to Use Formula Relief Model</u>

    The determination of when to use the formula relief model to calculate back pay is made on a case-by-case basis. Formula relief is a way of approximating losses in circumstances in which it is unrealistic to attempt to compute individual losses with accuracy.[3] Circumstances that indicate that formula relief is appropriate include, but are not limited to:

    a. When calculating individual back pay relief for numerous aggrieved individuals is difficult because complete information or documentation (*i.e.*, timecards, payroll records, tax returns) is unavailable or missing;

    b. When using the individual relief model to calculate back pay for each class member will likely cause significant delay or create an undue burden on individual class members to provide documentation to support their compensation and/or interim earnings;

    c. When the number of class members exceeds the number of employment opportunities that are available;

    d. When the reconstruction of the employment decision is speculative (*e.g.*, in the instance when there are no lines of progression), which makes it difficult for the CO to determine at what specific stage in the employment process the adverse action actually occurred, or any other situation in which (especially for jobs with few minimum qualifications) it would be impossible to determine which class members would have been hired absent discrimination; and/or

    e. When the losses can be calculated on a class-wide basis from available data, as may be the case with compensation issues.

    2. <u>Identifying Victims</u>

    If the formula relief model will be used to calculate back pay, the class of potential victims must be identified. Having identified a discrimination violation(s), the CO should also identify: (1) the

time period (liability period) in which the discrimination occurred; (2) that there was a federal contract/subcontract in effect during the liability period; (3) the nature of the violation(s); and (4) the class of persons (non-favored group(s)) that were discriminated against and entitled to relief. In formula relief cases, OFCCP will include all individuals who meet the case-specific criteria of potential victims, without requiring evidence they were specifically discriminated against. Depending upon the nature of the violation, the employment opportunity that was denied to the class members may have been a position in a specific job, promotion, transfer, etc., or may be a systemic difference in pay for a class or category of employees. Detailed information regarding the position or employment opportunity at issue must be obtained in order to identify the victims and calculate lost earnings.

3. <u>Calculating Lost Earnings</u>

   a. General Principles

   The next step is to calculate lost earnings. The CO should account for all of the earnings attributable to the employment opportunity at issue. Lost earnings include but are not limited to: wages, salary or other compensation, overtime, premium pay, incentive pay, raises, bonuses, lost sales commissions, cost-of living increases, tips, medical and life insurance, any other fringe benefits, pensions and the value of stock awards or options. This information may be found in payroll records, written policies, manuals, Internet information about the company, employee handbooks, collective bargaining agreements, and/or obtained during interviews with employees and managers.

   When using the formula relief model, the earnings may need to be adjusted or averaged to approximate the loss. For example, in determining overtime hours that may have been worked, an average of overtime hours worked by the employees in the position at issue during the liability period should be used. Similarly, an average of shift differential added to earnings may be applied as a proportional percentage because only a portion of the employees in the position at issue may have received shift differential. Any pay increases or promotions among the comparator class during the time period at issue should also be accounted for. Estimates of the monetary value of benefits can be based on specific data or calculated as a percentage of wages/salary if more specific data is not available or is too cumbersome or complex. To calculate lost benefits, the CO should examine information about when the benefits become effective (*e.g.*, whether there is a waiting period for

eligibility) as well as the monetary value of the benefits.

Once the liability period is identified (usually when the scope of the violation is identified), the CO will use this time period for calculating back pay. The CO must determine that the start date for the back pay period is not outside of the contract coverage period. Back pay can be obtained for a period beginning up to two (2) years prior to the date of the scheduling letter. However, the discriminatory act(s) may have taken place less than two years before the scheduling letter is sent. Back pay is due starting from the date of the violation forward until the discriminatory action(s) is ended by the contractor or stopped as a result of a signed Conciliation Agreement, Consent Decree, or Final Court/Administrative Order. Thus, although the start date used in calculating back pay cannot be outside of the federal contract coverage period, the end date used in calculating back pay can be a date beyond the federal contract coverage period.[4]

b. Presumption of Continuous Employment in Hiring Cases

Generally, under Title VII, back pay calculations run from the date of injury until the injury is remedied by the employer either through voluntary action,

settlement or a court judgment. This is consistent with the principle of make-whole relief. In hiring cases, workers are entitled to a presumption of continuous employment that runs through the end date of potential back pay liability. See EEOC v. Dial Corp., 469 F.3d 735 (8th Cir. 2006). However, the presumption may be overcome if the employer provides sufficient evidence that the victims of discrimination would not have worked for this entire period. OFCCP v. Greenwood Mills, ARB Nos. 00-044 and 01-089, ALJ No. 1989-OFC-39 (ARB Dec. 20, 2002); Lawrence Aviation Industries, Inc., v. Reich, No. 98-6219, 1999 WL 494870, at **1-2 (2d Cir. July 6, 1999).

