**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANDREW J. BRIGIDA; MATTHEW L. DOUGLAS-COOK | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | Case No. 16-cv-2227 (DLF) |
| PETE BUTTIGIEG, Secretary, U.S. Department of Transportation, | ) ) ) | |
| Defendant. | ) ) ) | |

---

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

---

**TABLE OF CONTENTS**

Page

TABLE OF CASES AND OTHER AUTHORITIES ............................................... iii

INTRODUCTION .................................................................................... 1

ARGUMENT ........................................................................................... 2

I.    The Proposed Class of CTI Graduates Satisfies Rule 23(a) ......................... 2

    A.    Even a <u>Single</u> Common Claim Adequately Establishes
Commonality; The Class has Many ................................................. 2

        1.    The FAA's Proposed Commonality Standard Is Wrong ....... 2

        2.    Common Questions Surround the Biographical
Questionnaire. ......................................................... 4

        3.    Common Questions Surround the Striking of
AT-SAT Scores ........................................................ 8

    B.    Plaintiffs' Claims Meet Rule 23(a)'s Requirement of Typicality ...... 9

        1.    Benefiting One Racial Group at the Expense of
<u>All</u> Others Creates Typical Claims ................................. 10

        2.    The Class Definition and the FAA's Conduct
Prevent "Eligibility and Qualification" From
Defeating Typicality ................................................. 11

        3.    Plaintiffs Refusal to Re-Apply in 2016 Does Not
Defeat Typicality ..................................................... 13

    C.    Plaintiffs Can and Will Adequately Represent the Class .................. 14

    D.    The Class is Ascertainable .......................................................... 15

II.    A Rule 23(b)(2), 23(b)(3), or Hybrid Class is Also Appropriate .................. 17

    A.    Injunctive Relief Can Benefit the Entire Class, Satisfying
Rule 23(b)(2) ........................................................................ 17

    B.    A Hybrid Certification, Pursuant to Rule 23(b)(3) or
23(c)(4) is Warranted ............................................................... 19

        1.    Predominance In This Case Is Not Controlled by
Antitrust Precedent .................................................. 19

i

2.      Common Questions Predominate ........................................... 22

3.      Mr. Perdue's Aggregate Back Pay Model Demonstrates
        Additional Potential Common Issues...................................... 23

4.      Proceeding With Bifurcated Phases and *Teamsters*-type
        Resolution Will Not Provide a Windfall to "Uninjured"
        Plaintiffs ................................................................. 24

C.      Class Action is the Superior Method of Adjudication ...................... 24

CONCLUSION ......................................................................... 25

## TABLE OF CASES AND OTHER AUTHORITIES

**CASES**                                                                    **Page**

*Albemarle Paper Co. v. Moody,*
    422 U.S. 405 (1975) ................................................................... 18

*Amgen Inc. v. Conn. Retirement Plans and Trust Funds,*
    568 U.S. 455 (2013) ................................................................... 2, 3

*Barnes v. District of Columbia,*
    242 F.R.D. 113 (D.D.C. 2007) ................................................... 22

*Behrend v. Comcast Corp.,*
    655 F.3d 182 (3d Cir. 2011) ....................................................... 21

*Berger v. Iron Workers Reinforced Rodman, Local 201,*
    170 F.3d 1111 (D.C. Cir. 1999)................................................... 13

*Brewer v. Lynch,*
    2015 WL 1360457 (D.D.C. 2015)............................................... 20

*Burton v. District of Columbia,*
    277 F.R.D. 224 (D.D.C. 2011) ................................................... 5

*Bynum v. District of Columbia,*
    214 F.R.D. 27 (D.D.C. 2003) ..................................................... 2

*Coleman through Bunn v. District of Columbia,*
    306 F.R.D. 68 (D.D.C. 2015) ..................................................... 13, 25

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ..................................................................... 20, 21

*Connecticut v. Teal,*
    457 U.S. 440 (1982) ................................................................... 7, 8

*DG ex rel. Stricklin v. Devaughn,*
    594 F.3d 1188 (10th Cir. 2010) .................................................. 17

*Dougherty v. Berry,*
    869 F.2d 605 (D.C. Cir. 1989)................................................... 23

*Easterling v. Conn. Dept. of Correction,*
    265 F.R.D. 45 (D. Conn. 2010) ................................................. 6, 13

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    563 U.S. 804 (2011) ................................................................... 21

*Furnco Const. Corp. v. Waters,*
    438 U.S. 567 (1978) ................................................................................. 7

*Gen. Tele. of Sw. v. Falcon,*
    457 U.S. 147 (1982) .............................................................................. 4, 9

*Hartman v. Duffy,*
    158 F.R.D. 525 (D.D.C. 1994) ............................................................ 13, 23

*Houser v. Pritzker,*
    28 F. Supp. 3d 222 (S.D.N.Y. 2014) .................................................. 8, 12, 16

*Howard v. Liquidity Services Inc.,*
    322 F.R.D. 103 (D.D.C. 2017) ................................................................... 3

*In re Johnson,*
    760 F.3d 66 (D.C. Cir. 2014)..................................................................... 13

*In re McCormick & Co. Pepper Prods. Mktg. & Sales Pract. Litig.,*
    422 F. Supp. 3d 194 (D.D.C. 2019).......................................................... 15

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
    292 F. Supp. 3d 14 (D.D.C. 2017)............................................................ 21

*In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.,*
    722 F.3d 838 (6th Cir. 2013) .................................................................. 21

*Ingram v. Madison Square Garden Ctr., Inc.,*
    709 F.2d 807 (2d Cir. 1983) ................................................................... 24

*Int'l Bhd. of Teamsters v. United States,*
    431 U.S 324 (1977) ......................................................................... *Passim*

*J.D. v. Azar,*
    925 F.3d 1291 (D.C. Cir. 2019)............................................................... 2, 9

*Keepseagle v. Vilsack,*
    102 F.Supp.3d 205 (D.D.C. 2015)............................................................ 15

*Leonard v. Southtec, LLC,*
    2005 WL 2177013 (M.D. Tenn. 2005)........................................................ 7

*Martini v. Fed. Nat. Mortg. Ass'n,*
    977 F. Supp. 464 (D.D.C. 1997)............................................................... 13

*Moore v. Dep't of State,*
    351 F. Supp. 3d 76 (D.D.C. 2019)............................................................ 14

*Moore v. Napolitano*,
   926 F. Supp. 2d 8 (D.D.C. 2013)............................................................................. 2, 22, 25

*Nat'l Veterans Legal Svs. Program v. United States*,
   235 F. Supp. 3d 32 (D.D.C. 2017)........................................................................... 15

*Ricci v. DeStafano*,
   557 U.S. 557 (2009) ............................................................................................... 8

*Ross v. Lockheed Martin Corp.*,
   267 F. Supp. 3d 174 (D.D.C. 2017)........................................................................ 6

*Savage v. Azar*,
   317 F. Supp. 3d 438 (D.D.C. 2018)........................................................................ 14

