**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW J. BRIGIDA, *et al.*,<br><br>*Plaintiff Class*,<br><br>vs.<br><br>PETER BUTTIGIEG, Secretary, U.S. Department of Transportation,<br><br>*Defendant*. | No. 16-cv-2227 (DLF) |

## PLAINTIFFS' PROPOSED FORM CLASS NOTICE AND OPT-OUT

Pursuant to this Court's Order dated February 1, 2022, Counsel for Plaintiffs respectfully submit the proposed form of a notice of pendency of class action and proposed opt-out and waiver forms, Exhibits 1 and 2. Plaintiffs also submit an agreed proposal for the manner and timing of class notice as Exhibit 3. The parties conferred and reached agreement on much of the text of a proposed notice, but seek clarification on a few issues; specifically: (1) whether Class members may choose now to waive compensatory damages and avoid the associated binding jury verdict;[1] and (2) whether the Court will determine during the first phase of the case if back pay/front pay will

---

[1] Defendant's position that Plaintiffs have a jury demand is incorrect. Plaintiff Brigida initially demanded a jury while this case was in the United States District Court for the District of Arizona in 2016, but there has been no jury demand in a complaint since then. In the almost six years since the last jury demand, the venue of the case has changed; the claims at issue have changed, most notably because Plaintiffs' equal protection claim was dismissed; the parties have even changed as various of the defendants were dismissed, and a new class representative was added; and it goes without saying that the proposed definition and the scope of the class have changed. No jury demand has accompanied any complaint since this case was transferred to this District in 2016. The present dispute surrounding how to proceed is ripe only because certification was granted for the Class identified in Plaintiffs' Fourth Amended Complaint, which indisputably did not include a jury demand. Further, recognizing that there was no operative jury demand, Defendant included its own jury demand in its Answer to the Fourth Amended Complaint, ECF No. 133.

1

be available to Class Members, leaving the amount of any award to be determined in an individualized process.

### I. Class Members Should Be Able to Waive Compensatory Damages and Forego a Binding Jury Verdict.

Providing Class members an opportunity to opt out of the Class or to simply waive compensatory damages and the associated jury right/requirement, provides additional due process protections for absent Class members, preserves the options provided to Title VII plaintiffs under the 1991 amendments to that statute, and would provide the parties and the Court with valuable information as they consider a resolution of or further proceedings in this case.

Nearly 25 years ago, the D.C. Circuit considered opt out rights for classes certified under Rule 23(b)(2) which also sought monetary damages and held: "Although, as a general matter, courts should not permit opt-outs when doing so would undermine the policies behind (b)(1) or (b)(2) certification, where both injunctive and monetary relief are sought, the need to protect the rights of individual class members may necessitate procedural protections beyond those ordinarily provided under (b)(1) and (b)(2)." *Eubanks v. Billington*, 110 F.3d 87, 94–95 (D.C. Cir. 1997) (emphasis added). The court continued, opining that when an employment discrimination class seeks "to recover back pay or other forms of monetary damages to be allocated based on individual injuries" it will "implicate the concerns that led to the adoption of more stringent protections in (b)(3) actions. . . such as permitting opt-outs, that safeguard the due process rights of individual class members." *Id*. at 95. Equally as important, the D.C. Circuit recommended that the district court "address the question of opt-outs early in the litigation" so that any settlement discussions would proceed with the benefit of that knowledge. *Id*. at 95–96, *see also Cobell v. Salazar*, 679 F.3d 909, 922 (D.C. Cir. 2012) ("Where money damages are sought, due process requires: (1) adequate notice to the class; (2) an opportunity for class members to be heard and participate; (3) the right of class

members to opt out; and (4) adequate representation by the lead plaintiff(s).") (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985)).  The waiver of compensatory damages Plaintiffs propose to offer Class members is a variation of an opt out option and, as explained below, is consistent with Title VII.

