```
 1              BEFORE THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2

 3    ANDREW J. BRIGIDA, et al.,      .
                                      .
 4             Plaintiffs,            .   Case Number 16-cv-2227
                                      .
 5         vs.                        .
                                      .
 6    ELAINE CHAO, Secretary,         .
      U.S. Department of              .   February 1, 2022
 7    Transportation,                 .   10:17 a.m.
                                      .
 8             Defendant.             .
      - - - - - - - - - - - - - - - - -

 9

10                    TRANSCRIPT OF ORAL RULING
              BEFORE THE HONORABLE DABNEY L. FRIEDRICH
11                  UNITED STATES DISTRICT JUDGE

12    APPEARANCES:

13    For the Plaintiffs:        ZHONETTE BROWN, ESQ.
                                 WILL TRACHMAN, ESQ.
14                               DAVID MCDONALD, ESQ.
                                 Mountain States Legal Foundation
15                               2596 South Lewis Way
                                 Lakewood, Colorado 80227
16
                                 MICHAEL PEARSON, ESQ.
17                               Curry, Pearson & Wooten PLC
                                 814 West Roosevelt
18                               Phoenix, Arizona 85007

19    For the Defendant:         GALEN THORP, ESQ.
                                 MICHAEL DREZNER, ESQ.
20                               U.S. Department of Justice
                                 Civil Division
21                               Federal Programs Branch
                                 1100 L Street Northwest
22                               Room 11220
                                 Washington, D.C. 20005

23

24

25
```

1    Official Court Reporter:        SARA A. WICK, RPR, CRR
                                     333 Constitution Avenue Northwest
2                                    U.S. Courthouse, Room 4704-B
                                     Washington, D.C. 20001
3                                    202-354-3284


4
     Proceedings recorded by stenotype shorthand.
5    Transcript produced by computer-aided transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

(All participants present telephonically.)

COURTROOM DEPUTY:  Your Honor, we are in Civil Action 16-2227, Andrew Brigida, et al., versus the United States Department of Transportation, et al.

If I can have the parties identify themselves for the record, beginning with counsel for the plaintiff.

MS. BROWN:  Good morning, Your Honor.  This is Zhonette Brown on behalf of the plaintiff.  And with me on the line are the client and proposed class representative Mr. Brigida and Mr. Douglas-Cook, as well as my co-counsel Mr. Pearson, Mr. Trachman, and Mr. McDonald.

THE COURT:  Good morning, all.

MR. THORP:  Good morning, Your Honor.  Galen Thorp for the Department of Justice.  With me are my supervisor Carlotta Wells, my colleague Michael Drezner, and Agency counsel Elisabeth Fry.

COURTROOM DEPUTY:  All right.  Good morning, all.

So I scheduled this telephonic hearing to issue a ruling on the plaintiffs' motion for class certification.  I realized it was going to take some time, given my current calendar, to issue a written opinion.  So I thought it best to give you all an oral ruling so that this case could go ahead and proceed to the next stage.

For the reasons that I will explain, I am going to grant

1    the plaintiffs' motion.  First, let me give some background.

2         Plaintiffs Andrew Brigida and Matthew Douglas-Cook assert

3    employment discrimination claims against the Federal Aviation

4    Administration under Title VII of the Civil Rights Act.  In

5    their fourth amended complaint, they allege that in 2014 the FAA

6    instituted a new air traffic controller hiring process that had

7    a racially discriminatory purpose and that these changes

8    resulted in their employment applications being denied.

9         A brief procedural background, the Court denied the

10   plaintiffs' first motion for class certification on

11   September 13, 2019.  The plaintiffs later moved to amend their

12   complaint, which the Court granted in part.  The Court also

13   denied the defendant's motion to strike the class claim.  On

14   May 12, 2021, the Court denied the defendant's motion to dismiss

15   the fourth amended complaint.  The plaintiffs then filed a new

16   motion for class certification.  The Court heard argument on the

17   motion on January 13 of this year, and the motion is now ripe

18   for review.

19        I will presume the parties' familiarity with the facts and

20   just discuss the plaintiffs' allegations to the extent they are

21   relevant to resolving the pending motion for class

22   certification.

23        Briefly turning to the legal standards, the parties seeking

24   class certification must affirmatively demonstrate his

25   compliance with requirements of Federal Rule of Civil Procedure

23.  *Wal-Mart Stores v. Duke,* 564 U.S. 338 at 350.  A district court exercises broad discretion in deciding whether to permit the class to proceed as a class action.  *Hartman v. Duffy,* 19 F.3d at 1471.  The district court must perform a rigorous analysis to ensure compliance with Rule 32, *Wal-Mart* at 351.

