UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW J. BRIGIDA, *et al.*,

    *Plaintiff Class*,

vs.

PETER P.M. BUTTIGIEG, Secretary, U.S. Department of Transportation,

    *Defendant*.

No. 16-cv-2227 (DLF)

**Plaintiffs' Motion to Compel**

**Responsive Documents Created in 2015-2016**

**EXHIBIT LIST**

| Exh No. | Description |
|---|---|
| 1 | Plaintiffs' Request for Production of Documents (March 4, 2022) |
| 2 | NBCFAE Historical Journal – Excerpt, 2009 |
| 3 | FOIA Request from NBCFAE to FAA (May 12, 2011) |
| 4 | FAA Response to FOIA Request (September 9, 2011) |
| 5 | APT Metrics Contract Modification (Sept. 2015 – Mar. 2016 performance) |
| 6 | FAA Interim Process Development-Technical Document – FINAL (January 2015) |
| 7 | Email from John Scott re: Coordination on Investigation (May 26, 2015); Audit Summary (July 28, 2015) |
| 8 | Letter from. M. Huerta to Rep. LoBiondo (August 21, 2015) |
| 9 | Emails regarding Hiring Process (June 10, 2015, and June 18, 2015) |
| 10 | ATC Reform News - Excerpt (January 7, 2015) |
| 11 | IRP Update \| Improving Controller Selection, Assignment and Training (January 8, 2015) |
| 12 | Assoc. of Collegiate Training Institutions, ATC Hiring Talking points (2016) |
| 13 | Emails regarding 2016 Proposed Legislation (April 19, 2016 and April 1, 2016) |
| 14 | Emails regarding 2016 Proposed Legislation - Veterans (April 8, 2016 and May 23, 2016) |
| 15 | APT Metrics Contract Modification - Excerpt (Mar. 2016 – Mar. 2017 performance) |
| 16 | Studies of Next Generation ATC Specialists II: Job and Career Expectations - Excerpt (May 2016) |
| 17 | Report of Investigation - Excerpt (August 9, 2016) |
| 18 | FAA Response to 1st Merits RFPs (April 18, 2022) |
| 19 | FAA's Second Request for Production of Documents (July 6, 2022) |
| 20 | FAA's Response to First Set of Interrogatories (May 17, 2022) |

i

**CITED ECF FILINGS**

| ECF No. | Description |
|---|---|
| 75 | Defendant's Memo in Opposition to Class Certification (December 22, 2018) |
| 75-1 | Declaration of M. Renee Coates and Attachments (December 21, 2018) |
| 75-2 | Declaration of Nicole Cage (December 21, 2018) |
| 105 | Defendant's Opposition to Plaintiffs' Motion for Leave to Amend (June 6, 2020) |
| 114 | Fourth Amended and Supplemental Class Action Complaint (October 27, 2020) |
| 139-6 | Barrier Analysis (excerpts) (May 8, 2013) |
| 139-7 | Extension of Barrier Analysis (excerpts) (April 16, 2013) |
| 139-14 | 2000 Task Force Business Care (July 21, 2000) |
| 139-15 | NBCFAE | MD-715 Compliance Effort | Talking Points (February 10, 2010) |
| 139-17 | M. Huerta Agenda (April 17, 2012) |
| 139-19 | FAA Statement on the Barrier Analysis of ATC Specialist Centralized Hiring Process |
| 139-20 | Extension to Barrier Analysis of Air Traffic Control Centralized Hiring Process Presentation (June 20, 2013) |
| 139-24 | Email from J. Scott re Biodata and AT-SAT (November 26, 2013) |
| 139-26 | Document regarding Aviator Change (January 17, 2014) |
| 133-33 | Glenn W. Perdue | Initial Expert Report |
| 146 | Order Granting Plaintiff's Motion to Certify Class (February 1, 2022) |

# ABBREVIATIONS

| | |
|---|---|
| ATC | Air Traffic Controller |
| AT-SAT | Air Traffic –Selection and Training Examination |
| BA | Barrier Analysis |
| BQ | Biographical Questionnaire |
| CAMI | FAA's Civil Aeronautical Medical Institute |
| CR | FAA Office of Civil Rights |
| CTI | College Training Initiative |
| FAA | Federal Aviation Administration |
| FAA CR/HR | FAA Civil Rights and Human Resources offices |
| HR | FAA Human Resources department |
| IRP | 2011 Independent Review Panel |
| NBCFAE | National Black Coalition of Federal Aviation Employees |
| NEF | National Employee Forum |
| RFP | Request for Production |

