**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW J. BRIGIDA, *et al.*, <br><br> *Plaintiff Class*, <br><br> vs. <br><br> PETER P.M. BUTTIGIEG, Secretary, U.S. Department of Transportation, <br><br> *Defendant*. | No. 16-cv-2227 (DLF) |

**PLAINTIFFS' FIRST MERITS REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rule of Civil Procedure 34, Defendant is hereby requested to produce the following Documents. These Requests shall be deemed continuing, so as to require supplemental response(s) if Defendant obtains additional information after service of its original responses. Defendant's responses, including any responsive documents, shall be provided to Plaintiffs, at the office of Mountain States Legal Foundation, 2596 South Lewis Way, Lakewood, Colorado 80227, or via electronic means pursuant to Local Rule 5.4(b), by April 4, 2022.

**DEFINITIONS**

For purposes of these Requests, the following definitions shall apply:

1. "APT Metrics" refers to Applied Psychological Techniques, Inc./APTMetrics Inc., once located at 1 Thorndal Circle, Darien, CT, 06820, the entity the FAA contracted with beginning no later than 2012 to provide advisory, professional, technical, administrative, and management services to review its hiring practices, identify barriers to achievement of equal employment opportunities, and develop plans to eliminate any barriers discovered, including the Biographical Questionnaire. Reference to APT Metrics includes its principals, employees, contractors, subcontractors, and agents.

2. "ATO" refers to the FAA's Air Traffic Organization department, division, or line of business, however denominated at the time.

3. "AT-SAT" refers to the FAA's Air Traffic Selection and Training test battery.

4. "ATC" refers to Air Traffic Controllers or Air Traffic Control Specialists employed by the FAA.

5. "ATC Vacancy Announcement" refers to the FAA's job postings for air traffic controllers.

6. "BAIT Team" refers to the Barrier Analysis Implementation Team created by the FAA in approximately 2013 to implement changes to the ATC hiring process and succeeding teams or committees, however denominated.

7. "Barrier Analysis" refers to the Barrier Analysis of the Air Traffic Control Specialists (ATCS) Centralized Hiring Process, authored by Dr. James L. Outtz and Dr. Paul J. Hanges, and any of its underlying analyses, data collections, documentation, drafts, and reports.

8. "Biographical Questionnaire" refers to the pre-employment screening tool for ATC applicants developed, *inter alia*, between 2013 and 2014 with the assistance of APT Metrics and administered through AVIATOR to the ATC job applicants beginning in February 2014. The FAA sometimes refers to this screening tool as a biographical assessment.

9. "Biographical Data" includes but is not limited to data concerning an individual's race, national origin, gender, age, educational experiences or achievements, work or unemployment experience or achievements, skills, characteristics, beliefs, or attitudes.

10. "CAMI" refers to the FAA Civil Aerospace Medical Institute.

11. "College" refers to any FAA AT-CTI approved institution of higher learning.

12. "Communications" includes but is not limited to written, verbal, non-verbal, electronic, wire, and telephonic communications.

13. "Congressional" refers to any member or group of members of Congress or their staff or any committee, sub-committee, or working group assembled by Congress members.

14. "Contract Documents" refer to any proposals, statements of work, contract drafts, signed contracts, contract modifications, contract or payment approvals, evidence of contract performance, evaluation of contract performance, or payment made under contract.

15. "Correspondence" means any written exchange of information and/or data by electronic or regular mail, memorandum, telecopier, text, instant message, or by any other physical or electronic means.

16. "CTI" or "AT-CTI" refers to the FAA's College Training Initiative for Air Traffic Controllers.

17. "CTI Graduates" refers to individuals who have earned a degree in an FAA approved or partnered program at a college or university under/within the Collegiate Training Initiative program.

18. "CTI Students" refers to individuals who were enrolled in a college or university approved by the FAA under/within the Collegiate Training Initiative program, meaning they were identified by a College as participating in the CTI program, but have not earned a degree.

