**EXHIBIT 18**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANDREW J. BRIGIDA and MATTHEW L.
DOUGLAS-COOK,

      *Plaintiffs*,

    v.

PETER P.M. BUTTIGIEG, Secretary,
U.S. Department of Transportation,

      *Defendant.*

Civil Action No 16-2227 (DLF)

### DEFENDANT'S RESPONSE TO PLAINTIFFS' FIRST MERITS REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, and Local Rule 26.2, Defendant Peter P.M. Buttigieg hereby provides his objections and responses to Plaintiffs' First Merits Request for Production of Documents dated March 4, 2022 (collectively, "the Requests").

### OBJECTIONS TO DEFINITIONS & INSTRUCTIONS

Defendant objects to Definition No. 8 on the ground that the instrument it refers to is titled the Biographical Assessment, not the "Biographical Questionnaire." *See* ECF Nos. 139-25, 139-26. Plaintiffs' terminology thus causes unnecessary confusion because the Biographical Questionnaire was an instrument administered to students at the FAA Academy and is distinct from the Biographical Assessment administered to applicants in 2014. Defendant construes this definition to refer only to the Biographical Assessment administered to applicants in 2014.

Defendant objects to Definition No. 9 ("Biographical Data") as vague and indeterminate because it defines only some attributes "include[d]" within the term. Defendant also objects that the term is overbroad and causes unnecessary confusion because Plaintiffs define the term to include fixed

1

attributes such as race and gender. But FAA's use of the term follows the generally accepted understanding of the term in industrial psychology as individuals' "typical, and sometimes, specific behaviors or experiences in a referent situation, generally from an earlier time in their lives." ECF No. 141-1, Exs. D, E. Moreover, Plaintiffs' definition sweeps in material irrelevant to this case, such as FAA's examination of the impact of an employee's starting age on their success as a controller.

Defendant objects to Definition No. 12 ("Communications") to the extent that it purports to expand the definition of "documents," "electronically stored information," or "tangible things" contained in Federal Rule of Civil Procedure 34. Defendant further objects to this definition to the extent that it exceeds the requirements of either Federal Rule of Civil Procedure 26 or 34.

Defendant objects to Definition No. 14 ("Contract Documents") as vague and overbroad, particularly because such items such as "contract or payment approvals" or "payment made under contract" are unrelated to FAA's intent with regard to the barrier analyses or the Biographical Assessment.

Defendant objects to Definition No. 15 ("Correspondence") to the extent that it purports to expand the definition of "documents," "electronically stored information," or "tangible things" contained in Federal Rule of Civil Procedure 34. Defendant further objects to this definition to the extent that it exceeds the requirements of either Federal Rule of Civil Procedure 26 or 34.

Defendant objects to Definition 16 ("CTI" or "AT-CTI") as vague and will construe it to refer to the FAA's Air Traffic Collegiate Training Initiative.

Defendant objects to Definition 19 ("Defendant") as overbroad and unduly burdensome to the extent that it encompasses as "agents, or representatives" attorneys outside the Department of Transportation who represent the agency in litigation.

Defendant objects to Definition 20 ("Document") to the extent it is contrary to the definition ascribed to it in Federal Rule of Civil Procedure Rule 34(a).

Defendant objects to Definition 27 ("Identify") on the ground that it exceeds the requirements of Federal Rule of Civil Procedure 34, which does not require the specific information that Plaintiffs purport to require in this definition.

Defendant objects to Definition 32 ("NEF") as vague and will construe it to refer the FAA's National Employee Forum.

Defendant objects to Definition 33 ("OCR") on the ground that Plaintiffs' terminology causes unnecessary confusion. The longstanding acronym for FAA's Office of Civil Rights is "ACR." *See, e.g.,* https://www.faa.gov/about/office_org/headquarters_offices/acr.

Defendant objects to Instruction No. 2 on the ground that not all aspects of the attached technical specifications may be appropriate or efficient for production of some documents responsive to these Requests.

Defendant objects to Instruction No. 3 to the extent that it purports to require Defendant to produce privileged documents, such as those protected from disclosure by the deliberative process privilege, attorney-client privilege or the work product doctrine, or to prohibit redactions to protect privileged information or third party personally identifiable information (PII) that is not relevant or necessary to this litigation. Defendant further objects to this instruction to the extent that it calls for the production of materials relating to expert witnesses in any fashion or timeframe other than those provided by Federal Rule of Civil Procedure 26(a)(2). Defendant also objects to this instruction as unduly burdensome to the extent that it calls upon Defendant to produce documents that are publicly available (such as books, federal regulations and government reports) and documents that are already in Plaintiffs' possession.

Defendant objects to Instruction No. 4 to the extent that it contradicts Instruction No. 1 calling for electronic production of responsive documents; Defendant will not produce documents in hardcopy form, "stapled, clipped, or otherwise fastened together." Defendant further objects to this instruction to the extent it exceeds the requirements of Federal Rule of Civil Procedure 34(b)(2)(E)(i). Defendant further

objects to this instruction to the extent that it calls for locating and producing "multiple copies" of the same document; it is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document in order to determine which are "non-identical." Defendant further objects to this instruction to the extent that it requires production of draft documents protected by the deliberative process privilege or other privileges.

