UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANDREW J. BRIGIDA and MATTHEW L. DOUGLAS-COOK, <br><br> Plaintiffs, <br><br> v. <br><br> PETER P.M. BUTTIGIEG, Secretary, U.S. Department of Transportation, <br><br> Defendant | Case No. 16-cv-2227 (DLF) |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs' Motion to Compel seeks to undermine the Court's and the parties' efforts to define the scope of this case through multiple motions to dismiss and for class certification. Throughout this process Plaintiffs declined to assert any legal claims concerning alleged discrimination in FAA's air traffic controller (ATC) hiring in 2015 and 2016. Instead, Plaintiffs' class includes only certain unsuccessful applicants to the FAA's 2014 ATC vacancy announcement. *See* Certification Order, ECF No. 146 (Feb. 1, 2022). And Plaintiffs' surviving legal claims exclusively assert that the FAA intentionally discriminated against the class when it announced its decision to stop using its legacy hiring process at the end of 2013 and used an interim hiring process in February 2014 (especially a newly-designed Biographical Assessment). Despite the law of this case, Plaintiffs seek discovery of everything FAA considered, commented on, and decided regarding ATC hiring for more than two years after the allegedly discriminatory action at issue. The Court should not countenance discovery that is plainly not only irrelevant but also disproportionate to the needs of the case. Accordingly Plaintiffs' motion should be denied.

## BACKGROUND

Given this Court's familiarity with the history of the FAA's air traffic controller hiring processes, the relevant background is summarized briefly. The FAA has long studied and frequently adjusted its hiring processes for new air traffic controllers. As relevant here, in 2011, the FAA convened an outside panel to evaluate ATC selection, assignment, and training. The panel suggested changes to centralized selection panels, interviews, and other aspects of the FAA's existing hiring process. In 2012 and 2013, pursuant to Equal Employment Opportunity Commission (EEOC) directives, the FAA worked with outside consultants on analyses of whether the controller hiring process imposed barriers to equal opportunity. The FAA's consultants also analyzed the feasibility of the 2011 panel's recommendations. In mid-2013, the FAA formed an Executive Steering

Committee and an implementation team to consider changes to the air traffic controller hiring process.

Due to the 2013 budget sequestration, *see* 78 Fed. Reg. 14633 (Mar. 1, 2013), the FAA Administrator implemented a hiring freeze from March 1st through December 2013 and the FAA Academy was closed.  When the hiring freeze ended, the Executive Steering Committee decided to implement an interim hiring process for 2014 to immediately address some of the identified barriers to equal opportunity, with the expectation that additional changes would be implemented in later years. On December 30, 2013, the FAA provided the Collegiate Training Initiative (CTI) schools with a detailed outline of the plan for the interim hiring process.  In February 2014, the FAA issued a single nationwide vacancy announcement open to all U.S. citizens.  All applicants were required to take the Biographical Assessment ("BA") as a threshold screening tool, which was based on questions the FAA had long asked new controllers and correlated with success in the position. Applicants who passed the BA then took the AT-SAT (except for a portion that had lost its validity) and were ranked based on a weighted composite of the BA, AT-SAT, and veterans' preference.

After the 2014 interim hiring process was concluded, the FAA's consultants completed a job analysis of the controller position which was used both to revise the Biographical Assessment for 2015 and to develop a replacement for the AT-SAT that has been used from 2016 to the present. The FAA also fielded many inquiries and proposals from Congress in advance of the July 2016 enactment of Public Law No. 14-190, which directed further changes to the ATC hiring process, including creating a hiring pool of CTI graduates and veterans and prohibiting use of a biographical assessment for that pool.  *See* Pub. L. No. 114-190, Title II § 2106 (codified at 49 U.S.C. § 44506(f)). In August 2016, the FAA implemented the statutory changes.  *See, e.g.,* ECF No. 141-1 (Exs. I, L). Congress has continued to direct further changes to the ATC hiring process.  *See* Pub. L. No. 115-

141, Div. M, Title I § 108, 132 Stat. 348, 1047 (Mar. 3, 2018); Pub. L. No. 116-92, Div. A, Title XI § 1132, 133 Stat. 1198, 1615 (Dec. 20, 2019).

