UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW J. BRIGIDA, *et al.*,

    *Plaintiff Class*,

vs.

PETER P.M. BUTTIGIEG, Secretary, U.S. Department of Transportation,

    *Defendant*.

No. 16-cv-2227 (DLF)

Plaintiffs' Reply in Support of Motion to Compel Production of

Responsive Documents Created in 2015–2016

The jury in this case will be called upon to decide two main questions: (1) was the FAA's decision to purge Class members' valid AT-SAT scores motivated by race; and (2) was the 2014 ATC hiring process and associated BQ intended to discriminate based on race. Any evidence that has any tendency to make a fact more or less probable than it would be without the evidence is relevant, so long as the fact is of consequence in answering either question. *See* Fed. R. Evid. 401. And while Plaintiffs need only establish some relevance, case law establishes that "[e]vidence demonstrating individual decisionmakers' reasons" for the challenged employment actions "is highly relevant." *See Moore v. Napolitano*, 723 F. Supp. 2d 167, 181 (D.D.C. 2010). Notably, the FAA did not wholesale object to the document requests at issue on the basis that the materials sought were entirely irrelevant. Rather, the FAA agrees to produce responsive documents from 2010–2014 but asserts that the same type of documents become irrelevant after December 31, 2014. Neither the opposition nor applicable case law supports this arbitrary distinction.

If the 2014 ATC hiring process decisionmakers pressed for race-oriented outcomes as they continued to refine the ATC hiring process in 2015–2016—particularly if they did so in a way that downplayed consideration of knowledge, skill, aptitude, or other indications of individual merit—a juror could reasonably find it more likely that the same decisionmakers discriminated on the same basis in 2014. *See Pintro v. Rosenworcel*, 554 F. Supp. 3d 14, 19–22 (D.D.C. 2021) (allowing evidence of alleged discriminatory acts by the same decisionmaker over a five-year period as evidence selections were not based on merit). If the 2014 process failed to meet the normal standards for the design and implementation of an ATC hiring process (which would logically be considered and ideally applied in 2015–2016 when further changes were being made), a reasonable juror could find the deviation from, and compromise of, standards was in furtherance of discriminatory hiring. *See Jones v. Ottenberg's Bakers*, 999 F. Supp. 2d 185, 191 (D.D.C. 2013)

("[A]n allegedly racially motivated deviation from standard procedure may raise an inference of discrimination"); *Jefferies v. Barr*, 965 F.3d 843, 858 (D.C. Cir. 2020) (reversing denial of Rule 56(d) motion due to relevance of employer's alleged failure to follow standard procedures). If the FAA's public alleged non-discriminatory justifications for the 2014 hiring process changes are belied by other non-public facts and communications, a reasonable juror could find the official justifications were pretextual, making a discriminatory motive more likely.

Further, the FAA's opening salvo, claiming that Plaintiffs are "seek[ing] to undermine the Court's…efforts to define the scope of this case" by seeking evidence of discrimination in 2015–2016, Opp. Br., ECF No. 158 at 2, is grossly unjustified, and contradicted by dozens of discovery decisions in discrimination cases. *See, e.g.*, *Pintro*, 554 F. Supp. 3d at 19–22 (denying motion *in limine* to exclude evidence related to instances of discrimination not subject to claims due to failure to exhaust administrative remedies, and noting "growing consensus" the evidence related to claims of discrimination that are not "independently actionable" are "relevant and admissible "); *Lamaute v. Power*, 339 F.R.D. 29, 39–40 (D.D.C. 2021) (evidence showing a pattern of discriminatory treatment against plaintiff's group makes plaintiff's claim more credible; plaintiff has "right to explore" defendant's potential defenses related to efforts to promote diversity); *Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 459 (D.D.C. 2002). Plaintiffs do not seek to add claims; they seek to prove their existing claims.

