UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW J. BRIGIDA, *et al.*,

    *Plaintiff Class*,

vs.

PETER P.M. BUTTIGIEG, Secretary, U.S. Department of Transportation,

    *Defendant*.

No. 16-cv-2227 (DLF)

**JOINT STATUS REPORT**

Pursuant to the Scheduling Order dated February 23, 2022, ECF No. 151, counsel for Plaintiffs Andrew J. Brigida, Matthew L. Douglas-Cook, and the certified Class (together "Plaintiffs") and for Defendant Peter P.M. Buttigieg, in his official capacity as Secretary of Transportation, conferred and submit the following joint status report. Additionally, pursuant to the parties' agreed Class notice process, ECF No. 149-3, and the Minute Order dated February 22, 2022, Plaintiffs provide an update regarding the progress of the Class notice process.

**Merits Discovery Update**

Since the last Joint Status Report in August 2022, the parties have taken the following actions:

- On September 23, 2022, the FAA produced almost 1,000 documents, including 545 documents from Dr. Paul Hanges and 418 documents from APT Metrics. On October 12, 2022, the FAA made a supplemental production of metadata fields for previously produced documents and three documents inadvertently excluded from the May and August productions.

- On September 23, 2022, Plaintiffs produced approximately 400 documents in response to FAA's Rule 34 requests. Plaintiffs also made a supplemental production on October 18, 2022, along with a privilege log for their productions.

1

- On October 19, 2022, Plaintiffs issued subpoenas for service on three third parties.

- On October 21, 2022, the FAA produced more than 1,600 documents, including 1,167 documents from APT Metrics, and 512 documents from FAA's files.

The parties have also continued to confer via detailed letters dated August 25, September 27, and October 13, along with conference calls on September 28 and October 19, regarding the form, scope, and pace of discovery. The parties have also conferred about the effect of the Court's September 6, 2022 Order regarding documents from 2015 and 2016, ECF No. 161, on discovery plans.

Plaintiffs request that a discovery conference be held in early December to allow the parties to update the Court on the status of discovery issues, and request that the next joint status report be due one week before the conference. Defendant consents to making the next status report due in early December (instead of sixty days from this report, which falls on December 23), and does not oppose the request for a conference.

### Plaintiffs' Concerns Regarding Pace and Completeness of FAA Productions

**Pace of Document Production:** The parties are over one-third through the allotted discovery period. While Plaintiffs have not yet had the opportunity to review the documents the FAA produced on October 21, to their knowledge Plaintiffs have yet to receive sets of documents most relevant to this case, such as FAA or APT Metrics emails from 2013 or early 2014, FAA collections of email from any period, documents reflecting the development of the 2014 Biographical Questionnaire, documents reflecting the creation of the Barrier Analysis and Extension Report, documents related to the FAA's study of the use of biodata for purposes of hiring ATCSs, or any collection of documents maintained by and for the Executive Steering Committee or Barrier Analysis Implementation Team. Plaintiffs understand that the FAA has yet to fully

process even a single set of back up tapes for a single date that the FAA selected, and that the FAA has not started processing any back up tapes with email from 2013 or 2012. Moreover, for the APT Metrics documents that the FAA has started to produce, the bulk of such documents are from October 2014 or later, months after the 2014 hiring process at issue, making it appear as if the FAA is not prioritizing the most relevant documents or time periods first. Plaintiffs are thus concerned that the current pace of production will not result in the timely production of documents, will not allow the parties to make informed decisions as to what backup tapes need to be restored since the FAA had retention volume rather than time limits, and will give Plaintiffs inadequate time to analyze the documents sufficiently in time to conduct efficient depositions or to issue the most pertinent additional interrogatories.

After not substantively responding to Plaintiffs' prior February 2022 suggestion of using technology assisted review ("TAR"), *see* JSR at 3 (ECF No. 150), on October 19, 2022, during a conferral call, the FAA suggested that it is evaluating the use of TAR. Plaintiffs have significant concerns about how TAR would be implemented. One example of problems resulting from inadequate TAR processing is explained in *In re Domestic Airline Travel Antitrust Litigation*, Misc. No. 15-1404, 2018 WL 4441507 (D.D.C. Sept. 13, 2018), where the defendant produced 3.5 million "core" documents, only approximately 17% of which were responsive to document requests. The risks of under-production are also significant. The TAR process reflects various "garbage in, garbage out" risks. As months have gone by without the most relevant documents being produced, the Plaintiffs are concerned that the use of "new" technology at this stage of the discovery process will further delay production. Nonetheless, in Plaintiffs' view, many of the issues Defendant raises about TAR have only begun to be discussed among the parties, including some that were first raised

3

in the last few days, and would benefit from additional clarification and negotiation before any presentation to the Court.

