**EXHIBIT 1**
**July 5, 2022 Email from Z. Brown**

# Zhonette Brown

**From:** Zhonette Brown
**Sent:** Tuesday, July 5, 2022 10:36 AM
**To:** 'Friedrich_Chambers@dcd.uscourts.gov'
**Cc:** Thorp, Galen (CIV); Michael W. Pearson; Drezner, Michael L. (CIV); William Trachman; Saslaw, Alexandra R. (CIV); David McDonald; Erin Erhardt; Meri Pincock
**Subject:** Brigida v. U.S. DOT, 16-cv-02227-DLF - Discovery Issue Summary

Dear Judge Friedrich,

Pursuant to the Court's Minute Order dated June 27, 2022, the parties submit the following summary of their current discovery dispute. Specifically, the parties disagree about the appropriate temporal scope for discovery in this case. Plaintiffs' document requests seek documents created through 2016, while Defendant asserts that discovery, with one exception for documents specifically regarding the 2014 hiring process, should be cut off after 2014. Additionally, Plaintiffs have requested documents created as early as 2008, but Defendant objects to discovery of documents predating 2010.

## Plaintiffs' Summary

As to the 2015–2016 period, Plaintiffs believe that discovery is appropriate because during that time the FAA was continuing to implement changes to the ATCS hiring practice suggested in the 2013 Barrier Analysis and related reports. *See* FAA Opp. to Class Cert., ECF No. 75 at 15–16; *see* N. Gage Decl., ECF No. 75-2 ¶ 14. The FAA issued two ATCS vacancy announcements in 2015, one for experienced controllers who were not required to take the controversial Biographical Questionnaire, and one for inexperienced applicants, including CTI graduates, who had to take and pass a revised version of the Biographical Questionnaire. FAA employees represented to Congress that "to incorporate more long-term recommendations for hiring in 2015" the FAA "completed an Occupational Job Task Analysis and Validation" for the ATCS position, "updated the Biographical Assessment and initiated a study to replace the AT-SAT." *See* T. Bristol and R. Cannon Statement before House Committee on Transportation and Infrastructure, June 15, 2016, ECF No. 75-1 at 190. The FAA also stated that its opening of the experienced ATCS hiring path was done, in part, to "address[] the concerns identified in [the FAA's] initial reviews of the hiring process." *Id.*, *See* N. Gage Decl., ECF No. 75-2 ¶ 14 (vacancy announcement for experienced controllers issued in January 2015). During 2015 there were legislative efforts to change the ATCS hiring process and related communications from the FAA to members of Congress explaining and justifying the changes. Further, in 2015, the FAA conducted an investigation regarding alleged cheating during the 2014 ATCS hiring process, allegedly facilitated by an NBCFAE officer.

This activity continued into 2016, during which time the FAA's Executive Steering Committee, established in 2013 to make the ATCS hiring changes, continued to meet, and FAA employees testified before Congress. Ultimately in July 2016, Congress mandated changes to the ATCS hiring process. The scope and shape of changes were the subjects of numerous requests for assistance and information from the FAA by members of Congress and likely other stakeholders such as the controllers' union. The items at issue included what role, if any, biographical factors should play in the hiring process, whether military and CTI candidates would receive a hiring preference, whether military and CTI candidates should be in the same "hiring pool," and, if so, what effect that would have in light of statutory veterans' hiring preferences. In 2016, the FAA also replaced the AT-SAT with a new testing battery for ATCS candidates. The most recently posted FAA EEO report states that the FAA will be implementing changes stemming from the 2013 ATCS barrier analysis into 2023. *See* FAA OFFICE OF CIVIL RIGHTS, ANNUAL EEO PROGRAM STATUS REPORT – FISCAL YEAR 2020 at 56 (2020), https://www.faa.gov/sites/faa.gov/files/about/office_org/headquarters_offices/acr/FY_2020_MD_175_Report.pdf, (barrier analysis project for ATCS initiated Nov. 1, 2006, barrier analysis reported completed Sept. 30, 2012, action plan reported completed Sept. 30, 2013, implementing corrective actions estimated to be completed Sept. 30, 2023). During 2016, the Department of Transportation Office of Inspector General also completed an investigation into the 2014 ATCS hiring process.

