UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW J. BRIGIDA, *et al.*,<br><br>*Plaintiff Class*,<br><br>vs.<br><br>PETER P.M. BUTTIGIEG, Secretary, U.S. Department of Transportation,<br><br>*Defendant*. | No. 16-cv-2227 (DLF) |

### JOINT STATUS REPORT

Pursuant to the Scheduling Order dated February 23, 2022, ECF No. 151, and the Court's October 25, 2022 Minute Order, counsel for Plaintiffs Andrew J. Brigida, Matthew L. Douglas-Cook, and the certified Class (together, "Plaintiffs") and for Defendant Peter P.M. Buttigieg, in his official capacity as Secretary of Transportation, conferred and submit the following joint status report.

### Merits Discovery Update

Since the last Joint Status Report on October 24, 2022, the parties have taken the following actions:

- On October 28, 2022, the FAA served interrogatories on Plaintiffs. Plaintiffs responded on November 28, 2022, and the parties are conferring about Plaintiffs' responses.

- Also on October 28, 2022, the FAA sent a letter initiating conferral regarding Plaintiffs' RFP responses and productions. Plaintiffs responded on November 28, 2022, and made a supplemental production on December 22, 2022. Defendant is still evaluating Plaintiffs' response.

- In late October and early November 2022, Plaintiffs' process server completed service of three third-party subpoenas. The FAA served objections to each subpoena on the ground that it may call for the production of potentially

1

privileged information, proposing that the FAA review for privilege any documents to be produced in response to the subpoenas before they are provided to Plaintiffs. The parties are conferring to reach an agreed process for the University of Maryland's production of documents related to the work of Drs. Outtz and Hanges.

- On November 2, 2022, Plaintiffs served two requests for production of documents seeking production of certain word processing files in native form and two interrogatories. On December 2, 2022, the FAA objected to Plaintiffs' requests for production. On Friday afternoon, December 16, 2022, the FAA served a response to Plaintiffs' interrogatories. On December 21, 2022, the FAA produced 49 documents relevant to the interrogatories. Plaintiffs are still evaluating the FAA's response.

- On November 25, 2022, the FAA produced 1,057 documents from APT Metrics.

- On December 12, 2022, Plaintiffs filed their Rule 37 motion for fees. Defendant will seek an extension through January 24, 2023 to respond to this motion.

- On December 16, 2022, the FAA responded to Plaintiffs' conferral letter of October 13, 2022, and provided an outline of the technology assisted review (TAR) process the FAA will use with the intention of accelerating document review, proposed specific custodians for email searches from 2010-2016, stated that it would use Plaintiffs' proposed search terms with some alterations (that Plaintiffs have not yet been able to analyze), suggested additional ways to make e-discovery more efficient, and responded to several issues raised in Plaintiffs' letter. Plaintiffs need time to evaluate the FAA's recent proposals, including time to consult with their litigation support vendor, and which to review the FAA's upcoming responses to Plaintiffs' other inquiries.

**Plaintiffs' Concerns Regarding Pace and Completeness of FAA Productions**

Within a few weeks, the parties will be halfway through the merits discovery period, yet Plaintiffs still have only a small percentage of the documents they requested in March 2022. Moreover, the FAA has now switched both its fundamental approach to review and production of FAA documents, and apparently switched its litigation support vendor (and associated capabilities) mid-stream. Nothing has occurred since the Parties' last joint status report that has alleviated the concerns that Plaintiffs outlined in that document, ECF No. 162, about the pace and completeness of the FAA's document productions. Rather, Plaintiffs continue to grow more alarmed that either

the FAA does not intend to complete discovery in the time allotted, creating a self-fulfilling prophecy of difficulty and delay, or that the FAA intends to dribble out a thin portion of documents per month for several months, and then provide more than 80% of the responsive documents shortly before the close of discovery, drowning Plaintiffs in an avalanche of documents intended to deprive them of the ability to adequately review the documents, consult with their experts, complete depositions, resolve discovery disputes, identify gaps in the information the FAA provides, determine the effects of the FAA's apparent spoliation, and serve supplemental discovery in a considered and orderly fashion.

Thus far in the merits phase, the FAA has made five substantive productions of documents, producing less than 5,000 documents total, and less than 1,500 from the FAA's own files. The two productions that included files from the FAA (May 2022 and October 2022) appear to be largely limited to documents related to evaluation of the 2011 Independent Review Panel recommendations, some of the contract documents with Outtz and APTMetrics, some of the FAA evaluations of CTI schools, document retention policies, a thumbdrive provided by a member of the National Employees' forum, and approximately 129 documents that the FAA general counsel's office had available regarding the design and contracting for the barrier analysis and extension report.[1] Also, despite making their first production in May 2022, the FAA has not provided a privilege log for any of the documents it has withheld. Such a log is necessary to identify and resolve likely differences regarding the scope of the privileges asserted by the FAA.

