UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW J. BRIGIDA, *et al.*,

    *Plaintiff Class*,

vs.

PETER P.M. BUTTIGIEG, Secretary, U.S. Department of Transportation,

    *Defendant*.

No. 16-cv-2227 (DLF)

## JOINT STATUS REPORT

Pursuant to the Scheduling Order dated February 23, 2022, ECF No. 151, and the Court's December 22, 2022 Minute Order, counsel for Plaintiffs Andrew J. Brigida, Matthew L. Douglas-Cook, and the certified Class (together, "Plaintiffs") and for Defendant Peter P.M. Buttigieg, in his official capacity as Secretary of Transportation, conferred and submit the following joint status report.

### Merits Discovery Update

Since the last Joint Status Report on December 22, 2022, the parties have taken the following actions:

- On January 4, 2023, Plaintiffs sent a letter responding to Defendant's December 16, 2022 letter regarding outstanding discovery issues, including Defendant's plan for collection of Lotus Notes and Proofpoint email, and providing revised search terms.

- On January 6 and 9, the parties reached preliminary agreement on a protocol for Defendant to review for privilege the documents to be produced by the University of Maryland (932 documents) and Don Simons (41 documents). On December 8, 2022, Plaintiffs had requested the contracts relevant to Defendant's assertion of privilege for Mr. Simons' documents but such contracts have not yet been located.

- On January 9, after Plaintiffs brought an issue to its attention, Defendant corrected some of its prior productions that inadvertently included privileged information and produced the native format of PowerPoint files.

- On January 19, Defendant sent a letter further responding to Plaintiffs October 13, 2022 letter addressing, among other issues, Plaintiffs' concerns about the FAA's prior preservation and collection efforts and a proposed amendment to the operative Protective Order to address sensitive testing materials.

- On January 24, Defendant filed his opposition to Plaintiffs' Rule 37 motion for fees. Plaintiffs' reply in support of their motion will be filed on January 31.

- On January 25, Plaintiffs sent a letter addressing Defendant's January 19 letter objecting to Defendant's intent to withhold certain testing materials, addressing Defendant's proposed changes to the Protective Order, further addressing Defendant's prior preservation and its collection efforts, and requesting Defendant's estimate for when it will complete milestones for its document production.

- On January 26, the parties held a conference call at which Defendant provided updates regarding Lotus Notes and Proofpoint email collection, the privilege review of the subpoenaed documents, and other discovery matters. The parties also discussed the proposed amendment to the Protective Order and potential priorities for electronic discovery besides email.

- On January 31, Defendant provided Plaintiffs with a privilege log for the productions since August 2022. In conjunction with refining the privilege log, Defendant has identified some additional material that can be released and some information that will be clawed back under the Rule 502(d) Order, ECF No. 54.

By February 3, Defendant expects to produce about 6,000 APT Metrics documents regarding that contractor's interactions with FAA through December 2014. By February 8, Defendant also expects to produce the non-privileged documents from the third-party subpoena recipients, except to the extent that a handful of those documents depend on entry of a revised protective order.

**Plaintiffs' Concerns Regarding Pace and Completeness of FAA Productions**

The FAA engaged in race discrimination during the February 2014 air traffic controller hiring process. After years of litigating motions to transfer, dismiss, and amend and the proper scope of the class, the Class was certified one year ago, on February 1, 2022. The Plaintiffs served their first substantive merits document request on the FAA on March 4, 2022. The FAA's response stated that non-email responsive documents would be produced by January 27, 2023. Despite unilaterally setting a generous 10-month deadline for itself, the FAA still appears to be nowhere near accomplishing this objective. Indeed, at this point, over seven years after this lawsuit was filed, the FAA has yet to even identify the full range of sources of responsive documents.

Disappointingly, it also appears that the FAA has failed to take any comprehensive efforts to interview its employees—those identified on its initial disclosures—to determine where or how witnesses who participated in the 2014 hiring changes stored their documents. Even now, the FAA has inexplicably stated that it is "not in a position at this point to exhaustively canvas the potential custodians" regarding their document storage practices. The FAA's unwillingness to conduct the basic custodian interviews—which should have been completed before a Rule 26 conferral—is emblematic of the FAA's approach: ignore basic document collection and processing fundamentals, and neglect efforts to obtain basic information that would enable the identification and implementation of a logical and efficient approach to discovery.

