## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANDREW J. BRIGIDA, *et al*.,

   *Plaintiff Class*,

  vs.

PETER P.M. BUTTIGIEG, Secretary, U.S.
Department of Transportation,

   *Defendant*.

No. 16-cv-2227 (DLF)

## JOINT STATUS REPORT

Pursuant to the Scheduling Order dated February 23, 2022, ECF No. 151, and the Court's

March 8, 2023, Minute Order, counsel for Plaintiffs Andrew J. Brigida, Matthew L. Douglas-Cook,

and the certified Class (together, "Plaintiffs") and for Defendant Peter P.M. Buttigieg, in his official

capacity as Secretary of Transportation ("Defendant" or "the FAA"), conferred and submit the

following joint status report.

## Merits Discovery Update

Since the last Joint Status Report on March 8, 2023, ECF No. 172, and in anticipation of the

discovery hearing set for May 9, 2023, the parties have worked diligently to address discovery

issues and narrow points of current dispute. Since the last status report the parties have done the

following:

- On March 10, 2023, the parties filed a joint motion for an amended protective order to address Defendant's concerns regarding the production of non-public testing materials, which the Court approved and entered on March 13, 2023.

- On March 10, 2023, Defendant produced approximately 12,300 documents from APT Metrics' records.

1

- On March 21 and 31, 2023, the Plaintiffs sent conferral correspondence to outside counsel for APT Metrics regarding Plaintiffs' subpoena, including the Plaintiffs' request that APT Metrics produce key-word searched internal correspondence for five APT Metrics employees.  On March 28 and April 17, 2023, APT Metrics' outside counsel responded asserting it viewed the Plaintiffs' proposal as too burdensome despite Plaintiffs' proposals seeking to lessen that burden.

- On March 27, 2023, the Plaintiffs sent a conferral letter to Defendant renewing their May 2022 and October 2022 requests that Defendant produce APT Metrics internal correspondence.  The letter also discussed addressing documents not yet produced from the APT Metrics records, Plaintiffs' request for specific ATSA materials, Defendant's objections to four of Plaintiffs' documents requests, Plaintiffs' concerns with various of Defendant's privilege assertions, the status and expected end date for Defendant's document productions, and Defendant's position regarding specific proportionality issues.

- On March 28, 2023, Defendant sent a letter to the Plaintiffs reporting on the progress of restoring backup tapes and proposing a discovery plan for the collection of additional documents. The plan proposed by Defendant identified custodians and document repositories the Defendant plans to search, along with search terms already used for EDMS, one of the repositories. The Defendant also provided an updated chart summarizing currently known information for certain FAA custodians. The plan indicated further steps Defendant intends to take to investigate the location of additional documents and sought Plaintiffs' input on the steps proposed.

- On March 31, 2023:

  o The parties had a call to discuss the Plaintiffs' reactions to and suggestions for Defendant's March 28, 2023 proposal, as well as items in Defendant's December 16, 2022 proposal regarding custodians whose mail files would be restored from backup tapes. Plaintiffs suggested the addition of certain custodians and time periods for the backup tapes.  Plaintiffs also suggested certain terms for EDMS, certain additional custodians for Defendant's discovery plan, and requested clarification on various points. Defendant agreed to consider Plaintiffs' input and the parties scheduled a follow-up call, which took place on April 17, 2023.

  o Defendant sent a conferral letter to Plaintiffs, raising concerns and questions regarding Plaintiffs' document productions, including a dispute about production of copies of the mix of relevant and irrelevant FOIA documents possessed by Plaintiffs, other documents available to counsel, an assertion of privilege, and production of truncated Facebook posts.

o   Defendant corrected errors from prior productions, produced certain documents held pending entry of the amended protective order, and provided notice of additional documents withheld for privilege.

- On April 12, 2023, Plaintiffs responded to Defendant's March 31, 2023 letter.

- On April 14, 2023, Defendant responded to Plaintiffs' March 27, 2023 letter and addressed some of the points from the parties' March 31, 2023 conferral.

