UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW J. BRIGIDA, *et al*.<br><br>*Plaintiff Class,*<br><br>vs.<br><br>PETER BUTTIGIEG, Secretary, U.S. Department of Transportation,<br><br>Defendant | Case No. 16-cv-2227 (DLF) |

**JOINT STATUS REPORT**

Pursuant to the Court's Minute Order issued April 27, 2023, the parties have conferred via e-mail to discuss outstanding issues regarding responsive APTMetrics ("APT") documents. The parties report the following:

**Plaintiffs' Position**

APT has identified over 23,000 documents that refer to the "FAA." Based on conferral, it appears that APT's internal document search system is rudimentary, to the point where sophisticated searches by, for instance, which contract was being worked on for the FAA, are not possible. APT demands that Plaintiff Class artificially reduce its requests for responsive documents such that the number of documents returned by Plaintiffs' search terms be less than 1,000, and that costs be borne by the Plaintiff class. As the FAA states below, the production of the documents currently requested is "tens of thousands of dollars." But that cost—just as with the cost of FAA's presumed need to review the documents for privilege before they are produced to Plaintiffs—ought to be borne by the FAA.

1

This Court's intervention is necessary because Plaintiffs and the government are at an impasse regarding internal APT documents and communications. In December 2012, FAA HR contracted with APT to "conduct a detailed root cause analysis of the identified barriers and establish the foundation for corrective interventions." Fourth Amended Compl. ("4AC") ¶ 74. APT then delivered what the Plaintiffs contend is a deeply flawed and outcome-driven "Extension Report." That Report repeatedly blamed the College Training Initiative ("CTI") program for racial imbalances in Air Traffic Controller Specialist ("ATCS") hiring. It stated, for example, that "Advancement in the hiring process is clearly correlated with race … Advancement in the hiring process is clearly correlated with applicant source. CTI applicants pass … hurdles at a significantly higher rate than all other applicant sources." *Id.* at ¶ 80. Plaintiffs have properly alleged that the FAA solicited APT to bolster the FAA's plan to alter its merits-based hiring and adopt racially-biased hiring practices. *Id.* at ¶ 81.

To be clear, while the parties dispute the relevance of the documents in question, the documents are responsive to RFPs ("Requests") issued by Plaintiffs' class counsel in March 2022:

> REQUEST FOR PRODUCTION NO. 3: Please produce Documents related to the Biographical Questionnaire. For clarification this Request includes but is not limited to related Contract Documents; correspondence regarding the Biographical Questionnaire; research explicitly considered in creating, weighting, scoring, or validating the Biographical Questionnaire; solicitation of employees' participation in validating the Biographical Questionnaire; discussion, consideration, direction or other mention of the objectives or purposes to be accomplished or the results expected to be achieved by the Biographical Questionnaire; progress reports, drafts, or updates regarding the conduct and implementation of the Biographical Questionnaire; evaluations, analyses, reports, responses or other consideration of the implementation of and results obtained from the Biographical Questionnaire; materials reflecting individual applicants' scores on the Biographical Questionnaire; materials created or considered by the BAIT Team or the ESC; all analysis and discussion of changes required to utilize any aspect of the Biographical Questionnaire in any later ATC hiring process; and all CAMI or other research regarding the Biographical Questionnaire or its components that was reviewed or considered by the Agency.

REQUEST FOR PRODUCTION NO. 4: Please produce Documents related to third-party Congressional, Executive Department (including the Department of Transportation), media, or other stakeholder inquiries of or to the FAA concerning the Barrier Analysis, the Extension Report, or the Biographical Questionnaire, or analysis, conclusions, results, or actions taken by the FAA as a consequence of the Barrier Analysis, the Extension Report, the Biographical Questionnaire. This request includes Documents evidencing the preparation, revision, approval, and provision of responses to such inquiries.

