```
 1                BEFORE THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2

 3    ANDREW J. BRIGIDA, et al.,      .
                                      .
 4              Plaintiffs,           .  Case Number 16-cv-2227
                                      .
 5         vs.                        .
                                      .
 6    ELAINE CHAO, Secretary,         .
      U.S. Department of              .  Washington, D.C.
 7    Transportation,                 .  July 11, 2023
                                      .  1:09 p.m.
 8              Defendant.            .
      - - - - - - - - - - - - - - - - -
 9

10                  TRANSCRIPT OF STATUS CONFERENCE
                BEFORE THE HONORABLE DABNEY L. FRIEDRICH
11                    UNITED STATES DISTRICT JUDGE

12    APPEARANCES:

13    For the Plaintiffs:         SEAN NATION, ESQ.
                                  WILL TRACHMAN, ESQ.
14                                DAVID MCDONALD, ESQ.
                                  Mountain States Legal Foundation
15                                2596 South Lewis Way
                                  Lakewood, Colorado 80227
16
                                  MICHAEL PEARSON, ESQ.
17                                Curry, Pearson & Wooten PLC
                                  814 West Roosevelt
18                                Phoenix, Arizona 85007

19    For the Defendant:          GALEN THORP, ESQ.
                                  MICHAEL DREZNER, ESQ.
20                                HILARIE SNYDER, ESQ.
                                  JAMES MCGLINCHY, ESQ.
21                                U.S. Department of Justice
                                  1100 L Street Northwest
22                                Room 11220
                                  Washington, D.C. 20005
23
      Official Court Reporter:    SARA A. WICK, RPR, CRR
24                                333 Constitution Avenue Northwest
                                  U.S. Courthouse, Room 4704-B
25                                Washington, D.C. 20001
```

P R O C E E D I N G S

(All participants present via telephone or video conference.)

COURTROOM DEPUTY: Your Honor, we are in Civil Action 16-2227, Andrew Brigida versus United States Department of Transportation, et al.

If I can have counsel identify yourselves for the record, starting with counsel for the plaintiff.

MR. NATION: My name is Sean Nation with the Mountain States Legal Foundation. With me, I have a few of my colleagues, Will Trachman and David McDonald, and two of our summer fellows, Andrew Freeze and Claire Walker.

I also see that my co-counsel from Curry, Pearson & Wooten is online as well.

THE COURT: All right. Good afternoon, everyone.

MR. THORPE: Good afternoon, Your Honor. This is Galen Thorpe for the Department of Justice. With me are Carlie Wells, Alexandra Saslaw, Hilarie Snyder, and James McGlinchy from the Department of Justice, and Elisabeth Fry and Maria Surdokas from FAA, and Paula Lee from the Department of Transportation.

THE COURT: All right. Is that everybody? Okay.

So this is a status hearing to address the issue raised in document 180 on the docket, the most recent joint status report, relating to issues regarding APTMetrics documents.

1           And both parties have laid out their position, but let me
2      hear -- let me give Mr. Nation first a chance to update this if
3      there's anything additional you would like the Court to be aware
4      of.
5                   MR. NATION:  Thank you, Your Honor.
6           These APTMetrics documents are likely to be central to the
7      plaintiffs' claim that the FAA acted with an improper racially
8      motivated purpose when it scrapped its previous hiring process
9      and engaged with APTMetrics to create the behavior -- or excuse
10     me, biographical questionnaire, later called the biographical
11     analysis.
12          We have a certified class of more than 900 individuals who
13     were denied the chance to have a career at the FAA because of
14     this improper behavioral -- excuse me, biographical analysis.
15          The documents are likely to reflect the marching orders
16     that APTMetrics was given by FAA to arrive at the result that
17     the FAA was seeking.
18          We attempted to get the documents directly from APTMetrics
19     but were unsuccessful in our negotiations with them.  Their
20     search ability, search capability appears to be rather
21     rudimentary, and they appear to be unable to conduct, for
22     instance, multi-keyword searches.
23          But we view the FAA's contract with APTMetrics,
24     specifically the part where it says "the contractor must support
25     the FAA by promptly providing any documents requested as a part

