# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANDREW J. BRIGIDA, *et al*., | |
| *Plaintiff Class*, | |
| v. | No. 16-cv-2227 (DLF) |
| PETER P.M. BUTTIGIEG, Secretary, U.S. Department of Transportation, | |
| *Defendant*. | |

## JOINT STATUS REPORT

Plaintiffs Andrew J. Brigida, Matthew L. Douglas-Cook, and the certified Class (together, "Plaintiffs") and Defendant Peter P.M. Buttigieg, in his official capacity as Secretary of Transportation ("Defendant" or the "FAA") respectfully submit this joint status report pursuant to the Court's December 21, 2024 and January 2, 2025 Minute Orders directing the parties to "summarize[] the remaining discovery issues."

In this joint status report, the parties address Plaintiffs' objections to certain categories of Defendant's assertion of privileges. The parties' disagreements are briefly set out in this joint status report. Plaintiffs have requested to put before the Court a total of 59 exemplars. Exhibit 1 contains the privilege log entries for each of these exemplars, along with entries for related documents referred to by Defendant (such as cover emails). Defendant has also prepared a binder containing the unredacted text of all of the documents listed in Exhibit 1 for the Court's *in camera* review to the extent the Court finds it necessary to look beyond the text of the privilege log.

## PLAINTIFFS' POSITION ON PRIVILEGE DISPUTES

This case involves a certified class of individuals who applied to become air traffic controllers ("ATCs") and were rejected because the Federal Aviation Administration ("FAA") placed race above merit in its hiring process. The parties are nearing the end of a multi-year discovery process, which has confirmed that the agency improperly considered race when redesigning its hiring process for ATCs.

Still, while discovery has been quite revealing, the FAA has withheld more than 15,000 documents on the basis of privilege. Many of these assertions of privilege are improper on their face. Others appear to be improper, though *in camera* review of the documents may be necessary. The parties have conferred about these privilege issues numerous times and at length. But regrettably, after many months of good-faith conferral and consultation, the parties are at an impasse. The Government continues to make sweeping claims of privilege. And Plaintiffs continue to believe such claims are improper. This Court's guidance is therefore needed.

The scale of the FAA's more than 15,000 privilege assertions makes it impracticable for Plaintiffs to identify and place before the Court each and every disputed document. Plaintiffs will therefore briefly summarize the parties' key privilege disputes and identify exemplar documents for each dispute. The privilege log entries for Plaintiffs' exemplar documents are shown in Exhibit 1. Plaintiffs understand that Defendant has prepared all documents listed on Exhibit 1 for the Court's *in camera* review. Plaintiffs hope that the Court may provide informal guidance on these privilege disputes at the January 24 status conference. If the disputes cannot be substantially narrowed, however, Plaintiffs will likely need to file a motion to compel.

## I.    Defendant's Assertions of Deliberative Process Privilege Are Unsound.

The FAA asserts the deliberative process privilege over 1,800 documents, with more than

1,500 of those documents being withheld on no alternative basis. These privilege assertions are unavailing for at least four reasons.

1. First, assertions of the deliberative process privilege are improper in a Title VII case because the government's motives and intent are centrally at issue. The D.C. Circuit has squarely held that "the common law deliberative process privilege is not appropriately asserted . . . when a plaintiff's cause of action turns on the government's intent." *In re Subpoena Duces Tecum*, 145 F.3d 1422, 1424 (D.C. Cir. 1998), *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998). Crucially, the Court of Appeals has made clear, in no uncertain terms, "that the privilege has no place in a Title VII action." *Id.* That is because when, as in Title VII, "Congress creates a cause of action that deliberatively exposes government decisionmaking to the light, the privilege's raison d'être evaporates." *Id.* And since in Title VII cases a statute "makes the nature of governmental officials' deliberations *the* issue, the privilege is a nonsequitur." *Id.*

In this case, the "cause of action is directed at the agency's subjective motivation," and so the deliberative process privilege has no place. *In re Subpoena Duces Tecum*, 156 F.3d at 1280. Nor is the FAA's subjective intent some collateral matter—it is at the "forefront" of this lawsuit. *Doe 2 v. Esper*, 2019 WL 4394842, at *6 (D.D.C. 2019). Plaintiffs allege that the FAA intentionally discriminated on the basis of race when it modified the ATC hiring process in 2013 and 2014. Because Plaintiffs' claim "centers around the intent" of the FAA, "the deliberative process privilege does not apply in this case." *Elkins v. District of Columbia*, 250 F.R.D. 20, 27 (D.D.C. 2008).

2. The Government nonetheless suggests that it has asserted the deliberative-process privilege only over documents related to internal decision-making processes that are not at issue in this litigation. But to the contrary, many of the withheld documents appear to directly implicate

the FAA's changes to the 2014 hiring process and the FAA's intent.  For example, in FAA_00107109, the FAA has withheld a document that it describes as "reflecting confidential pre-decisional deliberations regarding [the] *controller hiring process*."  In FAA_00115192, the FAA appears to have withheld a document bearing on a research manuscript that Plaintiffs believe (based on other information in this case) to have reflected unfavorably on the 2014 hiring process, and that at minimum is highly relevant to the process changes.  And, until an eleventh-hour change yesterday, the FAA had withheld a draft of the 2014 ATC hiring "test script" containing comments or edits from former FAA employee Dana Broach.  *See* FAA_00671957.  Other examples are plentiful.[1]  In short, even under the FAA's theory of deliberative process privilege, it has erred.