OFCCP will follow that presumption when considering the expected tenure of workers who were not hired due to discrimination, such as in making calculations of predicted attrition to reduce the total back pay due to a class. A contractor may seek to establish by specific evidence that the presumption should be overcome in a particular case, but the contractor has the burden of proof on this issue.

The accepted practice in systemic cases is to consider the projected effect of attrition on the total losses, without

artificially limiting the total liability period. See Pegues v. Mississippi State Employment Service, 899 F.2d 1449, 1452 (5th Cir.1990); United States v. City of New York, 2012 WL 745560, * 21 (E.D.N.Y. Mar. 8, 2012); Sledge v. J.P. Stevens & Co., 1989 WL 90562, *9 (E.D.N.C Feb. 23, 1989). For example, if data shows that 10% of the workforce left in the first year, and 5% in the second year, a shortfall of 20 would be reduced to 18 at the end of the first year and 17 at the end of the second year for purposes of calculating the lost earnings.

The evidence that a contractor must provide in order to meet its burden of proof and rebut the presumption of continued employment will vary depending on the facts of the specific case. Circumstances that will generally justify overcoming the presumption and limiting or discounting the back pay losses include situations such as:

- a mass work stoppage or layoff that eliminated the positions at issue;
- specific evidence demonstrating that a significant number of affected applicants left the workforce or became ineligible for the positions; or
- Rapid and widespread attrition of actual hires where the presumption would clearly overestimate losses even taking all inferences in favor of the victims of discrimination.

However, even in these cases, OFCCP must investigate the facts asserted by the contractor to determine if it is appropriate to discount back pay losses by projected attrition rates, and will resolve all uncertainties regarding future employment in favor of the victims of discrimination. For instance, in a sex discrimination case, if there is any evidence that a mass layoff or a high attrition rate was motivated by discrimination or the contractor´s desire to minimize back pay relief, it would not be appropriate to limit the back pay losses. Similarly, where most workers hired into the position remained employed, overcoming the presumption would be much more difficult than in a case where most workers had left.

OFCCP generally will not accept simple estimates of generalized attrition to limit the back pay liability period until it has investigated the facts behind the data provided and determined that an attrition factor is appropriate. Among the issues compliance officers should consider are:

- For the individuals who were hired for the position in question and subsequently were terminated what

was the reason for the termination? If certain individuals were terminated for cause, it may be appropriate to exclude them from the tenure data; otherwise, affected applicants are in effect penalized for the bad actions of someone in the favored group.
- For hired individuals who resigned or were terminated, what is the potential for future employment, rehire, or future increases? If there is evidence that individuals are readily able to return (or, better yet, have returned) to the workplace after a resignation/termination, it may not be appropriate to use attrition data that does not factor in that possibility.

Compliance officers working through these issues are encouraged to reach out to SOL and the National Office Labor Economist early in the process for further guidance on the best approach to take for a given case and how to apply these principles in specific cases.

c. Methods of Calculation

Generally, there are two methods that may be used to structure the back pay calculation for the formula relief method. After the CO determines that the formula relief method is appropriate (see 6.A.1 above), the CO must then determine whether the shortfall or an averaging method will be used.

**Shortfall Method**: Where job opportunities were at issue, such as hiring, termination, or promotion cases, and the number of victims in the class exceeds the total number of opportunities, the "shortfall vacancies" approach is generally used for computing the amount of back pay attributable to the class. Shortfall is the difference between the actual number of persons in the non-favored group that were selected for the employment opportunity at issue and the number expected to have been selected in proportion to their representation in the pool of qualified candidates, absent discrimination.

*Example*: 100 individuals apply for one of 20 vacancies for a specific job title. Fifty (50) of the applicants are male and fifty (50) of the applicants are female. All of the applicants meet the required qualifications. However, due to discrimination, 19 of the hires are male, and only 1 is female. After calculating the total earnings associated with each position (considering starting pay, hours worked, all increases and pay additions, overtime, benefits, bonuses, or

any other applicable aspects of compensation), OFCCP will multiply that amount by the shortfall to generate the back pay losses as a whole. For instance, in the above example, if the lost earnings for each position was $100,000, the monetary relief for the entire class of victims would be $900,000. Shortfall vacancies do not limit the number of individuals entitled to relief.