*Segar v. Smith*,
   738 F.2d 1249 (D.C. Cir. 1984).............................................................................. 16, 23

*Shenk v. Mallinckradt PLC*,
   300 F. Supp. 3d 279 (D.D.C. 2018)........................................................................ 10

*Smith v. Sec. of Navy*,
   659 F.2d 1113 (D.C. Cir. 1981)............................................................................... 8, 24

*Sperling v. Donovan*,
   104 F.R.D. 4 (D.D.C. 1984) .................................................................................... 11

*Stewart v. General Motors Corp.*,
   542 F.2d 445 (7th Cir. 1976) .................................................................................. 24

**Texas Dept. of Cmty. Affairs v. Burdine**,
   450 U.S. 248 (1981) ............................................................................................... 19

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ............................................................................................... 21

*Wagner v. Taylor*,
   836 F.2d 578 (D.C. Cir. 1987)................................................................................ 9

*Wal-Mart Stores v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................... *Passim*

## **Statutes**

42 U.S.C. § 2000e-5(g)(1) ........................................................................................... 18, 19

## <u>Rules</u>

Fed. R. Civ. P. 23 ...................................................................................... 1, 2

Fed. R. Civ. P. 23(a) ................................................................................. 2, 5, 9

Fed. R. Civ. P. 23(a)(2) .............................................................................. 2, 3

Fed. R. Civ. P. 23(b)(2) .............................................................................. 17, 18

Fed. R. Civ. P. 23(b)(3) ........................................................................1, 3, 19, 21

Fed. R. Civ. P. 23(c)(4) ............................................................................... 19

## INTRODUCTION

Every member of the Class had their pre-employment test results struck and was eliminated from hiring consideration at the same time, in the same way, for the same race-based reason. Every member of the Class asserts the same Title VII claims and will rely upon the same evidence to establish their claims. Nevertheless, the FAA asserts that the Class cannot go forward unless the Plaintiffs also make race-based and other distinctions among the Class members. Neither the facts of this case, nor the plain terms of Rule 23, require such divisions.

Further, the FAA's argument that Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3) without a uniform damages formula runs contrary to established case law. For more than forty years, courts have recognized that class actions determining liability for Title VII violations can, and should, be followed by individualized relief considerations. The resort to individual relief procedures does not, and could not, preclude Title VII class actions. Moreover, the FAA's inapposite arguments to the contrary are largely derived from antitrust and other economic harm cases outside of the context of civil rights lawsuits.

Put simply, Plaintiffs satisfy Rule 23 for the same reasons that numerous other Title VII cases satisfy Rule 23. The Class claims are common, the proposed Class representatives' claims are typical of the Class, the representatives will adequately represent the Class, and injunctive relief is appropriate to address the FAA's illegal conduct and will benefit the entire Class. The common issues of liability and relief far outweigh any individual issues that may later arise in the case. All of this makes a class action here superior to hundreds of individual actions. Class certification is therefore warranted.

# ARGUMENT[1]

## I.    The Proposed Class of CTI Graduates Satisfies Rule 23(a).

Plaintiffs have identified multiple common questions central to Class members' claims, demonstrated how their claims are typical of the Class, and shown that they will adequately represent the Class in pursuing those claims. The FAA's arguments that Plaintiffs cannot satisfy Rule 23(a) rely upon inapplicable legal standards, and on faulty efforts to establish factual distinctions within the Class. But Plaintiffs' allegations, when viewed in light of relevant legal authorities, firmly establish commonality, typicality, and adequacy of representation.

### A.    Even a <u>Single</u> Common Claim Adequately Establishes Commonality; The Class has Many.

#### 1.    The FAA's Proposed Commonality Standard Is Wrong.

A class "need only show one common issue to satisfy Rule 23(a)(2)." Mem'n in Supp. of Pls.' Mot. for Class Cert. ("Mot."), ECF No. 139 at 27. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("We quite agree that for purposes of Rule 23(a)(2) [e]ven a single [common] question will do.") (internal quotation omitted); *J.D. v. Azar*, 925 F.3d 1291, 1321 (D.C. Cir. 2019) (noting sufficiency of single common question); *Bynum v. District of Columbia,* 214 F.R.D. 27, 33 (D.D.C. 2003) ("Indeed, factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members.") (citations omitted).

Hence, the FAA's proffered standard for evaluating commonality is simply wrong.

---

[1] In evaluating class certification, courts presume the allegations of the complaint to be true, and do not evaluate the merits of plaintiffs' claims, except to the extent required to determine that Rule 23 is satisfied. *See Moore v. Napolitano,* 926 F. Supp. 2d 8, 27 (D.D.C. 2013); *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013). As a result, Plaintiffs will not address here the FAA's "background narrative" facts that do not impact class considerations. Opp., ECF No. 141 at 4–14, 37. Suffice it to say, Plaintiffs reject the FAA's factual assertions.

According to the FAA, "A plaintiff seeking class certification . . . must show that the elements of [the] claim are susceptible to classwide proof." Def.'s Opp. to Pls.' Mot. for Class Cert. ("Opp."), ECF No. 141 at 21–22. The FAA indicates this standard is a direct quote from *Amgen*. There are two problems with this citation. First, the *Amgen* Court noted that the only issue on appeal was predominance under Rule 23(b)(3); not commonality under Rule 23(a)(2). *See Amgen*, 568 U.S. at 465 ("The only issue before us in this case is whether [plaintiff] has satisfied Rule 23(b)(3)'s requirement that 'questions of law or fact common to class members predominate….'").

Second, even as to predominance, the FAA cites *Amgen* carelessly. *Amgen* actually reads: "Justice THOMAS urges that a plaintiff seeking class certification 'must show that the elements of [her] claim are susceptible to classwide proof.'" *Id.* at 468. The majority, however, quoted Justice Thomas to *reject*, rather than adopt, this statement. In the paragraph after the FAA's misquote, the *Amgen* majority in fact held the exact opposite: "Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members.'" *Id.* at 469 (emphasis in *Amgen*). Other courts in this District have recognized the proper place and form of the *Amgen* predominance analysis. *See Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 136 (D.D.C. 2017) (certifying securities class action and stating, "[T]o demonstrate that common issues predominate over individualized issues, a plaintiff need not 'prove that each "element of his claim is susceptible to classwide proof."'") (*quoting Amgen*, 568 U.S. at 469).

Applying the correct legal standard, this case presents multiple common issues central to liability, as well as common questions regarding relief, and more than satisfies Rule 23(a)(2).

##### 2.    Common Questions Surround the Biographical Questionnaire.

The FAA argues that the issues surrounding the Biographical Questionnaire ("BQ") do not satisfy commonality. Besides stemming from the wrong standard for commonality, its contentions fail for at least three other reasons.