The FAA's objection to allowing Class members to waive compensatory damages and forego a binding jury verdict is counter to the purposes of Title VII, as amended, and should be rejected.  Compensatory damages were not available in a Title VII action until The Civil Rights Act of 1991 ("1991 Act") added them as a remedy.  *See* 42 U.S.C. § 1981a(a). Together with allowing the recovery of compensatory damages, the 1991 Act also provides that either party may demand a jury when compensatory damages are sought.  *See* 42 U.S.C. § 1981a(c).  The 1991 Act was intended to expand civil rights statutes to "provide adequate protection to victims of discrimination."  *See Landgraf v. USI Film Products*, 511 U.S. 244, 250 (1994) (quoting Section 3(4), 105 Stat. 1071, note following 42 U.S.C. § 1981).

After reviewing legislative and other history associated with the 1991 Act, the Supreme Court summarized the addition of compensatory damages: "In short, to further Title VII's 'central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination,' . . . § 102 of the 1991 Act effects a major expansion in the relief available to victims of employment discrimination."  *Landgraf v. USI Film Products*, 511 U.S. 244, 250 (1994) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)).

In this case, however, it appears the FAA seeks to use the provisions of the 1991 Act, combined with requirements for class procedures, in a way that it believes will be detrimental to discrimination victims. Specifically, the FAA sought transfer of this case to the District of Columbia

and appears confident that a jury assembled in this District will not render a verdict in Plaintiffs' favor in this case. Believing it has the jurisdictional advantage for any claims tried to a jury, the FAA seeks to impose the jury requirement on all Class members.

Nothing in the history of the 1991 Act, however, indicates that it was intended to hamper plaintiffs' choice of remedies and associated choice of factfinder for Title VII claims. Similarly, nothing in the history of the 1991 Act indicates that it was meant to limit the use of class actions as a means to prevent and redress discrimination. Yet courts and commentators have recognized that without another solution, the 1991 Act created "perverse incentives" to either waive compensatory damages or forego the benefit of a Title VII class action. *See Wal-Mart Stores v. Dukes*, 564 U.S. 338, 364 (2011) (noting desire to obtain class treatment under Rule 12(b)(2) created perverse incentive not to seek claims for compensatory damages); *see also* Katherine E. Lamm, *Work in Progress: Civil Rights Class Actions After Wal-Mart v. Dukes*, 50 Harv. C.R.-C.L. L. Rev. 153 (2015). The recommended solutions include hybrid or partial certification such as this Court employed. These solutions need not come with the additional detriment to discrimination victims of being robbed of their option to choose their factfinder along with the extent of their claims or to give defendants the incentive to engage in forum and jury shopping.

Title VII and the 1991 Act are clear that a jury is required only where compensatory damages are sought. *See* 42 U.S.C. § 1981a(c) ("If a complaining party seeks compensatory . . . damages under this section . . . any party may demand trial by jury"). Thus, a plaintiff may proceed without a jury by completely waiving compensatory damages. *Cf. Nesbitt v. Holder*, 34 F. Supp.3d 192, 195 (D.D.C. 2014) (Government sought to force a jury waiver by an African American plaintiff; the court held that a waiver of some compensatory damages did not serve as a waiver of

4

a jury trial where other compensatory damages were not waived). The FAA's argument that such a mechanism should not be afforded to Class members lacks merit.

Additionally, there is an ironic tension in the FAA's apparent position that waiver of compensatory damages should not be permitted now, and the FAA's position that the first phase must proceed before a jury because *its* liability for legal claims will be decided. If the FAA is to be permitted a jury in the first phase of the case to protect its due process and procedural rights for later phases of the case, the Class members should also be afforded the right to opt out of compensatory damages claims and make their respective jury election. Moreover, the FAA's otherwise paradoxical objection to Class members waiving compensatory damages—a process that can only *reduce* its liability exposure for this case—is best explained by the fact that the FAA apparently believes a jury verdict for the entire Class will produce less liability than allowing some members of the Class to waive compensatory damages.

Nor will allowing some Class members to waive compensatory damages require the creation of sub-classes. Rather, Plaintiffs propose that the jury, empaneled to make a binding determination of liability for Class members who intend to assert compensatory damages claims, serve as an advisory jury for the remainder of the Class. There would still be one trial for the entire Class. For Class members who do not seek compensatory damages, the Court will not be bound by the jury's finding and will have the discretion to make its own findings of fact and conclusions of law. *See Fogg v. Reno*, 1999 WL 33326725 at *1, *3 (July 1, 1999 D.D.C.) (rejecting advisory jury finding of discrimination for pre-1991 conduct)(*aff'd in relevant part, rev'd in part Fogg v. Ashcroft*, 254 F.3d 103, 106, 113–14 (D.C. Cir. 2001)); *Urquhart v. District of Columbia*, 38 F.3d 610 (D.C. Cir. 1994) (*per curiam*) (because claims were based on pre-1991 conduct where jury

right did not apply, "any jury could only act in an advisory capacity and could not render a binder jury verdict").