First, the Court must determine whether the party seeking class certification has met the burden of showing that each of the four prerequisites of Federal Rule of Civil Procedure 23(a) are satisfied.

Those prerequisites are, one, that the class is so numerous that joinder of all members is impracticable; two, that there are questions of law or fact common to the class; three, that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and four, that the representative parties will fairly and adequately protect the interests of the class.

Second, the Court must determine whether the proposed class is maintainable under at least one of Rule 23(b) subdivisions.

Turning next to the relevant allegations of the operative complaint, in 1991, the FAA established the Air Traffic Collegiate Training Initiative, AT-CTI or CTI, program, entering into partnership agreements with colleges, universities, and other schools to administer the AT-CTI program.  That's at 21 through 25 of the fourth amended complaint.

By 2008, the FAA used a separate hiring process for

qualified CTI candidates.  Paragraph 34.  Graduates of CTI institutions who are U.S. citizens, received their institution's recommendations, were below a maximum age, and who passed a valid air traffic aptitude test, known as the Air Traffic Control Selection and Training Examination, or AT-SAT, were eligible to apply for CTI-only job postings.  It's paragraph 28 and 35.

The plaintiffs allege that CTI-qualified applicants received hiring preference or were more likely to be hired for ATCS positions, paragraphs 35 and 49, but after the FAA conducted a barrier analysis for the ATCS positions to determine whether the hiring process served to discourage hiring minority applicants, paragraphs 71 through 79, the FAA implemented several changes to its hiring process.  It eliminated CTI-only vacancy announcements, purged the inventory of CTI-qualified candidates, and struck their AT-SAT scores and implemented a new biographical questionnaire.  That's at paragraph 178.

The plaintiffs and putative class members are graduates of CTI programs who unsuccessfully applied under the new hiring process in 2014.  They allege the FAA violated Title VII in two main ways.

First, the FAA allegedly purged its merit-based hiring preference for qualified applicants for air traffic controllers with the intent and purpose of benefiting African American air traffic controller applicants and hindering the class members.

1  Paragraph 195.

2      Second, the FAA implemented a biographical questionnaire to

3  the 2014 air traffic controller hiring process with the intent

4  and purpose of benefiting African American air traffic

5  controller applicants and hindering the class members.  198.

6      The plaintiffs claim that in so doing the FAA refused to

7  accept the outcome of a race-neutral hiring process solely

8  because of the racial makeup of the successful applicants and in

9  its place created a new race-motivated hiring scheme.

10      Named plaintiffs Andrew Brigida and Matthew Douglas-Cook

11  are Caucasian and Native American men respectively who graduated

12  from CTI institutions in 2013 and passed the AT-SAT with the

13  highest score possible.  That's paragraphs 153 to 54, 167

14  through 68.  Both took and failed the biographical

15  questionnaire.  158, 160, 170 to 171.  Neither were hired by the

16  FAA as an air traffic controller.  Paragraphs 160, 172.

17      Together, they seek to certify a similar class of

18  non-African American CTI graduates who, as described in the

19  plaintiffs' motion at 13, one, by February 10, 2014, (a),

20  graduated from a CTI program of one of the 36 FAA-partnered CTI

21  institutions between 2009 and 2013 and, (b), passed the AT-SAT;

22  two, applied to be an ATCS trainee through the 2014 all sources

23  vacancy announcement but failed the biographical questionnaire

24  that was incorporated into the 2014 ATCS hiring process and,

25  therefore, was not hired; and three, have never been offered

employment as an FAA air traffic controller.

Excluded from the class are CTI graduates who are not U.S. citizens as of February 10, 2014; who by February 21, 2014, had reached 31 years of age or 35 if they had 52 consecutive weeks of prior air traffic controller experience; three, whose academic records as of February 21, 2014, explicitly stated that they were ineligible to receive a letter of recommendation from the CTI school; or four, whose AT-SAT scores had expired as of February 21, 2014.

I will now discuss Rule 23's requirements.  First, numerosity, the plaintiffs have put forth evidence that the proposed class has over 1,000 members, and the FAA does not dispute this prong.

Second, with respect to commonality, under Rule 23(a)(2), the plaintiff must establish that there are questions of law or fact common to the class.  The claims by class members must depend on a common contention, and that common contention must be of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.  *Wal-Mart*, 564 U.S. at 350.