Relying upon a 2013 Barrier Analysis and Extension Report, the FAA offices of Civil Rights and Human Resources (CR/HR) spearheaded efforts to change the air traffic controller (ATC) hiring process to increase African American hiring at the expense of all others. Intentional race discrimination occurred at least during the 2014 hiring cycle. Key 2014 decision-makers continued their activities to manipulate the ATC hiring process and manage other stakeholder involvement well into 2016. Even today, the FAA is implementing Barrier Analysis recommendations. Yet despite serving its own non-time limited requests and relying upon a 2015 document to respond to Plaintiffs' interrogatory, the FAA inappropriately objects to production of its documents created after 2014. Pursuant to Fed. R. Civ. P. 37 and this Court's Order of July 6, 2022, Plaintiffs move to compel production of responsive documents created in 2015–2016. *See* Ex. 1, Pls.' RFPs, Mar. 4, 2022.

**Factual Background**

In the early 1990s, the FAA began a College Training Initiative (CTI), to identify applicants with the aptitude to become successful ATCs. The program was a major success. But by mid-2000, members of the National Black Coalition of Federal Aviation Employees (NBCFAE), including Ms. Mamie Mallory, then the NBCFAE President[1] and by 2012 the head of the Civil Rights office, criticized the CTI program for not producing enough African American ATCs. They lobbied for the use of hiring targets or quotas. *See* ECF No. 139-14 at 18, 34, 43–44.

In response to Plaintiffs' requests, the FAA has agreed to provide documents from 2010[2]–2014. The events in the 2010–2012 timeframe include activities by the NBCFAE, the conduct

---

[1] Ms. Mallory served as the NBCFAE President 1998–2004. *See* Ex. 2 at 31. From approximately 1998–2002, the NBCFAE retained Dr. James Outtz to critique and ultimately quash the FAA's planned use of an electronic employment screening tool and to cause the FAA to "revamp" the AT-SAT aptitude test for ATC candidates. *Id.* at 30–31.

[2] Plaintiffs do not waive seeking 2008–2009 documents, but the applicable analysis is premature.

1

surrounding a 2011 barrier analysis, Ms. Mallory becoming the head of FAA CR (a position she retained until December 2017), the 2011 barrier analysis being deemed inadequate, the FAA retaining Dr. Outtz and APT Metrics for barrier analyses, and the creation of a draft new barrier analysis. *See, e.g.,* ECF No. 114 ¶¶ 57–75; ECF No. 139-15 at 2–3; Ex. 3; Ex. 4; ECF No. 139-17 at 2, ECF No. 75-1 at 190, ECF No. 75-1 at 189; ECF No. 139-19; ECF No. 139-7 at 3.

In 2013, the Extension Report and final Barrier Analysis were issued. These were followed by presentations, further lobbying by the NBCFAE, the formation of an Executive Steering Committee and implementation team to guide and undertake the items recommended in the reports, the development of a Biographical Questionnaire (BQ) for screening ATC applicants, and analysis of purging the CTI inventory. *See* ECF No. 114 ¶¶ 77–106; ECF No. 139-19; ECF No. 139-6 at 5, 8–9; ECF No. 139-20 at 13; ECF No. 139-7 at 3; ECF No. 139-24; ECF No. 139-26. In 2014, the FAA, *inter alia*, further developed and implemented the BQ and other hiring changes, responded to Congressional and other inquiries regarding the changes, conducted an ATC job analysis, and revised the BQ. *See, e.g.*, ECF No. 114 ¶¶ 107–117, 119–124; ECF No. 75-1 at 190–91.

Ongoing Analysis of and Changes to ATC Hiring in 2015–2016.