19. "Defendant" refers to Peter P.M. Buttigieg, in his official capacity as Secretary of the U.S. Department of Transportation, and his or her officers, employees, agents, or representatives. "Defendant" also refers to any predecessors holding that office, as well as their officers, employees, agents, or representatives.

20. "Document" shall have the broadest meaning ascribed to it in Federal Rule of Civil Procedure Rule 34(a), including electronically stored information. Each non-identical copy or draft is a separate Document.

21. "Dr. Outtz" refers to Dr. James L. Outtz, co-author of the Barrier Analysis of the Air Traffic Control Specialists (ATCS) Centralized Hiring Process or his agents.

22. "Dr. Hanges" refers to Dr. Paul J. Hanges, co-author of the Barrier Analysis of the Air Traffic Control Specialists (ATCS) Centralized Hiring Process or his agents.

23. "Executive Department" refers to the President or Vice-President of the United States and any agency, department, or commission formed or assembled to carry out the functions of the executive branch of the United States federal government.

24. "Executive Steering Committee" or "ESC" refers to the FAA committee assembled no later than 2013 that provided guidance or made decisions regarding the criteria, tools, and processes to be used when hiring ATCs and which specifically considered and approved the use of the Biographical Questionnaire as part of the 2014 ATC hiring process and the implementation of recommendations made by APT Metrics, Dr. Outtz, and/or Dr. Hanges.

25. "Extension Report" refers to the Extension to Barrier Analysis of Air Traffic Control Specialist Centralized Hiring Process authored by APT Metrics and any of its underlying analyses, data collections, documentation, drafts, and reports.

26. "FAA" refers to the Federal Aviation Administration.

27. "Identify" means to: (a) state a person's full name, title or occupation, business and home addresses, business and home telephone numbers, and present and past relationship to the parties; or (b) state the title or type of any Document, the name of the person who prepared it, the date the Document was prepared and/or filed, where the Document is located, who is or was the custodian of the Document, and what program/application/software system the Document originated from.

28. "HR" refers to the Human Resources department, division, or line of business of the FAA, however denominated at the time.

29. "IRP" refers to the FAA Independent Review Panel on the Selection, Assignment, and Training of Air Traffic Control Specialists, which was assembled in approximately 2011 and provided a report dated approximately September 22, 2011.

30. "MD 715" refers to Management Directive-715, policy guidance the Equal Employment Opportunity Commission provided to federal agencies to establish and maintain programs for equal employment opportunity, along with any related guidance provided to the FAA by the Equal Employment Opportunity Commission, Office of Personnel Management, Department of Transportation, Executive Orders, or other executive departments for the implementation of and reporting pursuant to Management Directive-715.

31. "NBCFAE" refers to the National Black Coalition of Federal Aviation Employees and its officers, agents, contractors, subcontractors, and representatives.

32. "NEF" refers to the FAA's National Employee's Forum, and its officers and representatives.

33. "OCR" refers to the FAA's Office of Civil Rights as a department, division, or line of business of the FAA, however denominated at the time.

34. "Regarding" or "relating to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, or in any way pertaining to the subject specified.

**INSTRUCTIONS**

1. Responsive Documents are to be produced by an electronic means agreeable to the parties, such as via a secure file transfer protocol site.

2. Documents and electronically stored information shall be produced in accordance with the attached specifications unless other written agreement is reached between the parties.

3. All Documents that respond, in whole or in part, to a Request should be produced in their entirety.

4. Non-electronic documents that in the original condition were stapled, clipped or otherwise fastened together should be produced in such form. Documents which are segregated or

separated from other Documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs, or any other method, shall be left so segregated or separated and any folder/binder flap, tab, or label copied in order. Documents shall be produced in the order in which they are maintained and segregated by custodian. Where multiple copies of Documents exist, each non-identical copy should be produced.