Defendant objects to Instruction Nos. 5 and 6 to the extent that they seek more information than is required for a privilege log by either Federal Rule of Civil Procedure 26 or 34. Defendant further objects to this instruction to the extent that it would require Defendant to reveal information that is itself privileged or protected. Defendant further objects to these instructions to the extent that they conflict with the Parties' prior agreement "to exchange privilege logs on a rolling basis and that the parties need not log documents subject to Federal Rule of Civil Procedure 26(b)(4)(B) and (C) as applicable to this case, or documents protected by the work product doctrine where the anticipated litigation involved one of the named plaintiffs and the creation of the document post-dates the filing of plaintiffs' complaint in federal district court on December 30, 2015." *See* Joint Meet and Confer Statement, ECF No. 96 at 11 (Mar. 3, 2020).

Defendant objects to Instruction No. 8 on the ground that it is vague and appears to place an undue burden on Defendant to locate communications conducted through intermediaries.

Defendant objects to Instruction No. 9 to the extent that it calls for locating and producing "copies" of the same document; it is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document in order to determine which are "non-identical." Defendant further objects to this instruction to the extent that it requires production of draft documents protected by the deliberative process privilege or other privileges.

Defendant objects to Instruction No. 12 on the ground that the full eight-year period of 2008 through 2016 is not relevant to any party's claim or defense in this case. This case concerns allegations that the FAA intentionally discriminated against class members in February 2014 by using the 2014 Biographical Assessment and allegedly purging their qualifications. Moreover, it would be unduly burdensome and not

proportional to the needs of this case to broadly search for documents prior to 2010 or after 2014, because few such documents are likely to be relevant. Except as otherwise noted, Defendant declines to search for documents created prior to 2010 or after 2014.

## **GENERAL OBJECTIONS**

Defendants object to Plaintiffs' requests to the extent that they seek (a) attorney work product; (b) communications protected by the attorney-client privilege; (c) the deliberative process privilege, or (d) any other applicable privilege or protection.

Each and every response contained herein is subject to the above objections, which apply to each and every response, regardless of whether a specific objection is interposed in a specific response. The making of a specific objection in response to a particular request is not intended to constitute a waiver of any other objection not specifically referenced in the particular response.

## **RESERVATION OF OBJECTIONS**

The forgoing objections to Definitions and Instructions, and General Objections and the following specific objections are based upon (a) Defendant's interpretation of the specific requests posed by Plaintiffs and (b) information available to Defendant as of the date of this document. Defendant reserves the right to supplement these objections based upon (a) information that Plaintiffs purport to interpret the requests differently than Defendant and/or (b) the discovery of new information supporting additional objections. A statement that Defendant will produce documents in response to any of the Requests is not meant to imply that such documents exist, but only that Defendant will produce them if they do exist and are located, subject to any of the specific objections to the Requests.

## **RESPONSES TO SPECIFIC REQUESTS**

**REQUEST FOR PRODUCTION NO. 1:** Please produce Documents related to the Barrier Analysis. For clarification this Request includes but is not limited to related Contract Documents; Correspondence regarding the Barrier Analysis or with Dr. Outtz or Dr. Hanges; data provided to or at the request of Dr. Outtz or Dr. Hanges; discussion, consideration, direction or other reference to the objectives or purposes to be accomplished by the Barrier Analysis; progress reports, drafts, or updates regarding the conduct of the Barrier Analysis; evaluations, analyses, reports, responses or other consideration of the work performed or conclusions, final or tentative, reached in conjunction with the Barrier Analysis; and materials created or

considered by the BAIT Team or the ESC.

**Response to Request for Production No. 1:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document. Defendant will produce non-privileged documents as described below.

Second, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and

costs associated with a search of these documents.

Third, Defendant objects to this request as overbroad and unduly burdensome to the extent that it seeks documents sent to or from the FAA Office of Chief Counsel, private FAA outside counsel, Department of Transportation Office of General Counsel, or Department of Justice litigation counsel. It would be unduly burdensome and not proportional to the needs of this litigation to require review of these documents "related to" or "regarding" the Barrier Analysis, a substantial portion of which would need to be logged as subject to the attorney client or attorney work product privileges. Defendant declines to search attorney communications for information responsive to this Request or log such documents.

Fourth, Defendant objects to this request as overbroad and unduly burdensome to the extent it seeks all "Contract Documents" as described in Definition No. 14. Specifically, "payment approvals" and "payment made under the contract" and related billing and budgetary information has no relevance to the claims in this case. Defendant declines to search for payment information related to these contracts.