## LEGAL STANDARD

A discovery request must be "relevant *and* 'proportional to the needs of the case.'" *Oxbow Carbon & Mins. LLC v. Union Pac. R.R.*, 322 F.R.D. 1, 6 (D.D.C. 2017) (quoting Fed. R. Civ. P. 26(b)(1)); *see also Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1210 (D.C. Cir. 2020) ("[C]ourts must look carefully to the complaint's allegations to determine if the requested discovery is relevant and proportional to the needs of the case"). A party moving to compel discovery "bears the initial burden of explaining how the requested information is relevant." *Jewish War Veterans of the United States of America, Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007).

The standard governing this burden is "not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on a theory that it might conceivably become so." *United States v. Newman*, 531 F. Supp. 3d 181, 187 (D.D.C. 2021) (quoting *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997)). When a court grants discovery, "it does not imply endless discovery." *Cherokee Nation v. Dep't of Interior*, No. 1:19-cv-02154, 2021 WL 3931870, at *3 (D.D.C. Sept. 2, 2021). Rather, "discovery 'has ultimate and necessary boundaries.'" *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

If the party moving to compel can demonstrate relevance, the responding party is charged with "explain[ing] why discovery should not be permitted." *Jewish War Veterans*, 506 F. Supp. 2d at 42. Specifically, courts must avoid "'fishing expeditions', discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests." *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983). Within the context of a discrimination claim, "discovery should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame

3

involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct." *Nuskey v. Lambright*, 251 F.R.D. 3, 9 (D.D.C. 2008) (internal quotations and citation omitted); *see also Pietrangelo v. Refresh Club, Inc.*, No. 18-cv-1943-DLF-ZMF, 2021 WL 1209300, at *5 (D.D.C. Mar. 31, 2021) ("[A] discovery request 'must be . . . reasonably limited in time.'").

## ARGUMENT

Defendant has agreed to produce responsive, non-privileged documents from 2010 through 2014 as well as non-privileged post-2014 documents which contain FAA explanations to third parties concerning the FAA's adoption and implementation of the 2014 interim hiring process, such as congressional testimony.

Plaintiffs fail to carry their burden to demonstrate how wide-ranging discovery of information from 2015 and 2016 would be relevant to their claims of intentional discrimination in 2014.[1] Instead, in their Motion Plaintiffs repeatedly and vaguely claim that "intentional race discrimination" by the FAA may have occurred *after* the 2014 hiring cycle. Mot. at 1 ("Key 2014 decision-makers continued their activities to manipulate the ATC hiring process and manage other stakeholder involvement well into 2016."). Simultaneously, they claim that changes adopted after the 2014 hiring process had concluded for the FAA's 2015 and 2016 hiring processes could somehow be "probative evidence" of discriminatory intent precisely because they differed from the decisions for 2014, Mot. at 7, and even that the FAA's "reaction to and analysis of" numerous congressional proposals in 2015 and 2016 is evidence of the FAA's "motives" in 2014, *id.* at 7-8. But Plaintiffs do not and cannot demonstrate how "reactions" by the FAA of 2015-2016 are admissible and relevant to proving discrimination in 2014. Insisting upon discovery of irrelevant

---

[1] Although Plaintiffs never describe their legal claims in the Motion to Compel, it is beyond dispute that Plaintiffs solely allege discrimination in the 2014 FAA hiring process. Specifically, Plaintiffs argue that the alleged "striking" of Plaintiffs' AT-SAT scores in late 2013 and the implementation of the 2014 Biographical Assessment constituted intentional racial discrimination. *See* 4AC ¶¶ 195, 198; Pls.' Reply in Supp. of Mot. for Class Cert. at 4-9, ECF No. 143.

4

and inadmissible subsequent remedial measures simply underscores that Plaintiffs' discovery is not calculated to locate information relevant to whether the 2014 hiring process discriminated against Plaintiffs, and would not be proportional to the needs of this case.