I.   **Plaintiffs Seek Relevant Evidence.**

The FAA's suggestion that Plaintiffs do not need documents beyond the "FAA['s] explanations to third parties concerning the FAA's adoption and implementation of the 2014 interim hiring process," Opp. Br., ECF No. 158 at 5, fundamentally misunderstands the purpose of discovery. A litigant is not required to accept an opponent's public explanation for its conduct;

if that were the case, there would be no purpose for any discovery.

Additionally, there is no merit to the FAA's argument that it must be free from providing discovery concerning the 2015–2016 ATC hiring process changes because the FAA characterizes such [unenumerated] changes as inadmissible subsequent remedial measures. Opp. Br., ECF No. 158 at 6, 7, 8. First and most simply, evidence of subsequent remedial measures is usually relevant, which is why, for other policy reasons, it *may* be deemed inadmissible in some cases. The FAA's subsequent remedial measures argument itself demonstrates that Plaintiffs have carried their burden of proving relevance for purposes of discovery. Whether the relevance of this evidence must give way to other considerations cannot be determined until trial. Second and relatedly, the feasibility of performing adequate validation or other quality checks of the hiring changes made in 2014 is likely to be disputed and witnesses to be impeached, which would make even evidence of subsequent remedial measures admissible. *See* Fed. R. Evid. 407 ("But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving…the feasibility of precautionary measures."); *see also Mahnke v. WMATA*, 821 F. Supp. 2d 125, 152 (D.D.C. 2011) (noting admissibility of evidence of subsequent remedial measures for some purposes).

**A. RFPs 1–4, 8, 12: Documents addressing Barrier Analysis, Extension Report, BQ**

Plaintiffs' Request Nos. 1–4 seek evidence related to the Barrier Analysis, the Extension Report, and the BQ. *See* ECF No. 157-1 at 7–8. Request Nos. 8 and 12 seek, among other things, communications with the NBCFAE and among FAA, FAA contractor, and NBCFAE members concerning the Barrier Analysis, Extension Report, and BQ. Even a superficial review of the operative Complaint demonstrates that the Barrier Analysis, Extension Report, BQ, and role of the NBCFAE are central to the Plaintiffs' allegations. *See, e.g.,* ECF No. 114 ¶¶ 12, 28–31, 33, 43–45, 47–48, 54–67, 69–70, 75–76, 81, 84, 86–88, 90–91, 93–98, 100–101, 108, 115–17, 129, 131.

The FAA gives the game away by not denying that such documents are squarely relevant,

3

and by agreeing to produce them, subject to certain limitations, for 2010–2014. *See* FAA RFP Resps., ECF No. 157-18 at 7, 9, 12, 14–15, 22, 31. The insistence that the same documents are not relevant if they were generated after 2014 is illogical.

To resist discovery from 2015–2016, the FAA asserts that "[r]elevance cannot be set for years…merely because an employer continued to implement recommendations from long ago." ECF No. 158 at 7–8. But Plaintiffs do not seek discovery through the present day, even though the FAA continues to implement the Barrier Analysis. Further, the FAA fails to address cases that grant discovery of comparative instances of discrimination in cases of individual discrimination for five or even 10 years. *See, e.g., Pintro*, 554 F. Supp. 3d at 19–22 (allowing evidence of acts of discrimination spanning five years); *Lamaute.* 339 F.R.D. at 34, 38 (permitting approximately ten-year time period in discovery). Factors that make the 2015–2016 events particularly relevant include that the decision-makers from 2014, particularly the Civil Rights office leaders, were substantially the same decision-makers in 2015–2016, they were making changes to the hiring process for the same position, they were making the changes with the assistance of the same contractors, and the implementation and effects of the 2014 hiring changes continued to remain under review by Congress, the media, and internal investigators.

The FAA's claim not to know standards applicable to ATC hiring, Opp. Br., ECF No. 158 at 8, is not credible, nor does it make evidence irrelevant. Moreover, the standards used to validate the AT-SAT and to resist the implementation of other recommended hiring changes are referenced in the Complaint. *See* ECF No. 114 ¶¶ 28, 30, 33, 47, 66. The FAA also imposed validation standards on APTMetrics' 2016 ATC hiring process work, *see* ECF No. 157-15 at 5, including the Uniform Guidelines on Employee Selection Procedures (referred to in the Complaint ¶ 66) and Society for Industrial and Organizational Psychology guidelines. Whether the FAA met, or

4

deviated from otherwise applicable standards, is relevant. *See Jones*, 999 F.Supp.2d at 191.