Plaintiffs are willing to cooperatively explore the FAA's proposed solution but request that a discovery conference be held in early December, which will be almost half-way through the fact discovery period, to allow the parties to update the Court on the status of discovery issues. The Plaintiffs suggest that the parties submit an additional JSR one week before the discovery conference. Plaintiffs further request that the FAA continue its production of documents through the means it has been using while it explores and possibly implements TAR.

**Completeness of Discovery:** Plaintiffs also have significant concerns about the completeness of the FAA's document productions, stemming both from historic inadequate preservation of data and well as current inadequate collection, processing, and production choices.

First, the FAA failed to take adequate steps to preserve evidence, resulting in the permanent loss of irreplaceable data. Most alarmingly, the FAA allegedly imaged computer hard drives and allocated server space for approximately one-third and one-fourth, respectively, of the custodians on the parties' initial disclosure lists, as well as for other undisclosed custodians, but then "lost" the preserved data at some point in or after 2016. Over 30 hard drive images for persons with data relevant to this case, including for custodians central to this case, such as Ms. Mallory, have been lost, along with the data they contained that would not reside anywhere else, such as remnants of deleted emails, potentially remnants of not otherwise preserved "chats," and system data such as that which would evidence the sharing of information via thumb drives. Other data that may have resided on the hard drives, such as email archives, may or may not be irretrievably lost, but the data has been made more onerous to collect. The FAA also apparently did not take adequate steps to preserve data it controlled but that was in the possession of its contractors. As a result, allegedly all

data from Dr. Outtz, the author of the Barrier Analysis, has been lost, and most email data from Dr. Hanges, co-author of Barrier Analysis, also appears to be missing. Plaintiffs believe other data has also been irretrievably lost and reserve their right to seek appropriate relief after the scope of missing and available evidence can be fully evaluated.

Second, thus far the evidence provided by the FAA is also incomplete due to the FAA's apparent unwillingness to collect and process data in a thorough manner that preserves the metadata and unwillingness to provide native files that would allow Plaintiffs to benefit from the full functionality of litigation software tools. For example, rather than engaging in a professional collection of data from Dr. Hanges, the FAA just told him to locate files and emails on his own and provide them to the FAA, while acknowledging that Dr. Hanges is not a technophile.[1] As a result, items such as emails were provided in non-native form, without metadata such as sent dates, that would allow the information to be sorted chronologically. Instead, the emails and various other documents from Dr. Hanges are inaccurately dated June 2022. Additionally, the protocol originally suggested by the FAA mandates that files such as Powerpoint presentations be produced in native form, but the FAA, while providing native files for spreadsheets, initially refused to provide other native files.

Plaintiffs have repeatedly requested native files for produced documents, in part so that they are not at an information disadvantage, in part because native files, particularly of Microsoft Office applications contain latent information not available from images,[2] and in part because native files

---

[1] Moreover, from conferral Plaintiffs understand that Dr. Hanges simply searched for emails referring to Dr. Outtz, and apparently not for emails to/from FAA employees. While it was relayed that Mr. Hanges did not recall other relevant emails, simple term searches would have been appropriate to verify Mr. Hanges's recollection of communications that occurred over six years ago.

[2] *See* Sedona Principles, Third Edition: Best Practices, Recommendations, & Principles for Addressing Electronic Document Production ("[S]ome ESI in its 'native' format will contain 'user created data' that may not be apparent on the face of the document when printed, such as…speaker notes in presentation files, or 'tracked changes' in word processing files.").

enhance the presentation of search results and other functionality in Relativity, the software both parties are using for managing documents.[3] Plaintiffs are willing to provide their files in native format and expected that they had been produced in such format, but apparently had a miscommunication with their vendor. The FAA also has refused to produce native files from its own documents or from APT Metrics. Plaintiffs hope that this issue can be resolved through conferral, but in order to prevent re-processing or re-loading of data, the issue needs to be resolved before the FAA begins the bulk of its production.

Plaintiffs have other concerns, for example regarding the FAA's refusal to suggest search terms that it has gleaned from interviews with its document custodians or to request that APT Metrics produce internal correspondence related to the Biographical Questionnaire or other topics. The FAA controls these documents by virtue of its contracts with APT Metrics. If not resolved before December, such issues can be more fully presented to the Court.