1

The 2015–2016 ATCS hiring process activities were largely undertaken or supervised by the same FAA decision-makers involved with revising and administering the 2014 ATCS hiring process. As a result, related communications, reports, and analyses are likely to provide evidence of the motive and intent key to the Plaintiffs' claims of intentional discrimination. Performance of these activities represents a continued effort to implement the Barrier Analysis and demonstrates the feasibility of proper development of selection mechanisms and steps that were skipped during the implementation of the 2014 hiring process. For these and other reasons, these changes are not inadmissible subsequent remedial measures and certainly are not insulated from discovery before an informed evidentiary ruling could be made. Moreover, numerous cases in this District have recognized the relevance and even the admissibility of employment decisions similar to those at issue in a particular case. In addition to being relevant, information from 2015-2016 is proportional to the needs of the case. This case involves important social issues of discrimination addressed under Title VII, the proper heft of EEOC Management Directive 715 and whether it requires remedial discrimination, and the government's current general advocacy for the identification and removal of barriers to equal opportunity. Exec. Order No. 14,035, 86 Fed. Reg. 34,593 (June 25, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/06/25/executive-order-on-diversity-equity-inclusion-and-accessibility-in-the-federal-workforce/. The Plaintiff Class currently exceeds 900 CTI graduates with the associated potential for significant recovery of back pay and other damages. *See* ECF No. 139-33 at 33 (G. Purdue illustrative example of but-for income and benefits). The FAA has a unique informational advantage and significant resources, and the material sought addresses the same key decision-makers, facing decisions similar to those made in 2013-2014, and made within close temporal proximity. Further, Defendant has asserted no specific burden associated with the production of the requested documents beyond the presumed effort to collect the documents (from online accessible sources) and review them for production and Defendant's assumption that few documents post-dating 2014 are likely to be relevant.

As to the 2008–2010 period, Plaintiffs believe that any dispute is premature. Plaintiffs' complaint alleges that the campaign to conduct a barrier analysis and increase African American hiring began no later than 2000, ECF No. 139 ¶¶ 54–57, 63, and that the NBCFAE escalated its related efforts in 2008–2009, *Id*. ¶¶ 58–60, 62, 64. The FAA FY 2007 EEO report indicates that as early as 2006 the FAA was examining potential barriers associated with the ATCS position. Plaintiffs' Request for Production of Documents, therefore, sought documents created since 2008. Plaintiffs believe, however, that the parties should evaluate the information the FAA can provide from 2010, including any restored backup tapes, and then evaluate the likelihood that emails from 2008–2009, and particularly from a couple of key custodians, are likely to provide unique relevant evidence.

**Defendant's Summary**

This case <u>exclusively</u> concerns whether the Federal Aviation Administration (FAA) intentionally discriminated against certain non-African American applicants when it announced its decision to stop using its legacy hiring process for new air traffic controllers at the end of 2013 and when it used an interim hiring process in February 2014 (especially a newly designed Biographical Assessment). While these actions were the first steps in a series of changes FAA planned in light of its barrier analyses and other studies, Plaintiffs do not challenge any actions after February 2014 interim hiring process. Even though the decisions at issue in this case were made in 2013, in the spirit of cooperation, Defendant has agreed to search within a much broader window from 2010 through 2014 for documents the parties may use to establish the FAA's intent. Defendant has also agreed to produce non-privileged materials created after 2014 which contain FAA explanations to third parties of their adoption and implementation of the 2014 interim hiring process, such as congressional testimony. Even broader discovery outside this window would encompass material with no relevance to Plaintiffs' claims and be unduly burdensome and not proportional to the needs of this case. Yet Plaintiffs have served incredibly broad document requests and subpoenas seeking documents from 2008 through 2016, including specifically seeking all information about the development of the subsequent 2015 and 2016 hiring processes both from the FAA and from APT Metrics, FAA's contractor who developed components of those processes.

Defendant's proposed discovery window encompasses both (1) the three-year period (2010-2013) during which FAA repeatedly analyzed the legacy hiring process and deliberated about how to proceed and, thus, encompasses evidence relevant to FAA's intent at issue in this case, and (2) the full year (2014) during which FAA implemented the interim hiring process and undertook to explore further revisions to the controller hiring process.

2

By contrast, FAA's subsequent revisions to the controller hiring process in 2015 and 2016 are completely irrelevant to Plaintiffs' allegations of discriminatory intent in 2013 and 2014. Changes made after a policy is challenged under Title VII or other discrimination laws are generally considered irrelevant and inadmissible under Federal Rule of Evidence 407. *See, e.g., Estate of Hamilton v. City of New York*, 627 F.3d 50, 53 (2d Cir. 2010) (per curiam); *Stahl v. Bd. of Comm'rs of Unified Gov't of Wyandotte Cnty./Kansas City, Kansas*, 101 F. App'x 316, 321-22 (10th Cir. 2004); *Dennis v. County of Fairfax*, 55 F.3d 151, 154 (4th Cir. 1995); *Peck v. Hudson City Sch. Dist.*, 100 F. Supp. 2d 118, 122 (N.D.N.Y. 2020); *Medina v. Dist. of Columbia*, No. CV 97-594, 2008 WL 11388705, at *5-6 (D.D.C. July 7, 2008). Plaintiff Andrew Brigida's allegations of discrimination were clear no later than April 2014, when he filed his formal administrative complaint. *See* ECF No. 139-30. Accordingly, both under Rule 407 and basic logic, Plaintiffs cannot plausibly claim that the "scope and shape of [subsequent] changes" and decisionmakers' deliberations and communications in 2015 and 2016 about further changes to the hiring process "are likely to provide evidence of motive and intent key to the Plaintiffs' claims of intentional discrimination" in 2013 and 2014.