This minimal volume of documents produced contrasts sharply with what the FAA has indicated is the likely volume of documents to be searched (where the FAA has been able to identify and quantify such sources). According to its most recent communication, the FAA intends to search

---

[1] All of these counts are in fact overstated, as they include documents that the FAA has withheld as privileged.

approximately 176 restored e-mail boxes and 36 "proofpoint" e-mail boxes; but it has yet to produce a single e-mail from either source. The FAA has also indicated that it has a 31 Gb hard drive from one custodian, and an untold number and volume of other hard drives, but again, so far as Plaintiffs are aware, none of these documents have been reviewed or produced. The FAA has at least 124,000 documents from APTMetrics (not including APTMetrics' internal emails), and thus far has produced less than 3,000 such documents. After Dr. Hanges failed to retain most of his e-mails and provided less than 1,000 documents, Plaintiffs served a subpoena on the University of Maryland for such documents. The University indicated that it has located approximately 5,500 pages of responsive documents, which the FAA intends to review for privilege determinations before turning over to Plaintiffs. Additionally, presumably, the FAA has "server" or "shared library" documents within the various FAA lines of business and possibly within department or project teams.

  Most of the delays appear to stem from the FAA's failure to engage in adequate document collection and evaluation at the outset and at other important points during this case. It is not clear that the FAA engaged in organized document custodian interviews so that it could gain a sense for the source and volume of document repositories needed to form a logical and efficient discovery plan, as contemplated by Federal Rules of Civil Procedure 16 and 26. The FAA allegedly collected some documents some years ago, but then lost the hard drive with the collections, which is, no doubt, part of what motivated its recent decision to restore monthly backup tapes for one of the key custodians. At various times the FAA seemed to lack knowledge of its own document collection and processing capabilities and response to related Plaintiff inquiries would take months, with the answer then sometimes changing. For example, Plaintiffs were told to assume that the FAA had "robust" search capabilities, but the FAA's search tool cannot even exclude the results of one search from the next search. Moreover, Plaintiffs reject the suggestion that TAR or email threading are

concepts that have just come to Defendant's attention or sprung from the Defendant's effort to expedite discovery. Plaintiffs raised email threading during discovery regarding class certification, *see* ECF No. 123 at 2, ECF No. 132 at 5, and suggested TAR (predictive coding) ten months ago. *See* ECF No. 150 at 3. Further, the FAA, the party with the greatest knowledge of its own documents and processes, refused to suggest its own search terms and frequently rejected or delayed response to Plaintiffs' requests for data and information that would allow informed rather than speculative selection of search terms. Moreover, the parties appear to have a fundamentally different view of the appropriate scope of discovery and proportionality analysis for this class action as the FAA's suggested document collection approaches are consistently overly restrictive.

The FAA provides no estimate of when its document collection will be complete, and no estimate for when its document production will be complete. Without a drastic change or attention by the Court, Plaintiffs see no way the FAA's initial production can be complete and leave reasonable time for the rest of the discovery process that needs to occur before the close of fact discovery in November 2023. Plaintiffs renew their request for a discovery status conference. Rather than merely extending the deadlines in the Court's scheduling order, Plaintiffs hope that discovery for this case can be appropriately prioritized so the merits of this case can be resolved expeditiously.

### Defendant's View Regarding the Current Status of Discovery

Defendant's December 16, 2022 letter set forth a custodian and search term plan and delineated Defendant's newly developed TAR process. Defendant believes it would be most productive and best serve judicial economy for the parties to confer in January 2023 regarding Defendant's plan before presenting any specific issues for resolution by the Court, including at a discovery status conference; indeed, the parties have not yet scheduled a meeting to discuss the

plan or any potential refinements to it. Defendant shares Plaintiffs' interest in prioritizing the most relevant aspects of document discovery and is willing to work collaboratively with Plaintiffs regarding ways to expedite document collection, review, and production.

Because communications among the core decisionmakers in this case—the Executive Steering Committee and the Barrier Analysis Implementation Team—are expected to be the most relevant documents, Defendant's plan focuses on searching and (where necessary) restoring a reasonable portion of relevant custodians' email. Defendant'splan reasonably includes searching email for 49 custodians, including (1) restoring email from about 100 monthly backup tapes (about 180 mail files in addition to the May 2014 mail files already collected), and (2) collecting Proofpoint email for 33 custodians (primarily from May 2014-December 2016). If Plaintiffs accept this approach, the collection process can be implemented in the near future.

It has taken significant time to develop the plan because it entailed analysis and discussion about custodians, intervals for restoration of backup tapes, and search terms. As addressed in prior status reports, to make informed decisions Defendant has run sample searches and collected a limited number of custodians from backup tapes and from FAA's Proofpoint system. Reaching consensus regarding custodians, restoration, and search terms has been challenging (and is not yet complete), in part because, Plaintiffs have regularly objected to Defendant's approach to collecting information and sought still more information. Nevertheless, Defendant's efforts coupled with Plaintiffs' partial proposals in their October 13 letter laid the foundation for identifying a reasonably comprehensive set of custodians and search terms. Defendant has generally accepted Plaintiffs' proposed search terms with limited alterations to address overbreadth or the requirements of the search tools. As noted in Defendant's December 16 letter, Plaintiffs have not yet narrowed their search terms for 2015 and 2016, as directed in the Court's

September 6 Order, ECF No. 161, but Defendant is hopeful the parties can finalize the search terms shortly.