Moreover, as it relates to e-mails, the FAA appears unable to provide any estimate of when it will even have its most readily available e-mails in a state to load into its litigation document processing application. The FAA, probably because it did not conduct witness/custodian interviews, refused to develop its own sets of search terms and custodians, insisting that Plaintiffs, who do not have access to the witnesses, make the first proposal. The FAA asked Plaintiffs to develop these

key terms and custodian searches with the understanding that the FAA has "robust" search capability – but that representation was incorrect. And now that the FAA has revised proposed terms and custodians, the FAA provides no estimate for when it will complete the restoration of e-mails from the backup tapes it chose to use as a method of preservation. As a result, the FAA can provide no estimate of the volume of e-mail that it will process, no estimate of how that processing—such as deduplication and threading—will reduce the volume that needs to be subject to a Technology Assisted Review (TAR), and no estimate of how many documents the TAR program is likely to identify for further review. The FAA, therefore, appears to have no idea of when it might complete its production in response to the requests the Plaintiffs made nearly a year ago.

No doubt, part of the FAA's problem is that it has had to reconsider various positions about the efforts that it will take to locate documents as a result of the spoliation that it allowed to occur. Even though the FAA anticipated litigation in 2012, the FAA failed to issue preservation notices until April 2014, after the key events at issue. The FAA then disassembled most materials that would allow it to access older e-mails. In 2016, after this lawsuit was filed, the FAA collected hard drive and network files for dozens of custodians, but then "lost" the collected data. Additionally, as some key witnesses, such as Ms. Mamie Mallory, left FAA employment, the FAA failed to preserve their hard drives and network files. Ms. Mallory, acting head of FAA's civil rights office, was instrumental in the FAA's decision to alter its application processes to discriminate against Plaintiffs based on their race. Ms. Mallory was the former president of the NBCFAE, an employee affinity group pressing for race-conscious hiring, and retained, on behalf of the FAA, at least one of the same experts the NBCFAE used under Ms. Mallory's leadership. Presumably, in an attempt

to avoid spoliation sanctions, the FAA has agreed to restore monthly backup tapes of Ms. Mallory's e-mails, hoping that it can recover otherwise spoliated evidence.

A number of bullet points set forth in the joint "Merits Discovery Update" above are not meaningful. For the first few joint status reports the parties summarized their discovery conferrals in a few sentences or by identifying issues rather than exhaustively summarizing each back and forth. *See* ECF No. 154 ("the parties are conferring regarding these issues"); ECF No. 156 at 1 (the parties' conferral…remains ongoing"); ECF No. 160 at 2 ("The parties have also continued to confer" identifying dates of letters and topics); ECF No. 162 at 2 (noting parties had conferred via three letters and two call about the "form, scope, and pace of discovery"). It is only after Plaintiffs began bringing the pace of discovery to this Court's attention that Defendant wanted to separately set forth every interaction; Plaintiffs have allowed the "bulking up" of the joint section rather than burden the Court with conflicting characterizations of the events that have occurred but the optics do not change the outcome – delayed discovery.

Further, it is wrong for Defendant to assert that Plaintiffs have "acquiesced" to Defendant's discovery plan. Throughout 2022, Plaintiffs sent detailed conferral letters to Defendant, requesting information about the sources and means of searching for responsive documents, and pointing out various shortcomings in the FAA's proposals. As with the FAA's January 19, 2023 response to Plaintiffs' October 13, 2022 letter, Plaintiffs' inquiries were met with long delays and Plaintiffs' proposals were rejected as the FAA created its own selection of search terms and its own selection of custodians. In its December 16, 2022 conferral letter, the FAA stated that it had designed its own searches "in light of the Court's admonition that, because reviewing 70,000 documents would 'require a lot of resources,' Plaintiffs should 'as much as possible' narrow its searches for 2015 and 2016."

In other words, the FAA took the Court's order granting Plaintiffs' Motion to Compel and used it as justification to select the custodians over Plaintiffs' objections. In that same letter, the FAA rejected detailed analysis of search terms as not "productive." In its section of the December 22, 2022 Joint Status Report, Defendant characterized Plaintiffs' detailed efforts as a "partial proposal" that was thwarting the parties' ability to reach consensus, and as "regularly objecting … and [seeking] still more information." ECF No. 165 at 6. In light of the FAA's repeated delays in providing detailed, timely, and accurate information about the universe of repositories of responsive information and their searchability, and the FAA's statement in the October 2022 Joint Status Report that it is "entitled to proceed with [its] approach" to discovery, *see* ECF No. 162 at 8, in their January 4, 2023 letter Plaintiffs resorted to identifying their gravest concerns and stating simply that they "disagree with or object to various conclusion and assertions" made by the FAA. This is far from acquiescence. Neither party yet has any idea about whether responsive documents will be able to be restored from back up tapes, about the volume of such documents, or the custodians of such documents. That the FAA wants to lock in a discovery plan in the absence of basic data does not cause Plaintiffs to waive their objections.