- On April 17, 2023, the parties had a conferral call and made progress in their discussion of various discovery issues:

  o   Defendant provided an update on the restoration of backup tapes, addressed in more detail below. The parties further discussed the plan for non-email discovery that Defendant proposed in its March 28, 2023 letter.  Plaintiffs suggested changes to the discovery plan and discussions are ongoing.

  o   Defendant answered some of the Plaintiffs' questions about the development of the ATSA, and Plaintiffs have agreed to review documents planned for production before determining whether to seek to compel production of the other ATSA-related material, including potentially individual ATSA questions and scoring. Meanwhile, the FAA is investigating its obligations under third-party nondisclosure agreements.

  o   The parties have reached tentative agreements regarding various Plaintiffs' Requests for Production, and have agreed to defer further discussions pending Defendant's collection and/or production of certain documents. The FAA is still determining its position regarding the production of certain employee performance reviews.

  o   The parties discussed Defendant's concerns about how Plaintiffs' counsel is distinguishing documents subject to Plaintiffs' custody and control from other documents in Plaintiffs' counsel's possession, such as those from other representations. Plaintiffs raised various concerns about Defendant's privilege logs, and Defendant will respond to Plaintiffs' questions about specific entries.

  o   The parties discussed whether or when Defendant could provide certain end date for Defendant's document production so that a new fact discovery cut off can be established.

- On April 20, 2023, Defendant identified additional Lotus Notes mail files it proposed to restore pursuant to Plaintiffs' request at the March 31, 2023 conferral, and confirmed that it would collect non-email documents from two additional custodians requested by Plaintiffs.

Two issues from the parties' discussions are presented for the Court's attention.  First, while the parties agree that it is not feasible to complete fact discovery by November 24, 2023 as set in the Scheduling Order, ECF No. 151 (Feb. 23, 2022), the parties have not reached agreement about what extension to seek.  Plaintiffs seek a certain end date for Defendant's document production so that a new fact discovery cut off can be established.  Defendant proposes that new deadlines be set after July 14, 2023 to give the parties time to complete their conferrals about what documents must be collected and for Defendant to assess the resulting volume of documents that must be reviewed. Second, the parties disagree regarding whether Plaintiffs' request for APT Metrics' internal email communications seeks documents that are relevant, subject to Defendant's control, and must be produced in discovery.

**Plaintiffs' Concerns**

The parties have made progress in advancing their discussions regarding what will be subject to collection and processing, and the Plaintiffs expect that continued discussions will be productive. Clearly, the Court's prior orders and its decision to schedule a status conference for May 9, 2023, have produced results. At this point, there are two crystalized issues that warrant direction from the Court.

First, it is clear that the fact discovery cut-off set in the current Scheduling Order cannot be met. Rather than allow the discovery process to continue with a de facto and uncertain extension that the FAA's discovery approach has necessitated, Plaintiffs request that a new final discovery cut-off be determined. Plaintiffs seek specific deadlines both to ensure the reasonably prompt resolution to this case and to ensure that Plaintiffs have adequate time to complete discovery once the FAA has produced relevant documents. Specifically, the Plaintiffs request that the Court set a deadline for the FAA to complete its production of documents in response to Plaintiffs' March 4,

2022 Requests for Production of Documents, and that the discovery cut-off be set seven months after the FAA's production is complete. Such a date will necessarily be beyond even the FAA's preferred initial proposed date before the Scheduling Order was entered.

Second, Plaintiffs seek additional APT Metrics documents that are within the FAA's control, and which should therefore be produced at the FAA's expense (rather than at the expense of a third party or the Plaintiffs).[1] Despite the FAA's control over the APT Metrics' documents, the FAA refuses to request that APT Metrics provide it with APT Metrics' internal correspondence concerning the Barrier Analysis, APT Metrics' Extension to the Barrier Analysis, the Biographical Questionnaire, and other aspects of APT Metrics' work on ATCS selection and hiring.

The Plaintiffs ask that the FAA be required to exercise the agency's contractual right to obtain APT Metrics' documents concerning the work APT Metrics did for the FAA relevant to this case. As an initial matter, there should be no dispute that the FAA has control over the relevant APT Metrics' documents. Notably, the FAA has already obtained from APT Metrics all e-mails from APT Metrics employees to an @faa.gov email account, demonstrating their ability to demand documentation related to their projects. Moreover, the FAA's contracts with APT Metrics provided:

> In the event of litigation involving third parties to which Contractor is not named a party, the Contractor shall support the FAA by promptly providing to the FAA ***any*** documents requested as part of discovery which the Contractor may have in its possession, and by making Contractor employees available for depositions or testimony at hearings at the Agency's cost and expense.