As part of ongoing discovery, and as described above, Plaintiffs requested "all communications related to the Barrier Analysis, the Biographical Questionnaire, and the Extension Report" in FAA's possession, custody, or control in Requests for Production 3 and 4. These Requests necessarily encompass internal APT communications regarding the Barrier Analysis, the Biographical Questionnaire, and the Extension Report.

The FAA's contract with APT specifically states:

> In the event of litigation involving third parties to which the Contractor is not a named party, the Contractor **must** support the FAA by promptly providing to the FAA any documents requested as part of discovery which the Contractor may have in its possession, and by making contractor employees available for depositions or testimony at hearings.

FAA_00017678–9 (emphasis added). The broad category of "any documents" includes any internal files of APT, including their communications. The government argues that section 3.1 of the APT Contract carves out a distinction between "documents" and "communications" citing to FAA_00017657, but there is no distinction between documents and communications in that section.

Additionally, the FAA expressly incorporated clause "3.10.4-4 Inspection of Services - Both Fixed-Price & Cost Reimbursement (April 1996)" in its contract with APT. FAA_00017702. This provision gives FAA the legal right to demand full access to all of APT's files related to its work in implementation of corrective actions proposed as the result of their completed barrier analysis to FAA ATC hiring. FAA_00017702. Similarly, contract clause "E.2 – Inspection and

3

Acceptance" provides that "(a) The Contracting Officer (CO) or the Contracting Officer's Representative (COR), listed in Section G as the CO's duly authorized representative, is authorized to perform inspection on behalf of the Government for the purpose of acceptance of all supplies/services to be provided." FAA_00017660. This clause, too, gives FAA the legal right to obtain APT internal files related to the work it did for the government.

Plaintiffs' RFPs 3 and 4 do not carve out the internal communications of APT, nor is there any reason to believe that APT's documents touching on these subjects are less relevant than the documents in the FAA's direct possession. FAA clearly has control over the documents through its contractual relationship with APT, and has the ability to produce the documents to Plaintiffs. *See Zimmerman v. Al Jazeera America, LLC*, No. 16-00013, 2018 WL 11411310, *3 (D.D.C. Sept. 26, 2018) (Meriweather, M.J.) (*citing U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 247 (D.C. Cir. 2005) (both recognizing that a party will often have control over third-party documents)); *Owens-Hart v. Howard Univ.*, 317 F.R.D. 1, 6 (D.D.C. 2016) (applying the *ASAT* definition of control to Rule 34(a))[1]; *Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 5 (D.D.C. 2012) (same).[2] Indeed, FAA already produced 6,682 documents that the DOJ asserted were received from APT. However, critical internal communications responsive to the Requests

---

[1] Notably, in this case, Judge Mehta did not require that the party subpoena a non-party doctor in order to obtain his patients' medical records. *Id.* at 6 ("Therefore, to the extent Plaintiff has not yet produced any of her medical records from Dr. Hales, she shall obtain and produce them promptly and, in no event, later than April 25, 2016.").

[2] The government argues that this case stands for the proposition that "a party upon whom a discovery demand is served need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents." That proposition proves far too much. The case is best read as about whether a third-party is controlled by a party in litigation. For instance, *Bush* cites to *Nosal v. Granite Park LLC*, 269 F.R.D. 284, 290 (S.D.N.Y.2010), which determined that the defendant hotel would not be required to produce documents in the possession of the vendor it had hired to refinish the hotel bathroom because hotel did not control the vendor. But the government ignores the critical distinction: in *Nosal*, the party lacked control over the third party's documents. That is not the case here.

were not disclosed. Thus, requesting and producing relevant internal APT communications is within the FAA's control, and the Court should order the government to do so.