1    of discovery which contractor may have in its possession," we
2    believe that that gives the FAA control over the documents, and
3    as such, they should be -- they should be produced to the
4    plaintiffs.
5              THE COURT:  Okay.  Let me ask you, Mr. Nation, tell me
6    specifically what you expect the internal e-mails to give you
7    that you can't get from what you have already, what specific
8    information.
9              MR. NATION:  Certainly, Your Honor.
10        We currently have information between FAA and APT where
11   they'll say things like "we can't put banding information in"
12   or "I was concerned this could be discoverable or requested via
13   FOIA, so we're leaving some things off."  And we can certainly
14   provide those types of documents to you if that would be helpful
15   in your analysis.
16        We would expect the internal communications to go beyond
17   that and say well, FAA told us they want X, Y, and Z, or FAA
18   told us they want an applicant pool that is made up of certain
19   racial percentages.  We don't know if they're there or not at
20   this point, but we would certainly expect that, given the work
21   product that APTMetrics ultimately produced.
22        We would also expect them to be discussing ways to validate
23   behavioral analysis -- excuse me, biographical analysis and
24   whether it could be validated.
25        We would expect discussions around how to create a

1    particular racial pool to be within those APT documents as well.
2            THE COURT:  And you think that this is going to be set
3    forth in these internal e-mails?
4            MR. NATION:  I believe it's likely, Your Honor.
5            THE COURT:  All right.  Why -- what you're telling me
6    is that APT is unable through its search capacities to narrow
7    the documents in any way to target the specific kind of
8    information that you want?
9            MR. NATION:  That is my understanding of their search
10   capabilities.  We had some discussion about different searching
11   platforms that we may be able to use, but unfortunately, we were
12   unable to come to an agreement.  As I understand it, they're
13   very limited in the ability to essentially only use one search
14   term at a time.
15           THE COURT:  All right.  So these negotiations have
16   just broken down?
17           MR. NATION:  Unfortunately, yes, Your Honor.  Our
18   direct negotiations with APTMetrics' counsel have essentially
19   broken down over issues of cost and timing.
20           THE COURT:  Okay.  Well, I will just say now, based on
21   the limited argument both sides have presented about the
22   contract, I can't possibly resolve that issue without more
23   extensive briefing.  And no surprise, I'm really hesitant to
24   wade into that.
25           It seems to the Court that your most relevant documents are

1  the ones that went to the FAA.
2       Are you intending to depose people from APT?  Is there not
3  another way to get this information if you don't want to pay for
4  all of these documents to be produced?
5           MR. NATION:  I think it is likely that we will need to
6  take APTMetrics's depositions, at least a 30(b)(6) and likely
7  one or two additional witnesses.  Whether through that process
8  we could identify further documents, I'm uncertain at this
9  point.
10          THE COURT:  All right.  Well, I will hear some more
11 from the government, but I'm just very reluctant at this stage
12 to engage in that kind of extensive, you know, legal analysis
13 for what seems to me a bit of a fishing expedition.
14      I'm not saying there's not maybe perhaps something in there
15 that could be of use to you.  But as I see it, correct me if I'm
16 wrong, these documents, I don't see them being admissible at
17 trial.  This would be hearsay.
18          MR. NATION:  That is not an argument I considered at
19 this point, Your Honor, but I suspect that it would be subject
20 to a hearsay exception, particularly as business records.
21          THE COURT:  Yeah, I mean, I just think they're of
22 marginal relevance.  I get it that you're hoping somewhere
23 there's some evidence to support the theory, and perhaps there's
24 a thread of something in these e-mails.
25      But from the Court's perspective, I think a more efficient

1   way to go about this is through depositions and looking at the
2   e-mails and deposing the FAA witnesses.
3        How many people at APT were involved in this process?  Can
4   you tell from -- I would assume from the -- at least with regard
5   to the APT individuals who are communicating with the FAA, how
6   many of those were there?
7              MR. NATION:  There are a handful, I would say five to
8   ten individuals who communicated with the FAA.  But don't hold
9   me to that.  I could be -- I don't have that particular
10  information in front of me at this precise moment.  I believe
11  the custodians that APT recognized were five separate
12  custodians.
13             THE COURT:  Okay.  Well, I'll hear from the
14  government, but my inclination here is to say, you know, to the
15  extent there's arguments about number of depositions and the
16  like, the Court would be more inclined to expand the number of
17  depositions for you to question witnesses.
18       But if you don't want to pay for this information, which I
19  understand you could -- you haven't exhausted your ability to
20  get it through the subpoena process, and if you do do that and
21  the documents aren't produced or you do depose people and
22  something comes up, the Court might take a different position.
23       But at this time, given that you haven't exhausted your
24  ability to get the documents directly from APT and given that
25  you've not established, at least not yet, how the extremely