3.     Additionally, the FAA has failed to show that many of the withheld documents are genuinely "predecisional" and "deliberative."  *U.S. Fish & Wildlife Serv. v. Sierra Club*, 592 U.S. 261, 268 (2021); *see also Loving v. DOD*, 550 F.3d 32, 38 (D.C. Cir. 2008).[2]  Indeed, from what Plaintiffs can discern from the privilege log, it appears that the FAA has withheld a vast number of documents that appear to be neither.

In FAA_00891104, the FAA has withheld briefing materials on "Operational Errors."  Such

---

[1] Well in advance of this Joint Status Report, Plaintiffs prepared and shared with Defendant a representative sample of approximately 100 documents.  Plaintiffs had cited six of these sample documents in support of this point, in a footnote.  Yesterday, at around 4:00 pm, the FAA agreed to release all but one of those documents.  It is not clear, however, whether the FAA will reevaluate its assertions of deliberative process privilege more broadly.  Plaintiffs are concerned that the FAA is selectively releasing documents to avoid putting a genuinely representative sample before the Court.  Of the documents identified in Plaintiffs' initial sample, the FAA has now released 13, reduced redactions in 1, substantially modified the privilege log entries for 23, and provided additional, non-logged information about a handful of others—changing the state of play for approximately 40% of the initial sample.  Thus, the privilege log entries contained in Exhibit 1, and the sample documents available for this Court's review, have become *significantly* less representative of the privilege log as a whole.

[2] *See In re Subpoena Duces Tecum*, 439 F.3d 740, 750 (D.C. Cir. 2006) (proponent of privilege bears the burden of "demonstrating facts sufficient to establish the privilege's applicability").

errors bear on Plaintiffs' claim that the FAA hired less qualified ATCs for race-based reasons, thereby leading to reduced job performance.  Additionally, the FAA has not established that this document was part of any decisionmaking process.  In FAA_00874675, the FAA has redacted portions of meeting minutes that it says reflect "predecisional deliberation about Strategic Initiatives."  That scant description is inadequate to show that the information is both predecisional and deliberative.  (The non-redacted material in the document discusses percentage-based disability-hiring targets, so there is every reason to think the redacted material may be relevant to this case.)  And until yesterday, the Government had withheld hundreds of responsive documents simply because the FAA had placed them a "civil investigative file."  The FAA has now seemingly agreed to release many of these documents, including most all of Plaintiffs' exemplars on this point.  But in correspondence, the FAA has suggested it may continue withholding some documents simply because they were gathered as part of a civil investigation.  The mere fact that the FAA put an already-existing document into an investigation file cannot establish that the document is itself both predecisional and deliberative.  *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 367 (D.C. Cir. 2021).  And once again, there are many additional examples of unsound deliberative process privilege claims that the Court should consider.[3]

    4.    Finally, the "deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need."  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). Even if the FAA could establish that many of its privilege assertions were proper—and it cannot— Plaintiffs are prepared to show that they would be entitled to many of the documents under the

---

[3] *See*, *e.g.*, FAA_00107109; FAA_00115192; FAA_00635279; FAA_00650460; FAA_00656157; FAA_00656158; FAA_00656159; FAA_00668313; FAA_00671957; FAA_00672022; FAA_00680640; FAA_00829081; FAA_00831527; FAA_00831547; FAA_00874674; FAA_00881596; FAA_00881637; FAA_00891105; 3D_PARTY_002038; 3D_PARTY_002129; 3D_PARTY_ 002390.

interest-balancing framework.  Until yesterday afternoon, the FAA had withheld a document pertaining to the ATC "Composite Score Calculations" and another containing data about hiring sources from days before the new hiring process rolled out.  *See* FAA_00672007; FAA_00671922. The FAA continues to withhold a document "pertaining to predecisional deliberations regarding the barrier analysis"—the barrier analysis launched the hiring-process changes at issue in this case—simply because the document was captured in the course of responding to an OIG request. *See* FAA_00831527.  And additional examples abound where Plaintiffs' need would outweigh the FAA's interests, even assuming that the FAA could show that the privilege applies.[4]

## II.    The FAA Has Improperly Asserted the Law Enforcement Privilege.

The FAA has asserted the law enforcement privilege hundreds of times, often in conjunction with other privilege claims.  The federal law enforcement privilege only "allows for the nondisclosure of information that would be contrary to the public interest in the effective functioning of law enforcement."  *A.N.S.W.E.R. Coal. v. Jewell*, 292 F.R.D. 44, 50 (D.D.C. 2013) (cleaned up).  The FAA bears the burden of showing that the privilege applies.  *See In re Anthem Data Breach Litig.*, 236 F. Supp. 3d 150, 166 (D.D.C. 2017).  And even if the FAA could carry this burden, the privilege is qualified.  *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988).