**Averaging Method**: The averaging method (formula) may be used in cases where the calculations are based on the number of victims of discrimination, rather than on the number of positions at issue. (*i.e.*, to remedy compensation discrimination, certain types of placement or glass ceiling cases, etc.). The formula should be designed to address the particular violation that was found. For example, if the violation is one of sex segregated departments, the CO may compare the average salary of the men at a given level of seniority to the average salary of the women with the same seniority. The difference in the average salaries defines the measure of back pay to be awarded to each woman in the seniority group.

To remedy compensation violations, it may be appropriate to use the regression model used to establish liability to calculate back pay losses for the class as a whole. In that case, the CO would still use an average or typical estimate of the pay disparities to determine the total losses for the class, but the regression analysis allows OFCCP to use a more sophisticated form of averaging. The National Office Labor Economist and other experts can provide assistance in performing these calculations in particular cases.[5]

Where a contractor has provided only a "snapshot" of compensation data for a single year, losses for prior or subsequent years can be estimated by projecting those differences backward or forward in time, but it is preferable to obtain compensation data for those years and calculate the actual pay differences in each year if possible. Where contractors provide reliable evidence showing that losses for those years decreased or were eliminated OFCCP will adjust its estimates accordingly.

- Expected number of hires: 10 males, 10 females
- Actual number of hires: 19 males, 1 female
- Shortfall: 9 (10 expected female hires minus 1 actual hire)

4. <u>Mitigation (Interim Earnings) as a Defense</u>

Mitigation refers to the duty of the victim(s) of hiring or

termination discrimination to use reasonable diligence to seek alternative employment during the back pay period. Back pay awards can be reduced by the amount the victim(s) could have earned with reasonable diligence (interim earnings), \ less expenses reasonably incurred in looking for alternative employment (*e.g.*, cost to prepare a resume, gas and parking fees incurred when going for an interview). Reasonable diligence does not mean that the victim(s) had to be successful in obtaining other employment, only that he/she is required to make a reasonable effort. Victims are required only to accept employment that is substantially equivalent to or the same as that sought or held with the contractor. It is the contractor´s burden to show that with such diligence the victims were reasonably likely to have found comparable employment. The victims need not take any employment position simply to retain their back pay awards. Nor are the victims required to relocate to accept alternative employment.[6]

The contractor has the burden of proving the amount of interim earnings. In formula relief cases, the average interim earnings provided by the contractor as mitigation should be reviewed by the CO in every case, and accepted in those cases where OFCCP deems the evidence sufficient. The CO should examine the identified source of the interim earnings and the time period identified by the contractor in order to ensure that only appropriate earnings are included in the mitigation computation. Specifically, unemployment, workers compensation, pension, Social Security, and/or other public assistance benefit payments received by the aggrieved individual do not constitute interim earnings and should not be deducted from the aggrieved individual´s back pay award. Similarly, employment that is not a substitute for employment with the contractor should not be considered as interim earnings. Such a situation could be a class member that worked both a full-time and part-time job, and could have continued the part-time job even in the absence of the discrimination. Evidence class members could have obtained temporary employment, without the same benefits or long term prospects as permanent employment, is not evidence that carries the contractor burden on mitigation. Further, OFCCP will generally not rely solely on reported application data such as last known wage, without evidence applicants actually obtained or continued alternate employment at that rate.

Finally, contractors seeking to apply a mitigation rate above minimum wage should provide case-specific evidence that class members obtained or should have obtained higher paying employment with reasonable diligence.

5. Unemployment Period

For purposes of making its initial back pay calculations in formula relief hiring cases, OFCCP will assume a period of unemployment for all applicants, regardless of whether they were employed at the time of application, unless there is reliable evidence applicants actually continued employment after applying.[7] Generally, OFCCP will rely on national or state-level data on the average unemployment weeks for workers in the protected group. A common source for this data is the Bureau of Labor Statistic´s Current Population Survey available at http://www.bls.gov/cps/tables.htm#charunem. Depending on the facts of the case, OFCCP will choose the unemployment data based on industry, occupation, geography, and/or specific gender or ethnicity groups. Contractors may then attempt to rebut these assumptions with evidence pertaining to applicants´ employment, and OFCCP may subsequently amend its back pay calculations depending on the probative weight of this evidence.