First, the FAA's argument that Plaintiffs must show that a question in the BQ had a uniform impact on the Class relies upon disparate *impact* requirements, but this is a disparate *treatment* case. This case is about the FAA's intent to engage in race discrimination, and its decision to use the BQ, among other things, to accomplish that objective. The FAA's attempt to ignore common questions about the motivations of its key officials and focus only on the mechanical operation, or the disparate impact, of the BQ misses the point. The FAA challenges commonality by stating, "Plaintiffs fail to provide anything more than conclusory allegations that the [BQ] was biased in favor of African Americans." Opp., ECF No. 141 at 22. Perhaps if the Plaintiffs' claim was simply that the BQ had a disparate impact, this criticism would be relevant. But it is not.

Second, even if a disparate impact *analysis* applies in this disparate treatment case, the FAA's approach proves too much. The FAA suggests that unless Plaintiffs identify specific questions on the BQ that every Class member answered the same way and that caused them to fail, then Plaintiffs cannot establish commonality. *See* Opp., ECF No. 141 at 23–24 (asserting "Question 15 cuts against commonality" in part because not all the Class answered it the same way). But the FAA fails to point to a single court that has held that such granular question-by-question analysis is needed. Indeed, the FAA's argument would essentially preclude every case involving a defective employee selection test from being pursued as a class, regardless of how overt an employer's race discrimination was, or would require a separate subclass for every faulty question. Fortunately, this is not the law. *See Gen. Tele. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15

(1982) ("If petitioner used a biased testing procedure…, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a).").

As explained in *Wal-Mart*, a common faulty testing procedure establishes commonality because it bridges the conceptual gap between an individual's claim and the existence of a class who suffered the same injury. *Wal-Mart Stores*, 564 U.S. at 352–53. Here Plaintiffs have alleged that the BQ was rushed into place to serve a discriminatory purpose and to seize a unique opportunity (a) when the National Black Coalition of Federal Aviation Employees ("NBCFAE") asserted influence within the FAA and its Office of Civil Rights ("FAA OCR"), (b) when there was pent up demand for ATCSs, and (c) when the FAA could purport to justify its actions with the Barrier Analysis. The viability of this contention does not depend upon whether each Class member identically answered specific test questions.

Third, the FAA's citations do not support its arguments. The FAA claims that in *Burton v. District of Columbia*, 277 F.R.D. 224, 229 (D.D.C. 2011), class certification was denied "for failure to establish commonality where plaintiffs failed to explain how *the* examination was biased." (emphasis added). But *Burton* is inapposite because it did not involve a single test given for a single vacancy announcement. Rather, the *Burton* plaintiffs challenged four years of disciplinary decisions, asserted a hostile work environment, and challenged three different administrations of promotional tests over three different years, asserting a different problem with each test. *Id.* at 226–27. The court rejected the *Burton* plaintiffs' efforts to establish commonality,

noting that the complaint lacked any detail about how the examinations were biased, and that it was apparent that not all proposed class members took the tests. *Id.* at 229. [2]

Neither of those deficiencies exists here. This case is limited to persons who took and failed the 2014 BQ. And while identification of all the BQ's faults awaits merits discovery, Plaintiffs have explained how the BQ was likely an instrument of the FAA's discriminatory intent. *See* 4th Am. Compl., ECF No. 114, ¶¶ 12, 117 (BQ was unvalidated); ¶ 97 (BQ did not measure qualifications but was designed to screen out 70% of applicants); ¶¶ 108, 123–24 (FAA representations about the BQ were false); ¶¶ 104, 113–14 (change to hiring procedure was made to change racial balance); ¶ 115 (failure rate far exceeded expected 70%); ¶¶ 119–20 (weighting of the questions on the BQ is suspect, and may have favored African Americans); ¶ 121 (distribution of weights to answers potentially problematic); ¶¶ 122–24 (an entity within the FAA concludes biodata should not be used for ATCS hiring without further validation); ¶ 127 (BQ not job-related or justified by business necessity). These allegations are not "conclusory," as the FAA seems to contend.

Finally, the FAA's argument that commonality is lacking merely because the Class includes women and other non-Caucasian racial groups fails. A similar argument was cogently rejected by another federal district court:

> Defendants' argument that the potential class members would consist of African-
> Americans, Hispanics, temporary employees, permanent employees, supervisory

---

[2] The FAA's reliance on *Ross* and *Easterling* is similarly misplaced. Opp., ECF No. 141 at 17–18. In *Ross v. Lockheed Martin Corp.,* 267 F. Supp. 3d 174 (D.D.C. 2017), the suit encompassed three years of performance reviews involving two rounds of at least partially subjective scoring, not an employee screening examination. *Ross,* 267 F. Supp. 3d at 178, 183. And in *Easterling*—a disparate impact case—the plaintiffs did not provide "statistical analysis of comparative test passage rate to demonstrate commonality," as the FAA claims. Opp., ECF No. 141 at 18. The FAA cites the case background, but the commonality portion of the opinion concludes that persons taking the 2006 and the 2008 tests in fact *did* have claims in common, and does not address statistics. *See Easterling v. Conn. Dept. of Correction*, 265 F.R.D. 45 51–52 (D. Conn. 2010).

employees, and non-supervisory employees is of no avail. Defendants cite no case law to support the proposition that these different individuals cannot together set forth a series of legal issues that meet the commonality requirement. The Court finds that it is appropriate to include Blacks and Hispanics in the same class where the discrimination alleged is based on race and national origin. Where the policy appears to be "Whites only," then the discriminatory employment practices based on race and national origin take the same form, and the injury and remedy would be the same….For purposes of commonality, the Court does not find any significance in the fact class members may be of a different status so long as there are questions of fact and law in common as there are here.

*Leonard v. Southtec, LLC*, No. 3:04-0072, 2005 WL 2177013, *8 (M.D. Tenn., Sept. 8, 2005). The issue of commonality merely asks whether the class has *claims* in common, not whether each class *member* has exact facts in common. Plaintiffs' claims here are based on the assertion that the FAA acted to benefit African Americans to the detriment of all others. *See* 4th Am. Compl., ECF No. 114, ¶¶ 11–12, 38, 56, 61, 64, 68–70, 79–80, 84, 92, 117, 119–20, 131, 136, 198; A. Brigida EEO Compl., Ex. 30 to Mot., ECF No. 139-30 at 11 ¶ 49.

Further, the Supreme Court has rejected the FAA's "bottom line" argument that if there is not a disparate impact at the end of an employment process, then a plaintiff cannot assert discrimination as to part of the process. *See Furnco Const. Corp. v. Waters,* 438 U.S. 567, 579 (1978) ("A racially balanced work force cannot immunize an employer from liability for specific acts of discrimination."); *Connecticut v. Teal*, 457 U.S. 440, 455 (1982) ("It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group."). Even assuming that within the universe of mostly "off the street" applicants the BQ did not have an adverse impact on a racial group other than Caucasians, that does not mean that the BQ was not *intended* to harm the Class vis-à-vis African Americans. If anything, the FAA's arguments walk it directly into another problem that it cannot escape. The FAA states that it "intends to show that it designed the [BQ] to have the highest predictive value balanced against the lowest disparate impact

on each protected group." Opp., ECF No. 141 at 24. Whether that is true or not is obviously a question common to the Class.