To avoid allegations of claim splitting or questions regarding their adequacy as representatives, Plaintiffs will not seek to waive compensatory damages for the entire Class. The same desire to fully and adequately represent the Class to the best of their ability, however, also compels Plaintiffs to seek to provide Class members with the choice between pursuing statutorily available but limited compensatory damages, and hence being bound by a jury finding and subject to potentially two jury trials, and waiving compensatory damages and avoiding the potential delay associated with empaneling a second jury to decide damages. *See Biondo v. City of Chicago*, 382 F.3d 680, 683 (7th Cir. 2004) (appeal followed bifurcated trial on liability and two jury trials on compensatory damages); *see also U.S. v. City of New York*, 276 F.R.D. 22, 50 (S.D.N.Y. 2011) (noting that plaintiffs could reasonably choose to waive jury in remedial phase "in favor of a more efficient individual claims process before a special master, magistrate judge, or the court. If a subclass member desires a jury trial, the subclass member can opt out of the subclass and pursues his rights on his own in a separate action."). By definition this Class consists of college graduates, the Class members are capable of performing a cost/benefit analysis to weigh their options.

Finally, now is the appropriate time to determine whether Class members may waive compensatory damages and the binding effect of an otherwise advisory jury, as any later effort, for example after the first phase of the case, would smack of gamesmanship. Moreover, Class members' current ability to choose to waive compensatory damages would allow the parties to have more informed settlement discussions and would provide the Court with additional data when determining the appropriate procedural mechanisms for later phases of the case.

## II. The Availability, But Not the Amounts, of Back Pay/Front Pay, Should be Determined In the First Phase of This Case.

The second issue to be determined for the class notice is what Class members should be told as to when the Court will determine whether back pay/front pay will be available as a remedy. Specifically, in paragraph 7 of the proposed notice explaining "What is the lawsuit asking for," Plaintiffs propose to inform Class members that "Plaintiffs seek declaratory and injunctive relief, in the form of a declaration from the Court that . . . back pay/front pay is available as a remedy to eligible Class members." The proposed notice explains on the first page that "amounts of back pay/front pay will be determined at a later stage, likely on an individualized basis." The FAA, however, proposes that any mention of back pay/front pay be limited solely to the context of individualized hearings, creating the implication that after the first phase of the case, every Class Member would have to individually litigate their claim to determine whether back pay is even available, let alone how much back pay should be awarded.

Back pay and front pay are equitable relief to be awarded or not by the Court, not by a jury. Plaintiffs' understanding is that if liability is found in this case, the Court will determine whether back pay should be available as a remedy. While the final *amount* of back pay/front pay appropriate for any given Class member may be subject to individualized determinations, *whether* back pay/front pay is available would be decided before the Court selects the appropriate procedures for the next phase of the case. As such, *whether* back pay/front pay is available at all would be decided uniformly for the Class.

If, however, the Court plans to reserve the question of the availability of back pay as a remedy for individualized hearings, Plaintiffs agree that this should be made clear in the notice provided to Class members.

Dated: February 18, 2022

Respectfully submitted,

*/s/ Zhonette M. Brown*
Zhonette M. Brown, D.C. Bar # 463407
William E. Trachman, D.C. Bar # 502500
David C. McDonald, D.C. Bar # CO0079
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
Email: zhonette@mslegal.org

*Counsel for Plaintiff Class*

*/s/ Michael W. Pearson*
Michael W. Pearson, DC Bar No. 997169
CURRY, PEARSON, & WOOTEN, PLC
814 West Roosevelt
Phoenix, Arizona 85007
Telephone: (602) 258-1000
Facsimile: (602) 523-9000
Email: mpearson@azlaw.com
*Counsel for Plaintiff Class*