Class members must have suffered the same injury for the same reason, such as a uniform policy or practice that is illegal.  *D.L. v. District of Columbia*, 302 F.R.D. 1 at 12.

In a Title VII discrimination case, the Supreme Court has

recognized two methods of showing commonality.  The plaintiff

can either identify a testing procedure or other company-wide

evaluation method that can be charged with bias or, two, provide

significant proof that an employer operated under a general

policy of discrimination.  *Wal-Mart*, 564 U.S. at 353.

Here, the plaintiffs allege both.  They allege that the

biographical questionnaire, which all class members took and

failed, was promulgated with discriminatory intent.  Plus, they

allege that the elimination of the class members' prequalified

status as exemplified by the striking of their AT-SAT scores was

a common policy adopted for a discriminatory purpose that

applied to all class members at the same time and in the same

way.

The plaintiffs thus present common questions, whether the

AT-SAT scores were purged and whether the biographical

questionnaire was promulgated in order to benefit African

Americans to the detriment of all other groups.  These questions

will generate common answers apt to drive the resolution of the

litigation.  *Wal-Mart,* 564 at 350.

The government's arguments in defending against the claims

cut across the entire class.  *J.D. v. Azar*, 925 F.3d at 1321.

In short, the Secretary contends that the FAA changed the 2014

hiring process and adopted the biographical questionnaire for

legitimate, nondiscriminatory reasons.  That's the answer at 1

through 2.

The Secretary's arguments to the contrary do not persuade. First, the Court disagrees that the plaintiffs' allegations that the biographical questionnaire was biased are vague and conclusory such that they can't establish commonality.  Instead, as the Court noted in its denial of the Secretary's motion to dismiss, the plaintiffs claim that the FAA failed to validate the biographical questionnaire -- that's the complaint at paragraph 117 -- and that it awarded points to applicants in a fashion untethered to the qualifications necessary to be an air traffic controller.  See memorandum opinion denying motion to dismiss at 4, note 3.

These contentions raise an inference that the FAA promulgated the biographical questionnaire with discriminatory intent, and at this stage, the fact that not every biographical question negatively affected the class or favored African Americans does not matter.  This is not a disparate impact case in which plaintiffs must show that a neutral practice has disproportionately affected -- had an adverse effect on minorities.  *Ricci v. DeStefano* at 557 U.S. at 577.  Rather, the plaintiffs allege disparate treatment and must instead establish that the defendant had a discriminatory intent or motive for taking the job-related action.  That's also *Ricci* at 577.  The plaintiffs' proffered proof, which applies class-wide, is geared toward that question.

On the merits, the government put forth its evidence

regarding the actual impact of the biographical questionnaire in order to prove that the FAA lacked discriminatory intent, but that does not preclude class certification.

The Court also finds that the inclusion of women and other minorities in the class does not defeat commonality.  The plaintiffs repeatedly allege that the FAA acted to benefit African Americans to the detriment of all other groups.  See, for example, the complaint at paragraphs 11 through 12.  At this stage, these allegations are presumed true.  *Moore v. Napolitano,* 926 F.Supp.2d at 27.

The Court recognizes that the evidence may show that the FAA acted to benefit women and minorities only to the detriment of white men.  Indeed, the complaint at times said as much.  Even so, the presence of women and other minorities in the class will not generate differing answers to the crucial question of why was I disfavored.  *Wal-Mart*, 564 U.S. at 352.

Each class member suffers the same injury when the hiring process changed.  His or her prequalified status and AT-SAT score were struck and he or she failed the biographical questionnaire.  The alleged reason for this change in the hiring process is to alter the racial makeup that resulted from the old hiring process.

Even if the FAA actually intended to benefit a female or minority class member, that member was still injured by the FAA's allegedly race-motivated actions.  Such was the case in

*Ricci*.  In that case the City of New Haven chose not to certify

test scores for firefighters because of the statistical

disparity based on race, i.e. how minority candidates had

performed when compared to white candidates.  That's at 579.

The City's actions were meant to benefit minorities.  Yet,

one of the plaintiffs in that case was a Hispanic man whose

score wouldn't qualify him for a promotion.  That's at 574.

Even so, the Supreme Court did not suggest that this

plaintiff was not injured because he was a member of the class

that the City intended to benefit.  The Court concluded that the

City violated Title VII by discarding the test to achieve a more

desirable racial distribution of promotion-eligible candidates.