Activities surrounding changing ATC hiring continued apace through 2016. Indeed, the FAA repeatedly characterized the 2014 hiring process as an "interim" process that remained under development. *See* ECF No. 75 at 13; ECF No. 75-1 at 190 (Barrier Analysis "resulted in…both short- and long-term recommended improvements and an interim hiring process in 2014"). In this litigation the FAA has acknowledged that the March 2015 hiring process was generally "[t]the same process" as in 2014, *see* ECF No. 75 at 15–16; ECF No. 75-2 ¶ 14, but that "[t]he FAA continued to refine its hiring and selection process in 2015 and 2016." ECF No. 75 at 16; *see* ECF No. 75-1 at 2. The FAA worked "to further develop the" BQ and "laid the groundwork for entirely replacing

2

the AT-SAT." ECF No. 75 at 16; *see* ECF No. 75-1 at 2; ECF No. 75-1 at 190; (FAA "continued to incorporate more long-term recommendations for hiring in 2015 while retaining key features of the [2014] process. [It] completed an Occupational Job Task Analysis and Validation" for the ATC position, "updated the [BQ] and initiated a study to replace the AT-SAT."); Ex. 5.

During 2015, the FAA documented the development of the BQ and investigated alleged cheating during the 2014 ATC hiring, focusing in part on the BQ. *See* Ex 6, Ex. 7. The FAA Administrator reported to Congress about the conduct and conclusion of the investigation. *See* Ex. 8. Also in 2015, the FAA created a separate track for experienced controllers, excluding those candidates from taking the controversial biographical screening. ECF No. 75-1 at 191. These changes were made, in part, to "address[] the concerns identified in [the FAA's] initial reviews of the hiring process." *Id.* at 190. Further, members of Congress made efforts to change ATC hiring in 2015 but were unable to get the legislation passed. *See* Ex. 9; *see also* Ex. 10; Ex. 11.

Political interest in changing ATC hiring continued into 2016. *See* Ex. 12; Ex. 13. Proposals under consideration and being responded to by the FAA included what role, if any, biographical factors should play in hiring, whether military and CTI candidates would receive a preference and be in the same "hiring pool," and if so, what effect that would have. *See* Ex. 14; ECF No. 75-1 at 189. In a 2016 Congressional statement, the FAA asserted it had applied a "data driven approach to hiring which we believe will result in a more accurate predication of who can succeed on the job," that the BQ was a "minimum qualification," and that the BQ "measures important and demonstrably job-related personal characteristics." *Id.* at 188–89, 191.

In July of 2016, Congress passed legislation addressing ATC hiring. ECF No. 75 at 16. CTI hires became exempt from a BQ. *Id.* Also in 2016, the FAA worked to replace the AT-SAT with a new test battery. *Id.* at 16–17; Ex. 15. Study of the ATC position by the Office of Aerospace

Medicine continued. *See* Ex. 16. And the Department of Transportation Office of Inspector General investigated the 2014 ATC hiring process.[3] *See* Ex. 17. In short, controversy around the FAA's ATC hiring methods continued.

### Procedural Background

In February, this Court certified a class for determining issues of liability and declaratory and injunctive relief. *See* ECF No. 146. On March 4, 2022, Plaintiffs served their first requests for production of merits-related documents. Ex. 1. With one exception, the FAA refuses to search for documents created in 2015–2016. *See* Ex. 18; *see also* Parties' July 5, 2022 e-mail to the Court. The FAA itself, however, seeks documents without regard to time limitation and responded to an interrogatory by reference to a 2015 document. *See* Ex. 19; Ex. 20; Ex. 6.

Put simply, Plaintiffs seek evidence directly related to their allegations: evaluation of the Barrier Analysis, Extension Report, BQ, and 2014 hiring process (RFPs 1–4); the FAA's communications with the Department of Transportation or Congress regarding ATC hiring and the CTI program (RFP 5); consideration of changes in the ATC hiring process (RFP 7); communications with affinity groups regarding hiring African Americans, diversity by line of business or in the ATC position, ATC hiring, affirmative action, and MD-715 (RFP 8); strategic plans, programs, and objectives of the FAA CR/HR, the drivers of the 2014 changes (RFP 9); analysis of biographical data in selecting ATCs (RFP 10); aggregate analysis of ATC performance by hiring source or demographics (RPF 11); correspondence among key witnesses regarding the

---

[3] Due to space constraints, the above are only examples of 2015–2016 activities. Further, in 2018, the FAA stopped use of the BQ, *see* ECF No. 75-2 ¶ 22, in 2019, Congress again changed the ATC hiring process, *see* ECF No. 105 at 14–15, and the FAA projects continuing to implement the Barrier Analysis. https://www.faa.gov/sites/faa.gov/files/about/office_org/headquarters_offices/acr/FY_2020_MD_175_Report.pdf, (project initiated Nov. 1, 2006, action plan completed Sept. 30, 2013, implementing corrective actions estimated to be completed Sept. 30, 2023).