5.  Should you withhold any document for any reason, please provide a log describing, for each document withheld, (a) the type of document; (b) the date of the document; (c) the author of the document; (d) the recipient or recipients of the document; (e) the subject of the document; and (f) the basis for withholding the document, providing sufficient detail to assess the validity of the basis for withholding the document.

6.  Should you redact any document for any reason, please provide a log describing, for each document redacted, (a) the subject of the redacted material and (b) the basis for the redaction, providing sufficient detail to assess the validity of the basis for the redaction.

7.  Use of the singular shall be deemed to include the plural and vice versa. The term "all" includes "any" and vice versa. The terms "and" and "or" should be interpreted as conjunctive, disjunctive, or both, depending on the context, so as to have their broadest meaning. Whenever necessary to bring within the scope of a Request all information or Documents that might otherwise be construed to be outside its scope, the use of a verb in any tense shall be construed as the use of the verb in all other tenses.

8.  All Requests referring to Correspondence or other transactions between two or more persons shall include without limitation Correspondence or other transactions made or conducted through intermediaries.

9.  To the extent that any copy of any Document whose production is sought, whether a draft or a final version, is not identical to any other copy thereof, because of alterations, notes,

comments, initials, underscoring, indication of routing or other material contained thereon or attached thereto, such non-identical copy should be produced separately.

10. None of these Instructions or Requests should be interpreted in any way that would diminish Defendant's obligations under the Federal Rules of Civil Procedure.

11. Except for Requests for Production No. 7 and No. 11, none of the Requests should be interpreted to call for the production of documents found only in FAA personnel files or for individual pay statements, or similar individualized employee management documents.

12. Unless otherwise stated or required by necessary interpretation of the category, these Requests cover Documents generated from or evaluating events from 2008 to 2016.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:** Please produce Documents related to the Barrier Analysis. For clarification this Request includes but is not limited to related Contract Documents; Correspondence regarding the Barrier Analysis or with Dr. Outtz or Dr. Hanges; data provided to or at the request of Dr. Outtz or Dr. Hanges; discussion, consideration, direction or other reference to the objectives or purposes to be accomplished by the Barrier Analysis; progress reports, drafts, or updates regarding the conduct of the Barrier Analysis; evaluations, analyses, reports, responses or other consideration of the work performed or conclusions, final or tentative, reached in conjunction with the Barrier Analysis; and materials created or considered by the BAIT Team or the ESC.

**REQUEST FOR PRODUCTION NO. 2:** Please produce Documents related to the Extension Report. For clarification this Request includes but is not limited to related Contract Documents; Correspondence regarding the Extension Report or with APT Metrics; data provided to or at the request of APT Metrics; discussion, consideration, direction or other mention of the objectives or purposes to be accomplished by the Extension Report; progress reports, drafts, or updates regarding the conduct of the Extension Report; evaluations, analyses, reports, responses or other consideration

of the work performed or conclusions, final or tentative, reached in conjunction with the Extension Report; and materials created or considered by the BAIT Team or the ESC.

**REQUEST FOR PRODUCTION NO. 3:** Please produce Documents related to the Biographical Questionnaire. For clarification this Request includes but is not limited to related Contract Documents; correspondence regarding the Biographical Questionnaire; research explicitly considered in creating, weighting, scoring, or validating the Biographical Questionnaire; solicitation of employees' participation in validating the Biographical Questionnaire; discussion, consideration, direction or other mention of the objectives or purposes to be accomplished or the results expected to be achieved by the Biographical Questionnaire; progress reports, drafts, or updates regarding the conduct and implementation of the Biographical Questionnaire; evaluations, analyses, reports, responses or other consideration of the implementation of and results obtained from the Biographical Questionnaire; materials reflecting individual applicants' scores on the Biographical Questionnaire; materials created or considered by the BAIT Team or the ESC; all analysis and discussion of changes required to utilize any aspect of the Biographical Questionnaire in any later ATC hiring process; and all CAMI or other research regarding the Biographical Questionnaire or its components that was reviewed or considered by the Agency.