Fifth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before May 18, 2022 and concluding on or before December 15, 2022. Following negotiations and an agreement between the Parties on key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 2:** Please produce Documents related to the Extension Report. For clarification this Request includes but is not limited to related Contract Documents; Correspondence regarding the Extension Report or with APT Metrics; data provided to or at the request of APT Metrics;

discussion, consideration, direction or other mention of the objectives or purposes to be accomplished by the Extension Report; progress reports, drafts, or updates regarding the conduct of the Extension Report; evaluations, analyses, reports, responses or other consideration of the work performed or conclusions, final or tentative, reached in conjunction with the Extension Report; and materials created or considered by the BAIT Team or the ESC.

**Response to Request for Production No. 2:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document.

Second, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted

search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and costs associated with a search of these documents.

Third, Defendant objects to this request as overbroad and unduly burdensome to the extent that it seeks documents sent to or from the FAA Office of Chief Counsel, Private FAA Outside Counsel, Department of Transportation Office of General Counsel, or Department of Justice litigation counsel. It would be unduly burdensome and not proportional to the needs of this litigation to require review of these documents "related to" or "regarding" the Extension Report, a substantial portion of which would need to be logged as subject to the attorney client or attorney work product privileges. Defendant declines to search attorney communications for information responsive to this Request or log such documents.

Fourth, Defendant objects to this request as overbroad and unduly burdensome to the extent it seeks all "Contract Documents" as described in Definition No. 14. Specifically, "payment approvals" and "payment made under the contract" and related billing and budgetary information has no relevance to the claims in this case. Defendant declines to search for payment information related to these contracts.

Fifth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before May 18, 2022 and concluding on or before December 15, 2022. Following negotiations and an agreement between the Parties on key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 3:** Please produce Documents related to the Biographical

Questionnaire. For clarification this Request includes but is not limited to related Contract Documents; correspondence regarding the Biographical Questionnaire; research explicitly considered in creating, weighting, scoring, or validating the Biographical Questionnaire; solicitation of employees' participation in validating the Biographical Questionnaire; discussion, consideration, direction or other mention of the objectives or purposes to be accomplished or the results expected to be achieved by the Biographical Questionnaire; progress reports, drafts, or updates regarding the conduct and implementation of the Biographical Questionnaire; evaluations, analyses, reports, responses or other consideration of the implementation of and results obtained from the Biographical Questionnaire; materials reflecting individual applicants' scores on the Biographical Questionnaire; materials created or considered by the BAIT Team or the ESC; all analysis and discussion of changes required to utilize any aspect of the Biographical Questionnaire in any later ATC hiring process; and all CAMI or other research regarding the Biographical Questionnaire or its components that was reviewed or considered by the Agency.

**Response to Request for Production No. 3:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to the definition of the included term Biographical Questionnaire for the reasons stated above.

Second, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document. For example, Defendant has already produced to Plaintiffs the class members' responses to the questions on the 2014 Biographical Assessment and their scores, and therefore will not search for additional copies of "materials reflecting individual applicants' scores."

Third, Defendant objects to Plaintiffs' request for documents related to any ATCS hiring process after 2014. None of that information is relevant to Plaintiffs' claim that the FAA's 2014 hiring process was intentionally discriminatory or Defendant's defenses thereto. As such, the request is not proportional to the needs of this case and the burden or expense of the proposed discovery outweighs its likely benefit. Defendant will not search for documents related to any ATCS hiring process after 2014.

Fourth, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and

not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and costs associated with a search of these documents.

Fifth, Defendant objects to this request as overbroad and unduly burdensome to the extent that it seeks documents sent to or from the FAA Office of Chief Counsel, private FAA outside counsel, Department of Transportation Office of General Counsel, or Department of Justice litigation counsel. It would be unduly burdensome and not proportional to the needs of this litigation to require review of these documents "related to" or "regarding" the Biographical Assessment, a substantial portion of which would need to be logged as subject to the attorney client or attorney work product privileges. Defendant declines to search attorney communications for information responsive to this Request or log such documents.

Sixth, Defendant objects to this request as overbroad and unduly burdensome to the extent it seeks all "Contract Documents" as described in Definition No. 14. Specifically, "payment approvals" and

11

"payment made under the contract" and related billing and budgetary information has no relevance to the claims in this case. Defendant declines to search for payment information related to these contracts.

Seventh, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before May 18, 2022 and concluding on or before December 15, 2022. Following negotiations and an agreement between the Parties on key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 4:** Please produce Documents related to third-party Congressional, Executive Department (including the Department of Transportation), media, or other stakeholder inquiries of or to the FAA concerning the Barrier Analysis, the Extension Report, or the Biographical Questionnaire, or analysis, conclusions, results, or actions taken by the FAA as a consequence of the Barrier Analysis, the Extension Report, the Biographical Questionnaire. This request includes Documents evidencing the preparation, revision, approval, and provision of responses to such inquiries.

**Response to Request for Production No. 4:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to the definition of the included term Biographical Questionnaire for the reasons stated above.

Second, Defendant objects to this request to the extent it refers to "other stakeholder inquiries" because this term is vague and indeterminate. Defendant construes the term to refer only to entities outside the Executive Branch with a stake in the FAA's ATCS hiring process, such as the ATCS applicants, CTI

Schools, and the National Air Traffic Controllers Association (NATCA).