I.      **Plaintiffs Have Failed To Establish Relevance of 2015 and 2016 Discovery**

Plaintiffs' discussion of their various Requests for Production ("RFP") fail to carry their burden to demonstrate that additional post-2014 documents responsive to those requests would be relevant.

      A.      **RFP 7: Changes Made or Recommended to ATC Hiring Process**

With regard to RFP 7, Plaintiffs seek discovery as to all changes made and recommended for the FAA hiring process *after* the sole round of hiring challenged in this case. The two further hiring rounds, in 2015 and 2016, simply have no relevance to this matter.

Indeed, Plaintiffs note that the FAA hiring process was revised in 2015 to utilize certain distinct vacancy announcements. But Plaintiffs assert only that "events leading to this decision" and the FAA's "evaluation of this decision are relevant" because the FAA previously focused on "race ratios by hiring source," among other things. Mot. at 7. While the FAA disputes Plaintiffs' contentions, Plaintiffs fail to spell out exactly why the FAA's 2015 decision to revise the hiring process, through different "focuses" or otherwise, is probative to determining whether the 2014 hiring process intentionally discriminated on the basis of race.

Plaintiffs similarly point to "lobbying" in 2015 and 2016 by certain "entities" for statutory changes in ATC hiring. Mot. at 7-8. Plaintiffs assert that the "FAA's reaction to and analysis of these proposals provides evidence of the motives and level of influence of the decision makers[.]" *Id.* But continuing the pattern, nowhere do Plaintiffs explain how the FAA's reaction to lobbying in 2015 and 2016 would be relevant to determining whether the 2014 hiring process itself was intentionally discriminatory.

Indeed, information about post-2014 discussions and changes to the hiring process, whether because of continuing development of the hiring plans, information learned in 2014, or "lobbying" by various stakeholders, does not constitute relevant evidence in this case. Instead, any alleged effort to remedy perceived deficiencies in the 2014 hiring process concerns "subsequent remedial measures," which are generally inadmissible as evidence. Federal Rule of Evidence 407 precludes evidence of subsequent remedial measures when such measures "would have made an earlier injury or harm less likely to occur." Fed. R. Evid. 407. Further, subsequent remedial measures cannot serve as a basis for culpability. *See, e.g.*, *Medina v. Dist. of Columbia*, No. CV 97-594, 2008 WL 11388705, at *6 (D.D.C. July 7, 2008) ("Rule 407 . . . bars the receipt of evidence of subsequent remedial measures to prove culpable conduct"). Subsequent changes to a policy challenged under Title VII or other discrimination laws are also considered inadmissible under Federal Rule of Evidence 407. *See, e.g.*, *Estate of Hamilton v. City of New York*, 627 F.3d 50, 53 (2d Cir. 2010) (per curiam).

To be sure, discovery is not barred solely because it could capture certain materials that may be inadmissible. But where a discovery request is focused primarily on inadmissible records, such as here, and where Plaintiffs have failed to demonstrate the relevance of such materials, it is clear that discovery of such information is disproportionate to the needs of the case. *See Shaker v. Champion Petfoods USA Inc.*, No. 18-13603, 2020 WL 6887449, at *2 (E.D. Mich. Nov. 24, 2020) (explaining that while "Rule 407 governs admissibility of evidence" the rule "still implicates proportionality" and accordingly rejected in part discovery request for materials "on a topic that may never be admitted").

### B. RFPs 1–4, 8, 12: Documents addressing Barrier Analysis, Extension Report, BQ

Plaintiffs first argue that because the FAA "continued to invoke and implement the Barrier Analysis and Extension Report" in 2015 and 2016, Mot. at 6, discovery of all discussions regarding the ATC hiring process are relevant. But they also acknowledge that "[e]ven today, the FAA is implementing Barrier Analysis recommendations." Mot. at 1. Relevance cannot be set for years

6

after a challenged action merely because an employer continues to implement recommendations from long ago. Plaintiffs aver that "[t]he FAA's actions, its explanations for its actions, and its claims of success all provide evidence of the motive underlying the 2014 hiring process." *Id.* at 7. Assuming this Court could deduce to which "actions," "explanations" and "claims of success" Plaintiffs are referencing, Plaintiffs would still fail to establish how 2015-2016 documents on these topics would be relevant here.