### B. RFP 7: Changes Made to or Recommended for the ATC Hiring Process

Plaintiffs' Request No. 7 seeks evidence of changes made or recommended for the ATC hiring process from January 2010 to June 2016.[1] ECF No. 157-1 at 9. Again, the FAA did not object to this request wholesale, agreed, subject to certain limitations, to produce responsive documents for the 2010–2014 period, *see* ECF No. 157-18 at 20–21, and has produced some documents related to changes recommended in 2011. But the FAA would have the Court draw a relevance iron curtain after the stroke of midnight December 31, 2014. The FAA's arguments fail for the same reasons as those above.

The FAA argues that Plaintiffs have not shown relevance because they "fail to spell out exactly why the FAA's 2015 decision to revise the hiring process" is probative. Opp. Br., ECF No. 158 at 6. But "relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms." *Tavoulareas v. Piro*, 93 F.R.D. 11, 21 (D.D.C. 1981) (quoting C. Wright, Law of Federal Courts at 403).

Common sense dictates that the 2014 hiring process cut corners. The FAA's Barrier Analysis was not complete until May 2013. The committee created to consider the recommended changes to the hiring process was not assembled until mid-2013. ECF No. 158 at 2–3. When the FAA HR department resisted other hiring changes, it noted that validation studies would have to be commissioned or funded and would take much longer than six months—more like 18 months. ECF No. 114 ¶¶ 66–67. It would have been impossible to complete that level of validation for multiple changes between mid-2013 and February 2014. Furthermore, the president of the air

---

[1] The FAA refers to an August 2016 hiring process, which it presumably includes in the "two further hiring rounds, in 2015 and 2016." Opp. Br., ECF No. 158 at 3, 6. Further demonstrating Plaintiffs' reasonableness, the instant Request only seeks documents through June 2016.

5

traffic controllers' union testified before Congress that certain validation did not occur. P. Rinaldi, Written Testimony before House of Representatives Subcommittee at 4, June 16, 2016. Deviation from normal standards in order to rush multiple hiring process changes into place in February 2014 can raise an inference of discrimination.

Moreover, common sense indicates that examining what the FAA changed for the 2015 hiring process, how it responded to other proposed changes, and the steps taken to modify the hiring process will reveal what sort of validation and other evaluation of the proposed hiring changes would have been standard or feasible before the FAA slammed the 2014 BQ into place to screen out some of the most qualified non-African American candidates. The FAA does not dispute that it continued to make changes to the ATC hiring process but claims that such changes were subsequent remedial measures. Opp. Br., ECF No. 158 at 7. Whatever they were, the changes made and the reasons for the changes are relevant. Discovery of such evidence is appropriate. *See State of Ariz. v. Reno*, 887 F. Supp. 318, 322–23 (D.D.C. 1995) (evidence that officials considered but rejected an option because the option might lead to the appointment of an allegedly racially disfavored person would be "highly relevant to determining whether [the option selected] was motivated by a discriminatory purpose").

### C.  RFPs 5, 8, 12: Communications with Congress, NBCFAE, and Key Witnesses

Plaintiffs' Request No. 5 seeks communications with members of Congress concerning ATC hiring or the CTI program. *See* ECF No. 157-1 at 9. Request No. 8 seeks communications with the NBCFAE, NEF, and the Leadership and Career Development Partnership, another FAA diversity-oriented group, related to the Barrier Analysis, Extension Report, BQ, hiring of African Americans, FAA diversity, the ATC hiring process, affirmative action, and MD715. *Id.* at 9–10. Request No. 12 seeks communications among key decision-makers or their contractors and NBCFAE members related to the Barrier Analysis, Extension Report, BQ, discrimination, the

NBCFAE's lobbying for focused hiring of African Americans, the use of biographical assessments, the AT-SAT, the CTI program, and the teams assembled to oversee and implement the 2014 ATC hiring changes. Plaintiffs incorporate their arguments above. Indeed, applying common sense and a cursory review of the Amended Complaint, the relevance of these requests should be self-evident, and the FAA does not argue otherwise for 2010–2014.