## **Defendant's Response to Plaintiffs' Concerns**

In Defendant's view, many of the issues Plaintiffs raise have only begun to be discussed among the parties, including some that were first raised in the last two weeks, and would benefit from additional clarification and negotiation before any presentation to the Court.  For example, Plaintiffs raised a significant number of issues in an October 13, 2022 letter and several follow-up emails, to which Defendant is still in the process of preparing a response.  Nevertheless, Defendant provides the following general response to Plaintiffs' concerns.

---

[3] Relativity allows keyword searching with highlighted results and persistent highlighting of terms. The highlighting, however, is displayed in a native file or in extracted text, but not in images. Further, native files and extracted text have options for "Search within Document" that are not available within TIFF images. The attached Exhibit A is an example of the difference in the display of search results.

**Pace of Production:** In the last Joint Status Report, the parties outlined some of the factors impacting the FAA's ability to review and produce responsive documents. *See* Joint Status Report at 2-3, ECF No. 160 (describing issues for Lotus Notes email, Proofpoint email, and hard drives). Defendant has been working through a variety of issues and has proposed ways to accelerate review here.

*1) Lotus Notes Email.* As has long been recognized, most email regarding the development of the 2014 hiring process is located on disaster recover backup tapes. *Cf.* Joint Status Report at 3, ECF No. 150 (Feb. 22, 2022). Defendant has been upfront about unexpected difficulties processing Lotus Notes email into a reviewable format. *See* ECF No. 160 at 2. Nevertheless, as explained in its September 27, 2022 letter to Plaintiffs, the FAA has persisted and has uploaded more than 130,000 documents from the May 2014 mailboxes of sixteen custodians, including two that the Plaintiffs have described as key to their case. Those documents can now be reviewed for responsiveness and privilege and, if appropriate, produced. Defendant has also repeatedly pressed Plaintiffs for their view regarding what restoration from backup tapes may be necessary in addition to the May 2014 mailboxes (as to both custodians and date of tapes), and Plaintiffs made specific suggestions for the first time in their October 13, 2022 letter. In light of Plaintiffs' suggestions, Defendant will propose a plan for restoration of backup tapes. The volume of necessary restoration will also help Defendant determine whether a third-party vendor will be needed to promptly restore and convert the data into a reviewable format.

*2) Technology Assisted Review.* As previously explained, Defendant conducted preliminary tests of search terms proposed by Plaintiffs, *see* ECF No. 160 at 2, and has now found many of them to be significantly overbroad. Given the scale of documents likely to be collected, reviewing a large volume of nonresponsive material would tie up Defendant's resources and delay completion of

7

discovery. Likewise, refining the search terms and further testing them would take significant additional time. Instead, after conferring with e-discovery professionals, Defendant proposes to use technology assisted review (TAR) capabilities within the Relativity platform to speed the identification of responsive documents. The TAR process could be used after running Plaintiffs' search terms or without search terms in some circumstances, and then Defendant's team would review the resulting documents for relevance and privilege. *See, e.g.*, *Livingston v. City of Chicago*, No. 16 CV 10156, 2020 WL 5253848, at *2 (N.D. Ill. Sep. 3, 2020) (summarizing how Relativity's active learning process works and can be used after keyword searching). There is now "wide recognition that technology assisted review is cheaper, more efficient and superior to keyword searching." *In re Mercedes-Benz Emissions Litig.*, No. 2:16-881, 2020 WL 747195, at *6 (D.N.J. Feb. 14, 2020); *see also Livingston*, 2020 WL 5253848, at *2 (noting that "the parties agree that generally TAR is a far more accurate means of producing responsive ESI than manual review or keyword searches"). Contrary to Plaintiffs suggestion that this possibility has been raised for the first time, Plaintiffs themselves asked about "predictive coding" in an April 2022 letter, and Defendant provided a brief description of Relativity's TAR capabilities while noting that it had "not yet determined whether this case is appropriate for Relativity Active Learning." May 24, 2022 Letter at 13. Having now determined that this is the most efficient process available, Defendant is entitled to proceed with this approach. *See, e.g.*, *EEOC v. George Washington Univ.*, No. 17-CV-1978 (CKK/GMH), 2020 WL 3489478, at *11 (D.D.C. June 26, 2020) ("As *The Sedona Principles* recognize, 'a responding party, not the court or requesting party, is generally best suited to determine and implement appropriate procedures, methodologies, and technologies' to 'identify, preserve, collect, process, analyze, review, and produce relevant and discoverable ESI,' and '[n]o Federal Rule "has given judges the authority ... to dictate" ' to parties how to search their

8

documents."). Defendant will provide Plaintiffs a description of its intended TAR procedures in the coming weeks, including "how it intends to validate the review results, which . . . is sufficient information to make the production transparent." *Livingston*, 2020 WL 5253848, at *3.