Similarly, FAA's actions before 2010 have little relevance to the reasoning and actions of the relevant FAA decisionmakers, two committees formed in mid-2013 to implement the recommendations from the barrier analyses: 1) an Executive Steering Committee of approximately 8-9 senior agency officials, and 2) a Barrier Analysis Implementation Team of approximately 20 employees and contractors. Because the period beginning in 2010 covers the time during which these officials were considering hiring options that culminated in the adoption and implementation of the 2014 interim hiring process, the communications, actions, and documents reviewed by the members of these committees from 2010 to 2014 will capture the evidence relevant to their intentions.

Moreover, collecting four additional years of potentially responsive material (2008, 2009, 2015, and 2016), which must then be reviewed and produced, would impose substantial burdens on the Defendant that are far out of proportion to the needs of this case. As acknowledged by Plaintiffs, the FAA was very busy in 2015 and 2016 with changes and potential changes to the controller hiring process, not only creating two new hiring instruments—a revised Biographical Assessment and a replacement for the AT-SAT (called the ATSA)—but also considering other changes and responding to many congressional inquiries in the leadup to the July 2016 statutory changes, which were then implemented in an August 2016 vacancy announcement. Thus, the discovery Plaintiffs seek would require review of at least tens of thousands (and possibly hundreds of thousands) of additional documents. With respect to 2008-2009, almost all FAA emails before 2014 reside on disaster recovery backup tapes, and restoration of any custodian's email from 2008 or 2009 is likely to be expensive and time consuming. Indeed, the parties continue to negotiate in an effort to define the appropriate scope of collecting and producing documents from 2010-2014 in a manner that minimizes the significant burden and costs and strives to stay within the time currently allotted for merits discovery.

In proportion to the needs and scale of this class action, Defendant has offered an expansive five year period for discovery, which encompasses the relevant pre-2014 actions, notwithstanding the significant expense involved (for example, while Defendant believes the parties should be able to reach agreement on restoration of email for a more limited number of custodians for limited periods, full restoration of the email of dozens of custodians is estimated to cost millions of dollars). While much of this information likely is not relevant to Plaintiffs' claims or admissible in this case, Defendant also proposes to produce non-privileged communications throughout 2014 that are responsive to Plaintiffs' requests and address the controller hiring process, whether backward-looking or forward-looking. This includes FAA's discussion in 2013 and 2014 about why it chose to use an "interim hiring process" rather than wait for all of its planned changes to be implemented at once. A bright line at the end of 2014 would protect Defendant from unwarranted burden while giving Plaintiffs ample information about FAA's reasoning both before and immediately after the February 2014 vacancy announcement (even if some of this information is ultimately inadmissible under Federal Rule of Evidence 407).

Plaintiffs' attempt to extend the already burdensome and time-consuming discovery process to cover hiring processes that are not challenged in this case is unjustified as it will not involve evidence which could prove or disprove their claims about FAA's intent in 2013 and early 2014. Nor could such discovery become proportional based on Plaintiffs' newly professed desire to critique EEOC Management Directive 715 or the nondiscrimination policy stated in Executive Order 14,035 (June 25, 2021)—neither of which are challenged in the Fourth Amended and Supplemental Complaint.

**Conclusion**:

The parties request the Court's direction concerning whether Defendant must produce responsive documents created in 2015 and 2016. Defendant also requests the Court's direction regarding whether it must produce documents created in 2008 and 2009. The parties believe complete briefing of these issues would be beneficial to the Court.

Respectfully submitted,

Zhonette Brown, for Plaintiffs
Galen Thorp, for Defendant

CONFIDENTIALITY NOTICE: This e-mail message (including any attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, and is protected by attorney-client and/or attorney/work product privilege. It is intended to be and to remain confidential. It is intended only for the person or entity to which it is addressed and the privileges are not waived by virtue of this having been sent by electronic mail transmission. Any unauthorized review, use, disclosure, dissemination, copying, forwarding or distribution is prohibited. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail or by telephone and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments. If you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.