Defendant began to explore options for Technology-Assisted Review (TAR) in light of (1) Plaintiffs' resistance to refining substantially their proposed search terms without extensive further analysis, (2) the increased volume of documents resulting from the Court's September 6, 2022 Order, ECF No. 161, to include files from 2015 and 2016 in the scope of discovery, and (3) Defendant's goals to complete the document review within a reasonable period of time. Currently, we are using Relativity's Assisted Review Tool.  This algorithm uses human input and continuous Active Learning to identify quickly documents that are most likely responsive and can help reduce the burden on Defendant from the large volume of material and Plaintiffs' overbroad search terms.  In order to adequately address this case's growing technology and resource needs, Defendant transitioned to a new contractor in early November, which will provide additional efficiencies going forward.  The contractor has set up the process for seventeen custodians whose documents were already uploaded to Relativity.  To accommodate the planned phased document collection in this case, Defendant intends to leverage Relativity's continuous Active Learning and add documents to the TAR process on a rolling basis.

Even while developing and negotiating the above-referenced custodian and search term plan with Plaintiffs, Defendant has continued to move discovery forward.  For example, the most accessible emails were APT Metrics' correspondence with FAA, and FAA has completed first-level review of all those documents from 2012-2014.  More than 2,600 of these documents have been produced, and Defendant is conducting second-level review for about 6,000 more. Defendant recently added more resources for second-level review and hopes to shortly get through this backlog.  As explained in Defendant's December 16 letter, there are also more than

7

100,000 emails that are survey invitations and reminders sent by APT Metrics as part of its job analysis project, and Defendant is prepared to produce these documents once Plaintiffs decide whether they want to receive this material. Because APT Metrics was integrally involved in development of the 2014 interim hiring process, including regularly communicating with both members of the Executive Steering Committee and the Implementation Team, along with drafting and reviewing project updates and presentations, these documents from 2012-2014 cover much of the decisionmaking at issue in this case. Defendant also recently received approximately 18,000 APT Metrics documents for the 2015-2016 period, and has begun reviewing those documents.

In addition, Defendant received and produced 984 responsive documents from Dr. Paul Hanges, and has produced responsive sets of FAA documents that were readily available to FAA counsel. Additional sets of FAA documents will be collected, such as from shared drives, shared network folders, and individual hard drives or network folders, but these sources are secondary to the correspondence among the core decisionmakers. Some of these collection efforts also depend on the parties' efforts to reach consensus on key custodians and search terms.

Defendant continues to work expeditiously to accelerate production and improve efficiencies throughout this process, and will seek to ensure there is no "avalanche" of documents late in the discovery period. Some of the issues raised for discussion with Plaintiffs in the December 16 letter, such as a specific proposal for email threading, could further simplify review both for Plaintiffs and Defendant. Privilege logs for the productions since August 2022 will be sent on or before January 31, 2023. And Defendant continues to research the preservation questions and other issues raised in Plaintiffs' October 13 letter and will respond as soon as possible.

In sum, Defendant has committed substantial resources to this matter and the processes now in place should meet the needs of discovery here. Conferral among the parties to refine plans and set priorities could further advance productivity in this case. And reasonable estimates for completing document collection and production depend, in significant part, on these negotiations. The more documents and custodians Plaintiffs insist be included, the longer this process will take. Any status conference, if warranted, should be scheduled only after the parties engage in further discussions.

DATED: December 22, 2022

/s/ Zhonette M. Brown
Zhonette M. Brown, D.C. Bar # 463407
William E. Trachman, D.C. Bar # 502500
David C. McDonald, D.C. Bar # CO0079
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
Email: zhonette@mslegal.org

*Counsel for Plaintiff Class*

/s/ Michael W. Pearson (with permission)
Michael W. Pearson, DC Bar No. 997169
CURRY, PEARSON, & WOOTEN, PLC
814 West Roosevelt
Phoenix, Arizona 85007
Telephone: (602) 258-1000
Facsimile: (602) 523-9000
Email: mpearson@azlaw.com

*Counsel for Plaintiff Class*

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Director
Civil Division, Federal Programs Branch

/s/ Galen N. Thorp (with permission)
Galen N. Thorp (VA Bar No. 75517)
Senior Trial Counsel
Michael Drezner (VA Bar No. 83836)
Alexandra R. Saslaw (D.C. Bar 1618175)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Telephone: (202) 514-4781
Facsimile: (202) 616-8470
Email: galen.thorp@usdoj.gov

*Counsel for Defendant*