The dates entered by the Court's Scheduling Order were not mere suggestions. They were entered as a binding order. Yet the FAA is months away from completing document production in such a manner as would permit the parties to complete discovery by the date set forth in the Scheduling Order. Even the FAA has acknowledged in a prior status report that the "time-consuming" process of preparing witnesses for deposition "in general, can only be performed after document production is complete." Moreover, making other forms of discovery, such as the bulk of interrogatories and requests for admission, most efficient relies on documents being produced in a timely manner. In short, the FAA's disorganized and dilatory behavior has a cascading effect on

the remainder of the case; neither the parties nor the Court can evaluate discovery disputes on the horizon with so little of the document production completed.

Meanwhile, there are no consequences to the FAA as a result of its delays and no incentive to pick up the pace. Plaintiffs bear the burden of proof, meaning the FAA stands the most to gain as memories and other evidence are lost. As the weeks, months, and now years tick by, Plaintiffs remain without remedy for their harm and the FAA evades accountability. Plaintiffs thus reiterate their request that the Court hold a status conference, so that the parties can, at a minimum, establish concrete interim deadlines for the discovery process and so that the FAA does not remain unaccountable for any additional delays.

### Defendant's View Regarding the Current Status of Discovery

Defendant acknowledges that the pace of production of documents responsive to Plaintiffs' discovery requests has been slower than anticipated. Defendant has been forthcoming with Plaintiffs about the scope and depth of the myriad issues it has faced in processing documents responsive to their discovery requests and has invited Plaintiffs' input as Defendant has worked toward a path for ensuring the development of as full and complete record as possible in this case. As Defendant explained in the December 2022 status report, it has placed the highest priority on negotiating a plan for collecting email because communication among the core decisionmakers in this case are expected to be the most relevant documents. *See* ECF No. 165 at 6. When initially responding to Plaintiffs' March 2022 discovery requests, Defendant had not accurately anticipated how long it would take to negotiate a plan for email collection, or that the scope of discovery would include voluminous documentation from 2015 and 2016.[1] Defendant is now proceeding with the

---

[1] As discussed in prior status reports, Defendant ran sample search terms for a limited set of Proofpoint custodians and restored and loaded complete May 2014 mailboxes for key Lotus Notes

plan to collect documents identified in its December 16, 2022 letter, which Defendant believes is reasonably comprehensive and proportional to the needs of this case. Plaintiffs, in their January 4 and 25, 2023 letters, made no specific objections to the plan for restoring Lotus Notes email and recognized that a dispute about two Proofpoint custodians can be addressed in light of future productions.[2] In total, Defendant will collect email for 46 custodians in both Lotus Notes (42) and Proofpoint (33).[3]

Defendant is amenable to setting targets for completion of the email collection phase and, once that collection has been completed and the scale of the required document review and production becomes more clear, setting additional targets or deadlines. The FAA today completed loading the results of Proofpoint email searches for 33 custodians, which totaled 136 GB of information, to an external hard drive and is providing it to the Department of Justice for loading

---

custodians. However, the process required in 2022 for converting the Lotus Notes files caused substantial unexpected delays, and negotiations over search terms—including detailed hit reports—did not result in meaningful refinement of the terms. *See* Joint Status Report at 6-7, ECF No. 165 (Dec. 22, 2022); Joint Status Report at 2, ECF No. 160 (Aug. 23, 2022). Therefore, due to the expected volume of discovery to review, Defendant retained a new contractor and began implementing Technology Assisted Review (TAR) to expedite document review and production. *See* ECF No. 165 at 7. The new contractor can process Lotus Notes files without first converting the file type, which will substantially reduce delay. And Defendant has largely accepted Plaintiffs' proposed search terms with the expectation that their overbreadth can be mitigated through the TAR process.

[2] In their January 4, 2023, Plaintiffs acquiesced to Defendant's plan by offering no specific additional proposed custodians or time periods for Lotus Notes restoration and purporting to "reserve their further objections," stating merely that "it will likely be necessary to add specific custodians and terms once the initial data has been reviewed, and shortcomings or idiosyncrasies in the data are identified." Defendant reserves his objections to any later effort by Plaintiffs to demand additional email collection, especially to the extent that later Lotus Notes collection would cost more than inclusion in the current plan.