---

[1] While Plaintiffs repeatedly sought APT Metrics' internal documents from the FAA, Plaintiffs also exchanged a few communications with APT Metrics counsel to determine if this matter could be resolved in the least overall burdensome manner, without the necessity of involving the Court, and despite the FAA's refusal to exercise its control over the documents. Plaintiffs, view, however, is that the FAA and APT Metrics are coordinating their approach as they apparently had collectively made the initial decision not to collect APT Metrics' internal correspondence but only to collect what the FAA should already have. After months of not acknowledging Plaintiffs' proposal, APT Metrics' counsel responded, asserting, as the FAA had previously, that it viewed production of APT Metrics internal documents as overly burdensome.

FAA_00017678–79 (emphasis added); FAA_00017720–21. The FAA argues that it will not honor its payment obligation to APT Metrics, but that is a non-sequitur with respect to the FAA's contractual control over the documents. The FAA has the legal and contractual right to any and all of APT Metrics' documents related to the projects that APT Metrics performed for the FAA, and the FAA should not be permitted to selectively decide which documents it wants APT Metrics to produce. The FAA and APT Metrics are both sophisticated entities that have, or should have, factored the costs of contract compliance, including potential legal discovery costs and expenses, into their contract.

Next, there should be no question that the documents that the Plaintiffs seek are relevant and tailored to the needs of the case. First, Plaintiffs have narrowed their request to communications to or from five APT Metrics employees who were primarily responsible for the performance of APT Metrics' contract with the FAA. Second, Plaintiffs seek documents only from the 2012–2016 timeframe. Third, Plaintiffs agree that the custodians' e-mails may be searched with key terms. The key terms will help ensure both that the emails are limited to APT Metrics' work for the FAA and that the responsive documents are tied to key concepts or players in the case. To reduce any burden on APT Metrics or reduce the likelihood that documents regarding other APT Metrics' clients are produced, Plaintiffs are willing to consider exclusions that could be run for the names of other clients the APT Metrics employees were serving at the time. Plaintiffs are also willing to agree that the APT Metrics' internal communications are subject to the highest level of protection under the newly amended Protective Order. Finally, unlike the e-mails that the FAA already unilaterally requested from APT Metrics, the e-mails that Plaintiffs seek are unique to APT Metrics and will not be duplicated by the FAA's own files. That the FAA already had APT Metrics provide a subset of documents, without input from Plaintiffs, and which the FAA itself should have had available,

does not militate against the FAA requiring APT Metrics to produce its internal correspondence. Plaintiffs seek the internal documents among APT Metrics employees because they expect that such communications will have frank and less filtered discussions of the demands made and direction provided by the FAA, including noting how the FAA's demands and implementation deviated from normal practice and professional standards, and were otherwise faulty. To the extent that APT Metrics was critical of what the FAA required of them, such criticisms are mostly likely to reside in APT Metrics' internal communications which the Plaintiffs seek.

**Defendant's View Regarding Next Steps in Discovery**

1.  Discovery Deadlines

In Defendant's view it is premature to set a firm deadline for completion of document productions and fact discovery.  Those deadlines should be set once the parties have further negotiated the scope of document collection and the volume of collected documents is assessed. Defendant proposes that the parties jointly propose revised deadlines by July 14, 2023.  This would give Defendant 12 weeks to gather the principal document sources, run search terms, and assess the volume of documents to be reviewed and produced.  It would also give the parties time to further negotiate the selection of custodians, time periods, etc., and to accumulate a better sense of the actual volume involved.

The agreed-upon document discovery in this case is and will continue to be extensive and voluminous.  In addition to the 25,552 documents already produced, Defendant is reviewing approximately 175,000 documents loaded into the Relativity Continuous Active Learning process, a form of technology assisted review (TAR).  Our current estimate based on sampling suggests that up to 48,000 of these documents may be responsive.  Because this TAR process

only works for text-rich documents, some documents for the custodians already loaded into

Relativity will have to be reviewed outside the TAR process (e.g., spreadsheets and image files).

In addition, there are also approximately 7,000 documents from APT Metrics and EDMS

currently under review outside the TAR process.