The *Zimmerman v. Al Jazeera America, LLC* case is particularly instructive. In that case, the Al Jazeera media network hired a freelance journalist, Liam Collins, to go under cover in an attempt to procure performance enhancing drugs. As part of their contract, Collins agreed to cooperate in any litigation resulting from the investigation. Thus, the Court ruled that Al Jazeera "controls" those records for purposes of Rule 34(a). 2018 WL 11411310 at *4. The contract here is similar. APT "must" provide any documents called for by the FAA. FAA_00017678. There is no limitation on the scope (or the time duration of its duty) regarding the documents that APT must disclose. Therefore, the disputed records at issue here are within the control of the FAA for purposes of Rule 34(a), and should be promptly disclosed. Indeed, counsel for APT has already taken the effort to collect and identify 23,894 non-duplicative e-mails in a simple search of the term "FAA" from January 2012 to June 2016. *See* Email from E. Janson, dated May 5, 2023, attached as Ex. A.[3]

There is every reason to believe that these e-mails—which represent the unguarded opinions of the individuals tasked with giving the FAA what it wanted—could shed light on FAA's improper racial motivation for changing its merits-based hiring and instead using the Biographical Questionnaire. Internal APT documents could reveal their observations of the FAA's desired results driven outcome of the Extension Report.

---

[3] The FAA relies on a single reference in *Zimmerman* to the fact that Liam Collins is "a British track and field athlete" to argue that the case lines up with its theory of Rule 34. The fact that Collins' competed on teams in the United Kingdom, however, played no part in the court's articulated reasoning. *Compare id.* at *1 *with id.* at *4 (Al Jazeera maintained control of documents "even if those records and communications reside solely in Mr. Collins's personal accounts."). Indeed, a significant part of Mr. Collins' investigative work was in the United States.

The government argues three primary reasons it should not have to collect and produce the APT documents: first, that APT is subject to subpoena and thus Plaintiffs should obtain them directly; second, that the documents are not subject to FAA Control; and third, that it is too burdensome to review and produce the documents. The three contentions actually collapse into two—as the FAA will presumably seek to review all of the documents identified for disclosure by APT for privilege, regardless of whether APT produces them via subpoena, or whether the FAA exercises its enumerated contractual authority and produces them in response to the Requests.

Addressing the last argument first, the government estimates that it would take 600 reviewer hours at 40 items per hour to review these emails. Plaintiffs dispute what is a self-serving estimate of this nature, but even so, such an estimate is not unduly burdensome in a case that has been ongoing since 2015, and already involves thousands of hours of attorney time.

Turning to the issue of subpoena authority, it is true that Plaintiffs issued a subpoena directly to APT, which APT objects to on several grounds. But that is of no moment. First, issuing a subpoena to a non-party does not forever immunize a party from its discovery requests. The definition of "control" under Fed. R. Civ. P. 34 is unaffected by the issuance or availability of a non-party subpoena. *Zimmerman*, 2018 WL 11411310, *4 ("Defendants argue that Paragraph 2 of the NDA is a typical confidentiality provision that would not prohibit Mr. Collins from providing documents to Plaintiffs in compliance with a third-party subpoena."). The subpoena was issued because the FAA failed to voluntarily produce relevant documents that they were required to produce.

Second, APT's documents should have been collected and preserved by the FAA from the very beginning, in 2015, when the lawsuit was first filed. The government's failure to do so is another datapoint in their underestimation of the seriousness of this case. Moreover, the cases cited

6

by the government ultimately turn on a non-party cooperating with the subpoenaing party. Here, the FAA hopes to have Plaintiff pay for production costs connected to documents it ought to have produced anyway, and which it asserts it will need to review before they can be produced to Plaintiffs.

Plaintiffs should not have to undertake this expense when the government is already contractually entitled to receive these documents. APT is a sophisticated business entity—retaining experienced outside counsel—and the FAA has asserted many times that they anticipated litigation in this case. In any arms-length negotiation between the FAA and APT, the "costs" of production should presumably have already been a bargained-for feature of their contracts. In other words, despite the government's protestations, these costs were baked into the contract with APT.