1    limited potential relevance of these documents is proportional
2    to the burdens created by asking the FAA to produce them, I am
3    inclined to exercise my discretion and limit the discovery
4    that's requested and not order FAA to produce the documents.
5         For all the reasons I've already stated, I don't want to
6    wade into whether the contract requires or gives FAA the legal
7    right or the ability to even obtain the requested e-mails from
8    APT.  I'm not at all sure that it does.  I'm not prepared based
9    on the status report to make a decision on that.
10        But I think that the plaintiffs, given that they've
11   subpoenaed the records from APT directly and given the limited
12   relevance, if any, and the uncertainty of what's there, the
13   Court's not inclined to order what you're asking in the status
14   report.
15        Again, I will give the government, if there's anything
16   additional, Mr. Thorpe, you would like to add on this issue.
17             MR. THORPE:  Your Honor, I'm going to turn it over to
18   my colleague, James McGlinchy, who drafted our arguments, legal
19   arguments in the status report.  I will note just a couple of
20   factual -- responses on factual questions that came up because
21   I've been down in the weeds on that.
22        The APTMetrics team of people that worked on the various
23   contracts with FAA I think was up to about 18 people.  The five
24   people that Mr. Nation was referring to were the five people
25   that plaintiffs, in their negotiations with APT, zeroed in on.

1    I think you can see that in the e-mail exchange attached as
2    Exhibit A to the ECF 180 status report.
3         So I just wanted to note that factual clarification for you
4    before turning it over to my colleague.
5              THE COURT:  All right.  And as I understand it, at
6    this point the plaintiffs already have more than 10,000 e-mails
7    that were generated between APT and the FAA between 2012 and
8    2016?
9              MR. THORPE:  That's correct, 10,000 e-mails, plus
10   attachments and other -- and foldered material related to the
11   projects.  We're still processing some additional material that
12   APT sent over to us voluntarily.  But that's what we've got.
13   So --
14             THE COURT:  I'm not saying for all time the plaintiffs
15   can't convince me that there's a need to dive into this, but I
16   will hear from your colleague.  It's just at this stage I don't
17   think they've convinced me that it's -- the burden is
18   appropriate.
19        Go ahead.  I can't recall the name of the person that
20   Mr. Thorpe said would argue this.
21             MR. MCGLINCHY:  Good afternoon, Your Honor.  Jim
22   McGlinchy with DOJ.
23        We don't have anything to add aside from our brief, and I
24   suppose we better quit while we're ahead.
25        But as far as, you know, potentially there being a future

1    different resolution of this dispute, we think at least the
2    first two arguments in our status report would counsel against
3    ever allowing plaintiffs to require FAA to produce these
4    documents from APT.
5             THE COURT:  Yeah, understood.  Okay.
6         So, Mr. Nation, that's where the Court comes out right now
7    based on what you've argued.  I do think you ought to pursue the
8    subpoena if you really think that it's worth the time and
9    expense to do so.
10            MR. NATION:  Understood.  Thank you, Your Honor.
11            THE COURT:  If you don't and, you know, it's cost
12   prohibitive and later something comes out in depositions and you
13   want to have me revisit this, I will, but I'm skeptical that you
14   can prevail, given that you've got another way to get these
15   documents.
16        There was another issue raised in another filing, I think
17   it was 181, about scheduling matters.  And I understand there's
18   some disagreement about the schedule moving forward.  It seems
19   from the Court that the schedules differ by about four months.
20        Mr. Nation, why isn't -- I know this case has been pending
21   a long time.  That's not all FAA's fault.  That's the courts,
22   including this one.  I don't know that they've drug their heels,
23   but convince me that I'm wrong here.
24            MR. NATION:  Well, Your Honor, it seems as though the
25   pace of review is just glacierly slow.  They're suggesting that