1.    The FAA has taken an untenably broad view of the law enforcement privilege. Most notably, the FAA withheld every single document contained in a *civil* investigation file pertaining to an employee's potential leaking of materials during the 2014 ATC hiring process. The FAA had asserted the following boilerplate privilege assertion for approximately 220 documents, with no individualized explanation:

> Withheld document is part of ASH civil investigative file regarding potential disciplinary action against FAA employee.  Production of this material would

---

[4] *See, e.g.*, FAA_00107109; FAA_00115192; FAA_00656157–FAA_00656159; FAA_00680640; FAA_00829081.

> disclose confidential enforcement techniques, identify confidential sources, and/or compromise the integrity of future investigations. The document is predecisional in that it predates the conclusion of the investigation; it reflects the give and take of decision making and assisted the decisionmakers in determining whether disciplinary or other action was necessary against an FAA employee.

Plaintiffs have no way to separate the wheat from the chaff given the FAA's boilerplate privilege assertions.

2.      Yesterday, the FAA informed Plaintiffs that it would reconsider all of its assertions of the law enforcement privilege.[5]  The FAA also agreed to produce almost all of the exemplar documents that Plaintiff's had identified on this point. Still, the FAA has continued to insist that it is proper to withhold documents based solely on their presence in an investigation file, and suggested that its future production may be limited to documents already produced to Plaintiffs in this case. Any such limitation would be inappropriate, as the FAA has not met its burden of showing that the disclosure of the withheld documents "would be contrary to the public interest in the effective functioning of law enforcement." *Jewell*, 292 F.R.D. at 50 (cleaned up).

3.      The FAA has also withheld certain documents involving communications between the FAA and the OIG pertaining to an "investigation into cheating allegations regarding controller hiring in 2014." *See, e.g.*, FAA_00668313 (log description updated yesterday). But again, the FAA's privilege log entries fail to establish that the release of such documents—involving an investigation from over a decade ago—is likely to reveal law enforcement information or techniques.

4.      Given the FAA's stated intent to reassess all of its law enforcement privilege assertions, it may be appropriate to avoid additional tangles for the time being. But two points

---

[5] While Plaintiffs welcome the FAA's eleventh-hour decision to release additional documents, the FAA's change of heart serves to underscore Plaintiffs' concerns that the agency has been overclaiming privilege all along.

merit brief mention. First, the law enforcement privilege applies only to the *portions* of documents that if disclosed would actually jeopardize law enforcement functions. *See United States v. U.S. Airways Grp.*, 2013 WL 12341599, at *14 (D.D.C. 2013). Yet the FAA has been withholding such documents in full. Second, the privilege is qualified. And even if the FAA's assertions of privilege were sound, the balance of interests would generally favor disclosure. This is a large class action; the documents are highly relevant to this lawsuit; considerable time has passed; the documents are unlikely to reveal sensitive information about law enforcement techniques; and the protective order in this case is capable of ensuring appropriate confidentiality for any documents that are produced.

## III.    The FAA Has Improperly Asserted Attorney-Client and Work-Product Privileges.

Defendant has asserted more than 12,000 claims of attorney-client privilege and nearly 5,800 claims of work-product protection, many of which overlap. A large number of these claims are suspect and appear designed to shield non-privileged materials about the FAA's hiring process changes, simply because a lawyer was copied or received a document before it circulated more broadly. Plaintiffs respectfully seek the Court's *in camera* review of a small sample of these materials, identified in Exhibit 1.[6]

1.    Attorney-client privilege applies when there is a "confidential communication between attorney and client if the communication was made for the purpose of obtaining or providing legal advice." *FTC v. Boehringer Ingelheim Pharms.*, 892 F.3d 1264, 1267 (D.C. Cir. 2018). The work-product doctrine, on the other hand, applies only to "materials prepared in

---

[6] *See* FAA_00035755; FAA_00047042; FAA_00047309; FAA_00047310; FAA_00047311; FAA_00056987; FAA_00064023; FAA_00064073; FAA_00093267; FAA_00105553; FAA_00127367; FAA_00172097; FAA_00172098; FAA_00362733; FAA_00451862; FAA_00627766; FAA_00627767; FAA_00630375; FAA_00631905; FAA_00632339; FAA_00634615; FAA_00634616; FAA_00634699; FAA_00634700; FAA_00640057; FAA_00682727; FAA_00684406; FAA_00685562; FAA_00829146; FAA_00843281; FAA_00853268; 3D_PARTY_001987; 3D_PARTY_001988; 3D_PARTY_001995; 3D_PARTY _002064; 3D_PARTY_002524.

anticipation of litigation." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). The "mere fact that an attorney is involved in a communication does not make it privileged." *FTC v. Match Grp.*, 2024 WL 1509180, at *9 (D.D.C. 2024) (cleaned up). Likewise, "documents prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged since they are not communications made primarily for legal advice." *FTC v. Boehringer Ingelheim Pharms.*, 180 F. Supp. 3d 1, 17 (D.D.C. 2016).