Due to the fact that many unemployed persons may not be receiving or eligible for unemployment insurance, OFCCP will not use state unemployment insurance payment data to measure the length of the unemployment period.

6. Computation of Interest

After computing total back pay and deducting appropriate mitigation, the CO must compute interest on the total back pay amount. Once interest is calculated by the CO, then the interest is added to the total back pay amount. The purpose of applying interest on back pay awards is to compensate the victim(s) for the loss of the use of his/her money. Interest on back pay is to be calculated at the same percentage rate as the IRS underpayment formula and is required to be compounded quarterly under the laws OFCCP enforces. (See 41 CFR 60-1.26(a)(2) (EO 11246); 41 CFR 60-250.65(a)(1), and 60-300.65(a)(1) (VEVRAA or Section 4212); and 41 CFR 60-741.65(a)(1) (Section 503)).

The IRS may adjust this rate on a quarterly basis. The interest rates applicable to various time periods are issued by the IRS and available on the IRS website at http://www.irs.gov/pub/irs-drop/rr-12-16.pdf.

7. Taxes

Generally OFCCP calculates back pay without regard to applicable FICA or other taxes. In OFCCP settlements, contractors are obligated to pay their share of all applicable taxes on the portion of back pay that is calculated and identified as wages, on top of

the identified settlement amount. Contractors are obligated to withhold the employee share of Social Security, Medicare and any other applicable taxes, and to provide W-2 forms to each class member indicating taxes paid and withheld.[8] Since employer contributions to most fringe benefits, such as the employer paid portion of health insurance premiums or pension funds, are not taxable (whether retroactive or not), they are not subject to withholding.

Interest included in a settlement, if separately stated, is not subject to deductions for FICA (Social Security and Medicare) or FUTA (unemployment insurance) taxes. Contractors should provide 1099 forms to each class member for any portion of the settlement designated as interest.

COs should work with the Regional Solicitor´s office to ensure conciliation agreements handle any tax issues appropriately including accounting for portions subject to W-2 withholding and portions subject to 1099 reporting.

8. Distribution of Remedy

When using the formula approach, the agreed upon remedy is shared by all identified members of the class eligible and agreeing to participate in the settlement. The CO divides the amount of money that represents the group´s lost wages among the members of the class either on a pro rata basis or some other equitable basis. The CO, in consultation with his/her supervisor and the National Office Labor Economist, may decide on a method of distribution based upon the facts of the case. It may be appropriate to award back pay in equal amounts to each member of the class of victims or to apportion the back pay award to identified victims or groups of victims depending on the specific factual findings and the type of issues presented. In making this determination, the CO should consider whether there is a factual basis for providing a larger or smaller share to certain individuals as well as the statistical distribution of earnings.

For example, where the CO has identified an incumbent class which was denied promotions or assigned to lower paying jobs, a distribution based on the number of months since the denial of the promotion or the number of months in the contractor´s workforce might be appropriate.

B. **Individual Relief**

1. When to Use the Individual Relief Model
   The determination of when to use the individual relief model to calculate back pay is made on a case-by-case basis. Generally, OFCCP will use the individual relief model when it has identified a

single victim of discrimination, or a small group (*e.g.*, fewer than 5 members in the class). The individual or victim-specific model provides make-whole relief for each identified victim(s) of discrimination. Unlike the formula relief model, the individual relief model is used whenever it is feasible to identify individual victims of discrimination and it is feasible to calculate their individual economic losses. The two models for calculating back pay should not be interchanged. The CO should consider the circumstances that affect the determination to use individual relief, including, but not limited to:

   a. The total class size is small (*e.g.*, fewer than 5 members);

   b. The liability period is of short duration (*e.g.*, fewer than six months); and/or

   c. The economic losses for each individual victim can be traced and supported with documentation.

2. <u>Identifying Victims</u>

   Once it has been determined that the individual relief model is to be used to determine monetary relief, the class of individual victims must be identified. Having identified a discrimination violation(s), the CO will have identified the time period (liability period) in which the discrimination occurred, that there was a federal contract/subcontract in effect during the liability period, the nature of the violation, and identified the class of victims (non-favored group) that were discriminated against and entitled to relief. Once the individual victims are appropriately identified as entitled to relief, a precise back pay remedy should be tailored to the situation of each victim.[9]

3. <u>Calculating Lost Earnings</u>

   The CO will determine the precise remedy to which each victim is entitled. The CO should gather the information needed to compute each individual´s specific economic losses depending on the nature of the violation (*e.g.*, failure to hire, wrongful termination, failure to promote, failure to pay the appropriate salary rate, etc.). This information will include, but is not limited to, wages for the position, appropriate interim raises or step increases in pay, promotion potential (*i.e.*, the earnings associated with all of the promotions the person would have received had the discrimination not occurred), any overtime, any appropriate shift differential, and the value of employee benefits. The CO may obtain this information from a variety of sources, including payroll records, written policies, internet information about the company, employee handbooks, collective bargaining agreements, or during interviews with employees and managers.