### 3.    Common Questions Surround the Striking of AT-SAT Scores.

The FAA's assertions that many Class members "lost little to nothing" when their AT-SAT scores were struck, and that it "could have been a significant advantage," Opp., ECF No. 141 at 26, is factually false and, in any event, does not rebut Plaintiffs' showing of commonality. First, the FAA assumes the wrong premise. Class members do not need an assurance of being hired to have a valid Title VII claim. "That the named plaintiffs must establish their eligibility for hire, however, does not mean … that they must show that they ultimately would have been hired. Rather, the Supreme Court has made clear that '[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, … [t]he 'injury in fact' … is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.'" *Houser v. Pritzker*, 28 F. Supp. 3d 222, 237 (S.D.N.Y. 2014) (citation omitted); *see also Teal*, 457 U.S. at 448–49; *Smith v. Sec. of Navy*, 659 F.2d 1113, 1120–21 (D.C. Cir. 1981); *Ricci v. DeStafano*, 557 U.S. 557, 585 (2009).

Second, every Class member went from having an AT-SAT score that designated them as being qualified, to failing an unrelated BQ. That is not a meaningless loss. The FAA's own evidence indicates that all Class Members, with their tested aptitude and demonstrated commitment to the job, were favored over allegedly equally qualified general public hires. 4th Am. Compl., ECF No. 114 ¶¶ 46, 49–53, 68, 109. Yet every Class member was commonly robbed of the test score that gave them that opportunity. Nor has the FAA shown that it had different intentions vis-à-vis Class members with "qualified" versus "well-qualified" scores. The FAA's purported distinction between these groups—both which failed the BQ—is therefore meaningless.

In a simplified form, *Walmart* established that the test for commonality in an employment discrimination case is whether there is a common answer to the crucial question of "Why was I disfavored." *See Wal-Mart Stores*, 564 U.S. at 352.[3] Here, there should be no dispute that Plaintiffs have established that this question will have a common answer for all Class members—they were disfavored by the striking of their test results and implementation of a faulty screening mechanism, actions taken to further the interests of lesser qualified African American applicants.[4]

### B.    Plaintiffs' Claims Meet Rule 23(a)'s Requirement of Typicality.

Plaintiffs' claims are typical of the Class. In response to Plaintiffs' initial showing on this topic, the FAA responds that the Class members are of multiple races, had different AT-SAT scores, or had different histories of submitting ATCS applications to the FAA. None of these arguments rebuts typicality. The D.C. Circuit has held that, "to destroy typicality, a distinction must differentiate the 'claims or defenses' of the representatives from those of the class. … As a result, typicality is ordinarily met 'if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct based on the same legal or remedial theory.'" *J.D.*, 925 F.3d at 1322 (citation omitted). To that end, the D.C. Circuit has rejected arguments premised on the distinction between a "senior," "elite," or "successful" plaintiff challenging discrimination, and other employees, finding that such a plaintiff, "has an interest, like all other members of the class, in being fairly evaluated." *Wagner v. Taylor*, 836 F.2d 578, 591–

---

[3] Moreover, it is impossible to square the FAA's arguments with *Walmart*'s approving description of the holding in *Falcon*, which stated that a class action would satisfy Rule 23 if an employer used the same biased test for hiring and promoting employees. *See Wal-Mart Stores*, 564 U.S. at 353 ("[I]f the employer used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test *clearly would satisfy the commonality and typicality requirements of Rule 23(a)*.") (internal quotation marks omitted) (emphasis added).

[4] Having established common liability issues, Plaintiffs respond to the FAA's arguments concerning injunctive relief and backpay below.

92 (D.C. Cir. 1987) ("If performance evaluations are discriminatory, Wagner has been hurt in the same way that any other member of the proposed class has, whether 'successful' or not.").

In short, factual variations between class representatives and class members do not destroy typicality unless the differences amount to a legal difference in the claims at issue. *See Shenk v. Mallinckrodt PLC*, 300 F. Supp. 3d 279, 282 (2018) ("To satisfy the typicality requirement, a movant's claims need not be identical with the absent class members, but they must be reasonably coextensive with the class as a whole.").

### 1. Benefiting One Racial Group at the Expense of <u>All</u> Others Creates Typical Claims.

The FAA asserts that typicality is lacking because "ostensibly" the policy at issue was implemented to "reduce barriers" for females and certain racial groups. Opp., ECF No. 141 at 31. This argument fails because Plaintiffs specifically allege that the political groundswell giving rise to the 2014 changes—and the 2014 changes themselves—were intensely focused on benefitting African Americans. These allegations are presumed true. *See supra*, at 2 n.1. Further, it is easy to conceptualize how persons designing the application process could have made choices to specifically benefit African Americans, above other demographics.

First, the FAA's actions were driven by an African American affinity group; directed by the highest member of the FAA OCR, a person affiliated with that affinity group; and meant to benefit African Americans. *See* 4th Am. Compl., ECF No. 114, ¶¶ 11–12, 38, 56, 61, 64, 68–70, 79–80, 84, 92, 117, 119–20, 131, 136, 198. Indeed, from the beginning, Plaintiff Brigida's administrative complaint alleged, "On information and belief, certain members of the FAA Human Rights staff and Civil Rights staff, many of whom are NBCFAE members, preferred policy outcomes that would benefit the NBCFAE to the detriment of all other races including other minority applicants." A. Brigida EEO Compl., Ex. 30 to Mot., ECF No. 139-30 at 11 ¶ 49. The

statistics referred to in paragraphs 119–120 of the Complaint, as well as the fact that one of the rushed changes to the 2014 hiring process was the elimination of the centralized selection panels— a step found as an alleged barrier *only* to African Americans—demonstrate the opportunity to manipulate hiring for the benefit of a single group. *See* 4th Am. Compl., ECF No. 114, ¶¶ 119-120; FAA Presentation, Ex. 20 to Mot., ECF No. 139-20 (selection panels served as a barrier to African Americans but no other group); Email from J. Scott, Ex. 24 to Mot., ECF No. 139-24 (one goal in the new selection process was to eliminate centralized selection panels).

Second, Plaintiffs' specific allegations distinguish this case from *Sperling v. Donovan*, 104 F.R.D. 4, 9 (D.D.C. 1984), which the FAA relies upon. In that case, "unsupported allegations of discrimination" did not "'supply the requisite classwide typicality' because 'specificity' is required." Opp., ECF No. 141 at 30. By contrast, the allegations in this case are detailed and well-supported. In any event, *Sperling* is inapplicable for other reasons. *Sperling* dealt with an unfavored "across-the-board" discrimination claim, which asserted discrimination in promotions, performance evaluations, and awards in 71 different job categories. 104 F.R.D. at 5–6, 9. By the time that the *Sperling* court addressed typicality, it had found only two incidents were within the limitations period, one for awards for a special group project, and one for which the plaintiffs were treated differently. *Id.* at 7–8. The court concluded that "[t]wo instances of awards distributions, where plaintiffs simply believed that they deserved more recognition, are not sufficient to support class certification." *Id.* at 9. The typicality lacking in *Sperling* bears no relation to this case.