That's at 584.  And the Hispanic plaintiff was injured in the

same way as the white plaintiff by the City's discriminatory

action.

The same would be true for this class should the plaintiffs

succeed in proving their claims.

For these reasons, including women and minorities in the

class does not pose a commonality problem.

As their final argument related to commonality, the

Secretary points out that many of the class members only

received qualified AT-SAT scores as opposed to well-qualified

and thus likely would not have been hired, regardless of the

change in the hiring policy.

The Court already considered and rejected this argument in

denying the Secretary's motion to strike the class claims.  In

that ruling, the Court explained that all putative class members

from the most to the least well qualified suffered the legal

injury of being discriminated against on the basis of their race

when the FAA abolished a preferential program on which the

graduates had invested time and resources and on which they

reasonably relied.  Memorandum opinion and order at 6.

These differences among class members may affect the amount

of damages that each plaintiff may ultimately receive, but they

do not impact liability or other class-wide remedies.

The Court thus finds that the plaintiffs have satisfied the

commonality requirement of Rule 23(a)(2).

Turning next to typicality, Rule 23(a)(3) requires a

finding that the claims or defenses of the representative

parties are typical of the claims or defenses of the class.

Typicality concerns the relationship between the

representative's individual claims and the class's claims rather

than the relatedness of the entire class claims.  *J.D.,* 925 F.3d

at 1322.

This requirement is satisfied if each class member's claim

arises from the same course of events that led to the claims of

the representative parties and each class member makes similar

legal arguments to prove the defendant's liability.  *Little v.*

*WMATA,* 249 F.Supp.3d at 420.

That is the case here.  Each class member's claim arises

from the striking of their prequalified status and their AT-SAT
scores and from failing the biographical questionnaire.  The
legal argument that the FAA changed the hiring process because
of race is the same as well.

The typicality and commonality questions inquiry still tend
to merge.  *General Telephone Company of Southwest v. Falcon*,
457 U.S. at 157, Note 13.  Thus, the Secretary raises some of
the same arguments against typicality as they did against
commonality, and the Court will reject them for the reasons
given already.  The presence of women and minorities do not
defeat typicality, as this prong is not destroyed merely by
factual variations.  *Wagner v. Taylor*, 836 F.2d at 591.  Nor
does it matter that the named plaintiffs scored well qualified
on the AT-SAT while other class members scored only qualified.

The FAA's defenses specific to these individual plaintiffs
will have little, if any, relevance to the outcome of the
overall but not specific liability and injunctive relief phases
of this litigation.  *Little*, 249 F.Supp.3d at 420.

The same goes for the fact that the class representatives
did not reapply to a controller position after the 2015
congressional legislation, unlike many of the class members.
Again, this factual variation goes to damages and not to
liability and injury.  Even though some class members applied
for the 2012 hiring vacancy in addition to the 2014 vacancy,
they still suffered the same injury as the class

representatives.  Namely, they were not hired in 2014 after the
FAA allegedly changed the hiring process for racially
discriminatory reasons.

The Secretary raises an important point, and that is that
the class includes those who graduated as far back as 2009 and
2010 who would not have been eligible for selection under the
legacy hiring process in 2014 unless they had extended their
eligibility.  If a class member was not eligible to be hired
under the old hiring process, he or she was not injured by the
FAA's actions and thus cannot be a member of the class.

The plaintiffs contend that this issue is addressed by the
class definition only encompassing those with active AT-SAT
scores.  But it's not clear to the Court that a person who had
an active AT-SAT score had also necessarily extended his or her
eligibility to apply under the legacy process.

So the plaintiffs must ensure moving forward that the class
only include those 2009 and 2010 graduates who had affirmatively
extended their eligibility to apply to CTI-only announcements in
2014.

Subject to this clarification, the class satisfies the
typicality requirement.

Under Rule 23(a)(4), the representative parties must also
fairly and adequately protect the interests of the class.  The
named representative must not have antagonistic or conflicting
interests with the unnamed members of the class, and the

representative must appear able to vigorously prosecute the interests of a class through qualified counsel.  *Twelve John Does v. District of Columbia*, 117 F.3d at 575.

Class counsel have extensive civil litigation experience, including in class actions and civil rights lawsuits.  The Court has no trouble finding them qualified, and the Secretary does not dispute this.

Instead, the Secretary argues that the presence of women and other minorities might create conflicting or antagonistic interests between the class representatives and the unnamed class members.