ATC position, discrimination, the Barrier Analysis and Extension, the BQ, the contractors retained by the FAA to justify and implement the 2014 hiring changes, the FAA committee and team created to implement the 2014 hiring changes and the Congressional Black Caucus (RFP 12); evaluation of the CTI program (RFP 13); and evidence of the success or failure of the applicants selected from the 2014 ATC vacancy announcement (RFP 14). All of this is relevant and fairly allowed by the Federal Rules of Civil Procedure.

## Legal Standard

Plaintiffs in discrimination cases are permitted a broad scope of discovery. *See, e.g., Lamaute v. Power*, 339 F.R.D. 29, 34 (D.D.C. 2021); *Nuskey v. Lambright*, 251 F.R.D. 3, 9 (D.D.C. 2008) ("Plaintiffs in Title VII cases have been permitted a 'very broad scope of discovery.'"); *Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 459 (D.D.C. 2002) ("Limits on discovery… must be…premised on the notion that plaintiffs have a right to seek discovery on similarly motivated discriminatory acts if it is likely that a finder of fact would conclude that those other acts are probative…."); *Pederson v. Preston*, 250 F.R.D. 61, 66 (D.D.C. 2008). Additionally, "[n]ationwide class actions typically require and warrant extensive discovery." *Garcia Ramirez v. U.S. I.C.E.* 331 F.R.D. 194, 199 (D.D.C. 2019).

A party that moves to compel bears the initial burden of "explaining how the requested information is relevant." *Oxbow Carbon & Mins. LLC v. Union Pac. R.R.*, 322 F.R.D. 1, 5–6 (D.D.C. 2017); *see* Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment (the party seeking discovery does not bear the burden of addressing proportionality considerations). Once relevance is established, the burden shifts to the party opposing discovery to show why the discovery should not be permitted. *See Lamaute*, 339 F.R.D. at 35; *Breiterman v. U.S.*, 324 F.R.D. 24, 30 (D.D.C. 2018). Relevance is construed broadly in discovery. *U.S. v. Newman*, 531 F. Supp.

3d 181, 187 (D.D.C. 2021). Specifically, relevance "encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on any party's claim or defense." *Brieterman*, 324 F.R.D. at 30; *see Pleasants v. Allbaugh*, 208 F.R.D. 7, 9 (D.D.C. 2002) (in discrimination class actions "courts permit discovery of data over an extensive period of time").

### Argument

Plaintiffs seek: (1) evaluation of the Barrier Analysis, Extension Report and BQ; (2) ATC hiring process recommendations, decisions, and related correspondence close in time to the 2014 event at issue, addressing similar issues and involving the same key decision makers; (3) communications with and among key organizations and witnesses limited to specific topics; (4) evidence of the objectives of the FAA HR/CR offices; and (5) data that will demonstrate the falsity of various claims made by FAA HR/CR to support or justify the hiring changes they mandated. Such documents are relevant to proving Plaintiffs' claims.[4]

**RFPs 1–4, 8, 12: Documents addressing Barrier Analysis, Extension Report, BQ**

Plaintiffs assert that the Barrier Analysis and Extension Report were solicited, crafted, and relied upon to help the FAA HR/CR offices justify race discrimination in favor of African Americans. *See* Compl., ECF No. 114 ¶¶ 81, 84; *see also id.* ¶¶ 38, 43–45, 55–56, 66–67, 72–73, 79–80, 82–83, 92, 104. Plaintiffs further assert that the BQ used in 2014 failed to meet EEOC requirements, such as proper validation, and was assembled and weighted to achieve race-biased hiring. *See id.* ¶¶ 12, 28–31, 33, 47–48, 66, 86–88, 90–91, 93–98, 101, 108, 115, 117, 129.