**REQUEST FOR PRODUCTION NO. 4:** Please produce Documents related to third-party Congressional, Executive Department (including the Department of Transportation), media, or other stakeholder inquiries of or to the FAA concerning the Barrier Analysis, the Extension Report, or the Biographical Questionnaire, or analysis, conclusions, results, or actions taken by the FAA as a consequence of the Barrier Analysis, the Extension Report, the Biographical Questionnaire.  This request includes Documents evidencing the preparation, revision, approval, and provision of responses to such inquiries.

**REQUEST FOR PRODUCTION NO. 5:**  Please produce Documents related the FAA's or the Department of Transportation's communications with members of Congress from 2010 through 2016 concerning ATC hiring or the CTI program.  For clarification this Request includes but is not limited to the FAA and Department of Transportation's internal analysis of Congressional proposals for ATC hiring or the CTI program, and technical analysis or other support provided to members of Congress.

**REQUEST FOR PRODUCTION NO. 6:**  Please produce Documents related to the FAA's consideration from March 2012 through February 9, 2014, of whether to continue to use or to select from, or whether to close or otherwise terminate or negate any candidate, applicant, or referral lists for ATC hiring, including but not limited to any list, inventory, or roster of CTI students or CTI Graduates or other ATC hiring sources or lists that had been generated for any anticipated ATC centralized selection panel.

**REQUEST FOR PRODUCTION NO. 7:**  Please produce Documents related to changes made or recommended to be made in the ATC hiring process from January 2010 to June 2016, including but not limited to evaluation of recommendations made by the IRP; use or elimination of geographic preferences; use or elimination of centralized selection panels; use or elimination of candidate/applicant interviews; and considerations of potential and actual benefits and drawback from changes in selecting, managing, or eliminating hiring sources or methods such as the use of CTI-specific ATC vacancy announcements.

**REQUEST FOR PRODUCTION NO. 8:**  Please produce Documents provided, received, presented to/from, or reflecting or memorializing meetings with, the NBCFAE, the NEF, and/or the FAA's Leadership and Career Development Partnership related to the hiring or retention of African Americans, analysis of diversity in the FAA or specific FAA departments or lines of business, analysis

of diversity in the ATC position, potential changes in hiring processes for the ATC position, the Barrier Analysis, the Extension Report, the Biographical Questionnaire, affirmative action, or MD 715.

**REQUEST FOR PRODUCTION NO. 9:** Please produce Documents regarding strategic plans, major programs, significant objectives, or MD 715 compliance initiatives of the FAA OCR and/or HR, including but not limited to reports those departments provided to the FAA Administrator or his/her staff; reports created by the leader of each of those departments to provide to the Executive Department, Congress, or other third-parties; awards, commendations, bonuses, or other similar official performance recognition provided to the leader of each of those departments; and the annual or other periodic performance evaluations provided to the Assistant Administrators and their direct reports.

**REQUEST FOR PRODUCTION NO. 10:** Please produce Documents created between 2010 and 2019 regarding or reflecting the FAA's analysis, including but not limited to CAMI's analysis, of the use or potential use of Biographical Data in selecting ATCs or correlation between ATC applicant or employee Biographical Data and ATC job performance. For clarification this Request includes but is not limited to related Contract Documents; correspondence regarding the evaluation of using Biographical Data to select ATCS; research explicitly considered in creating, weighting, scoring, or validating Biographical Data questions; solicitation of employees' participation in validating Biographical Data questions; discussion, consideration, direction or other mention of the objectives or purposes to be accomplished or the results expected to be achieved by the use of Biographical Data; progress reports, drafts, or updates regarding the conduct and implementation of Biographical Data screening tools; evaluations, analyses, reports, responses or other consideration of the implementation of and results obtained from the use of Biographical Data screening tools; materials created or considered by the BAIT Team or the ESC; and all analysis and discussion of changes required to utilize Biographical Data in an ATC hiring process.