Third, Defendant objects to this request to the extent that it seeks documents related to requests made under the Freedom of Information Act (FOIA). FAA's process of responding to FOIA request is irrelevant to the claims and defenses in this case. Defendant declines to search for or produce any FOIA requests, responses, or processing documents in response to this request.

Fourth, Defendant objects to this request as overbroad and unduly burdensome to the extent it concerns any "actions taken by the FAA as a consequence of the Barrier Analysis, the Extension Report, the Biographical Questionnaire" without temporal limitation. For example, the AT-SAT was replaced in 2016 by the ATSA, in part due to observations in the Barrier Analysis and Extension Report, but third party inquiries regarding this later test have no relevance to this case. Third party inquiries regarding ATCS hiring processes after 2014 are not relevant. Defendant will search for responsive documents only regarding the 2014 ATCS hiring process, along with the Barrier Analysis and Extension Report.

Fifth, Defendant objects to this request to the extent that it seeks all third-party inquiries and responses to the media and Congress. The discovery sought is unreasonably cumulative or duplicative, especially as FAA made consistent responses to such the third-party inquiries, and therefore it would be unduly burdensome and not proportional to the needs of the case for Defendant to search for preparatory material and the response to every third-party inquiry from the media and members of Congress on the specified topics.

Sixth, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document.

Seventh, Defendant objects to this request to the extent that it seeks Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup

tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and costs associated with a search of these documents.

Eighth, Defendant objects to this request as overbroad and unduly burdensome to the extent that it seeks documents sent to or from the FAA Office of Chief Counsel, private FAA outside counsel, Department of Transportation Office of General Counsel, or Department of Justice litigation counsel. It would be unduly burdensome and not proportional to the needs of this litigation to review attorney documents and log all privileged documents "related to" third-party inquiries and responses. Defendant declines to search attorney communications for information responsive to this Request or log such documents.

Ninth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged

documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before June 24, 2022 and concluding on or before January 27, 2023. Following negotiations and an agreement between the Parties on key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 5:** Please produce Documents related the FAA's or the Department of Transportation's communications with members of Congress from 2010 through 2016 concerning ATC hiring or the CTI program. For clarification this Request includes but is not limited to the FAA and Department of Transportation's internal analysis of Congressional proposals for ATC hiring or the CTI program, and technical analysis or other support provided to members of Congress.

**Response to Request for Production No. 5:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document.

Second, Defendant objects to Plaintiffs' request for documents related to any Congressional proposal for ATCS hiring or the CTI program after February 2014. None of that information is relevant to Plaintiffs' claim that the FAA's 2014 hiring process was intentionally discriminatory or Defendant's defenses thereto. As such, the request is not proportional to the needs of this case and the burden or expense of the proposed discovery outweighs its likely benefit. Defendant will not search for documents related to any Congressional proposal for ATCS hiring or the CTI program after February 2014. Defendant will search for correspondence with Congress between March 2014 and December 2016 only to the extent it may concern the 2014 ATCS hiring process.

Third, Defendant objects to this request to the extent that it seeks documents regarding the Controller Workforce Plans reported to the Senate Committee on Commerce, Science, and Transportation and the House of Representatives Committee on Transportation and Infrastructure each year. Defendant will produce the reports, but it would be unduly burdensome and not proportional to the needs of the litigation to collect documents regarding the development of each report.

Fourth, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and costs associated with a search of these documents.

Fifth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process

privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before June 24, 2022 and concluding on or before January 27, 2023. Following negotiations and an agreement between the Parties on key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 6:** Please produce Documents related to the FAA's consideration from March 2012 through February 9, 2014, of whether to continue to use or to select from, or whether to close or otherwise terminate or negate any candidate, applicant, or referral lists for ATC hiring, including but not limited to any list, inventory, or roster of CTI students or CTI Graduates or other ATC hiring sources or lists that had been generated for any anticipated ATC centralized selection panel.

**Response to Request for Production No. 6:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document.

Second, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email

17

folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and costs associated with a search of these documents.

Third, Defendant objects to this request as overbroad and unduly burdensome to the extent that it seeks documents sent to or from the FAA Office of Chief Counsel, private FAA outside counsel, Department of Transportation Office of General Counsel, or Department of Justice litigation counsel. It would be unduly burdensome and not proportional to the needs of this litigation to review attorney documents and log all privileged documents "related to" the subject of this Request. Defendant declines to search attorney communications for information responsive to this Request or log such documents.

Fourth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before June 24, 2022 and concluding on or before January 27, 2023. Following negotiations and an agreement between the Parties on

key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive

documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after

the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 7:** Please produce Documents related to changes made or recommended to be made in the ATC hiring process from January 2010 to June 2016, including but not limited to evaluation of recommendations made by the IRP; use or elimination of geographic preferences; use or elimination of centralized selection panels; use or elimination of candidate/applicant interviews; and considerations of potential and actual benefits and drawback from changes in selecting, managing, or eliminating hiring sources or methods such as the use of CTI- specific ATC vacancy announcements.