Rather than explain how additional post-2014 documents in these categories would aid in resolving their claims, Plaintiffs instead surmise that a jury could be "interested" in certain alleged facts, none of which appear derived from the 2015-2016 period. For instance, Plaintiffs argue that a jury "may be interested to know the extent to which African American hiring was prioritized over operational considerations such as safety and efficiency." *Id.* Of course, the Federal Rules of Evidence – not relative juror curiosity – dictate admissibility of subsequent remedial evidence, regardless of juror curiosity. And in any event, Plaintiffs fail to explain any connection between the 2015-2016 documents they seek and this purported interest. Similarly, Plaintiffs claim that a jury should examine "the FAA's standards for making hiring process changes" and the "compromising of those standards for the 2014 hiring process." *Id.* Again, Defendants and the Court are left to guess at what "standards" Plaintiffs are citing. Regardless, Plaintiffs' desire to focus on any standards concerning the 2014 hiring process revision is itself an argument to limit discovery to documents that would actually illuminate those standards, namely those *from* 2014 and prior. Plaintiffs thus fail to present a cohesive, substantive argument as to why post-2014 documents in these categories are relevant to their claims.[2]

---

[2] Without explanation, Plaintiffs highlight a handful of documents from 2015 or 2016 that the FAA has produced in discovery. *See* Pls.' Ex. 5, 6, 11, 15, 16; *see also* Pls.' Ex. 7 and 17 (apparently produced in response to FOIA requests). Such documents do not justify broad inquiry into everything considered regarding ATC hiring during those after-the-fact years. For example, one document dated January 2015 merely provided technical documentation of the development of the

7

### C. RFPs 5, 8, 12: Communications with Congress, NBCFAE, and among Key Witnesses

Plaintiffs' discussion of RFP's 5, 8 and 12, seeking communications with Congress, the NBCFAE and certain other witnesses, similarly lacks a connection between this information and the claims in this case. Plaintiffs do not even attempt to explain why the post-2014 communications the FAA has produced or agreed to produce are insufficient or how the requested additional post-2014 communications would assist them in demonstrating that FAA's 2014 hiring process was discriminatory. For instance, Plaintiffs aver that additional post-2014 communications with Congress "can demonstrate" the fact that Congress supposedly prioritized "efficiency and safety in ATC hiring," and the FAA's "knowing denigration" of such goals in favor of "African American hiring in 2014." *See* Mot. at 8. Yet how exactly Congressional priorities after 2014 bear on this matter, Plaintiffs do not say. Nor do Plaintiffs demonstrate how post-2014 documents would demonstrate the FAA's "denigration" of certain priorities "in 2014."

The remainder of Plaintiffs' statements on this point are similarly bare assertions of relevance, or merely descriptions of discovery requests without even an attempt to demonstrate their connection to this case. *See id.* at 8-9 (claiming simply that post-2014 "communications with certain groups" on certain topics "are relevant to Plaintiffs' claims"); *id.* (noting without explanation that "Plaintiffs also seek communications" with certain persons "regarding the topics discussed above and NBCFAE efforts to influence hiring").

### D. RFPs 9-14

The remaining RFPs mentioned by Plaintiffs are described so cursorily that it is uncertain whether Plaintiffs even seek post-2014 documents for these categories. For RFP 9, "Plaintiffs assert

---

Biographical Assessment in preparation for the 2014 hiring process. *See* Pls. Ex. 6. Indeed, Defendant's good faith production of post-2014 documents that discuss the 2014 hiring process demonstrate its intent to produce discrete documents relevant to the 2014 hiring process.