As to Request No. 5, the FAA does not dispute that communications related to Congressional support for the NBCFAE and an emphasis on African American hiring are relevant. Further, the request itself states that part of the purpose is to obtain FAA analysis of ATC hiring or CTI program proposals. The FAA's analysis will show what objectives in ATC hiring the FAA prioritized and what it considered less important. If the FAA resisted Congressional efforts to prioritize education (including the CTI program) and experience and instead preferred to keep bare minimum qualifications and elevate considerations of race, Plaintiffs' claims of discrimination are further buttressed—by definition, such evidence is relevant.

The FAA does not address Plaintiffs' prior argument regarding the relevance of Request No. 8. *See* Opp. Br., ECF No. 158 at 9. In any event, Plaintiffs allege that FAA HR and Civil Rights (CR) offices drove changes to the ATC hiring process, that FAA HR/CR was heavily influenced by the NBCFAE; the FAA's communications with the NBCFAE and similar special interest groups are relevant to show the priority the FAA placed on race-conscious hiring, the influence these departments had and yielded to, and the lengths to which the FAA was willing to go to emphasize consideration of race and downplay the benefits of education, aptitude, dedication, experience, and other individual merits.

Likewise, the Amended Complaint and the prior briefing should be sufficient to demonstrate that communications between the FAA HR/CR, their contractors, and the NBCFAE

7

members related to the Barrier Analysis, Extension Report, BQ, discrimination, the ATC position, the use of screening mechanisms that could be applied in ATC hiring, and the teams implementing ATC hiring changes are relevant to Plaintiffs' claims. Plaintiffs' Complaint addresses each of these topics as they relate to the FAA's discrimination. The role of each individual, their department, their employer, or their membership organization is also outlined in the Complaint. The FAA does not deny that the individuals targeted in Request No. 12 were involved with the FAA HR/CR, NBCFAE, or 2014 ATC hiring process changes and related fall-out.

### D. RFP 9: FAA OCR And HR Strategic Plans, Programs and Objectives

Plaintiffs' Request No. 9 seeks documents related to the strategic plans and objectives of the FAA HR/CR departments. ECF No. 157-1 at 10. Plaintiffs also seek documents related to MD 715 compliance initiatives. *Id.* As explained above, the motives of the FAA HR/CR offices are central to the Plaintiffs' claims. The strategic plans, significant objectives, and MD 715 compliance initiatives will provide evidence of the motives of the FAA HR/CR departments. Such evidence, whatever it is, will make Plaintiffs' claims more likely or less likely; it's relevant.

### E. RFPs 10, 11, 13, 14: Evidence Refuting or Supporting FAA HR/CR Claims

Finally, Plaintiffs have explained how the evidence in Requests 10 (regarding biodata), 11 (regarding aggregate ATC diversity and performance by hiring source), 13 (regarding the CTI program), and 14 (regarding the performance of the ATCs hired from the 2014 BQ) are meant to test the FAA's assertions, for example, that it accurately represented to various stakeholders the severity and cause of alleged EEO barriers, that the 2014 hiring changes were carefully designed to select the most qualified ATC applicants, that the FAA struck the Class members' and other CTI AT-SAT scores for procedural rather than for race-based reasons, and that the 2014 hiring process resulted in operational savings. Disproving the FAA's claims and demonstrating the

8

questionable credibility of the FAA employees' statements is relevant, making the FAA's version of events less likely and the Plaintiffs' claim of a discriminatory motive more likely.