Defendant has been holding off its search of several voluminous sources, including emails and individual custodian hard drives, pending an agreement between the parties agreed upon search terms. Defendant expects that its intended TAR procedure should make it resolution of the search terms much simpler. It is hoped that the parties can reach reasonable agreements about custodians and other search parameters to expedite progress going forward. Defendant also continues to collect other sources of responsive documents.

*3) APT Metrics Documents.* Defendant has been reviewing approximately 7 GB of email and documents that APT Metrics provided regarding its work for FAA in 2013 and 2014. It took longer than expected to develop and staff an efficient review process. Defendant has now produced more than 1,500 documents from this source and expects to accelerate production. However, Defendant has recently learned that the emails and documents APT Metrics are consolidating for transfer to Defendant regarding its work for FAA in 2015 and 2016 are at least three times that volume—21 GB or more. Once those documents are received, Defendant will need to assess how to review them using TAR or other tools, or whether Defendant may need to seek relief from the Court.

**Completeness:** The concerns Plaintiffs raise regarding the completeness of Defendant's preservation and discovery efforts are especially under-developed and may warrant the Court's attention only after significantly more time for the parties to confer regarding these issues.

*Unsuccessful Preservation Effort.* The FAA has preserved documents relevant to this litigation in numerous ways, including but not limited to 1) issuing litigation holds instructing

9

employees to preserve documents, 2) maintaining the Lotus Notes backup tapes since 2014, 3) implementing the Proofpoint application which keeps a copy of all email sent or received by FAA employees since May 2014 (along with additional emails as early as June 2013 for employees who converted to Microsoft Outlook early, including a member of the Barrier Analysis Implementation Team and a member of the Executive Steering Committee, the two committees involved in adopting the 2014 hiring process), and 4) imaging the hard drives of certain senior officials at their departure from FAA. In addition to these efforts, in late 2015 and 2016, the FAA began an effort to collect and copy email and other documents for custodians relevant to this case. At the direction of FAA attorneys, Proofpoint emails were collected, and individual employee hard drives and network folders were copied. Only after the FAA disclosed information about the hard drives listed as preserved in a May 25, 2022 letter to Plaintiffs, did the FAA discover that, apparently due to misunderstanding by the IT employees involved, this 2016 collection of copies of documents was not in fact maintained as intended and is no longer available. Defendant explained this discovery in its September 27, 2022 letter to Plaintiffs. Defendant will cooperate with Plaintiffs to get to the bottom of what occurred and to find alternative sources for the lost copies of information to the extent possible. However, Defendant emphasizes that FAA has advised undersigned counsel that all emails for these custodians should still be available from preserved sources. And it seems unlikely that much of the other data to which Plaintiffs refer, such as "remnants of deleted emails, potentially remnants of not otherwise preserved 'chats,' and system data" would be subject to discovery here—this is not a criminal forensic case, but an employment case about the agency's motivation as it acted through two large committees to revise a hiring process.

*Control of Third Party Documents.* Plaintiffs' complaints about how the FAA has interacted with its two contractors relevant to this case are unwarranted. First, Plaintiffs fault the FAA for not

10

pre-emptively collecting relevant documents from Outtz & Associates before Dr. James Outtz's death in March 2016. However, the FAA had no reason to expect that this third-party contractor would be unable to preserve relevant documents for purposes of this litigation. Second, Plaintiffs fault the FAA for not requiring Dr. Paul Hanges, an Outtz and Associates subcontractor, to perform a "professional collection of data." Defendant is not aware of any authority for the FAA to require Dr. Hanges to turn over his personal drives and devices that may contain relevant documents, and instead reasonably requested that he provide relevant documents as he was able. Dr. Hanges copied folders related to his work for FAA and emails to our file transfer site, and after reviewing for responsiveness and privilege, Defendant produced the documents with all available metadata intact. Plaintiffs also subpoenaed Dr. Hanges in May 2022 (and are now subpoenaing the University of Maryland) and can raise any concerns they may have about Dr. Hanges' response to their subpoena directly with him. Third, Plaintiffs think that the "internal correspondence" of APT Metrics employees (i.e., communications that do not include FAA employees) is somehow subject to FAA control for purposes of discovery. Neither Defendant nor APT Metrics share that view, and Plaintiffs may raise any demand for such documents through its June 10, 2022 subpoena to APT Metrics, where it should be weighed for relevance, proportionality, and burden to the third party.