[3] Plaintiffs' assertion above that Defendant was "incorrect" to represent that the FAA had robust search capabilities appears to refer to their dissatisfaction with certain aspects of search capabilities built into Proofpoint Enterprise Archive. However, Defendant explained relevant nuances for how that system conducts complex Boolean searches and refined Plaintiffs' proposed terms to match that syntax.

into Relativity. Due to work done over the summer, 11 of the Lotus Notes custodians are already completely loaded or in the process of being loaded into Relativity for review. However, 31 of the Lotus Notes custodians require additional restoration of mail files from backup tapes, which is expected to encompass about 200 tapes due to the months proposed for collection and organization of the tapes. Defendant has solicited bids for a contract to complete the necessary restoration, and expects to receive proposals by February 8, 2023. Therefore, a timetable for completion of the restoration and anticipated cost should be known shortly. Once the emails have been collected, restored, and deduplicated, Defendant should be able to assess the time and resources required to complete review and production of these document sources, including whether any refinements to the plan are warranted.

Throughout the development of the email collection plan, Defendant has processed other documents and kept Plaintiffs informed of what has been prioritized. As previously explained, among the most significant are the documents from 2012-2014 that APT Metrics provided to Defendant, including this contractor's documents regarding relevant projects and their email correspondence with FAA (which are also encompassed by Plaintiffs' subpoena to APT Metrics). Defendant expects to complete production of the responsive documents from APT Metrics through December 2014 with a production of more than 6,000 documents by February 3, except for a handful of document whose release depends on entry of a revised protective order for sensitive testing materials. Because APT Metrics was integrally involved in development of the 2014 interim hiring process, including regularly communicating both with members of the Executive Steering Committee and the Implementation Team as well as drafting and reviewing project updates and presentations, these documents from 2012-2014 cover much of the core decisionmaking at issue in

this case. Defendant is also in the process of reviewing the 18,000 documents received from APT Metrics for the 2015-2016 period.

Moreover, Defendant has also set up a process to use Relativity's continuous Active Learning, a form of Technology Assisted Review (TAR), for document collections that are expected to include a significant mix of responsive and non-responsive material. This is expected to include the Lotus Notes and Proofpoint emails and the results of key word searches on individual and network drives. There are currently over 127,000 documents loaded into the Active Learning process. Defendant expects to shortly add to the Active Learning process both the results of the Proofpoint searches and at least 13 additional custodians with Lotus Notes mail files on the May 2014 backup tapes. While review of the APT Metrics and third party subpoena documents (discussed below) has been prioritized to date, review and processing of these documents is now expected to accelerate.

When the University of Maryland and Don Simons stated that they had documents responsive to Plaintiffs' third party subpoenas, Defendant insisted on reviewing these documents for privilege before they were released to Plaintiffs because the documents concern work done by FAA contractors or subcontractors. Defendant has promptly reviewed nearly 1,000 documents (932 from the University and 41 from Mr. Simons) and expects to provide the nonprivileged documents to Plaintiffs by February 8, except for a few documents whose release depends on entry of a revised protective order for sensitive testing materials. Both third parties' documents included some that meet the terms of relevant privileges, including attorney client privilege. A privilege log will follow shortly after the production. To assist the parties in assessing the privilege assertions, Defendant is also seeking to locate the contracts pursuant to which Mr. Simons did relevant work as a subcontractor.

Defendant is also in the process of finalizing a plan for collecting documents from additional sources, including documents from key custodian hard drives, individual network folders, and shared network folders. These documents may largely be redundant with what was exchanged by email. Defendant is conferring with Plaintiffs about prioritization among potential custodians and is considering search terms Plaintiffs proposed on January 25 for three key custodians. Such coordination is necessary as it would be neither practical nor proportional to the needs of this case to exhaustively collect documents from every individual who had some connection to the subject matter of this case. Therefore, cooperation among the parties is key to determining a reasonable scope for identifying and processing these additional sources. Contrary to Plaintiffs' assertions, the FAA has conducted custodian surveys regarding sources for relevant documents. For example, it received more than 100 responses to detailed surveys sent in 2016 and 2017. Last year, the FAA asked 21 current government employees on the parties' initial disclosures certain questions about the locations of potentially relevant documents. And the FAA also recently checked the preserved imaged hard drives for 17 custodians and notified Plaintiffs whether Lotus Notes or Outlook archive folders were located. The information learned from custodians and from document review will inform Defendant's collection of documents relevant to this case.

While Plaintiffs criticize the FAA's preservation of documents, the agency has taken many reasonable steps to preserve relevant documents. As discussed in detail in Defendant's letters to Plaintiffs, the agency has preserved tens of thousands of disaster recovery backup tapes containing Lotus Notes mail folders for agency employees through May 2014, and has retained a copy of all emails sent or received by FAA employees since the agency's transition to Microsoft Outlook at that point in time. The FAA sent its initial litigation hold in this case in April 2014, and followed that up with individual litigation holds issued to more than 150 people between September 2016

and February 2017. Those litigation holds trigger specific steps at an employee's separation from the FAA to confirm that the employee's documents subject to a litigation hold are treated appropriately. This includes the FAA's creation of an image of the user files from employee hard drives at the departure of employees subject to litigation holds. Thus, Defendant has identified to Plaintiffs custodians whose hard drives were imaged at their separation (or in one instance, when an employee took an international post). Defendant has also been candid with Plaintiffs about document sources that are known to be preserved or not, including through charts shared in May 2022 and January 2023. Given numerous potential sources for responsive documents, whether any relevant information will ultimately be unavailable is not yet known.

There have been some lapses in preservation, including Mamie Mallory's hard drive at her separation in 2018, and Defendant is actively attempting to get to the bottom of those instances and determine whether responsive and unique information actually existed in those document sources. But, as Defendant has explained to Plaintiffs, there are generally sufficient alternative sources available from which the information relevant to this case can be retrieved. For example, given that Ms. Mallory is a core custodian for Plaintiffs' theory of the case, Defendant has not only collected her mailbox from the May 2014 backup tape, which contained more than 25,000 emails or calendar entries, but also agreed (1) to restore and deduplicate her Lotus Notes mail folder monthly from January 2010 through April 2014 and (2) to collect email from key months from her deputy, Courtney Wilkerson, and from another employee in the office, Tola Sanusi, who assisted Ms. Mallory with the projects relevant to the claims and defenses in this case. Defendant will also review Mr. Wilkerson's hard drive and the Office of Civil Rights' shared drive to identify relevant documents. Defendant has already produced some hard copy documents from the Office of Civil

Rights, including documents printed for Ms. Mallory's review, and anticipates supplementing that production with additional documents.

In sum, Defendant is committed to expeditiously moving discovery forward in this case and has committed substantial resources both to document collection and review/production. Defendant has not been "unaccountable" for its discovery efforts in this case and is amenable to discussing interim targets with Plaintiffs to ensure that the most important discovery is prioritized. However, Defendant does not believe that court-ordered deadlines are warranted at this point or that a status conference is necessary. Indeed, at the parties' last meet and confer on January 25, Plaintiffs seemingly acknowledged that a schedule for production depended on the time necessary to collect and restore emails and did not make any specific timing proposals. Moreover, Defendant has concerns about the adequacy of Plaintiffs' discovery responses, but has deferred further development of those issues until making further progress on Defendants' discovery responses as discussed above. Accordingly, at the very least, significant additional discussion among the parties is warranted before the parties will be in a position to present any issues relating to discovery production for judicial resolution.

| | |
|---|---|
| DATED: January 31, 2023 | Respectfully submitted, |
| /s/ *Zhonette M. Brown* | BRIAN M. BOYNTON |
| Zhonette M. Brown, D.C. Bar # 463407 | Principal Deputy Assistant Attorney General |
| William E. Trachman, D.C. Bar # 502500 | |
| David C. McDonald, D.C. Bar # CO0079 | CARLOTTA P. WELLS |
| MOUNTAIN STATES LEGAL FOUNDATION | Assistant Director |
| 2596 South Lewis Way | Civil Division, Federal Programs Branch |
| Lakewood, Colorado 80227 | |
| Telephone: (303) 292-2021 | /s/ *Galen N. Thorp* (with permission) |
| Facsimile: (303) 292-1980 | Galen N. Thorp (VA Bar No. 75517) |
| Email: zhonette@mslegal.org | Senior Trial Counsel |
| | Michael Drezner (VA Bar No. 83836) |
| *Counsel for Plaintiff Class* | Hilarie E. Snyder (D.C. Bar No. 464837) |
| | Trial Attorneys |
| /s/ *Michael W. Pearson* (with permission) | U.S. Department of Justice |
| Michael W. Pearson, DC Bar No. 997169 | Civil Division, Federal Programs Branch |
| CURRY, PEARSON, & WOOTEN, PLC | 1100 L Street NW |
| 814 West Roosevelt | Washington, DC 20530 |
| Phoenix, Arizona 85007 | Telephone: (202) 514-4781 |
| Telephone: (602) 258-1000 | Facsimile: (202) 616-8470 |
| Facsimile: (602) 523-9000 | Email: galen.thorp@usdoj.gov |
| Email: mpearson@azlaw.com | |
| | *Counsel for Defendant* |
| *Counsel for Plaintiff Class* | |