Importantly, it is expected that well more than half of the documents needing review have

yet to be collected and/or processed into Relativity.  This includes the following sources:

- <u>Lotus Notes Restoration</u> – The FAA has restored mail files for 31 custodians from disaster recovery backup tapes as proposed in Defendant's December 2022 letter and the December 2022 status report, see ECF No. 165 at 6.  This required retrieval of 251 backup tapes and restoration of 140 total mail files.  These files are currently being loaded into the FAA's processing platform.  Once those mail files are deduplicated and search terms are applied, the results will be exported to Relativity to be added to the TAR process.  In addition, based on Plaintiffs' requests in the March 31, 2023 conference call, Defendant is restoring additional mail files for three custodians and retrieving the backup tapes necessary to restore three additional custodians.

- <u>Individual Employee Drives</u> – Defendant has agreed to collect documents from individual hard drives and network drives for approximately 30 custodians across many FAA lines of business: the Office of the Administrator, Civil Rights, Human Resource Management, Air Traffic Organization, Communications, Government and Industry Affairs, and Civil Aerospace Medical Institute.  About 18 of those custodians have separated from the FAA and keyword searches will be applied to their preserved user files.  The remaining 12 custodians are current employees who can assist Defendant in identifying relevant document folders.

- <u>Shared Drives</u> – Defendant is currently aware of relevant shared drives used by Human Resource Management, Air Traffic Organization, and Government and Industry Affairs, and is still assessing whether additional lines of business may have stored relevant documents in such locations.  It is not yet known what volume of documents will be collected from these sources or the degree to which relevant and irrelevant documents are intermingled.

- <u>Hard Copy Documents</u> – Many FAA custodians indicated that they have hard copy documents related to the issues in this case.  The parties have agreed to attempt to avoid collection of redundant hard copy documents.  Accordingly, Defendant has agreed to primarily collect hard copy documents from the Human Resource Management and Civil Rights front offices.  However, it is not yet clear what volume of hard copy documents will ultimately be collected and scanned.

- Isolated Documents – In addition to the above sources where a significant volume of documents will be collected from each location, Defendant must also collect documents in other ways.  For example, Defendant may need to extract data from certain databases or track down certain responsive reports.  While such documents are not the primary focus at this time, completion of document discovery will require some additional time for this kind of work.

Reviewing collected documents for responsiveness, privilege, or other sensitive information takes substantial time as well.  For example, many of the remaining APT Metrics documents involve privileges that require redaction or withholding, and a significant number implicate third-party nondisclosure agreements for potential test providers.  Finalizing review and production of these more complicated documents is resource-intensive.

Defendant shares Plaintiffs' interest in completing document production so that other aspects of the case can move forward.  At the time Defendant proposed 24 months for fact discovery, *see* ECF No. 150 (Feb. 22, 2022), Defendant had not contemplated that discovery would encompass FAA's 2015 and 2016 documents regarding controller hiring in addition to the 2010-2014 window.  And while the parties are making headway in negotiating representative custodians and document sources from among the far greater number of FAA custodians and sources with some connection to controller hiring, to the extent Plaintiffs may later demand additional custodians or documents that could disrupt efforts to timely complete discovery.  Accordingly, the parties will be better positioned to propose deadlines for completion of document production in a July 14, 2023 status report.

2.  APT Metrics Internal Email Correspondence

A judicial resolution of Plaintiffs' demand for APT Metrics' internal email correspondence regarding FAA projects is also premature.  The issue has only recently returned for discussion among the parties because from Plaintiffs' October 13, 2022 letter to Defendant until their March 27, 2023 letter described above, Plaintiffs attempted to work out an

arrangement with APT Metrics under their third party subpoena.  *See* Exhibit A, Email Chain, Re: Brigida v. Buttigieg – Subpoena served on APT Metrics.  The  parties might be able to find a compromise or narrow their dispute through further discussion.  Defendant respectfully submits that the Court should permit the parties to conduct additional negotiations before it weighs in on this dispute.

At any rate, significant factors weigh strongly against Plaintiffs' demand for APT Metrics' internal correspondence, and any ruling should come only after giving Defendant and APT Metrics an opportunity to brief a motion for protective order.  These factors include, but are not limited to the following:

First, APT Metrics' internal emails are not relevant to the issue of FAA's intent with respect to the interim hiring process adopted for 2014, which should be discerned from FAA's actions and the discussions among FAA decisionmakers.  Internal communications among APT Metrics' employees that were not shared with FAA cannot be attributed to FAA and, thus, are not likely to lead to probative evidence of FAA's intent.  Further, Plaintiffs have access to the give-and-take of the process development as derived from the more than 10,500 emails between APT Metrics and FAA between 2012 and 2016 already produced, along with thousands more documents created and exchanged between APT Metrics and FAA, which will be augmented by the remaining APT Metrics documents sent to or from an FAA email address which Defendant is processing for production.  These documents, as well as future depositions, will provide plaintiffs with sufficient opportunity to explore whether APT Metrics employees believed that FAA's "demands and implementation deviated from normal practice and professional standards."

Second, it is unclear if APT Metrics' internal emails fall under FAA's custody and control.  Plaintiffs' demand raises complex questions about FAA's custody and control in light

of federal contracting principles and the specific terms of APT Metrics' contracts.  The last of

APT Metrics' contracts with FAA expired in 2017 and there are no remaining obligated funds

from which FAA could pay APT Metrics for additional work under those contracts.  While APT

Metrics has an ongoing duty to safeguard government information received during the course of

the contracts, it is also far from clear that FAA can now demand that APT Metrics perform work

estimated to cost tens of thousands of dollars related to these completed contracts.  Nor, in light

of the contracts as a whole, including the contracts' specifications about FAA's rights to

information, is it apparent that the "documents" referred to in the contract clause quoted by

Plaintiffs encompass APT Metrics' internal emails.

Third, collection and review of these documents would be unduly burdensome, both to

APT Metrics and Defendant.  APT Metrics has explained that it would cost tens of thousands of

dollars in collection, processing, imaging, hosting, and attorney fees for APT Metrics to

segregate and produce the information Plaintiffs have requested, because APT Metrics cannot

readily separate out work that APT Metrics performed on contracts for non-FAA clients.  *See*

Exhibit A at 3.  APT Metrics has explained that its email servers do not have the capacity to do

nuanced keyword searches, *see id.*, and also that even if Plaintiffs paid for exportation of certain

search results to a robust document review platform where more nuanced searches could be

conducted, APT Metrics would inevitably incur substantial costs reviewing the documents to sort

those related to FAA projects from those related to other clients.  *See id.* at 1.  Moreover,

Plaintiffs' proposed searches are not narrowly tailored to target the information they claim might

go to FAA's intent but are instead likely to result in thousands or tens of thousands of additional

documents to process.  *See id.* at 5-6 (listing Plaintiffs' proposed search terms).  Thus, the burden

that would fall on APT Metrics and Defendant (who would need to review for privilege and

other sensitive information any of the documents APT Metrics determined were responsive) would not be proportional to the information Plaintiffs claim they are seeking.

In sum, numerous factors weigh against requiring Defendant to attempt to collect and process these documents.  The Court should deny Plaintiffs' demand for APT Metrics internal email correspondence regarding FAA projects, or provide the parties an opportunity to brief this issue after the parties have had an opportunity to consider alternative solutions.


DATED: April 21, 2023

*/s/ Zhonette M. Brown (by permission)*

Zhonette M. Brown, D.C. Bar # 463407
William E. Trachman, D.C. Bar # 502500
David C. McDonald, D.C. Bar # CO0079
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
Email: zhonette@mslegal.org

*Counsel for Plaintiff Class*

*/s/ Michael W. Pearson (by permission)*

Michael W. Pearson, DC Bar No. 997169
CURRY, PEARSON, & WOOTEN, PLC
814 West Roosevelt
Phoenix, Arizona 85007
Telephone: (602) 258-1000
Facsimile: (602) 523-9000
Email: mpearson@azlaw.com

*Counsel for Plaintiff Class*

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Director
Civil Division, Federal Programs Branch

*Galen N. Thorp*

Galen N. Thorp (VA Bar No. 75517)
Senior Trial Counsel
Michael Drezner (VA Bar No. 83836)
Hilarie E. Snyder (D.C. Bar No. 464837)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Telephone: (202) 514-4781
Facsimile: (202) 616-8470
Email: galen.thorp@usdoj.gov

*Counsel for Defendant*