Nevertheless, the government argues that the contract was terminated in 2017, and that the provision cited above—although directly on point here—contains no survival clause. But the government cannot rely on its own failure to collect documents that could have been obtained well before 2017, at the outset of the litigation in 2015. And indeed, courts have ordered production of documents in cases where **no** provision of a contract addressed production of records. *See Harris v. Medical Transportation Management, Inc.*, No. 17-cv-01371 (APM), 2018 WL 11247600 ("[T]he unmistakable picture that emerges from the Services Agreement, when viewed in its entirety, is that MTM enjoys broad authority to access transportation providers' records to ensure compliance with laws, standards, and MTM's policies.").

The FAA and APT both dispute that the contract permits the FAA to collect internal e-mails based on the language in the contract. But the contract is clear—as cited above, APT **must** provide the FAA with "**any documents** requested as part of discovery…" There is no limitation on the type, scope, or flavor of document that APT must provide to the FAA. Counsel for APT

7

stated that it would never have agreed to produce internal emails to the FAA, but that is immaterial as a factual matter. It is exactly what it did explicitly agree to. The FAA thus has control over the documents because they have the ability to call for them under section H.18 of the Contract between the FAA and APT.[4]

Finally, the government makes a half-hearted argument about the Anti-Deficiency Act, suggesting that there are not obligated funds available to pay APT. First, it is unclear whether the government would owe any funds to APT given their baked-in duty to cooperate by producing any requested documents. That APT must cover the costs of its own production of document hardly implicates a statute that binds only the FAA. In any event, this is financial sleight of hand. Which "bucket" of funds that any payments to APT can come from is an accounting issue for the government and APT to address, either through their litigation resources or appropriation requests. Plaintiffs have no ability to see what funds are available from the DOJ to pay for the expenses of this case, and it is doubtful that discovery ought to be had on such a side issue.

For all of the foregoing reasons, the Court should order the government to collect and produce the internal communications of APT that are responsive to Plaintiffs' Request for the Production of Documents. The FAA is attempting to use APT's contractor status as both a shield and a sword. The government had a clear duty to collect these documents at the outset of the litigation, and should not be rewarded for their failure to do so.

---

[4] It would also be strange to time-bound this duty by the life of the contract signed by APT and the FAA, given that statutes of limitations often last longer than a specific government contract may last.

**Defendant's Position**

The Court should not order Defendant to collect and produce internal emails from its former contractor, APT. Plaintiffs subpoenaed APT in May 2022 and have been in on-and-off talks with APT since that time. APT has explained why Plaintiffs requests are too burdensome, and the parties have exchanged proposals for making a more targeted search. *See* Ex. A. But more than a year later, instead of continuing their negotiations or filing a motion to compel against APT, Plaintiffs are looking to pass the buck.

The Court should reject Plaintiffs' request. *First*, it creates unnecessary work for the Court. The complex question of whether FAA has the right to internal APT emails is moot and can be avoided because of Plaintiffs' subpoena to APT. Plaintiffs have a ready means to compel production regardless of the question of control. *Second*, Plaintiffs' subpoena renders these documents outside the scope of discovery as to Defendant. They can be obtained directly from APT. That is more convenient, less burdensome, and less expensive than requiring FAA to act as middleman between Plaintiffs and APTs, who is unwilling to comply with Plaintiffs' overbroad requests. *Third*, Plaintiffs have not carried their burden to establish that FAA has the legal right, authority, or ability to obtain internal APT emails upon demand. Unlike Plaintiffs, FAA has no means of compelling document production from APT. *Fourth*, and alternatively, the burden of Plaintiffs' requests far outweighs the exceptionally limited relevance, if any, of emails that were not sent to the decisionmakers in this employment discrimination case.

**I.      Plaintiffs' Subpoena to APT Makes the Question of Control Moot**

First, the question of whether FAA has legal control over internal APT emails is moot because Plaintiffs' subpoena creates duties for APT to produce documents to Plaintiffs irrespective of whether Defendant has control over them. Any dispute, thus, is between Plaintiffs and APT.

And even if the Court were to spend the time and energy to make a ruling on control under Rule 34, the result may well be the same, as APT is "unable and unwilling to provide DOT/FAA" the documents sought by Plaintiffs. ECF No. 175-1. Courts decline to decide questions of control in such cases. *See Lifesize, Inc. v. Chimene*, 2017 WL 2999426, at *2 (W.D. Tex. June 2, 2017) (declining to decide an "interesting legal issue" regarding defendant's control over a third party's documents because the plaintiff was "pursuing the documents directly" from the third party, and the third party would re-raise objections to the defendant's request); *Known Litig. Holdings, LLC v. Healy*, 2014 WL 11633685, at *1 (D.R.I. June 12, 2014) ("Defendants' Motion to Compel is moot because the Bank has apparently refused to voluntarily produce additional documents to Plaintiff and Defendants have elected to directly pursue any such documents by way of a third-party subpoena.").[5]

## II. Defendant Need Not Collect Documents That Plaintiffs Can Obtain Themselves

Second, Plaintiffs' subpoena renders internal APT emails outside the scope of discovery as to Defendant. As recognized in a case cited by Plaintiffs, "a party upon whom a discovery demand is served need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents." *Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 5 (D.D.C. 2012) (quotation marks omitted); *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) (finding it "fairly obvious that a party also need not seek [] documents from third parties if compulsory process against the third parties

---

[5] This procedure provides Plaintiffs with greater ability to get the documents it wants. *Robinson v. Moskus,* 491 F. Supp. 3d 359, 367 (C.D. Ill. 2020). If, for example, APT were to withhold emails requested by FAA, Plaintiffs would have no recourse: there is "no clear remedy or sanction against a person or entity who makes a false representation to a party's counsel but which is itself neither a party nor under subpoena to produce documents. Conversely, a non-party who fails to comply with a subpoena is clearly subject to the court's contempt power . . . ." *Id.*

10

is available to the party seeking the documents"). In other words, APT's emails "can be obtained from some other source that is more convenient, less burdensome, [and] less expensive" than having Defendant re-conduct the same negotiations that Plaintiffs have engaged in. Fed. R. Civ. P. 26(b)(2)(C). There is no reason to inject logistical hurdles and complex legal questions of government contracting and funding by involving Defendant in this process. *See In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 432 (M.D. Fla. 2018) (no duty for defendants to collect documents from third party where "Plaintiffs were able to subpoena" the third party; plaintiffs could "procure the [] information for themselves").

## III.     The Contract Does Not Show FAA Control Over Internal APT Emails

Third, Plaintiffs have not carried their "burden to establish that" FAA has "the legal right, authority or ability to obtain" internal APT emails "upon demand." *See U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005) (citation omitted).[6] Critically, both signatories disagree with Plaintiffs' reading of the relevant contract. *See* ECF No. 175-1 (APT is "unwilling to provide DOT/FAA . . . wholesale access to its *internal* email. . . .").[7]

Section H.12 provided that: "In the event of litigation involving third parties to which Contractor is not named a party, the Contractor shall support the FAA by promptly providing to

---

[6] To the extent that Plaintiffs argue that the "practical ability" test should govern, which is "supported neither by reasoned analysis nor . . . caselaw which actually supports that reliance," *Moskus*, 491 F. Supp. 3d at 366—the result is the same. APT is "unable and unwilling to provide DOT/FAA" the emails that Plaintiffs seek. ECF No. 175-1.

[7] This too shows why Plaintiffs should focus on the subpoena. Even courts that conclude that a party has the legal right to obtain documents only require that party use "good faith efforts" to collect them and will not hold a litigant accountable for the actions of "an uncooperative third party." *Zimmerman v. Al Jazeera Am., LLC*, 2018 WL 11411310, at *5 (D.D.C. Sept. 26, 2018); *Searock v. Stripling*, 736 F.2d 650, 654 (11th Cir. 1984) (reversing grant of sanctions where requesting party did not prove that "the *legal right* to obtain" the relevant documents "on demand" and where, in any event, the counterclaimant had sought the documents in a "good faith effort").

11

the FAA any documents requested as part of discovery which the Contractor may have in its possession . . . ." *See* Ex. B, FAA_00017653 at -678. Yet Plaintiffs provide no reason to think that any obligation, if one ever existed with respect to internal emails, is still in effect or that it would apply to internal APT emails that likely have nothing to do with Plaintiffs' claims and which, as discussed below, are outside the scope of discovery.

To start, the contract's language indicates that internal emails may not meet the definition of "documents" as used in Section H.12. "A proper interpretation of a contract generally assumes consistent usage of terms throughout the [a]greement." *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 990 (Fed. Cir. 2009). And here, the contract language indicates that "documents" and emails or communications may have different meanings because those terms are used differently in other contexts. *See* Ex. B, FAA_00017653 at -657 (§ 3.1, different duties related to certain "documents" and "communication[s]"). The parties also used clear language when intending a clause to apply to broad categories of "data and information," such as in the confidentiality clause. *Id.* at -671–72 (§ H.3). If Section H.12 was intended to apply to any internal communications or emails, or any "data and information," that is likely what the contract would say. Plaintiffs offer no response.

Regardless, the contract provisions cited by Plaintiffs to show control are no longer in effect.[8] "[A]n expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied."

---

[8] Plaintiffs assert that FAA should have collected and preserved APT emails, but that merely assumes that Plaintiffs are correct in their unsupported conclusion that Defendant has control over this category of information since "a party's preservation duties attach only" to evidence within that party's control. *In re Disposable Contact Lens Antitrust*, 329 F.R.D. at 430–32. And, in any event, APT's *preservation* of its internal emails is not disputed, *see* Ex. A, and Plaintiffs cite no authority for the proposition that a defendant has an obligation to preemptively *collect* all documents that a plaintiff might ultimately seek in discovery.

12

*Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 206 (1991). As previously noted, FAA's contract with APT ended in 2017, long before discovery began in this case. *See* Ex. B, FAA_00017653 at -653. And, critically, the contract with APT contains no survival clause. *Id.* at -653–690. Plaintiffs offer no reason to think that the parties agreed that FAA has the legal right to force APT to expend likely tens of thousands of dollars under Section H.12 more than six years after the parties' contract had ended. *See, e.g.*, *New England Carpenters Cent. Collection Agency v. Labonte Drywall Co.*, 795 F.3d 271, 283 (1st Cir. 2015) (no duty to submit to audit requests after end of parties' contract).

Notably, the contract contains clauses that do plainly survive the expiration of the contract, which are absent from the provisions that Plaintiffs cite. Courts recognize that the use of survival language in one provision and not another shows a lack of agreement for the latter clause to survive expiration. *See Versant Funding, LLC v. Teras Breakbulk Ocean Navigation Enterprises, LLC*, 2018 WL 8660343, at *5 (S.D. Fla. Sept. 7, 2018) (audit right did not survive expiration of contract where survival language was present in certain clauses but not in the audit clause). For example, under Section H.3, confidential information must be protected from disclosure "so long as it remains proprietary," in other words, without reference to the term of the contract. *See* Ex. B, FAA_00017653 at -672. There is no such survival language in Section H.12.

Plaintiffs also cite certain inspection rights under the contract, but do not show how these clauses provide FAA current control over APT's internal emails. For example, Plaintiffs cite Section E.2 which permitted "inspection on behalf of the Government *for the purposes of acceptance of all supplies/services to be provided*." Ex. B, FAA_00017653 at -660 (emphasis added). Yet there are no more "supplies/services" to be provided or accepted, and deliverables were to be inspected within "ten business days." *Id.* (§ E.2(c)). Incorporated clause 3.10.4-4 is

likewise inapposite.  That provision only allowed for inspection "during the term of the contract." *See* Ex. C, FAA_00017693 at -702; Ex. D, Incorporated clause 3.10.4-4.  The time when FAA could demand inspections has long since passed.  *See Versant Funding, LLC*, 2018 WL 8660343, at *5.

Plaintiffs' read of the contract has further issues.  "Open-ended liabilities [] violate the Anti–Deficiency Act, 31 U.S.C. § 1341 (1994), and [are] unauthorized as a matter of law[,]" and courts presumed knowledge of the Act "and its prohibition on open-ended indemnity for third-party liability."  *Jarvis v. United States*, 45 Fed. Cl. 19, 20 (1999) (United States did not agree to indemnify party for attorneys' fees).  Plaintiffs speculate that, "presumably," FAA and APT bargained to account for future services that APT might perform for FAA.  They did.  If APT "provides services in excess of the funded amount or beyond the covered period, [it] does so at its own risk."  Ex. C, FAA_00017693, at -703 (§ F.4).  In other words, "services in excess of the funded amount or beyond the covered period" are outside the contract.

Plaintiffs also make much of Defendant's past voluntary efforts to obtain and produce documents from APT, but that does not establish control over APT's internal emails.  *See, e.g.*, *Searock*, 736 F.2d at 653–54 (defendant did not have control over documents, even though defendant volunteered to obtain the documents during discovery); *Moskus*, 491 F. Supp. 3d at 367 ("prior practice" of voluntarily obtaining documents from third party in "hundreds of cases" did not prove control).

Plaintiffs cite no contrary authority.  Where courts found control in the cited cases, each involved a contractual "stick" that could enforce the right to obtain documents on demand, there is also no indication that the relevant contracts had expired, and there is no evidence that the third party was subject to a subpoena.  *Zimmerman* involved requests for material held by a British third

party—*i.e.*, beyond the subpoena power of the court. 2018 WL 11411310, at *4. In addition, the defendant had promised ongoing indemnification that was "conditioned upon" the third party's cooperation. *Id.* at *2. In *Harris v. Medical Transportation Management., Inc.*, the defendant could impose a performance improvement plan, liquidated damages, and contract termination if the third party failed to cooperate with audit and inspection requests. 2018 WL 11247600, at *2 (D.D.C. Aug. 28, 2018). FAA, in contrast to the defendants in *Zimmerman* and *Harris*, has no apparent means to compel APT to comply with Plaintiffs' requests.[9]

### IV. The Burden Imposed by Plaintiffs' Requests Is Not Proportional to the Exceptionally Limited Relevance of Internal APT Emails

Fourth, and alternatively, the burden of Plaintiffs' requests far outweighs the "exceptionally limited relevance," if any, of emails that were not sent to the decisionmakers in this employment discrimination case. *See Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 7 (D.C. Cir. 2015) (assessment was of "exceptionally limited relevance" because it was not communicated to the "key players" in an employment decision); *Hairston v. Vance-Cooks*, 773 F.3d 266, 273 (D.C. Cir. 2014) ("it is the perception of the decision maker which is relevant"). Plaintiffs have, or should soon have, all of APT's work that went to the "decision makers" in this case: the FAA Executive Steering Committee and the Barrier Analysis Implementation Team. Plaintiffs already have more than 10,500 emails between APT and FAA from 2012–2016, thousands of other documents created and exchanged between APT and FAA, and thousands more documents are in the production pipeline. These are the relevant documents.

---

[9] The courts in three cases cited did not find that the requesting party had shown that its opponent had control over a third-party's documents. *See ASAT, Inc.* 411 F.3d at 254; *Owens-Hart v. Howard Univ.*, 317 F.R.D. 1, 6 (D.D.C. 2016) (finding no need to decide the issue but requiring production of what plaintiff already "intend[ed] to obtain and produce"); *Bush*, 286 F.R.D. at 6 (declining to expend the "large investment of the court's time" needed to resolve the question).

Yet the burden imposed by Plaintiffs' requests for further minimally relevant documents is significant. APT has stated that, given the nature of its email system, there is no practical way to segregate emails related to the FAA contracts from emails related to APT's other clients without extensive manual review. The limited search APT was able to conduct identified 23,894 deduplicated emails that contain the word "FAA" and would require review. *See* Ex. A. Undue burdens would fall to Defendant, too, who would need to review potentially producible emails for FAA's privilege, including emails not to or from attorneys. *Cf. Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, 2020 WL 1698928, at *2 (S.D.N.Y. Apr. 8, 2020) (emails with no "attorney sender or recipient" may reflect "legal advice from counsel"). At a rate of 40 items per hour, it would take nearly 600 hours for FAA to review the 23,894 emails noted by Plaintiffs.

Sheer numbers aside, that single search term is far too broad. Many of the documents APT located that contain the word "FAA" are likely—if they even relate the relevant contracts—to primarily involve forwarding FAA emails to other APT employees or conducting the everyday work called for under the contracts. This is not a targeted search for the evidence that Plaintiffs speculate about: "unguarded opinions" that "could shed light on FAA's improper racial motivation." Plaintiffs have not tailored their Rule 34 requests or their proposed search terms to reasonably seek what they actually claim would be relevant and non-duplicative.

Thus, the burden imposed by Plaintiffs' request is not proportional. *See Lamaute v. Power*, 339 F.R.D. 29, 42 (D.D.C. 2021) (declining to compel production of "marginally relevant" documents in employment case that would require roughly 637 hours to prepare).

*   *   *   *

For all of these reasons, the Court should not order Defendant to gather and produce APT's internal emails in response to Plaintiffs' Rule 34 Requests.

| | |
|---|---|
| DATED: June 26, 2023 | Respectfully submitted, |
| /s/D. Sean Nation | BRIAN M. BOYNTON |
| D. Sean Nation, GA Bar ID 313022* | Principal Deputy Assistant Attorney General |
| *Admitted *Pro Hac Vice* | |
| William E. Trachman, D.C. Bar # 502500 | CARLOTTA P. WELLS |
| David C. McDonald, D.D.C. Bar # CO0079 | Assistant Director |
| MOUNTAIN STATES LEGAL FOUNDATION | Civil Division, Federal Programs Branch |
| 2596 South Lewis Way | |
| Lakewood, Colorado 80227 | /s/ Galen N. Thorp (with permission) |
| Telephone: (303) 292-2021 | Galen N. Thorp (VA Bar No. 75517) |
| Facsimile: (877) 349-7074 | Senior Trial Counsel |
| Email: snation@mslegal.org | Michael Drezner (VA Bar No. 83836) |
| | Hilarie E. Snyder (D.C. Bar No. 464837) |
| *Counsel for Plaintiff Class* | Trial Attorneys |
| | U.S. Department of Justice |
| /s/ Michael W. Pearson (with permission) | Civil Division, Federal Programs Branch |
| Michael W. Pearson, D.D.C. Bar No. 997169 | 1100 L Street NW |
| CURRY, PEARSON, & WOOTEN, PLC | Washington, DC 20530 |
| 814 West Roosevelt | Telephone: (202) 514-4781 |
| Phoenix, Arizona 85007 | Facsimile: (202) 616-8470 |
| Telephone: (602) 258-1000 | Email: galen.thorp@usdoj.gov |
| Facsimile: (602) 523-9000 | |
| Email: mpearson@azlaw.com | *Counsel for Defendant* |
| | |
| *Counsel for Plaintiff Class* | |