1    it would take them until mid-January to review all of their
2    documents.  Again, that just strikes me as an incredibly glacial
3    pace.
4         I think a more reasonable pace would have them -- we've
5    proposed the end of August.  Ultimately, Your Honor, what I am
6    after is a hard deadline that would be imposed with -- by the
7    Court that says you must produce everything by X date or face a
8    sanction.
9         We haven't had that in this case, as I understand it.  I
10   understand the discovery process takes time.  But we haven't
11   received a production since, I believe, the end of April.  And
12   even that was a relatively minor production.
13        So it just doesn't strike me that the government is
14   particularly serious here.  This is civil litigation, and we are
15   entitled to a speedy resolution.  The government, I
16   understand --
17             THE COURT:  Remind me -- sorry to interrupt, but
18   remind me how long discovery has been going.
19             MR. NATION:  I believe approximately two years at this
20   point.
21        Galen, am I mistaken?
22             MR. THORPE:  Your first discovery requests were served
23   in March 2022, so a little over a year.
24             MR. NATION:  Thank you.
25        I do apologize for that, Your Honor.  I am somewhat new to

```
 1     the case.
 2               THE COURT:  So 15 months right now?
 3               MR. NATION:  Yes, Your Honor.
 4               THE COURT:  Okay.  Mr. Thorpe, is there a really
 5     strong reason why the FAA can't complete this -- I know that
 6     these are old documents, and that might be slowing things down.
 7     But January 12th and post holidays does seem like a long time.
 8          Can the FAA commit to providing the documents some time
 9     this year?
10               MR. THORPE:  Your Honor, I really think the additional
11     time is needed.  We have gone along with plaintiffs in agreeing
12     that -- in agreeing with their proposal for a deadline for
13     certification of substantial completion of the document
14     production so the parties can more confidently move forward with
15     depositions and the remainder of fact discovery.  But we really
16     think we need the additional six months for the reasons laid out
17     in our status report.
18          Just to quickly summarize, we've produced more than 25,000
19     documents.  In March, we produced a batch of more than 10,000
20     documents to plaintiffs.
21          The lull over the last few months has been while we've been
22     working with the primary review of the -- using
23     technology-assisted review for a large set of documents.  We
24     winnowed down almost 200 gigabytes of documents using search
25     terms and technology-assisted review to about 44,000 responsive
```

1     families.  We still need to go through and tag those 44,000
2     documents for privilege and the confidentiality issues in the
3     case, which takes some time.
4          We also have completed the restoration of the Lotus Notes
5     backup tapes that we worked out and explained our plan back in
6     December.  That's 144 -- 143,000 additional e-mails and
7     documents from the e-mail boxes that has to go into the TAR
8     process and be reviewed.
9          We have conferred with custodians from at least 10 FAA
10    lines of business to identify, separate from e-mail, shared
11    document folders, individual custodian drives and folders, hard
12    copy documents that need to be scanned, and all of that material
13    has to be finished being collected, ingested, and reviewed.
14         So while we're over a year into the case, much of the first
15    year was spent trying to negotiate custodians and search terms
16    for e-mail, and we only really came down to sort of going
17    forward with that plan after our December status report.  So
18    we've been going at it hammer and tongs and working very hard to
19    move forward with document production.
20         We're not going to give them an avalanche at the end.
21    We're doing rolling productions.  That's why we did a first
22    round of the TAR process rather than waiting until everything
23    was collected, so that we could move things forward.
24         But it really wouldn't be feasible for us to do this in
25    much less than the six months we're proposing without pulling

1    dozens of DOJ lawyers off other cases, compelling FAA to hire a
2    bunch of additional contractors, bring them up to speed.
3         And we think that we've proceeded reasonably, and the four
4    months beyond what plaintiffs are asking for is reasonable in
5    light of the circumstances of the case.
6              THE COURT:  It's more like, I don't know, four and a
7    half; right?
8              MR. THORPE:  Okay, four and a half, Your Honor.  I
9    didn't mean to understate it.
10             THE COURT:  Yeah, but I guess the holidays are in
11   there.
12        So if I'm understanding you correctly, you have to review,
13   make privilege determinations, confidentiality determinations on
14   close to 200,000 documents; is that fair?
15             MR. THORPE:  I quantified the ones I have in hand.  I
16   have 44,000 responsive families that are going to go out or be
17   on privileged logs.  I have to get through final review on
18   those.  I have a new batch of 143,000 documents from the
19   restored e-mail coming in.
20        And then we're still in the collection stage of foldered
21   documents.  We're hopeful that a lot of these will dupe out
22   against e-mail and things if they're just copies of things that
23   were circulated via e-mail, but we can't be confident of that.
24        So we've got, I would say, hundreds of thousands of
25   additional documents.

1           THE COURT:  Sorry.  What additional?
2           MR. THORPE:  Given the 143 that I've quantified plus
3   the unknown, I think it's well over 200-, maybe up to 300,000
4   documents that have to be collected, processed, and reviewed.
5           THE COURT:  In the next six months?
6           MR. THORPE:  Yes, Your Honor.
7           THE COURT:  In my estimation, that's over 33,000 a
8   month.  That seems like a lot.
9           MR. THORPE:  Yeah, we were able, Your Honor, to use
10  the technology assist to review, of the -- the
11  technology-assisted review fed in about 175,000 documents, and
12  over a couple of months of review, we were able to winnow that
13  down, only setting eyes on about 50,000 of those to identify the
14  responsive pool.  But we will need to quickly move through the
15  final review to ensure privilege, et cetera.  So it's a big
16  lift.
17          THE COURT:  The 25,000 came out of what pool of
18  documents?
19          MR. THORPE:  The 25,000 already produced were things
20  that we produced -- kind of the low-hanging fruit we produced
21  initially, just some individual documents or early document
22  review of the APT documents that they sent us.  We could presume
23  that the e-mails sent to and from FAA to APT were essentially
24  all responsive, and we were just doing screening review for
25  that.

1       That initial review was a bit slower.  FAA -- it took FAA a
2  while to stand up a larger document review team, and sort of
3  things were bogged down with a variety of other issues,
4  including sort of all the negotiations about custodians and
5  search terms and the like.
6       So our review going forward will be much faster than the
7  25,000 documents we produced in the first year.
8            THE COURT:  All right.  Well, given what remains,
9  Mr. Nation, it seems like a pretty fast clip for them to cover
10 that by January 12th.  I'm not inclined to extend it any
11 further, but I'm also not inclined, based on what Mr. Thorpe
12 shared with me, to move it up as you suggest.
13           MR. NATION:  I certainly understand, Your Honor.  That
14 does not strike me as a particularly large number of documents
15 in a case of this magnitude.  300,000 documents in a potentially
16 billion dollar damages case is really just not that many.
17      And obviously, we don't have insight into how many
18 reviewers that they have reviewing documents.  But at 33,000, I
19 believe was the calculation per month, I would expect that --
20           THE COURT:  That was for 200,000, 183 or whatever it
21 was.  50,000 if it's 300.
22           MR. NATION:  In any event, I would expect a reasonable
23 reviewer to review up to 50 to 100 documents per hour if they're
24 only looking for responsiveness and privilege, and that gets you
25 through those documents pretty quickly.  But again, we don't

1     know -- plaintiffs don't know what resources the government's
2     actually devoting to this review.
3          But as long as it's a firm deadline that will not move,
4     then --
5               THE COURT:  Yeah.  Well, that's the case, Mr. Thorpe.
6     So if it requires increasing your team, FAA, they need to do
7     that now, not wait and ask for another extension.
8          So I will adopt the defendant's schedule, but I'm not going
9     to move the January 12th deadline any further.
10              MR. THORPE:  Thank you, Your Honor.
11              MR. NATION:  Understood, Your Honor.  Thank you.
12              THE COURT:  Is there anything else we need to address?
13              MR. NATION:  Not from the plaintiffs, Your Honor.
14              MR. THORPE:  Your Honor, I will just note that as
15    included in our status report, plaintiffs have served a Rule
16    30(b)(6) deposition on the FAA regarding FAA's document storage
17    preservation and production relevant to the case, essentially
18    discovery on discovery.
19         We've begun negotiations conferring with plaintiffs about
20    this, but we have significant concerns about it, that it's kind
21    of -- it's premature, improper, and overly burdensome.
22         I'm just flagging it for the Court.  If we can't work it
23    out, we would likely seek a protective order.
24         I will just note here that if we had to go forward with
25    something like this, it would substantially complicate our

1    ability to get discovery done in the allotted time, because it
2    would mean pulling some of the very folks that are involved in
3    getting this discovery done off to do a detailed explanation of
4    discovery about the discovery.
5         And we are happy to work forward with plaintiffs --
6              THE COURT:  Hold on, Mr. Thorpe.  I'm not sure about
7    that.  I think maybe there are other resources that could deal
8    with the protective order.
9         But regardless, I'm really going to encourage you all to
10   try to work through these things.  I really don't want to have
11   to get involved in issues that you all can resolve on your own.
12   So I would strongly encourage you all to work this out.
13             MR. NATION:  Certainly, Your Honor.  As Mr. Thorpe
14   noted, we have just barely begun having these discussions.  So
15   it's certainly not ripe for the Court to become involved.
16             THE COURT:  Okay.
17        Sorry to cut you off, Mr. Thorpe.  Was there anything else
18   you needed to add on that?
19             MR. THORPE:  No.  We are happy to -- we've tried -- as
20   I think the status reports over the last year reveal, we've
21   tried to be upfront with plaintiffs and the Court and explain
22   things to answer their questions as we go along, and we will
23   continue to do so.
24             THE COURT: All right.  Okay.  If nothing else, I will
25   adjourn the call.  Thank you, all.

1     (Proceedings adjourned at 1:37 p.m.)

2

3  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

4

5                CERTIFICATE OF OFFICIAL COURT REPORTER

6

7        I, Sara A. Wick, certify that the foregoing is a

8  correct transcript from the record of proceedings in the

9  above-entitled matter.

10

11

12  /s/ Sara A. Wick                    September 2, 2023

13  SIGNATURE OF COURT REPORTER          DATE

14

15

16

17

18

19

20

21

22

23

24

25