Yet here, it appears that the FAA is shielding non-privileged materials from discovery because they were routed through, or simply copied, attorneys. The FAA's outside consultants, for example, were instructed to circulate much of their work on the revised hiring process through the FAA's legal department—even when they were not seeking legal advice—in an effort to maintain privilege.[7] Plaintiffs therefore believe that the FAA is asserting attorney-client and work-product privilege over communications that were not actually made for the purpose of obtaining legal advice or preparing for litigation. For example, in 3D_PARTY_001987 and 3D_PARTY_001988 the FAA withheld an e-mail exchange between two outside consultants where counsel was merely copied. In FAA_00634615 and FAA_00634616, the FAA withheld comments on drafts of the barrier analysis made by FAA's non-lawyers, seemingly because the comments were later forwarded to a group that included counsel. And there are numerous instances of assertions that appear questionable, although due to the FAA's inadequate privilege log descriptions it is

---

[7] *See*, *e.g.*, Ex. 2, FAA_00639323 ("Legal has the final version of the report and has instructed us to have all technical report requests/distribution go through them."); Ex. 3, FAA_00073948 ("Per legal's instructions on transmitting files of this nature, I have sent a draft deck to [FAA attorneys] Jerry and Humberto."); Ex. 4, FAA_00630406 ("If you need to forward these on to any participants who will be calling in, I believe [FAA attorney] Jerry [Mellody] should be cc'd in order to maintain privilege.").

impossible to assess the claims with certainty.[8]

2.    The FAA has also taken the position that draft versions of key documents in this case—including technical reports, testing validation studies, and more—are protected by attorney-client and work-product privilege.[9]  Yet these documents were prepared by non-lawyers in the course of their ordinary duties as human resource professionals and consultants, not for litigation or for the purpose of obtaining legal advice.  And they are critical for assessing the FAA's intent.  The agency contends that the drafts are privileged and asserts that they were "prepared at the request of FAA Counsel in anticipation of litigation and reflecting legal advice from FAA Counsel to the FAA."  *See*, *e.g.*, FAA_00829146.  But the FAA cannot transform ordinary HR documents into privileged materials by insisting, vis-à-vis boilerplate, that attorneys somehow played a role in the drafting process—especially when it is clear that the documents were prepared in the course of routine HR work.  These drafts are not privileged.

3.    The FAA has asserted attorney-client and work-product privilege over a 2001 validation study of the AT-SAT, the required test for ATC candidates.  *See* FAA_00682727.[10]  The study was conducted by an outside consulting firm, Barrett & Associates.  The FAA's basis for withholding the study is that one of its multiple authors was a lawyer.  For several reasons, which

---

[8] *See*, *e.g.*, FAA_00035755; FAA_00056987; FAA_00064023; FAA_00627963; FAA_00627961; FAA_00632339;  FAA_00064023;  FAA_00630425;  FAA_00634699;  FAA_00634700; FAA_00853268;  FAA_00105553;  3D_PARTY_001995;  3D_PARTY_002064;  3D_PARTY_ 002524.  For example, the FAA posits below that two documents similar to FAA_00056987 and FAA_00640057 were held to be privileged in FOIA litigation.  *See Rojas v. FAA*, 989 F.3d 666, 675-77 (9th Cir. 2021) (en banc).  Not only does the privilege log fail to make this point, but the log is wholly insufficient to permit Plaintiffs to assess the accuracy of the FAA's claims.

[9] *See*, *e.g.*, FAA_00047309; FAA_00047310; FAA_00047311; FAA_00056987; FAA_00631905; FAA_00829146.

[10] The FAA has also withheld portions of approximately 250 documents that reference the study. *See*, *e.g.*, FAA_00127367; FAA_00362733; FAA_00684406; FAA_00685562; FAA_00843281. The FAA previously produced certain of these documents before clawing them back.

Plaintiffs are prepared to address at greater length in briefing, these privilege assertions are unsound. First, the report is not protected by attorney-client privilege. It was authored in large part by a non-lawyer (Dr. Gary Roos); the consulting group that prepared the report was a human resources firm (not a law firm); and the lawyer who contributed to the report did not seem to believe he was acting in his legal capacity (indeed, he later volunteered to serve as an expert for Plaintiffs in this case). Second, the FAA has waived any plausible privilege by sharing the information with outsiders, including Canada's equivalent of the FAA. *See* FAA_00685562. Third, the document is not protected work product. The core purpose of the study was "development and validation of the Air Traffic Selection and Training (AT-SAT) Test Battery." FAA_00362735. Such routine validation—part of ensuring the new examination's soundness—is a far cry from trial preparation or litigation strategy.

4. Finally, work-product protections are qualified and can be overcome by a showing of sufficient need. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Certain documents over which the FAA has claimed work-product protection appear to be vital to this case, and Plaintiffs lack any other means to obtain equivalent information. For example, some documents pertain to the validation of the FAA's biodata instruments and other tests. *See*, *e.g.*, FAA_00682727; FAA_00640057; FAA_00829146; FAA_00649590. Others pertain to the setting of cut-off scores in the 2014 hiring process. *See*, *e.g.*, FAA_00853268. Such documents are highly relevant, and Plaintiffs have no other way to obtain the critically important information contained in these documents.[11]

---

[11] The FAA is also withholding the scoring algorithm for the AT-SAT's replacement, which is highly relevant for assessing the soundness of, and alternatives to, the FAA's 2014 hiring process. *See* FAA_00047336. The FAA has not justified this withholding based on *any* privilege or rule, but rather because the materials are "highly sensitive." That does not suffice, particularly given the protective order. The FAA concedes that it has produced thousands of documents regarding the test's development, and its effort to shield the results of that development process is improper. The information is relevant and non-privileged and the burden on the FAA is not undue.

## DEFENDANT'S POSITION ON PRIVILEGE DISPUTES

This case was filed more than nine years ago, and discovery has been ongoing for nearly three years. During that time, FAA has produced more than 172,000 documents. Plaintiffs have deposed 20 current and former employees and contractors of FAA. Throughout this period, FAA has worked in good faith with Plaintiffs to negotiate discovery issues as they have arisen, as evidenced by the fact that only these limited privilege disagreements remain outstanding. FAA's privilege assertions are well-merited, and the Court should reject Plaintiffs' attempt to obtain protected materials to supplement the already-extensive record.[12]

## I.    Adequacy of Privilege Log

As to the adequacy of the privilege log entries, Plaintiffs seek more detail than FAA was required to provide. A privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). But "[p]rivilege logs do not need to be precise to the point of pedantry." *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001). Privilege log entries need only "set[] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 406 (D. Md. 2005) (quotation marks omitted); *see also Spilker v. Medtronic, Inc.*, 2015 WL 1643258, at *6 (E.D.N.C. Apr. 13, 2015) (finding entry "[e]mail requesting advice of counsel regarding FDA request" sufficiently detailed); *Vaughn v. Celanese Americas Corp.*, 2006 WL 3592538, at *3–4 (W.D.N.C. Dec. 11, 2006) (finding entry "[e]mail

---

[12] Plaintiffs requested to submit 59 exemplar documents to the Court for *in camera* review. Defendant believes that most of the Court's decisions can be made from the privilege log alone, and suggests that the Court review the privileged documents only as the Court finds necessary. As noted above, Defendant has included related documents for context.

string containing confidential communications with in-house counsel regarding analysis of pension issues in PBI transaction" sufficiently detailed). As demonstrated by the attached privilege log, Defendants clearly meet this standard.

At times, Plaintiffs' chief complaint appears to be the number of documents logged. But that merely reflects that 1) legal advice played a significant role in the process of considering and explaining changes to the controller hiring process, and 2) the FAA produced a large volume of responsive documents in this case, including for 2014-2016 after this litigation was threatened or active. Additionally, during the relevant time, FAA was already defending against an age discrimination lawsuit concerning the Legacy Hiring Process, triggering additional legal scrutiny to proposed hiring process changes throughout this period. *See McCollum v. Buttigieg*, EEOC Docket No. 450-2007-00109X (pending from 2007-2023). It is also unremarkable that FAA sought legal counsel, with an eye toward litigation risk, throughout the process of considering changes to the hiring process for controllers.

FAA expended significant resources producing a 15,194-entry document-by-document privilege log to meet its discovery obligations in this case. The process of reviewing these documents was painstaking and thorough, and there is no merit to Plaintiffs' generalized attempt to cast aspersions on this process.

## II.     The Deliberative Process Privilege Was Appropriately Applied to Three Categories of Documents.

Plaintiffs object to the scope of FAA's deliberative process objections. At the outset, FAA notes that it is *not* asserting deliberative process privilege over "the government's subjective motivation in taking [the] particular action[s]" challenged in this case. *McPeek v. Ashcroft*, 202 F.R.D. 332, 335 (D.D.C. 2001). FAA recognizes that its ability to assert the deliberative-process privilege is circumscribed because of the nature of this litigation and has produced a large volume

of documents over which it would have asserted the privilege in other circumstances. Instead, the agency seeks to protect deliberations on matters other than the challenged actions.

Courts have regularly recognized that the deliberative process privilege may apply to certain information in Title VII actions, where the process sought to be protected is not the particular action at issue. For example, in *McPeek v. Ashcroft*, the court rejected the plaintiff's argument that "the deliberative process privilege should yield in this case because of his claim of governmental misconduct" because the plaintiff's claim "does not question in any way the integrity of" the process over which the government asserted the deliberative process privilege "or the intent with which it was conducted." 202 F.R.D. at 335. Similarly, in *Sourgoutsis v. United States Capitol Police*, the court held that the deliberative process privilege applied to a report that did not advance the plaintiff's Title VII discrimination and retaliation claims. 323 F.R.D. 100, 107 (D.D.C. 2017). *See also, e.g.*, *Segar v. Holder*, 277 F.R.D. 9, 13 (D.D.C. 2011); *Moore v. Valder*, No. 92-cv-2288, 2001 WL 37120629, at *3 (D.D.C. July 31, 2001). In sum, Plaintiffs are mistaken to construe *In re Subpoena Duces Tecum*, 145 F.3d 1422 (D.C. Cir. 1998) to categorically bar any assertion of the privilege in a Title VII case. Here, the government is not "using the privilege as a shield"—the protected information is for processes Plaintiffs do not challenge.

Consistent with these cases, the FAA appropriately asserted the deliberative process privilege over three categories of documents related to decision-making processes that are not at issue in this litigation. Approximately two-thirds of the documents withheld under the privilege (about 1,200) are pre-decisional, deliberative materials related to investigations and draft reports by the Department of Transportation's Office of Inspector General ("DOT OIG"). The FAA separately withheld about 250 documents from a civil investigative file under both this privilege and the law enforcement privilege as discussed below. For both of these categories, the

14

investigators' intent is not at issue in this case, nor is the FAA's intent at issue regarding its deliberations about how to respond to the investigations. *See, e.g., McPeek*, 202 F.R.D. at 335 (upholding application of privilege in Title VII case where plaintiff's challenge "d[id] not question in any way the integrity of[,] . . . or the intent with which" the investigations "were conducted"); *Advancement Project v. U.S. Dep't of Homeland Security*, 549 F. Supp. 3d 128, 139 (D.D.C. 2021) ("Determining how to explain an agency decision in response to inquiries from the press, Congress, or members of the public is itself a privileged deliberative process.").

The remainder of the withheld documents (about 680) relate to other agency decisions that are not relevant to Plaintiffs' claims, such as the contract used to employ trainers at the FAA Academy. *See, e.g.*, FAA_00881596 (Tab 12). Plaintiffs fail to show that these limited withholdings, generally from high-level briefing materials or the conduct of barrier analyses for job series other than air traffic controllers, are relevant, responsive to Plaintiffs' discovery requests, or connected to the intent of the relevant FAA decisionmakers. For example, Plaintiffs erroneously argue that FAA's careful release of one arguably relevant discussion on FAA_00874675 (Tab 11) somehow suggests that the redactions in that document conceal other relevant topics.

Plaintiffs also broadly challenge whether documents are both "predecisional" and "deliberative." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021). For this purpose, Plaintiffs primarily rely on examples from the civil investigative file that Defendant has now decided to release and most of which had also been produced long ago separately from that file. This file presents unique issues which are not representative of Defendant's assertion of the privilege outside the investigative context. Defendant notes that compilations of data can be protected under the deliberative process privilege. *See, e.g.*, *Petroleum Information Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433-35 (D.C. Cir. 1992) ("[t]o the extent that predecisional

15

materials, even if 'factual' in form, reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter," they are protected); *Judicial Watch, Inc. v. U.S. Dep't of Defense*, No. 19-cv-1384, 2021 WL 270503, at *5 (D.D.C. Jan. 27, 2021).

Moreover, the FAA is on solid ground withholding briefing materials for senior officials. These briefing materials contain, in effect, proposed talking points regarding a variety of questions that might arise. *See* FAA_00881596 (Tab 12), FAA_00891105 (Tab 14). Courts have consistently held that such talking points are protected by the deliberative-process privilege. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 115 (D.D.C. 2018); *Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, 325 F.Supp.3d 162, 173-74 (D.D.C. 2018). These briefing materials are deliberative as they "reflect[] a part of the give-and-take between the drafter and the [FAA Administrator]." *Am. Ctr. for Law & Justice*, 325 F.Supp.3d at 106. And they are predecisional, as they were drafted in advance of any official communication which would represent a final decision on the agency's official position on the subject. *See Leopold v. Office of Dir. of Nat'l Intelligence*, 442 F.Supp.3d 266, 285 (D.D.C. 2020). FAA emphasizes that it has produced the portions of those briefing materials for topics at issue in this litigation and are thus not privileged, such as controller hiring, screening, and placement or agency diversity efforts. *See, e.g.*, FAA_00881547 (Tab 12) (cover email listing dozens of topics).

Finally, to overcome the deliberative process privilege, a plaintiff must show that its need for the information outweighs the interest in preventing disclosure of the information. *See In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 159 (D.D.C. 2017). Plaintiffs have not met that burden here. Courts consider "the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees." *Id.* (quoting *In re Sealed Case*, 121 F.3d at 747). Plaintiffs do not

adequately show the relevance of the evidence and the unavailability of other evidence, but merely provide string cites. By contrast, Defendant is prepared to show that Plaintiffs do not need access to copies of documents shared with OIG or placed in a civil investigative file. Defendant is protecting the privileged nature of the investigation, and much of the underlying documents and information have been produced to Plaintiffs separate from these investigations. Moreover, Plaintiffs cannot show that a high-level briefing about operational issues such as tracking controller errors or training contracts bear on Plaintiffs' claims about controller hiring. In short, the agency has already given Plaintiffs "access to a tremendous amount of information" of much greater relevance than the documents withheld by the agency under the deliberative process privilege. *See Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, 110 F. Supp. 3d 215, 221 (D.D.C. 2015).

## III.    Law Enforcement Privilege

FAA has asserted the law enforcement privilege alongside the deliberative process privilege over internal disciplinary investigations into a specific individual related to allegations that the individual compromised internal information about the FAA hiring process. These investigations were conducted separately by FAA's Office of Security and Hazardous Materials Safety (ASH) and by DOT OIG. Courts have applied the law enforcement privilege to internal civil investigations, so long as they meet the other requirements of the privilege. *See Williams v. City of Chicago*, 2023 WL 3387915, at *4 (N.D. Ill. May 11, 2023) ("The public and the government agency still could be harmed if certain of the agency's file materials from a civil or employment investigation are disclosed, and courts allowing civil discovery of certain investigative file materials still may be unduly interfering with executive branch functions by doing so."); *see also In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d at 166 (assuming, without deciding, that law enforcement privilege applied to civil OIG audit).

The law enforcement privilege "aims to protect the integrity of law enforcement

techniques, sources, and investigations—disclosure of which would be contrary to the public interest in the effective functioning of law enforcement." *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 159 (D.D.C. 2017). These considerations are then weighed against the private need for the information. *Id.* Here, disclosure of the documents collected as part of the investigation, transcripts of interviews conducted as part of the investigation, and documents describing the conduct of the investigation would reveal techniques and sources used by FAA and OIG in conducting internal investigations into wrongdoing.[13] This could thwart future efforts by FAA to investigate similar wrongdoing, including by encouraging circumvention and chilling cooperation. On the other side of the ledger, allegations of misconduct against one individual have little-if-any probative value to Plaintiffs' claims. The balance therefore weight decisively in favor of the government. Should the Court determine that further briefing is necessary on this issue, FAA will produce declarations defending its law enforcement privilege assertions. *See Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 134 n.13 (D.D.C. 2005) (citing *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997); *Tuite v. Henry*, 93 F.3d 1411, 1417 (D.C. Cir. 1996)).

## IV.    Attorney-Client & Work Product Privilege

Plaintiffs' arguments about attorney client and work product privileges fare no better. Plaintiffs are wrong to suggest that FAA was improperly copying legal counsel to "shield" documents. FAA agrees that merely copying an attorney, without more, does not create privilege, and it has produced thousands of communications that included FAA attorneys. For instance, FAA attorneys Jerry Mellody's or Humberto Ruiz's names among the documents produced without any redaction in about 6,400 and 3,800 documents respectively. Defendant's litigation team made

---

[13] Defendant is in the process of releasing documents that were withheld merely because they demonstrated what documents investigators had collected and where the privilege log entry's inclusion of the file name reveals what document was collected. Most if not all of these documents that will be released have also been produced to Plaintiffs separate from this file.

independent assessments of whether each email or other document is privileged.

The documents that Plaintiffs have identified do not suggest otherwise. Many of these documents include instances in which FAA personnel or consultants have provided information to FAA counsel to enable the provision of legal advice. *See, e.g.*, FAA_00035755 (Tab 28); 3D_PARTY_001987 (Tab 23); 3D_PARTY_001988 (Tab 24). Defendant understands some of the communication between two separate sets of consultants to have been directed by FAA counsel for the purpose of gathering information in the course of providing legal advice. Even though these communications may constitute "factual" material, "purely factual exchanges between attorney and client merit protection when those facts are provided to the attorney at his request for the purpose of enabling him to provide legal advice." *FTC v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 16 (D.D.C. 2016) (cleaned up), *aff'd*, 892 F.3d 1264 (D.C. Cir. 2018). And copies of documents attached to a request for legal advice are privileged, even where other copies of the documents have been released, because the fact of sharing such documents in that context conveys information about the nature of the legal advice sought and given. *See, e.g.*, FAA_00634611 (Tab 47) (redacted cover email for FAA_00634615 and FAA_000634616).

Other documents include instances in which draft reports have been provided to FAA counsel to enable legal advice. *See* FAA_00634615 (Tab 47); FAA_00634616 (Tab 47). Courts have repeatedly held that these kinds of communications are protected by the attorney-client privilege. *See Jones v. Carson*, 2018 WL 11410070, at *19 (D.D.C. Mar. 30, 2018); *Alexander v. F.B.I.*, 198 F.R.D. 306, 312 (D.D.C. 2000); *SEC v. Texas Int'l Airlines, Inc.*, 29 Fed. R. Serv. 2d 408 (D.D.C. 1979). And several of these documents are additionally protected by the work-product privilege. For instance, Plaintiffs seek drafts of technical documentation relating to testing and hiring processes that came after the 2014 interim hiring process at issue in this case. *See*

FAA_00047310 (Tab 31); FAA_00829146 (Tab 50).  These documents were created at a point when FAA was faced with litigation regarding changes to the controller hiring process.  It is immaterial whether these documents were created by non-lawyers or for multiple purposes; what matters is that the documents were created at least in part because of litigation.  *See United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010).  Moreover, two of these documents, FAA_00056987 (Tab 33) and FAA_00640057 (Tab 47), are versions of a document that Plaintiffs' counsel Michael Pearson sought in other litigation but the Ninth Circuit held to be privileged after full briefing.  *See Rojas v. FAA*, 989 F.3d 666, 675-77 (9th Cir. 2021) (en banc).

Plaintiffs are likewise incorrect in arguing that FAA improperly withheld a 2001 validation study of the AT-SAT by Barrett & Associates.  *See* Tabs 17-22.  Dr. Barrett did not develop the test or conduct the original validation work.  Instead, he was retained to conduct a separate legal analysis and validation study, and the documents plainly reflect his work as an attorney.  The study includes an appendix that compiles approximately 215 court decisions that Dr. Barrett reviewed in preparing his analysis, as well as six additional appendices that detail cases that Dr. Barrett relied upon and incorporated in rendering his advice.  These appendices include charts that analyze the cases' holdings, facts, and legal reasoning, and the study itself includes a number of citations to and discussion of court decisions.  Dr. Barrett was thereby acting in his capacity as a lawyer because his legal "skill and training" contributed to the value of his study.  1 Restatement (Third) of the Law Governing Lawyers § 72 cmt. b (2000); *see also In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759–60 (D.C. Cir. 2014).  The presence of non-lawyers in preparing this study does not preclude the application of attorney-client privilege, since the privilege extends to non-lawyers who act "at the direction of [counsel]" to assist in providing legal services.  *Id.* at 758.  The study is additionally protected by the work-product privilege because it was prepared because of the

prospect of litigation, since it included an assessment of any "vulnerabilities of the AT-SAT" and a "review of relevant legal standards for a selection screening procedure, including fairness, and adverse impact." Ex. 5, FAA_00362721, at -723–24.[14]

In addition, Plaintiffs fail to show that the 2001 Barrett study—or any other document protected by the work product privilege—meets the threshold for sufficient need that is necessary to overcome the privilege. They have not shown why these particular documents are essential to their case, especially in light of the more than 150,000 documents produced without redaction.

**V.    Highly Sensitive Scoring Algorithm for Current Test**

The FAA has also withheld one document containing the scoring algorithm for the current controller hiring test, the ATSA, which was implemented in 2016. *See* FAA_00047336 (Tab 52) (dated Apr. 24, 2017). This document—which was not subject to Plaintiffs' motion to compel because it is dated in 2017—was logged because it was included among documents APT Metrics provided for FAA review in light of Plaintiffs' third party subpoena. The test is currently in use and its continued viability is essential to the FAA's current hiring of new air traffic controllers. Plaintiffs are not challenging the ATSA, and have now shown this document is relevant and necessary to their claims. Defendants have produced thousands of documents regarding development of the ATSA that should provide ample opportunity for any comparisons Plaintiffs want to make. Moreover, any accidental release of this highly sensitive information would compromise the FAA's ability to use the ATSA test this year, which would have catastrophic impacts on FAA's ability to meet its hiring targets.

---

[14] Plaintiffs have not shown that privilege was waived by two presentations that provided a limited summary of the Barrett study (Tabs 20 and 21)—which, in any event, were provided by someone who was "not part of the control group at [FAA]" and did "not have the power to waive the attorney-client privilege" for the agency. *Alexander*, 198 F.R.D. at 315.

\* \* \* \*

DATED: January 17, 2025

Respectfully submitted,

*/s/ David H. Thompson (by permission)*

David H. Thompson, DC Bar No. 450503
Vincent J. Colatriano, DC Bar No. 429562
Adam P. Laxalt, DC Bar No. 1670779
Samuel Adkisson, DC Bar No. 90023952
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C., 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
Email: vcolatriano@cooperkirk.com

Michael W. Pearson, DC Bar No. 997169
CURRY, PEARSON, & WOOTEN, PLC
814 West Roosevelt
Phoenix, AZ 85007
Telephone: (602) 258-1000
Facsimile: (602) 523-9000
Email: mpearson@azlaw.com

William E. Trachman, DC Bar No. 502500
Grady J. Block, *pro hac vice*
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, CO 80227
Telephone: (303) 292-2021
Facsimile: (877) 349-7074
Email: wtrachman@mslegal.org

*Counsel for Plaintiff Class*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Director
Civil Division, Federal Programs Branch

*/s/ Galen N. Thorp*
GALEN N. THORP (VA Bar No. 75517)
Senior Trial Counsel
CAMERON D. SILVERBERG (D.C. Bar No. 1780628)
CLAYTON L. BAILEY (D.C. Bar No. 1644867)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Telephone: (202) 514-4781
Facsimile: (202) 616-8470
Email: galen.thorp@usdoj.gov

*Counsel for Defendant*