   One common way to reconstruct the pay a victim of discrimination is due is to identify similarly situated employees/applicants that were not discriminated against (*i.e.*, members of the favored

group) for comparison to the affected members of the non-favored group. Proper comparators are those who were hired, promoted, etc., at about the same time the victim(s) of the discrimination should have been hired, promoted, etc., had discrimination not occurred. The CO will then trace the comparators' pay history by examining wage information. If there are gaps in the comparators' employment during the back pay period (*e.g.*, the comparators quit, had a lengthy illness, etc.), a reasonable estimate of the amount of wages the comparators would have made absent the break in service should be made (or, alternatively, if there are no payroll records for a given comparator for a period of time because of illness, it may be appropriate to exclude that comparator for that period of time).

Additionally, to calculate lost benefits to the victim(s), the CO should examine information about when the benefits became effective (*e.g.*, whether there is a waiting period for eligibility) and the monetary value of the benefits. Benefits can be calculated as a monetary figure (*e.g.*, employer contributions into a 401(K) retirement account, plus any interest on those retirement earnings that would have accrued if those contributions were in the employee's 401(K) retirement account); or as a percentage of wages/salary (*e.g.*, 20 percent of total compensation package). This is a fact-specific determination for the CO when applying the appropriate percentage of benefits towards the total back pay amount.

As noted in the discussion regarding formula relief, the CO will use the liability period as the time period for calculating back pay. (See section 6.A.3 above)

4. <u>Mitigation (Interim Earnings) as a Defense in Hiring/Termination Discrimination Cases</u>
Finally, the CO must consider appropriate deductions to the back pay award in anticipation of the contractor raising mitigation as a defense, which can occur under either formula relief or individual relief.

As previously stated, mitigation refers to the duty of victims of hiring or termination discrimination to use reasonable diligence in seeking alternative employment during the back pay period. Back pay awards are reduced by the amount the victim could have earned with reasonable diligence, less expenses reasonably incurred in looking for alternative employment (*e.g.*, cost to prepare a resume, gas and parking fees incurred when going for an interview). The victim is required only to accept employment that is substantially equivalent to or the same as that sought or held with the contractor. It is the contractor's burden to show that with such diligence the victim was reasonably likely to have found

comparable employment. The victim need not take any employment position simply to retain his/her back pay award. Nor is the victim required to relocate to accept alternative employment.[10]

The contractor may assert as a defense that the victim failed to take reasonable steps to mitigate back pay losses. The CO must examine this assertion considering that reasonable diligence does not mean the victim had to be successful in obtaining other employment, only that he/she is required to make a reasonable effort. Evidence relevant to the due diligence issue include interview statements by the victim that they applied for jobs, but were unsuccessful, copies of job applications filed with employers, and copies of rejection letters from employers, during the back pay period. If the victim made a reasonable effort to mitigate their losses, but failed to obtain alternate employment, then no deduction should be made to the back pay award. If the individual actually obtained other employment during the liability period (whether or not it was equivalent), than the amount of those interim earnings is deducted from the amount of the back pay award.[11]

As noted in the discussion regarding formula relief, the CO will use the liability period as the time period for calculating back pay. (See section 6.A.3 above)

5. <u>Computation of Interest</u>
   Like the formula relief model, the CO must compute interest on the total back pay amount (*i.e.*, total earnings for the liability period, less appropriate deductions and interim earnings). Interest on back pay is to be calculated at the same percentage rate as the IRS underpayment formula and is required to be compounded quarterly under the laws OFCCP enforces. (See 41 CFR 60-1.26(a)(2) (EO 11246); 41 CFR 60-250.65(a)(1), and 60-300.65(a)(1) (VEVRAA or Section 4212); and 41 CFR 60-741.65(a)(1) (Section 503)).

6. <u>Taxes</u>
   Contractors are responsible for paying the employer share of applicable taxes on top of any calculated settlement amount, and for providing appropriate tax withholding and reporting as explained above under Formula Relief.

8. **FILING INSTRUCTIONS:**
   <u>Holders of ADM and LEG Binders:</u> File this Directive in your Administrative Practices Binder.

   <u>District and Area Offices EOSs and EOAs:</u> File this Directive behind the tab for

ADM Directives in your FCCM Binder.

9. **DISTRIBUTION:** Electronically; A, B, and C.

10. **EXPIRATION DATE:** This Directive remains in effect until OFCCP determines it needs to be revised or rescinded.

11. **SIGNATURE** Patricia A. Shiu, Director, Office of Federal Contract Compliance Programs

---

[1] Although not specifically discussed in this Directive, other monetary relief, such as front pay or salary adjustments, may also be available in particular cases. In addition, a wide array of non-monetary relief may be sought by OFCCP for the victims of discrimination, e.g., preferential hiring, preferential promotions, special training programs, reasonable accommodation, systemic injunctive relief, and EEO counseling for supervisors, in addition to awarding back pay.

[2] Because mitigation generally does not apply to cases involving current employees (e.g., compensation discrimination, discrimination in promotions, etc.), back pay is not similarly adjusted before the calculation of interest.

[3] In addition to calculating the total losses for the class, formula principles can be used for distribution of back pay to class members. Under formula relief OFCCP may equally divide the total back pay award among all of the identified class members, which amounts to a pro-rata share of back pay that each class member receives as a remedy. However, OFCCP may also decide to use more individualized calculations for purposes of distribution, as explained in Section 6.A.7 below.

[4] If the final resolution takes place after the end of the contract coverage period, back pay for the discrimination that happened during the contract and appropriate interest will continue to accrue until the date of remedy; however there will be no back pay liability for any employment practice occurring after the end date of contract coverage. For example, in a hiring case, the back pay for individuals denied employment during the contract coverage period will continue to run until remedied, but there is no back pay due for jobs denied after the end of contract coverage. In a compensation case, back pay will remedy pay differences existing during the period of coverage, and interest on those losses will continue to accrue until remedy, but back pay will not include the effect of any pay decisions occurring after the end of contract coverage.

[5] It is generally not appropriate to use individual predicted salaries to establish class-wide losses..

[6] Periods when the victim would not have been employed even absent discrimination are excluded from the back pay award (e.g., during periods of incarceration).

[7] Indicators of employment status on applications are not generally sufficient unless specifically and individually verified.

[8] When computing back pay awards, the CO should not offset or deduct for FUTA unless the particular State where the victim was, or would have been employed, requires employers to withhold FUTA taxes from employee wages during the time period for which the back pay is being computed.

[9] Although this directive is focused solely on the calculation of back pay only, the CO should also consider all of the different types of harm that the victim has suffered and all of the types of available remedies, including non-monetary relief (e.g., appropriate injunctive relief), in fashioning a complete make-whole remedy.

[10] Periods when the victim would not have been employed even absent discrimination are excluded from the back pay award (e.g., during periods of incarceration).

[11] If the contractor shows that comparable employment would likely have been obtainable had the victim used reasonable diligence to mitigate their losses, but the victim did not make such a reasonable effort, then the amount of interim earnings that the victim could have earned had the victim used due diligence should be deducted from the back pay award. In this scenario, it is the contractor who must prove the amount of interim earnings that could have been earned.

*The contents of this document do not have the force and effect of law and are not meant to bind the public in any way. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies.*

Scroll to Top 

Agencies    Forms    About Us    News    Contact Us



**Office of Federal Contract Compliance Programs**

An agency within the U.S. Department of Labor
200 Constitution Ave NW
Washington, DC 20210
1-866-4-USA-DOL
1-866-487-2365
www.dol.gov

| FEDERAL GOVERNMENT | LABOR DEPARTMENT |
|---|---|
| White House | About DOL |
| Coronavirus Resources | Guidance Search |
| Severe Storm and Flood Recovery Assistance | Español |
| Disaster Recovery Assistance | Office of Inspector General |
| DisasterAssistance.gov | Subscribe to the DOL Newsletter |
| USA.gov | Read the DOL Newsletter |
| No Fear Act Data | Emergency Accountability Status Link |
| U.S. Office of Special Counsel | A to Z Index |

**ABOUT THE SITE**

Freedom of Information Act

Disclaimers

Plug-Ins Used on DOL.gov

Accessibility Statement

Connect With DOL



Site Map | Important Website Notices | Privacy & Security Statement