## 2. The Class Definition and the FAA's Conduct Prevent "Eligibility and Qualification" From Defeating Typicality.

For the same reasons that differing AT-SAT scores among Class members do not defeat commonality, they do not defeat typicality. Separately, the FAA asserts that some members of the Class may not have been eligible for hire under the legacy system because they had graduated

11

years before, and their eligibility had expired. Opp., ECF No. 141 at 32. The FAA ignores, however, that Plaintiffs have already built into their proposed class definition the requirement that the Class members had an active AT-SAT score. 4th Am. Compl., ECF No. 114, ¶ 173. If a graduate had an active AT-SAT score, they were harmed when that score was struck and the representatives' claims, with their active AT-SAT scores, are typical.

The FAA theorizes that some Class members would not have been eligible for recommendations from their schools, but that the ineligibility might not be reflected in their records. Opp., ECF No. 141 at 32. But the FAA cannot complain about a problem of its own making. Plaintiffs have alleged that the FAA stopped seeking recommendations as part of executing its discriminatory change in hiring. 4th Am. Compl., ECF No. 114, ¶ 168. If Plaintiffs are correct, any doubts about the recommendations of the Class members created by the FAA's conduct are to be resolved against the FAA. *See Houser*, 28 F. Supp. 3d at 235 (where "the nature of the employer's [discriminatory] hiring practices makes it impossible to determine a 'but for' outcome," an otherwise qualified plaintiff is entitled to relief).

Finally, the FAA argues that Class members' injuries differ because some could apply to the 2012 CTI vacancy announcement. Opp., ECF No. 141 at 33. But they ignore the fact that not one person was hired from that vacancy announcement, and that Plaintiffs have alleged that this, too, was part of the FAA's efforts to stack the deck for greater African American hiring. 4th Am. Compl., ECF No. 114, ¶ 76; Answer, ECF No. 133, ¶ 76 ("[T]he FAA did not make any selections from applications submitted in response to vacancy announcement FAA-AHM-13-CTI-27503"); 4th Am. Compl., ECF No. 114, ¶¶15, 37–38, 76. Therefore, who may or may not have applied to the 2012 announcement does nothing to change the claim that the FAA invalidated standing AT-SAT scores because it did not like the racial mix of successful test takers.

12

**3.    Plaintiffs' Refusal to Re-Apply in 2016 Does Not Defeat Typicality.**

Plaintiffs' refusal to reapply to the 2016 vacancy announcement, released after Congress intervened in the FAA's discriminatory hiring, does not establish a failure to mitigate damages defense, nor does it defeat typicality.[5] For the reasons stated above, if the FAA's striking of AT-SAT test scores or its design and implementation of the 2014 ATCS selection process violated Title VII, then liability exists, without more; the failure of any given Class member to mitigate damages, at best, reduces the FAA's back pay obligations.

Most importantly, individual defenses do not defeat typicality unless they threaten to "skew the focus of the litigation and create a danger that absent class members will suffer because their representative is preoccupied with defenses unique to it." *Coleman through Bunn v. District of Columbia*, 306 F.R.D. 68, 83 (D.D.C. 2015) (cleaned up). Courts routinely address damages defense issues after resolving common issues of liability. *See Hartman v. Duffy*, 158 F.R.D. 525, 545–46 (D.D.C. 1994) (defendant's assertion that plaintiff was not qualified did not defeat typicality; qualification disputes would be addressed in later phase in *Teamsters* hearing); *Berger*, 170 F.3d at 1133 (reviewing decisions related to individual rewards of back pay); *In re Johnson*, 760 F.3d 66, 75 (D.C. Cir. 2014) (partial certification effectively "complied in advance" with requirement in *Wal-Mart* that defendant be able assert statutory defenses to individual claims); *Easterling*, 265 F.R.D. at 52 ("Differences in the degree of harm suffered, or even in the ability to

---

[5] Plaintiffs' decision not to apply to the 2016 ATCS openings is not a failure to mitigate damages. *See Martini v. Fed. Nat. Mortg. Ass'n*, 977 F. Supp. 464, 474 (D.D.C. 1997) (rejecting argument that plaintiff failed to mitigate damages by refusing different job offered by employer one month after complaint of discrimination was made); *Berger v. Iron Workers Reinforced Rodman, Local 201*, 170 F.3d 1111, 1133 (D.C. Cir. 1999) ("The victim of discrimination, however, is 'merely required to make "reasonable efforts" to mitigate his loss of income, and only unjustified refusals to find or accept other employment are penalized under this rule.'"). Requiring Plaintiffs to forego the life and career paths they had established in intervening years to return to an employer that only stopped discriminating against them because of a Congressional mandate is not reasonable.

prove damages, do not vitiate the typicality of a representative's claims.") (citation omitted). The FAA offers no reason why that is not true in this case, and the FAA is still fully free to assert its defenses in later phases of this case. But it cannot defeat typicality on such bases.

      **C.**    **Plaintiffs Can and Will Adequately Represent the Class.**

The FAA's newly-lodged assertion that Plaintiffs' qualifications claims are not exhausted, and that the proposed Named Plaintiffs are therefore inadequate representatives, fails for a number of reasons. First, even if accepted, this argument would apply only to the qualifications claim, and not to the claims regarding the BQ. *See* Order, ECF No. 112 at 3–4 (holding Plaintiffs exhausted disparate treatment claim regarding BQ). Second, a failure to exhaust remedies is an affirmative defense for which the defendant bears the burden. *See Moore v. Dep't of State*, 351 F. Supp. 3d 76, 94 (D.D.C. 2019). The FAA has not even attempted to carry that burden here, nor shown that it could. Third, as the FAA acknowledges, timeliness of exhaustion is measured by a "discrete" act. Opp., ECF No. 141 at 31; *Moore*, 351 F. Supp. 3d at 94. The FAA does not identify any "discrete act" that it took more than 45 days prior to Mr. Brigida's initiation of the EEO process. In January 2014, the FAA informed the CTI schools that the application process would be changing, but this is not a discrete discriminatory act. If the FAA announced to the world that it had plans to discriminate in January, but did not engage in a discriminatory act until February, an EEO process started within 45 days after the act is timely. Fourth, the parties are now six years into this case, through two motions to dismiss and two substantive oppositions to motions to amend; the failure to exhaust remedies defense is waived. *See Savage v. Azar*, 317 F. Supp. 3d 438, 339–40 (D.D.C. 2018) (belatedly asserted defense of failure to exhaust remedies was waived). In any event, since the Class currently relies upon Mr. Brigida's EEO filing for exhaustion, if the

FAA is allowed to proceed with its new defense, this establishes one more common issue in the case.

The race and national origin distributions within the Class do not establish that Plaintiffs are inadequate Class representatives. Indeed, the FAA does not argue as much, but merely hedges claiming it "is unclear whether the interests of the Class are antagonistic to each other." Opp., ECF No. 141 at 37. Conflicts of interest that are merely speculative or hypothetical do not defeat adequacy of representation, and conflicts only prevent adequacy of representation when they are "fundamental to the suit … and go to the heart of the litigation." *Nat'l Veterans Legal Svs. Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017) (*quoting Keepseagle v. Vilsack,* 102 F. Supp. 3d 205, 216 (D.D.C. 2015)). As explained above, Plaintiffs allege political pressure brought to bear in the FAA, and actions taken to uniquely benefit African Americans. The evidence thus does not substantiate a concern that a conflict will arise within the Class.

**D.  The Class is Ascertainable.**

In *In re McCormick & Co. Pepper Products Marketing & Sales Practices Litigation*, 422 F. Supp. 3d 194, 241 (D.D.C. 2019), the court noted that the D.C. Circuit has not expressly required ascertainability, but then conducted a survey of other circuits' rulings. It held that the baseline and appropriate standard "means that a class definition must render potential members identifiable according to objective criteria." *Id.* The Class definition here meets that requirement.

Contrary to the FAA's argument, the exclusion of CTI graduates "whose academic records as of February 21, 2014, explicitly stated that they were ineligible to receive a letter of recommendation from their CTI school" does not create a significant hurdle in the administration of the Class, much less a fatal one. The FAA claims that there is "no reason to think that graduates who fail to meet a school's recommendation criteria will have the lack of recommendation

'explicitly state[d]'" in their records. Opp., ECF No. 141 at 38. That alleged concern, however, is *not* an ascertainability problem. The record will either state that the student is ineligible for a recommendation, or it will not. If such notation is not found in the record, the graduate is not precluded from Class membership on that basis.[6]

Nor does lack of documentation regarding whether a graduate would have received a recommendation create a practical problem. Indeed, while the FAA refers to various ways that it has analyzed the purported Class, it is silent as to the number of its assumed Class members that lack notation of a recommendation. Few potential Class members are likely to face this scenario. The FAA had issued a CTI ATCS vacancy announcement that ended on September 10, 2012. Opp., Ex. G, ECF No. 141-1 at 238. While the FAA did not hire anyone from that announcement, any CTI graduate who applied to the vacancy (or an earlier CTI announcement) would have their recommendation recorded. Thus, any lack of records regarding recommendations are likely to be only from students who graduated in late 2012 or in 2013. Further, while some schools stopped submitting recommendations in late 2013, they did so because the FAA instructed them that they no longer wished to receive the recommendations due to their new (illegal) hiring process. 4th Am. Compl., ECF No. 114, ¶ 168. Because any problem regarding a potential lack of recommendation would purely be a function of the FAA's own discriminatory misconduct, any doubts about recommendations are to be resolved against the FAA. *See Segar v. Smith*, 738 F.2d 1249, 1291 (D.C. Cir. 1984); *Houser*, 28 F. Supp. 3d at 235.

Class members who satisfy all the other criteria for Class membership, but have no record of a recommendation, and no record that they would be ineligible for a recommendation, should

---

[6] Further, the exclusion that the FAA contests was required as a condition of Plaintiffs' amendment. *See* ECF No. 112 at 5 n.2. To make dates consistent and to the FAA's benefit, Plaintiffs made the exclusionary date February 21, 2014, rather than January 27, 2014.

be presumed to be in the Class and provided any notice afforded the Class.

## II.    A Rule 23(b)(2), 23(b)(3), or Hybrid Class is Also Appropriate.

Plaintiffs pursue injunctive relief applicable to the entire Class, common issues predominate in this litigation, and a class mechanism is superior to repeatedly addressing the same issues in different proceedings; Plaintiff thus satisfy Rule 23(b). Many of the FAA's Rule 23(b) arguments fail for the same reasons described above. Moreover, many of the FAA's Rule 23(b) arguments rely erroneously on cases addressing antitrust violations. As explained below, there are fundamental differences between harms made illegal because of their economic impact, and the harms that Title VII was meant to eradicate.

### A.    Injunctive Relief Can Benefit the Entire Class, Satisfying Rule 23(b)(2).

The declaratory and injunctive relief sought by the Plaintiffs is sufficiently conceptualized to satisfy Rule 23(b)(2). Unfortunately, the FAA's representation of the standard at class certification is erroneous. The FAA states:

> Where Defendant and this Court are left to guess at what Plaintiffs seek by way of injunctive relief, and whether it would provide a class-wide remedy, certification under Rule 23(b)(2) is inappropriate. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1200 (10th Cir. 2010) ("Rule 23(b)(2)'s bottom line, therefore, demands at the class certification stage plaintiffs describe in reasonably particular detail the injunctive relief they seek[.]")

Opp. at 40. The Tenth's Circuit's holding, however, is more robust than the FAA's selective quotation. The Tenth Circuit stated: "Rule 23(b)(2)'s bottom line, therefore, demands at the class certification stage plaintiffs describe in reasonably particular detail the injunctive relief they seek <u>such that the district court can at least conceive of an injunction that would satisfy [Rule 65(d)'s] requirements, as well as the requirements of Rule 23(b)(2)</u>.'" *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1200 (10th Cir. 2010) (cleaned up, emphasis added).

This Court has already held that, upon finding discrimination, "the court may . . . order

17

such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees . . . or any other equitable relief as the court deems appropriate." Mem'm Opinion and Order, ECF No. 50 at 7 (*quoting* 42 U.S.C. § 2000e-5(g)(1)). Further, in such a case "the district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Id. (quoting Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)). And equitable relief, including hiring preferences, remain possible, despite Congressional changes to ATCS hiring regimes. *Id.* at 8; *see also* Mem'm Opinion and Order, ECF 112 at 6 (quoting Order at ECF No. 50). As time progresses, the likelihood that Class members could or would be hired into ATCS positions wanes, but that does not preclude Class members from being made whole in part by a hiring preference for other positions within the FAA.

Turning to the Rule itself, the FAA "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). The FAA's striking of Class members' AT-SAT scores, its changing of the 2014 hiring process, and the mandated application and scoring of the BQ were all applied to the Class. To remedy the FAA's discrimination, the Class seeks injunctive relief, including instatement preferences; possible eligibility extensions for ATCS positions; training and other measures, particularly for the FAA OCR and HR offices, designed to prevent race-based hiring decisions from occurring in the future; prohibitions against special interest groups designing hiring methods; and requiring third-party review of proposed hiring changes. 4th Am. Compl., ECF No. 114, ¶ 206; 4th Am. Compl., ECF No. 114, Prayer, ¶ 6; Mot., ECF No. 139 at 31, 39.

This relief will benefit the entire Class. First, the requested injunction seeks that Class members receive a preference for a position with the FAA. This preference could act similar to (but subject to) the statutory veteran's preference, and apply to all Class members, even if they are

currently employed by the FAA. Hiring preferences are explicitly allowed under Title VII. *See* 42 U.S.C. § 2000e-5(g)(1). Further, the other remedies are designed to prevent discrimination by addressing the specific circumstances of this case—improper political influence by an interest group and a belief or self-serving assumption that complying with MD-715 or otherwise removing barriers for one protected group allowed discrimination against other groups.

### B.    A Hybrid Certification, Pursuant to Rule 23(b)(3) or 23(c)(4) is Warranted.

The FAA's argument against a hybrid or partial certification misunderstands Plaintiffs' proposal. Indeed, nowhere in the FAA's Opposition does it address Plaintiffs' request that proceedings be bifurcated. Plaintiffs propose that this case follow a path endorsed by the Supreme Court: first, the case would address whether the defendant engaged in a practice of discrimination that affected a large number of applicants in the same way; if the finding of discrimination is made, then the case moves on—with a presumption of discrimination benefiting the Class—to address questions of remedies and the make whole directive of Title VII. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 362 (1977).[7] Once liability is found, there will still be remedies issues that can be addressed on a class basis, such as aggregate or but-for back pay, and the resolution of the defenses that the FAA claims to have against the awarding of certain remedies.

### 1.    Predominance In This Case Is Not Controlled by Antitrust Precedent.

The FAA is right that Plaintiffs do not suggest a "damages" model that establishes that all "damages are capable of measurement on a classwide basis." Opp., ECF No. 141 at 42. Frankly, no such Title VII "damages" model would ever satisfy both *Wal-Mart* and antitrust requirements;

---

[7] The FAA claims that a finding of liability would not give rise to a presumption of discrimination because "this is not a pattern and practice case." Opp., ECF No. 141 at 44. But should Plaintiffs prevail on the merits of their claim, Class members will be entitled to a presumption that they were discriminated against. *Teamsters,* 431 U.S. at 362; *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) ("Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.").

and for good reason. In *Wal-Mart*, the Supreme Court rejected the proposed class in part due to the suggestion that monetary relief could be resolved based on statistical sampling or "Trial by Formula." 564 U.S. at 367. The Court was clear that a Title VII defendant "is entitled to individualized determinations of each employee's eligibility for backpay." *Id.* at 366. The Court again endorsed the *Teamsters* approach of post-liability hearings to determine individual relief. *Id.*

Ignoring all of this, the FAA claims that this Class cannot be certified for monetary relief unless it aligns with the statement in *Comcast*, an antitrust case, that "damages are capable of measurement on a class wide basis." Opp*.,* ECF No. 141 at 42 (*citing Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). But if both requirements were applicable, no Title VII class seeking monetary relief could be certified; there cannot be a classwide formula for "damages" *and* individualized determinations of monetary relief. Indeed, the *Wal-Mart* Court noted that plaintiffs' pursuit of uniform damages created "perverse incentives for class representatives to place at risk potentially valid claims for compensatory damages…" *Wal-Mart Stores*, 564 U.S. at 364. Other courts have found that when a class representative attempts to waive certain claims or relief, such a representative is inadequate because they are engaging in impermissible claim splitting. *See Brewer v. Lynch*, No. 08-1747-BJR, 2015 WL 1360457, at *10 (D.D.C. Sept. 30, 2015) ("Courts closely scrutinize claim splitting by a class representative and do not permit such a plaintiff to 'opt to pursue certain claims on a class-wide basis while jeopardizing the class members' ability to subsequently pursue other claims.'")[8]

The best reconciliation of *Wal-Mart* and *Comcast* is that *Comcast* is inapplicable to Title VII. Unlike Title VII, the very elements of an antitrust claim require proof of damages. *See*

---

[8] For this reason, Plaintiffs have not foregone compensatory damages on behalf of the Class as the FAA sometimes claims. Opp., ECF No. 141 at 43.

*Behrend v. Comcast Corp.*, 655 F.3d 182, 191 (3d Cir. 2011) (elements of claim were a violation of antitrust laws; an individual injury resulting from that violation (antitrust impact), and measurable damages). The same elements were required in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, another case upon which the FAA places great weight. 292 F. Supp. 3d 14, 89 (D.D.C. 2017). But of the numerous potential Title VII theories, none involve an element that requires proof of measurable damages.

Cases decided after *Comcast* make clear that class actions can be certified pursuant to Rule 23(b)(3) even if individual issues affect damages. Two years after *Comcast*, *Tyson Foods* discussed how to evaluate common and individual issues to decide whether Rule 23(b)(3) is satisfied. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016). Such discussion would have been completely unnecessary if, as the FAA contends, issues of damages, and presumably every other issue in the case, had to be decided on a classwide basis. Moreover, *Tyson Foods* explicitly stated "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, ***such as damages*** or some affirmative defenses peculiar to some individual class members.'" 577 U.S. at 453 (emphasis added); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 858–61 (6th Cir. 2013) (examining *Comcast* upon direction from Supreme Court, holding *Comcast* had limited application where liability and damages issues were bifurcated).

As explained by the Supreme Court, "[c]onsidering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). The FAA misses this step entirely. Economic damage is not an element of Plaintiffs' claim, and need not be

21

proven by a uniform damages model. The FAA's argument to the contrary contravenes well established Supreme Court precedent for the proper administration of Title VII cases.

**2.    Common Questions Predominate.**

Other aspects of the FAA's preferred approach to evaluating predominance also fail. The FAA argues that "the primary focus of the predominance inquiry should not be Plaintiffs' background narrative,…but on the weight of Plaintiffs allegedly common monetary relief issues." Opp., ECF No. 141 at 42. If "background narrative" means the merits of Plaintiffs' liability case, courts hold exactly the opposite. *See, e.g., Barnes v. District of Columbia*, 242 F.R.D. 113, 122 (D.D.C. 2007) (issues going to liability "dwarf whatever unique issues might arise at the damages stage"); *Moore*, 926 F. Supp. 2d at 33–34 (individual issues of whether defendant had some legitimate reason not to promote specific class members were "not germane to the liability stage of a pattern and practice claim," not relevant to disparate impact, and so "do not destroy predominance").

Identifying and categorizing the issues in this case, the common questions include: (1) whether Class members were applicants when their AT-SAT scores were struck; (2) whether the FAA struck the Class members' AT-SAT scores for a racial purpose; (3) if so, whether the FAA had a strong basis in evidence that the AT-SAT was deficient, and that discarding the results was necessary to avoid violating the disparate-impact provision of Title VII (including the sub-questions of whether the AT-SAT was job-related and if an equally valid, less discriminatory test was available); (4) whether the FAA designed the 2014 hiring process, including the BQ, with the intent to favor one racial group over others; (5) whether the 2014 hiring process served as an instrument of discrimination; (6) whether the FAA had legitimate non-discriminatory reasons for how it designed and implemented the 2014 ATCS selection process; (7) what form of injunctive

22

relief will best make the Plaintiffs whole; and (8) whether back pay should be awarded and how. Notably, the FAA does not identify *any* individual issues that would need to be resolved for a factfinder to determine whether striking the AT-SAT scores or the implementation of the 2014 ATCS selection process violated Title VII.

Any individual issues arise only after a finding of liability. These include whether any particular Class member was objectively disqualified from being hired as an ATCS, such that they are not eligible for back pay; whether some individuals failed to mitigate damages; or whether their back pay awards, if not calculated on an aggregate/pro rata basis, should be terminated early for some other reason. These are exactly the types of questions that courts routinely find not to defeat predominance and class certification. *See Hartman* 158 F.R.D. at 545–46 (defendant's assertion that plaintiff was not qualified would be addressed in later phase *Teamsters* hearing).

### 3. Mr. Perdue's Aggregate Back Pay Model Demonstrates Additional Potential Common Issues.

Mr. Perdue's expert model of how elements of back pay can be subject to common proof bolsters the predominance finding. Like a broken record, the FAA attacks Mr. Perdue's model as not establishing damages on a classwide basis. Opp., ECF No. 141 at. 42. For the reasons explained above, it was not meant to, nor should it.[9] Cases across multiple circuits, including the D.C. Circuit, as well as guidance from the government itself, indicate that an aggregate/pro rata model is wholly appropriate to remedy discrimination. *See, e.g.*, *Segar*, 738 F.2d at 1289–90 (affirming choice of classwide back pay); *Dougherty v. Berry*, 869 F.2d 605, 614–25 (D.C. Cir. 1989) (holding aggregate/pro rata distribution appropriate); *Ingram v. Madison Square Garden Ctr., Inc.*, 709 F.2d

---

[9] Most of the FAA's other criticisms of Mr. Perdue's report either are general objections to the premise underlying the aggregate/pro rata approach, apply only to front pay, or represent difficulties that would prevent any plaintiff, class member or individual, from proving damages with absolute certainty. Opp., ECF No. 141 at 24. But absolute certainty is not required, and the FAA's proposal would improperly leave any failure to hire plaintiffs without back pay.

807, 812 (2d Cir. 1983) (pro rata distribution was more appropriate than distribution to first in time applicants). Plaintiffs have presented such a model and explained how it would apply here. And even the FAA's expert acknowledged that back pay in this case could likely be calculated on an aggregate basis. *See* Mot., ECF No. 139 at 32–33; Mot. Ex. 23, P. White Dep. Tr., ECF No. 139-23.

### 4. Proceeding with Bifurcated Phases and *Teamsters*-type Resolution Will Not Provide a Windfall to "Uninjured" Plaintiffs.

The FAA is incorrect to assert that Plaintiffs' proposal provides a windfall to uninjured Class members. Opp., ECF No. 141 at 44. First, every Class member *was* injured when they were subjected to discrimination. *See Smith*, 659 F.2d at 1120–21. ("An illegal act of discrimination … is a wrong in itself under Title VII, regardless of whether that wrong would warrant an award of back pay or preferential hiring."). Second, courts approving aggregate back pay have rejected the "windfall" argument, which would obviously arise in every such case. *See Stewart v. Gen. Motors Corp.*, 542 F.2d 445, 452 (7th Cir. 1976) (approving aggregate back pay, addressing "windfall" argument, and finding that the uncertainty of but-for circumstances warranted aggregate method). Finally, as required by *Wal-Mart*, in post-liability proceedings, the FAA will have the opportunity to assert individual defenses. *See Wal-Mart Stores*, 564 U.S. at 366–67.

### C. Class Action is the Superior Method of Adjudication.

The FAA offers three reasons why class treatment is not a superior method of adjudicating this case, but none of them withstand scrutiny. First, the FAA hypothesizes that individual Class members may be "very interested" in controlling their own litigation. Opp., ECF No. 141 at 48. The falsity of that statement is proven by the fact that no individual cases have been filed.

Second, the FAA argues that class proceedings in this case will not promote efficiency or judicial economy, because neither very small nor very large claims are at issue. Opp., ECF No.

141 at 48. The FAA asserts that because the Court is not at risk of being "flooded," and there are only perhaps a few hundred possible cases, it would be better if Class members filed individual cases. This is, however, directly contrary to the FAA's prior argument that anything short of a uniform damages model would create a "tsunami of mini-trials relating to damages."  Opp., ECF No. 141 at 28. But the existence of *de minimis* claims or a torrent of large cases has never been a prerequisite for a finding that a class mechanism is superior. *See Moore*, 926 F. Supp. 2d at 34 (rejecting argument that alleged potential large individual damages precluded finding of superiority); *Coleman*, 306 F.R.D. at 87–88 (focus of superiority is providing efficiency and uniformity without sacrificing procedural protections; finding superiority due to identical liability questions and fact that class members were unlikely to bring their claims on their own).

Finally, as addressed above, the FAA's theory that this case would be unmanageable as a class because it would follow the *Teamsters* approach to individualized equitable relief is simply untenable in light of contravening Supreme Court precedent. Opp., ECF No. 141 at 48–49. Courts routinely find that class treatment of Title VII liability claims, followed by individualized relief considerations, is superior to cases being brought individually.

## CONCLUSION

For the reasons stated in the Motion and above, the Plaintiffs' Motion for Class Certification should be granted, Plaintiffs Andrew J. Brigida and Matthew L. Douglas-Cook appointed as Class Representatives, and MSLF and Curry, Pearson & Wooten jointly appointed as Class Counsel.

DATED this 18th day of November, 2021.

Respectfully submitted,

*/s/ Zhonette M. Brown*
Zhonette M. Brown, D.C. Bar No. 463407
William E. Trachman, D.C. Bar No. 502500

25

David McDonald, D.C. Bar No. CO0079
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
zhonette@mslegal.org
wtrachman@mslegal.org
dmcdonald@mslegal.org


*/s/ Michael W. Pearson*
Michael W. Pearson, D.C. Bar No. 997169
CURRY, PEARSON & WOOTEN, PLC
814 West Roosevelt
Phoenix, Arizona 85007
(602) 258-1000
mpearson@azlaw.com

*Attorneys for Plaintiffs and Putative Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of November, 2021, I caused a true and correct copy

of the foregoing **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR**

**CLASS CERTIFICATION** to be electronically filed with the Clerk of the Court using the Court's

CM/ECF system which sent notification of such filing to the following counsel of record in this

matter:

Michael Leon Drezner
U.S. DEPARTMENT OF JUSTICE
Email: Michael.L.Drezner@usdoj.gov

Galen Nicholas Thorp
U.S. DEPARTMENT OF JUSTICE
Email: galen.thorp@usdoj.gov

Rebecca Cutri-Kohart
U.S. DEPARTMENT OF JUSTICE
Rebecca.cutri-kohart@usdoj.gov

*/s/ Zhonette M. Brown*
Zhonette M. Brown
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
zhonette@mslegal.org

27