It is true that if the FAA intended to benefit women and other minorities, that it is possible that some members of these groups would not support the representatives' requested relief, but the class members all suffered an injury allegedly because of the FAA's discriminatory actions.  And there might often be a possibility that some absent class members possess conscientious beliefs running counter to an interest in redressing an alleged infringement of their rights.  *J.D.,* 925 F.3d at 1317.

The D.C. Circuit in *J.D.* affirmed the certification of a class of all pregnant, unaccompanied, minor children in the custody of the federal government where the class representatives sought to enjoin a policy that prohibited class members from obtaining a previability abortion.  That's at 1305.  The class representatives who sought abortions were deemed

adequate even though many absent class members likely opposed

abortion on ideological grounds and, thus, would have supported

the government policy.  That's 13 through 20.

The Court highlighted that -- the class certified in

*Gratz v. Bollinger*, 539 U.S. 244, a class challenging a

university affirmative action program.  In that case the class

included only those who had been denied admission, in other

words those who suffered an injury under the affirmative action

program.  Even so, the class surely included those who supported

affirmative action.  *J.D.*, 925 F.3d at 1318 through 19.

Here, even if the class includes women and other minority

class members who support the FAA's actions, that does not pose

a barrier to their inclusion in this class, so long as they were

injured by the change in the employment process.  The Court can

also craft an injunctive relief to avoid obvious conflicts among

the class representatives and female and minority class members.

For instance, it's unlikely that the Court would enjoin the FAA

from involving special interest groups associated with protected

classifications from involvement in designing hiring

methodology.  See fourth amended complaint, paragraph 206.

Moreover, unlike in the cases cited by the Secretary, the

class representatives here have not accused absent minority or

female class members of having received preferred treatment.

*Cf. Moore v. National Association of Securities Dealers, Inc.*,

181 Westlaw 274 at 7.

1    In contrast, the class representatives in this class allege
2    that the FAA intended for African Americans to uniquely benefit.

3    In its opposition brief at 31, the Secretary has raised for
4    the first time the argument that Mr. Brigida has not exhausted
5    his claim about the striking of the AT-SAT score.  And the
6    Secretary argues that Brigida, therefore, cannot adequately
7    represent the class.

8    The Court will not resolve this argument at the class
9    certification stage.  Based on the limited briefing on this
10   issue, the Court is not convinced that the claim is not
11   exhausted, and that the defense bears the burden of pleading and
12   proving the affirmative defense.  See *Bowden v. United States,*
13   106 F.3d at 437.

14   The Secretary points to Mr. Brigida's declaration that he
15   learned of this change in the hiring process in early January.
16   See Brigida declaration at paragraph 27.  Yet, the complaint
17   alleges that the FAA told Mr. Brigida about the changes on
18   January 27, 2014.  That's at paragraph 157 of the complaint.

19   Further, the Court expresses no view on whether the
20   plaintiffs are correct that the Secretary waived its defense,
21   given that the information in Mr. Brigida's declaration was
22   included in the plaintiffs' first motion for class certification
23   back in 2018.  The Secretary previously raised an exhaustion
24   defense in its earlier motion opposing leave to amend and to
25   strike the class claims but did not include this argument.

1    To resolve this issue, the Court will need additional

2  briefing, and it would be inappropriate to decide it now, given

3  that it does not preclude class certification.  Mr. Brigida

4  exhausted the biographical questionnaire claim, and all putative

5  class members suffered from taking and failing the biographical

6  questionnaire.  See memorandum opinion and order at 3 through 4.

7  Adequacy is thus satisfied.

8    With respect to ascertainability, the D.C. Circuit has not

9  yet ruled whether Rule 23 contains such a requirement for class

10  certification.  *J.D.*, 925 F.3d at 1320.  But even if it is

11  required, the Court finds that the proposed class is

12  ascertainable as it is readily discernible by objective

13  criteria.  *J.D.* at 1319.

14    If putative class members do not have their ineligibility

15  for recommendation from a CTI school noted on their transcript,

16  they are included in the class.  But the Secretary may have

17  individual defenses against such class members in the damages

18  phase if it turns out they likely would not have received the

19  recommendation.

20    With the proposed class meeting Rule 23's requirements, the

21  Court will next turn to Rule 23(b).

22    The plaintiff seeks certification for a liability

23  determination and declaratory and injunctive relief under

24  23(b)(2) and for damages and back pay under 23(b)(3).

25  Alternatively, the plaintiffs seek certification of an issues

class for liability, declaratory, and injunctive relief under
Rules 23(b)(2) and (c)(4), while leaving the damages and
individual equitable relief calculations for individualized
hearings at a later stage.

The Court finds that the latter course is the most
appropriate here.

First, Rule 23(b)(2) is satisfied.  A class action under
this rule may be maintained if the parties opposing the class
has acted or refused to act on grounds that apply generally to
the class, so that final injunctive relief or corresponding
declaratory relief is appropriate respecting the class as a
whole.  That's Rule 23(b)(2).

Civil rights cases against parties charged with unlawful,
class-based discrimination are prime examples of what (b)(2) is
meant to capture.  *Wal-Mart*, 564 U.S. at 361.

Here, the complaint alleges the FAA acted on grounds that
apply generally to the class.  It purged class members'
prequalified status and their AT-SAT scores and administered the
biographical questionnaire, which each member failed.  A
declaratory judgment that these changes violated Title VII would
provide relief to each member of the class.  *Wal-Mart* at 350.

The Court also finds that an injunction applicable to the
entire class could be fashioned upon a finding of liability.
*Little*, 249 F.Supp.3d at 423.  For instance, the Court could
order the FAA to grant a hiring preference to the class members

for FAA positions.  This injunction would still apply class-wide, even if not every class member applied for a position or is ultimately hired after being given a preference.

But the Court is unsure that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Rule 23(b)(2).

The Court is most concerned about predominance and that individual damage questions will overwhelm the common issues. *Little*, 249 F.Supp.3d at 425.  For instance, the class members differ in terms of the likelihood that they would have been hired under the CTI-only hiring process in terms of their AT-SAT score, whether they would have passed the medical security and suitability screening, et cetera, and in the mitigation efforts. See *Houser v. Pritzker*, 28 F.Supp.3d at 253, noting that the plaintiffs' proposed damages model is vastly overinclusive as it includes individuals who are not entitled to back pay under the proposed theory of liability because they would not have been hired even absent the alleged discrimination.

The Court will thus deny certification under Rule 23(b)(2).

But 23(c)(4) gives the Court discretion to certify a class in particular issues and resolve others on an individual basis, so long as the proposed class satisfies the requirements of Rule 23(a) and (b) with respect to liability.

1    As explained, the proposed class satisfies the requirements

2    of 23(a) and (b)(2) as to liability and injunctive and

3    declaratory relief.  Certifying this class will materially

4    advance the litigation and make the proceedings more manageable.

5    *Houser,* 28 F.Supp.3d at 254.

6    Therefore, the Court will follow Judge Collyer's approach

7    in *Little* and certify a liability, injunctive, and declaratory

8    relief class under Rule 23(b)(2) and (c)(4) and leave the

9    damages and back pay determinations for individual

10   determinations at a later stage.  That is *Little* at 249

11   F.Supp.3d at 425.  See also *Houser*, 28 F.Supp.3d at 254, in

12   which that Court stated the Court could appoint a special master

13   to preside over individual damages proceedings or could

14   decertify the class after the liability phase and provide notice

15   to plaintiffs as to how to proceed to prove damages.  There's no

16   need to decide at this time which avenue to pursue.

17   So for these reasons, the Court will grant the plaintiffs'

18   motion for class certification.

19   As a reminder, the Court did set in a minute order that the

20   parties would have 21 days to file a joint status report

21   proposing a schedule for discovery.

22   All right.  Any questions?

23   And if I misspoke, I'm sorry.  I'm denying under 23(b)(3).

24   That's the ruling of the Court.

25   Anything we need to address right now?

1          MS. BROWN:  Not from the plaintiffs' side, Your Honor.

2    We will file our status report in 21 days.

3          THE COURT:  Okay.  All right.  Mr. Thorp?

4          MR. THORP:  The same for the government.

5          THE COURT:  Okay.  All right.  Thank you, all.

6       (Proceedings adjourned at 10:48 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3         I, Sara A. Wick, certify that the foregoing is a

 4    correct transcript from the record of proceedings in the

 5    above-entitled matter.

 6

 7         Please Note:  This hearing occurred during the

 8    COVID-19 pandemic and is, therefore, subject to the

 9    technological limitations of court reporting remotely.

10

11

12    /s/ Sara A. Wick                  March 12, 2022

13    SIGNATURE OF COURT REPORTER       DATE

14

15

16

17

18

19

20

21

22

23

24

25
```