As explained above, during 2015–2016, the FAA continued to invoke and implement the Barrier Analysis and Extension Report, to refine and address the use of biographical factors to

---

[4] Due to space constraints, Plaintiffs provide limited examples of how each category of requested documents is relevant to Plaintiffs' claims. Through a conference or supplemental briefing Plaintiffs can provide further explanation for any category of particular interest to the Court.

select ATCs, to investigate or respond to investigation of potential cheating during the 2014 ATC hiring process, and to respond to inquiries from Congress and other stakeholders who were questioning the 2014 hiring process. The FAA's actions, its explanations for its actions, and its claims of success all provide evidence of the motive underlying the 2014 hiring process. A jury could find, for example, the FAA's initial acknowledgement that the Barrier Analysis drove the 2014 process is more credible than its later claims of confidence that it was hiring the best qualified candidates. A jury may be interested to know the extent to which African American hiring was prioritized over operational considerations such as safety and efficiency. A jury would likely find the FAA's standards for making hiring process changes and the selective compromising of those standards for the 2014 hiring process to be evidence of an improper motive.

**RFP 7: Changes Made to or Recommended for the ATC Hiring Process**

In 2015, after extolling the virtue of a single hiring process with uniform requirements for 2014, the FAA opened separate vacancy announcements for "experienced" (mostly military) and inexperienced ATCs. Events leading to this decision and the evaluation of this decision are relevant because the FAA had previously focused on race ratios by hiring source and had considered retaining the pre-2014 referral list for military-source hires if that source satisfied race standards. *See* Compl. ECF No. 114 ¶¶ 99, 105, 107 (CTI inventory purged, but military/veterans sources to be evaluated for race). Additionally, the 2015 hiring process for inexperienced controllers revised the BQ that had been used only a year earlier. A jury should consider this probative evidence.

In 2015–2016, Congress considered, and entities such as the ATC union lobbied for, statutory changes in ATC hiring. At that time, the FAA was still working to implement the Barrier Analysis and recommendations from the 2011 Independent Review Panel (IRP). *See* ECF No. 75-1 at 189. The FAA's reaction to and analysis of these proposals provides evidence of the motives

and level of influence of the decision makers: was there a tension, and what would be the resolution of priorities such as African American hiring, safety for the flying public, economic efficiency in training, and other considerations; what was the FAA's response to Congressional and other suggestions that applicants with specialized education should be considered separately from the general public, contrary to the justifications it had put forth for the 2014 changes? FAA HR/CR rebuffed and stalled changes recommended by the IRP and rushed changes suggested in the Barrier Analysis, ECF No. 114 ¶¶ 43–45, 66–67, 92. What does their reaction to further suggested changes say about their motives? Additionally, the jury will learn that the 2014 hiring process was a one-time affair. They will logically want to know what changed, and why.

**RFPs 5, 8, 12: Communications with Congress, NBCFAE, and among Key Witnesses**

Plaintiffs seek 2015–2016 communications the FAA had with key constituencies, such as Congress and affinity groups, and communications among key FAA employees regarding ATC hiring, the CTI program, and the priority that the FAA, particularly FAA HR/CR, placed on African American hiring. Communications with Congress, RFP 5, can demonstrate Congress's focus on efficiency and safety in ATC hiring, as reflected in statutes passed supporting the CTI program and requiring regular reporting on ATC training, the FAA's knowing denigration of those goals in favor of African American hiring in 2014, and whether the NBCFAE had garnered support from the Congressional Black Caucus as it suggested. *See* ECF No. 114 ¶ 113.

Plaintiffs' complaint contains extensive allegations regarding the involvement of the NBCFAE and NEF. *See id.* ¶¶ 54–65, 69–70, 75–76, 88, 100, 102, 111–12, 116, 131. FAA HR/CR communications with these groups, RFP 8, providing explanations of priorities, methods, and success or impediments to success to affirmative hiring, affirmative action, or other forms of greater African American hiring are relevant to Plaintiffs' claims.

Plaintiffs also seek communications between FAA employees who were or had been

8

NBCFAE officers (Mallory, Sanders, Roosevelt, Bagley, Snow, Bradley), HR/CR leaders (Mallory, Bostick, Cannon, Wilkerson, Williams), their contractors implementing ATC hiring changes (Scott, Fleener, Simons), or a sympathetic government communications employee (Johnson) regarding the topics discussed above and NBCFAE efforts to influence hiring. RFP 12.

### RFP 9: FAA OCR And HR Strategic Plans, Programs and Objectives

Plaintiffs assert that FAA HR/CR drove the 2014 hiring changes and interfered with other hiring recommendations for purposes of increasing African American hiring, even at the expense of more qualified candidates. *Id.* ¶¶ 61, 66–70. The HR/CR strategic plans, programs, objectives, and initiatives provide evidence of the motivations of the leaders in these departments, including their personal performance objectives and evaluations. A jury will ultimately have to decide whether the FAA illegally sought to benefit African Americans over all others or whether the FAA believed it was evenhandedly pursuing general diversity while still enforcing merit-based hiring principles and other business objectives.

### RFPs 10, 11, 13, 14: Evidence Refuting or Supporting FAA HR/CR Claims

Finally, Plaintiffs seek evidence that will belie the claims that the FAA CR/HR used to justify their 2014 ATC hiring changes. Such claims include, among other things, that hiring from the CTI program created a barrier for African Americans; that they "want[ed] the very best air traffic controllers," used a "data driven approach to hiring" to provide a "more accurate predication of who can succeed on the job," and "intended to ensure that the agency selects applicants with the highest probability of success[];" that the BQ was a "minimum qualification" that "measures important and demonstrably job-related personal characteristics;" and that the hiring changes "addressed the concerns identified in our initial reviews of the hiring process" and "better addresse[d] the agency's current hiring needs." *See* ECF No. 75-1 at 188–91. These statements

9

contradict prior analysis or discussion of the benefits of hiring from the CTI source particularly when compared to general public hires, CAMI research questioning the utility of biographical screening mechanisms, CAMI research validating the AT-SAT as a predictor of ATC success, anecdotal information regarding preference for CTI candidates, and other evidence that casts doubt on the FAA's claims. *See* ECF No. 114, ¶¶ 19, 21, 41, 43–46, 49–57, 109. Plaintiffs therefore request FAA data analyzing the use of biographic factors in ATC hiring/predictions of success (RFP 10), performance of ATC hires by hiring source and demographics (RFP 11), analysis of the success and failure of the CTI program (RFP 13), and data regarding the qualifications and the success or failure of the ATCs hired through the 2014 vacancy announcement (RFP 14).[5]

In conclusion, Plaintiffs request that the FAA be ordered to produce documents created in 2015–2016 and responsive to Requests for Production Nos. 1–5, 7–14.

DATED: July 21, 2022

Respectfully submitted,

| | |
|---|---|
| /s/ Zhonette M. Brown | /s/ Michael W. Pearson |
| Zhonette M. Brown, D.C. Bar # 463407 | Michael W. Pearson, DC Bar No. 997169 |
| William E. Trachman, D.C. Bar # 502500 | CURRY, PEARSON, & WOOTEN, PLC |
| David C. McDonald, D.C. Bar # CO0079 | 814 West Roosevelt |
| MOUNTAIN STATES LEGAL FOUNDATION | Phoenix, Arizona 85007 |
| 2596 South Lewis Way | Telephone: (602) 258-1000 |
| Lakewood, Colorado 80227 | Facsimile: (602) 523-9000 |
| Telephone: (303) 292-2021 | Email: mpearson@azlaw.com |
| Facsimile: (303) 292-1980 | |
| Email: zhonette@mslegal.org | *Counsel for Plaintiff Class* |

---

[5] While not required to address proportionality, Plaintiffs note their Class includes over 900 putative members with significant potential backpay; *see* ECF No. 139-33 at 3; *Lamaute*, 339 F.R.D. at 35; *EEOC v. George Wash. U.*, No. 17-cv-1978, 2020 WL 3489478 at *6; and that this case addresses issues of barrier analyses and "corrective" discrimination in government employment well beyond the Class. Exec. Order No. 14,035, 86 Fed. Reg. 34,593 (June 25, 2021). The FAA has significant resources, the documents sought go to the heart of the allegations, and the benefits of the discovery outweigh the burdens. *See CCA Recordings 2255 Litig. v. U.S.*, 2020 WL 4284222, 19-cv-2491, *5 (D. Kan. July 27, 2020); *Pintro v. Rosenworcel*, 554 F.Supp.3d 14 (D.D.C. 2021); *Mitchell*, 208 F.R.D. at 459 (quoted in *Kargbo*, 2016 WL 1998394 at *7); *Garcia Ramirez*, 331 F.R.D. at 198; *see also, e.g.*, *Brieterman* 324 F.R.D. at 26–28, 31–32 (single case regarding a 2 day suspension and a demotion, allowing discovery for a five year period).