**REQUEST FOR PRODUCTION NO. 11:** Please produce Documents reflecting any analysis of the aggregate selection, training, career progression, or diversity of ATCs hired from January 1, 2006 through December 31, 2016 or financial years 2006-2016, not including individual employment records of ATC applicants or employees. This Request includes, but is not limited to, analysis or discussion of ATC selection rates by hiring source, demographic, or vacancy announcement; FAA Academy performance by hiring source, demographic, or vacancy announcement; training success or failure rates of ATCs by hiring source, demographic, or vacancy announcement; facility level assignments of ATCs by hiring source, demographic or vacancy announcement; achievement of CPC status by hiring source demographic, or vacancy announcement; time to achieve CPC status by hiring source demographic, or vacancy announcement; and retention or attrition rates and causes by hiring source, demographic, or vacancy announcement.

**REQUEST FOR PRODUCTION NO. 12:** Please produce Documents evidencing correspondence to, from, between, or among Mamie Mallory, Shaun Sanders, Lenard Roosevelt, Ronald Bagley, Shelton Snow, Paquita Bradley, Harnetta Williams, Carolyn Bostick, Ricky Cannon, Courtney Wilkerson, John Scott, Brandon Fleener, Donnie Simons, or Sasha Johnson mentioning 2152, disparate impact, disparate treatment, Barrier Analysis (or BA), Extension Report, Biographical Questionnaire or (BQ), Herbert Wong, Outtz, Hanges, Team 7 (or T7), Congressional Black Caucus (or CBC), APT Metrics, biographical assessments, AT-SAT, CTI, BAIT, or ESC.

**REQUEST FOR PRODUCTION NO. 13:** Please produce Documents related to the success, evaluation, or criticism of the CTI program, particularly as it relates to comparisons of job performance of CTI Graduates or persons hired through CTI ATC vacancy announcements versus other hiring sources/applicants or the diversity of CTI Students. This request includes information provided to the FAA by the CTI schools in 2010-2014 regarding the diversity, race, national origin and gender of the students enrolled in the CTI program and drafts of reports evaluating the CTI program.

**REQUEST FOR PRODUCTION NO. 14:** For any ATC applicant given a tentative offer letter as a result of the 2014 Vacancy Announcement, please produce Documents reflecting failure of required pre-employment screenings (not including personal medical records other than a conclusion of disqualification), entry on duty date, FAA Academy performance, ATC training success or failure, ATC facility placements, promotions, achievement of Certified Professional Controller status, and termination through 2021.

**REQUEST FOR PRODUCTION NO. 15:** Please produce Documents reflecting the FAA's document retention, management, backup, or destruction policies. Responsive documents will include any specific OCR/HRM/CAMI/ATO document retention, management, backup, or destruction policies; steps taken to preserve or migrate data when the FAA changed email applications in approximately 2013–2014, a catalog of Lotus Notes backup tapes, and documentation regarding the time required or costs associated with restoring Lotus Notes email from backup tapes.

**REQUEST FOR PRODUCTION NO. 16:** Please produce Documents the FAA intends to reply upon to seek summary judgment or at trial as the basis for denying plaintiffs' allegations or as the basis for an affirmative defense.

DATED this 4th day of March 2022.

/s/ Zhonette M. Brown
Zhonette M. Brown, D.C. Bar # 463407
William E. Trachman, D.C. Bar #502500
David C. McDonald, D.C. Bar #CO0079
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
zhonette@mslegal.org
wtrachman@mslegal.org
dmcdonald@mslegal.org

Michael W. Pearson, D.C. Bar No. 997169
CURRY, PEARSON & WOOTEN, PLC
814 West Roosevelt

Phoenix, Arizona 85007
(602) 258-1000
mpearson@azlaw.com

*Attorneys for Plaintiff Class*