**Response to Request for Production No. 7:**

Defendant incorporates by reference the forgoing general objections and objections to instructions

and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive

document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate

and compare all copies of a particular document.

Second, Defendant objects to Plaintiffs' request for documents and information related to any

changes to the ATCS hiring process after February 2014. None of that information is relevant to Plaintiffs'

claim that the FAA's 2014 hiring process was intentionally discriminatory or Defendant's defenses thereto.

As such, the request is not proportional to the needs of this case and the burden or expense of the

proposed discovery outweighs its likely benefit. Defendant will not search for documents related to any

changes made or recommended to be made in the ATCS hiring process after February 2014.

Third, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus

Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and

not proportional to the needs of this case to restore information for many custodians from all available

monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved

monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May

2014, which are stored in climate controlled conditions by a third party. To completely restore the available

documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and costs associated with a search of these documents.

Fourth, Defendant objects to this request as overbroad and unduly burdensome to the extent that it seeks documents sent to or from the FAA Office of Chief Counsel, Private FAA Outside Counsel, Department of Transportation Office of General Counsel, or Department of Justice litigation counsel. It would be unduly burdensome and not proportional to the needs of this litigation to review attorney documents and log all privileged documents "related to" any changes made or recommended to be made in the ATCS hiring process from January 2010 to June 2016. Defendant declines to search attorney communications for information responsive to this Request or log such documents.

Fifth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email

repositories and will produce those documents on a rolling basis starting on or before June 24, 2022 and

concluding on or before January 27, 2023. Following negotiations and an agreement between the Parties on

key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive

documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after

the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 8:** Please produce Documents provided, received, presented to/from, or reflecting or memorializing meetings with, the NBCFAE, the NEF, and/or the FAA's Leadership and Career Development Partnership related to the hiring or retention of African Americans, analysis of diversity in the FAA or specific FAA departments or lines of business, analysis of diversity in the ATC position, potential changes in hiring processes for the ATC position, the Barrier Analysis, the Extension Report, the Biographical Questionnaire, affirmative action, or MD 715.

**Response to Request for Production No. 8:**

Defendant incorporates by reference the forgoing general objections and objections to instructions

and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive

document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate

and compare all copies of a particular document.

Second, Defendant objects to Plaintiffs' request for documents related to the ATCS hiring process

after February 2014. None of that information is relevant to Plaintiffs' claim that the FAA's 2014 hiring

process was intentionally discriminatory or Defendant's defenses thereto. As such, the request is not

proportional to the needs of this case and the burden or expense of the proposed discovery outweighs its

likely benefit. Defendant will not search for documents related the ATCS hiring process after February

2014.

Third, Defendant objects to Plaintiffs' request for documents regarding hiring, retention, or

diversity for FAA positions other than the ATCS job series. Information about other job series at the FAA

is not relevant to the claims or defenses in this case.

Fourth, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus

Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and costs associated with a search of these documents.

Fifth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before May 18, 2022 and concluding on or before December 15, 2022. Following negotiations and an agreement between the Parties

on key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive

documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after

the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 9:** Please produce Documents regarding strategic plans, major programs, significant objectives, or MD 715 compliance initiatives of the FAA OCR and/or HR, including but not limited to reports those departments provided to the FAA Administrator or his/her staff; reports created by the leader of each of those departments to provide to the Executive Department, Congress, or other third-parties; awards, commendations, bonuses, or other similar official performance recognition provided to the leader of each of those departments; and the annual or other periodic performance evaluations provided to the Assistant Administrators and their direct reports.

**Response to Request for Production No. 9:**

Defendant incorporates by reference the forgoing general objections and objections to instructions

and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive

document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate

and compare all copies of a particular document.

Second, Defendant objects to Plaintiffs' request for documents and information as vague, since the

terms "strategic plans," "major programs," "significant objectives," and "reports" are not defined. This

request is also overbroad because these two FAA offices could have any number of plans, programs,

objectives, or reports that have nothing to do with ATCS hiring. Defendant construes this request to seek

only official reports to the Office of the Administrator, other parts of the Executive Department, or

Congress regarding ATCS hiring or ATCS employment.

Third, Defendant objects to this Request to the extent that it seeks documents related to the ATCS

hiring process after February 2014 and documents unrelated to ATCS hiring process. None of that

information is relevant to Plaintiffs' claim that the FAA's 2014 hiring process was intentionally

discriminatory or Defendant's defenses thereto. Such documents and information are not proportional to

the needs of this case, considering the importance of the issues at stake in the action, and the burden or

expense of the proposed discovery outweighs its likely benefit. Defendant will not search for documents

related the ATCS hiring process after February 2014, or any documents unrelated to the ATCS hiring process.

Fourth, Defendant objects to Plaintiffs' request for performance-related information of various employees from 2010 through 2016. That information is not relevant to Plaintiffs' claim that the FAA's 2014 hiring process was intentionally discriminatory or Defendant's defenses thereto. Such documents and information are not proportional to the needs of this case, considering the importance of the issues at stake in the action, and the burden or expense of the proposed discovery outweighs its likely benefit.

Fifth, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and costs associated with a search of these documents.

Sixth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before May 18, 2022 and concluding on or before December 15, 2022. Following negotiations and an agreement between the Parties on key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 10:** Please produce Documents created between 2010 and 2019 regarding or reflecting the FAA's analysis, including but not limited to CAMI's analysis, of the use or potential use of Biographical Data in selecting ATCs or correlation between ATC applicant or employee Biographical Data and ATC job performance. For clarification this Request includes but is not limited to related Contract Documents; correspondence regarding the evaluation of using Biographical Data to select ATCS; research explicitly considered in creating, weighting, scoring, or validating Biographical Data questions; solicitation of employees' participation in validating Biographical Data questions; discussion, consideration, direction or other mention of the objectives or purposes to be accomplished or the results expected to be achieved by the use of Biographical Data; progress reports, drafts, or updates regarding the conduct and implementation of Biographical Data screening tools; evaluations, analyses, reports, responses or other consideration of the implementation of and results obtained from the use of Biographical Data screening tools; materials created or considered by the BAIT Team or the ESC; and all analysis and discussion of changes required to utilize Biographical Data in an ATC hiring process.

**Response to Request for Production No. 10:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to the definition of the included term Biographical Data for the reasons stated above.

Second, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate

and compare all copies of a particular document.

Third, Defendant objects to Plaintiffs' request for documents created after February 2014 as none of those documents is relevant to Plaintiffs' claim that the FAA's 2014 hiring process was intentionally discriminatory or Defendant's defenses thereto, unless they specifically review the FAA's actions in 2014. Such documents are not proportional to the needs of this case, considering the importance of the issues at stake in the action, and the burden or expense of the proposed discovery outweighs its likely benefit. Defendant will not search for documents created after February 2014 in response to this Request, except those documents that specifically review or address the FAA's actions in 2014.

Third, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and

costs associated with a search of these documents.

Fourth, Defendant objects to this request as overbroad and unduly burdensome to the extent it seeks "Contract Documents" as described in Definition No. 14. CAMI is part of FAA and primarily staffed by FAA employees. To the extent that any contractors participated in a CAMI study responsive to this request, there is no apparent reason that the details regarding their employment contract would be relevant to any claim or defense in this case. Defendant declines to search for "Contract Documents" under this request.

Fifth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before June 24, 2022 and concluding on or before January 27, 2023. Following negotiations and an agreement between the Parties on key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 11:** Please produce Documents reflecting any analysis of the aggregate selection, training, career progression, or diversity of ATCs hired from January 1, 2006 through December 31, 2016 or financial years 2006-2016, not including individual employment records of ATC applicants or employees. This Request includes, but is not limited to, analysis or discussion of ATC selection rates by hiring source, demographic, or vacancy announcement; FAA Academy performance by hiring source, demographic, or vacancy announcement; training success or failure rates of ATCs by hiring source, demographic, or vacancy announcement; facility level assignments of ATCs by hiring source, demographic or vacancy announcement; achievement of CPC status by hiring source demographic, or vacancy announcement; time to achieve CPC status by hiring source demographic, or vacancy announcement; and retention or attrition rates and causes by hiring source, demographic, or vacancy announcement.

**Response to Request for Production No. 11:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document.

Second, Defendant objects to Plaintiffs' request for documents relating to the ATCS hiring process after February 2014 as none of those documents is relevant to Plaintiffs' claim that the FAA's 2014 hiring process was intentionally discriminatory or Defendant's defenses thereto. As such, the request is not proportional to the needs of this case and the burden or expense of the proposed discovery outweighs its likely benefit. Defendant will not search for documents related to any ATCS hiring process after 2014.

Third, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in

a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and costs associated with a search of these documents.

Fourth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before May 18, 2022 and concluding on or before December 15, 2022. Following negotiations and an agreement between the Parties on key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 12:** Please produce Documents evidencing correspondence to, from, between, or among Mamie Mallory, Shaun Sanders, Lenard Roosevelt, Ronald Bagley, Shelton Snow, Paquita Bradley, Harnetta Williams, Carolyn Bostick, Ricky Cannon, Courtney Wilkerson, John Scott, Brandon Fleener, Donnie Simons, or Sasha Johnson mentioning 2152, disparate impact, disparate treatment, Barrier Analysis (or BA), Extension Report, Biographical Questionnaire or (BQ), Herbert Wong, Outtz, Hanges, Team 7 (or T7), Congressional Black Caucus (or CBC), APT Metrics, biographical assessments, AT-SAT, CTI, BAIT, or ESC.

**Response to Request for Production No. 12:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document.

Second, Defendant objects to general searches for communications to or from Civil Rights professionals using the terms "disparate treatment" and "disparate impact" as these terms could result in location of a multitude of documents that are unrelated to the allegations in this case.

Third, Defendant objects to this request as overbroad in the way it includes APT Metrics employees John Scott and Brandon Fleener. For example, it asks for all correspondence "from, between, or among" these two individuals that mentions "APT Metrics," which likely includes every email they sent with a signature block. It also asks for all correspondence mentioning 2152, which would sweep in the work APT Metrics did on a job analysis of the 2152 job series to support changes to the 2015 and subsequent ATCS hiring processes. Moreover, internal communications between APT Metrics employees are irrelevant to determine FAA's motives.

Third, Defendant objects to a search for correspondence before 2010 or after 2014 as they do not appear to be relevant to the allegations in this case. As such, the request for correspondence before 2010 or after 2014 is not proportional to the needs of this case and the burden or expense of the proposed discovery outweighs its likely benefit.

Fourth, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that

is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and costs associated with a search of these documents.

Fifth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before June 24, 2022 and concluding on or before January 27, 2023. Following negotiations and an agreement between the Parties on key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 13:** Please produce Documents related to the success, evaluation, or criticism of the CTI program, particularly as it relates to comparisons of job performance of CTI Graduates or persons hired through CTI ATC vacancy announcements versus other hiring sources/applicants or the diversity of CTI Students. This request includes information provided to the FAA by the CTI schools in 2010-2014 regarding the diversity, race, national origin and gender of the students enrolled in the CTI program and drafts of reports evaluating the CTI program.

**Response to Request for Production No. 13:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document. Second, Defendant objects to this request on the ground that "success, evaluation, or criticism of the CTI program" is vague. Defendant construes this request not to include documents responsive to Request Nos. 1 and 2, but instead to concern studies conducted by CAMI and ATO Safety and Technical Training.

Third, Defendant objects to this Request as vague and overbroad to the extent that it could be construed to seek individual performance data regarding FAA employees rather than summaries or analyses of such data. Because this request seems to concern reports aggregating or analyzing data, Defendant does not construe it to seek individual performance data from official personnel folders. Moreover, it would be an unnecessary intrusion on the privacy of third parties and not proportional to the needs of the case to collect individual performance data for all ATCS because that information is so attenuated from Plaintiffs' claims.

Fourth, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more

than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have

estimated to the Department of Justice that although they could process the same number of custodians in

a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost

millions of dollars. Subject to and without waiving this objection, Defendant will undertake a targeted

search of the above-referenced backup tapes once the parties have negotiated key words, custodians, and

costs associated with a search of these documents.

Fifth, Defendant objects to this request to the extent that it calls for the production of materials

protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process

privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged

documents responsive to this request and not already produced in this case as follows. Defendant is in the

process of collecting documents that are not contained on email backup tapes or on post-May 2014 email

repositories and will produce those documents on a rolling basis starting on or before June 24, 2022 and

concluding on or before January 27, 2023. Following negotiations and an agreement between the Parties on

key words, custodians, timeframes, and costs, Defendant will produce non-privileged responsive

documents stored on backup tapes or on post-May 2014 email repositories within a reasonable time after

the Parties complete conferring.

**REQUEST FOR PRODUCTION NO. 14:** For any ATC applicant given a tentative offer letter as a
result of the 2014 Vacancy Announcement, please produce Documents reflecting failure of required pre-
employment screenings (not including personal medical records other than a conclusion of
disqualification), entry on duty date, FAA Academy performance, ATC training success or failure, ATC
facility placements, promotions, achievement of Certified Professional Controller status, and termination
through 2021.

**Response to Request for Production No. 14:**

Defendant incorporates by reference the forgoing general objections and objections to instructions

and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request as seeking information irrelevant to the claims or defenses

of the parties on the merits. This request appears relevant only to any potential individualized relief class members may obtain, which has been bifurcated from this stage of the case.

Second, Defendant objects to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document. Indeed, during the class certification discovery period, Defendant produced data responsive to many aspects of this request. *See, e.g.*, FPPS - Employment History of 33537 Selectees.xls.

Third, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Defendant declines to search for or produce more documents responsive to this request during this stage of the case.

**REQUEST FOR PRODUCTION NO. 15:** Please produce Documents reflecting the FAA's document retention, management, backup, or destruction policies. Responsive documents will include any specific OCR/HRM/CAMI/ATO document retention, management, backup, or destruction policies; steps taken to preserve or migrate data when the FAA changed email applications in approximately 2013–2014, a catalog of Lotus Notes backup tapes, and documentation regarding the time required or costs associated with restoring Lotus Notes email from backup tapes.

**Response to Request for Production No. 15:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request to the extent that it seeks all copies of a responsive document. It is unduly burdensome and not proportional to the needs of the case for Defendant to locate and compare all copies of a particular document.

Second, Defendant objects to this request as vague in that it is unclear what Plaintiff means by a "catalog of Lotus Notes backup tapes." Defendant construes this term to encompass a database of information about relevant backup tapes. FAA accesses information about the backup tapes through an

application called Backup Exec that has no export features. It would be unduly burdensome to replicate all of the information in Backup Exec where most of FAA's backup tapes are not relevant to the custodians at issue in this case.

Third, Defendant objects to this request as overbroad and unduly burdensome to the extent that it seeks all documents regarding FAA's preservation and migration of data when FAA transitioned from Lotus Notes to Microsoft Outlook. FAA has explained that it has preserved monthly backup tapes from May 2008 through May 2014. Collection of extensive technical documentation regarding this transition of IT infrastructure is not relevant to the claims or defenses in this case.

Fourth, Defendant objects to this request as overbroad and unduly burdensome to the extent that it seeks agency-wide "document retention, management, backup, or destruction policies," or such documents for the Office of Civil Rights, Human Resources, CAMI, or the Air Traffic Organization. Many aspects of the FAA's or these individual offices' document policies are irrelevant to this case. Defendant will search only for document policies relevant to ATCS hiring, CAMI industrial psychology research, the CTI Program, and the Office of Civil Rights.

Fifth, Defendant objects to this request to the extent that it seeks all potentially responsive Lotus Notes documents from May 2014 or prior stored on backup tapes. It would be unduly burdensome and not proportional to the needs of this case to restore information for many custodians from all available monthly backup tapes in an attempt to locate information responsive to this request. FAA has preserved monthly magnetic backup tapes for its Lotus Notes mail servers for the 72 months from May 2008 to May 2014, which are stored in climate controlled conditions by a third party. To completely restore the available documents in one individual's email folder, one would need to collect up to 72 monthly copies of the email folder and deduplicate them. To locate each monthly email folder, FAA must identify the regional server that contained the individual's mail folder at the relevant point in time, then retrieve from third-party storage the backup tapes associated with that region for that month. Thus, a technician must review multiple backup tapes to locate the mail folder for the relevant individual custodian, using technology that

is very slow to process this volume of data. For example, under FAA's existing capacity, it would take more than four years to restore the Lotus Notes documents for 50 custodians, and outside vendors have estimated to the Department of Justice that although they could process the same number of custodians in a few months, identifying, restoring, and deduplicating the backup tapes for such custodians would cost millions of dollars.

Sixth, Defendant objects to this request to the extent that it calls for the production of materials protected by the attorney-client privilege, attorney work product doctrine, and/or deliberative process privilege. Defendant expressly declines to produce any privileged material in response to this request.

Subject to and without waiving the forgoing objections, Defendant will produce non-privileged documents responsive to this request and not already produced in this case as follows. Defendant is in the process of collecting documents that are not contained on email backup tapes or on post-May 2014 email repositories and will produce those documents on a rolling basis starting on or before June 24, 2022 and concluding on or before January 27, 2023.

**REQUEST FOR PRODUCTION NO. 16:** Please produce Documents the FAA intends to reply upon to seek summary judgment or at trial as the basis for denying plaintiffs' allegations or as the basis for an affirmative defense.

**Response to Request for Production No. 16:**

Defendant incorporates by reference the forgoing general objections and objections to instructions and definitions. Defendant specifically objects to this request as follows:

First, Defendant objects to this request as ambiguous to the extent it refer to documents that he intends to "reply upon." Defendant construes to this to refer to documents he intends to "rely upon."

Second, Defendant objects to this request as premature. Defendant lacks sufficient knowledge to respond to this request as the current deadline for filing a motion for summary judgment is in July 2024, *see* ECF No. 151.

Third, Defendant objects to this request on the ground that it calls for the production of materials protected by the attorney work product doctrine. Defendant expressly declines to produce any privileged

material in response to this request.

Fourth, Defendant objects to this request to the extent that it calls for the production of documents already produced in this litigation or filed on the Court's docket.

For the foregoing reasons, Defendant declines to produce documents pursuant to this request.

Dated: April 18, 2022                                    Respectfully submitted,

                                                         BRIAN M. BOYNTON
                                                         Principal Deputy Assistant Attorney General

                                                         CARLOTTA P. WELLS
                                                         Assistant Director
                                                         Civil Division, Federal Programs Branch

                                                         */s/ Galen N. Thorp*
                                                         GALEN N. THORP (V.A. Bar No. 75517)
                                                         Senior Trial Counsel
                                                         MICHAEL DREZNER (V.A. Bar No. 83836)
                                                         ALEXANDRA R. SASLAW (D.C. Bar 1618175)
                                                         Trial Attorneys
                                                         U.S. Department of Justice
                                                         Civil Division, Federal Programs Branch
                                                         1100 L Street NW
                                                         Washington, DC 20530
                                                         Telephone: (202) 514-4781
                                                         Facsimile: (202) 616-8470
                                                         Email: galen.thorp@usdoj.gov

                                                         *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that the forgoing document was served by e-mail on counsel for plaintiffs on April 18, 2022.


                                    <u>/s/ Galen N. Thorp</u>
                                      Galen N. Thorp