8

that FAA HR/CR drove the 2014 hiring changes and interfered with other hiring recommendations." *Id* at 9. Nowhere do Plaintiffs assert if they believe that post-2014 documents in this category would be relevant to their claims. Indeed, documents on how groups within the FAA "drove the 2014 hiring changes" underscores why a 2014 limit on discovery is appropriate.

For RFPs 10-14, Plaintiffs "seek evidence that will belie the claims that the FAA CR/HR used to justify their 2014 ATC hiring changes." *Id.* But the FAA has agreed to produce documents from 2010 to 2014, along with certain post-2014 documents, but Plaintiffs do not articulate whether they request additional post-2014 documents for these categories, and certainly fail to explain the relevance of any such documents. The full career path of everyone selected in 2014 (RFP 14), post-2014 criticism or analysis of the CTI program (RFP 13), or post-2014 analysis of the biographical data or controller selection (RFP 10, 11) is not information that was available to FAA decisionmakers when they determined to implement the 2014 hiring process and therefore cannot "belie the claims" that these officials made about their reasons for doing so at the time. Similarly, while the parties are still negotiating over the search terms and custodians for electronic mail searches, FAA is amenable to searching email through the end of 2014, and Plaintiffs do not explain why references to these topics for two additional years would be relevant.

## II.     Plaintiffs' Requests are Disproportionate to the Needs of the Case

Even if Plaintiffs had somehow shown that some additional post-2014 documents could be relevant to any of their claims, the burden imposed by the expanded scope of discovery would outweigh any potential probative value of the materials at issue.

It is readily apparent that the primary evidence of the FAA's intent should be found in the contemporaneous discussions of and documents reviewed by the Executive Steering Committee (approximately 8-9 senior executives) and the Barrier Analysis Implementation Team (approximately 20 individuals from numerous FAA lines of business, the union, and FAA's outside consultant).

9

Defendant is already engaged in the substantial work involved in restoring the documents from 2013 and 2014 relevant to these two committees. And Defendant has also agreed to conduct discovery going back to 2010 for additional information relevant to these two committees' work. Though the parties are continuing to negotiate regarding search terms and custodians for electronic discovery, Defendant has conducted preliminary e-mail searches with terms and custodians that were suggested by Plaintiffs.

However, to collect and sift through documents for an additional two years would be extremely burdensome. For example, expanding Plaintiffs' proposed search terms to 2015 and 2016 for the handful of custodians sampled by Defendant would result in over 70,000 additional documents to review. *See* Exhibit 1, Declaration of Hesham Ashraf ¶¶ 10-12 (describing results for searches of up to 13 custodians). Plaintiffs seek email searches of far more than 13 custodians (their initial proposal was 55 custodians), and while these terms or custodians could be refined in future negotiations, these initial results illustrate that Plaintiffs' expanded discovery timeframe would impose a significant additional burden on Defendant. Namely, Defendant would be required to manually review tens of thousands of additional emails for both responsiveness and privilege, to say nothing of additional searches of hard copy documents and other potential repositories that would be required by an expanded discovery time frame.

In light of Plaintiffs' failure to demonstrate any relevance of additional 2015-2016 documents, and given the clear burden demonstrated even at this initial stage, Plaintiffs' sought discovery is disproportionate to the needs of the case. *Accord Prasad v. George Washington Univ.*, 323 F.R.D. 88, 95 (D.D.C. 2017) ("Plaintiff's costly proposed search, with its questionable efficacy, is disproportionate to the needs of the case.").

| | |
|---|---|
| Dated: August 4, 2022 | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General<br><br>CARLOTTA P. WELLS<br>Assistant Director<br>Civil Division, Federal Programs Branch<br><br>*/s/  Galen N. Thorp*<br>Galen N. Thorp (VA Bar No. 75517)<br>Senior Trial Counsel<br>Michael Drezner (VA Bar No. 83836)<br>Alexandra Saslaw (D.C. Bar No. 1618175)<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street NW<br>Washington, DC 20530<br>Telephone: (202) 514-4781<br>Facsimile: (202) 616-8470<br>Email: galen.thorp@usdoj.gov<br><br>*Counsel for Defendant* |