> II. **The FAA Has Not Even Fully Attempted to Carry Its Burden to Prove that the Discovery Sought is Disproportionate to the Needs of the Case.**

The FAA does not acknowledge, let alone attempt to carry, its burden to show that the relevant evidence Plaintiffs seek is allegedly disproportionate to the needs of this case. A party resisting discovery bears the burden to "show that…a discovery request would impose an undue burden or expense or is otherwise objectionable." *See Oxbow Carbon & Minerals LLC v. Union Pac. R.R.*, 322 F.R.D. 1, 3 (D.D.C. 2017); *see also, e.g., U.S. v. Kellogg Brown & Root Servs.*, 284 F.R.D. 22, 33 (D.D.C. 2012) ("the burden is on refusing party to show that the movant's request is burdensome, overly broad, vague, or outside scope of discovery.").

Courts examine six factors to determine whether a discovery request is proportional: "(1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Oxbow Carbon*, 322 F.R.D. at 6; *see also, e.g., Lamaute*, 339 F.R.D. at 35. To satisfy its burden, the party refusing to provide discovery "must make a specific, detailed showing" with specific arguments. *See Lamaute*, 339 F.R.D. at 35, 40; *U.S. v. Newman*, 531 F. Supp. 3d 181, 191 (D.D.C. 2021) (conclusory statements that burden of discovery outweighs benefits are insufficient); *Fairholme Funds, Inc. v. Fed. Housing Fin. Agency*, No. 1:13-cv-1053-RCL, 2019 WL 5864595, at *3 (Nov. 8, 2019) (government's vague assertion that producing documents would take "hundreds of hours" was insufficiently specific to prove undue burden).

The FAA, however, does not fully address any of these factors. Rather, the FAA ignores the first four factors, and then vaguely asserts that "Plaintiffs' proposed search terms" "would

9

result in over 70,000 additional documents to review." Opp. Br., ECF No. 158 at 11. But the FAA fails to explain that the search terms were intended to address all discovery requests, not merely those at issue here, and that the FAA unilaterally altered the proposed search terms, inserting numerous inapplicable "expansions" that may cause irrelevant hits. Nor does the FAA provide any, let alone a supported, estimate of time or cost to review documents, or why those burdens cannot be alleviated with automated coding or use of the Rule 502(d) order. ECF No. 54. The FAA also makes hypothetical reference to mysterious "other potential repositories" of documents, with no explanation of what those "repositories" might be or why retrieval would be burdensome.

Finally, while the FAA appears to repeatedly assume that it will be producing copious amounts of documents from 2010–2014, and that "additional" documents are not needed, that contention is unsupported. Plaintiffs served their Requests on March 4, 2022, and while the FAA promised rolling production, *see* ECF No. 157-18 at 7, thus far the FAA has made one production in May, producing less than 850 documents. Nor has the FAA engaged in the conferral process since a June 17, 2022 letter rejecting Plaintiffs' suggested search terms and custodians. The FAA provides no estimate of the volume of evidence it would produce if its objections are upheld and there is no indication the FAA has visibility into the volume of documents it may retrieve from before its 2014 conversion to Outlook. Nor does logic suggest that the evidence from 2015–2016, when the FAA was investigating and implementing new changes and responding to new inquiries and proposals regarding ATC hiring, would duplicate the evidence derived from 2010–2014.

Plaintiffs request that the FAA be ordered to produce responsive documents.

DATED: August 11, 2022

Respectfully submitted,

| | |
|---|---|
| */s/ Zhonette M. Brown* | */s/ Michael W. Pearson* |
| Zhonette M. Brown, D.C. Bar # 463407 | Michael W. Pearson, DC Bar No. 997169 |
| William E. Trachman, D.C. Bar # 502500 | CURRY, PEARSON, & WOOTEN, PLC |
| David C. McDonald, D.C. Bar # CO0079 | 814 West Roosevelt |

MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
Email: zhonette@mslegal.org

Phoenix, Arizona 85007
Telephone: (602) 258-1000
Facsimile: (602) 523-9000
Email: mpearson@azlaw.com

*Counsel for Plaintiff Class*

11