*Form of Production.* In their October 13, 2022 letter, Plaintiffs for the first time asserted that Defendant should be producing most documents in native format in addition to TIFF, text, and metadata load files. Defendant does not believe this is a reasonable construction of the Production Specification that accompanied Plaintiffs' Rule 34 Requests. Instead, in both the class and merits discovery periods, Defendant has produced native documents where they cannot reasonably be understood in the traditional discovery format, such as Microsoft Excel spreadsheets or database files. Indeed, Plaintiffs' own document productions in August and September 2022 included no

11

native documents, which is significant because the Production Specification for Defendant's Rule 34 Requests uses language identical to Plaintiffs' Production Specification each time it refers to native documents. Nor is widespread native document production warranted here. Plaintiffs suggest they want native documents in order to see hidden content and to use Relativity's search and highlighting features. First, Defendant's e-discovery process creates TIFF images with hidden content enabled, which includes track changes; therefore the information they seek is already included in Defendant's existing production format. Second, as Plaintiffs' acknowledge, Relativity's search and highlighting features are available in the "Extracted Text" view for the material Defendant has produced. *See, e.g.*, Relativity 9.6 Documentation, Persistent Highlight Sets, https://perma.cc/BC5N-GADJ. And if Plaintiffs want more flexibility in using such features during their review, the parties can discuss production in PDF rather than TIFF format. *See, e.g.*, Relativity 10.3 Documentation, Relativity Desktop Client, https://perma.cc/4S7C-GTHA ("Multi page TIFs and PDFs can be imported into the system, but you must load them as native files.").

### Rule 37 Fees

Plaintiffs have requested that the FAA pay the fees they incurred in connection with the filing of their Motion to Compel, which the Court granted. Plaintiffs calculate such fees to be approximately $30,666.00. Defendant does not believe Plaintiffs meet the standard in Rule 37(a)(5)(A)(ii) (which prohibits a fee order where "the opposing party's . . . objection was substantially justified"); *cf. Pietrangelo v. Refresh Club, Inc.*, No. 18-1943, 2021 WL 2156504, at *4 (D.D.C. May 26, 2021) ("[A] party meets the substantially justified standard when there is a genuine dispute or if reasonable people could differ as to the appropriateness of the motion") (quoting *Cobell v. Norton*, 226 F.R.D. 67, 90-91 (D.D.C. 2005)). Plaintiffs therefore intend to file a motion pursuant to Rule 37(a)(5)(A).

**Class Notice Update**

As of October 7, 2022, Plaintiffs have emailed and/or mailed the Class Notice to all Class members. For the approximately 168 mailed notices returned as undeliverable, Plaintiffs have used a subscription-based database as well as the FAA's airmen's database to attempt to locate new contact information. New addresses were located for 139 Class members and Plaintiffs mailed replacement notices to these 139 individuals. Plaintiffs have been unable to confirm new addresses for 29 individuals with returned notices and the Parties agree that further location of Class members may await the next required Class communication.

Since the last update, one Class member opted out. A total of five Class members opted out and one putative Class member disclaimed eligibility for membership in the Class.

Finally, and solely for clarification, Plaintiffs' statement in the August Joint Status Report, ECF No. 160, that there had not been an opt-out since the last Joint Status Report (ECF No. 156) was correct, but erroneously referred to April as the date of the last Joint Status Report instead of June.

DATED: October 24, 2022

Respectfully submitted,

/s/ Zhonette M Brown
Zhonette M. Brown, D.C. Bar # 463407
William E. Trachman, D.C. Bar # 502500
David C. McDonald, D.C. Bar # CO0079
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
Email: zhonette@mslegal.org

*Counsel for Plaintiff Class*

/s/ Michael W. Pearson (with permission)
Michael W. Pearson, DC Bar No. 997169
CURRY, PEARSON, & WOOTEN, PLC

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Director
Civil Division, Federal Programs Branch

/s/  Galen N. Thorp (with permission)
Galen N. Thorp (VA Bar No. 75517)
Senior Trial Counsel
Michael Drezner (VA Bar No. 83836)
Alexandra R. Saslaw (D.C. Bar 1618175)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW

814 West Roosevelt
Phoenix, Arizona 85007
Telephone: (602) 258-1000
Facsimile: (602) 523-9000
Email: mpearson@azlaw.com

*Counsel for Plaintiff Class*

Washington, DC 20530
Telephone: (202) 514-4781
Facsimile: (202) 616-8470
Email: galen.thorp@usdoj.gov

*Counsel for Defendant*

**Plaintiffs' Exhibit A**

Search term and "Search within Document" option displayed in native file:



Search term not highlighted and "Search within Document" option not available in image:



Search term and "Search within Document" option displayed in extracted text, but page breaks and other visual clues unavailable:

